Case 3:11-cv-06263-WHA Document 78-3 Filed 09/27/12 Page 1 of 1004

**Appendix B-1**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,347,632 (Filepp)**

U.S. Patent No. 5,347,632 to Filepp et al. ("Filepp") is prior art to U.S. Patent No. 6,442,577 ("the '577 patent") under 35 U.S.C. 102(e) because it issued from a U.S. patent application filed on July 28, 1989 (which is a continuation-in-part of Ser. No. 328,790, Mar. 23, 1989, abandoned, which is a continuation-in-part of Ser. No. 219,931, Jul. 15, 1988, abandoned), which is prior to the Nov. 3, 1998 filing date of the '577 patent. Further, Filepp is prior art to the '577 patent under 35 U.S.C. 102(b) because it issued as a patent on Sept. 13, 1994, which is more than one year prior to the Nov. 3, 1998 filing date of the '577 patent.

As detailed in this chart, Filepp anticipates at least claims 1–30 of the '577 patent. In addition or in the alternative, claims 1–30 of the '577 patent are obvious over Filepp in view of the knowledge of a person of ordinary skill and/or one or more other references, as detailed in Appendix C.

This chart is based in whole or in part on the present understanding of positions taken by PageMelding regarding the coverage, scope and construction of the asserted claims to the extent those positions can be deduced from PageMelding's contentions pursuant to Patent Local Rule 3-1 served on August 3, 2012. Nothing herein is an admission that PageMelding's infringement contentions are correct, an admission that Plaintiff's apparent claim constructions are correct, or an admission that ESPN's technology infringes any asserted claim.

**Appendix B-1**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,347,632 (Filepp)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,347,632 (Filepp) |
|---|---|
| *Claim 1* | |
| [1a] A method for dynamically forming customized web pages for a first type network node at a second type network node, comprising the steps of: | Filepp discloses a method for dynamically forming customized web pages for a first type network node at a second type network node. For example, an interactive computer network (second type network node) dynamically forms customized web pages for a client computer (first type network node). The customized web pages include both global content (e.g., news, movie reviews, retail information, stock information) provided by the interactive computer network, and customized content (e.g., advertisements) conditionally delivered based on information contained in user profiles stored at the switch/file server layer. |
|  | *See* Abstract.<br>An interactive computer system network enables a user to display desired information, such as news, financial and cultural information, and perform desired transactional services, such as banking and shopping, through any of a plurality of types of personal computers. User inputs are received by the personal computer and are translated into personal computer-independent data objects and executable code objects which are then processed by the network. These objects comprise partitioned applications required to process user inputs, portions of which are distributed and stored either locally within the personal computer or remotely in a host computer. User characteristics are monitored by the system in order to generate and display specific advertisements to the user based on individual usage characteristics and predetermined interests. |
|  | *See also* col. 2, lines 41-45.<br>It is yet another object of this invention to provide method and apparatus that would permit information and transactional services to be provided to users based upon predetermined parameters such as user demographics and/or locale. |
|  | *See also* col. 9, lines 41-47<br>In addition to application access and use characteristics, a variety of other parameters, such as user demographics or postal ZIP code, may be used as targeting criteria. From such data, queues of advertisements are constructed and targeted to either individual users or to sets of users who fall into certain groups according to such parameters. |

**Appendix B-1**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,347,632 (Filepp)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,347,632 (Filepp) |
|---|---|
| | *See also* col. 81, line 11-22<br>Selectors are used to dynamically link and load other objects such as Page Element Object (PEO) or other PO based upon parameters that they are passed when they are called. Such parameters are specified in call segments or selector segments. This feature enables RS 400 to conditionally deliver information to the user base upon predetermined parameters, such as his personal demographics or locale. For example, the parameters specified may be the transaction codes required to retrieve the user's age, sex, and personal interest codes from records contained in user profiles stored at the switch/file server layer 200.<br><br>*See also* Figs. 1-11 and associated text.<br><br>*See also* claim limitations [1a] through [1f].<br><br>To the extent it is found that Filepp does not disclose this feature expressly or inherently, it would have been obvious to combine Filepp with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [1b] forming at least a page file for the first type network node; | Filepp discloses forming at least a page file for the first type network node. For example, the interactive network (second type network node) forms a page file containing information and advertisements that are targeted to the user's location, demographic, and/or browsing behavior, which is delivered to the client computer (first type network node).<br><br>*See* Abstract.<br>An interactive computer system network enables a user to display desired information, such as news, financial and cultural information, and perform desired transactional services, such as banking and shopping, through any of a plurality of types of personal computers. User inputs are received by the personal computer and are translated into personal computer-independent data objects and executable code objects which are then processed by the network. These objects comprise partitioned applications required to process user inputs, portions of which are distributed and stored either locally |

**Appendix B-1**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,347,632 (Filepp)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,347,632 (Filepp) |
|---|---|
| | within the personal computer or remotely in a host computer. User characteristics are monitored by the system in order to generate and display specific advertisements to the user based on individual usage characteristics and predetermined interests. |
| | *See also* col. 4, line 9 to col. 5, line 39. |
| | With reference to FIGS. 1, 2, the invention includes a plurality of reception units within reception layer 401 of interactive computer network 10 for displaying information and providing transactional services. In this arrangement, many users each accesses network 10 with a conventional personal computer; i.e., one of the IBM or IBM-compatible type, which has been provided with applications software in accordance with a preferred form of the invention to constitute a reception system (RS) 400. As shown in FIG. 1, interactive network 10 uses a layered structure that includes an information layer 100, a switch/file server layer 200, and cache/concentrator layer 300 as well as reception layer 401. This structure maintains active application databases and delivers requested parts of the databases on demand to the plurality of RS 400's, shown in FIG. 2. As seen in FIG. 2, cache/concentrator layer 300 includes a plurality of cache/concentrator units 302, each or which serve a plurality of RS 400 units over lines 301. Additionally, switch/file server layer 200 is seen to include a server unit 205 connected to multiple cache/concentrator units 302 over lines 201. Still further, server unit 205 is seen to be connected to information layer 100 and its various elements, which act as means for producing, supplying and maintaining the network databases and other information necessary to support network 10. Continuing, switch/filer layer 200 is also seen to include gateway systems 210 connected to server 205. Gateways 210 couple layer 200 to other sources of information and data; e.g., other computer systems. As will be appreciated by those skilled in the art, layer 200, like layers 401 and 300 could also include multiple servers, gateways and information layers in the event even larger numbers of users were sought to be served. Continuing with reference to FIG. 2, each RS 400 is seen to include a personal computer 405 having a CPU 410 including a microprocessor (as for example the type made by INTEL Corporation in its X'86 family of microprocessors), companion RAM and ROM memory and other associated elements, monitor 412 with screen 414 and a keyboard 424. Further, personal computer 405 may also include one or two floppy disk drives 416 for receiving diskettes 426 containing application software in accordance with this invention for |

**Appendix B-1**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,347,632 (Filepp)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,347,632 (Filepp) |
|---|---|
|  | supporting the interactive sessions with network 10 and diskettes 428 containing operating systems software; i.e., MS-DOS, suitable for the personal computer 405 being used. Personal computer 405 may also include a hard-disk drive 420 for storing the application software and operating system software which may be transferred from diskettes 426 and 428 respectfully. Once so configured, each RS 400 provides: a common interface to other elements of interactive computer network 10; a common environment for application processing; and a common protocol for user application conversation which is independent of the personal computer brand used. RS 400 thus constitutes a universal terminal for which only one version of all applications on network 10 need be prepared, thereby rendering the applications interpretable by a variety of brands of personal computers of the IBM or IBM-compatible type. RS 400 formulated in this fashion is capable of communication with the host system to receive information containing either of two types of data, namely objects and messages. Objects have a uniform, self-defining format known to RS 400, and include data types, such as interpretable programs and presentation data for display at monitor screen 414 of the user's personal computer. Applications presented at RS 400 are partitioned into objects which represent the minimal units available from the higher levels of interactive network 10 or RS 400. In this arrangement, each application partition typically represents one screen or a partial screen of information, including fields filled with data used in transactions with network 10. Each such screen, commonly called a page, is represented by its parts and is described in a page template object, discussed below. Applications, having been partitioned into minimal units, are available from higher elements of network 10 or RS 400, and are retrieved on demand by RS 400 for interpretive execution. Thus, not all partitions of a partitioned application need be resident at RS 400 to process a selected partition, thereby raising the storage efficiency of the user's RS 400 and minimizing response time. Each application partition is an independent, self-contained unit and can operate correctly by itself. Each partition may refer to other partitions either statically or dynamically. Static references are built into the partitioned application, while dynamic references are created from the execution of program logic using a set of parameters, such as user demographics or locale. Partitions may be chosen as part of the RS processing in response to user created events, or by selecting a key word of the partitioned application (e.g., "JUMP" or "INDEX," discussed below), which provides random access to all |

**Appendix B-1**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,347,632 (Filepp)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,347,632 (Filepp) |
|---|---|
| | services represented by partitioned applications having key words.<br><br>*See also* col. 5, line 56 to col. 6, line 12.<br>Objects carry application programs and information for display at monitor screen 414 of RS 400. Application program objects, called pre-processor and post-processors, set up the environment for the user's interaction with network 10 and respond to events created when the user inputs information at keyboard 424 of RS 400. Such events typically trigger a program object to be processed, causing one of the following: sending of transactional information to the coapplications in one layer of the network 10; the receiving of information for use in programs or for presentation in application-dependent fields on monitor screen 414; or the requesting of a new objects to be processed by RS 400. Such objects may be part of the same application or a completely new application. The RS 400 supports a protocol by which the user and the partitioned applications communicate. All partitioned applications are designed knowing that this protocol will be supported in RS 400. Hence, replication of the protocol in each partitioned application is avoided, thereby minimizing the size of the partitioned application. RS 400 includes a means to communicate with network 10 to retrieve objects in response to events occurring at RS 400 and to send and receive messages.<br><br>*See also* col. 6, lines 48-51.<br>The transactional features of interactive network 10 saves the user time, money, and frustration by reducing time spent traveling, standing in line, and communicating with sales personnel. The user may, through RS 400, bank, send and receive messages, review advertisements, place orders for merchandise, and perform other transactions. In the preferred embodiment, network 10 provides information and transaction processing services for a large number of users simultaneously accessing the network via the public switched telephone network (PSTN), broadcast, and/or other media with their RS 400 units. Services available to the user include display of information such as movie reviews, the latest news, airlines reservations, the purchase of items such as retail merchandise and groceries, and quotes and buy/sell orders for stocks and bonds. Network 10 provides an environment in which a user, via RS 400 establishes a session with the network and accesses a large number of services. These services are specifically constructed applications which as noted are partitioned so they may be distributed without undo transmission time, and may be processed and selectively stored |

**Appendix B-1**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,347,632 (Filepp)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,347,632 (Filepp) |
|---|---|
| | on a user's RS 400 unit. |
| | |
| | *See also* col. 7, line 3 to col. 8, line 8. |
| | As shown in FIG. 1, in preferred form interactive computer network 10 includes four includes layers: information layer 100, switch and file server layer 200, concentrator layer 300, and reception layer 401. Information layer 100 handles: (1) the production, storage and dissemination of data and (2) the collection and off-line processing of such data from each RS session with the network 10 so as to permit the targeting of information to be presented to users and for traditional business support. Switch and file server layer 200 and cache/concentrator layer 300 together constitute a delivery system 20 which delivers requested data to the RS 400's of reception layer 401 and routes data entered by the user or collected at RS 400's to the proper application in network 10. With reference to FIG. 2, the information used in a RS 400 either resides locally at the RS 400, or is available on demand from the cache/concentrator 300 or the file server 205, via the gateway 210, which may be coupled to external providers, or is available from information layer 100. There are two types of information in the network 10 which are utilized by the RS 400: objects and messages. Objects include the information requested and utilized by the RS 400 to permit a user to select specific parts of applications, control the flow of information relating to the applications, and to supply information to the network. Objects are self-describing structures organized in accordance with a specific data object architecture, described below. Objects are used to package presentation data and program instructions required to support the partitioned applications of a RS 400. Objects are distributed on demand throughout interactive network 10. Objects may contain: control information; program instruction to set up an application processing environment and to process user or network created events; information about what is to be displayed and how it is to be displayed; references to programs to be interpretively executed; and references to other objects, which may be called based upon certain conditions or the occurrence of certain events at the user's personal computer, resulting in the selection and retrieval of other partitioned applications packaged as objects. |
| | Messages are information provided by the user or the network and are used in fields defined within the constructs of an object, and are seen on the user's RS monitor 412, or are used for data processing at RS 400. Additionally, and as more fully described hereafter, messages are the primary means for |

**Appendix B-1**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,347,632 (Filepp)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,347,632 (Filepp) |
|---|---|
| | communication within and without the network. The format of messages is application dependent. If the message is input by the user, it is formatted by the partitioned application currently being processed on RS 400. Likewise, and with reference to FIG. 2, if the data are provided from a co-application database residing in delivery system 20, or accessed via gateway 210 or high function system 110 within the information layer 100, the partitioned application currently being processed on RS 400 causes the message data to be displayed in fields on the user's display monitor as defined by the particular partitioned application. All active objects reside in file server 205. Inactive objects or objects in preparation reside in producer system 120. Objects recently introduced into delivery system 20 from the producer system 120 will be available from file server 205, but may not be available on cache/concentrator 302 to which the user's RS 400 has dialed. If such objects are requested by the RS 400, the cache/concentrator 302 automatically requests the object from file server 205. The requested object is routed back to the requesting cache/concentrator 302, which automatically routes it to the communications line on which the request was originally made, from which it is received by the RS 400. <br><br> *See also* col. 8, line 64 to col. 9, line 57. <br> Applications, i.e. information events, are composed of a sequence of one or more pages opened at screen 414 of monitor 412. This is better seen with reference to FIG. 3a and 3b were a page 255 is illustrated as might appear at screen 414 of monitor 412. With reference to FIG. 3a, each page 255 is formatted into page partitions 250, 260, 280, and 290 (not to be confused with applications partitions). Window page partitions 275, well known in the art, are also available and are opened and closed conditionally on page 255 upon the occurrence of an event specified in the application being run. Each page partition 250-290 and window 275 is made up of a page element which define the content of the partition or window. Each page 255 includes: a header page partition 250, which has a page element associated with it and which typically conveys information on the page's topic or sponsor; one or more body page partitions 260 and window page partitions 275, each of which is associated with a page element which as noted gives the informational and transactional content of the page. For example, a page element may contain presentation data selected as a menu option in the previous page, and/or may contain prompts to which a user responds in pre-defined fields to execute |

Appendix B-1

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,347,632 (Filepp)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,347,632 (Filepp) |
|---|---|
| | transactions. As illustrated in FIG. 3b, the page element associated with body page partition 260 includes display fields 270, 271, 272. A window page partition 275 seen in FIG. 3a represents the same informational and transactional capability as a body partition, except greater flexibility is provided for its location and size.<br><br>Continuing with reference to FIG. 3b, advertisements 280 provided over network 10, like page elements, also include information for display on page 255, and may be included in any partition of a page. Advertisements 280 may be presented to the user on an individual basis from queues of advertisements that are constructed off-line by business system 130, and sent to file server 205 where they are accessible to each RS 400. Individual queues of advertisements are constructed based upon data collected on the partitioned applications that were accessed by a user, and upon events the user generated in response to applications. The data are collected and reported by RS 400 to a data collection co-application in file server 205 for later transmission to business system 130. In addition to application access and use characteristics, a variety of other parameters, such as user demographics or postal ZIP code, may be used as targeting criteria. From such data, queues of advertisements are constructed and targeted to either individual users or to sets of users who fall into certain groups according such parameters. Also with reference to FIG. 3b, a user interface 285 is displayed on the page which enables the user to interact with the network RS 400 and other elements of network 10, so as to cause such operations as navigating from page to page, performing a transaction, or obtaining more information about other applications. As shown in FIG. 3b, user interface 285 includes a command bar 290 having a number of commands 291-298 which the user can execute. The functions of commands 291-298 are discussed in greater detail below.<br><br>*See* col. 9, lines 27-34<br>[A]dvertisements 280 provided over network 10, like page elements, also include information for display on page 255, and may be included in any partition of a page. Advertisements 280 may be presented to the user on an individual basis from queues of advertisements that are constructed off-line by business system 130, and sent to file server 205 where they are accessible to each RS 400.<br><br>*See* col. 9, lines 41-47<br>In addition to application access and use characteristics, a variety of other parameters, such as user |

**Appendix B-1**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,347,632 (Filepp)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,347,632 (Filepp) |
|---|---|
| | demographics or postal ZIP code, may be used as targeting criteria. From such data, queues of advertisements are constructed and targeted to either individual users or to sets of users who fall into certain groups according to such parameters.<br><br>*See also* col. 11, lines 64-66.<br>Still further, advertising objects 510 include the text and graphics that may be presented at ad partition 280 presented on the monitor screen as shown in FIG. 3b.<br><br>*See also* col. 81, line 11-22<br>Selectors are used to dynamically link and load other objects such as Page Element Object (PEO) or other PO based upon parameters that they are passed when they are called. Such parameters are specified in call segments or selector segments. This feature enables RS 400 to conditionally deliver information to the user base upon predetermined parameters, such as his personal demographics or locale. For example, the parameters specified may be the transaction codes required to retrieve the user's age, sex, and personal interest codes from records contained in user profiles stored at the switch/file server layer 200.<br><br>*See also* col. 84, lines 24-31.<br>When in the course of building or adding to the PPT and opening/closing WO, object processor encounters a call to an object with object id "ADSLOT," it fetches the next advertisement object 510 from ad manager 442, and sends to display manager 461 for display to the user presentation data segments 530 contained in the objects constituent of the PTO, WO and advertisement object.<br><br>*See also* Figs. 1-9 and associated text.<br><br>To the extent it is found that Filepp does not disclose this feature expressly or inherently, it would have been obvious to combine Filepp with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [1c] forming at least a page | Filepp discloses forming at least a page file for the second type network node. For example, the |

Appendix B-1

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,347,632 (Filepp)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,347,632 (Filepp) |
|---|---|
| file for the second type network node; | interactive computer network (second type network node) forms a page file containing global content (e.g., news, movie reviews, retail information, stock information) provided by the interactive computer network.<br><br>*See* col. 4, line 9 to col. 5, line 39.<br>With reference to FIGS. 1, 2, the invention includes a plurality of reception units within reception layer 401 of interactive computer network 10 for displaying information and providing transactional services. In this arrangement, many users each accesses network 10 with a conventional personal computer; i.e., one of the IBM or IBM-compatible type, which has been provided with applications software in accordance with a preferred form of the invention to constitute a reception system (RS) 400. As shown in FIG. 1, interactive network 10 uses a layered structure that includes an information layer 100, a switch/file server layer 200, and cache/concentrator layer 300 as well as reception layer 401. This structure maintains active application databases and delivers requested parts of the databases on demand to the plurality of RS 400's, shown in FIG. 2. As seen in FIG. 2, cache/concentrator layer 300 includes a plurality of cache/concentrator units 302, each or which serve a plurality of RS 400 units over lines 301. Additionally, switch/file server layer 200 is seen to include a server unit 205 connected to multiple cache/concentrator units 302 over lines 201. Still further, server unit 205 is seen to be connected to information layer 100 and its various elements, which act as means for producing, supplying and maintaining the network databases and other information necessary to support network 10. Continuing, switch/filer layer 200 is also seen to include gateway systems 210 connected to server 205. Gateways 210 couple layer 200 to other sources of information and data; e.g., other computer systems. As will be appreciated by those skilled in the art, layer 200, like layers 401 and 300 could also include multiple servers, gateways and information layers in the event even larger numbers of users were sought to be served. Continuing with reference to FIG. 2, each RS 400 is seen to include a personal computer 405 having a CPU 410 including a microprocessor (as for example the type made by INTEL Corporation in its X'86 family of microprocessors), companion RAM and ROM memory and other associated elements, monitor 412 with screen 414 and a keyboard 424. Further, personal computer 405 may also include one or two floppy disk drives 416 for receiving diskettes 426 containing application software in accordance with this invention for |

**Appendix B-1**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,347,632 (Filepp)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,347,632 (Filepp) |
|---|---|
| | supporting the interactive sessions with network 10 and diskettes 428 containing operating systems software; i.e., MS-DOS, suitable for the personal computer 405 being used.  Personal computer 405 may also include a hard-disk drive 420 for storing the application software and operating system software which may be transferred from diskettes 426 and 428 respectfully.  Once so configured, each RS 400 provides: a common interface to other elements of interactive computer network 10; a common environment for application processing; and a common protocol for user application conversation which is independent of the personal computer brand used.  RS 400 thus constitutes a universal terminal for which only one version of all applications on network 10 need be prepared, thereby rendering the applications interpretable by a variety of brands of personal computers of the IBM or IBM-compatible type.  RS 400 formulated in this fashion is capable of communication with the host system to receive information containing either of two types of data, namely objects and messages.  Objects have a uniform, self-defining format known to RS 400, and include data types, such as interpretable programs and presentation data for display at monitor screen 414 of the user's personal computer.  Applications presented at RS 400 are partitioned into objects which represent the minimal units available from the higher levels of interactive network 10 or RS 400.  In this arrangement, each application partition typically represents one screen or a partial screen of information, including fields filled with data used in transactions with network 10.  Each such screen, commonly called a page, is represented by its parts and is described in a page template object, discussed below.  Applications, having been partitioned into minimal units, are available from higher elements of network 10 or RS 400, and are retrieved on demand by RS 400 for interpretive execution.  Thus, not all partitions of a partitioned application need be resident at RS 400 to process a selected partition, thereby raising the storage efficiency of the user's RS 400 and minimizing response time.  Each application partition is an independent, self-contained unit and can operate correctly by itself.  Each partition may refer to other partitions either statically or dynamically.  Static references are built into the partitioned application, while dynamic references are created from the execution of program logic using a set of parameters, such as user demographics or locale.  Partitions may be chosen as part of the RS processing in response to user created events, or by selecting a key word of the partitioned application (e.g., "JUMP" or "INDEX," discussed below), which provides random access to all |

**Appendix B-1**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,347,632 (Filepp)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,347,632 (Filepp) |
|---|---|
| | services represented by partitioned applications having key words. |
| | *See also* col. 5, line 56 to col. 6, line 12. |
| | Objects carry application programs and information for display at monitor screen 414 of RS 400. Application program objects, called pre-processor and post-processors, set up the environment for the user's interaction with network 10 and respond to events created when the user inputs information at keyboard 424 of RS 400. Such events typically trigger a program object to be processed, causing one of the following: sending of transactional information to the coapplications in one layer of the network 10; the receiving of information for use in programs or for presentation in application-dependent fields on monitor screen 414; or the requesting of a new objects to be processed by RS 400. Such objects may be part of the same application or a completely new application. The RS 400 supports a protocol by which the user and the partitioned applications communicate. All partitioned applications are designed knowing that this protocol will be supported in RS 400. Hence, replication of the protocol in each partitioned application is avoided, thereby minimizing the size of the partitioned application. RS 400 includes a means to communicate with network 10 to retrieve objects in response to events occurring at RS 400 and to send and receive messages. |
| | *See also* col. 7, line 3 to col. 8, line 8. |
| | As shown in FIG. 1, in preferred form interactive computer network 10 includes four includes layers: information layer 100, switch and file server layer 200, concentrator layer 300, and reception layer 401. Information layer 100 handles: (1) the production, storage and dissemination of data and (2) the collection and off-line processing of such data from each RS session with the network 10 so as to permit the targeting of information to be presented to users and for traditional business support. Switch and file server layer 200 and cache/concentrator layer 300 together constitute a delivery system 20 which delivers requested data to the RS 400's of reception layer 401 and routes data entered by the user or collected at RS 400's to the proper application in network 10. With reference to FIG. 2, the information used in a RS 400 either resides locally at the RS 400, or is available on demand from the cache/concentrator 300 or the file server 205, via the gateway 210, which may be coupled to external providers, or is available from information layer 100. There are two types of information in the network 10 which are utilized by the RS 400: objects and messages. Objects include the information |

**Appendix B-1**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,347,632 (Filepp)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,347,632 (Filepp) |
|---|---|
| | requested and utilized by the RS 400 to permit a user to select specific parts of applications, control the flow of information relating to the applications, and to supply information to the network. Objects are self-describing structures organized in accordance with a specific data object architecture, described below. Objects are used to package presentation data and program instructions required to support the partitioned applications of a RS 400. Objects are distributed on demand throughout interactive network 10. Objects may contain: control information; program instruction to set up an application processing environment and to process user or network created events; information about what is to be displayed and how it is to be displayed; references to programs to be interpretively executed; and references to other objects, which may be called based upon certain conditions or the occurrence of certain events at the user's personal computer, resulting in the selection and retrieval of other partitioned applications packaged as objects. Messages are information provided by the user or the network and are used in fields defined within the constructs of an object, and are seen on the user's RS monitor 412, or are used for data processing at RS 400. Additionally, and as more fully described hereafter, messages are the primary means for communication within and without the network. The format of messages is application dependent. If the message is input by the user, it is formatted by the partitioned application currently being processed on RS 400. Likewise, and with reference to FIG. 2, if the data are provided from a co-application database residing in delivery system 20, or accessed via gateway 210 or high function system 110 within the information layer 100, the partitioned application currently being processed on RS 400 causes the message data to be displayed in fields on the user's display monitor as defined by the particular partitioned application. All active objects reside in file server 205. Inactive objects or objects in preparation reside in producer system 120. Objects recently introduced into delivery system 20 from the producer system 120 will be available from file server 205, but may not be available on cache/concentrator 302 to which the user's RS 400 has dialed. If such objects are requested by the RS 400, the cache/concentrator 302 automatically requests the object from file server 205. The requested object is routed back to the requesting cache/concentrator 302, which automatically routes it to the communications line on which the request was originally made, from which it is received by the RS 400.<br><br>*See also* col. 8, line 64 to col. 9, line 57. |

Appendix B-1

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,347,632 (Filepp)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,347,632 (Filepp) |
|---|---|
| | Applications, i.e. information events, are composed of a sequence of one or more pages opened at screen 414 of monitor 412. This is better seen with reference to FIG. 3a and 3b were a page 255 is illustrated as might appear at screen 414 of monitor 412. With reference to FIG. 3a, each page 255 is formatted into page partitions 250, 260, 280, and 290 (not to be confused with applications partitions). Window page partitions 275, well known in the art, are also available and are opened and closed conditionally on page 255 upon the occurrence of an event specified in the application being run. Each page partition 250-290 and window 275 is made up of a page element which define the content of the partition or window. Each page 255 includes: a header page partition 250, which has a page element associated with it and which typically conveys information on the page's topic or sponsor; one or more body page partitions 260 and window page partitions 275, each of which is associated with a page element which as noted gives the informational and transactional content of the page. For example, a page element may contain presentation data selected as a menu option in the previous page, and/or may contain prompts to which a user responds in pre-defined fields to execute transactions. As illustrated in FIG. 3b, the page element associated with body page partition 260 includes display fields 270, 271, 272. A window page partition 275 seen in FIG. 3a represents the same informational and transactional capability as a body partition, except greater flexibility is provided for its location and size. Continuing with reference to FIG. 3b, advertisements 280 provided over network 10, like page elements, also include information for display on page 255, and may be included in any partition of a page. Advertisements 280 may be presented to the user on an individual basis from queues of advertisements that are constructed off-line by business system 130, and sent to file server 205 where they are accessible to each RS 400. Individual queues of advertisements are constructed based upon data collected on the partitioned applications that were accessed by a user, and upon events the user generated in response to applications. The data are collected and reported by RS 400 to a data collection co-application in file server 205 for later transmission to business system 130. In addition to application access and use characteristics, a variety of other parameters, such as user demographics or postal ZIP code, may be used as targeting criteria. From such data, queues of advertisements are constructed and targeted to either individual users or to sets of users who fall into certain groups according such parameters. Also with reference to FIG. 3b, a user interface 285 is displayed on the page which enables the user to interact with the network RS 400 and other elements |

**Appendix B-1**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,347,632 (Filepp)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,347,632 (Filepp) |
|---|---|
| | of network 10, so as to cause such operations as navigating from page to page, performing a transaction, or obtaining more information about other applications. As shown in FIG. 3b, user interface 285 includes a command bar 290 having a number of commands 291-298 which the user can execute. The functions of commands 291-298 are discussed in greater detail below.

*See also* col. 6, lines 39-64
Network 10 provides information on a wide variety of topics, including, but not limited to news, industry, financial needs, hobbies, and cultural interests. Network 10 thus eliminates the needs to consult multiple information sources, giving users an efficient and time-saving overview of subjects that interest them. The transactional features of interactive network 10 saves the user time, money, and frustration by reducing time spent traveling, standing in line, and communicating with sales personnel. The user may, through RS 400, bank, send and receive messages, receive advertisements, place orders for merchandise, and perform other transactions. In the preferred embodiment, network 10 provides information and transaction processing services for a large number of users simultaneously accessing the network via the public switched telephone network (PSTN), broadcast, and/or other media with their RS 400 units. Services available to the user include display of information such as movie reviews, the latest news, airlines reservations, the purchase of items such as retail merchandise and groceries, and quotes and buy/sell orders for stocks and bonds. Network 10 provides an environment in which a user, via RS 400 establishes a session with the network and accesses a large number of services. These services are specifically constructed applications which as noted are partitioned so they may be distributed without undue transmission time, and may be processed and selectively stored on a user's RS 400 unit.

*See also* Figs. 1-9 and associated text.

To the extent it is found that Filepp does not disclose this feature expressly or inherently, it would have been obvious to combine Filepp with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [1d] receiving a service | Filepp discloses receiving a service request from the first type network node. For example, the client |

**Appendix B-1**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,347,632 (Filepp)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,347,632 (Filepp) |
|---|---|
| request from the first type network node; | computer (first type network node) requests advertisements and other content from the interactive network (second type network node).<br><br>*See* col. 4, line 9 to col. 5, line 39.<br>With reference to FIGS. 1, 2, the invention includes a plurality of reception units within reception layer 401 of interactive computer network 10 for displaying information and providing transactional services.  In this arrangement, many users each accesses network 10 with a conventional personal computer; i.e., one of the IBM or IBM-compatible type, which has been provided with applications software in accordance with a preferred form of the invention to constitute a reception system (RS) 400.  As shown in FIG. 1, interactive network 10 uses a layered structure that includes an information layer 100, a switch/file server layer 200, and cache/concentrator layer 300 as well as reception layer 401.  This structure maintains active application databases and delivers requested parts of the databases on demand to the plurality of RS 400's, shown in FIG. 2. As seen in FIG. 2, cache/concentrator layer 300 includes a plurality of cache/concentrator units 302, each or which serve a plurality of RS 400 units over lines 301.  Additionally, switch/file server layer 200 is seen to include a server unit 205 connected to multiple cache/concentrator units 302 over lines 201.  Still further, server unit 205 is seen to be connected to information layer 100 and its various elements, which act as means for producing, supplying and maintaining the network databases and other information necessary to support network 10.  Continuing, switch/filer layer 200 is also seen to include gateway systems 210 connected to server 205.  Gateways 210 couple layer 200 to other sources of information and data; e.g., other computer systems.  As will be appreciated by those skilled in the art, layer 200, like layers 401 and 300 could also include multiple servers, gateways and information layers in the event even larger numbers of users were sought to be served.  Continuing with reference to FIG. 2, each RS 400 is seen to include a personal computer 405 having a CPU 410 including a microprocessor (as for example the type made by INTEL Corporation in its X'86 family of microprocessors), companion RAM and ROM memory and other associated elements, monitor 412 with screen 414 and a keyboard 424.  Further, personal computer 405 may also include one or two floppy disk drives 416 for receiving diskettes 426 containing application software in accordance with this invention for supporting the interactive sessions with network 10 and diskettes 428 containing operating systems |

**Appendix B-1**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,347,632 (Filepp)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,347,632 (Filepp) |
|---|---|
| | software; i.e., MS-DOS, suitable for the personal computer 405 being used. Personal computer 405 may also include a hard-disk drive 420 for storing the application software and operating system software which may be transferred from diskettes 426 and 428 respectfully. Once so configured, each RS 400 provides: a common interface to other elements of interactive computer network 10; a common environment for application processing; and a common protocol for user application conversation which is independent of the personal computer brand used. RS 400 thus constitutes a universal terminal for which only one version of all applications on network 10 need be prepared, thereby rendering the applications interpretable by a variety of brands of personal computers of the IBM or IBM-compatible type. RS 400 formulated in this fashion is capable of communication with the host system to receive information containing either of two types of data, namely objects and messages. Objects have a uniform, self-defining format known to RS 400, and include data types, such as interpretable programs and presentation data for display at monitor screen 414 of the user's personal computer. Applications presented at RS 400 are partitioned into objects which represent the minimal units available from the higher levels of interactive network 10 or RS 400. In this arrangement, each application partition typically represents one screen or a partial screen of information, including fields filled with data used in transactions with network 10. Each such screen, commonly called a page, is represented by its parts and is described in a page template object, discussed below. Applications, having been partitioned into minimal units, are available from higher elements of network 10 or RS 400, and are retrieved on demand by RS 400 for interpretive execution. Thus, not all partitions of a partitioned application need be resident at RS 400 to process a selected partition, thereby raising the storage efficiency of the user's RS 400 and minimizing response time. Each application partition is an independent, self-contained unit and can operate correctly by itself. Each partition may refer to other partitions either statically or dynamically. Static references are built into the partitioned application, while dynamic references are created from the execution of program logic using a set of parameters, such as user demographics or locale. Partitions may be chosen as part of the RS processing in response to user created events, or by selecting a key word of the partitioned application (e.g., "JUMP" or "INDEX," discussed below), which provides random access to all services represented by partitioned applications having key words. |

**Appendix B-1**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,347,632 (Filepp)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,347,632 (Filepp) |
|---|---|
| | *See also* col. 5, line 56 to col. 6, line 12.<br>Objects carry application programs and information for display at monitor screen 414 of RS 400. Application program objects, called pre-processor and post-processors, set up the environment for the user's interaction with network 10 and respond to events created when the user inputs information at keyboard 424 of RS 400. Such events typically trigger a program object to be processed, causing one of the following: sending of transactional information to the coapplications in one layer of the network 10; the receiving of information for use in programs or for presentation in application-dependent fields on monitor screen 414; or the requesting of a new objects to be processed by RS 400. Such objects may be part of the same application or a completely new application. The RS 400 supports a protocol by which the user and the partitioned applications communicate. All partitioned applications are designed knowing that this protocol will be supported in RS 400. Hence, replication of the protocol in each partitioned application is avoided, thereby minimizing the size of the partitioned application. RS 400 includes a means to communicate with network 10 to retrieve objects in response to events occurring at RS 400 and to send and receive messages.<br><br>*See also* col. 7, line 3 to col. 8, line 8.<br>As shown in FIG. 1, in preferred form interactive computer network 10 includes four includes layers: information layer 100, switch and file server layer 200, concentrator layer 300, and reception layer 401. Information layer 100 handles: (1) the production, storage and dissemination of data and (2) the collection and off-line processing of such data from each RS session with the network 10 so as to permit the targeting of information to be presented to users and for traditional business support. Switch and file server layer 200 and cache/concentrator layer 300 together constitute a delivery system 20 which delivers requested data to the RS 400's of reception layer 401 and routes data entered by the user or collected at RS 400's to the proper application in network 10. With reference to FIG. 2, the information used in a RS 400 either resides locally at the RS 400, or is available on demand from the cache/concentrator 300 or the file server 205, via the gateway 210, which may be coupled to external providers, or is available from information layer 100. There are two types of information in the network 10 which are utilized by the RS 400: objects and messages. Objects include the information requested and utilized by the RS 400 to permit a user to select specific parts of applications, control |

**Appendix B-1**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,347,632 (Filepp)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,347,632 (Filepp) |
|---|---|
| | the flow of information relating to the applications, and to supply information to the network. Objects are self-describing structures organized in accordance with a specific data object architecture, described below. Objects are used to package presentation data and program instructions required to support the partitioned applications of a RS 400. Objects are distributed on demand throughout interactive network 10. Objects may contain: control information; program instruction to set up an application processing environment and to process user or network created events; information about what is to be displayed and how it is to be displayed; references to programs to be interpretively executed; and references to other objects, which may be called based upon certain conditions or the occurrence of certain events at the user's personal computer, resulting in the selection and retrieval of other partitioned applications packaged as objects. Messages are information provided by the user or the network and are used in fields defined within the constructs of an object, and are seen on the user's RS monitor 412, or are used for data processing at RS 400. Additionally, and as more fully described hereafter, messages are the primary means for communication within and without the network. The format of messages is application dependent. If the message is input by the user, it is formatted by the partitioned application currently being processed on RS 400. Likewise, and with reference to FIG. 2, if the data are provided from a co-application database residing in delivery system 20, or accessed via gateway 210 or high function system 110 within the information layer 100, the partitioned application currently being processed on RS 400 causes the message data to be displayed in fields on the user's display monitor as defined by the particular partitioned application. All active objects reside in file server 205. Inactive objects or objects in preparation reside in producer system 120. Objects recently introduced into delivery system 20 from the producer system 120 will be available from file server 205, but may not be available on cache/concentrator 302 to which the user's RS 400 has dialed. If such objects are requested by the RS 400, the cache/concentrator 302 automatically requests the object from file server 205. The requested object is routed back to the requesting cache/concentrator 302, which automatically routes it to the communications line on which the request was originally made, from which it is received by the RS 400.<br><br>*See also* col. 8, line 64 to col. 9, line 57.<br>Applications, i.e. information events, are composed of a sequence of one or more pages opened at |

**Appendix B-1**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,347,632 (Filepp)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,347,632 (Filepp) |
|---|---|
| | screen 414 of monitor 412.  This is better seen with reference to FIG. 3a and 3b were a page 255 is illustrated as might appear at screen 414 of monitor 412.  With reference to FIG. 3a, each page 255 is formatted into page partitions 250, 260, 280, and 290 (not to be confused with applications partitions).  Window page partitions 275, well known in the art, are also available and are opened and closed conditionally on page 255 upon the occurrence of an event specified in the application being run.  Each page partition 250-290 and window 275 is made up of a page element which define the content of the partition or window.  Each page 255 includes: a header page partition 250, which has a page element associated with it and which typically conveys information on the page's topic or sponsor; one or more body page partitions 260 and window page partitions 275, each of which is associated with a page element which as noted gives the informational and transactional content of the page.  For example, a page element may contain presentation data selected as a menu option in the previous page, and/or may contain prompts to which a user responds in pre-defined fields to execute transactions.  As illustrated in FIG. 3b, the page element associated with body page partition 260 includes display fields 270, 271, 272.  A window page partition 275 seen in FIG. 3a represents the same informational and transactional capability as a body partition, except greater flexibility is provided for its location and size.  Continuing with reference to FIG. 3b, advertisements 280 provided over network 10, like page elements, also include information for display on page 255, and may be included in any partition of a page.  Advertisements 280 may be presented to the user on an individual basis from queues of advertisements that are constructed off-line by business system 130, and sent to file server 205 where they are accessible to each RS 400.  Individual queues of advertisements are constructed based upon data collected on the partitioned applications that were accessed by a user, and upon events the user generated in response to applications.  The data are collected and reported by RS 400 to a data collection co-application in file server 205 for later transmission to business system 130.  In addition to application access and use characteristics, a variety of other parameters, such as user demographics or postal ZIP code, may be used as targeting criteria.  From such data, queues of advertisements are constructed and targeted to either individual users or to sets of users who fall into certain groups according such parameters.  Also with reference to FIG. 3b, a user interface 285 is displayed on the page which enables the user to interact with the network RS 400 and other elements of network 10, so as to cause such operations as navigating from page to page, performing a |

**Appendix B-1**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,347,632 (Filepp)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,347,632 (Filepp) |
|---|---|
| | transaction, or obtaining more information about other applications.  As shown in FIG. 3b, user interface 285 includes a command bar 290 having a number of commands 291-298 which the user can execute.  The functions of commands 291-298 are discussed in greater detail below. |
| | *See also* col. 10, lines 30-42. |
| | In accordance with the invention, the screens presented at the user's monitor are each divided into addressable partitions shown in FIG. 3a, and the display text and graphics necessary to make up the partitions, as well as the program instructions and control data necessary to deliver and sustain the screens and partitions are formulated from pre-created objects.  Further, the objects are structured in accordance with an architecture that permits the displayed data to be relocatable on the screen, and to be reusable to make up other screens and other sessions, either as pre-created and stored sessions or interactive sessions, dynamically created in response to the user's requests. |
| | *See also* col. 26, lines 27-34, 41-43. |
| | Normal application message flow consists of a request/response pair.  In normal processing, reception system applications send requests to host applications.  Host applications return responses to these requests.  The Reception System application initiates this dialogue.  Sending nodes are responsible for inserting the proper "source id" (SID) and "destination id" (DID) into the FM0...Receiving nodes are responsible for swapping SID and DAD contents when returning a response. |
| | *See also* col. 91 lines 40-41 |
| | At logon, no advertisement objects will be available RS local storage facilities 440, so they must be requested from interactive network 10. |
| | *See also* col. 98 line 66 – col. 99 line 5 |
| | What is claimed is...input means for receiving user inputs, at least some of which include requests for partitioned applications. |
| | *See also* Figs. 1-9 and associated text. |

**Appendix B-1**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,347,632 (Filepp)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,347,632 (Filepp) |
|---|---|
|  | To the extent it is found that Filepp does not disclose this feature expressly or inherently, it would have been obvious to combine Filepp with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [1e] identifying the first type network node based on the service request; and | Filepp discloses identifying the first type network node based on the service request. For example, the interactive computer network (second type network node) identifies the user's computer (first type network node) based on a "source id."<br><br>*See* col. 26, lines 28-34.<br>In normal processing, reception system applications send requests to host applications. Host applications return responses to these requests. The Reception System application initiates this dialogue. Sending nodes are responsible for inserting the proper "source id" (SID) and "destination id" (DID) into the FM0.<br><br>*See also* col. 7, line 3 to col. 8, line 8.<br>As shown in FIG. 1, in preferred form interactive computer network 10 includes four includes layers: information layer 100, switch and file server layer 200, concentrator layer 300, and reception layer 401. Information layer 100 handles: (1) the production, storage and dissemination of data and (2) the collection and off-line processing of such data from each RS session with the network 10 so as to permit the targeting of information to be presented to users and for traditional business support. Switch and file server layer 200 and cache/concentrator layer 300 together constitute a delivery system 20 which delivers requested data to the RS 400's of reception layer 401 and routes data entered by the user or collected at RS 400's to the proper application in network 10. With reference to FIG. 2, the information used in a RS 400 either resides locally at the RS 400, or is available on demand from the cache/concentrator 300 or the file server 205, via the gateway 210, which may be coupled to external providers, or is available from information layer 100. There are two types of information in the network 10 which are utilized by the RS 400: objects and messages. Objects include the information requested and utilized by the RS 400 to permit a user to select specific parts of applications, control the flow of information relating to the applications, and to supply information to the network. Objects are self-describing structures organized in accordance with a specific data object architecture, |

**Appendix B-1**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,347,632 (Filepp)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,347,632 (Filepp) |
|---|---|
| | described below. Objects are used to package presentation data and program instructions required to support the partitioned applications of a RS 400. Objects are distributed on demand throughout interactive network 10. Objects may contain: control information; program instruction to set up an application processing environment and to process user or network created events; information about what is to be displayed and how it is to be displayed; references to programs to be interpretively executed; and references to other objects, which may be called based upon certain conditions or the occurrence of certain events at the user's personal computer, resulting in the selection and retrieval of other partitioned applications packaged as objects. Messages are information provided by the user or the network and are used in fields defined within the constructs of an object, and are seen on the user's RS monitor 412, or are used for data processing at RS 400. Additionally, and as more fully described hereafter, messages are the primary means for communication within and without the network. The format of messages is application dependent. If the message is input by the user, it is formatted by the partitioned application currently being processed on RS 400. Likewise, and with reference to FIG. 2, if the data are provided from a co-application database residing in delivery system 20, or accessed via gateway 210 or high function system 110 within the information layer 100, the partitioned application currently being processed on RS 400 causes the message data to be displayed in fields on the user's display monitor as defined by the particular partitioned application. All active objects reside in file server 205. Inactive objects or objects in preparation reside in producer system 120. Objects recently introduced into delivery system 20 from the producer system 120 will be available from file server 205, but may not be available on cache/concentrator 302 to which the user's RS 400 has dialed. If such objects are requested by the RS 400, the cache/concentrator 302 automatically requests the object from file server 205. The requested object is routed back to the requesting cache/concentrator 302, which automatically routes it to the communications line on which the request was originally made, from which it is received by the RS 400.

*See also* claim limitation [1d].

To the extent it is found that Filepp does not disclose this feature expressly or inherently, it would have been obvious to combine Filepp with the knowledge of a person of ordinary skill and/or other |

**Appendix B-1**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,347,632 (Filepp)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,347,632 (Filepp) |
|---|---|
| | prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [1f] forming a customized page file formed for the first type network node by including the page file formed for the first type network node within the page file for the second type network node. | Filepp discloses forming a customized page file formed for the first type network node by including the page file formed for the first type network node within the page file for the second type network node. For example, the interactive network (second type network node) forms a customized page file for the client computer (first type network node) by including targeted advertisements (page file formed for the first type network node) within global content (page file for the second type network node).

*See* col. 8, line 64 to col. 9, line 57.

Applications, i.e. information events, are composed of a sequence of one or more pages opened at screen 414 of monitor 412. This is better seen with reference to FIG. 3a and 3b were a page 255 is illustrated as might appear at screen 414 of monitor 412. With reference to FIG. 3a, each page 255 is formatted into page partitions 250, 260, 280, and 290 (not to be confused with applications partitions). Window page partitions 275, well known in the art, are also available and are opened and closed conditionally on page 255 upon the occurrence of an event specified in the application being run. Each page partition 250-290 and window 275 is made up of a page element which define the content of the partition or window. Each page 255 includes: a header page partition 250, which has a page element associated with it and which typically conveys information on the page's topic or sponsor; one or more body page partitions 260 and window page partitions 275, each of which is associated with a page element which as noted gives the informational and transactional content of the page. For example, a page element may contain presentation data selected as a menu option in the previous page, and/or may contain prompts to which a user responds in pre-defined fields to execute transactions. As illustrated in FIG. 3b, the page element associated with body page partition 260 includes display fields 270, 271, 272. A window page partition 275 seen in FIG. 3a represents the same informational and transactional capability as a body partition, except greater flexibility is provided for its location and size. Continuing with reference to FIG. 3b, advertisements 280 provided over network 10, like page elements, also include information for display on page 255, and may be included in any partition of a page. Advertisements 280 may be presented to the user on an individual |

**Appendix B-1**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,347,632 (Filepp)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,347,632 (Filepp) |
|---|---|
|  | basis from queues of advertisements that are constructed off-line by business system 130, and sent to file server 205 where they are accessible to each RS 400.  Individual queues of advertisements are constructed based upon data collected on the partitioned applications that were accessed by a user, and upon events the user generated in response to applications.  The data are collected and reported by RS 400 to a data collection co-application in file server 205 for later transmission to business system 130.  In addition to application access and use characteristics, a variety of other parameters, such as user demographics or postal ZIP code, may be used as targeting criteria.  From such data, queues of advertisements are constructed and targeted to either individual users or to sets of users who fall into certain groups according such parameters. |
|  | Also with reference to FIG. 3b, a user interface 285 is displayed on the page which enables the user to interact with the network RS 400 and other elements of network 10, so as to cause such operations as navigating from page to page, performing a transaction, or obtaining more information about other applications.  As shown in FIG. 3b, user interface 285 includes a command bar 290 having a number of commands 291-298 which the user can execute.  The functions of commands 291-298 are discussed in greater detail below. |
|  | *See* col. 9, lines 27-34 [A]dvertisements 280 provided over network 10, like page elements, also include information for display on page 255, and may be included in any partition of a page.  Advertisements 280 may be presented to the user on an individual basis from queues of advertisements that are constructed off-line by business system 130, and sent to file server 205 where they are accessible to each RS 400. |
|  | *See also* col. 9, lines 41-47 In addition to application access and use characteristics, a variety of other parameters, such as user demographics or postal ZIP code, may be used as targeting criteria.  From such data, queues of advertisements are constructed and targeted to either individual users or to sets of users who fall into certain groups according to such parameters. |
|  | *See also* col. 81, line 11-22 Selectors are used to dynamically link and load other objects such as Page Element Object (PEO) or |

**Appendix B-1**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,347,632 (Filepp)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,347,632 (Filepp) |
|---|---|
|  | other PO based upon parameters that they are passed when they are called. Such parameters are specified in call segments or selector segments. This feature enables RS 400 to conditionally deliver information to the user base upon predetermined parameters, such as his personal demographics or locale. For example, the parameters specified may be the transaction codes required to retrieve the user's age, sex, and personal interest codes from records contained in user profiles stored at the switch/file server layer 200.<br><br>*See also* col. 93, lines 27-42<br>Data collection manager 441 gathers information concerning a user's individual system usage characteristics. The types of informational services accessed, transactions processed, time information between various events, and the like are collected by data collection manager 441, which compiles the information into message packets (not shown). The message packets are sent to network 10 via object/communication manager interface 443 and link communications manager 444. Message packets are then stored by high function host 110 and sent to an offline processing facility for processing. The characteristics of users are ultimately used as a means to select or target various display objects, such as advertisement objects, to be sent to particular users based on consumer marketing strategies, or the like, and for system optimization.<br><br>*See also* Figs. 1-9 and associated text.<br><br>*See also* claim limitations [1b] and [1c].<br><br>To the extent it is found that Filepp does not disclose this feature expressly or inherently, it would have been obvious to combine Filepp with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 2* |  |
| [2] The method of claim 1, wherein the first type network node is an ISP node, and the | Filepp discloses that the first type network node is an ISP node, and the second type network node is an ICP node. For example, the client computer (first type network node), which is connected to the internet, is an ISP node, and the interactive network (second type network node) provides content |

**Appendix B-1**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,347,632 (Filepp)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,347,632 (Filepp) |
|---|---|
| second type network node is an ICP node. | (news, movie reviews, retail information, stock information, advertisements) to the client computer (first type network node)<br><br>*See* col. 4, line 9 to col. 5, line 39.<br>With reference to FIGS. 1, 2, the invention includes a plurality of reception units within reception layer 401 of interactive computer network 10 for displaying information and providing transactional services.  In this arrangement, many users each accesses network 10 with a conventional personal computer; i.e., one of the IBM or IBM-compatible type, which has been provided with applications software in accordance with a preferred form of the invention to constitute a reception system (RS) 400.  As shown in FIG. 1, interactive network 10 uses a layered structure that includes an information layer 100, a switch/file server layer 200, and cache/concentrator layer 300 as well as reception layer 401.  This structure maintains active application databases and delivers requested parts of the databases on demand to the plurality of RS 400's, shown in FIG. 2.  As seen in FIG. 2, cache/concentrator layer 300 includes a plurality of cache/concentrator units 302, each or which serve a plurality of RS 400 units over lines 301.  Additionally, switch/file server layer 200 is seen to include a server unit 205 connected to multiple cache/concentrator units 302 over lines 201.  Still further, server unit 205 is seen to be connected to information layer 100 and its various elements, which act as means for producing, supplying and maintaining the network databases and other information necessary to support network 10.  Continuing, switch/filer layer 200 is also seen to include gateway systems 210 connected to server 205.  Gateways 210 couple layer 200 to other sources of information and data; e.g., other computer systems.  As will be appreciated by those skilled in the art, layer 200, like layers 401 and 300 could also include multiple servers, gateways and information layers in the event even larger numbers of users were sought to be served.  Continuing with reference to FIG. 2, each RS 400 is seen to include a personal computer 405 having a CPU 410 including a microprocessor (as for example the type made by INTEL Corporation in its X'86 family of microprocessors), companion RAM and ROM memory and other associated elements, monitor 412 with screen 414 and a keyboard 424.  Further, personal computer 405 may also include one or two floppy disk drives 416 for receiving diskettes 426 containing application software in accordance with this invention for supporting the interactive sessions with network 10 and diskettes 428 containing operating systems |

**Appendix B-1**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,347,632 (Filepp)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,347,632 (Filepp) |
|---|---|
| | software; i.e., MS-DOS, suitable for the personal computer 405 being used.  Personal computer 405 may also include a hard-disk drive 420 for storing the application software and operating system software which may be transferred from diskettes 426 and 428 respectfully.  Once so configured, each RS 400 provides: a common interface to other elements of interactive computer network 10; a common environment for application processing; and a common protocol for user application conversation which is independent of the personal computer brand used.  RS 400 thus constitutes a universal terminal for which only one version of all applications on network 10 need be prepared, thereby rendering the applications interpretable by a variety of brands of personal computers of the IBM or IBM-compatible type.  RS 400 formulated in this fashion is capable of communication with the host system to receive information containing either of two types of data, namely objects and messages.  Objects have a uniform, self-defining format known to RS 400, and include data types, such as interpretable programs and presentation data for display at monitor screen 414 of the user's personal computer.  Applications presented at RS 400 are partitioned into objects which represent the minimal units available from the higher levels of interactive network 10 or RS 400.  In this arrangement, each application partition typically represents one screen or a partial screen of information, including fields filled with data used in transactions with network 10.  Each such screen, commonly called a page, is represented by its parts and is described in a page template object, discussed below.  Applications, having been partitioned into minimal units, are available from higher elements of network 10 or RS 400, and are retrieved on demand by RS 400 for interpretive execution.  Thus, not all partitions of a partitioned application need be resident at RS 400 to process a selected partition, thereby raising the storage efficiency of the user's RS 400 and minimizing response time.  Each application partition is an independent, self-contained unit and can operate correctly by itself.  Each partition may refer to other partitions either statically or dynamically.  Static references are built into the partitioned application, while dynamic references are created from the execution of program logic using a set of parameters, such as user demographics or locale.  Partitions may be chosen as part of the RS processing in response to user created events, or by selecting a key word of the partitioned application (e.g., "JUMP" or "INDEX," discussed below), which provides random access to all services represented by partitioned applications having key words. |

**Appendix B-1**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,347,632 (Filepp)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,347,632 (Filepp) |
|---|---|
| | *See also* col. 7, line 3 to col. 8, line 8.<br>As shown in FIG. 1, in preferred form interactive computer network 10 includes four includes layers: information layer 100, switch and file server layer 200, concentrator layer 300, and reception layer 401. Information layer 100 handles: (1) the production, storage and dissemination of data and (2) the collection and off-line processing of such data from each RS session with the network 10 so as to permit the targeting of information to be presented to users and for traditional business support. Switch and file server layer 200 and cache/concentrator layer 300 together constitute a delivery system 20 which delivers requested data to the RS 400's of reception layer 401 and routes data entered by the user or collected at RS 400's to the proper application in network 10. With reference to FIG. 2, the information used in a RS 400 either resides locally at the RS 400, or is available on demand from the cache/concentrator 300 or the file server 205, via the gateway 210, which may be coupled to external providers, or is available from information layer 100. There are two types of information in the network 10 which are utilized by the RS 400: objects and messages. Objects include the information requested and utilized by the RS 400 to permit a user to select specific parts of applications, control the flow of information relating to the applications, and to supply information to the network. Objects are self-describing structures organized in accordance with a specific data object architecture, described below. Objects are used to package presentation data and program instructions required to support the partitioned applications of a RS 400. Objects are distributed on demand throughout interactive network 10. Objects may contain: control information; program instruction to set up an application processing environment and to process user or network created events; information about what is to be displayed and how it is to be displayed; references to programs to be interpretively executed; and references to other objects, which may be called based upon certain conditions or the occurrence of certain events at the user's personal computer, resulting in the selection and retrieval of other partitioned applications packaged as objects. Messages are information provided by the user or the network and are used in fields defined within the constructs of an object, and are seen on the user's RS monitor 412, or are used for data processing at RS 400. Additionally, and as more fully described hereafter, messages are the primary means for communication within and without the network. The format of messages is application dependent. If the message is input by the user, it is formatted by the partitioned application currently being processed on RS 400. Likewise, and with reference to FIG. 2, |

**Appendix B-1**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,347,632 (Filepp)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,347,632 (Filepp) |
|---|---|
| | if the data are provided from a co-application database residing in delivery system 20, or accessed via gateway 210 or high function system 110 within the information layer 100, the partitioned application currently being processed on RS 400 causes the message data to be displayed in fields on the user's display monitor as defined by the particular partitioned application. All active objects reside in file server 205. Inactive objects or objects in preparation reside in producer system 120. Objects recently introduced into delivery system 20 from the producer system 120 will be available from file server 205, but may not be available on cache/concentrator 302 to which the user's RS 400 has dialed. If such objects are requested by the RS 400, the cache/concentrator 302 automatically requests the object from file server 205. The requested object is routed back to the requesting cache/concentrator 302, which automatically routes it to the communications line on which the request was originally made, from which it is received by the RS 400. |
| | *See also* col. 6, lines 39-64 |
| | Network 10 provides information on a wide variety of topics, including, but not limited to news, industry, financial needs, hobbies, and cultural interests. Network 10 thus eliminates the needs to consult multiple information sources, giving users an efficient and time-saving overview of subjects that interest them. The transactional features of interactive network 10 saves the user time, money, and frustration by reducing time spent traveling, standing in line, and communicating with sales personnel. The user may, through RS 400, bank, send and receive messages, receive advertisements, place orders for merchandise, and perform other transactions. In the preferred embodiment, network 10 provides information and transaction processing services for a large number of users simultaneously accessing the network via the public switched telephone network (PSTN), broadcast, and/or other media with their RS 400 units. Services available to the user include display of information such as movie review, the latest news, airlines reservations, the purchase of items such as retail merchandise and groceries, and quotes and buy/sell orders for stocks and bonds. Network 10 provides an environment in which a user, via RS 400 establishes a session with the network and accesses a large number of services. These services are specifically constructed applications which as noted are partitioned so they may be distributed without undue transmission time, and may be processed and selectively stored on a user's RS 400 unit. |

**Appendix B-1**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,347,632 (Filepp)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,347,632 (Filepp) |
|---|---|
| | *See* col. 8, lines 47-61<br>The user typically accesses network 10 using a 1,200 or 2,400 bps modem (not shown). To initiate a session with network 10, objects representing the logon application are retrieved from the user's personal diskette, including the R.S. application software, which was previously set up during a standard installation enrollment procedure with network 10. Once communication between RS 400 and cache/concentrator layer 300 has been established, the user begins a standard logon procedure by inputting a personal entry code. Once the logon procedure is complete, the user can begin to access various desired services (i.e. partitioned applications) which provide display of requested information and/or transaction operations.<br><br>*See also* col. 8, line 64 to col. 9, line 57.<br>Applications, i.e. information events, are composed of a sequence of one or more pages opened at screen 414 of monitor 412. This is better seen with reference to FIG. 3a and 3b were a page 255 is illustrated as might appear at screen 414 of monitor 412. With reference to FIG. 3a, each page 255 is formatted into page partitions 250, 260, 280, and 290 (not to be confused with applications partitions). Window page partitions 275, well known in the art, are also available and are opened and closed conditionally on page 255 upon the occurrence of an event specified in the application being run. Each page partition 250-290 and window 275 is made up of a page element which define the content of the partition or window. Each page 255 includes: a header page partition 250, which has a page element associated with it and which typically conveys information on the page's topic or sponsor; one or more body page partitions 260 and window page partitions 275, each of which is associated with a page element which as noted gives the informational and transactional content of the page. For example, a page element may contain presentation data selected as a menu option in the previous page, and/or may contain prompts to which a user responds in pre-defined fields to execute transactions. As illustrated in FIG. 3b, the page element associated with body page partition 260 includes display fields 270, 271, 272. A window page partition 275 seen in FIG. 3a represents the same informational and transactional capability as a body partition, except greater flexibility is provided for its location and size. Continuing with reference to FIG. 3b, advertisements 280 provided |

**Appendix B-1**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,347,632 (Filepp)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,347,632 (Filepp) |
|---|---|
| | over network 10, like page elements, also include information for display on page 255, and may be included in any partition of a page. Advertisements 280 may be presented to the user on an individual basis from queues of advertisements that are constructed off-line by business system 130, and sent to file server 205 where they are accessible to each RS 400. Individual queues of advertisements are constructed based upon data collected on the partitioned applications that were accessed by a user, and upon events the user generated in response to applications. The data are collected and reported by RS 400 to a data collection co-application in file server 205 for later transmission to business system 130. In addition to application access and use characteristics, a variety of other parameters, such as user demographics or postal ZIP code, may be used as targeting criteria. From such data, queues of advertisements are constructed and targeted to either individual users or to sets of users who fall into certain groups according such parameters. Also with reference to FIG. 3b, a user interface 285 is displayed on the page which enables the user to interact with the network RS 400 and other elements of network 10, so as to cause such operations as navigating from page to page, performing a transaction, or obtaining more information about other applications. As shown in FIG. 3b, user interface 285 includes a command bar 290 having a number of commands 291-298 which the user can execute. The functions of commands 291-298 are discussed in greater detail below. *See* col. 9, lines 27-34 [A]dvertisements 280 provided over network 10, like page elements, also include information for display on page 255, and may be included in any partition of a page. Advertisements 280 may be presented to the user on an individual basis from queues of advertisements that are constructed off-line by business system 130, and sent to file server 205 where they are accessible to each RS 400. *See also* Figs. 1-9 and associated text. *See also* claim limitation [1a]. To the extent it is found that Filepp does not disclose this feature expressly or inherently, it would have been obvious to combine Filepp with the knowledge of a person of ordinary skill and/or other |

**Appendix B-1**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,347,632 (Filepp)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,347,632 (Filepp) |
|---|---|
|  | prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 3* |  |
| [3] The method of claim 1, wherein the first type network node is an organization node, and the second type network node is an ICP node. | Filepp discloses that the first type network node is an organization node, and the second type network node is an ICP node. For example, the client computer (first type network node), which is connected to the internet, is an organization node, and the interactive network (second type network node), which provides content (news, movie reviews, retail information, stock information, advertisements) to the client computer (first type network node), is an ICP node.<br><br>*See* col. 4, line 9 to col. 5, line 39.<br>With reference to FIGS. 1, 2, the invention includes a plurality of reception units within reception layer 401 of interactive computer network 10 for displaying information and providing transactional services. In this arrangement, many users each accesses network 10 with a conventional personal computer; i.e., one of the IBM or IBM-compatible type, which has been provided with applications software in accordance with a preferred form of the invention to constitute a reception system (RS) 400. As shown in FIG. 1, interactive network 10 uses a layered structure that includes an information layer 100, a switch/file server layer 200, and cache/concentrator layer 300 as well as reception layer 401. This structure maintains active application databases and delivers requested parts of the databases on demand to the plurality of RS 400's, shown in FIG. 2. As seen in FIG. 2, cache/concentrator layer 300 includes a plurality of cache/concentrator units 302, each or which serve a plurality of RS 400 units over lines 301. Additionally, switch/file server layer 200 is seen to include a server unit 205 connected to multiple cache/concentrator units 302 over lines 201. Still further, server unit 205 is seen to be connected to information layer 100 and its various elements, which act as means for producing, supplying and maintaining the network databases and other information necessary to support network 10. Continuing, switch/filer layer 200 is also seen to include gateway systems 210 connected to server 205. Gateways 210 couple layer 200 to other sources of information and data; e.g., other computer systems. As will be appreciated by those skilled in the art, layer 200, like layers 401 and 300 could also include multiple servers, gateways and information layers in the event even larger numbers of users were sought to be served. Continuing with reference to FIG. 2, |

**Appendix B-1**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,347,632 (Filepp)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,347,632 (Filepp) |
|---|---|
| | each RS 400 is seen to include a personal computer 405 having a CPU 410 including a microprocessor (as for example the type made by INTEL Corporation in its X'86 family of microprocessors), companion RAM and ROM memory and other associated elements, monitor 412 with screen 414 and a keyboard 424.  Further, personal computer 405 may also include one or two floppy disk drives 416 for receiving diskettes 426 containing application software in accordance with this invention for supporting the interactive sessions with network 10 and diskettes 428 containing operating systems software; i.e., MS-DOS, suitable for the personal computer 405 being used.  Personal computer 405 may also include a hard-disk drive 420 for storing the application software and operating system software which may be transferred from diskettes 426 and 428 respectfully.  Once so configured, each RS 400 provides: a common interface to other elements of interactive computer network 10; a common environment for application processing; and a common protocol for user application conversation which is independent of the personal computer brand used.  RS 400 thus constitutes a universal terminal for which only one version of all applications on network 10 need be prepared, thereby rendering the applications interpretable by a variety of brands of personal computers of the IBM or IBM-compatible type.  RS 400 formulated in this fashion is capable of communication with the host system to receive information containing either of two types of data, namely objects and messages.  Objects have a uniform, self-defining format known to RS 400, and include data types, such as interpretable programs and presentation data for display at monitor screen 414 of the user's personal computer.  Applications presented at RS 400 are partitioned into objects which represent the minimal units available from the higher levels of interactive network 10 or RS 400.  In this arrangement, each application partition typically represents one screen or a partial screen of information, including fields filled with data used in transactions with network 10.  Each such screen, commonly called a page, is represented by its parts and is described in a page template object, discussed below.  Applications, having been partitioned into minimal units, are available from higher elements of network 10 or RS 400, and are retrieved on demand by RS 400 for interpretive execution.  Thus, not all partitions of a partitioned application need be resident at RS 400 to process a selected partition, thereby raising the storage efficiency of the user's RS 400 and minimizing response time.  Each application partition is an independent, self-contained unit and can operate correctly by itself.  Each partition may refer to other partitions either statically or dynamically.  Static references are built |

**Appendix B-1**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,347,632 (Filepp)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,347,632 (Filepp) |
|---|---|
| | into the partitioned application, while dynamic references are created from the execution of program logic using a set of parameters, such as user demographics or locale. Partitions may be chosen as part of the RS processing in response to user created events, or by selecting a key word of the partitioned application (e.g., "JUMP" or "INDEX," discussed below), which provides random access to all services represented by partitioned applications having key words. |
| | *See also* col. 6, lines 39-64 |
| | Network 10 provides information on a wide variety of topics, including, but not limited to news, industry, financial needs, hobbies, and cultural interests. Network 10 thus eliminates the needs to consult multiple information sources, giving users an efficient and time-saving overview of subjects that interest them. The transactional features of interactive network 10 saves the user time, money, and frustration by reducing time spent traveling, standing in line, and communicating with sales personnel. The user may, through RS 400, bank, send and receive messages, receive advertisements, place orders for merchandise, and perform other transactions. In the preferred embodiment, network 10 provides information and transaction processing services for a large number of users simultaneously accessing the network via the public switched telephone network (PSTN), broadcast, and/or other media with their RS 400 units. Services available to the user include display of information such as movie review, the latest news, airlines reservations, the purchase of items such as retail merchandise and groceries, and quotes and buy/sell orders for stocks and bonds. Network 10 provides an environment in which a user, via RS 400 establishes a session with the network and accesses a large number of services. These services are specifically constructed applications which as noted are partitioned so they may be distributed without undue transmission time, and may be processed and selectively stored on a user's RS 400 unit. |
| | *See also* col. 7, line 3 to col. 8, line 8. |
| | As shown in FIG. 1, in preferred form interactive computer network 10 includes four includes layers: information layer 100, switch and file server layer 200, concentrator layer 300, and reception layer 401. Information layer 100 handles: (1) the production, storage and dissemination of data and (2) the collection and off-line processing of such data from each RS session with the network 10 so as to |

**Appendix B-1**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,347,632 (Filepp)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,347,632 (Filepp) |
|---|---|
| | permit the targeting of information to be presented to users and for traditional business support. Switch and file server layer 200 and cache/concentrator layer 300 together constitute a delivery system 20 which delivers requested data to the RS 400's of reception layer 401 and routes data entered by the user or collected at RS 400's to the proper application in network 10. With reference to FIG. 2, the information used in a RS 400 either resides locally at the RS 400, or is available on demand from the cache/concentrator 300 or the file server 205, via the gateway 210, which may be coupled to external providers, or is available from information layer 100. There are two types of information in the network 10 which are utilized by the RS 400: objects and messages. Objects include the information requested and utilized by the RS 400 to permit a user to select specific parts of applications, control the flow of information relating to the applications, and to supply information to the network. Objects are self-describing structures organized in accordance with a specific data object architecture, described below. Objects are used to package presentation data and program instructions required to support the partitioned applications of a RS 400. Objects are distributed on demand throughout interactive network 10. Objects may contain: control information; program instruction to set up an application processing environment and to process user or network created events; information about what is to be displayed and how it is to be displayed; references to programs to be interpretively executed; and references to other objects, which may be called based upon certain conditions or the occurrence of certain events at the user's personal computer, resulting in the selection and retrieval of other partitioned applications packaged as objects. Messages are information provided by the user or the network and are used in fields defined within the constructs of an object, and are seen on the user's RS monitor 412, or are used for data processing at RS 400. Additionally, and as more fully described hereafter, messages are the primary means for communication within and without the network. The format of messages is application dependent. If the message is input by the user, it is formatted by the partitioned application currently being processed on RS 400. Likewise, and with reference to FIG. 2, if the data are provided from a co-application database residing in delivery system 20, or accessed via gateway 210 or high function system 110 within the information layer 100, the partitioned application currently being processed on RS 400 causes the message data to be displayed in fields on the user's display monitor as defined by the particular partitioned application. All active objects reside in file server 205. Inactive objects or objects in preparation reside in producer system 120. Objects recently |

**Appendix B-1**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,347,632 (Filepp)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,347,632 (Filepp) |
|---|---|
| | introduced into delivery system 20 from the producer system 120 will be available from file server 205, but may not be available on cache/concentrator 400 to which the user's RS 400 has dialed. If such objects are requested by the RS 400, the cache/concentrator 302 automatically requests the object from file server 205. The requested object is routed back to the requesting cache/concentrator 302, which automatically routes it to the communications line on which the request was originally made, from which it is received by the RS 400.<br><br>*See* col. 8, lines 47-61<br>The user typically accesses network 10 using a 1,200 or 2,400 bps modem (not shown). To initiate a session with network 10, objects representing the logon application are retrieved from the user's personal diskette, including the R.S. application software, which was previously set up during a standard installation enrollment procedure with network 10. Once communication between RS 400 and cache/concentrator layer 300 has been established, the user begins a standard logon procedure by inputting a personal entry code. Once the logon procedure is complete, the user can begin to access various desired services (i.e. partitioned applications) which provide display of requested information and/or transaction operations.<br><br>*See also* col. 8, line 64 to col. 9, line 57.<br>Applications, i.e. information events, are composed of a sequence of one or more pages opened at screen 414 of monitor 412. This is better seen with reference to FIG. 3a and 3b were a page 255 is illustrated as might appear at screen 414 of monitor 412. With reference to FIG. 3a, each page 255 is formatted into page partitions 250, 260, 280, and 290 (not to be confused with applications partitions). Window page partitions 275, well known in the art, are also available and are opened and closed conditionally on page 255 upon the occurrence of an event specified in the application being run. Each page partition 250-290 and window 275 is made up of a page element which define the content of the partition or window. Each page 255 includes: a header page partition 250, which has a page element associated with it and which typically conveys information on the page's topic or sponsor; one or more body page partitions 260 and window page partitions 275, each of which is associated with a page element which as noted gives the informational and transactional content of the page. For example, a page element may contain presentation data selected as a menu option in the previous |

**Appendix B-1**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,347,632 (Filepp)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,347,632 (Filepp) |
|---|---|
|  | page, and/or may contain prompts to which a user responds in pre-defined fields to execute transactions. As illustrated in FIG. 3b, the page element associated with body page partition 260 includes display fields 270, 271, 272. A window page partition 275 seen in FIG. 3a represents the same informational and transactional capability as a body partition, except greater flexibility is provided for its location and size. Continuing with reference to FIG. 3b, advertisements 280 provided over network 10, like page elements, also include information for display on page 255, and may be included in any partition of a page. Advertisements 280 may be presented to the user on an individual basis from queues of advertisements that are constructed off-line by business system 130, and sent to file server 205 where they are accessible to each RS 400. Individual queues of advertisements are constructed based upon data collected on the partitioned applications that were accessed by a user, and upon events the user generated in response to applications. The data are collected and reported by RS 400 to a data collection co-application in file server 205 for later transmission to business system 130. In addition to application access and use characteristics, a variety of other parameters, such as user demographics or postal ZIP code, may be used as targeting criteria. From such data, queues of advertisements are constructed and targeted to either individual users or to sets of users who fall into certain groups according such parameters. Also with reference to FIG. 3b, a user interface 285 is displayed on the page which enables the user to interact with the network RS 400 and other elements of network 10, so as to cause such operations as navigating from page to page, performing a transaction, or obtaining more information about other applications. As shown in FIG. 3b, user interface 285 includes a command bar 290 having a number of commands 291-298 which the user can execute. The functions of commands 291-298 are discussed in greater detail below.<br><br>*See* col. 9, lines 27-34<br>[A]dvertisements 280 provided over network 10, like page elements, also include information for display on page 255, and may be included in any partition of a page. Advertisements 280 may be presented to the user on an individual basis from queues of advertisements that are constructed off-line by business system 130, and sent to file server 205 where they are accessible to each RS 400.<br><br>*See also* Figs. 1-9 and associated text. |

**Appendix B-1**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,347,632 (Filepp)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,347,632 (Filepp) |
|---|---|
|  | *See also* claim limitation [1a].<br><br>To the extent it is found that Filepp does not disclose this feature expressly or inherently, it would have been obvious to combine Filepp with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 4* |  |
| [4] The method of claim 1, wherein the customized page file includes customized graphics, sounds, applets, links, and text. | Filepp discloses that the customized page file includes customized graphics, sounds, applets, links, and text. For example, the page file includes graphics, text, and/or applications that have been customized for the user based on, for example, the user's location, demographic, and/or browsing behavior.<br><br>*See also* col. 9, lines 41-47<br>In addition to application access and use characteristics, a variety of other parameters, such as user demographics or postal ZIP code, may be used as targeting criteria. From such data, queues of advertisements are constructed and targeted to either individual users or to sets of users who fall into certain groups according to such parameters.<br><br>*See* col. 10, lines 30-42<br>In accordance with the invention, the screens presented at the user's monitor are each divided into addressable partitions shown at FIG. 3a, and the display text and graphics necessary to make up the partitions, as well as the program instructions and control data necessary to deliver and sustain the screens and partitions are formulated from pre-created objects, Further, the objects are structured in accordance with an architecture that permits the displayed data to be relocatable on the screen, and to be reusable to make up the other screens and other sessions, either as pre-created and stored sessions or interactive sessions, dynamically created in response to the user's requests.<br><br>*See* col. 10, line 66 to col. 11 line 2<br>Page element objects 504, on the other hand, are structured to contain the display data, i.e. text and graphic, to be displayed which is mapped within screen partitions 250 to 290, and to further provide |

**Appendix B-1**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,347,632 (Filepp)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,347,632 (Filepp) |
|---|---|
| | the associated control data and programs.<br><br>*See* col. 11, lines 64-66<br>Still further, advertising objects 510 include the text and graphics that may be presented at ad partition 280 presented on the monitor screen as shown in FIG. 3b.<br><br>*See* col. 12, lines 18-23<br>Also in accordance with the invention, object 500 to 510 shown in FIG. 4c are themselves made up of further sub-blocks of information that may be selectively collected to define the objects and resulting pages that ultimately constitute the application presented to the user in an interactive text and graphic session.<br><br>*See* col. 14, lines 35-45.<br>ADVERTISEMENT OBJECT,<br>[<header> (compression descriptor) (presentation data) . . . (program call) . . . (custom cursor) . . . (custom text) . . . (field definition) . . . (field-level program call) . . . (custom cursor type 2) . . . (custom graphic) . . . (field definition type 2) . . . (array definition) . . . (inventory control)];<br>As can be seen, advertisement objects are substantially the same as page element objects, with the difference being that, as their name implies, their subject matter is selected to concern advertising.<br><br>*See also* col. 39, lines 37-49.<br>In accordance with the invention, the Reception System application software supports an interactive text/graphics sessions by managing objects. As explained above, objects specify the format and provide the content; i.e., the text and graphics, displayed on the user's screen so as to make up the pages that constitute the application. As also explained, pages are divided into separate areas called "partitions" by certain objects, while certain other objects describe windows which can be opened on the pages. Further, still other objects contain TBOL application programs which facilitate the data processing necessary to present the pages and their associated text and graphics.<br><br>*See also* col. 81, line 11-22 |

- 41 -

**Appendix B-1**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,347,632 (Filepp)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,347,632 (Filepp) |
|---|---|
| | Selectors are used to dynamically link and load other objects such as Page Element Object (PEO) or other PO based upon parameters that they are passed when they are called. Such parameters are specified in call segments or selector segments. This feature enables RS 400 to conditionally deliver information to the user base upon predetermined parameters, such as his personal demographics or locale. For example, the parameters specified may be the transaction codes required to retrieve the user's age, sex, and personal interest codes from records contained in user profiles stored at the switch/file server layer 200. |
| | *See also* col. 93, lines 27-42<br>Data collection manager 441 gathers information concerning a user's individual system usage characteristics. The types of informational services accessed, transactions processed, time information between various events, and the like are collected by data collection manager 441, which compiles the information into message packets (not shown). The message packets are sent to network 10 via object/communication manager interface 443 and link communications manager 444. Message packets are then stored by high function host 110 and sent to an offline processing facility for processing. The characteristics of users are ultimately used as a means to select or target various display objects, such as advertisement objects, to be sent to particular users based on consumer marketing strategies, or the like, and for system optimization.<br><br>*See also* Figs. 1-11 and associated text.<br><br>*See also* claim limitation [1b].<br><br>To the extent it is found that Filepp does not disclose this feature expressly or inherently, it would have been obvious to combine Filepp with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 5* | |
| [5] The method of claim 1, wherein the customized page | Filepp discloses that the customized page file includes customized advertisements. For example, the customized page file formed by the interactive network (second type network node) for the client |

Appendix B-1

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,347,632 (Filepp)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,347,632 (Filepp) |
|---|---|
| file includes customized advertisements. | computer (first type network node) includes targeted advertisements that have been customized for the user based on, for example, the user's location, demographic, and/or browsing behavior. |
| | *See* Abstract. An interactive computer system network enables a user to display desired information, such as news, financial and cultural information, and perform desired transactional services, such as banking and shopping, through any of a plurality of types of personal computers. User inputs are received by the personal computer and are translated into personal computer-independent data objects and executable code objects which are then processed by the network. These objects comprise partitioned applications required to process user inputs, portions of which are distributed and stored either locally within the personal computer or remotely in a host computer. User characteristics are monitored by the system in order to generate and display specific advertisements to the user based on individual usage characteristics and predetermined interests. |
| | *See also* col. 8, line 64 to col. 9, line 57. Applications, i.e. information events, are composed of a sequence of one or more pages opened at screen 414 of monitor 412. This is better seen with reference to FIG. 3a and 3b were a page 255 is illustrated as might appear at screen 414 of monitor 412. With reference to FIG. 3a, each page 255 is formatted into page partitions 250, 260, 280, and 290 (not to be confused with applications partitions). Window page partitions 275, well known in the art, are also available and are opened and closed conditionally on page 255 upon the occurrence of an event specified in the application being run. Each page partition 250-290 and window 275 is made up of a page element which define the content of the partition or window. Each page 255 includes: a header page partition 250, which has a page element associated with it and which typically conveys information on the page's topic or sponsor; one or more body page partitions 260 and window page partitions 275, each of which is associated with a page element which as noted gives the informational and transactional content of the page. For example, a page element may contain presentation data selected as a menu option in the previous page, and/or may contain prompts to which a user responds in pre-defined fields to execute transactions. As illustrated in FIG. 3b, the page element associated with body page partition 260 |

**Appendix B-1**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,347,632 (Filepp)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,347,632 (Filepp) |
|---|---|
| | includes display fields 270, 271, 272.  A window page partition 275 seen in FIG. 3a represents the same informational and transactional capability as a body partition, except greater flexibility is provided for its location and size.  Continuing with reference to FIG. 3b, advertisements 280 provided over network 10, like page elements, also include information for display on page 255, and may be included in any partition of a page.  Advertisements 280 may be presented to the user on an individual basis from queues of advertisements that are constructed off-line by business system 130, and sent to file server 205 where they are accessible to each RS 400.  Individual queues of advertisements are constructed based upon data collected on the partitioned applications that were accessed by a user, and upon events the user generated in response to applications.  The data are collected and reported by RS 400 to a data collection co-application in file server 205 for later transmission to business system 130.  In addition to application access and use characteristics, a variety of other parameters, such as user demographics or postal ZIP code, may be used as targeting criteria.  From such data, queues of advertisements are constructed and targeted to either individual users or to sets of users who fall into certain groups according such parameters.  Also with reference to FIG. 3b, a user interface 285 is displayed on the page which enables the user to interact with the network RS 400 and other elements of network 10, so as to cause such operations as navigating from page to page, performing a transaction, or obtaining more information about other applications.  As shown in FIG. 3b, user interface 285 includes a command bar 290 having a number of commands 291-298 which the user can execute.  The functions of commands 291-298 are discussed in greater detail below.<br><br>*See also* col. 9, lines 41-47<br>In addition to application access and use characteristics, a variety of other parameters, such as user demographics or postal ZIP code, may be used as targeting criteria.  From such data, queues of advertisements are constructed and targeted to either individual users or to sets of users who fall into certain groups according to such parameters.<br><br>*See* col. 10 lines 30-42<br>In accordance with the invention, the screens presented at the user's monitor are each divided into addressable partitions shown at FIG. 3a, and the display text and graphics necessary to make up the |

**Appendix B-1**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,347,632 (Filepp)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,347,632 (Filepp) |
|---|---|
| | partitions, as well as the program instructions and control data necessary to deliver and sustain the screens and partitions are formulated from pre-created objects, Further, the objects are structured in accordance with an architecture that permits the displayed data to be relocatable on the screen, and to be reusable to make up the other screens and other sessions, either as pre-created and stored sessions or interactive sessions, dynamically created in response to the user's requests.<br><br>*See* col. 10 line 66 to col. 11 line 2<br>Page element objects 504, on the other hand, are structured to contain the display data, i.e. text and graphic, to be displayed which is mapped within screen partitions 250 to 290, and to further provide the associated control data and programs.<br><br>*See* col. 11 lines 64-66<br>Still further, advertising objects 510 include the text and graphics that may be presented at ad partition 280 presented on the monitor screen as shown in FIG. 3b.<br><br>*See* col. 12 lines 18-23<br>Also in accordance with the invention, object 500 to 510 shown in FIG. 4c are themselves made up of further sub-blocks of information that may be selectively collected to define the objects and resulting pages that ultimately constitute the application presented to the user in an interactive text and graphic session.<br><br>*See also* col. 81, line 11-22<br>Selectors are used to dynamically link and load other objects such as Page Element Object (PEO) or other PO based upon parameters that they are passed when they are called. Such parameters are specified in call segments or selector segments. This feature enables RS 400 to conditionally deliver information to the user base upon predetermined parameters, such as his personal demographics or locale. For example, the parameters specified may be the transaction codes required to retrieve the user's age, sex, and personal interest codes from records contained in user profiles stored at the |

**Appendix B-1**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,347,632 (Filepp)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,347,632 (Filepp) |
|---|---|
| | switch/file server layer 200. |
| | *See also* col. 91, lines 14-25. |
| | Ad manager 442 is invoked by object interpreter 435 to return the object-id of the next of the next available advertisement to be displayed. Ad manager 442 maintains a queue of advertisement object id's targeted to the specific user currently accessing interactive network 10. Advertisement objects are pre-fetched from interactive system 10 from a personalized queue of advertisements that is constructed using data previously collected from user generated events and/or reports of objects used in the building of pages or windows, compiled by data collection manager 466 and transmitted to interactive system 10. |
| | *See also* col. 92, lines 37-66. |
| | Besides its ability to provide advertisements that have been targeted to each individual user, two very important response time problems have been solved by ad manager 442 of the present invention. The first is to eliminate from the new page response time the time it takes to retrieve an advertisement object from the host system. This is accomplished by using the aforementioned pre-fetching mechanism. The second problem is caused by pre-fetching, which results in asynchronous concurrent activities .involving the retrieval of objects from interactive system 10. If an advertisement is prefetched at the same time as other objects required for a page requested, the transmission of the advertisement object packets could delay the transmission of the other objects required to complete the current page by the amount of time required to transmit the advertisement object(s) . . . . By separating the function request (1) into its two components, (2) and (3), object interpreter 435 is now able to determine when to request advertisement object-id's and from its knowledge of the page build process, is able to best determine when another advertisement object can be pre-fetched, thus causing the least impact on the page response time. |
| | *See also* col. 93, lines 27-42 |
| | Data collection manager 441 gathers information concerning a user's individual system usage characteristics. The types of informational services accessed, transactions processed, time information between various events, and the like are collected by data collection manager 441, which compiles the |

**Appendix B-1**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,347,632 (Filepp)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,347,632 (Filepp) |
|---|---|
| | information into message packets (not shown).  The message packets are sent to network 10 via object/communication manager interface 443 and link communications manager 444.  Message packets are then stored by high function host 110 and sent to an offline processing facility for processing.  The characteristics of users are ultimately used as a means to select or target various display objects, such as advertisement objects, to be sent to particular users based on consumer marketing strategies, or the like, and for system optimization.<br><br>*See also* Figs. 2-9 and associated text.<br><br>*See also* claim limitation [1b].<br><br>To the extent it is found that Filepp does not disclose this feature expressly or inherently, it would have been obvious to combine Filepp with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter.  *See* Appendix C. |
| *Claim 6* | |
| [6a] The method of claim 1, wherein: the service request includes an IP address for identifying the first type network node, and | Filepp discloses that the service request includes an IP  address for identifying the first type network node.  For example, when the client computer (first type network node) requests information from the interactive network (second type network node), the client computer (first type network node) is identified by a "source id."<br><br>*See* col. 1, lines 11-25.<br>This invention relates generally to a distributed processing, interactive computer network intended to provide very large numbers of simultaneous users; e.g. millions, with access to a large number; e.g., thousands, of applications which include pre-created, interactive text/graphic sessions; and more particularly, to a computer network in which the interactive text/graphic sessions are comprised of pre-created blocks of data and program instructions which may be distributed downwardly in the network for use at a software enhanced user computer terminal that reduces processing demand on the higher-level network elements, thus permitting the higher-level elements to function primarily as data |

## Appendix B-1

## Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,347,632 (Filepp)

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,347,632 (Filepp) |
|---|---|
|  | supply and maintenance resource, and, thereby, reduce network complexity, cost and response time. |
|  | *See* col. 24, lines 23-38. <br> With regard to destination routing, the basic premise of DIA is that each message flowing through network 10 carries a DIA header (FM0) that identifies its source and destination ids. Accordingly, switching applications exist which map destination ids to resources and route messages appropriately. In accordance with the invention, in order to send a reply, the recipient application simply swaps the content of the destination and source id fields and return message. In the context of DIA the totality of ports, devices, and programs which are managed by a particular Switch and defined as destinations, are referred to as "regions" In this regard, each Switch, i.e. server 205 or cache/concentrator 302 shown in FIG. 2, need only be aware of the destination ids of switches resident within its own regions and of the destination ids of switches resident in immediately adjacent nodes. Since server 205 is the central hub within network 10 for application message routing, messages destined for end-users unknown to a switch are routed toward server 205 for eventual resolution. Destination id naming conventions then enable server 205 to determine the appropriate switch to which the message should be forwarded. Particularly, "destination id" fields "regions" and "unit" are used for this purpose. |
|  | *See also* col. 26, lines 28-34. <br> In normal processing, reception system applications send requests to host applications. Host applications return responses to these requests. The Reception System application initiates this dialogue. Sending nodes are responsible for inserting the proper "source id" (SID) and "destination id" (DID) into the FM0. |
|  | *See also* claim limitation [1d]. |
|  | To the extent it is found that Filepp does not disclose this feature expressly or inherently, it would have been obvious to combine Filepp with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [6b] identifying the first type | Filepp discloses identifying the first type network node based on the service request comprises using |

- 48 -

**Appendix B-1**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,347,632 (Filepp)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,347,632 (Filepp) |
|---|---|
| network node based on the service request comprises using the IP address included in the service request to identify the first type network node. | the IP address included in the service request to identify the first type network node.  For example, when the client computer (first type network node) requests information from the interactive network (second type network node), the user's computer (first type network node) is identified by a "source id." <br><br> *See* col. 1, lines 11-25. <br> This invention relates generally to a distributed processing, interactive computer network intended to provide very large numbers of simultaneous users; e.g. millions, with access to a large number; e.g., thousands, of applications which include pre-created, interactive text/graphic sessions; and more particularly, to a computer network in which the interactive text/graphic sessions are comprised of pre-created blocks of data and program instructions which may be distributed downwardly in the network for use at a software enhanced user computer terminal that reduces processing demand on the higher-level network elements, thus permitting the higher-level elements to function primarily as data supply and maintenance resource, and, thereby, reduce network complexity, cost and response time. <br><br> *See* col. 24, lines 23-38. <br> With regard to destination routing, the basic premise of DIA is that each message flowing through network 10 carries a DIA header (FM0) that identifies its source and destination ids.  Accordingly, switching applications exist which map destination ids to resources and route messages appropriately. In accordance with the invention, in order to send a reply, the recipient application simply swaps the content of the destination and source id fields and return message.  In the context of DIA the totality of ports, devices, and programs which are managed by a particular Switch and defined as destinations, are referred to as "regions"  In this regard, each Switch, i.e. server 205 or cache/concentrator 302 shown in FIG. 2, need only be aware of the destination ids of switches resident within its own regions and of the destination ids of switches resident in immediately adjacent nodes.  Since server 205 is the central hub within network 10 for application message routing, messages destined for end-users unknown to a switch are routed toward server 205 for eventual resolution.  Destination id naming conventions then enable server 205 to determine the appropriate switch to which the message should be forwarded.  Particularly, "destination id" fields "regions" and "unit" are used for this purpose. |

**Appendix B-1**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,347,632 (Filepp)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,347,632 (Filepp) |
|---|---|
| | *See also* col. 26, lines 28-34.<br>In normal processing, reception system applications send requests to host applications. Host applications return responses to these requests. The Reception System application initiates this dialogue. Sending nodes are responsible for inserting the proper "source id" (SID) and "destination id" (DID) into the FM0.<br><br>*See also* claim limitation [1e].<br><br>To the extent it is found that Filepp does not disclose this feature expressly or inherently, it would have been obvious to combine Filepp with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 7* | |
| [7a] A method for providing web page customization service to a plurality of first type network nodes at a second type network node, comprising the steps of: | Filepp discloses a method for providing web page customization service to a plurality of first type network nodes at a second type network node.<br><br>To the extent it is found that Filepp does not disclose this feature expressly or inherently, it would have been obvious to combine Filepp with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1a]. |
| [7b] forming at least a page file for each of the first type network nodes; | Filepp discloses forming at least a page file for each of the first type network nodes.<br><br>To the extent it is found that Filepp does not disclose this feature expressly or inherently, it would have been obvious to combine Filepp with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1b]. |

**Appendix B-1**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,347,632 (Filepp)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,347,632 (Filepp) |
|---|---|
| [7c] forming at least a page file for the second type network node; | Filepp discloses forming at least a page file for the second type network node.<br><br>To the extent it is found that Filepp does not disclose this feature expressly or inherently, it would have been obvious to combine Filepp with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1c]. |
| [7d] receiving a service request from one of the first type network nodes; | Filepp discloses receiving a service request from one of the first type network nodes.<br><br>To the extent it is found that Filepp does not disclose this feature expressly or inherently, it would have been obvious to combine Filepp with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1d]. |
| [7e] determining whether the first type network node participates in the web page customization service; | Filepp discloses determining whether the first type network node participates in the web page customization service.<br><br>To the extent it is found that Filepp does not disclose this feature expressly or inherently, it would have been obvious to combine Filepp with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1e]. |
| [7f] if the first type network node participates in the web page customization service, forming a customized page file for the service request by | Filepp discloses, if the first type network node participates in the web page customization service, forming a customized page file for the service request by including the page file formed for the first type network node within the page file formed for the second type network node.<br><br>To the extent it is found that Filepp does not disclose this feature expressly or inherently, it would |

**Appendix B-1**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,347,632 (Filepp)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,347,632 (Filepp) |
|---|---|
| including the page file formed for the first type network node within the page file formed for the second type network node; and | have been obvious to combine Filepp with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1f]. |
| [7g] if the first type network node does not participate in the web page customization service, forming a page file for the service request by using the page file formed for the second type network node. | Filepp discloses, if the first type network node does not participate in the web page customization service, forming a page file for the service request by using the page file formed for the second type network node. For example, once a user accesses the interactive network (second type network node) the user will be presented with a log on screen. Customized page files containing targeted advertisements can only be created after the user logs on to the interactive network and based on the user's location, demographic, and/or browsing behavior.<br><br>*See* col. 8, lines 47-61<br>The user typically accesses network 10 using a 1,200 or 2,400 bps modem (not shown). To initiate a session with network 10, objects representing the logon application are retrieved from the user's personal diskette, including the R.S. application software, which was previously set up during a standard installation enrollment procedure with network 10. Once communication between RS 400 and cache/concentrator layer 300 has been established, the user begins a standard logon procedure by inputting a personal entry code. Once the logon procedure is complete, the user can begin to access various desired services (i.e. partitioned applications) which provide display of requested information and/or transaction operations.<br><br>*See also* col. 9, lines 41-47<br>In addition to application access and use characteristics, a variety of other parameters, such as user demographics or postal ZIP code, may be used as targeting criteria. From such data, queues of advertisements are constructed and targeted to either individual users or to sets of users who fall into certain groups according to such parameters.<br><br>*See also* col. 81, line 11-22 |

**Appendix B-1**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,347,632 (Filepp)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,347,632 (Filepp) |
|---|---|
| | Selectors are used to dynamically link and load other objects such as Page Element Object (PEO) or other PO based upon parameters that they are passed when they are called. Such parameters are specified in call segments or selector segments. This feature enables RS 400 to conditionally deliver information to the user base upon predetermined parameters, such as his personal demographics or locale. For example, the parameters specified may be the transaction codes required to retrieve the user's age, sex, and personal interest codes from records contained in user profiles stored at the switch/file server layer 200.<br><br>*See also* claim limitation [1f].<br><br>To the extent it is found that Filepp does not disclose this feature expressly or inherently, it would have been obvious to combine Filepp with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 8* | |
| [8] The method of claim 7, wherein the first type network nodes are ISP nodes, and the second type network node is an ICP node. | Filepp discloses that the first type network nodes are ISP nodes, and the second type network node is an ICP node.<br><br>To the extent it is found that Filepp does not disclose this feature expressly or inherently, it would have been obvious to combine Filepp with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [2]. |
| *Claim 9* | |
| [9] The method of claim 7, wherein the first type network nodes are organization nodes, and the second type network | Filepp discloses that the first type network nodes are organization nodes, and the second type network node is an ICP node.<br><br>To the extent it is found that Filepp does not disclose this feature expressly or inherently, it would have been obvious to combine Filepp with the knowledge of a person of ordinary skill and/or other |

**Appendix B-1**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,347,632 (Filepp)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,347,632 (Filepp) |
|---|---|
| node is an ICP node. | prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [3]. |
| *Claim 10* | |
| [10] The method of claim 7, wherein the customized page file includes customized graphics, sounds, applets, links, and text. | Filepp discloses that the customized page file includes customized graphics, sounds, applets, links, and text.<br><br>To the extent it is found that Filepp does not disclose this feature expressly or inherently, it would have been obvious to combine Filepp with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [4]. |
| *Claim 11* | |
| [11] The method of claim 7, wherein the customized page file includes customized advertisements. | Filepp discloses that the customized page file includes customized advertisements.<br><br>To the extent it is found that Filepp does not disclose this feature expressly or inherently, it would have been obvious to combine Filepp with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [5]. |
| *Claim 12* | |
| [12a] The method of claim 7, wherein: the service request from one of the first type network nodes includes an IP address for identifying the first | Filepp discloses that the service request from one of the first type network nodes includes an IP address for identifying the first type network node.<br><br>To the extent it is found that Filepp does not disclose this feature expressly or inherently, it would have been obvious to combine Filepp with the knowledge of a person of ordinary skill and/or other |

**Appendix B-1**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,347,632 (Filepp)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,347,632 (Filepp) |
|---|---|
| type network node, and | prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [6a]. |
| [12b] determining whether the first type network node participates in the web page customization service comprises using the IP address included in the service request to identify the first type network node. | Filepp discloses that determining whether the first type network node participates in the web page customization service comprises using the IPI address included in the service request to identify the first type network node.<br><br>To the extent it is found that Filepp does not disclose this feature expressly or inherently, it would have been obvious to combine Filepp with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [6b]. |
| *Claim 13* | |
| [13a] A method for providing web page customization service to a plurality of first type network nodes at a second type network node, comprising the steps of: | Filepp discloses a method for providing web page customization service to a plurality of first type network nodes at a second type network node.<br><br>To the extent it is found that Filepp does not disclose this feature expressly or inherently, it would have been obvious to combine Filepp with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1a]. |
| [13b] forming a plurality of advertisements for the first type network nodes; | Filepp discloses forming a plurality of advertisements for the first type network nodes.<br><br>To the extent it is found that Filepp does not disclose this feature expressly or inherently, it would have been obvious to combine Filepp with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |

- 55 -

**Appendix B-1**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,347,632 (Filepp)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,347,632 (Filepp) |
|---|---|
| | *See* claim limitations [1b] and [5]. |
| [13c] forming at least a page file for the second type network node; | Filepp discloses forming at least a page file for the second type network node.<br><br>To the extent it is found that Filepp does not disclose this feature expressly or inherently, it would have been obvious to combine Filepp with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1c]. |
| [13d] receiving a service request from one of the first type network nodes; | Filepp discloses receiving a service request from one of the first type network nodes.<br><br>To the extent it is found that Filepp does not disclose this feature expressly or inherently, it would have been obvious to combine Filepp with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1d]. |
| [13e] identifying advertisements for the first type network node; and | Filepp discloses identifying advertisements for the first type network node.<br><br>To the extent it is found that Filepp does not disclose this feature expressly or inherently, it would have been obvious to combine Filepp with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitations [1e] and [5]. |
| [13f] forming a customized page file for the first type network node by including the identified advertisements | Filepp discloses forming a customized page file for the first type network node by including the identified advertisements within the page file formed for the second type network node.<br><br>To the extent it is found that Filepp does not disclose this feature expressly or inherently, it would |

**Appendix B-1**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,347,632 (Filepp)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,347,632 (Filepp) |
|---|---|
| within the page file formed for the second type network node. | have been obvious to combine Filepp with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1f]. |
| *Claim 14* | |
| [14] The method of claim 13, wherein the first type network nodes are ISP nodes, and the second type network node is an ICP node. | Filepp discloses that the first type network nodes are ISP nodes, and the second type network node is an ICP node.<br><br>To the extent it is found that Filepp does not disclose this feature expressly or inherently, it would have been obvious to combine Filepp with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [2]. |
| *Claim 15* | |
| [15] The method of claim 13, wherein the first type network nodes are organization nodes, and the second type network node is an ICP node. | Filepp discloses that the first type network nodes are organization nodes, and the second type network node is an ICP node.<br><br>To the extent it is found that Filepp does not disclose this feature expressly or inherently, it would have been obvious to combine Filepp with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [3]. |
| *Claim 16* | |
| [16] The method of claim 13, wherein the identified advertisements do not cause negative impact on the owner | Filepp discloses that the identified advertisements do not cause negative impact on the owner of the first type network node. For example, customized content (included within the customized page file) includes advertisements within a partition of the page file that contains the requested global content (e.g., news, movie reviews, retail information, stock information) Generally, if the global content is |

**Appendix B-1**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,347,632 (Filepp)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,347,632 (Filepp) |
|---|---|
| of the first type network node. | interesting enough, most end users have a level of tolerance for unsolicited marketing information. Furthermore, the advertisements are specifically selected and displayed to each user based on the user's location, demographic, and/or browsing behavior. Therefore, the identified advertisements do not cause negative impact on the owner of the first type network node. *See* claim limitation [5]. *See* col. 9, lines 27-34 [A]dvertisements 280 provided over network 10, like page elements, also include information for display on page 255, and may be included in any partition of a page. Advertisements 280 may be presented to the user on an individual basis from queues of advertisements that are constructed off-line by business system 130, and sent to file server 205 where they are accessible to each RS 400. *See* col. 9, lines 41-47 In addition to application access and use characteristics, a variety of other parameters, such as user demographics or postal ZIP code, may be used as targeting criteria. From such data, queues of advertisements are constructed and targeted to either individual users or to sets of users who fall into certain groups according to such parameters. *See also* col. 81, line 11-22 Selectors are used to dynamically link and load other objects such as Page Element Object (PEO) or other PO based upon parameters that they are passed when they are called. Such parameters are specified in call segments or selector segments. This feature enables RS 400 to conditionally deliver information to the user base upon predetermined parameters, such as his personal demographics or locale. For example, the parameters specified may be the transaction codes required to retrieve the user's age, sex, and personal interest codes from records contained in user profiles stored at the switch/file server layer 200. *See also* col. 93, lines 27-42 Data collection manager 441 gathers information concerning a user's individual system usage |

**Appendix B-1**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,347,632 (Filepp)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,347,632 (Filepp) |
|---|---|
| | characteristics. The types of informational services accessed, transactions processed, time information between various events, and the like are collected by data collection manager 441, which compiles the information into message packets (not shown). The message packets are sent to network 10 via object/communication manager interface 443 and link communications manager 444. Message packets are then stored by high function host 110 and sent to an offline processing facility for processing. The characteristics of users are ultimately used as a means to select or target various display objects, such as advertisement objects, to be sent to particular users based on consumer marketing strategies, or the like, and for system optimization.<br><br>*See also* claim limitation [5].<br><br>To the extent it is found that Filepp does not disclose this feature expressly or inherently, it would have been obvious to combine Filepp with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 17* | |
| [17a] An apparatus for dynamically forming a customized web page for a first type network node at a second type network node, comprising: | Filepp discloses an apparatus for dynamically forming a customized web page for a first type network node at a second type network node.<br><br>To the extent it is found that Filepp does not disclose this feature expressly or inherently, it would have been obvious to combine Filepp with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1a]. |
| [17b] means for forming at least a page file for the first type network node; | Filepp discloses means for forming at least a page file for the first type network node.<br><br>To the extent it is found that Filepp does not disclose this feature expressly or inherently, it would have been obvious to combine Filepp with the knowledge of a person of ordinary skill and/or other |

**Appendix B-1**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,347,632 (Filepp)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,347,632 (Filepp) |
|---|---|
| | prior art references to obtain the claimed subject matter. *See* Appendix C. *See* claim limitation [1b]. |
| [17c] means for forming at least a page file for the second type network node; | Filepp discloses means for forming at least a page file for the second type network node. To the extent it is found that Filepp does not disclose this feature expressly or inherently, it would have been obvious to combine Filepp with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. *See* claim limitation [1c]. |
| [17d] means for receiving a service request from the first type network node; | Filepp discloses means for receiving a service request from the first type network node. To the extent it is found that Filepp does not disclose this feature expressly or inherently, it would have been obvious to combine Filepp with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. *See* claim limitation [1d]. |
| [17e] means for identifying the first type network node based on the service request; and | Filepp discloses means for identifying the first type network node based on the service request. To the extent it is found that Filepp does not disclose this feature expressly or inherently, it would have been obvious to combine Filepp with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. *See* claim limitation [1e]. |
| [17f] means for forming a customized page file formed for the first type network node | Filepp discloses means for forming a customized page file formed for the first type network node by including the page file formed for the first type network node within the page file for the second type |

**Appendix B-1**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,347,632 (Filepp)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,347,632 (Filepp) |
|---|---|
| by including the page file formed for the first type network node within the page file for the second type network node. | network node.<br><br>To the extent it is found that Filepp does not disclose this feature expressly or inherently, it would have been obvious to combine Filepp with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1f]. |
| *Claim 18* | |
| [18] The apparatus of claim 17, wherein the first type network node is an ISP node, and the second type network node is an ICP node. | Filepp discloses that the first type network node is an ISP node, and the second type network node is an ICP node.<br><br>To the extent it is found that Filepp does not disclose this feature expressly or inherently, it would have been obvious to combine Filepp with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [2]. |
| *Claim 19* | |
| [19] The apparatus of claim 17, wherein the first type network node is an organization node, and the second type network node is an ICP node. | Filepp discloses that the first type network node is an organization node, and the second type network node is an ICP node.<br><br>To the extent it is found that Filepp does not disclose this feature expressly or inherently, it would have been obvious to combine Filepp with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [3]. |
| *Claim 20* | |
| [20] The apparatus of claim | Filepp discloses that the customized page file includes customized graphics, sounds, applets, links, |

**Appendix B-1**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,347,632 (Filepp)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,347,632 (Filepp) |
|---|---|
| 17, wherein the customized page file includes customized graphics, sounds, applets, links, and text. | and text.<br><br>To the extent it is found that Filepp does not disclose this feature expressly or inherently, it would have been obvious to combine Filepp with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter.  *See* Appendix C.<br><br>*See* claim limitation [4]. |
| *Claim 21* | |
| [21] The apparatus of claim 17, wherein the customized page file includes customized advertisements. | Filepp discloses that the customized page file includes customized advertisements.<br><br>To the extent it is found that Filepp does not disclose this feature expressly or inherently, it would have been obvious to combine Filepp with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter.  *See* Appendix C.<br><br>*See* claim limitation [5]. |
| *Claim 22* | |
| [22a] An apparatus for providing web page customization service to a plurality of first type network nodes at a second type network node, comprising: | Filepp discloses an apparatus for providing web page customization service to a plurality of first type network nodes at a second type network node.<br><br>To the extent it is found that Filepp does not disclose this feature expressly or inherently, it would have been obvious to combine Filepp with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter.  *See* Appendix C.<br><br>*See* claim limitation [7a]. |
| [22b] means for forming at least a page file for each of the | Filepp discloses means for forming at least a page file for each of the first type network nodes.<br><br>To the extent it is found that Filepp does not disclose this feature expressly or inherently, it would |

- 62 -

**Appendix B-1**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,347,632 (Filepp)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,347,632 (Filepp) |
|---|---|
| first type network nodes; | have been obvious to combine Filepp with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [7b]. |
| [22c] means for forming at least a page file for the second type network node; | Filepp discloses means for forming at least a page file for the second type network node.<br><br>To the extent it is found that Filepp does not disclose this feature expressly or inherently, it would have been obvious to combine Filepp with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [7c]. |
| [22d] means for receiving a service request from one of the first type network nodes; | Filepp discloses means for receiving a service request from one of the first type network nodes.<br><br>To the extent it is found that Filepp does not disclose this feature expressly or inherently, it would have been obvious to combine Filepp with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [7d]. |
| [22e] means for determining whether the first type network node participates in the web page customization service; | Filepp discloses means for determining whether the first type network node participates in the web page customization service.<br><br>To the extent it is found that Filepp does not disclose this feature expressly or inherently, it would have been obvious to combine Filepp with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [7e]. |

**Appendix B-1**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,347,632 (Filepp)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,347,632 (Filepp) |
|---|---|
| [22f] means for forming a customized page file for the service request by including the page file formed for the first type network node within the page file formed for the second type network node, if the first type network node participates in the web page customization service; and | Filepp discloses means for forming a customized page file for the service request by including the page file formed for the first type network node within the page file formed for the second type network node, if the first type network node participates in the web page customization service.<br><br>To the extent it is found that Filepp does not disclose this feature expressly or inherently, it would have been obvious to combine Filepp with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [7f]. |
| [22g] means for forming a page file for the service request by using the page file formed for the second type network node, if the first type network node does not participate in the web page customization service. | Filepp discloses means for forming a page file for the service request by using the page file formed for the second type network node, if the first type network node does not participate in the web page customization service.<br><br>To the extent it is found that Filepp does not disclose this feature expressly or inherently, it would have been obvious to combine Filepp with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [7g]. |
| *Claim 23* | |
| [23] The apparatus of claim 22, wherein the first type network nodes are ISP nodes, and the second type network node is an ICP node. | Filepp discloses that the first type network nodes are ISP nodes, and the second type network node is an ICP node.<br><br>To the extent it is found that Filepp does not disclose this feature expressly or inherently, it would have been obvious to combine Filepp with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |

**Appendix B-1**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,347,632 (Filepp)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,347,632 (Filepp) |
|---|---|
| | *See* claim limitation [8]. |
| *Claim 24* | |
| [24] The apparatus of claim 22, wherein the first type network nodes are organization nodes, and the second type network node is an ICP node. | Filepp discloses that the first type network nodes are organization nodes, and the second type network node is an ICP node.<br><br>To the extent it is found that Filepp does not disclose this feature expressly or inherently, it would have been obvious to combine Filepp with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [9]. |
| *Claim 25* | |
| [25] The apparatus of claim 22, wherein the customized page file includes customized graphics, sounds, applets, links, and text. | Filepp discloses that the customized page file includes customized graphics, sounds, applets, links, and text.<br><br>To the extent it is found that Filepp does not disclose this feature expressly or inherently, it would have been obvious to combine Filepp with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [10]. |
| *Claim 26* | |
| [26] The apparatus of claim 25, wherein the customized page file includes customized advertisements. | Filepp discloses that the customized page file includes customized advertisements.<br><br>To the extent it is found that Filepp does not disclose this feature expressly or inherently, it would have been obvious to combine Filepp with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |

**Appendix B-1**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,347,632 (Filepp)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,347,632 (Filepp) |
|---|---|
| | *See* claim limitation [11]. |
| *Claim 27* | |
| [27a] An apparatus for providing web page customization service to a plurality of first type network nodes at a second type network node, comprising: | Filepp discloses an apparatus for providing web page customization service to a plurality of first type network nodes at a second type network node.<br><br>To the extent it is found that Filepp does not disclose this feature expressly or inherently, it would have been obvious to combine Filepp with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [13a]. |
| [27b] means for forming a plurality of advertisements for the first type network nodes; | Filepp discloses means for forming a plurality of advertisements for the first type network nodes.<br><br>To the extent it is found that Filepp does not disclose this feature expressly or inherently, it would have been obvious to combine Filepp with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [13b]. |
| [27c] means for forming at least a page file for the second type network node; | Filepp discloses means for forming at least a page file for the second type network node.<br><br>To the extent it is found that Filepp does not disclose this feature expressly or inherently, it would have been obvious to combine Filepp with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [13c]. |
| [27d] means for receiving a service request from one of the | Filepp discloses means for receiving a service request from one of the first type network nodes. |

- 66 -

**Appendix B-1**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,347,632 (Filepp)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,347,632 (Filepp) |
|---|---|
| first type network nodes; | To the extent it is found that Filepp does not disclose this feature expressly or inherently, it would have been obvious to combine Filepp with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [13d]. |
| [27e] means for identifying advertisements for the first type network node; and | Filepp discloses means for identifying advertisements for the first type network node.<br><br>To the extent it is found that Filepp does not disclose this feature expressly or inherently, it would have been obvious to combine Filepp with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [13e]. |
| [27f] means for forming a customized page file for the first type network node by including the identified advertisements within the page file formed for the second type network node. | Filepp discloses means for forming a customized page file for the first type network node by including the identified advertisements within the page file formed for the second type network node.<br><br>To the extent it is found that Filepp does not disclose this feature expressly or inherently, it would have been obvious to combine Filepp with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [13f]. |
| *Claim 28* | |
| [28] The apparatus of claim 27, wherein the first type network nodes are ISP nodes, and the second type network node is an ICP node. | Filepp discloses that the first type network nodes are ISP nodes, and the second type network node is an ICP node.<br><br>To the extent it is found that Filepp does not disclose this feature expressly or inherently, it would have been obvious to combine Filepp with the knowledge of a person of ordinary skill and/or other |

**Appendix B-1**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,347,632 (Filepp)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,347,632 (Filepp) |
|---|---|
| | prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [14]. |
| *Claim 29* | |
| [29] The apparatus of claim 27, wherein the first type network nodes are organization nodes, and the second type network node is an ICP node. | Filepp discloses that the first type network nodes are organization nodes, and the second type network node is an ICP node.<br><br>To the extent it is found that Filepp does not disclose this feature expressly or inherently, it would have been obvious to combine Filepp with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [15]. |
| *Claim 30* | |
| [30] The apparatus of claim 27, wherein the identified advertisements do not cause negative impact on the owner of the first type network node. | Filepp discloses that the identified advertisements do not cause negative impact on the owner of the first type network node.<br><br>To the extent it is found that Filepp does not disclose this feature expressly or inherently, it would have been obvious to combine Filepp with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [16]. |

**Appendix B-2**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,598,536 (Slaughter)**

U.S. Patent No. 5,598,536 to Slaughter et al. ("Slaughter") is prior art to U.S. Patent No. 6,442,577 ("the '577 patent") under 35 U.S.C. 102(b) because it issued as a U.S. patent on Jan. 28, 1997, which more than one year prior to the Nov. 3, 1998 filing date of the '577 patent. Moreover, Slaughter is prior art to the '577 patent under 35 U.S.C. 102(e) because it issued from a U.S. patent application filed on Aug. 9, 1994, which is prior to the Nov. 3, 1998 filing date of the '577 patent.

As detailed in this chart, Slaughter anticipates at least claims 1, 2, 6–8, 12–14, 16–18, 22, 23, 27, 28 and 30 of the '577 patent. In addition or in the alternative, claims 1–30 of the '577 patent are obvious over Slaughter in view of the knowledge of a person of ordinary skill and/or one or more other references, as detailed in Appendix C.

This chart is based in whole or in part on the present understanding of positions taken by PageMelding regarding the coverage, scope and construction of the asserted claims to the extent those positions can be deduced from PageMelding's contentions pursuant to Patent Local Rule 3-1 served on August 3, 2012. Nothing herein is an admission that PageMelding's infringement contentions are correct, an admission that Plaintiff's apparent claim constructions are correct, or an admission that ESPN's technology infringes any asserted claim.

**Appendix B-2**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,598,536 (Slaughter)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,598,536 (Slaughter) |
|---|---|
| *Claim 1* | |
| [1a] A method for dynamically forming customized web pages for a first type network node at a second type network node, comprising the steps of: | Slaughter discloses a method for dynamically forming customized web pages for a first type network node at a second type network node. To the extent it is found that Slaughter does not disclose this feature expressly or inherently, it would have been obvious to combine Slaughter with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* col. 2, lines 19–31.<br>Because each remote user has an IP address under the per-user IP addressing scheme, it is possible to track via IP address the network services accessed by particular remote users. Once a user has been provided access to the network itself, following any type of optional user authentication procedure which includes but is not limited to the use of the per-user IP address, it is possible to use IP addresses to ensure that only certain remote users are allowed access to specific network services. By providing IP addresses on a per-user basis, the network administrator is able to utilize standard functionality, which resides in various network services, to authorize access to each such service on a per-user basis.<br><br>*See also* claim limitations [1a] through [1f].<br><br>*See also* Appendix C. |
| [1b] forming at least a page file for the first type network node; | Slaughter discloses forming at least a page file for the first type network node. To the extent it is found that Slaughter does not disclose this feature expressly or inherently, it would have been obvious to combine Slaughter with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* col. 4, lines 11–18.<br>After the remote access server 16 determines a unique IP address based on the user ID string 20 by referring to the database 30, the server 16 sends the unique IP address to the remote computer 12 via, for example, the modems 24, 26 and the telephone lines 22. The remote computer 12 gains access to the network 14 through the remote access server 16 and uses the IP address to communicate with, and utilize |

- 2 -

**Appendix B-2**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,598,536 (Slaughter)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,598,536 (Slaughter) |
|---|---|
| | the services and resources available on, the network 14.<br><br>*See also* col. 4, lines 51–60.<br>That is, the remote access server 16 can keep a log of a particular remote user's network activities because (i) all data exchanged between the network 14 and the remote user's remote computer 12 passes through the server 16 and (ii) the IP address used by the remote user's remote computer 12 uniquely identifies the remote user 18. The server 16 typically will examine more of the data than just the IP address in order to determine exactly what network service or resource is being accessed by the authorized remote user 18. The remote access server 16 can keep the log in the database 30 or in any other storage location which can be on or off the network 14 (e.g., a tape or disk drive).<br><br>*See also* Appendix C. |
| [1c] forming at least a page file for the second type network node; | Slaughter discloses forming at least a page file for the second type network node.  To the extent it is found that Slaughter does not disclose this feature expressly or inherently, it would have been obvious to combine Slaughter with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter.  *See* Appendix C.<br><br>*See* col. 4, lines 43–48.<br>Again, a network manager typically centrally controls and maintains the database 30 and its contents. By linking network access to the identity of the individual remote users, the remote access server 16 can effectively restrict network access to specific network services based on IP address.<br><br>*See also* Appendix C. |
| [1d] receiving a service request from the first type network node; | Slaughter discloses receiving a service request from the first type network node.  To the extent it is found that Slaughter does not disclose this feature expressly or inherently, it would have been obvious to combine Slaughter with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter.  *See* Appendix C. |

**Appendix B-2**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,598,536 (Slaughter)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,598,536 (Slaughter) |
|---|---|
| | *See* Abstract.<br>A remote access server provides a remote user with access to a local computer network. The server receives a user identification string from its communication port, the string having been entered by the remote user at a remote computer which is coupled to the communication port. The string identifies the remote user. The server uses the string to access a database and determine an internet protocol (IP) address associated with the string. The remote computer needs the IP address to communicate on the local computer network. The database includes a user identification string for each remote user and an IP address for each string. The remote access server sends the IP address to the remote computer via the communication port. The server then allows the remote computer to access the local computer network and to communicate on the local computer network using the IP address.<br><br>*See also* col. 2, lines 1–18.<br>It is another object of the invention to provide a remote access server which provides user authentication and security features. One aspect of these features is that the server assigns, on a "per-user" basis, an internet protocol (IP) address which a remote computer needs with some protocols, such as TCP/IP, to communicate on the network. With per-user IP address assignment, the server ensures that each remote user has the same IP address every time that remote user makes a remote access connection to the network via the server, even though that remote user may utilize a different remote computer every time a remote access connection is made. The server uses a user identification string, which is entered into the remote computer by the remote user, to retrieve from a server-internal or server-external database the corresponding IP address for that remote user. The database typically is centrally maintained by a network manager with authority to add and delete remote users and IP addresses.<br><br>*See also* col. 6, lines 32–64.<br>Referring to FIG. 3, it is first necessary to set-up the connections by coupling a communication port of the remote access server to the telephone lines (step 52) and coupling a network port of the remote access server to the local computer network (step 54). The server is now ready to receive a dial-in from a remote computer over the telephone lines and to communicate on the local network. After the remote access server is set-up, the remote user can cause the remote computer to dial-in and connect to the server over the |

**Appendix B-2**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,598,536 (Slaughter)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,598,536 (Slaughter) |
|---|---|
|  | telephone lines. The remote user then enters into the remote computer a unique user ID string which the remote computer sends to the server over the telephone lines. The user ID string uniquely identifies that remote user. The remote access server receives the user ID string from the communication port (step 56). An optional user authentication procedure may occur at this time where a user proves his or her identity by entering a password, by reference to an authentication server database, or by any other method (step 57). Once the remote user is authenticated, that remote user is granted access to the network (step 58). Further authorization may occur in order for an authenticated user to become an authorized user and be granted access to specific network services. The remote access server then uses the received user ID string to perform a look-up in the database of user ID strings and IP addresses (step 59). The remote access server retrieves from the database the unique IP address associated with the user ID string, if any (step 60). The remote access server then sends the retrieved unique IP address to the remote computer via and the communication port and the telephone lines (step 62). The remote access server then allows the remote computer to access the local computer network and to communicate on the network using the unique IP address (step 64). |
| [1e] identifying the first type network node based on the service request; and | Slaughter discloses identifying the first type network node based on the service request.  To the extent it is found that Slaughter does not disclose this feature expressly or inherently, it would have been obvious to combine Slaughter with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter.  *See* Appendix C. |
|  | *See* Abstract. |
|  | A remote access server provides a remote user with access to a local computer network. The server receives a user identification string from its communication port, the string having been entered by the remote user at a remote computer which is coupled to the communication port. The string identifies the remote user. The server uses the string to access a database and determine an internet protocol (IP) address associated with the string. The remote computer needs the IP address to communicate on the local computer network. The database includes a user identification string for each remote user and an IP address for each string. The remote access server sends the IP address to the remote computer via the communication port. The server then allows the remote computer to access the local computer network and |

**Appendix B-2**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,598,536 (Slaughter)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,598,536 (Slaughter) |
|---|---|
| | to communicate on the local computer network using the IP address.<br><br>*See also* col. 2, lines 1–18.<br>It is another object of the invention to provide a remote access server which provides user authentication and security features. One aspect of these features is that the server assigns, on a "per-user" basis, an internet protocol (IP) address which a remote computer needs with some protocols, such as TCP/IP, to communicate on the network. With per-user IP address assignment, the server ensures that each remote user has the same IP address every time that remote user makes a remote access connection to the network via the server, even though that remote user may utilize a different remote computer every time a remote access connection is made. The server uses a user identification string, which is entered into the remote computer by the remote user, to retrieve from a server-internal or server-external database the corresponding IP address for that remote user. The database typically is centrally maintained by a network manager with authority to add and delete remote users and IP addresses.<br><br>*See also* col. 6, lines 32–64.<br>Referring to FIG. 3, it is first necessary to set-up the connections by coupling a communication port of the remote access server to the telephone lines (step 52) and coupling a network port of the remote access server to the local computer network (step 54). The server is now ready to receive a dial-in from a remote computer over the telephone lines and to communicate on the local network. After the remote access server is set-up, the remote user can cause the remote computer to dial-in and connect to the server over the telephone lines. The remote user then enters into the remote computer a unique user ID string which the remote computer sends to the server over the telephone lines. The user ID string uniquely identifies that remote user. The remote access server receives the user ID string from the communication port (step 56). An optional user authentication procedure may occur at this time where a user proves his or her identity by entering a password, by reference to an authentication server database, or by any other method (step 57). Once the remote user is authenticated, that remote user is granted access to the network (step 58). Further authorization may occur in order for an authenticated user to become an authorized user and be granted access to specific network services. The remote access server then uses the received user ID string to perform a look-up in the database of user ID strings and IP addresses (step 59). The remote access server |

## Appendix B-2

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,598,536 (Slaughter)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,598,536 (Slaughter) |
|---|---|
|  | retrieves from the database the unique IP address associated with the user ID string, if any (step 60). The remote access server then sends the retrieved unique IP address to the remote computer via the communication port and the telephone lines (step 62). The remote access server then allows the remote computer to access the local computer network and to communicate on the network using the unique IP address (step 64).<br><br>*See also* col. 6, line 65 to col. 7, line 12.<br>Table 1 below shows the database. A variety of other configurations can be employed for the database. Also, the database can include different and/or additional parameters.<br><br>TABLE 1<br><br>Database Remote User Information<br><br><table><tr><td>USER ID 1</td><td>NAME 1</td><td>IP ADDRESS 1</td></tr><tr><td>USER ID 2</td><td>NAME 2</td><td>IP ADDRESS 2</td></tr><tr><td>USER ID 3</td><td>NAME 3</td><td>IP ADDRESS 3</td></tr><tr><td>USER ID N</td><td>NAME N</td><td>IP ADDRESS N</td></tr></table><br>*See also* Fig. 1 and associated text.<br><br>*See also* claim limitation [1d]. |
| [1f] forming a customized page file formed for the first type network node by including the page file formed for the first type network node within the page file for the second | Slaughter discloses forming a customized page file formed for the first type network node by including the page file formed for the first type network node within the page file for the second type network node.  To the extent it is found that Slaughter does not disclose this feature expressly or inherently, it would have been obvious to combine Slaughter with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter.  *See* Appendix C.<br><br>*See* col. 2, lines 19–31. |

Appendix B-2

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,598,536 (Slaughter)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,598,536 (Slaughter) |
|---|---|
| type network node. | Because each remote user has an IP address under the per-user IP addressing scheme, it is possible to track via IP address the network services accessed by particular remote users. Once a user has been provided access to the network itself, following any type of optional user authentication procedure which includes but is not limited to the use of the per-user IP address, it is possible to use IP addresses to ensure that only certain remote users are allowed access to specific network services. By providing IP addresses on a per-user basis, the network administrator is able to utilize standard functionality, which resides in various network services, to authorize access to each such service on a per-user basis.<br><br>*See also* claim limitations [1b] and [1c].<br><br>*See also* Appendix C. |
| *Claim 2* | |
| [2] The method of claim 1, wherein the first type network node is an ISP node, and the second type network node is an ICP node. | Slaughter discloses that the first type network node is an ISP node, and the second type network node is an ICP node. To the extent it is found that Slaughter does not disclose this feature expressly or inherently, it would have been obvious to combine Slaughter with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* col. 6, lines 32–64.<br>Referring to FIG. 3, it is first necessary to set-up the connections by coupling a communication port of the remote access server to the telephone lines (step 52) and coupling a network port of the remote access server to the local computer network (step 54). The server is now ready to receive a dial-in from a remote computer over the telephone lines and to communicate on the local network. After the remote access server is set-up, the remote user can cause the remote computer to dial-in and connect to the server over the telephone lines. The remote user then enters into the remote computer a unique user ID string which the remote computer sends to the server over the telephone lines. The user ID string uniquely identifies that remote user. The remote access server receives the user ID string from the communication port (step 56). An optional user authentication procedure may occur at this time where a user proves his or her identity by entering a password, by reference to an authentication server database, or by any other method (step 57). Once the remote user is authenticated, that remote user is granted access to the network (step 58). Further |

**Appendix B-2**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,598,536 (Slaughter)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,598,536 (Slaughter) |
|---|---|
| | authorization may occur in order for an authenticated user to become an authorized user and be granted access to specific network services. The remote access server then uses the received user ID string to perform a look-up in the database of user ID strings and IP addresses (step 59). The remote access server retrieves from the database the unique IP address associated with the user ID string, if any (step 60). The remote access server then sends the retrieved unique IP address to the remote computer via the communication port and the telephone lines (step 62). The remote access server then allows the remote computer to access the local computer network and to communicate on the network using the unique IP address (step 64).<br><br>*See also* claim limitation [1a].<br><br>*See also* Appendix C. |
| *Claim 3* | |
| [3] The method of claim 1, wherein the first type network node is an organization node, and the second type network node is an ICP node. | To the extent it is found that Slaughter does not disclose this feature expressly or inherently, it would have been obvious to combine Slaughter with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 4* | |
| [4] The method of claim 1, wherein the customized page file includes customized graphics, sounds, applets, links, and text. | To the extent it is found that Slaughter does not disclose this feature expressly or inherently, it would have been obvious to combine Slaughter with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 5* | |
| [5] The method of claim 1, | To the extent it is found that Slaughter does not disclose this feature expressly or inherently, it would have |

**Appendix B-2**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,598,536 (Slaughter)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,598,536 (Slaughter) |
|---|---|
| wherein the customized page file includes customized advertisements. | been obvious to combine Slaughter with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 6* | |
| [6a] The method of claim 1, wherein: the service request includes an IP address for identifying the first type network node, and | Slaughter discloses that the service request includes an IP address for identifying the first type network node. To the extent it is found that Slaughter does not disclose this feature expressly or inherently, it would have been obvious to combine Slaughter with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* Abstract.<br>A remote access server provides a remote user with access to a local computer network. The server receives a user identification string from its communication port, the string having been entered by the remote user at a remote computer which is coupled to the communication port. The string identifies the remote user. The server uses the string to access a database and determine an internet protocol (IP) address associated with the string. The remote computer needs the IP address to communicate on the local computer network. The database includes a user identification string for each remote user and an IP address for each string. The remote access server sends the IP address to the remote computer via the communication port. The server then allows the remote computer to access the local computer network and to communicate on the local computer network using the IP address.<br><br>*See also* col. 2, lines 1–18.<br>It is another object of the invention to provide a remote access server which provides user authentication and security features. One aspect of these features is that the server assigns, on a "per-user" basis, an internet protocol (IP) address which a remote computer needs with some protocols, such as TCP/IP, to communicate on the network. With per-user IP address assignment, the server ensures that each remote user has the same IP address every time that remote user makes a remote access connection to the network via the server, even though that remote user may utilize a different remote computer every time a remote access connection is made. The server uses a user identification string, which is entered into the remote |

- 10 -

**Appendix B-2**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,598,536 (Slaughter)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,598,536 (Slaughter) |
|---|---|
|  | computer by the remote user, to retrieve from a server-internal or server-external database the corresponding IP address for that remote user. The database typically is centrally maintained by a network manager with authority to add and delete remote users and IP addresses. |
|  | *See also* claim limitation [1d]. |
| [6b] identifying the first type network node based on the service request comprises using the IP address included in the service request to identify the first type network node. | Slaughter discloses that identifying the first type network node based on the service request comprises using the IP address included in the service request to identify the first type network node. To the extent it is found that Slaughter does not disclose this feature expressly or inherently, it would have been obvious to combine Slaughter with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
|  | *See* Abstract. |
|  | A remote access server provides a remote user with access to a local computer network. The server receives a user identification string from its communication port, the string having been entered by the remote user at a remote computer which is coupled to the communication port. The string identifies the remote user. The server uses the string to access a database and determine an internet protocol (IP) address associated with the string. The remote computer needs the IP address to communicate on the local computer network. The database includes a user identification string for each remote user and an IP address for each string. The remote access server sends the IP address to the remote computer via the communication port. The server then allows the remote computer to access the local computer network and to communicate on the local computer network using the IP address. |
|  | *See also* col. 2, lines 1–18. |
|  | It is another object of the invention to provide a remote access server which provides user authentication and security features. One aspect of these features is that the server assigns, on a "per-user" basis, an internet protocol (IP) address which a remote computer needs with some protocols, such as TCP/IP, to communicate on the network. With per-user IP address assignment, the server ensures that each remote user has the same IP address every time that remote user makes a remote access connection to the network via the server, even though that remote user may utilize a different remote computer every time a remote |

**Appendix B-2**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,598,536 (Slaughter)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,598,536 (Slaughter) |
|---|---|
| | access connection is made. The server uses a user identification string, which is entered into the remote computer by the remote user, to retrieve from a server-internal or server-external database the corresponding IP address for that remote user. The database typically is centrally maintained by a network manager with authority to add and delete remote users and IP addresses. *See also* claim limitation [1e]. |
| *Claim 7* | |
| [7a] A method for providing web page customization service to a plurality of first type network nodes at a second type network node, comprising the steps of: | Slaughter discloses a method for providing web page customization service to a plurality of first type network nodes at a second type network node. To the extent it is found that Slaughter does not disclose this feature expressly or inherently, it would have been obvious to combine Slaughter with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. *See* claim limitation [1a]. |
| [7b] forming at least a page file for each of the first type network nodes; | Slaughter discloses forming at least a page file for each of the first type network nodes. To the extent it is found that Slaughter does not disclose this feature expressly or inherently, it would have been obvious to combine Slaughter with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. *See* claim limitation [1b]. |
| [7c] forming at least a page file for the second type network node; | Slaughter discloses forming at least a page file for the second type network node. To the extent it is found that Slaughter does not disclose this feature expressly or inherently, it would have been obvious to combine Slaughter with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. *See* claim limitation [1c]. |

**Appendix B-2**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,598,536 (Slaughter)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,598,536 (Slaughter) |
|---|---|
| [7d] receiving a service request from one of the first type network nodes; | Slaughter discloses receiving a service request from one of the first type network nodes. To the extent it is found that Slaughter does not disclose this feature expressly or inherently, it would have been obvious to combine Slaughter with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1d]. |
| [7e] determining whether the first type network node participates in the web page customization service; | Slaughter discloses determining whether the first type network node participates in the web page customization service. To the extent it is found that Slaughter does not disclose this feature expressly or inherently, it would have been obvious to combine Slaughter with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1e]. |
| [7f] if the first type network node participates in the web page customization service, forming a customized page file for the service request by including the page file formed for the first type network node within the page file formed for the second type network node; and | Slaughter discloses, if the first type network node participates in the web page customization service, forming a customized page file for the service request by including the page file formed for the first type network node within the page file formed for the second type network node. To the extent it is found that Slaughter does not disclose this feature expressly or inherently, it would have been obvious to combine Slaughter with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1f]. |
| [7g] if the first type network node does not participate in the web page | Slaughter discloses, if the first type network node does not participate in the web page customization service, forming a page file for the service request by using the page file formed for the second type network node. For example, the second type network node identifies the first type network node based on |

**Appendix B-2**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,598,536 (Slaughter)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,598,536 (Slaughter) |
|---|---|
| customization service, forming a page file for the service request by using the page file formed for the second type network node. | the service request. If the second type network node fails to identify the first type network node, the second type network node will only form a page file for the service request by using the page file formed for the second type network node. To the extent it is found that Slaughter does not disclose this feature expressly or inherently, it would have been obvious to combine Slaughter with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1f]. |
| *Claim 8* | |
| [8] The method of claim 7, wherein the first type network nodes are ISP nodes, and the second type network node is an ICP node. | Slaughter discloses that the first type network nodes are ISP nodes, and the second type network node is an ICP node. To the extent it is found that Slaughter does not disclose this feature expressly or inherently, it would have been obvious to combine Slaughter with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [2]. |
| *Claim 9* | |
| [9] The method of claim 7, wherein the first type network nodes are organization nodes, and the second type network node is an ICP node. | To the extent it is found that Slaughter does not disclose this feature expressly or inherently, it would have been obvious to combine Slaughter with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [3]. |
| *Claim 10* | |
| [10] The method of claim 7, wherein the customized page file includes customized graphics, | To the extent it is found that Slaughter does not disclose this feature expressly or inherently, it would have been obvious to combine Slaughter with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |

Appendix B-2

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,598,536 (Slaughter)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,598,536 (Slaughter) |
|---|---|
| sounds, applets, links, and text. | *See* claim limitation [4]. |
| *Claim 11* | |
| [11] The method of claim 7, wherein the customized page file includes customized advertisements. | To the extent it is found that Slaughter does not disclose this feature expressly or inherently, it would have been obvious to combine Slaughter with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.

*See* claim limitation [5]. |
| *Claim 12* | |
| [12a] The method of claim 7, wherein: the service request from one of the first type network nodes includes an IP address for identifying the first type network node, and | Slaughter discloses that the service request from one of the first type network nodes includes an IP address for identifying the first type network node. To the extent it is found that Slaughter does not disclose this feature expressly or inherently, it would have been obvious to combine Slaughter with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.

*See* claim limitation [6a]. |
| [12b] determining whether the first type network node participates in the web page customization service comprises using the IPI address included in the service request to identify the first type network node. | Slaughter discloses that determining whether the first type network node participates in the web page customization service comprises using the IPI address included in the service request to identify the first type network node. To the extent it is found that Slaughter does not disclose this feature expressly or inherently, it would have been obvious to combine Slaughter with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.

*See* claim limitation [6b]. |
| *Claim 13* | |
| [13a] A method for | Slaughter discloses a method for providing web page customization service to a plurality of first type |

**Appendix B-2**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,598,536 (Slaughter)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,598,536 (Slaughter) |
|---|---|
| providing web page customization service to a plurality of first type network nodes at a second type network node, comprising the steps of: | network nodes at a second type network node. To the extent it is found that Slaughter does not disclose this feature expressly or inherently, it would have been obvious to combine Slaughter with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1a]. |
| [13b] forming a plurality of advertisements for the first type network nodes; | Slaughter discloses forming a plurality of advertisements for the first type network nodes. To the extent it is found that Slaughter does not disclose this feature expressly or inherently, it would have been obvious to combine Slaughter with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitations [1b] and [5]. |
| [13c] forming at least a page file for the second type network node; | Slaughter discloses forming at least a page file for the second type network node. To the extent it is found that Slaughter does not disclose this feature expressly or inherently, it would have been obvious to combine Slaughter with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1c]. |
| [13d] receiving a service request from one of the first type network nodes; | Slaughter discloses receiving a service request from one of the first type network nodes. To the extent it is found that Slaughter does not disclose this feature expressly or inherently, it would have been obvious to combine Slaughter with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1d]. |
| [13e] identifying advertisements for the first | Slaughter discloses identifying advertisements for the first type network node. To the extent it is found that Slaughter does not disclose this feature expressly or inherently, it would have been obvious to |

**Appendix B-2**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,598,536 (Slaughter)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,598,536 (Slaughter) |
|---|---|
| type network node; and | combine Slaughter with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitations [1e] and [5]. |
| [13f] forming a customized page file for the first type network node by including the identified advertisements within the page file formed for the second type network node. | Slaughter discloses forming a customized page file for the first type network node by including the identified advertisements within the page file formed for the second type network node. To the extent it is found that Slaughter does not disclose this feature expressly or inherently, it would have been obvious to combine Slaughter with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1f]. |
| *Claim 14* | |
| [14] The method of claim 13, wherein the first type network nodes are ISP nodes, and the second type network node is an ICP node. | Slaughter discloses that the first type network nodes are ISP nodes, and the second type network node is an ICP node. To the extent it is found that Slaughter does not disclose this feature expressly or inherently, it would have been obvious to combine Slaughter with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [2]. |
| *Claim 15* | |
| [15] The method of claim 13, wherein the first type network nodes are organization nodes, and the second type network node is an ICP node. | To the extent it is found that Slaughter does not disclose this feature expressly or inherently, it would have been obvious to combine Slaughter with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [3]. |
| *Claim 16* | |

**Appendix B-2**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,598,536 (Slaughter)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,598,536 (Slaughter) |
|---|---|
| [16] The method of claim 13, wherein the identified advertisements do not cause negative impact on the owner of the first type network node. | Slaughter discloses that the identified advertisements do not cause negative impact on the owner of the first type network node.  To the extent it is found that Slaughter does not disclose this feature expressly or inherently, it would have been obvious to combine Slaughter with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter.  *See* Appendix C.<br><br>*See* claim limitation [5]. |
| *Claim 17* | |
| [17a] An apparatus for dynamically forming a customized web page for a first type network node at a second type network node, comprising: | Slaughter discloses an apparatus for dynamically forming a customized web page for a first type network node at a second type network node.  To the extent it is found that Slaughter does not disclose this feature expressly or inherently, it would have been obvious to combine Slaughter with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter.  *See* Appendix C.<br><br>*See* claim limitation [1a]. |
| [17b] means for forming at least a page file for the first type network node; | Slaughter discloses means for forming at least a page file for the first type network node.  To the extent it is found that Slaughter does not disclose this feature expressly or inherently, it would have been obvious to combine Slaughter with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter.  *See* Appendix C.<br><br>*See* claim limitation [1b]. |
| [17c] means for forming at least a page file for the second type network node; | Slaughter discloses means for forming at least a page file for the second type network node.  To the extent it is found that Slaughter does not disclose this feature expressly or inherently, it would have been obvious to combine Slaughter with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter.  *See* Appendix C.<br><br>*See* claim limitation [1c]. |
| [17d] means for receiving a | Slaughter discloses means for receiving a service request from the first type network node.  To the extent it |

Appendix B-2

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,598,536 (Slaughter)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,598,536 (Slaughter) |
|---|---|
| service request from the first type network node; | is found that Slaughter does not disclose this feature expressly or inherently, it would have been obvious to combine Slaughter with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1d]. |
| [17e] means for identifying the first type network node based on the service request; and | Slaughter discloses means for identifying the first type network node based on the service request. To the extent it is found that Slaughter does not disclose this feature expressly or inherently, it would have been obvious to combine Slaughter with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1e]. |
| [17f] means for forming a customized page file formed for the first type network node by including the page file formed for the first type network node within the page file for the second type network node. | Slaughter discloses means for forming a customized page file formed for the first type network node by including the page file formed for the first type network node within the page file for the second type network node. To the extent it is found that Slaughter does not disclose this feature expressly or inherently, it would have been obvious to combine Slaughter with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1f]. |
| *Claim 18* | |
| [18] The apparatus of claim 17, wherein the first type network node is an ISP node, and the second type network node is an ICP node. | Slaughter discloses that the first type network node is an ISP node, and the second type network node is an ICP node. To the extent it is found that Slaughter does not disclose this feature expressly or inherently, it would have been obvious to combine Slaughter with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [2]. |

Appendix B-2

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,598,536 (Slaughter)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,598,536 (Slaughter) |
|---|---|
| *Claim 19* | |
| [19] The apparatus of claim 17, wherein the first type network node is an organization node, and the second type network node is an ICP node. | To the extent it is found that Slaughter does not disclose this feature expressly or inherently, it would have been obvious to combine Slaughter with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [3]. |
| *Claim 20* | |
| [20] The apparatus of claim 17, wherein the customized page file includes customized graphics, sounds, applets, links, and text. | To the extent it is found that Slaughter does not disclose this feature expressly or inherently, it would have been obvious to combine Slaughter with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [4]. |
| *Claim 21* | |
| [21] The apparatus of claim 17, wherein the customized page file includes customized advertisements. | To the extent it is found that Slaughter does not disclose this feature expressly or inherently, it would have been obvious to combine Slaughter with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [5]. |
| *Claim 22* | |
| [22a] An apparatus for providing web page customization service to a plurality of first type network nodes at a second | Slaughter discloses an apparatus for providing web page customization service to a plurality of first type network nodes at a second type network node. To the extent it is found that Slaughter does not disclose this feature expressly or inherently, it would have been obvious to combine Slaughter with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* |

**Appendix B-2**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,598,536 (Slaughter)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,598,536 (Slaughter) |
|---|---|
| type network node, comprising: | Appendix C.<br><br>*See* claim limitation [7a]. |
| [22b] means for forming at least a page file for each of the first type network nodes; | Slaughter discloses means for forming at least a page file for each of the first type network nodes. To the extent it is found that Slaughter does not disclose this feature expressly or inherently, it would have been obvious to combine Slaughter with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [7b]. |
| [22c] means for forming at least a page file for the second type network node; | Slaughter discloses means for forming at least a page file for the second type network node. To the extent it is found that Slaughter does not disclose this feature expressly or inherently, it would have been obvious to combine Slaughter with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [7c]. |
| [22d] means for receiving a service request from one of the first type network nodes; | Slaughter discloses means for receiving a service request from one of the first type network nodes. To the extent it is found that Slaughter does not disclose this feature expressly or inherently, it would have been obvious to combine Slaughter with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [7d]. |
| [22e] means for determining whether the first type network node participates in the web page customization | Slaughter discloses means for determining whether the first type network node participates in the web page customization service. To the extent it is found that Slaughter does not disclose this feature expressly or inherently, it would have been obvious to combine Slaughter with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |

**Appendix B-2**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,598,536 (Slaughter)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,598,536 (Slaughter) |
|---|---|
| service; | *See* claim limitation [7e]. |
| [22f] means for forming a customized page file for the service request by including the page file formed for the first type network node within the page file formed for the second type network node, if the first type network node participates in the web page customization service; and | Slaughter discloses means for forming a customized page file for the service request by including the page file formed for the first type network node within the page file formed for the second type network node, if the first type network node participates in the web page customization service. To the extent it is found that Slaughter does not disclose this feature expressly or inherently, it would have been obvious to combine Slaughter with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [7f]. |
| [22g] means for forming a page file for the service request by using the page file formed for the second type network node, if the first type network node does not participate in the web page customization service. | Slaughter discloses means for forming a page file for the service request by using the page file formed for the second type network node, if the first type network node does not participate in the web page customization service. To the extent it is found that Slaughter does not disclose this feature expressly or inherently, it would have been obvious to combine Slaughter with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [7g]. |
| *Claim 23* | |
| [23] The apparatus of claim 22, wherein the first type network nodes are ISP | Slaughter discloses that the first type network nodes are ISP nodes, and the second type network node is an ICP node. To the extent it is found that Slaughter does not disclose this feature expressly or inherently, it would have been obvious to combine Slaughter with the knowledge of a person of ordinary skill and/or |

Appendix B-2

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,598,536 (Slaughter)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,598,536 (Slaughter) |
|---|---|
| nodes, and the second type network node is an ICP node. | other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [8]. |
| *Claim 24* | |
| [24] The apparatus of claim 22, wherein the first type network nodes are organization nodes, and the second type network node is an ICP node. | To the extent it is found that Slaughter does not disclose this feature expressly or inherently, it would have been obvious to combine Slaughter with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [9]. |
| *Claim 25* | |
| [25] The apparatus of claim 22, wherein the customized page file includes customized graphics, sounds, applets, links, and text. | To the extent it is found that Slaughter does not disclose this feature expressly or inherently, it would have been obvious to combine Slaughter with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [10]. |
| *Claim 26* | |
| [26] The apparatus of claim 25, wherein the customized page file includes customized advertisements. | To the extent it is found that Slaughter does not disclose this feature expressly or inherently, it would have been obvious to combine Slaughter with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [11]. |
| *Claim 27* | |
| [27a] An apparatus for | Slaughter discloses an apparatus for providing web page customization service to a plurality of first type |

**Appendix B-2**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,598,536 (Slaughter)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,598,536 (Slaughter) |
|---|---|
| providing web page customization service to a plurality of first type network nodes at a second type network node, comprising: | network nodes at a second type network node. To the extent it is found that Slaughter does not disclose this feature expressly or inherently, it would have been obvious to combine Slaughter with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [13a]. |
| [27b] means for forming a plurality of advertisements for the first type network nodes; | Slaughter discloses means for forming a plurality of advertisements for the first type network nodes. To the extent it is found that Slaughter does not disclose this feature expressly or inherently, it would have been obvious to combine Slaughter with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [13b]. |
| [27c] means for forming at least a page file for the second type network node; | Slaughter discloses means for forming at least a page file for the second type network node. To the extent it is found that Slaughter does not disclose this feature expressly or inherently, it would have been obvious to combine Slaughter with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [13c]. |
| [27d] means for receiving a service request from one of the first type network nodes; | Slaughter discloses means for receiving a service request from one of the first type network nodes. To the extent it is found that Slaughter does not disclose this feature expressly or inherently, it would have been obvious to combine Slaughter with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [13d]. |
| [27e] means for identifying advertisements for the first | Slaughter discloses means for identifying advertisements for the first type network node. To the extent it is found that Slaughter does not disclose this feature expressly or inherently, it would have been obvious to |

**Appendix B-2**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,598,536 (Slaughter)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,598,536 (Slaughter) |
|---|---|
| type network node; and | combine Slaughter with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [13e]. |
| [27f] means for forming a customized page file for the first type network node by including the identified advertisements within the page file formed for the second type network node. | Slaughter discloses means for forming a customized page file for the first type network node by including the identified advertisements within the page file formed for the second type network node. To the extent it is found that Slaughter does not disclose this feature expressly or inherently, it would have been obvious to combine Slaughter with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [13f]. |
| *Claim 28* | |
| [28] The apparatus of claim 27, wherein the first type network nodes are ISP nodes, and the second type network node is an ICP node. | Slaughter discloses that the first type network nodes are ISP nodes, and the second type network node is an ICP node. To the extent it is found that Slaughter does not disclose this feature expressly or inherently, it would have been obvious to combine Slaughter with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [14]. |
| *Claim 29* | |
| [29] The apparatus of claim 27, wherein the first type network nodes are organization nodes, and the second type network node is an ICP node. | To the extent it is found that Slaughter does not disclose this feature expressly or inherently, it would have been obvious to combine Slaughter with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [15]. |
| *Claim 30* | |

**Appendix B-2**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,598,536 (Slaughter)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,598,536 (Slaughter) |
|---|---|
| [30] The apparatus of claim 27, wherein the identified advertisements do not cause negative impact on the owner of the first type network node. | Slaughter discloses that the identified advertisements do not cause negative impact on the owner of the first type network node. To the extent it is found that Slaughter does not disclose this feature expressly or inherently, it would have been obvious to combine Slaughter with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [16]. |

**Appendix B-3**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,717,923 (Dedrick '923)**

U.S. Patent No. 5,717,923 to Dedrick ("Dedrick '923") is prior art to U.S. Patent No. 6,442,577 ("the '577 patent") under 35 U.S.C. 102(a) because it issued as a U.S. patent on Feb. 10, 1998, which is prior to the Nov. 3, 1998 filing date of the '577 patent. Further, Dedrick '923 is prior art to the '577 patent under 35 U.S.C. 102(e) because it issued from a U.S. patent application filed on Nov. 3, 1994, which is prior to the Nov. 3, 1998 filing date of the '577 patent.

As detailed in this chart, Dedrick '923 anticipates at least claims 1–30 of the '577 patent. In addition or in the alternative, claims 1–30 of the '577 patent are obvious over Dedrick '923 in view of the knowledge of a person of ordinary skill and/or one or more other references, as detailed in Appendix C.

This chart is based in whole or in part on the present understanding of positions taken by PageMelding regarding the coverage, scope and construction of the asserted claims to the extent those positions can be deduced from PageMelding's contentions pursuant to Patent Local Rule 3-1 served on August 3, 2012. Nothing herein is an admission that PageMelding's infringement contentions are correct, an admission that Plaintiff's apparent claim constructions are correct, or an admission that ESPN's technology infringes any asserted claim.

**Appendix B-3**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,717,923 (Dedrick '923)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,717,923 to Dedrick (Dedrick '923) |
|---|---|
| *Claim 1* | |
| [1a] A method for dynamically forming customized web pages for a first type network node at a second type network node, comprising the steps of: | Dedrick '923 discloses a method for dynamically forming customized web pages for a first type network node at a second type network node. To the extent it is found that Dedrick '923 does not disclose this feature expressly or inherently, it would have been obvious to combine Dedrick '923 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* Abstract.<br>A method and apparatus for dynamically customizing electronic information to individual end users includes a client system containing a personal profile database which stores consumer information corresponding to individual end user(s) of the client system. The client system also includes a content adapter which compares electronic information received by the client system to the consumer information in the personal profile database and customizes the electronic information to an individual end user based on this comparison. The client system also includes a client activity monitor which monitors actions taken by an individual end user when consuming electronic information and updates the personal profile database based on these actions. In one embodiment, the client activity monitor also monitors which actions are ignored by the individual end user and updates the personal profile database based on the consumer's interaction with the electronic information (that is, both the consumer's action and inaction). In one embodiment, an electronic information server containing a plurality of electronic information units is coupled to the client system via an electronic information distribution network and serves as the source of the electronic information.<br><br>*See also* col. l, lines 8-11.<br>The present invention pertains to electronic information distribution networks. More particularly, this invention relates to customizing electronic information in an electronic information distribution network to individual end users.<br><br>*See also* col. 1, lines 30-36.<br>Presently, however, there are no systems which allow electronic information to be customized to |

**Appendix B-3**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,717,923 (Dedrick '923)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,717,923 to Dedrick (Dedrick '923) |
|---|---|
| | the particular characteristics of each individual end user of an electronic information distribution network. Thus, to increase the appeal and effectiveness of electronic information, it would be beneficial to provide a system which customizes the electronic information to the individual end users which will consume the information. By customizing the advertisements to the individual end users, the electronic information will be more appealing to the intended consumers.<br><br>*See also* col. 3, lines 43-56.<br>Consumer variables refer to demographic, psychographic and other profile information. Demographic information refers to the vital statistics of individuals, such as age, sex, income and marital status. Psychographic information refers to the lifestyle and behavioral characteristics of individuals, such as likes and dislikes, color preferences and personality traits that show consumer behavioral characteristics. Thus, the consumer variables refer to information such as marital status, color preferences, favorite sizes and shapes, preferred learning modes, employer, job title, mailing address, phone number, personal and business areas of interest, the willingness to participate in a survey, along with various lifestyle information. This information will be referred to as user profile data.<br><br>*See also* col. 12, lines 34-46.<br>The billing process 54 of the clearinghouse server can also direct a unit of electronic information to metering servers that service end users with a profile that correlates to a targeted user profile characteristic. For example, the publisher may request that a unit of electronic information be directed to end users with a certain income, etc. The demographic database 50 may contain data relating to which metering servers 14 service end users with corresponding user profile characteristics. The clearinghouse server 20 correlates the requested user profile data with certain identified metering servers and sends the unit of electronic information only to the selected metering servers, which then forward the electronic information to the end users.<br><br>*See also* Figs. 1-7 and associated text. |

**Appendix B-3**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,717,923 (Dedrick '923)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,717,923 to Dedrick (Dedrick '923) |
|---|---|
|  | *See also* claim limitations [1a] through [1f]. |
| [1b] forming at least a page file for the first type network node; | Dedrick '923 discloses forming at least a page file for the first type network node. To the extent it is found that Dedrick '923 does not disclose this feature expressly or inherently, it would have been obvious to combine Dedrick '923 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* col. 1, lines 37-42.<br>In addition, there are presently no systems for generating and transmitting electronic advertisements to end users operating a computer via an end-to-end electronic information distribution network. It would therefore be beneficial to provide a system which would allow an advertiser to generate and transmit electronic advertisements to end users.<br><br>*See also* col. 2, line 62 to col. 3, line 36.<br>FIG. 1 shows a network system 10 of one embodiment of the present invention. The network 10 includes a plurality of client systems 12 coupled to a metering sewer 14 within a local area network (LAN) 16. Alternatively, a single client system 12 may be coupled to a metering server 14. Each client system 12 may be a personal computer that is operated by an end user. Alternatively, each client system 12 may be any other type of consumer consumption device, such as a television set, a game machine, etc. The server 14 is typically a dedicated computer that provides an interconnect contact node which allows the client systems 12 to communicate with the server 14 and other client systems 12. The server 14 may contain resident modem sharing software that allows the server 14 and client systems 12 to communicate with a device external to the local network 16. The server 14 is also capable of maintaining resident databases. Both the server 14 and the client systems 12 contain the necessary interface hardware and software required to transfer information between the components of the system 10. The metering server 14 is coupled to a publisher unit 18 through a plurality of clearinghouse servers 20. By way of example, the publisher 18 may be connected to the server 14 as part of an overall wide area network (WAN) that allows the server 14 and publisher unit 18 to transfer information. The system 10 may also have a yellow page server 22 coupled to the publisher unit 18 and the metering servers 14. The publisher unit and servers of the WAN system |

**Appendix B-3**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,717,923 (Dedrick '923)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,717,923 to Dedrick (Dedrick '923) |
|---|---|
| | contain the interface hardware and software necessary to transfer electronic information between the components of the system. As shown in FIG. 1, the system 10 may have multiple client systems 12 coupled to a single metering server 14 and multiple servers 14 coupled to a single clearinghouse server 20, a regional content database server 21 and a single yellow page server 22. There may be multiple clearinghouse and yellow page servers located at regional centers throughout the country/world. In addition, depending on the size of a community, there may also be multiple yellow page server for each local community. Although the computer 18 is referred to as a publishing unit, it is to be understood that the computer can also be a node for an advertiser 18 and that the use of the terms publisher and advertiser may be synonymous. <br><br> *See also* col. 4, lines 11-13. <br> The publisher/advertiser 18 is provided with software tools to create electronic information which includes content and advertisements that can be transmitted over the system. <br><br> *See also* col. 9, lines 15-24. <br> In addition to receiving electronic information in the form of advertisements, the end user of client system 12 may also receive other electronic information, such as electronic content placed in clearinghouse servers 20 by publisher 18. For example, this electronic content may be a newspaper or magazine article, or an encyclopedia entry. In one embodiment, this electronic content contains the same consumer variables in header blocks as the electronic advertisements, and is customized by client system 12 in the same manner as discussed above. <br><br> *See also* col. 16, lines 12-39. <br> In block 204, the advertiser 18 transmits a unit of information to the yellow page server 22. The unit of information contains an advertisement, advertisement title and desired or most valuable user profile characteristics for targeting end users. The advertising title and profile target data are downloaded to the metering servers 14 by the yellow page server 22 in block 206. The metering servers 14 then provide the advertisement title to end users who have profile characteristics that correlate with the targeted profile data in block 208. In one implementation, the client systems 12 customize the advertisement title to their individual end users. The end user requests the advertising |

**Appendix B-3**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,717,923 (Dedrick '923)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,717,923 to Dedrick (Dedrick '923) |
|---|---|
|  | information in block 210. In block 212, the metering server 14 requests the advertisement from the yellow page server 22, which downloads the advertisement information to the metering server 14. In block 214, the metering server 14 transfers the advertisement to the client system of the end user, credits the end user's account and records the profile data of the end users who requested the advertisement. In block 215, the client system 12 customizes the advertisement for consumption by the end user. In block 216, the profile data and billing information are transferred from the metering server 14 to the clearinghouse server 20. The profile data is compiled and the advertiser's account is debited in block 218. In block 220, the clearinghouse server 20 generates and provides the advertiser 18 with a bill and the profile data of the end users who viewed the advertisement.<br><br>*See also* Figs. 1-7 and associated text. |
| [1c] forming at least a page file for the second type network node; | Dedrick '923 discloses forming at least a page file for the second type network node. To the extent it is found that Dedrick '923 does not disclose this feature expressly or inherently, it would have been obvious to combine Dedrick '923 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* col. 2, line 62 to col. 3, line 36.<br>FIG. 1 shows a network system 10 of one embodiment of the present invention. The network 10 includes a plurality of client systems 12 coupled to a metering sewer 14 within a local area network (LAN) 16. Alternatively, a single client system 12 may be coupled to a metering server 14. Each client system 12 may be a personal computer that is operated by an end user. Alternatively, each client system 12 may be any other type of consumer consumption device, such as a television set, a game machine, etc. The server 14 is typically a dedicated computer that provides an interconnect contact node which allows the client systems 12 to communicate with the server 14 and other client systems 12. The server 14 may contain resident modem sharing software that allows the server 14 and client systems 12 to communicate with a device external to the local network 16. The server 14 is also capable of maintaining resident databases. Both the server 14 and the client systems 12 contain the necessary interface hardware and software required to transfer information between the components of the system 10. The metering server 14 is coupled to a publisher unit 18 through a |

**Appendix B-3**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,717,923 (Dedrick '923)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,717,923 to Dedrick (Dedrick '923) |
|---|---|
| | plurality of clearinghouse servers 20. By way of example, the publisher 18 may be connected to the server 14 as part of an overall wide area network (WAN) that allows the server 14 and publisher unit 18 to transfer information. The system 10 may also have a yellow page server 22 coupled to the publisher unit 18 and the metering servers 14. The publisher unit and servers of the WAN system contain the interface hardware and software necessary to transfer electronic information between the components of the system. As shown in FIG. 1, the system 10 may have multiple client systems 12 coupled to a single metering server 14 and multiple servers 14 coupled to a single clearinghouse server 20, a regional content database server 21 and a single yellow page server 22. There may be multiple clearinghouse and yellow page servers located at regional centers throughout the country/world. In addition, depending on the size of a community, there may also be multiple yellow page server for each local community. Although the computer 18 is referred to as a publishing unit, it is to be understood that the computer can also be a node for an advertiser 18 and that the use of the terms publisher and advertiser may be synonymous.<br><br>*See also* col. 3, lines 37-67.<br>Each client system 12 is provided with an interface, such as a graphic user interface (GUI), that allows the end user to participate in the system 10. The GUI contains fields that receive or correspond to inputs entered by the end user. The fields may include the user's name and possibly a password. The GUI may also have hidden fields relating to "consumer variables." Consumer variables refer to demographic, psychographic and other profile information. Demographic information refers to the vital statistics of individuals, such as age, sex, income and marital status. Psychographic information refers to the lifestyle and behavioral characteristics of individuals, such as likes and dislikes, color preferences and personality traits that show consumer behavioral characteristics. Thus, the consumer variables refer to information such as marital status, color preferences, favorite sizes and shapes, preferred learning modes, employer, job title, mailing address, phone number, personal and business areas of interest, the willingness to participate in a survey, along with various lifestyle information. This information will be referred to as user profile data. The end user initially enters the requested data and the non-identifying information is transferred to the metering server 14. That is, the information associated with the end user is |

Appendix B-3

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,717,923 (Dedrick '923)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,717,923 to Dedrick (Dedrick '923) |
|---|---|
| | compiled and transferred to the metering server 14 without any indication of the identity of the user (for example, the name and phone number are not included in the compilation). The GUI also allows the user to receive inquiries, request information and consume information by viewing, storing, printing, etc. The client system may also be provided with tools to create content, advertisements, etc. in the same manner as a publisher/advertiser. |
| | |
| | *See also* col. 4, lines 11-23. |
| | The publisher/advertiser 18 is provided with software tools to create electronic information which includes content and advertisements that can be transmitted over the system. The electronic information may allow an end user to access a content database, or the information may be all or a portion of a content database. By way of example, the content database may be the text and video of an electronic newspaper. The content database may reside within the publisher unit or be located at a remote location such as the metering server or a regional server that services a plurality of metering servers. The software tools may include a hypertext oriented mark up language that routes distributed end users to the content databases. |
| | |
| | *See also* col. 9, lines 15-24. |
| | In addition to receiving electronic information in the form of advertisements, the end user of client system 12 may also receive other electronic information, such as electronic content placed in clearinghouse servers 20 by publisher 18. For example, this electronic content may be a newspaper or magazine article, or an encyclopedia entry. In one embodiment, this electronic content contains the same consumer variables in header blocks as the electronic advertisements, and is customized by client system 12 in the same manner as discussed above. |
| | |
| | *See also* col. 13, lines 29-46. |
| | The metering server 14 is capable of storing units of information relating to the content databases of the publisher/advertiser, including the entire content database. The publisher may periodically update the contents of the database. The content may be initially transferred from the publisher/advertiser 18 to the clearinghouse server 20, which retransmits the content to regional 21 and metering 14 servers. The content received by the metering server 14 from the publisher may |

- 8 -

**Appendix B-3**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,717,923 (Dedrick '923)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,717,923 to Dedrick (Dedrick '923) |
|---|---|
| | include content titles that summarily describe the contents and are stored in the index databases 35 of the metering servers 14. The metering server 14 transmits the titles and possibly a portion of the content to the client systems 12. If the end user wants to consume the electronic information, the user generates a request for the electronic information, typically by providing an input to the GUI of the client system 12. The metering server 14 receives the request and sends the information in accordance with the metering methodology of the system.<br><br>*See also* col. 16, lines 12-39.<br>In block 204, the advertiser 18 transmits a unit of information to the yellow page server 22. The unit of information contains an advertisement, advertisement title and desired or most valuable user profile characteristics for targeting end users. The advertising title and profile target data are downloaded to the metering servers 14 by the yellow page server 22 in block 206. The metering servers 14 then provide the advertisement title to end users who have profile characteristics that correlate with the targeted profile data in block 208. In one implementation, the client systems 12 customize the advertisement title to their individual end users. The end user requests the advertising information in block 210. In block 212, the metering server 14 requests the advertisement from the yellow page server 22, which downloads the advertisement information to the metering server 14. In block 214, the metering server 14 transfers the advertisement to the client system of the end user, credits the end user's account and records the profile data of the end users who requested the advertisement. In block 215, the client system 12 customizes the advertisement for consumption by the end user. In block 216, the profile data and billing information are transferred from the metering server 14 to the clearinghouse server 20. The profile data is compiled and the advertiser's account is debited in block 218. In block 220, the clearinghouse server 20 generates and provides the advertiser 18 with a bill and the profile data of the end users who viewed the advertisement.<br><br>*See also* Figs. 1-7 and associated text. |
| [1d] receiving a service request from the first type | Dedrick '923 discloses receiving a service request from the first type network node. To the extent it is found that Dedrick '923 does not disclose this feature expressly or inherently, it would have been obvious to combine Dedrick '923 with the knowledge of a person of ordinary skill and/or other prior |

Appendix B-3

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,717,923 (Dedrick '923)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,717,923 to Dedrick (Dedrick '923) |
|---|---|
| network node; | art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* col. 8, lines 64-66.<br>When requesting electronic advertisements, the data returned to the end user is dependent on the end user's request.<br><br>*See also* col. 13, lines 29-46.<br>The metering server 14 is capable of storing units of information relating to the content databases of the publisher/advertiser, including the entire content database. The publisher may periodically update the contents of the database. The content may be initially transferred from the publisher/advertiser 18 to the clearinghouse server 20, which retransmits the content to regional 21 and metering 14 servers. The content received by the metering server 14 from the publisher may include content titles that summarily describe the contents and are stored in the index databases 35 of the metering servers 14. The metering server 14 transmits the titles and possibly a portion of the content to the client systems 12. If the end user wants to consume the electronic information, the user generates a request for the electronic information, typically by providing an input to the GUI of the client system 12. The metering server 14 receives the request and sends the information in accordance with the metering methodology of the system.<br><br>*See also* Figs. 1-7 and associated text. |
| [1e] identifying the first type network node based on the service request; and | Dedrick '923 discloses identifying the first type network node based on the service request. To the extent it is found that Dedrick '923 does not disclose this feature expressly or inherently, it would have been obvious to combine Dedrick '923 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* col. 9, lines 44-57.<br>Thus, the metering server 14 contains an account balance, a user identification (such as an account number or a name), and may also include information indicating which information the user subscribes to. User profile data requested by metering server 14 from the client systems 12 is stored |

**Appendix B-3**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,717,923 (Dedrick '923)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,717,923 to Dedrick (Dedrick '923) |
|---|---|
|  | in user profile database 30, along with user profile data corresponding to electronic information being consumed by an end user. As discussed above, this user profile data does not specifically identify the individual end user. The account balance and user identification is contained in the transaction database 32. Therefore, the only information which is contained in the metering server which identifies an individual end user is that user's identification and an account balance, thereby maintaining the user's privacy.<br><br>*See also* col. 12, lines 7-25.<br>As shown in FIG. 4, each clearinghouse server 20 contains a demographic database 50, a transaction database 52, billing process 54 and a session manager 56. The demographic database 50 contains user profile data collected from the metering servers 14. The transaction database 52 contains billing information relating to the end users. The transaction database 52 also contains data relating to the accounts of the publishers/advertisers 18. The billing process 54 can access and process data within the databases 50 and 52. For example, when an end user consumes a unit of electronic information, data relating to the consumption of the electronic information may be sent from the billing server 14 to the clearinghouse server 20. The session manager 56 instructs the billing process 54 to charge the publisher/advertiser account within the transaction database 52. The clearinghouse server 20 may also receive user profile data from the metering servers 14 which is subsequently stored by the billing process 54 in the demographic database 50.<br><br>*See also* col. 12, lines 54-56.<br>The clearinghouse server 20 correlates the user profile data of an end user with a metering server without specifically "knowing" the identity of the end user.<br><br>*See also* Figs. 1-7 and associated text.<br><br>*See also* claim limitation [1d]. |
| [1f] forming a customized page file formed for the first | Dedrick '923 discloses forming a customized page file formed for the first type network node by including the page file formed for the first type network node within the page file for the second type |

Appendix B-3

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,717,923 (Dedrick '923)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,717,923 to Dedrick (Dedrick '923) |
|---|---|
| type network node by including the page file formed for the first type network node within the page file for the second type network node. | network node. To the extent it is found that Dedrick '923 does not disclose this feature expressly or inherently, it would have been obvious to combine Dedrick '923 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.

*See* col. 9, lines 15-24.
In addition to receiving electronic information in the form of advertisements, the end user of client system 12 may also receive other electronic information, such as electronic content placed in clearinghouse servers 20 by publisher 18. For example, this electronic content may be a newspaper or magazine article, or an encyclopedia entry. In one embodiment, this electronic content contains the same consumer variables in header blocks as the electronic advertisements, and is customized by client system 12 in the same manner as discussed above.

*See also* col. 10, lines 55-59.
The software tools may also allow the publisher/advertiser to combine different types of information. For example, the publisher can combine video, audio, graphics, animation and text all within the same unit of electronic information provided to the end user.

*See also* col. 16, lines 12-39.
In block 204, the advertiser 18 transmits a unit of information to the yellow page server 22. The unit of information contains an advertisement, advertisement title and desired or most valuable user profile characteristics for targeting end users. The advertising title and profile target data are downloaded to the metering servers 14 by the yellow page server 22 in block 206. The metering servers 14 then provide the advertisement title to end users who have profile characteristics that correlate with the targeted profile data in block 208. In one implementation, the client systems 12 customize the advertisement title to their individual end users. The end user requests the advertising information in block 210. In block 212, the metering server 14 requests the advertisement from the yellow page server 22, which downloads the advertisement information to the metering server 14. In block 214, the metering server 14 transfers the advertisement to the client system of the end user, credits the end user's account and records the profile data of the end users who requested the advertisement. In block 215, the client system 12 customizes the advertisement for consumption by |

**Appendix B-3**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,717,923 (Dedrick '923)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,717,923 to Dedrick (Dedrick '923) |
|---|---|
| | the end user. In block 216, the profile data and billing information are transferred from the metering server 14 to the clearinghouse server 20. The profile data is compiled and the advertiser's account is debited in block 218. In block 220, the clearinghouse server 20 generates and provides the advertiser 18 with a bill and the profile data of the end users who viewed the advertisement.<br><br>*See also* Figs. 1-7 and associated text.<br><br>*See also* claim limitations [1b] and [1c]. |
| *Claim 2* | |
| [2] The method of claim 1, wherein the first type network node is an ISP node, and the second type network node is an ICP node. | Dedrick '923 discloses that the first type network node is an ISP node, and the second type network node is an ICP node.  To the extent it is found that Dedrick '923 does not disclose this feature expressly or inherently, it would have been obvious to combine Dedrick '923 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter.  *See* Appendix C.<br><br>*See* col. 1, lines 43-65.<br>Additionally, electronic information providers frequently desire large amounts of information about their markets and potential markets. This information includes, for example, the demographic characteristics of the consumers in a particular market. By obtaining as much information as possible about their potential markets, electronic information providers can direct their electronic information to the markets they believe the information will appeal to most. Individual consumers, however, are frequently concerned with maintaining their privacy. These consumers often do not wish to make certain information, such as their income, publicly available. Thus, it would be advantageous to provide a system which furnishes the electronic information providers with a substantial amount of information about their markets and potential markets, while at the same time maintains individual consumer privacy. Furthermore, it would be beneficial to provide a system which customizes electronic information to individual end users without specific direction from the users. That is, a system which monitors the actions taken by an individual user in consuming electronic information and customizes subsequent units of electronic information for that individual |

Appendix B-3

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,717,923 (Dedrick '923)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,717,923 to Dedrick (Dedrick '923) |
|---|---|
| | user based on these previous actions. |
| | *See also* col. 1, lines 22-26. |
| | The current wide-ranging use of computer systems provides a relatively large potential market to providers of electronic content or information. These providers may include, for example, advertisers and other information publishers such as newspaper and magazine publishers. |
| | *See also* col. 2, line 62 to col. 3, line 36. |
| | FIG. 1 shows a network system 10 of one embodiment of the present invention. The network 10 includes a plurality of client systems 12 coupled to a metering sewer 14 within a local area network (LAN) 16. Alternatively, a single client system 12 may be coupled to a metering server 14. Each client system 12 may be a personal computer that is operated by an end user. Alternatively, each client system 12 may be any other type of consumer consumption device, such as a television set, a game machine, etc. The server 14 is typically a dedicated computer that provides an interconnect contact node which allows the client systems 12 to communicate with the server 14 and other client systems 12. The server 14 may contain resident modem sharing software that allows the server 14 and client systems 12 to communicate with a device external to the local network 16. The server 14 is also capable of maintaining resident databases. Both the server 14 and the client systems 12 contain the necessary interface hardware and software required to transfer information between the components of the system 10. The metering server 14 is coupled to a publisher unit 18 through a plurality of clearinghouse servers 20. By way of example, the publisher 18 may be connected to the server 14 as part of an overall wide area network (WAN) that allows the server 14 and publisher unit 18 to transfer information. The system 10 may also have a yellow page server 22 coupled to the publisher unit 18 and the metering servers 14. The publisher unit and servers of the WAN system contain the interface hardware and software necessary to transfer electronic information between the components of the system. As shown in FIG. 1, the system 10 may have multiple client systems 12 coupled to a single metering server 14 and multiple servers 14 coupled to a single clearinghouse server 20, a regional content database server 21 and a single yellow page server 22. There may be multiple clearinghouse and yellow page servers located at regional centers throughout the country/world. In addition, depending on the size of a community, there may also be multiple |

- 14 -

**Appendix B-3**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,717,923 (Dedrick '923)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,717,923 to Dedrick (Dedrick '923) |
|---|---|
| | yellow page server for each local community. Although the computer 18 is referred to as a publishing unit, it is to be understood that the computer can also be a node for an advertiser 18 and that the use of the terms publisher and advertiser may be synonymous.<br><br>*See also* col. 9, lines 15-24.<br>In addition to receiving electronic information in the form of advertisements, the end user of client system 12 may also receive other electronic information, such as electronic content placed in clearinghouse servers 20 by publisher 18. For example, this electronic content may be a newspaper or magazine article, or an encyclopedia entry. In one embodiment, this electronic content contains the same consumer variables in header blocks as the electronic advertisements, and is customized by client system 12 in the same manner as discussed above.<br><br>*See also* col. 12, lines 7-25.<br>As shown in FIG. 4, each clearinghouse server 20 contains a demographic database 50, a transaction database 52, billing process 54 and a session manager 56. The demographic database 50 contains user profile data collected from the metering servers 14. The transaction database 52 contains billing information relating to the end users. The transaction database 52 also contains data relating to the accounts of the publishers/advertisers 18. The billing process 54 can access and process data within the databases 50 and 52. For example, when an end user consumes a unit of electronic information, data relating to the consumption of the electronic information may be sent from the billing server 14 to the clearinghouse server 20. The session manager 56 instructs the billing process 54 to charge the publisher/advertiser account within the transaction database 52. The clearinghouse server 20 may also receive user profile data from the metering servers 14 which is subsequently stored by the billing process 54 in the demographic database 50.<br><br>*See also* col. 12, lines 34-46.<br>The billing process 54 of the clearinghouse server can also direct a unit of electronic information to metering servers that service end users with a profile that correlates to a targeted user profile characteristic. For example, the publisher may request that a unit of electronic information be directed to end users with a certain income, etc. The demographic database 50 may contain data |

**Appendix B-3**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,717,923 (Dedrick '923)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,717,923 to Dedrick (Dedrick '923) |
|---|---|
| | relating to which metering servers 14 service end users with corresponding user profile characteristics. The clearinghouse server 20 correlates the requested user profile data with certain identified metering servers and sends the unit of electronic information only to the selected metering servers, which then forward the electronic information to the end users.<br><br>*See also* col. 13, lines 29-46.<br>The metering server 14 is capable of storing units of information relating to the content databases of the publisher/advertiser, including the entire content database. The publisher may periodically update the contents of the database. The content may be initially transferred from the publisher/advertiser 18 to the clearinghouse server 20, which retransmits the content to regional 21 and metering 14 servers. The content received by the metering server 14 from the publisher may include content titles that summarily describe the contents and are stored in the index databases 35 of the metering servers 14. The metering server 14 transmits the titles and possibly a portion of the content to the client systems 12. If the end user wants to consume the electronic information, the user generates a request for the electronic information, typically by providing an input to the GUI of the client system 12. The metering server 14 receives the request and sends the information in accordance with the metering methodology of the system.<br><br>*See also* col. 16, lines 12-39.<br>In block 204, the advertiser 18 transmits a unit of information to the yellow page server 22. The unit of information contains an advertisement, advertisement title and desired or most valuable user profile characteristics for targeting end users. The advertising title and profile target data are downloaded to the metering servers 14 by the yellow page server 22 in block 206. The metering servers 14 then provide the advertisement title to end users who have profile characteristics that correlate with the targeted profile data in block 208. In one implementation, the client systems 12 customize the advertisement title to their individual end users. The end user requests the advertising information in block 210. In block 212, the metering server 14 requests the advertisement from the yellow page server 22, which downloads the advertisement information to the metering server 14. In block 214, the metering server 14 transfers the advertisement to the client system of the end user, credits the end user's account and records the profile data of the end users who requested the |

Appendix B-3

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,717,923 (Dedrick '923)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,717,923 to Dedrick (Dedrick '923) |
|---|---|
| | advertisement. In block 215, the client system 12 customizes the advertisement for consumption by the end user. In block 216, the profile data and billing information are transferred from the metering server 14 to the clearinghouse server 20. The profile data is compiled and the advertiser's account is debited in block 218. In block 220, the clearinghouse server 20 generates and provides the advertiser 18 with a bill and the profile data of the end users who viewed the advertisement.<br><br>*See also* Figs. 1-7 and associated text.<br><br>*See also* claim limitation [1a]. |
| *Claim 3* | |
| [3] The method of claim 1, wherein the first type network node is an organization node, and the second type network node is an ICP node. | Dedrick '923 discloses that the first type network node is an organization node, and the second type network node is an ICP node. To the extent it is found that Dedrick '923 does not disclose this feature expressly or inherently, it would have been obvious to combine Dedrick '923 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* col. 2, lines 62-65.<br>FIG. 1 shows a network system 10 of one embodiment of the present invention. The network 10 includes a plurality of client systems 12 coupled to a metering sewer 14 within a local area network (LAN) 16.<br><br>*See also* col. 1, lines 22-26.<br>The current wide-ranging use of computer systems provides a relatively large potential market to providers of electronic content or information. These providers may include, for example, advertisers and other information publishers such as newspaper and magazine publishers.<br><br>*See also* col. 2, line 62 to col. 3, line 36.<br>FIG. 1 shows a network system 10 of one embodiment of the present invention. The network 10 includes a plurality of client systems 12 coupled to a metering sewer 14 within a local area network |

- 17 -

Appendix B-3

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,717,923 (Dedrick '923)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,717,923 to Dedrick (Dedrick '923) |
|---|---|
| | (LAN) 16. Alternatively, a single client system 12 may be coupled to a metering server 14. Each client system 12 may be a personal computer that is operated by an end user. Alternatively, each client system 12 may be any other type of consumer consumption device, such as a television set, a game machine, etc. The server 14 is typically a dedicated computer that provides an interconnect contact node which allows the client systems 12 to communicate with the server 14 and other client systems 12. The server 14 may contain resident modem sharing software that allows the server 14 and client systems 12 to communicate with a device external to the local network 16. The server 14 is also capable of maintaining resident databases. Both the server 14 and the client systems 12 contain the necessary interface hardware and software required to transfer information between the components of the system 10. The metering server 14 is coupled to a publisher unit 18 through a plurality of clearinghouse servers 20. By way of example, the publisher 18 may be connected to the server 14 as part of an overall wide area network (WAN) that allows the server 14 and publisher unit 18 to transfer information. The system 10 may also have a yellow page server 22 coupled to the publisher unit 18 and the metering servers 14. The publisher unit and servers of the WAN system contain the interface hardware and software necessary to transfer electronic information between the components of the system. As shown in FIG. 1, the system 10 may have multiple client systems 12 coupled to a single metering server 14 and multiple servers 14 coupled to a single clearinghouse server 20, a regional content database server 21 and a single yellow page server 22. There may be multiple clearinghouse and yellow page servers located at regional centers throughout the country/world. In addition, depending on the size of a community, there may also be multiple yellow page server for each local community. Although the computer 18 is referred to as a publishing unit, it is to be understood that the computer can also be a node for an advertiser 18 and that the use of the terms publisher and advertiser may be synonymous. *See also* col. 9, lines 15-24. In addition to receiving electronic information in the form of advertisements, the end user of client system 12 may also receive other electronic information, such as electronic content placed in clearinghouse servers 20 by publisher 18. For example, this electronic content may be a newspaper or magazine article, or an encyclopedia entry. In one embodiment, this electronic content contains |

**Appendix B-3**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,717,923 (Dedrick '923)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,717,923 to Dedrick (Dedrick '923) |
|---|---|
| | the same consumer variables in header blocks as the electronic advertisements, and is customized by client system 12 in the same manner as discussed above.<br><br>*See also* col. 12, lines 7-25.<br>As shown in FIG. 4, each clearinghouse server 20 contains a demographic database 50, a transaction database 52, billing process 54 and a session manager 56. The demographic database 50 contains user profile data collected from the metering servers 14. The transaction database 52 contains billing information relating to the end users. The transaction database 52 also contains data relating to the accounts of the publishers/advertisers 18. The billing process 54 can access and process data within the databases 50 and 52. For example, when an end user consumes a unit of electronic information, data relating to the consumption of the electronic information may be sent from the billing server 14 to the clearinghouse server 20. The session manager 56 instructs the billing process 54 to charge the publisher/advertiser account within the transaction database 52. The clearinghouse server 20 may also receive user profile data from the metering servers 14 which is subsequently stored by the billing process 54 in the demographic database 50.<br><br>*See also* col. 13, lines 29-46.<br>The metering server 14 is capable of storing units of information relating to the content databases of the publisher/advertiser, including the entire content database. The publisher may periodically update the contents of the database. The content may be initially transferred from the publisher/advertiser 18 to the clearinghouse server 20, which retransmits the content to regional 21 and metering 14 servers. The content received by the metering server 14 from the publisher may include content titles that summarily describe the contents and are stored in the index databases 35 of the metering servers 14. The metering server 14 transmits the titles and possibly a portion of the content to the client systems 12. If the end user wants to consume the electronic information, the user generates a request for the electronic information, typically by providing an input to the GUI of the client system 12. The metering server 14 receives the request and sends the information in accordance with the metering methodology of the system.<br><br>*See also* col. 16, lines 12-39. |

Appendix B-3

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,717,923 (Dedrick '923)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,717,923 to Dedrick (Dedrick '923) |
|---|---|
| | In block 204, the advertiser 18 transmits a unit of information to the yellow page server 22. The unit of information contains an advertisement, advertisement title and desired or most valuable user profile characteristics for targeting end users. The advertising title and profile target data are downloaded to the metering servers 14 by the yellow page server 22 in block 206. The metering servers 14 then provide the advertisement title to end users who have profile characteristics that correlate with the targeted profile data in block 208. In one implementation, the client systems 12 customize the advertisement title to their individual end users. The end user requests the advertising information in block 210. In block 212, the metering server 14 requests the advertisement from the yellow page server 22, which downloads the advertisement information to the metering server 14. In block 214, the metering server 14 transfers the advertisement to the client system of the end user, credits the end user's account and records the profile data of the end users who requested the advertisement. In block 215, the client system 12 customizes the advertisement for consumption by the end user. In block 216, the profile data and billing information are transferred from the metering server 14 to the clearinghouse server 20. The profile data is compiled and the advertiser's account is debited in block 218. In block 220, the clearinghouse server 20 generates and provides the advertiser 18 with a bill and the profile data of the end users who viewed the advertisement. *See also* Figs. 1-7 and associated text. *See also* claim limitation [1a]. |
| *Claim 4* | |
| [4] The method of claim 1, wherein the customized page file includes customized graphics, sounds, applets, links, and text. | Dedrick '923 discloses that the customized page file includes customized graphics, sounds, applets, links, and text.  To the extent it is found that Dedrick '923 does not disclose this feature expressly or inherently, it would have been obvious to combine Dedrick '923 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter.  *See* Appendix C. *See* col. 4, lines 5-10. Thus, the monitoring of consumer actions and inactions based on these consumer variables and the updating of user profile data is transparent to the consumer. In addition, modifications made to the |

Appendix B-3

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,717,923 (Dedrick '923)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,717,923 to Dedrick (Dedrick '923) |
|---|---|
| | electronic information to customize it to a particular consumer are also transparent to the consumer.<br><br>*See also* col. 4, lines 44-55.<br>The publisher/advertiser 18 is also provided with software tools to create electronic information in a wide variety of consumption formats that can be transmitted over the system. These consumption formats include formats such as audio, video, graphics, animation, text, etc. For example, an advertiser 18 may create an advertisement for a camera which describes the camera in both audio and video format. Both of these consumption formats are transferred to the metering servers 14, and subsequently to the client systems 12. The end user is then able to consume the advertisement in whichever format he or she prefers, or alternatively in both formats.<br><br>*See also* col. 10, lines 55-59.<br>The software tools may also allow the publisher/advertiser to combine different types of information. For example, the publisher can combine video, audio, graphics, animation and text all within the same unit of electronic information provided to the end user.<br><br>*See also* claim limitation [1b]. |
| *Claim 5* | |
| [5] The method of claim 1, wherein the customized page file includes customized advertisements. | Dedrick '923 discloses that the customized page file includes customized advertisements. To the extent it is found that Dedrick '923 does not disclose this feature expressly or inherently, it would have been obvious to combine Dedrick '923 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* Abstract.<br>A method and apparatus for dynamically customizing electronic information to individual end users includes a client system containing a personal profile database which stores consumer information corresponding to individual end user(s) of the client system. The client system also includes a content adapter which compares electronic information received by the client system to the consumer information in the personal profile database and customizes the electronic information to |

- 21 -

**Appendix B-3**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,717,923 (Dedrick '923)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,717,923 to Dedrick (Dedrick '923) |
|---|---|
| | an individual end user based on this comparison. The client system also includes a client activity monitor which monitors actions taken by an individual end user when consuming electronic information and updates the personal profile database based on these actions. In one embodiment, the client activity monitor also monitors which actions are ignored by the individual end user and updates the personal profile database based on the consumer's interaction with the electronic information (that is, both the consumer's action and inaction). In one embodiment, an electronic information server containing a plurality of electronic information units is coupled to the client system via an electronic information distribution network and serves as the source of the electronic information.<br><br>*See also* col. 1, lines 8-11.<br>The present invention pertains to electronic information distribution networks. More particularly, this invention relates to customizing electronic information in an electronic information distribution network to individual end users.<br><br>*See also* col. 1, lines 30-36.<br>Presently, however, there are no systems which allow electronic information to be customized to the particular characteristics of each individual end user of an electronic information distribution network. Thus, to increase the appeal and effectiveness of electronic information, it would be beneficial to provide a system which customizes the electronic information to the individual end users which will consume the information. By customizing the advertisements to the individual end users, the electronic information will be more appealing to the intended consumers.<br><br>*See also* col. 3, lines 43-56.<br>Consumer variables refer to demographic, psychographic and other profile information. Demographic information refers to the vital statistics of individuals, such as age, sex, income and marital status. Psychographic information refers to the lifestyle and behavioral characteristics of individuals, such as likes and dislikes, color preferences and personality traits that show consumer behavioral characteristics. Thus, the consumer variables refer to information such as marital status, color preferences, favorite sizes and shapes, preferred learning modes, employer, job title, mailing |

Appendix B-3

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,717,923 (Dedrick '923)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,717,923 to Dedrick (Dedrick '923) |
|---|---|
| | address, phone number, personal and business areas of interest, the willingness to participate in a survey, along with various lifestyle information. This information will be referred to as user profile data.<br><br>*See also* col. 16, lines 12-39.<br>In block 204, the advertiser 18 transmits a unit of information to the yellow page server 22. The unit of information contains an advertisement, advertisement title and desired or most valuable user profile characteristics for targeting end users. The advertising title and profile target data are downloaded to the metering servers 14 by the yellow page server 22 in block 206. The metering servers 14 then provide the advertisement title to end users who have profile characteristics that correlate with the targeted profile data in block 208. In one implementation, the client systems 12 customize the advertisement title to their individual end users. The end user requests the advertising information in block 210. In block 212, the metering server 14 requests the advertisement from the yellow page server 22, which downloads the advertisement information to the metering server 14. In block 214, the metering server 14 transfers the advertisement to the client system of the end user, credits the end user's account and records the profile data of the end users who requested the advertisement. In block 215, the client system 12 customizes the advertisement for consumption by the end user. In block 216, the profile data and billing information are transferred from the metering server 14 to the clearinghouse server 20. The profile data is compiled and the advertiser's account is debited in block 218. In block 220, the clearinghouse server 20 generates and provides the advertiser 18 with a bill and the profile data of the end users who viewed the advertisement.<br><br>*See also* claim limitation [1b]. |
| *Claim 6* | |
| [6a] The method of claim 1, wherein: the service request includes an IP address for identifying the first type | Dedrick '923 discloses that the service request includes an IP address for identifying the first type network node. To the extent it is found that Dedrick '923 does not disclose this feature expressly or inherently, it would have been obvious to combine Dedrick '923 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |

Appendix B-3

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,717,923 (Dedrick '923)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,717,923 to Dedrick (Dedrick '923) |
|---|---|
| network node, and | *See* col. 1, lines 13-42.<br>Computer technology is continuously advancing, providing newer computer systems with continuously improved performance. One result of this improved performance is an increased use of computer systems by individuals in a wide variety of business, academic and personal applications. In some instances, these computer systems are linked together by a network or modems so that the systems can communicate with each other via electronic mail. The current wide-ranging use of computer systems provides a relatively large potential market to providers of electronic content or information. These providers may include, for example, advertisers and other information publishers such as newspaper and magazine publishers. Presently, however, there are no systems which allow electronic information to be customized to the particular characteristics of each individual end user of an electronic information distribution network. Thus, to increase the appeal and effectiveness of electronic information, it would be beneficial to provide a system which customizes the electronic information to the individual end users which will consume the information. By customizing the advertisements to the individual end users, the electronic information will be more appealing to the intended consumers. In addition, there are presently no systems for generating and transmitting electronic advertisements to end users operating a computer via an end-to-end electronic information distribution network. It would therefore be beneficial to provide a system which would allow an advertiser to generate and transmit electronic advertisements to end users.<br><br>*See also* claim limitation [1d]. |
| [6b] identifying the first type network node based on the service request comprises using the IP address included in the service request to identify the first type network node. | Dedrick '923 discloses that identifying the first type network node based on the service request comprises using the IP address included in the service request to identify the first type network node. To the extent it is found that Dedrick '923 does not disclose this feature expressly or inherently, it would have been obvious to combine Dedrick '923 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* col. 1, lines 13-42.<br>Computer technology is continuously advancing, providing newer computer systems with |

- 24 -

Appendix B-3

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,717,923 (Dedrick '923)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,717,923 to Dedrick (Dedrick '923) |
|---|---|
| | continuously improved performance. One result of this improved performance is an increased use of computer systems by individuals in a wide variety of business, academic and personal applications. In some instances, these computer systems are linked together by a network or modems so that the systems can communicate with each other via electronic mail. The current wide-ranging use of computer systems provides a relatively large potential market to providers of electronic content or information. These providers may include, for example, advertisers and other information publishers such as newspaper and magazine publishers. Presently, however, there are no systems which allow electronic information to be customized to the particular characteristics of each individual end user of an electronic information distribution network. Thus, to increase the appeal and effectiveness of electronic information, it would be beneficial to provide a system which customizes the electronic information to the individual end users which will consume the information. By customizing the advertisements to the individual end users, the electronic information will be more appealing to the intended consumers. In addition, there are presently no systems for generating and transmitting electronic advertisements to end users operating a computer via an end-to-end electronic information distribution network. It would therefore be beneficial to provide a system which would allow an advertiser to generate and transmit electronic advertisements to end users.<br><br>*See also* claim limitation [1e]. |
| *Claim 7* | |
| [7a] A method for providing web page customization service to a plurality of first type network nodes at a second type network node, comprising the steps of: | Dedrick '923 discloses a method for providing web page customization service to a plurality of first type network nodes at a second type network node. To the extent it is found that Dedrick '923 does not disclose this feature expressly or inherently, it would have been obvious to combine Dedrick '923 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1a]. |
| [7b] forming at least a page | Dedrick '923 discloses forming at least a page file for each of the first type network nodes. To the |

**Appendix B-3**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,717,923 (Dedrick '923)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,717,923 to Dedrick (Dedrick '923) |
|---|---|
| file for each of the first type network nodes; | extent it is found that Dedrick '923 does not disclose this feature expressly or inherently, it would have been obvious to combine Dedrick '923 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1b]. |
| [7c] forming at least a page file for the second type network node; | Dedrick '923 discloses forming at least a page file for the second type network node. To the extent it is found that Dedrick '923 does not disclose this feature expressly or inherently, it would have been obvious to combine Dedrick '923 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1c]. |
| [7d] receiving a service request from one of the first type network nodes; | Dedrick '923 discloses receiving a service request from one of the first type network nodes. To the extent it is found that Dedrick '923 does not disclose this feature expressly or inherently, it would have been obvious to combine Dedrick '923 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1d]. |
| [7e] determining whether the first type network node participates in the web page customization service; | Dedrick '923 discloses determining whether the first type network node participates in the web page customization service. To the extent it is found that Dedrick '923 does not disclose this feature expressly or inherently, it would have been obvious to combine Dedrick '923 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1e]. |
| [7f] if the first type network node participates in the web | Dedrick '923 discloses, if the first type network node participates in the web page customization service, forming a customized page file for the service request by including the page file formed for |

Appendix B-3

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,717,923 (Dedrick '923)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,717,923 to Dedrick (Dedrick '923) |
|---|---|
| page customization service, forming a customized page file for the service request by including the page file formed for the first type network node within the page file formed for the second type network node; and | the first type network node within the page file formed for the second type network node. To the extent it is found that Dedrick '923 does not disclose this feature expressly or inherently, it would have been obvious to combine Dedrick '923 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1f]. |
| [7g] if the first type network node does not participate in the web page customization service, forming a page file for the service request by using the page file formed for the second type network node. | Dedrick '923 discloses, if the first type network node does not participate in the web page customization service, forming a page file for the service request by using the page file formed for the second type network node. For example, the second type network node identifies the first type network node based on the service request. If the second type network node fails to identify the first type network node, the second type network node will only form a page file for the service request by using the page file formed for the second type network node. To the extent it is found that Dedrick '923 does not disclose this feature expressly or inherently, it would have been obvious to combine Dedrick '923 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1f]. |
| *Claim 8* | |
| [8] The method of claim 7, wherein the first type network nodes are ISP nodes, and the second type network node is an ICP node. | Dedrick '923 discloses that the first type network nodes are ISP nodes, and the second type network node is an ICP node. To the extent it is found that Dedrick '923 does not disclose this feature expressly or inherently, it would have been obvious to combine Dedrick '923 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [2]. |

Appendix B-3

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,717,923 (Dedrick '923)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,717,923 to Dedrick (Dedrick '923) |
|---|---|
| *Claim 9* | |
| [9] The method of claim 7, wherein the first type network nodes are organization nodes, and the second type network node is an ICP node. | Dedrick '923 discloses that the first type network nodes are organization nodes, and the second type network node is an ICP node. To the extent it is found that Dedrick '923 does not disclose this feature expressly or inherently, it would have been obvious to combine Dedrick '923 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [3]. |
| *Claim 10* | |
| [10] The method of claim 7, wherein the customized page file includes customized graphics, sounds, applets, links, and text. | Dedrick '923 discloses that the customized page file includes customized graphics, sounds, applets, links, and text. To the extent it is found that Dedrick '923 does not disclose this feature expressly or inherently, it would have been obvious to combine Dedrick '923 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [4]. |
| *Claim 11* | |
| [11] The method of claim 7, wherein the customized page file includes customized advertisements. | Dedrick '923 discloses that the customized page file includes customized advertisements. To the extent it is found that Dedrick '923 does not disclose this feature expressly or inherently, it would have been obvious to combine Dedrick '923 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [5]. |
| *Claim 12* | |
| [12a] The method of claim 7, wherein: the service request from one of the first type network nodes includes an IP | Dedrick '923 discloses that the service request from one of the first type network nodes includes an IP address for identifying the first type network node. To the extent it is found that Dedrick '923 does not disclose this feature expressly or inherently, it would have been obvious to combine Dedrick '923 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed |

Appendix B-3

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,717,923 (Dedrick '923)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,717,923 to Dedrick (Dedrick '923) |
|---|---|
| address for identifying the first type network node, and | subject matter. *See* Appendix C.<br><br>*See* claim limitation [6a]. |
| [12b] determining whether the first type network node participates in the web page customization service comprises using the IPI address included in the service request to identify the first type network node. | Dedrick '923 discloses that determining whether the first type network node participates in the web page customization service comprises using the IPI address included in the service request to identify the first type network node. To the extent it is found that Dedrick '923 does not disclose this feature expressly or inherently, it would have been obvious to combine Dedrick '923 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [6b]. |
| *Claim 13* | |
| [13a] A method for providing web page customization service to a plurality of first type network nodes at a second type network node, comprising the steps of: | Dedrick '923 discloses a method for providing web page customization service to a plurality of first type network nodes at a second type network node. To the extent it is found that Dedrick '923 does not disclose this feature expressly or inherently, it would have been obvious to combine Dedrick '923 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1a]. |
| [13b] forming a plurality of advertisements for the first type network nodes; | Dedrick '923 discloses forming a plurality of advertisements for the first type network nodes. To the extent it is found that Dedrick '923 does not disclose this feature expressly or inherently, it would have been obvious to combine Dedrick '923 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitations [1b] and [5]. |
| [13c] forming at least a page | Dedrick '923 discloses forming at least a page file for the second type network node. To the extent it |

- 29 -

Appendix B-3

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,717,923 (Dedrick '923)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,717,923 to Dedrick (Dedrick '923) |
|---|---|
| file for the second type network node; | is found that Dedrick '923 does not disclose this feature expressly or inherently, it would have been obvious to combine Dedrick '923 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1c]. |
| [13d] receiving a service request from one of the first type network nodes; | Dedrick '923 discloses receiving a service request from one of the first type network nodes. To the extent it is found that Dedrick '923 does not disclose this feature expressly or inherently, it would have been obvious to combine Dedrick '923 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1d]. |
| [13e] identifying advertisements for the first type network node; and | Dedrick '923 discloses identifying advertisements for the first type network node. To the extent it is found that Dedrick '923 does not disclose this feature expressly or inherently, it would have been obvious to combine Dedrick '923 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitations [1e] and [5]. |
| [13f] forming a customized page file for the first type network node by including the identified advertisements within the page file formed for the second type network node. | Dedrick '923 discloses forming a customized page file for the first type network node by including the identified advertisements within the page file formed for the second type network node. To the extent it is found that Dedrick '923 does not disclose this feature expressly or inherently, it would have been obvious to combine Dedrick '923 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1f]. |
| *Claim 14* | |
| [14] The method of claim 13, | Dedrick '923 discloses that the first type network nodes are ISP nodes, and the second type network |

- 30 -

Appendix B-3

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,717,923 (Dedrick '923)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,717,923 to Dedrick (Dedrick '923) |
|---|---|
| wherein the first type network nodes are ISP nodes, and the second type network node is an ICP node. | node is an ICP node. To the extent it is found that Dedrick '923 does not disclose this feature expressly or inherently, it would have been obvious to combine Dedrick '923 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [2]. |
| *Claim 15* | |
| [15] The method of claim 13, wherein the first type network nodes are organization nodes, and the second type network node is an ICP node. | Dedrick '923 discloses that the first type network nodes are organization nodes, and the second type network node is an ICP node. To the extent it is found that Dedrick '923 does not disclose this feature expressly or inherently, it would have been obvious to combine Dedrick '923 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [3]. |
| *Claim 16* | |
| [16] The method of claim 13, wherein the identified advertisements do not cause negative impact on the owner of the first type network node. | Dedrick '923 discloses that the identified advertisements do not cause negative impact on the owner of the first type network node. To the extent it is found that Dedrick '923 does not disclose this feature expressly or inherently, it would have been obvious to combine Dedrick '923 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [5]. |
| *Claim 17* | |
| [17a] An apparatus for dynamically forming a customized web page for a first type network node at a | Dedrick '923 discloses an apparatus for dynamically forming a customized web page for a first type network node at a second type network node. To the extent it is found that Dedrick '923 does not disclose this feature expressly or inherently, it would have been obvious to combine Dedrick '923 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed |

Appendix B-3

Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,717,923 (Dedrick '923)

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,717,923 to Dedrick (Dedrick '923) |
|---|---|
| second type network node, comprising: | subject matter. *See* Appendix C.<br><br>*See* claim limitation [1a]. |
| [17b] means for forming at least a page file for the first type network node; | Dedrick '923 discloses means for forming at least a page file for the first type network node. To the extent it is found that Dedrick '923 does not disclose this feature expressly or inherently, it would have been obvious to combine Dedrick '923 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1b]. |
| [17c] means for forming at least a page file for the second type network node; | Dedrick '923 discloses means for forming at least a page file for the second type network node. To the extent it is found that Dedrick '923 does not disclose this feature expressly or inherently, it would have been obvious to combine Dedrick '923 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1c]. |
| [17d] means for receiving a service request from the first type network node; | Dedrick '923 discloses means for receiving a service request from the first type network node. To the extent it is found that Dedrick '923 does not disclose this feature expressly or inherently, it would have been obvious to combine Dedrick '923 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1d]. |
| [17e] means for identifying the first type network node based on the service request; and | Dedrick '923 discloses means for identifying the first type network node based on the service request. To the extent it is found that Dedrick '923 does not disclose this feature expressly or inherently, it would have been obvious to combine Dedrick '923 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |

Appendix B-3

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,717,923 (Dedrick '923)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,717,923 to Dedrick (Dedrick '923) |
|---|---|
| | *See* claim limitation [1e]. |
| [17f] means for forming a customized page file formed for the first type network node by including the page file formed for the first type network node within the page file for the second type network node. | Dedrick '923 discloses means for forming a customized page file formed for the first type network node by including the page file formed for the first type network node within the page file for the second type network node. To the extent it is found that Dedrick '923 does not disclose this feature expressly or inherently, it would have been obvious to combine Dedrick '923 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1f]. |
| *Claim 18* | |
| [18] The apparatus of claim 17, wherein the first type network node is an ISP node, and the second type network node is an ICP node. | Dedrick '923 discloses that the first type network node is an ISP node, and the second type network node is an ICP node. To the extent it is found that Dedrick '923 does not disclose this feature expressly or inherently, it would have been obvious to combine Dedrick '923 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [2]. |
| *Claim 19* | |
| [19] The apparatus of claim 17, wherein the first type network node is an organization node, and the second type network node is an ICP node. | Dedrick '923 discloses that the first type network node is an organization node, and the second type network node is an ICP node. To the extent it is found that Dedrick '923 does not disclose this feature expressly or inherently, it would have been obvious to combine Dedrick '923 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [3]. |
| *Claim 20* | |

**Appendix B-3**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,717,923 (Dedrick '923)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,717,923 to Dedrick (Dedrick '923) |
|---|---|
| [20] The apparatus of claim 17, wherein the customized page file includes customized graphics, sounds, applets, links, and text. | Dedrick '923 discloses that the customized page file includes customized graphics, sounds, applets, links, and text. To the extent it is found that Dedrick '923 does not disclose this feature expressly or inherently, it would have been obvious to combine Dedrick '923 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [4]. |
| *Claim 21* | |
| [21] The apparatus of claim 17, wherein the customized page file includes customized advertisements. | Dedrick '923 discloses that the customized page file includes customized advertisements. To the extent it is found that Dedrick '923 does not disclose this feature expressly or inherently, it would have been obvious to combine Dedrick '923 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [5]. |
| *Claim 22* | |
| [22a] An apparatus for providing web page customization service to a plurality of first type network nodes at a second type network node, comprising: | Dedrick '923 discloses an apparatus for providing web page customization service to a plurality of first type network nodes at a second type network node. To the extent it is found that Dedrick '923 does not disclose this feature expressly or inherently, it would have been obvious to combine Dedrick '923 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [7a]. |
| [22b] means for forming at least a page file for each of the first type network nodes; | Dedrick '923 discloses means for forming at least a page file for each of the first type network nodes. To the extent it is found that Dedrick '923 does not disclose this feature expressly or inherently, it would have been obvious to combine Dedrick '923 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |

Appendix B-3

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,717,923 (Dedrick '923)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,717,923 to Dedrick (Dedrick '923) |
|---|---|
| | *See* claim limitation [7b]. |
| [22c] means for forming at least a page file for the second type network node; | Dedrick '923 discloses means for forming at least a page file for the second type network node. To the extent it is found that Dedrick '923 does not disclose this feature expressly or inherently, it would have been obvious to combine Dedrick '923 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [7c]. |
| [22d] means for receiving a service request from one of the first type network nodes; | Dedrick '923 discloses means for receiving a service request from one of the first type network nodes. To the extent it is found that Dedrick '923 does not disclose this feature expressly or inherently, it would have been obvious to combine Dedrick '923 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [7d]. |
| [22e] means for determining whether the first type network node participates in the web page customization service; | Dedrick '923 discloses means for determining whether the first type network node participates in the web page customization service. To the extent it is found that Dedrick '923 does not disclose this feature expressly or inherently, it would have been obvious to combine Dedrick '923 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [7e]. |
| [22f] means for forming a customized page file for the service request by including the page file formed for the first type network node within the page file formed | Dedrick '923 discloses means for forming a customized page file for the service request by including the page file formed for the first type network node within the page file formed for the second type network node, if the first type network node participates in the web page customization service. To the extent it is found that Dedrick '923 does not disclose this feature expressly or inherently, it would have been obvious to combine Dedrick '923 with the knowledge of a person of ordinary skill and/or |

Appendix B-3

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,717,923 (Dedrick '923)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,717,923 to Dedrick (Dedrick '923) |
|---|---|
| for the second type network node, if the first type network node participates in the web page customization service; and | other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [7f]. |
| [22g] means for forming a page file for the service request by using the page file formed for the second type network node, if the first type network node does not participate in the web page customization service. | Dedrick '923 discloses means for forming a page file for the service request by using the page file formed for the second type network node, if the first type network node does not participate in the web page customization service. To the extent it is found that Dedrick '923 does not disclose this feature expressly or inherently, it would have been obvious to combine Dedrick '923 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [7g]. |
| *Claim 23* | |
| [23] The apparatus of claim 22, wherein the first type network nodes are ISP nodes, and the second type network node is an ICP node. | Dedrick '923 discloses that the first type network nodes are ISP nodes, and the second type network node is an ICP node. To the extent it is found that Dedrick '923 does not disclose this feature expressly or inherently, it would have been obvious to combine Dedrick '923 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [8]. |
| *Claim 24* | |
| [24] The apparatus of claim 22, wherein the first type network nodes are organization nodes, and the second type network node is | Dedrick '923 discloses that the first type network nodes are organization nodes, and the second type network node is an ICP node. To the extent it is found that Dedrick '923 does not disclose this feature expressly or inherently, it would have been obvious to combine Dedrick '923 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* |

Appendix B-3

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,717,923 (Dedrick '923)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,717,923 to Dedrick (Dedrick '923) |
|---|---|
| an ICP node. | Appendix C.<br><br>*See* claim limitation [9]. |
| *Claim 25* | |
| [25] The apparatus of claim 22, wherein the customized page file includes customized graphics, sounds, applets, links, and text. | Dedrick '923 discloses that the customized page file includes customized graphics, sounds, applets, links, and text. To the extent it is found that Dedrick '923 does not disclose this feature expressly or inherently, it would have been obvious to combine Dedrick '923 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [10]. |
| *Claim 26* | |
| [26] The apparatus of claim 25, wherein the customized page file includes customized advertisements. | Dedrick '923 discloses that the customized page file includes customized advertisements. To the extent it is found that Dedrick '923 does not disclose this feature expressly or inherently, it would have been obvious to combine Dedrick '923 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [11]. |
| *Claim 27* | |
| [27a] An apparatus for providing web page customization service to a plurality of first type network nodes at a second type network node, comprising: | Dedrick '923 discloses an apparatus for providing web page customization service to a plurality of first type network nodes at a second type network node. To the extent it is found that Dedrick '923 does not disclose this feature expressly or inherently, it would have been obvious to combine Dedrick '923 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [13a]. |
| [27b] means for forming a | Dedrick '923 discloses means for forming a plurality of advertisements for the first type network |

**Appendix B-3**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,717,923 (Dedrick '923)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,717,923 to Dedrick (Dedrick '923) |
|---|---|
| plurality of advertisements for the first type network nodes; | nodes. To the extent it is found that Dedrick '923 does not disclose this feature expressly or inherently, it would have been obvious to combine Dedrick '923 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [13b]. |
| [27c] means for forming at least a page file for the second type network node; | Dedrick '923 discloses means for forming at least a page file for the second type network node. To the extent it is found that Dedrick '923 does not disclose this feature expressly or inherently, it would have been obvious to combine Dedrick '923 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [13c]. |
| [27d] means for receiving a service request from one of the first type network nodes; | Dedrick '923 discloses means for receiving a service request from one of the first type network nodes. To the extent it is found that Dedrick '923 does not disclose this feature expressly or inherently, it would have been obvious to combine Dedrick '923 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [13d]. |
| [27e] means for identifying advertisements for the first type network node; and | Dedrick '923 discloses means for identifying advertisements for the first type network node. To the extent it is found that Dedrick '923 does not disclose this feature expressly or inherently, it would have been obvious to combine Dedrick '923 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [13e]. |
| [27f] means for forming a customized page file for the first type network node by | Dedrick '923 discloses means for forming a customized page file for the first type network node by including the identified advertisements within the page file formed for the second type network node. To the extent it is found that Dedrick '923 does not disclose this feature expressly or inherently, it |

**Appendix B-3**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,717,923 (Dedrick '923)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,717,923 to Dedrick (Dedrick '923) |
|---|---|
| including the identified advertisements within the page file formed for the second type network node. | would have been obvious to combine Dedrick '923 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [13f]. |
| *Claim 28* | |
| [28] The apparatus of claim 27, wherein the first type network nodes are ISP nodes, and the second type network node is an ICP node. | Dedrick '923 discloses that the first type network nodes are ISP nodes, and the second type network node is an ICP node. To the extent it is found that Dedrick '923 does not disclose this feature expressly or inherently, it would have been obvious to combine Dedrick '923 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [14]. |
| *Claim 29* | |
| [29] The apparatus of claim 27, wherein the first type network nodes are organization nodes, and the second type network node is an ICP node. | Dedrick '923 discloses that the first type network nodes are organization nodes, and the second type network node is an ICP node. To the extent it is found that Dedrick '923 does not disclose this feature expressly or inherently, it would have been obvious to combine Dedrick '923 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [15]. |
| *Claim 30* | |
| [30] The apparatus of claim 27, wherein the identified advertisements do not cause negative impact on the owner of the first type network | Dedrick '923 discloses that the identified advertisements do not cause negative impact on the owner of the first type network node. To the extent it is found that Dedrick '923 does not disclose this feature expressly or inherently, it would have been obvious to combine Dedrick '923 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |

**Appendix B-3**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,717,923 (Dedrick '923)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,717,923 to Dedrick (Dedrick '923) |
|---|---|
| node. | *See* claim limitation [16]. |

**Appendix B-4**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,724,521 (Dedrick '521)**

U.S. Patent No. 5,724,521 to Dedrick ("Dedrick '521") is prior art to U.S. Patent No. 6,442,577 ("the '577 patent") under 35 U.S.C. 102(e) because it issued from a U.S. patent application filed on Nov. 3, 1994, which is prior to the Nov. 3, 1998 filing date of the '577 patent. Dedrick '521 is also prior art to the '577 patent under 35 U.S.C. 102(a) because it issued as a patent on Feb. 10, 1998, which is prior to the Nov. 3, 1998 filing date of the '577 patent.

As detailed in this chart, Dedrick '521 anticipates at least claims 1–30 of the '577 patent. In addition or in the alternative, claims 1–30 of the '577 patent are obvious over Dedrick '521 in view of the knowledge of a person of ordinary skill and/or one or more other references, as detailed in Appendix C.

This chart is based in whole or in part on the present understanding of positions taken by PageMelding regarding the coverage, scope and construction of the asserted claims to the extent those positions can be deduced from PageMelding's contentions pursuant to Patent Local Rule 3-1 served on August 3, 2012. Nothing herein is an admission that PageMelding's infringement contentions are correct, an admission that Plaintiff's apparent claim constructions are correct, or an admission that ESPN's technology infringes any asserted claim.

**Appendix B-4**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,724,521 (Dedrick '521)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,724,521 (Dedrick '521) |
|---|---|
| *Claim 1* | |
| [la] A method for dynamically forming customized web pages for a first type network node at a second type network node, comprising the steps of: | Dedrick '521 discloses a method for dynamically forming customized web pages for a first type network node at a second type network node. To the extent it is found that Dedrick '521 does not disclose this feature expressly or inherently, it would have been obvious to combine Dedrick '521 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| | *See* Abstract. |
| | A method and apparatus for providing electronic advertisements to end users in a consumer best-fit pricing manner includes an index database, a user profile database, and a consumer scale matching process. The index database provides storage space for the titles of electronic advertisements. The user profile database provides storage for a set of characteristics which correspond to individual end users of the apparatus. The consumer scale matching process is coupled to the content database and the user profile database and compares the characteristics of the individual end users with a consumer scale associated with the electronic advertisement. The apparatus then charges a fee to the advertiser, based on the comparison by the matching process. In one embodiment, a consumer scale is generated for each of multiple electronic advertisements. These advertisements are then transferred to multiple yellow page servers, and the titles associated with the advertisements are subsequently transferred to multiple metering servers. At the metering servers, a determination is made as to where the characteristics of the end users served by each of the metering servers fall on the consumer scale. The higher the characteristics of the end users served by a particular metering server fall, the higher the fee charged to the advertiser. |
| | *See also* col. 3, lines 42–47. |
| | Thus, the consumer variables refer to information such as marital status, color preferences, favorite sizes and shapes, preferred learning modes, employer, job title, mailing address, phone number, personal and business areas of interest, the willingness to participate in a survey, along with various lifestyle information. |
| | *See also* col. 12, lines 59–65. |

Appendix B-4

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,724,521 (Dedrick '521)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,724,521 (Dedrick '521) |
|---|---|
|  | Additionally, the information may be targeted to end users with specific profiles. Upon receiving and storing the targeted information in the content database 34, the metering process 36 accesses the user profile database 30 to find end users with matching profiles. The metering process 36 then sends the content titles to the end users with matching profiles.<br><br>*See also* col. 14, lines 52–64.<br>The billing process 54 of the clearinghouse server can also direct a unit of electronic information to metering servers that service end users with a profile that correlates to a targeted user profile characteristic. For example, the publisher may request that a unit of electronic information be directed to end users with a certain income, etc. The demographic database 50 may contain data relating to which metering servers 14 service end users with corresponding user profile characteristics. The clearinghouse server 20 correlates the requested user profile data with certain identified metering servers and sends the unit of electronic information only to the selected metering servers, which then forward the electronic information to the end users.<br><br>*See also* Figs. 1–7b and associated text.<br><br>*See also* claim limitations [1a] through [1f]. |
| [1b] forming at least a page file for the first type network node; | Dedrick '521 discloses forming at least a page file for the first type network node.  To the extent it is found that Dedrick '521 does not disclose this feature expressly or inherently, it would have been obvious to combine Dedrick '521 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter.  *See* Appendix C.<br><br>*See* col. 2, line 54 to col. 3, line 28.<br>FIG. 1 shows a network system 10 of one embodiment of the present invention. The network 10 includes a plurality of client systems 12 coupled to a metering sewer 14 within a local area network (LAN) 16. Alternatively, a single client system 12 may be coupled to a metering server 14. Each client system 12 may be a personal computer that is operated by an end user. Alternatively, each client system 12 may be any other type of consumer consumption device, such as a television set, a game |

**Appendix B-4**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,724,521 (Dedrick '521)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,724,521 (Dedrick '521) |
|---|---|
| | machine, etc. The server 14 is typically a dedicated computer that provides an interconnect contact node which allows the client systems 12 to communicate with the server 14 and other client systems 12. The server 14 may contain resident modem sharing software that allows the server 14 and client systems 12 to communicate with a device external to the local network 16. The server 14 is also capable of maintaining resident databases. Both the server 14 and the client systems 12 contain the necessary interface hardware and software required to transfer information between the components of the system 10. The metering server 14 is coupled to a publisher unit 18 through a plurality of clearinghouse servers 20. By way of example, the publisher 18 may be connected to the server 14 as part of an overall wide area network (WAN) that allows the server 14 and publisher unit 18 to transfer information. The system 10 may also have a yellow page server 22 coupled to the publisher unit 18 and the metering servers 14. The publisher unit and servers of the WAN system contain the interface hardware and software necessary to transfer electronic information between the components of the system. As shown in FIG. 1, the system 10 may have multiple client systems 12 coupled to a single metering server 14 and multiple servers 14 coupled to a single clearinghouse server 20, a regional content database server 21 and a single yellow page server 22. There may be multiple clearinghouse and yellow page servers located at regional centers throughout the country/world. In addition, depending on the size of a community, there may also be multiple yellow page server for each local community. Although the computer 18 is referred to as a publishing unit, it is to be understood that the computer can also be a node for an advertiser 18 and that the use of the terms publisher and advertiser may be synonymous.<br><br>*See also* col. 4, lines 3–15.<br>The publisher/advertiser 18 is provided with software tools to create electronic information which includes content and advertisements that can be transmitted over the system. The electronic information may allow an end user to access a content database, or the information may be all or a portion of a content database. By way of example, the content database may be the text and video of an electronic newspaper. The content database may reside within the publisher unit or be located at a remote location such as the metering server or a regional server that services a plurality of metering servers. The software tools may include a hypertext oriented mark up language that routes distributed end users to the content databases. |

**Appendix B-4**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,724,521 (Dedrick '521)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,724,521 (Dedrick '521) |
|---|---|
| | *See also* col. 10, lines 2–6.<br>The end user would define the search criteria for the appraisal agent 28 to find an advertisement(s) for a camera which meets the end user's needs, such as a particular brand, features, price, etc. Once located, the advertisement is returned to the end user.<br><br>*See also* col. 10, line 64 to col. 11, line 6.<br>In addition to receiving electronic information in the form of advertisements, the end user of client system 12 may also receive other electronic information, such as electronic content placed in clearinghouse servers 20 by publisher 18. For example, this electronic content may be a newspaper or magazine article, or an encyclopedia entry. In one embodiment, this electronic content contains the same consumer variables in header blocks as the electronic advertisements, and is customized by client system 12 in the same manner as discussed above.<br><br>*See also* col. 16, lines 31–50.<br>As shown in FIG. 5, the yellow page server 22 contains a resident advertising database 70, a calendar database 72, a scheduling process 74, an interactive process 76 and a session manager 78. The yellow page server 22 receives and stores electronic advertising information from an advertiser 18 in the advertising database 70. The advertising database 70 may contain electronic information that is generated by advertisers or by the end users. By way of example, an end user generated electronic advertisement may be analogous to a "classified ad." To create end user generated advertisements, the client systems may be provided with the same electronic publishing tools as the advertiser. The electronic advertising information typically includes advertising titles. The electronic advertising information may also have header information containing targeted user profile data. The metering process 36 accesses the user profile databases and correlates the targeted user profile data with metering servers that service end users with the targeted profiles. Metering servers with corresponding target profiles are provided with the advertising titles.<br><br>*See also* col. 18, lines 34–64.<br>In block 204, the advertiser 18 transmits a unit of information to the yellow page server 22. The unit of |

**Appendix B-4**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,724,521 (Dedrick '521)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,724,521 (Dedrick '521) |
|---|---|
|  | information contains an advertisement, advertisement title, the consumer scale for the advertisement, and desired or most valuable user profile characteristics for targeting end users. The advertising title, profile target data and consumer scale are downloaded to the metering servers 14 by the yellow page server 22 in block 206. In block 208, each metering server 14 then determines where it falls on the consumer scale, based on the user profile characteristics of the end users served by the metering server 14. This determination is made based on the aggregate user profile characteristics stored in user profile database 30 of each metering server 14. Each metering server 14 then charges a fee to the advertiser in block 210, the amount of which is determined by where the metering server 14 fell on the consumer scale. In block 212, the metering servers 14 provide the advertisement title to end users who have profile characteristics that correlate with the targeted profile data. Alternatively, in block 212 each metering server 14 may provide the advertisement title to all end users served by that metering server 14. In one implementation, the client systems 12 customize the advertisement title to their individual end users. The end user requests the advertising information in block 214. In block 216, the metering server 14 requests the advertisement from the yellow page server 22, which downloads the advertisement information to the metering server 14. In block 218, the metering server 14 transfers the advertisement to the client system of the end user, credits the end user's account and records the profile data of the end users who requested the advertisement. In block 220, the client system 12 customizes the advertisement for consumption by the end user. *See also* Figs. 1–7b and associated text. |
| [1c] forming at least a page file for the second type network node; | Dedrick '521 discloses forming at least a page file for the second type network node. To the extent it is found that Dedrick '521 does not disclose this feature expressly or inherently, it would have been obvious to combine Dedrick '521 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* col. 2, line 54 to col. 3, line 28.<br>FIG. 1 shows a network system 10 of one embodiment of the present invention. The network 10 includes a plurality of client systems 12 coupled to a metering sewer 14 within a local area network (LAN) 16. Alternatively, a single client system 12 may be coupled to a metering server 14. Each client system 12 may be a personal computer that is operated by an end user. Alternatively, each client |

**Appendix B-4**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,724,521 (Dedrick '521)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,724,521 (Dedrick '521) |
|---|---|
| | system 12 may be any other type of consumer consumption device, such as a television set, a game machine, etc. The server 14 is typically a dedicated computer that provides an interconnect contact node which allows the client systems 12 to communicate with the server 14 and other client systems 12. The server 14 may contain resident modem sharing software that allows the server 14 and client systems 12 to communicate with a device external to the local network 16. The server 14 is also capable of maintaining resident databases. Both the server 14 and the client systems 12 contain the necessary interface hardware and software required to transfer information between the components of the system 10. The metering server 14 is coupled to a publisher unit 18 through a plurality of clearinghouse servers 20. By way of example, the publisher 18 may be connected to the server 14 as part of an overall wide area network (WAN) that allows the server 14 and publisher unit 18 to transfer information. The system 10 may also have a yellow page server 22 coupled to the publisher unit 18 and the metering servers 14. The publisher unit and servers of the WAN system contain the interface hardware and software necessary to transfer electronic information between the components of the system. As shown in FIG. 1, the system 10 may have multiple client systems 12 coupled to a single metering server 14 and multiple servers 14 coupled to a single clearinghouse server 20, a regional content database server 21 and a single yellow page server 22. There may be multiple clearinghouse and yellow page servers located at regional centers throughout the country/world. In addition, depending on the size of a community, there may also be multiple yellow page server for each local community. Although the computer 18 is referred to as a publishing unit, it is to be understood that the computer can also be a node for an advertiser 18 and that the use of the terms publisher and advertiser may be synonymous. <br><br> *See also* col. 4, lines 3–15. <br> The publisher/advertiser 18 is provided with software tools to create electronic information which includes content and advertisements that can be transmitted over the system. The electronic information may allow an end user to access a content database, or the information may be all or a portion of a content database. By way of example, the content database may be the text and video of an electronic newspaper. The content database may reside within the publisher unit or be located at a remote location such as the metering server or a regional server that services a plurality of metering servers. The software tools may include a hypertext oriented mark up language that routes distributed |

**Appendix B-4**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,724,521 (Dedrick '521)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,724,521 (Dedrick '521) |
|---|---|
| | end users to the content databases.<br><br>*See also* col. 10, line 64 to col. 11, line 6.<br>In addition to receiving electronic information in the form of advertisements, the end user of client system 12 may also receive other electronic information, such as electronic content placed in clearinghouse servers 20 by publisher 18. For example, this electronic content may be a newspaper or magazine article, or an encyclopedia entry. In one embodiment, this electronic content contains the same consumer variables in header blocks as the electronic advertisements, and is customized by client system 12 in the same manner as discussed above.<br><br>*See also* col. 15, lines 47–64.<br>The metering server 14 is capable of storing units of information relating to the content databases of the publisher/advertiser, including the entire content database. The publisher may periodically update the contents of the database. The content may be initially transferred from the publisher/advertiser 18 to the clearinghouse server 20, which retransmits the content to regional 21 and metering 14 servers. The content received by the metering server 14 from the publisher may include content titles that summarily describe the contents and are stored in the index databases 35 of the metering servers 14. The metering server 14 transmits the titles and possibly a portion of the content to the client systems 12. If the end user wants to consume the electronic information, the user generates a request for the electronic information, typically by providing an input to the GUI of the client system 12. The metering server 14 receives the request and sends the information in accordance with the metering methodology of the system.<br><br>*See also* col. 18, lines 34–64.<br>In block 204, the advertiser 18 transmits a unit of information to the yellow page server 22. The unit of information contains an advertisement, advertisement title, the consumer scale for the advertisement, and desired or most valuable user profile characteristics for targeting end users. The advertising title, profile target data and consumer scale are downloaded to the metering servers 14 by the yellow page server 22 in block 206. In block 208, each metering server 14 then determines where it falls on the consumer scale, based on the user profile characteristics of the end users served by the metering server |

**Appendix B-4**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,724,521 (Dedrick '521)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,724,521 (Dedrick '521) |
|---|---|
| | 14. This determination is made based on the aggregate user profile characteristics stored in user profile database 30 of each metering server 14. Each metering server 14 then charges a fee to the advertiser in block 210, the amount of which is determined by where the metering server 14 fell on the consumer scale. In block 212, the metering servers 14 provide the advertisement title to end users who have profile characteristics that correlate with the targeted profile data. Alternatively, in block 212 each metering server 14 may provide the advertisement title to all end users served by that metering server 14. In one implementation, the client systems 12 customize the advertisement title to their individual end users. The end user requests the advertising information in block 214. In block 216, the metering server 14 requests the advertisement from the yellow page server 22, which downloads the advertisement information to the metering server 14. In block 218, the metering server 14 transfers the advertisement to the client system of the end user, credits the end user's account and records the profile data of the end users who requested the advertisement. In block 220, the client system 12 customizes the advertisement for consumption by the end user. *See also* Figs. 1–7b and associated text. |
| [1d] receiving a service request from the first type network node; | Dedrick '521 discloses receiving a service request from the first type network node.  To the extent it is found that Dedrick '521 does not disclose this feature expressly or inherently, it would have been obvious to combine Dedrick '521 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter.  *See* Appendix C. *See* col. 10, lines 40–50. Thus, the appraisal agent 28 can access the advertisement in the yellow pages server 22, determine it matches the characteristics of the end user which initiated the appraisal agent, and return the advertisement to the end user. When requesting electronic advertisements, the data returned to the end user by the appraisal agent 28 is dependent on the end user's request. For example, the end user may define certain results which should occur based on how well the electronic information matches the search criteria. *See also* col. 12, lines 21–30. |

**Appendix B-4**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,724,521 (Dedrick '521)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,724,521 (Dedrick '521) |
|---|---|
| | For example, when an end user requests a unit of information, the request is received by the session manager 38. The session manager 38 instructs the metering process 36 to retrieve the requested unit of information. In one embodiment, the metering process 36 then initially access the user profile database 30 to determine whether the end user is a subscriber of the information. If the end user is a subscriber, the metering process 36 retrieves the unit of requested information from the content database 34, wherein the information can be transmitted to the end user.<br><br>*See also* col. 15, lines 47–64.<br>The metering server 14 is capable of storing units of information relating to the content databases of the publisher/advertiser, including the entire content database. The publisher may periodically update the contents of the database. The content may be initially transferred from the publisher/advertiser 18 to the clearinghouse server 20, which retransmits the content to regional 21 and metering 14 servers. The content received by the metering server 14 from the publisher may include content titles that summarily describe the contents and are stored in the index databases 35 of the metering servers 14. The metering server 14 transmits the titles and possibly a portion of the content to the client systems 12. If the end user wants to consume the electronic information, the user generates a request for the electronic information, typically by providing an input to the GUI of the client system 12. The metering server 14 receives the request and sends the information in accordance with the metering methodology of the system.<br><br>*See also* col. 18, lines 34–64.<br>In block 204, the advertiser 18 transmits a unit of information to the yellow page server 22. The unit of information contains an advertisement, advertisement title, the consumer scale for the advertisement, and desired or most valuable user profile characteristics for targeting end users. The advertising title, profile target data and consumer scale are downloaded to the metering servers 14 by the yellow page server 22 in block 206. In block 208, each metering server 14 then determines where it falls on the consumer scale, based on the user profile characteristics of the end users served by the metering server 14. This determination is made based on the aggregate user profile characteristics stored in user profile database 30 of each metering server 14. Each metering server 14 then charges a fee to the advertiser in block 210, the amount of which is determined by where the metering server 14 fell on the consumer |

**Appendix B-4**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,724,521 (Dedrick '521)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,724,521 (Dedrick '521) |
|---|---|
|  | scale. In block 212, the metering servers 14 provide the advertisement title to end users who have profile characteristics that correlate with the targeted profile data. Alternatively, in block 212 each metering server 14 may provide the advertisement title to all end users served by that metering server 14. In one implementation, the client systems 12 customize the advertisement title to their individual end users. The end user requests the advertising information in block 214. In block 216, the metering server 14 requests the advertisement from the yellow page server 22, which downloads the advertisement information to the metering server 14. In block 218, the metering server 14 transfers the advertisement to the client system of the end user, credits the end user's account and records the profile data of the end users who requested the advertisement. In block 220, the client system 12 customizes the advertisement for consumption by the end user. <br><br> *See also* Figs. 1–7b and associated text. |
| [1e] identifying the first type network node based on the service request; and | Dedrick '521 discloses identifying the first type network node based on the service request.  To the extent it is found that Dedrick '521 does not disclose this feature expressly or inherently, it would have been obvious to combine Dedrick '521 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter.  *See* Appendix C. <br><br> *See* col. 7, lines 51–57. <br> To access the consumer profile, the consumer inserts the card into the client system 12, which prompts the consumer for a personal identification number (PIN) or password. Upon receiving the correct PIN, the client system 12 decrypts the profile information in the storage device and stores the decrypted profile information in the client system's volatile memory. <br><br> *See also* col. 10, lines 40–50. <br><br> Thus, the appraisal agent 28 can access the advertisement in the yellow pages server 22, determine it matches the characteristics of the end user which initiated the appraisal agent, and return the advertisement to the end user. When requesting electronic advertisements, the data returned to the end user by the appraisal agent 28 is dependent on the end user's request. For example, the end user may |

**Appendix B-4**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,724,521 (Dedrick '521)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,724,521 (Dedrick '521) |
|---|---|
| | define certain results which should occur based on how well the electronic information matches the search criteria.<br><br>*See also* col. 11, lines 36–50.<br>Thus, the metering server 14 contains an account balance, a user identification (such as an account number or a name), and may also include information indicating which information the user subscribes to. User profile data requested by metering server 14 from the client systems 12 is stored in user profile database 30, along with user profile data corresponding to electronic information being consumed by an end user. As discussed above, this user profile data does not specifically identify the individual end user. The account balance and user identification is contained in the transaction database 32. Therefore, the only information which is contained in the metering server which identifies an individual end user is that user's identification and an account balance, thereby maintaining the user's privacy.<br><br>*See also* col. 12, lines 21–31.<br>For example, when an end user requests a unit of information, the request is received by the session manager 38. The session manager 38 instructs the metering process 36 to retrieve the requested unit of information. In one embodiment, the metering process 36 then initially access the user profile database 30 to determine whether the end user is a subscriber of the information. If the end user is a subscriber, the metering process 36 retrieves the unit of requested information from the content database 34, wherein the information can be transmitted to the end user.<br><br>*See also* col. 14, lines 25–43.<br>As shown in FIG. 4, each clearinghouse server 20 contains a demographic database 50, a transaction database 52, billing process 54 and a session manager 56. The demographic database 50 contains user profile data collected from the metering servers 14. The transaction database 52 contains billing information relating to the end users. The transaction database 52 also contains data relating to the accounts of the publishers/advertisers 18. The billing process 54 can access and process data within the databases 50 and 52. For example, when an end user consumes a unit of electronic information, data |

**Appendix B-4**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,724,521 (Dedrick '521)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,724,521 (Dedrick '521) |
|---|---|
| | relating to the consumption of the electronic information may be sent from the billing server 14 to the clearinghouse server 20. The session manager 56 instructs the billing process 54 to charge the publisher/advertiser account within the transaction database 52. The clearinghouse server 20 may also receive user profile data from the metering servers 14 which is subsequently stored by the billing process 54 in the demographic database 50.<br><br>*See also* Figs. 1–7b and associated text.<br><br>*See also* claim limitation [1d]. |
| [1f] forming a customized page file formed for the first type network node by including the page file formed for the first type network node within the page file for the second type network node. | Dedrick '521 discloses forming a customized page file formed for the first type network node by including the page file formed for the first type network node within the page file for the second type network node.  To the extent it is found that Dedrick '521 does not disclose this feature expressly or inherently, it would have been obvious to combine Dedrick '521 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter.  *See* Appendix C.<br><br>*See* col. 4, lines 25–29.<br>In one implementation, the publisher/advertiser 18 is provided with a GUI which allows the publisher/advertiser 18 to select certain consumer variables from a set of consumer variables and associate the selected variables with specific objects or fields within the electronic information.<br><br>*See also* col. 7, line 66 to col. 8, line 16.<br>The content adapter 25 customizes electronic content to the individual end user based on the user profile data contained in personal profile database 27. Electronic content received by system 12 from metering server 14 may include fields which can be customized. Which fields can be customized may be indicated in a header block received with the electronic content. For example, a unit of electronic information may be received with a particular field having the default color of green. If personal profile database 27 contains sufficient data regarding color preferences for the individual end user, then content adapter 25 changes the color of that particular field from green to whatever color preference is contained in personal profile database 27 for that individual end user. Similarly, the |

- 13 -

**Appendix B-4**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,724,521 (Dedrick '521)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,724,521 (Dedrick '521) |
|---|---|
| | default consumption format may be video, but if personal profile database 27 indicates that the end user prefers audio format, then content adapter 25 delivers the audio format version of the electronic information to the client interface 23 rather than the video version. <br><br> *See also* col. 10, line 64 to col. 11, line 6. <br> In addition to receiving electronic information in the form of advertisements, the end user of client system 12 may also receive other electronic information, such as electronic content placed in clearinghouse servers 20 by publisher 18. For example, this electronic content may be a newspaper or magazine article, or an encyclopedia entry. In one embodiment, this electronic content contains the same consumer variables in header blocks as the electronic advertisements, and is customized by client system 12 in the same manner as discussed above. <br><br> *See also* col. 12, lines 21–30. <br> For example, when an end user requests a unit of information, the request is received by the session manager 38. The session manager 38 instructs the metering process 36 to retrieve the requested unit of information. In one embodiment, the metering process 36 then initially access the user profile database 30 to determine whether the end user is a subscriber of the information. If the end user is a subscriber, the metering process 36 retrieves the unit of requested information from the content database 34, wherein the information can be transmitted to the end user. <br> *See also* col. 13, lines 1–11. <br> For example, the electronic information may be a content database that is analogous to the "yellow pages" of a phone book. The yellow page content database may <br><br> contain a plurality of advertisements that can be viewed by the end user. The software tools may allow the publisher to build an object that allows the end user to search the contents of the content database. The software tools may also allow the publisher/advertiser to combine different types of information. For example, the publisher can combine video, audio, graphics, animation and text all within the same unit of electronic information provided to the end user. <br><br> *See also* col. 18, lines 34–64. |

Appendix B-4

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,724,521 (Dedrick '521)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,724,521 (Dedrick '521) |
|---|---|
|  | In block 204, the advertiser 18 transmits a unit of information to the yellow page server 22. The unit of information contains an advertisement, advertisement title, the consumer scale for the advertisement, and desired or most valuable user profile characteristics for targeting end users. The advertising title, profile target data and consumer scale are downloaded to the metering servers 14 by the yellow page server 22 in block 206. In block 208, each metering server 14 then determines where it falls on the consumer scale, based on the user profile characteristics of the end users served by the metering server 14. This determination is made based on the aggregate user profile characteristics stored in user profile database 30 of each metering server 14. Each metering server 14 then charges a fee to the advertiser in block 210, the amount of which is determined by where the metering server 14 fell on the consumer scale. In block 212, the metering servers 14 provide the advertisement title to end users who have profile characteristics that correlate with the targeted profile data. Alternatively, in block 212 each metering server 14 may provide the advertisement title to all end users served by that metering server 14. In one implementation, the client systems 12 customize the advertisement title to their individual end users. The end user requests the advertising information in block 214. In block 216, the metering server 14 requests the advertisement from the yellow page server 22, which downloads the advertisement information to the metering server 14. In block 218, the metering server 14 transfers the advertisement to the client system of the end user, credits the end user's account and records the profile data of the end users who requested the advertisement. In block 220, the client system 12 customizes the advertisement for consumption by the end user.<br><br>*See also* Figs. 1–7b and associated text.<br><br>*See also* claim limitations [1b] and [1c]. |
| *Claim 2* | |
| [2] The method of claim 1, wherein the first type network node is an ISP node, and the second type network | Dedrick '521 discloses that the first type network node is an ISP node, and the second type network node is an ICP node. To the extent it is found that Dedrick '521 does not disclose this feature expressly or inherently, it would have been obvious to combine Dedrick '521 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* |

**Appendix B-4**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,724,521 (Dedrick '521)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,724,521 (Dedrick '521) |
|---|---|
| node is an ICP node. | Appendix C.<br><br>*See* col. 2, line 54 to col. 3, line 28.<br>FIG. 1 shows a network system 10 of one embodiment of the present invention. The network 10 includes a plurality of client systems 12 coupled to a metering sewer 14 within a local area network (LAN) 16. Alternatively, a single client system 12 may be coupled to a metering server 14. Each client system 12 may be a personal computer that is operated by an end user. Alternatively, each client system 12 may be any other type of consumer consumption device, such as a television set, a game machine, etc. The server 14 is typically a dedicated computer that provides an interconnect contact node which allows the client systems 12 to communicate with the server 14 and other client systems 12. The server 14 may contain resident modem sharing software that allows the server 14 and client systems 12 to communicate with a device external to the local network 16. The server 14 is also capable of maintaining resident databases. Both the server 14 and the client systems 12 contain the necessary interface hardware and software required to transfer information between the components of the system 10. The metering server 14 is coupled to a publisher unit 18 through a plurality of clearinghouse servers 20. By way of example, the publisher 18 may be connected to the server 14 as part of an overall wide area network (WAN) that allows the server 14 and publisher unit 18 to transfer information. The system 10 may also have a yellow page server 22 coupled to the publisher unit 18 and the metering servers 14. The publisher unit and servers of the WAN system contain the interface hardware and software necessary to transfer electronic information between the components of the system. As shown in FIG. 1, the system 10 may have multiple client systems 12 coupled to a single metering server 14 and multiple servers 14 coupled to a single clearinghouse server 20, a regional content database server 21 and a single yellow page server 22. There may be multiple clearinghouse and yellow page servers located at regional centers throughout the country/world. In addition, depending on the size of a community, there may also be multiple yellow page server for each local community. Although the computer 18 is referred to as a publishing unit, it is to be understood that the computer can also be a node for an advertiser 18 and that the use of the terms publisher and advertiser may be synonymous. |

- 16 -

**Appendix B-4**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,724,521 (Dedrick '521)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,724,521 (Dedrick '521) |
|---|---|
|  | *See also* col. 5, lines 5–13.<br>The yellow page servers 22 serve as the repositories for the electronic advertisements. Each metering server 14 contains a list of titles of available electronic advertisements, as well as providing transitory storage of advertisements that have been requested by consumers who are being served by the metering server 14. In one embodiment, an advertisement may also be temporarily stored in a metering server 14 if the consumers served by the metering server 14 highly match the consumer scale stored within the advertisement.<br>*See also* col. 10, line 64 to col. 11, line 6.<br>In addition to receiving electronic information in the form of advertisements, the end user of client system 12 may also receive other electronic information, such as electronic content placed in clearinghouse servers 20 by publisher 18. For example, this electronic content may be a newspaper or magazine article, or an encyclopedia entry. In one embodiment, this electronic content contains the same consumer variables in header blocks as the electronic advertisements, and is customized by client system 12 in the same manner as discussed above.<br><br>*See also* col. 14, lines 25–43.<br>As shown in FIG. 4, each clearinghouse server 20 contains a demographic database 50, a transaction database 52, billing process 54 and a session manager 56. The demographic database 50 contains user profile data collected from the metering servers 14. The transaction database 52 contains billing information relating to the end users. The transaction database 52 also contains data relating to the accounts of the publishers/advertisers 18. The billing process 54 can access and process data within the databases 50 and 52. For example, when an end user consumes a unit of electronic information, data relating to the consumption of the electronic information may be sent from the billing server 14 to the clearinghouse server 20. The session manager 56 instructs the billing process 54 to charge the publisher/advertiser account within the transaction database 52. The clearinghouse server 20 may also receive user profile data from the metering servers 14 which is subsequently stored by the billing process 54 in the demographic database 50.<br><br>*See also* col. 14, lines 52–64.<br>The billing process 54 of the clearinghouse server can also direct a unit of electronic information to |

- 17 -

**Appendix B-4**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,724,521 (Dedrick '521)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,724,521 (Dedrick '521) |
|---|---|
| | metering servers that service end users with a profile that correlates to a targeted user profile characteristic. For example, the publisher may request that a unit of electronic information be directed to end users with a certain income, etc. The demographic database 50 may contain data relating to which metering servers 14 service end users with corresponding user profile characteristics. The clearinghouse server 20 correlates the requested user profile data with certain identified metering servers and sends the unit of electronic information only to the selected metering servers, which then forward the electronic information to the end users. <br><br> *See also* col. 15, lines 47–64. <br> The metering server 14 is capable of storing units of information relating to the content databases of the publisher/advertiser, including the entire content database. The publisher may periodically update the contents of the database. The content may be initially transferred from the publisher/advertiser 18 to the clearinghouse server 20, which retransmits the content to regional 21 and metering 14 servers. The content received by the metering server 14 from the publisher may include content titles that summarily describe the contents and are stored in the index databases 35 of the metering servers 14. The metering server 14 transmits the titles and possibly a portion of the content to the client systems 12. If the end user wants to consume the electronic information, the user generates a request for the electronic information, typically by providing an input to the GUI of the client system 12. The metering server 14 receives the request and sends the information in accordance with the metering methodology of the system. <br><br> *See also* col. 18, lines 34–64. <br> In block 204, the advertiser 18 transmits a unit of information to the yellow page server 22. The unit of information contains an advertisement, advertisement title, the consumer scale for the advertisement, and desired or most valuable user profile characteristics for targeting end users. The advertising title, profile target data and consumer scale are downloaded to the metering servers 14 by the yellow page server 22 in block 206. In block 208, each metering server 14 then determines where it falls on the consumer scale, based on the user profile characteristics of the end users served by the metering server 14. This determination is made based on the aggregate user profile characteristics stored in user profile database 30 of each metering server 14. Each metering server 14 then charges a fee to the advertiser in |

Appendix B-4

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,724,521 (Dedrick '521)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,724,521 (Dedrick '521) |
|---|---|
| | block 210, the amount of which is determined by where the metering server 14 fell on the consumer scale. In block 212, the metering servers 14 provide the advertisement title to end users who have profile characteristics that correlate with the targeted profile data. Alternatively, in block 212 each metering server 14 may provide the advertisement title to all end users served by that metering server 14. In one implementation, the client systems 12 customize the advertisement title to their individual end users. The end user requests the advertising information in block 214. In block 216, the metering server 14 requests the advertisement from the yellow page server 22, which downloads the advertisement information to the metering server 14. In block 218, the metering server 14 transfers the advertisement to the client system of the end user, credits the end user's account and records the profile data of the end users who requested the advertisement. In block 220, the client system 12 customizes the advertisement for consumption by the end user.<br><br>*See also* Figs. 1–7b and associated text.<br><br>*See also* claim limitation [1a]. |
| *Claim 3* | |
| [3] The method of claim 1, wherein the first type network node is an organization node, and the second type network node is an ICP node. | Dedrick '521 discloses that the first type network node is an organization node, and the second type network node is an ICP node. To the extent it is found that Dedrick '521 does not disclose this feature expressly or inherently, it would have been obvious to combine Dedrick '521 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* col. 2, line 54 to col. 3, line 28.<br>FIG. 1 shows a network system 10 of one embodiment of the present invention. The network 10 includes a plurality of client systems 12 coupled to a metering sewer 14 within a local area network (LAN) 16. Alternatively, a single client system 12 may be coupled to a metering server 14. Each client system 12 may be a personal computer that is operated by an end user. Alternatively, each client system 12 may be any other type of consumer consumption device, such as a television set, a game machine, etc. The server 14 is typically a dedicated computer that provides an interconnect contact |

**Appendix B-4**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,724,521 (Dedrick '521)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,724,521 (Dedrick '521) |
|---|---|
| | node which allows the client systems 12 to communicate with the server 14 and other client systems 12. The server 14 may contain resident modem sharing software that allows the server 14 and client systems 12 to communicate with a device external to the local network 16. The server 14 is also capable of maintaining resident databases. Both the server 14 and the client systems 12 contain the necessary interface hardware and software required to transfer information between the components of the system 10. The metering server 14 is coupled to a publisher unit 18 through a plurality of clearinghouse servers 20. By way of example, the publisher 18 may be connected to the server 14 as part of an overall wide area network (WAN) that allows the server 14 and publisher unit 18 to transfer information. The system 10 may also have a yellow page server 22 coupled to the publisher unit 18 and the metering servers 14. The publisher unit and servers of the WAN system contain the interface hardware and software necessary to transfer electronic information between the components of the system. As shown in FIG. 1, the system 10 may have multiple client systems 12 coupled to a single metering server 14 and multiple servers 14 coupled to a single clearinghouse server 20, a regional content database server 21 and a single yellow page server 22. There may be multiple clearinghouse and yellow page servers located at regional centers throughout the country/world. In addition, depending on the size of a community, there may also be multiple yellow page server for each local community. Although the computer 18 is referred to as a publishing unit, it is to be understood that the computer can also be a node for an advertiser 18 and that the use of the terms publisher and advertiser may be synonymous. <br><br>*See also* col. 5, lines 5–13. <br>The yellow page servers 22 serve as the repositories for the electronic advertisements. Each metering server 14 contains a list of titles of available electronic advertisements, as well as providing transitory storage of advertisements that have been requested by consumers who are being served by the metering server 14. In one embodiment, an advertisement may also be temporarily stored in a metering server 14 if the consumers served by the metering server 14 highly match the consumer scale stored within the advertisement. <br><br>*See also* col. 10, line 64 to col. 11, line 6. <br>In addition to receiving electronic information in the form of advertisements, the end user of client |

**Appendix B-4**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,724,521 (Dedrick '521)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,724,521 (Dedrick '521) |
|---|---|
| | system 12 may also receive other electronic information, such as electronic content placed in clearinghouse servers 20 by publisher 18. For example, this electronic content may be a newspaper or magazine article, or an encyclopedia entry. In one embodiment, this electronic content contains the same consumer variables in header blocks as the electronic advertisements, and is customized by client system 12 in the same manner as discussed above.<br><br>*See also* col. 14, lines 25–43.<br>As shown in FIG. 4, each clearinghouse server 20 contains a demographic database 50, a transaction database 52, billing process 54 and a session manager 56. The demographic database 50 contains user profile data collected from the metering servers 14. The transaction database 52 contains billing information relating to the end users. The transaction database 52 also contains data relating to the accounts of the publishers/advertisers 18. The billing process 54 can access and process data within the databases 50 and 52. For example, when an end user consumes a unit of electronic information, data relating to the consumption of the electronic information may be sent from the billing server 14 to the clearinghouse server 20. The session manager 56 instructs the billing process 54 to charge the publisher/advertiser account within the transaction database 52. The clearinghouse server 20 may also receive user profile data from the metering servers 14 which is subsequently stored by the billing process 54 in the demographic database 50.<br><br>*See also* col. 15, lines 47–64.<br>The metering server 14 is capable of storing units of information relating to the content databases of the publisher/advertiser, including the entire content database. The publisher may periodically update the contents of the database. The content may be initially transferred from the publisher/advertiser 18 to the clearinghouse server 20, which retransmits the content to regional 21 and metering 14 servers. The content received by the metering server 14 from the publisher may include content titles that summarily describe the contents and are stored in the index databases 35 of the metering servers 14. The metering server 14 transmits the titles and possibly a portion of the content to the client systems 12. If the end user wants to consume the electronic information, the user generates a request for the electronic information, typically by providing an input to the GUI of the client system 12. The metering server 14 receives the request and sends the information in accordance with the metering |

Appendix B-4

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,724,521 (Dedrick '521)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,724,521 (Dedrick '521) |
|---|---|
|  | methodology of the system.<br><br>*See also* col. 18, lines 34–64.<br>In block 204, the advertiser 18 transmits a unit of information to the yellow page server 22. The unit of information contains an advertisement, advertisement title, the consumer scale for the advertisement, and desired or most valuable user profile characteristics for targeting end users. The advertising title, profile target data and consumer scale are downloaded to the metering servers 14 by the yellow page server 22 in block 206. In block 208, each metering server 14 then determines where it falls on the consumer scale, based on the user profile characteristics of the end users served by the metering server 14. This determination is made based on the aggregate user profile characteristics stored in user profile database 30 of each metering server 14. Each metering server 14 then charges a fee to the advertiser in block 210, the amount of which is determined by where the metering server 14 fell on the consumer scale. In block 212, the metering servers 14 provide the advertisement title to end users who have profile characteristics that correlate with the targeted profile data. Alternatively, in block 212 each metering server 14 may provide the advertisement title to all end users served by that metering server 14. In one implementation, the client systems 12 customize the advertisement title to their individual end users. The end user requests the advertising information in block 214. In block 216, the metering server 14 requests the advertisement from the yellow page server 22, which downloads the advertisement information to the metering server 14. In block 218, the metering server 14 transfers the advertisement to the client system of the end user, credits the end user's account and records the profile data of the end users who requested the advertisement. In block 220, the client system 12 customizes the advertisement for consumption by the end user.<br><br>*See also* Figs. 1–7b and associated text.<br><br>*See also* claim limitation [1a]. |
| *Claim 4* |  |
| [4] The method of claim 1, wherein the customized page | Dedrick '521 discloses that the customized page file includes customized graphics, sounds, applets, links, and text. To the extent it is found that Dedrick '521 does not disclose this feature expressly or |

**Appendix B-4**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,724,521 (Dedrick '521)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,724,521 (Dedrick '521) |
|---|---|
| file includes customized graphics, sounds, applets, links, and text. | inherently, it would have been obvious to combine Dedrick '521 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter.  *See* Appendix C. *See* col. 4, lines 3–15. The publisher/advertiser 18 is provided with software tools to create electronic information which includes content and advertisements that can be transmitted over the system. The electronic information may allow an end user to access a content database, or the information may be all or a portion of a content database. By way of example, the content database may be the text and video of an electronic newspaper. The content database may reside within the publisher unit or be located at a remote location such as the metering server or a regional server that services a plurality of metering servers. The software tools may include a hypertext oriented mark up language that routes distributed end users to the content databases. *See also* col. 4, lines 36–47. The publisher/advertiser 18 is also provided with software tools to create electronic information in a wide variety of consumption formats that can be transmitted over the system. These consumption formats include formats such as audio, video, graphics, animation, text, etc. For example, an advertiser 18 may create an advertisement for a camera which describes the camera in both audio and video format. Both of these consumption formats are transferred to the metering servers 14, and subsequently to the client systems 12. The end user is then able to consume the advertisement in whichever format he or she prefers, or alternatively in both formats. *See also* col. 13, lines 1–11. For example, the electronic information may be a content database that is analogous to the "yellow pages" of a phone book. The yellow page content database may contain a plurality of advertisements that can be viewed by the end user. The software tools may allow the publisher to build an object that allows the end user to search the contents of the content database. The software tools may also allow the publisher/advertiser to combine different types of information. For example, the publisher can combine video, audio, graphics, animation and text all within the same unit of electronic information provided to the end user. |

- 23 -

**Appendix B-4**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,724,521 (Dedrick '521)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,724,521 (Dedrick '521) |
|---|---|
| | *See also* claim limitation [1b]. |
| *Claim 5* | |
| [5] The method of claim 1, wherein the customized page file includes customized advertisements. | Dedrick '521 discloses that the customized page file includes customized advertisements. To the extent it is found that Dedrick '521 does not disclose this feature expressly or inherently, it would have been obvious to combine Dedrick '521 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* Abstract.<br>A method and apparatus for providing electronic advertisements to end users in a consumer best-fit pricing manner includes an index database, a user profile database, and a consumer scale matching process. The index database provides storage space for the titles of electronic advertisements. The user profile database provides storage for a set of characteristics which correspond to individual end users of the apparatus. The consumer scale matching process is coupled to the content database and the user profile database and compares the characteristics of the individual end users with a consumer scale associated with the electronic advertisement. The apparatus then charges a fee to the advertiser, based on the comparison by the matching process. In one embodiment, a consumer scale is generated for each of multiple electronic advertisements. These advertisements are then transferred to multiple yellow page servers, and the titles associated with the advertisements are subsequently transferred to multiple metering servers. At the metering servers, a determination is made as to where the characteristics of the end users served by each of the metering servers fall on the consumer scale. The higher the characteristics of the end users served by a particular metering server fall, the higher the fee charged to the advertiser.<br><br>*See also* col. 1, lines 45–58.<br>In addition, advertisers often desire to target particular audiences for their advertisements. These targeted audiences are the audiences which an advertiser believes is most likely to be influenced by the advertisement. By targeting only those audiences which are most likely to be influenced by the advertisement, the advertiser is able to expend his or her advertising resources in an efficient manner. |

**Appendix B-4**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,724,521 (Dedrick '521)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,724,521 (Dedrick '521) |
|---|---|
| | Thus, it would be beneficial to provide a system which allows electronic advertisers to target specific audiences which they believe would be most receptive to their advertisements, and thus not require advertisers to provide an advertisement to the entire population, the majority of which may have no interest whatsoever in the product or service being advertised.<br><br>*See also* col. 3, lines 35–48.<br>Consumer variables refer to demographic, psychographic and other profile information. Demographic information refers to the vital statistics of individuals, such as age, sex, income and marital status. Psychographic information refers to the lifestyle and behavioral characteristics of individuals, such as likes and dislikes, color preferences and personality traits that show consumer behavioral characteristics. Thus, the consumer variables refer to information such as marital status, color preferences, favorite sizes and shapes, preferred learning modes, employer, job title, mailing address, phone number, personal and business areas of interest, the willingness to participate in a survey, along with various lifestyle information. This information will be referred to as user profile data.<br><br>*See also* col. 3, line 64 to col. 4, line 2.<br>Thus, the monitoring of consumer actions and inactions based on these consumer variables and the updating of user profile data is transparent to the consumer. In addition, modifications made to the electronic information to customize it to a particular consumer are also transparent to the consumer.<br><br>*See also* col. 4, lines 36–47.<br>The publisher/advertiser 18 is also provided with software tools to create electronic information in a wide variety of consumption formats that can be transmitted over the system. These consumption formats include formats such as audio, video, graphics, animation, text, etc. For example, an advertiser 18 may create an advertisement for a camera which describes the camera in both audio and video format. Both of these consumption formats are transferred to the metering servers 14, and subsequently to the client systems 12. The end user is then able to consume the advertisement in whichever format he or she prefers, or alternatively in both formats.<br><br>*See also* col. 7, lines 1–15. |

**Appendix B-4**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,724,521 (Dedrick '521)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,724,521 (Dedrick '521) |
|---|---|
| | The client activity monitor 24 tracks the consumer variables corresponding to the preferences of the end user(s) of client system 12. When an end user consumes electronic information, and also possibly interacts with that electronic information, client activity monitor 24 associates the electronic information with the appropriate consumer variables and stores this data in the personal profile database 27. For example, the client activity monitor 24 tracks the color of fields or objects that are selected most frequently and least frequently by the end user. Similarly, the consumption format chosen most frequently and least frequently by the end user, such as audio or video, is also tracked and stored in personal profile database 27. In one embodiment, the consumer variables and corresponding fields or objects are indicated in a header block received with the electronic information. |
| | *See also* col. 7, line 66 to col. 8, line 16. |
| | The content adapter 25 customizes electronic content to the individual end user based on the user profile data contained in personal profile database 27. Electronic content received by system 12 from metering server 14 may include fields which can be customized. Which fields can be customized may be indicated in a header block received with the electronic content. For example, a unit of electronic information may be received with a particular field having the default color of green. If personal profile database 27 contains sufficient data regarding color preferences for the individual end user, then content adapter 25 changes the color of that particular field from green to whatever color preference is contained in personal profile database 27 for that individual end user. Similarly, the default consumption format may be video, but if personal profile database 27 indicates that the end user prefers audio format, then content adapter 25 delivers the audio format version of the electronic information to the client interface 23 rather than the video version. |
| | *See also* col. 12, lines 60–65. |
| | Upon receiving and storing the targeted information in the content database 34, the metering process 36 accesses the user profile database 30 to find end users with matching profiles. The metering process 36 then sends the content titles to the end users with matching profiles. |
| | *See also* col. 16, lines 31–50. |
| | As shown in FIG. 5, the yellow page server 22 contains a resident advertising database 70, a calendar |

**Appendix B-4**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,724,521 (Dedrick '521)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,724,521 (Dedrick '521) |
|---|---|
| | database 72, a scheduling process 74, an interactive process 76 and a session manager 78. The yellow page server 22 receives and stores electronic advertising information from an advertiser 18 in the advertising database 70. The advertising database 70 may contain electronic information that is generated by advertisers or by the end users. By way of example, an end user generated electronic advertisement may be analogous to a "classified ad." To create end user generated advertisements, the client systems may be provided with the same electronic publishing tools as the advertiser. The electronic advertising information typically includes advertising titles. The electronic advertising information may also have header information containing targeted user profile data. The metering process 36 accesses the user profile databases and correlates the targeted user profile data with metering servers that service end users with the targeted profiles. Metering servers with corresponding target profiles are provided with the advertising titles.<br><br>*See also* Figs. 6–7b and associated text.<br><br>*See also* claim limitation [1b]. |
| *Claim 6* | |
| [6a] The method of claim 1, wherein: the service request includes an IP address for identifying the first type network node, and | Dedrick '521 discloses that the service request includes an IP address for identifying the first type network node. To the extent it is found that Dedrick '521 does not disclose this feature expressly or inherently, it would have been obvious to combine Dedrick '521 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* col. 1, lines 14–21.<br>Computer technology is continuously advancing, providing newer computer systems with continuously improved performance. One result of this improved performance is an increased use of computer systems by individuals in a wide variety of business, academic and personal applications. In some instances, these computer systems are linked together by a network or modems so that the systems can communicate with each other via electronic mail. |

Appendix B-4

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,724,521 (Dedrick '521)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,724,521 (Dedrick '521) |
|---|---|
|  | *See also* claim limitation [1d]. |
| [6b] identifying the first type network node based on the service request comprises using the IP address included in the service request to identify the first type network node. | Dedrick '521 discloses that identifying the first type network node based on the service request comprises using the IP address included in the service request to identify the first type network node. To the extent it is found that Dedrick '521 does not disclose this feature expressly or inherently, it would have been obvious to combine Dedrick '521 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.

*See* col. 1, lines 14–21.
Computer technology is continuously advancing, providing newer computer systems with continuously improved performance. One result of this improved performance is an increased use of computer systems by individuals in a wide variety of business, academic and personal applications. In some instances, these computer systems are linked together by a network or modems so that the systems can communicate with each other via electronic mail.

*See also* claim limitation [1e]. |
| *Claim 7* |  |
| [7a] A method for providing web page customization service to a plurality of first type network nodes at a second type network node, comprising the steps of: | Dedrick '521 discloses a method for providing web page customization service to a plurality of first type network nodes at a second type network node. To the extent it is found that Dedrick '521 does not disclose this feature expressly or inherently, it would have been obvious to combine Dedrick '521 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.

*See* claim limitation [1a]. |
| [7b] forming at least a page file for each of the first type network nodes; | Dedrick '521 discloses forming at least a page file for each of the first type network nodes. To the extent it is found that Dedrick '521 does not disclose this feature expressly or inherently, it would have been obvious to combine Dedrick '521 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |

Appendix B-4

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,724,521 (Dedrick '521)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,724,521 (Dedrick '521) |
|---|---|
|  | *See* claim limitation [1b]. |
| [7c] forming at least a page file for the second type network node; | Dedrick '521 discloses forming at least a page file for the second type network node. To the extent it is found that Dedrick '521 does not disclose this feature expressly or inherently, it would have been obvious to combine Dedrick '521 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1c]. |
| [7d] receiving a service request from one of the first type network nodes; | Dedrick '521 discloses receiving a service request from one of the first type network nodes. To the extent it is found that Dedrick '521 does not disclose this feature expressly or inherently, it would have been obvious to combine Dedrick '521 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1d]. |
| [7e] determining whether the first type network node participates in the web page customization service; | Dedrick '521 discloses determining whether the first type network node participates in the web page customization service. To the extent it is found that Dedrick '521 does not disclose this feature expressly or inherently, it would have been obvious to combine Dedrick '521 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1e]. |
| [7f] if the first type network node participates in the web page customization service, forming a customized page file for the service request by including the page file formed for the first type | Dedrick '521 discloses, if the first type network node participates in the web page customization service, forming a customized page file for the service request by including the page file formed for the first type network node within the page file formed for the second type network node. To the extent it is found that Dedrick '521 does not disclose this feature expressly or inherently, it would have been obvious to combine Dedrick '521 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |

**Appendix B-4**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,724,521 (Dedrick '521)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,724,521 (Dedrick '521) |
|---|---|
| network node within the page file formed for the second type network node; and | *See* claim limitation [1f]. |
| [7g] if the first type network node does not participate in the web page customization service, forming a page file for the service request by using the page file formed for the second type network node. | Dedrick '521 discloses, if the first type network node does not participate in the web page customization service, forming a page file for the service request by using the page file formed for the second type network node. For example, the second type network node identifies the first type network node based on the service request. If the second type network node fails to identify the first type network node, the second type network node will only form a page file for the service request by using the page file formed for the second type network node. To the extent it is found that Dedrick '521 does not disclose this feature expressly or inherently, it would have been obvious to combine Dedrick '521 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1f]. |
| *Claim 8* | |
| [8] The method of claim 7, wherein the first type network nodes are ISP nodes, and the second type network node is an ICP node. | Dedrick '521 discloses that the first type network nodes are ISP nodes, and the second type network node is an ICP node. To the extent it is found that Dedrick '521 does not disclose this feature expressly or inherently, it would have been obvious to combine Dedrick '521 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [2]. |
| *Claim 9* | |
| [9] The method of claim 7, wherein the first type network nodes are organization nodes, and the | Dedrick '521 discloses that the first type network nodes are organization nodes, and the second type network node is an ICP node. To the extent it is found that Dedrick '521 does not disclose this feature expressly or inherently, it would have been obvious to combine Dedrick '521 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* |

Appendix B-4

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,724,521 (Dedrick '521)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,724,521 (Dedrick '521) |
|---|---|
| second type network node is an ICP node. | Appendix C.<br><br>*See* claim limitation [3]. |
| *Claim 10* | |
| [10] The method of claim 7, wherein the customized page file includes customized graphics, sounds, applets, links, and text. | Dedrick '521 discloses that the customized page file includes customized graphics, sounds, applets, links, and text. To the extent it is found that Dedrick '521 does not disclose this feature expressly or inherently, it would have been obvious to combine Dedrick '521 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [4]. |
| *Claim 11* | |
| [11] The method of claim 7, wherein the customized page file includes customized advertisements. | Dedrick '521 discloses that the customized page file includes customized advertisements. To the extent it is found that Dedrick '521 does not disclose this feature expressly or inherently, it would have been obvious to combine Dedrick '521 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [5]. |
| *Claim 12* | |
| [12a] The method of claim 7, wherein: the service request from one of the first type network nodes includes an IP address for identifying the first type network node, and | Dedrick '521 discloses that the service request from one of the first type network nodes includes an IP address for identifying the first type network node. To the extent it is found that Dedrick '521 does not disclose this feature expressly or inherently, it would have been obvious to combine Dedrick '521 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [6a]. |
| [12b] determining whether the first type network node | Dedrick '521 discloses that determining whether the first type network node participates in the web page customization service comprises using the IPI address included in the service request to identify |

**Appendix B-4**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,724,521 (Dedrick '521)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,724,521 (Dedrick '521) |
|---|---|
| participates in the web page customization service comprises using the IPI address included in the service request to identify the first type network node. | the first type network node. To the extent it is found that Dedrick '521 does not disclose this feature expressly or inherently, it would have been obvious to combine Dedrick '521 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [6b]. |
| *Claim 13* | |
| [13a] A method for providing web page customization service to a plurality of first type network nodes at a second type network node, comprising the steps of: | Dedrick '521 discloses a method for providing web page customization service to a plurality of first type network nodes at a second type network node. To the extent it is found that Dedrick '521 does not disclose this feature expressly or inherently, it would have been obvious to combine Dedrick '521 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1a]. |
| [13b] forming a plurality of advertisements for the first type network nodes; | Dedrick '521 discloses forming a plurality of advertisements for the first type network nodes. To the extent it is found that Dedrick '521 does not disclose this feature expressly or inherently, it would have been obvious to combine Dedrick '521 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitations [1b] and [5]. |
| [13c] forming at least a page file for the second type network node; | Dedrick '521 discloses forming at least a page file for the second type network node. To the extent it is found that Dedrick '521 does not disclose this feature expressly or inherently, it would have been obvious to combine Dedrick '521 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1c]. |
| [13d] receiving a service | Dedrick '521 discloses receiving a service request from one of the first type network nodes. To the |

**Appendix B-4**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,724,521 (Dedrick '521)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,724,521 (Dedrick '521) |
|---|---|
| request from one of the first type network nodes; | extent it is found that Dedrick '521 does not disclose this feature expressly or inherently, it would have been obvious to combine Dedrick '521 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter.  *See* Appendix C.<br><br>*See* claim limitation [1d]. |
| [13e] identifying advertisements for the first type network node; and | Dedrick '521 discloses identifying advertisements for the first type network node.  To the extent it is found that Dedrick '521 does not disclose this feature expressly or inherently, it would have been obvious to combine Dedrick '521 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter.  *See* Appendix C.<br><br>*See* claim limitations [1e] and [5]. |
| [13f] forming a customized page file for the first type network node by including the identified advertisements within the page file formed for the second type network node. | Dedrick '521 discloses forming a customized page file for the first type network node by including the identified advertisements within the page file formed for the second type network node.  To the extent it is found that Dedrick '521 does not disclose this feature expressly or inherently, it would have been obvious to combine Dedrick '521 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter.  *See* Appendix C.<br><br>*See* claim limitation [1f]. |
| *Claim 14* | |
| [14] The method of claim 13, wherein the first type network nodes are ISP nodes, and the second type network node is an ICP node. | Dedrick '521 discloses that the first type network nodes are ISP nodes, and the second type network node is an ICP node.  To the extent it is found that Dedrick '521 does not disclose this feature expressly or inherently, it would have been obvious to combine Dedrick '521 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter.  *See* Appendix C.<br><br>*See* claim limitation [2]. |
| *Claim 15* | |

**Appendix B-4**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,724,521 (Dedrick '521)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,724,521 (Dedrick '521) |
|---|---|
| [15] The method of claim 13, wherein the first type network nodes are organization nodes, and the second type network node is an ICP node. | Dedrick '521 discloses that the first type network nodes are organization nodes, and the second type network node is an ICP node. To the extent it is found that Dedrick '521 does not disclose this feature expressly or inherently, it would have been obvious to combine Dedrick '521 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [3]. |
| *Claim 16* | |
| [16] The method of claim 13, wherein the identified advertisements do not cause negative impact on the owner of the first type network node. | Dedrick '521 discloses that the identified advertisements do not cause negative impact on the owner of the first type network node. To the extent it is found that Dedrick '521 does not disclose this feature expressly or inherently, it would have been obvious to combine Dedrick '521 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [5]. |
| *Claim 17* | |
| [17a] An apparatus for dynamically forming a customized web page for a first type network node at a second type network node, comprising: | Dedrick '521 discloses an apparatus for dynamically forming a customized web page for a first type network node at a second type network node. To the extent it is found that Dedrick '521 does not disclose this feature expressly or inherently, it would have been obvious to combine Dedrick '521 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1a]. |
| [17b] means for forming at least a page file for the first type network node; | Dedrick '521 discloses means for forming at least a page file for the first type network node. To the extent it is found that Dedrick '521 does not disclose this feature expressly or inherently, it would have been obvious to combine Dedrick '521 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |

Appendix B-4

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,724,521 (Dedrick '521)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,724,521 (Dedrick '521) |
|---|---|
| | *See* claim limitation [1b]. |
| [17c] means for forming at least a page file for the second type network node; | Dedrick '521 discloses means for forming at least a page file for the second type network node. To the extent it is found that Dedrick '521 does not disclose this feature expressly or inherently, it would have been obvious to combine Dedrick '521 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1c]. |
| [17d] means for receiving a service request from the first type network node; | Dedrick '521 discloses means for receiving a service request from the first type network node. To the extent it is found that Dedrick '521 does not disclose this feature expressly or inherently, it would have been obvious to combine Dedrick '521 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1d]. |
| [17e] means for identifying the first type network node based on the service request; and | Dedrick '521 discloses means for identifying the first type network node based on the service request. To the extent it is found that Dedrick '521 does not disclose this feature expressly or inherently, it would have been obvious to combine Dedrick '521 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1e]. |
| [17f] means for forming a customized page file formed for the first type network node by including the page file formed for the first type network node within the page file for the second type | Dedrick '521 discloses means for forming a customized page file formed for the first type network node by including the page file formed for the first type network node within the page file for the second type network node. To the extent it is found that Dedrick '521 does not disclose this feature expressly or inherently, it would have been obvious to combine Dedrick '521 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |

- 35 -

**Appendix B-4**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,724,521 (Dedrick '521)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,724,521 (Dedrick '521) |
|---|---|
| network node. | *See* claim limitation [1f]. |
| *Claim 18* | |
| [18] The apparatus of claim 17, wherein the first type network node is an ISP node, and the second type network node is an ICP node. | Dedrick '521 discloses that the first type network node is an ISP node, and the second type network node is an ICP node. To the extent it is found that Dedrick '521 does not disclose this feature expressly or inherently, it would have been obvious to combine Dedrick '521 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [2]. |
| *Claim 19* | |
| [19] The apparatus of claim 17, wherein the first type network node is an organization node, and the second type network node is an ICP node. | Dedrick '521 discloses that the first type network node is an organization node, and the second type network node is an ICP node. To the extent it is found that Dedrick '521 does not disclose this feature expressly or inherently, it would have been obvious to combine Dedrick '521 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [3]. |
| *Claim 20* | |
| [20] The apparatus of claim 17, wherein the customized page file includes customized graphics, sounds, applets, links, and text. | Dedrick '521 discloses that the customized page file includes customized graphics, sounds, applets, links, and text. To the extent it is found that Dedrick '521 does not disclose this feature expressly or inherently, it would have been obvious to combine Dedrick '521 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [4]. |
| *Claim 21* | |
| [21] The apparatus of claim | Dedrick '521 discloses that the customized page file includes customized advertisements. To the |

**Appendix B-4**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,724,521 (Dedrick '521)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,724,521 (Dedrick '521) |
|---|---|
| 17, wherein the customized page file includes customized advertisements. | extent it is found that Dedrick '521 does not disclose this feature expressly or inherently, it would have been obvious to combine Dedrick '521 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [5]. |
| *Claim 22* | |
| [22a] An apparatus for providing web page customization service to a plurality of first type network nodes at a second type network node, comprising: | Dedrick '521 discloses an apparatus for providing web page customization service to a plurality of first type network nodes at a second type network node. To the extent it is found that Dedrick '521 does not disclose this feature expressly or inherently, it would have been obvious to combine Dedrick '521 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [7a]. |
| [22b] means for forming at least a page file for each of the first type network nodes; | Dedrick '521 discloses means for forming at least a page file for each of the first type network nodes. To the extent it is found that Dedrick '521 does not disclose this feature expressly or inherently, it would have been obvious to combine Dedrick '521 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [7b]. |
| [22c] means for forming at least a page file for the second type network node; | Dedrick '521 discloses means for forming at least a page file for the second type network node. To the extent it is found that Dedrick '521 does not disclose this feature expressly or inherently, it would have been obvious to combine Dedrick '521 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [7c]. |
| [22d] means for receiving a service request from one of | Dedrick '521 discloses means for receiving a service request from one of the first type network nodes. To the extent it is found that Dedrick '521 does not disclose this feature expressly or inherently, it |

**Appendix B-4**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,724,521 (Dedrick '521)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,724,521 (Dedrick '521) |
|---|---|
| the first type network nodes; | would have been obvious to combine Dedrick '521 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter.  *See* Appendix C.<br><br>*See* claim limitation [7d]. |
| [22e] means for determining whether the first type network node participates in the web page customization service; | Dedrick '521 discloses means for determining whether the first type network node participates in the web page customization service.  To the extent it is found that Dedrick '521 does not disclose this feature expressly or inherently, it would have been obvious to combine Dedrick '521 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter.  *See* Appendix C.<br><br>*See* claim limitation [7e]. |
| [22f] means for forming a customized page file for the service request by including the page file formed for the first type network node within the page file formed for the second type network node, if first type network node participates in the web page customization service; and | Dedrick '521 discloses means for forming a customized page file for the service request by including the page file formed for the first type network node within the page file formed for the second type network node, if the first type network node participates in the web page customization service.  To the extent it is found that Dedrick '521 does not disclose this feature expressly or inherently, it would have been obvious to combine Dedrick '521 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter.  *See* Appendix C.<br><br>*See* claim limitation [7f]. |
| [22g] means for forming a page file for the service request by using the page file formed for the second type network node, if the first type | Dedrick '521 discloses means for forming a page file for the service request by using the page file formed for the second type network node, if the first type network node does not participate in the web page customization service.  To the extent it is found that Dedrick '521 does not disclose this feature expressly or inherently, it would have been obvious to combine Dedrick '521 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter.  *See* |

**Appendix B-4**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,724,521 (Dedrick '521)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,724,521 (Dedrick '521) |
|---|---|
| network node does not participate in the web page customization service. | Appendix C.<br><br>*See* claim limitation [7g]. |
| *Claim 23* | |
| [23] The apparatus of claim 22, wherein the first type network nodes are ISP nodes, and the second type network node is an ICP node. | Dedrick '521 discloses that the first type network nodes are ISP nodes, and the second type network node is an ICP node. To the extent it is found that Dedrick '521 does not disclose this feature expressly or inherently, it would have been obvious to combine Dedrick '521 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [8]. |
| *Claim 24* | |
| [24] The apparatus of claim 22, wherein the first type network nodes are organization nodes, and the second type network node is an ICP node. | Dedrick '521 discloses that the first type network nodes are organization nodes, and the second type network node is an ICP node. To the extent it is found that Dedrick '521 does not disclose this feature expressly or inherently, it would have been obvious to combine Dedrick '521 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [9]. |
| *Claim 25* | |
| [25] The apparatus of claim 22, wherein the customized page file includes customized graphics, sounds, applets, links, and text. | Dedrick '521 discloses that the customized page file includes customized graphics, sounds, applets, links, and text. To the extent it is found that Dedrick '521 does not disclose this feature expressly or inherently, it would have been obvious to combine Dedrick '521 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [10]. |
| *Claim 26* | |

Appendix B-4

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,724,521 (Dedrick '521)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,724,521 (Dedrick '521) |
|---|---|
| [26] The apparatus of claim 25, wherein the customized page file includes customized advertisements. | Dedrick '521 discloses that the customized page file includes customized advertisements. To the extent it is found that Dedrick '521 does not disclose this feature expressly or inherently, it would have been obvious to combine Dedrick '521 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [11]. |
| *Claim 27* | |
| [27a] An apparatus for providing web page customization service to a plurality of first type network nodes at a second type network node, comprising: | Dedrick '521 discloses an apparatus for providing web page customization service to a plurality of first type network nodes at a second type network node. To the extent it is found that Dedrick '521 does not disclose this feature expressly or inherently, it would have been obvious to combine Dedrick '521 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [13a]. |
| [27b] means for forming a plurality of advertisements for the first type network nodes; | Dedrick '521 discloses means for forming a plurality of advertisements for the first type network nodes. To the extent it is found that Dedrick '521 does not disclose this feature expressly or inherently, it would have been obvious to combine Dedrick '521 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [13b]. |
| [27c] means for forming at least a page file for the second type network node; | Dedrick '521 discloses means for forming at least a page file for the second type network node. To the extent it is found that Dedrick '521 does not disclose this feature expressly or inherently, it would have been obvious to combine Dedrick '521 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [13c]. |
| [27d] means for receiving a | Dedrick '521 discloses means for receiving a service request from one of the first type network nodes. |

**Appendix B-4**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,724,521 (Dedrick '521)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,724,521 (Dedrick '521) |
|---|---|
| service request from one of the first type network nodes; | To the extent it is found that Dedrick '521 does not disclose this feature expressly or inherently, it would have been obvious to combine Dedrick '521 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [13d]. |
| [27e] means for identifying advertisements for the first type network node; and | Dedrick '521 discloses means for identifying advertisements for the first type network node. To the extent it is found that Dedrick '521 does not disclose this feature expressly or inherently, it would have been obvious to combine Dedrick '521 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [13e]. |
| [27f] means for forming a customized page file for the first type network node by including the identified advertisements within the page file formed for the second type network node. | Dedrick '521 discloses means for forming a customized page file for the first type network node by including the identified advertisements within the page file formed for the second type network node. To the extent it is found that Dedrick '521 does not disclose this feature expressly or inherently, it would have been obvious to combine Dedrick '521 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [13f]. |
| *Claim 28* | |
| [28] The apparatus of claim 27, wherein the first type network nodes are ISP nodes, and the second type network node is an ICP node. | Dedrick '521 discloses that the first type network nodes are ISP nodes, and the second type network node is an ICP node. To the extent it is found that Dedrick '521 does not disclose this feature expressly or inherently, it would have been obvious to combine Dedrick '521 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [14]. |
| *Claim 29* | |

**Appendix B-4**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,724,521 (Dedrick '521)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,724,521 (Dedrick '521) |
|---|---|
| [29] The apparatus of claim 27, wherein the first type network nodes are organization nodes, and the second type network node is an ICP node. | Dedrick '521 discloses that the first type network nodes are organization nodes, and the second type network node is an ICP node. To the extent it is found that Dedrick '521 does not disclose this feature expressly or inherently, it would have been obvious to combine Dedrick '521 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [15]. |
| *Claim 30* | |
| [30] The apparatus of claim 27, wherein the identified advertisements do not cause negative impact on the owner of the first type network node. | Dedrick '521 discloses that the identified advertisements do not cause negative impact on the owner of the first type network node. To the extent it is found that Dedrick '521 does not disclose this feature expressly or inherently, it would have been obvious to combine Dedrick '521 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [16]. |

**Appendix B-5**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,754,939 (Herz '939)**

U.S. Patent No. 5,754,939 to Herz et al. ("Herz '939") is prior art to U.S. Patent No. 6,442,577 ("the '577 patent") under 35 U.S.C. 102(a) because it issued as a U.S. patent on May 19, 1998, which is prior to the Nov. 3, 1998 filing date of the '577 patent. Further, Herz '939 is prior art to the '577 patent under 35 U.S.C. 102(e) because it issued from a U.S. patent application filed on Oct. 31, 1995, which is prior to the Nov. 3, 1998 filing date of the '577 patent.

As detailed in this chart, Herz '939 anticipates at least claims 1–30 of the '577 patent. In addition or in the alternative, claims 1–30 of the '577 patent are obvious over Herz '939 in view of the knowledge of a person of ordinary skill and/or one or more other references, as detailed in Appendix C.

This chart is based in whole or in part on the present understanding of positions taken by PageMelding regarding the coverage, scope and construction of the asserted claims to the extent those positions can be deduced from PageMelding's contentions pursuant to Patent Local Rule 3-1 served on August 3, 2012. Nothing herein is an admission that PageMelding's infringement contentions are correct, an admission that Plaintiff's apparent claim constructions are correct, or an admission that ESPN's technology infringes any asserted claim.

**Appendix B-5**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,754,939 (Herz '939)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,754,939 (Herz '939) |
|---|---|
| *Claim 1* | |
| [1a] A method for dynamically forming customized web pages for a first type network node at a second type network node, comprising the steps of: | Herz '939 discloses a method for dynamically forming customized web pages for a first type network node at a second type network node. To the extent it is found that Herz '939 does not disclose this feature expressly or inherently, it would have been obvious to combine Herz '939 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* Abstract.<br>This invention relates to customized electronic identification of desirable objects, such as news articles, in an electronic media environment, and in particular to a system that automatically constructs both a "target profile" for each target object in the electronic media based, for example, on the frequency with which each word appears in an article relative to its overall frequency of use in all articles, as well as a "target profile interest summary" for each user, which target profile interest summary describes the user's interest level in various types of target objects. The system then evaluates the target profiles against the users' target profile interest summaries to generate a user-customized rank ordered listing of target objects most likely to be of interest to each user so that the user can select from among these potentially relevant target objects, which were automatically selected by this system from the plethora of target objects that are profiled on the electronic media. Users' target profile interest summaries can be used to efficiently organize the distribution of information in a large scale system consisting of many users interconnected by means of a communication network. Additionally, a cryptographically-based pseudonym proxy server is provided to ensure the privacy of a user's target profile interest summary, by giving the user control over the ability of third parties to access this summary and to identify or contact the user.<br><br>*See* also col. 4, line 48 to col. 5, line 5.<br>Relevant definitions of terms for the purpose of this description include: (a.) an object available for access by the user, which may be either physical or electronic in nature, is termed a "target object," (b.) a digitally represented profile indicating that target object's attributes is termed a "target profile," (c.) the user looking for the target object is termed a "user," (d.) a profile holding that user's attributes, |

Appendix B-5

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,754,939 (Herz '939)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,754,939 (Herz '939) |
|---|---|
| | including age/zip code/etc. is termed a "user profile," (e.) a summary of digital profiles of target objects that a user likes and/or dislikes, is termed the "target profile interest summary" of that user, (f) a profile consisting of a collection of attributes, such that a user likes target objects whose profiles are similar to this collection, of attributes, is termed a "search profile" or in some contexts a "query" or "query profile," (g.) a specific embodiment of the target profile interest summary which comprises a set of search profiles is termed the "search profile set" of a user, (h.) a collection of target objects with similar profiles, is termed a "cluster," (i.) an aggregate profile formed by averaging the attributes of all tar get objects in a cluster, termed a "cluster profile," (j.) a real number determined by calculating the statistical variance of the profiles of all target objects in a cluster, is termed a "cluster variance," (k.) a real number determined by calculating the maximum distance between the profiles of any two target objects in a cluster, is termed a "cluster diameter." |
| | *See also* Figs. 1, 2, 10, 12, 14 and associated text. |
| | *See also* claim limitations [1a] through [1f]. |
| [1b] forming at least a page file for the first type network node; | Herz '939 discloses forming at least a page file for the first type network node. To the extent it is found that Herz '939 does not disclose this feature expressly or inherently, it would have been obvious to combine Herz '939 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| | *See* col. 6, lines 10-35. <br> Examples of target objects can include, but are not limited to: a newspaper story of potential interest, a movie to watch, an item to buy, e-mail to receive, or another person to correspond with. In all these cases, the information delivery process in the preferred embodiment is based on determining the similarity between a profile for the target object and the profiles of target objects for which the user (or a similar user) has provided positive feedback in the past. The individual data that describe a target object and constitute the target object's profile are herein termed "attributes" of the target object. Attributes may include, but are not limited to, the following: (1) long pieces of text ( a newspaper story, a movie review, a product description or an advertisement), (2) short pieces of text (name of a |

Appendix B-5

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,754,939 (Herz '939)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,754,939 (Herz '939) |
|---|---|
| | movie's director, name of town from which an advertisement was placed, name of the language in which an article was written), (3) numeric measurements (price of a product, rating given to a movie, reading level of a book), (4) associations with other types of objects (list of actors in a movie, list of persons who have read a document).  Any of these attributes, but especially the numeric ones, may correlate with the quality of the target object, such as measures of its popularity (how often it is accessed) or of user satisfaction (number of complaints received).<br><br>*See also* col. 30, lines 29-51.<br>The various processors interconnected by the data communication network N as shown in FIG. 1 can be divided into two classes and grouped as illustrated in FIG. 2: clients and servers.  The clients C1-Cn are individual user's computer systems which are connected to servers S1-S5 at various times via data, communications links.  Each of the clients Ci is typically associated with-a single server Sj, but these associations can change over time.  The clients C1-Cn both interface with users and produce and retrieve files to and from servers.  The clients C1-Cn are not necessarily continuously on-line, since they typically serve a single user and can be movable systems, such as laptop computers, which can be connected to the data communications network N at any of a number of locations.  Clients could also be a variety of other computers, such as computers and kiosks providing access to customized information as well as targeted advertising to many users, where the users identify themselves with passwords or with smart cards.  A server Si is a computer system that is presumed to be continuously on-line and functions to both collect files from various sources on the data communication network N for access by local clients C1-Cn and collect files from local clients C1-Cn for access by remote clients.<br><br>*See also* col. 58, lines 25-32.<br>Once the profile correlation step is completed for a selected user or group of users, at step 1104 the profile processing module 203 stores a list of the identified articles for presentation to each user.  At a user's request, the profile processing system 203 retrieves the generated list of relevant articles and presents this list of titles of the selected articles to the user, who can then select at step 1105 any article for viewing. |

Appendix B-5

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,754,939 (Herz '939)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,754,939 (Herz '939) |
|---|---|
| | *See also* Figs. 1, 2, 10, 12, 14 and associated text. |
| [1c] forming at least a page file for the second type network node; | Herz '939 discloses forming at least a page file for the second type network node. To the extent it is found that Herz '939 does not disclose this feature expressly or inherently, it would have been obvious to combine Herz '939 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* col. 30, lines 29-51.<br>The various processors interconnected by the data communication network N as shown in FIG. 1 can be divided into two classes and grouped as illustrated in FIG. 2: clients and servers. The clients C1-Cn are individual user's computer systems which are connected to servers S1-S5 at various times via data, communications links. Each of the clients Ci is typically associated with-a single server Sj, but these associations can change over time. The clients C1-Cn both interface with users and produce and retrieve files to and from servers. The clients C1-Cn are not necessarily continuously on-line, since they typically serve a single user and can be movable systems, such as laptop computers, which can be connected to the data communications network N at any of a number of locations. Clients could also be a variety of other computers, such as computers and kiosks providing access to customized information as well as targeted advertising to many users, where the users identify themselves with passwords or with smart cards. A server Si is a computer system that is presumed to be continuously on-line and functions to both collect files from various sources on the data communication network N for access by local clients C1-Cn and collect files from local clients C1-Cn for access by remote clients.<br><br>*See also* col. 38, lines 6-34.<br>Once a proxy server S2 has authenticated and registered a user's pseudonym, the user may begin to use the services of the proxy server S2, in interacting with other network entities such as service providers, as exemplified by server S4 in FIG. 2, an information service provider node connected to the network. The user controls the proxy server S2 by forming digitally encoded requests that the user subsequently transmits to the proxy server S2 over the network N. The nature and format of these requests will vary, since the proxy server may be used for any of the services described in this |

**Appendix B-5**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,754,939 (Herz '939)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,754,939 (Herz '939) |
|---|---|
| | application, such as the browsing , querying, and other navigational functions described below.  In a generic scenario, the user wishes to communicate under pseudonym P with a particular information provider or user at address A, where P is a pseudonym allocated to the user and A is either a public network address at a server such as S4, or another pseudonym that is registered on a proxy server such as S4.  (In the most common version of this scenario, address A is the address of an information provider, and the user is requesting that the information provider send target objects of interest.) The user must form a request R to proxy server S2, that requests proxy server S2 to send a message to address A and to forward the response back to the user.  The, user may thereby communicate with other parties, either non-pseudonymous parties, in the case where address A is a public network address, or pseudonymous parties, in the case where address A is a pseudonym held by, for example, a business or another user who prefers to operate pseudonymously. |
| | *See also* col. 66, lines 30-50. |
| | It should be appreciated that a hierarchical cluster-tree may be configured with multiple cluster selections branching from each node or the same labeled clusters presented in the form of single branches for multiple nodes ordered in a hierarchy.  In one variation, the user is able to perform lateral navigation between neighboring clusters as well, by requesting that the system search for a cluster whose cluster profile resembles the cluster profile of the currently selected cluster.  If this type of navigation is performed at the level of individual objects (leaf ends), then automatic hyperlinks may be then created as navigation occurs.  This is one way that nearest-neighbor clustering navigation may be performed.  For example, in a domain where target objects are home pages on the World Wide Web, a collection of such pages could be laterally linked to create a "virtual mall." |
| | *See also* Figs. 1, 2, 10, 12, 14 and associated text. |
| [1d] receiving a service request from the first type network node; | Herz '939 discloses receiving a service request from the first type network node.  To the extent it is found that Herz '939 does not disclose this feature expressly or inherently, it would have been obvious to combine Herz '939 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter.  *See* Appendix C. |

**Appendix B-5**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,754,939 (Herz '939)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,754,939 (Herz '939) |
|---|---|
| | *See* col. 28, line 59 to col. 29, line 20.<br>User information access software is resident on the user's personal computer and serves to communicate over the data communications link and the telecommunication network N with one of the plurality of network vendors V.sub.1 -V.sub.k (America Online, Prodigy, CompuServe, other private companies or even universities) who provide data interconnection service with selected ones of the information servers I.sub.1 -I.sub.m. The user can, by use of the user information access software, interact with the information servers I.sub.1 -I.sub.m to request and obtain access to data that resides on mass storage systems -SS.sub.m that are part of the information server apparatus. New data is input to this system y users via their personal computers T.sub.1 -T.sub.n and by commercial information services by populating their mass storage systems SS.sub.1 -SS.sub.m with commercial data. Each user terminal T.sub.1 -T.sub.n and the information servers I.sub.1 -I.sub.m have phone numbers or IP addresses on the network N which enable a data communication link to be established between a particular user terminal T.sub.1 -T.sub.n and the selected information server I.sub.1 -I.sub.m. A user's electronic mail address also uniquely identifies the user and the user'[s] network vendor V.sub.1 -V.sub.k in an industry-standard format such as: username@aol.com or username@netcom.com. The network vendors V1-V.sub.k provide access passwords for their subscribers. (selected users), through which the users can access the information servers I.sub.1 -I.sub.m. The subscribers pay the network vendors V1-V.sub.k for the access services on a fee schedule that typically includes a monthly subscription fee and usage based charges.<br><br>*See also* col. 30, lines 29-51.<br>The various processors interconnected by the data communication network N as shown in FIG. 1 can be divided into two classes and grouped as illustrated in FIG. 2: clients and servers. The clients C1-Cn are individual user's computer systems which are connected to servers S1-S5 at various times via data, communications links. Each of the clients Ci is typically associated with-a single server Sj, but these associations can change over time. The clients C1-Cn both interface with users and produce and retrieve files to and from servers. The clients C1-Cn are not necessarily continuously on-line, since they typically serve a single user and can be movable systems, such as laptop computers, which can be connected to the data communications network N at any of a number of locations. Clients could also |

Appendix B-5

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,754,939 (Herz '939)**

| U.S. Patent No. 6,442,577 | U.S. Patent No.  5,754,939 (Herz '939) |
|---|---|
|  | be a variety of other computers, such as computers and kiosks providing access to customized information as well as targeted advertising to many users, where the users identify themselves with passwords or with smart cards.  A server Si is a computer system that is presumed to be continuously on-line and functions to both collect files from various sources on the data communication network N for access by local clients C1-Cn and collect files from local clients C1-Cn for access by remote clients.<br><br>*See also* col. 38, lines 6-34.<br>Once a proxy server S2 has authenticated and registered a user's pseudonym, the user may begin to use the services of the proxy server S2, in interacting with other network entities such as serviceproviders, as exemplified by server S4 in FIG. 2, an information service provider node connected to the network.  The user controls the proxy server S2 by forming digitally encoded requests that the user subsequently transmits to the proxy server S2 over the network N.  The nature and format of these requests will vary, since the proxy server may be used for any of the services described in this application, such as the browsing , querying, and other navigational functions described below.  In a generic scenario, the user wishes to communicate under pseudonym P with a particular information provider or user at address A, where P is a pseudonym allocated to the user and A is either a public network address at a server such as S4, or another pseudonym that is registered on a proxy server such as S4.  (In the most common version of this scenario, address A is the address of an information provider, and the user is requesting that the information provider send target objects of interest.) The user must form a request R to proxy server S2, that requests proxy server S2 to send a message to address A and to forward the response back to the user.  The, user may thereby communicate with other parties, either non-pseudonymous parties, in the case where address A is a public network address, or pseudonymous parties, in the case where address A is a pseudonym held by, for example, a business or another user who prefers to operate pseudonymously.<br><br>*See also* Figs. 1, 2, 10, 12, 14 and associated text. |
| [1e] identifying the first type network node based on the | Herz '939 discloses identifying the first type network node based on the service request.  To the extent it is found that Herz '939 does not disclose this feature expressly or inherently, it would have been |

**Appendix B-5**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,754,939 (Herz '939)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,754,939 (Herz '939) |
| --- | --- |
| service request; and | obvious to combine Herz '939 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* Abstract.<br>This invention relates to customized electronic identification of desirable objects, such as news articles, in an electronic media environment, and in particular to a system that automatically constructs both a "target profile" for each target object in the electronic media based, for example, on the frequency with which each word appears in an article relative to its overall frequency of use in all articles, as well as a "target profile interest summary" for each user, which target profile interest summary describes the user's interest level in various types of target objects. The system then evaluates the target profiles against the users' target profile interest summaries to generate a user-customized rank ordered listing of target objects most likely to be of interest to each user so that the user can select from among these potentially relevant target objects, which were automatically selected by this system from the plethora of target objects that are profiled on the electronic media. Users' target profile interest summaries can be used to efficiently guide the distribution of information in a large scale system consisting of many users interconnected by means of a communication network. Additionally, a cryptographically-based pseudonym proxy server is provided to ensure the privacy of a user's target profile interest summary, by giving the user control over the ability of third parties to access this summary and to identify or contact the user.<br><br>*See also* col. 30, lines 29-51.<br>The various processors interconnected by the data communication network N as shown in FIG. 1 can be divided into two classes and grouped as illustrated in FIG. 2: clients and servers. The clients C1-Cn are individual user's computer systems which are connected to servers S1-S5 at various times via data, communications links. Each of the clients Ci is typically associated with-a single server Sj, but these associations can change over time. The clients C1-Cn both interface with users and produce and retrieve files to and from servers. The clients C1-Cn are not necessarily continuously on-line, since they typically serve a single user and can be movable systems, such as laptop computers, which can be connected to the data communications network N at any of a number of locations. Clients could also be a variety of other computers, such as computers and kiosks providing access to customized |

Appendix B-5

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,754,939 (Herz '939)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,754,939 (Herz '939) |
|---|---|
| | information as well as targeted advertising to many users, where the users identify themselves with passwords or with smart cards. A server Si is a computer system that is presumed to be continuously on-line and functions to both collect files from various sources on the data communication network N for access by local clients C1-Cn and collect files from local clients C1-Cn for access by remote clients. <br><br>*See also* col. 32, lines 13-55. <br>Each proxy server, for example S2 in FIG. 2, is a server which communicates with clients and other servers Sin the network either directly or through anonymizing mix paths as detailed in the paper by D. Chaum titled "Untraceable Electronic Mail, Return Addresses, and Digital Pseudonyms," published in Communications of the ACM, Volume 24, Number 2, February 1981. Any server in the network N may be configured to act as a proxy server in addition to its other functions. Each proxy server provides service to a set of users, which set is termed the "user base" of that proxy server. A given proxy server provides three sorts of service to each user U in its user base, as follows: <br>1. The first function of the proxy server is to bidirectionally transfer communications between user U and other entities such as information servers (possibly including the proxy server itself) and/or other users. Specifically, letting S denote the server that is directly associated with user U's client processor, the proxy server communicates with server S (and thence with user U), either through anonymizing mix paths that obscure the identity of server S and user U, in which case the proxy server knows user U only through a secure pseudonym, or else through a conventional virtual point-to-point connection, in which case the proxy server knows user. U by user Us address at server S, which address may be regarded as a non-secure pseudonym for user U. <br>2. A second function of the proxy server is to record user-specific information associated with user U. This user-specific information includes a user profile and target profile interest summary for user U, as well as a list of access control instructions specified by user U, as described below, and a set of one-time return addresses provided by user U that can be used to send messages to user U without knowing user U's true identity. All of this user-specific information is stored in a database that is keyed by user Us pseudonym (whether secure or non-secure) on the proxy server. <br>3. A third function of the proxy server is to act as a selective forwarding agent for unsolicited |

Appendix B-5

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,754,939 (Herz '939)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,754,939 (Herz '939) |
|---|---|
| | communications that are addressed to user U: the proxy server forwards some such communications to user U and rejects others, in accordance with the access control instructions specified by user U.<br><br>*See also* col. 38, lines 26-29.<br>The user must form a request R to proxy server S2, that requests proxy server S2 to send a message to address A and to forward the response back to the user.<br><br>*See also* Figs. 1, 2, 10, 12, 14 and associated text.<br><br>*See also* claim limitation [1d]. |
| [1f] forming a customized page file formed for the first type network node by including the page file formed for the first type network node within the page file for the second type network node. | Herz '939 discloses forming a customized page file formed for the first type network node by including the page file formed for the first type network node within the page file for the second type network node. To the extent it is found that Herz '939 does not disclose this feature expressly or inherently, it would have been obvious to combine Herz '939 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* col. 6, line 61 to col. 7, line 10.<br>Target objects may be of various sorts, and it is sometimes advantageous to use a single system that delivers and/or clusters target objects of several distinct sorts at once, in a unified framework. For example, users who exhibit a strong interest in certain novels may also show an interest in certain movies, presumably of a similar nature. A system in which some target objects are novels and other target objects are movies can discover such a correlation and exploit it in order to group particular novels with particular movies, e.g., for clustering purposes, or to recommend the movies to a user who has demonstrated interest in the novels. Similarly, if users who exhibit an interest in certain World Wide Web sites also exhibit an interest in certain products, the system can match the products with the sites and thereby recommend to the marketers of those products that they place advertisements at those sites, e.g., in the form of hypertext links to their own sites.<br><br>*See also* col. 61, lines 11-22. |

**Appendix B-5**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,754,939 (Herz '939)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,754,939 (Herz '939) |
|---|---|
| | Given a database of such relevance feedback, the disclosed technology is then used to match advertisements with those users who are most interested in them; advertisements selected for a user are presented to that user by any one of several means, including electronic mail, automatic display on the users screen, or printing them on a printer at a retail establishment where the consumer is paying for a purchase.  The threshold distance used to identify interest may be increased for a particular advertisement,: causing the system to present that advertisement to more users, in accordance with the amount that the advertiser is willing to pay.<br><br>*See also* Figs. 1, 2, 10, 12, 14 and associated text.<br><br>*See also* claim limitations [1b] and [1c]. |
| *Claim 2* | |
| [2] The method of claim 1, wherein the first type network node is an ISP node, and the second type network node is an ICP node. | Herz '939 discloses that the first type network node is an ISP node, and the second type network node is an ICP node.  To the extent it is found that Herz '939 does not disclose this feature expressly or inherently, it would have been obvious to combine Herz '939 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter.  *See* Appendix C.<br><br>*See* col. 28, line 59 to col. 29, line 20.<br>User information access software is resident on the user's personal computer and serves to communicate over the data communications link and the telecommunication network N with one of the plurality of network vendors V.sub.1 -V.sub.k (America Online, Prodigy, CompuServe, other private companies or even universities) who provide data interconnection service with selected ones of the information servers I.sub.1 -I.sub.m.  The user can, by use of the user information access software, interact with the information servers I.sub.1 -I.sub.m to request and obtain access to data that resides on mass storage systems -SS.sub.m that are part of the information server apparatus.  New data is input to this system y users via their personal computers T.sub.1 -T.sub.n and by commercial information services by populating their mass storage systems SS.sub.1 -SS.sub.m with commercial data.  Each user terminal T.sub.1 -T.sub.n and the information servers I.sub.1 -I.sub.m have phone numbers or IP addresses on the network N which enable a data communication link to be established between a |

**Appendix B-5**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,754,939 (Herz '939)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,754,939 (Herz '939) |
|---|---|
| | particular user terminal T.sub.1 -T.sub.n and the selected information server I.sub.1 -I.sub.m. A user's electronic mail address also uniquely identifies the user and the network vendor V.sub.1 - V.sub.k in an industry-standard format such as: username@aol.com or username@netcom.com. The network vendors V1-V.sub.k provide access passwords for their subscribers. (selected users), through which the users can access the information servers I.sub.1 -I.sub.m. The subscribers pay the network vendors V1-V.sub.k for the access services on a fee schedule that typically includes a monthly subscription fee and usage based charges. |
| | *See also* col. 30, lines 29-51. |
| | The various processors interconnected by the data communication network N as shown in FIG. 1 can be divided into two classes and grouped as illustrated in FIG. 2: clients and servers. The clients C1-Cn are individual user's computer systems which are connected to servers S1-S5 at various times via data, communications links. Each of the clients Ci is typically associated with-a single server Sj, but these associations can change over time. The clients C1-Cn both interface with users and produce and retrieve files to and from servers. The clients C1-Cn are not necessarily continuously on-line, since they typically serve a single user and can be movable systems, such as laptop computers, which can be connected to the data communications network N at any of a number of locations. Clients could also be a variety of other computers, such as computers and kiosks providing access to customized information as well as targeted advertising to many users, where the users identify themselves with passwords or with smart cards. A server Si is a computer system that is presumed to be continuously on-line and functions to both collect files from various sources on the data communication network N for access by local clients C1-Cn and collect files from local clients C1-Cn for access by remote clients. |
| | *See also* col. 32, lines 13-55. |
| | Each proxy server, for example S2 in FIG. 2, is a server which communicates with clients and other servers Sin the network either directly or through anonymizing mix paths as detailed in the paper by D. Chaum titled "Untraceable Electronic Mail, Return Addresses, and Digital Pseudonyms," published in Communications of the ACM, Volume 24, Number 2, February 1981. Any server in the network N may be configured to act as a proxy server in addition to its other functions. Each proxy server |

- 13 -

## Appendix B-5

### Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,754,939 (Herz '939)

| U.S. Patent No. 6,442,577 | U.S. Patent No.  5,754,939 (Herz '939) |
|---|---|
| | provides service to a set of users, which set is termed the "user base" of that proxy server.  A given proxy server provides three sorts of service to each user U in its user base, as follows:  1.  The first function of the proxy server is to bidirectionally transfer communications between user U and other entities such as information servers (possibly including the proxy server itself) and/or other users.  Specifically, letting S denote the server that is directly associated with user U's client processor, the proxy server communicates with server S (and thence with user U), either through anonymizing mix paths that obscure the identity of server S and user U, in which case the proxy server knows user U only through a secure pseudonym, or else through a conventional virtual point-to-point connection, in which case the proxy server knows user.  U by user Us address at server S, which address may be regarded as a non-secure pseudonym for user U.  2.  A second function of the proxy server is to record user-specific information associated with user U.  This user-specific information includes a user profile and target profile interest summary for user U, as well as a list of access control instructions specified by user U, as described below, and a set of one-time return addresses provided by user U that can be used to send messages to user U without knowing user U's true identity.  All of this user-specific information is stored in a database that is keyed by user Us pseudonym (whether secure or non-secure) on the proxy server.  3.  A third function of the proxy server is to act as a selective forwarding agent for unsolicited communications that are addressed to user U: the proxy server forwards some such communications to user U and rejects others, in accordance with the access control instructions specified by user U.  <br><br>*See also* col. 38, lines 6-34.  Once a proxy server S2 has authenticated and registered a user's pseudonym, the user may begin to use the services of the proxy server S2, in interacting with other network entities such as service providers, as exemplified by server S4 in FIG. 2, an information service provider node connected to the network.  The user controls the proxy server S2 by forming digitally encoded requests that the user subsequently transmits to the proxy server S2 over the network N.  The nature and format of these requests will vary, since the proxy server may be used for any of the services described in this application, such as the browsing, querying, and other navigational functions described below.  In a generic scenario, the user wishes to communicate under pseudonym P with a particular information |

**Appendix B-5**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,754,939 (Herz '939)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,754,939 (Herz '939) |
|---|---|
|  | provider or user at address A, where P is a pseudonym allocated to the user and A is either a public network address at a server such as S4, or another pseudonym that is registered on a proxy server such as S4. (In the most common version of this scenario, address A is the address of an information provider, and the user is requesting that the information provider send target objects of interest.) The user must form a request R to proxy server S2, that requests proxy server S2 to send a message to address A and to forward the response back to the user. The, user may thereby communicate with other parties, either non-pseudonymous parties, in the case where address A is a public network address, or pseudonymous parties, in the case where address A is a pseudonym held by, for example, a business or another user who prefers to operate pseudonymously.<br><br>*See also* col. 74, lines 14-29.<br>Using the technology described above, Virtual Community Service constantly scans all the messages posted to all the newsgroups and electronic mailing lists on a given network, and constructs a target profile for each message found. The network can be the Internet, or a set of bulletin boards maintained by America Online, Prodigy, or CompuServe, or a smaller set of bulletin boards that might be local to a single organization, for example a large company, a law firm, or a university. The scanning activity need not be confined to bulletin boards and mailing lists that were created by Virtual Community Service, but may also be used to scan the activity of communities that predate Virtual Community Service or are otherwise created by means outside the Virtual Community Service system, provided that these communities are public or otherwise grant their permission.<br><br>*See also* Figs. 1, 2, 10, 12, 14 and associated text.<br><br>*See also* claim limitation [1a]. |
| *Claim 3* |  |
| [3] The method of claim 1, wherein the first type network node is an organization node, and the | Herz '939 discloses that the first type network node is an organization node, and the second type network node is an ICP node. To the extent it is found that Herz '939 does not disclose this feature expressly or inherently, it would have been obvious to combine Herz '939 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* |

Appendix B-5

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,754,939 (Herz '939)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,754,939 (Herz '939) |
|---|---|
| second type network node is an ICP node. | Appendix C.<br><br>*See* col. 28, line 59 to col. 29, line 20.<br>User information access software is resident on the user's personal computer and serves to communicate over the data communications link and the telecommunication network N with one of the plurality of network vendors V.sub.1 -V.sub.k (America Online, Prodigy, CompuServe, other private companies or even universities) who provide data interconnection service with selected ones of the information servers I.sub.1 -I.sub.m. The user can, by use of the user information access software, interact with the information servers I.sub.1 -I.sub.m to request and obtain access to data that resides on mass storage systems -SS.sub.m that are part of the information server apparatus. New data is input to this system y users via their personal computers T.sub.1 -T.sub.n and by commercial information services by populating their mass storage systems SS.sub.1 -SS.sub.m with commercial data. Each user terminal T.sub.1 -T.sub.n and the information servers I.sub.1 -I.sub.m have phone numbers or IP addresses on the network N which enable a data communication link to be established between a particular user terminal T.sub.1 -T.sub.n and the selected information server I.sub.1 -I.sub.m. A user's electronic mail address also uniquely identifies the user and the user'[s] network vendor V.sub.1 -V.sub.k in an industry-standard format such as: username@aol.com or username@netcom.com. The network vendors V1-V.sub.k provide access passwords for their subscribers. (selected users), through which the users can access the information servers I.sub.1 -I.sub.m. The subscribers pay the network vendors V1-V.sub.k for the access services on a fee schedule that typically includes a monthly subscription fee and usage based charges.<br><br>*See also* col. 30, lines 29-51.<br>The various processors interconnected by the data communication network N as shown in FIG. 1 can be divided into two classes and grouped as illustrated in FIG. 2: clients and servers. The clients C1-Cn are individual user's computer systems which are connected to servers S1-S5 at various times via data, communications links. Each of the clients Ci is typically associated with-a single server Sj, but these associations can change over time. The clients C1-Cn both interface with users and produce and retrieve files to and from servers. The clients C1-Cn are not necessarily continuously on-line, since they typically serve a single user and can be movable systems, such as laptop computers, which can be |

**Appendix B-5**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,754,939 (Herz '939)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,754,939 (Herz '939) |
|---|---|
|  | connected to the data communications network N at any of a number of locations. Clients could also be a variety of other computers, such as computers and kiosks providing access to customized information as well as targeted advertising to many users, where the users identify themselves with passwords or with smart cards. A server Si is a computer system that is presumed to be continuously on-line and functions to both collect files from various sources on the data communication network N for access by local clients C1-Cn and collect files from local clients C1-Cn for access by remote clients. |
|  | *See also* col. 32, lines 13-55. |
|  | Each proxy server, for example S2 in FIG. 2, is a server which communicates with clients and other servers Sin the network either directly or through anonymizing mix paths as detailed in the paper by D. Chaum titled "Untraceable Electronic Mail, Return Addresses, and Digital Pseudonyms," published in Communications of the ACM, Volume 24, Number 2, February 1981. Any server in the network N may be configured to act as a proxy server in addition to its other functions. Each proxy server provides service to a set of users, which set is termed the "user base" of that proxy server. A given proxy server provides three sorts of service to each user U in its user base, as follows: |
|  | 1. The first function of the proxy server is to bidirectionally transfer communications between user U and other entities such as information servers (possibly including the proxy server itself) and/or other users. Specifically, letting S denote the server that is directly associated with user U's client processor, the proxy server communicates with server S (and thence with user U), either through anonymizing mix paths that obscure the identity of server S and user U, in which case the proxy server knows user U only through a secure pseudonym, or else through a conventional virtual point-to-point connection, in which case the proxy server knows user. U by user Us address at server S, which address may be regarded as a non-secure pseudonym for user U. |
|  | 2. A second function of the proxy server is to record user-specific information associated with user U. This user-specific information includes a user profile and target profile interest summary for user U, as well as a list of access control instructions specified by user U, as described below, and a set of one-time return addresses provided by user U that can be used to send messages to user U without knowing user U's true identity. All of this user-specific information is stored in a database that is keyed by user |

**Appendix B-5**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,754,939 (Herz '939)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,754,939 (Herz '939) |
|---|---|
| | Us pseudonym (whether secure or non-secure) on the proxy server. |
| | 3. A third function of the proxy server is to act as a selective forwarding agent for unsolicited communications that are addressed to user U: the proxy server forwards some such communications to user U and rejects others, in accordance with the access control instructions specified by user U. |
| | *See also* col. 38, lines 6-34. |
| | Once a proxy server S2 has authenticated and registered a user's pseudonym, the user may begin to use the services of the proxy server S2, in interacting with other network entities such as service providers, as exemplified by server S4 in FIG. 2, an information service provider node connected to the network. The user controls the proxy server S2 by forming digitally encoded requests that the user subsequently transmits to the proxy server S2 over the network N. The nature and format of these requests will vary, since the proxy server may be used for any of the services described in this application, such as the browsing, querying, and other navigational functions described below. In a generic scenario, the user wishes to communicate under pseudonym P with a particular information provider or user at address A, where P is a pseudonym allocated to the user and A is either a public network address at a server such as S4, or another pseudonym that is registered on a proxy server such as S4. (In the most common version of this scenario, address A is the address of an information provider, and the user is requesting that the information provider send target objects of interest.) The user must form a request R to proxy server S2, that requests proxy server S2 to send a message to address A and to forward the response back to the user. The, user may thereby communicate with other parties, either non-pseudonymous parties, in the case where address A is a public network address, or pseudonymous parties, in the case where address A is a pseudonym held by, for example, a business or another user who prefers to operate pseudonymously. |
| | *See also* col. 74, lines 14-29. |
| | Using the technology described above, Virtual Community Service constantly scans all the messages posted to all the newsgroups and electronic mailing lists on a given network, and constructs a target profile for each message found. The network can be the Internet, or a set of bulletin boards maintained by America Online, Prodigy, or CompuServe, or a smaller set of bulletin boards that might be local to a single organization, for example a large company, a law firm, or a university. The scanning activity |

Appendix B-5

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,754,939 (Herz '939)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,754,939 (Herz '939) |
|---|---|
| | need not be confined to bulletin boards and mailing lists that were created by Virtual Community Service, but may also be used to scan the activity of communities that predate Virtual Community Service or are otherwise created by means outside the Virtual Community Service system, provided that these communities are public or otherwise grant their permission.<br><br>*See also* Figs. 1, 2, 10, 12, 14 and associated text.<br><br>*See also* claim limitation [1a]. |
| *Claim 4* | |
| [4] The method of claim 1, wherein the customized page file includes customized graphics, sounds, applets, links, and text. | Herz '939 discloses that the customized page file includes customized graphics, sounds, applets, links, and text. To the extent it is found that Herz '939 does not disclose this feature expressly or inherently, it would have been obvious to combine Herz '939 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* col. 29, lines 20-41.<br>A difficulty with this system is that there are numerous information servers I.sub.1 -I.sub.m located around the world, each of which provides access to a set of information of differing format, content and topics and via a cataloging system that is typically unique to the particular information server I.sub.1 -I.sub.m. The information is comprised of individual "files," which can contain audio data, video data, graphics data, text data, structured database data and combinations thereof. In the terminology of this patent, each target object is associated with a unique file: for target objects that are informational in nature and can be digitally represented, the file directly stores the informational content of the target object, while for target objects that are not stored electronically, such as purchasable goods, the file contains an identifying, description of the target object. Target objects stored electronically as text files can include commercially provided news articles, published documents, letters, user-generated documents, descriptions of physical objects, or combinations of these classes of data. The organization of the files containing the information and the native format of the data contained in files of the same conceptual type may vary by information server I.sub.1 - |

- 19 -

Appendix B-5

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,754,939 (Herz '939)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,754,939 (Herz '939) |
|---|---|
| | I.sub.m.<br><br>*See also* claim limitation [1b]. |
| *Claim 5* | |
| [5] The method of claim 1, wherein the customized page file includes customized advertisements. | Herz '939 discloses that the customized page file includes customized advertisements. To the extent it is found that Herz '939 does not disclose this feature expressly or inherently, it would have been obvious to combine Herz '939 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* col. 11, lines 17-38.<br>As another domain example, consider a domain where the user is an advertiser and the target objects are potential customers. The system might store the following attributes for each target object (potential customer):<br>(a.) first two digits of zip code (textual),<br>(b.) first three digits of zip code (textual),<br>(c.) entire five-digit zip code (textual),<br>(d.) distance of residence from advertiser's nearest physical storefront (numeric),<br>(e.) annual family income (numeric),<br>(f.) number of children (numeric),<br>(g.) list of previous items purchased by this potential customer (associative), list of filenames stored on this potential customer's client computer (associative), list of movies rented by this potential customer (associative), list of investments in this potential customer's investment portfolio (associative), list of documents retrieved by this potential customer (associative), written response to Rorschach inkblot test (textual), multiple-choice responses by this customer to 20 self-image questions (20 textual attributes).<br><br>*See also* col. 40, lines 4-43.<br>Either the response message M2 from the information server S4 to the user, or a subsequent message sent by the proxy server S2 to the user, may contain advertising material that is related to the user's |

**Appendix B-5**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,754,939 (Herz '939)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,754,939 (Herz '939) |
|---|---|
| | request and/or is targeted to the user. Typically, if the user has just retrieved a target object X, then (a) either proxy server S2 or information server S4 determines a weighted set of advertisements that are "associated with" target object X, (b) a subset of this set is chosen randomly, where the weight of an advertisement is proportional to the probability that it is included in the subset, and (c) proxy server S2 selects from this subset just those advertisements that the user is most likely to be interested in. In the variation where proxy server S2 determines the set of advertisements associated with target object X, then this set typically consists of all advertisements that the proxy server's owner has been paid to disseminate and whose target profiles are within a threshold similarity distance of the target profile of target object X. In the variation where proxy server 84 determines the set of advertisements associated with target object X, advertisers typically purchase the right to include advertisements in this set. In either case, the weight of an advertisement is determined by the amount that an advertiser is willing to pay. Following step (c), proxy server S2 retrieves the selected advertising material and transmits it to the user's client processor C3, where it will be displayed to the user, within a specified length of time after it is received, by a trusted process running on the user's client processor C3. When proxy server S2 transmits an advertisement, it sends a message to the advertiser, indicating that the advertisement has been transmitted to a user with a particular predicted level of interest. The message may also indicate the identity of target object X. In return, the advertiser may transmit an electronic payment to proxy server S2; proxy server S2 retains a service fee for itself, optionally forwards a service fee to information server S4, and the balance is forwarded to the user or used to credit the user's account on the proxy server. <br><br> *See also* Figs. 1, 2, 10, 12, 14 and associated text. <br><br> *See also* claim limitation [1b]. |
| *Claim 6* | |
| [6a] The method of claim 1, wherein: the service request includes an IP address for identifying the first type | Herz '939 discloses that the service request includes an IP address for identifying the first type network node. To the extent it is found that Herz '939 does not disclose this feature expressly or inherently, it would have been obvious to combine Herz '939 with the knowledge of a person of |

**Appendix B-5**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,754,939 (Herz '939)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,754,939 (Herz '939) |
|---|---|
| network node, and | ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* col. 28, line 59 to col. 29, line 20.<br>User information access software is resident on the user's personal computer and serves to communicate over the data communications link and the telecommunication network N with one of the plurality of network vendors V.sub.1 -V.sub.k (America Online, Prodigy, CompuServe, other private companies or even universities) who provide data interconnection service with selected ones of the information servers I.sub.1 -I.sub.m. The user can, by use of the user information access software, interact with the information servers I.sub.1 -I.sub.m to request and obtain access to data that resides on mass storage systems -SS.sub.m that are part of the information server apparatus. New data is input to this system y users via their personal computers T.sub.1 -T.sub.n and by commercial information services by populating their mass storage systems SS.sub.1 -SS.sub.m with commercial data. Each user terminal T.sub.1 -T.sub.n and the information servers I.sub.1 -I.sub.m have phone numbers or IP addresses on the network N which enable a data communication link to be established between a particular user terminal T.sub.1 -T.sub.n and the selected information server I.sub.1 -I.sub.m. A user's electronic mail address also uniquely identifies the user and the user'[s] network vendor V.sub.1 -V.sub.k in an industry-standard format such as: username@aol.com or username@netcom.com. The network vendors V1-V.sub.k provide access passwords for their subscribers. (selected users), through which the users can access the information servers I.sub.1 -I.sub.m. The subscribers pay the network vendors V1-V.sub.k for the access services on a fee schedule that typically includes a monthly subscription fee and usage based charges.<br><br>*See also* claim limitation [1d]. |
| [6b] identifying the first type network node based on the service request comprises using the IP address included in the service request to identify the first type network | Herz '939 discloses that identifying the first type network node based on the service request comprises using the IP address included in the service request to identify the first type network node. To the extent it is found that Herz '939 does not disclose this feature expressly or inherently, it would have been obvious to combine Herz '939 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |

Appendix B-5

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,754,939 (Herz '939)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,754,939 (Herz '939) |
|---|---|
| node. | *See* col. 28, line 59 to col. 29, line 20.<br>User information access software is resident on the user's personal computer and serves to communicate over the data communications link and the telecommunication network N with one of the plurality of network vendors V.sub.1 -V.sub.k (America Online, Prodigy, CompuServe, other private companies or even universities) who provide data interconnection service with selected ones of the information servers I.sub.1 -I.sub.m. The user can, by use of the user information access software, interact with the information servers I.sub.1 -I.sub.m to request and obtain access to data that resides on mass storage systems -SS.sub.m that are part of the information server apparatus. New data is input to this system y users via their personal computers T.sub.1 -T.sub.n and by commercial information services by populating their mass storage systems SS.sub.1 -SS.sub.m with commercial data. Each user terminal T.sub.1 -T.sub.n and the information servers I.sub.1 -I.sub.m have phone numbers or IP addresses on the network N which enable a data communication link to be established between a particular user terminal T.sub.1 -T.sub.n and the selected information server I.sub.1 -I.sub.m. A user's electronic mail address also uniquely identifies the user and the user'[s] network vendor V.sub.1 -V.sub.k in an industry-standard format such as: username@aol.com or username@netcom.com. The network vendors V1-V.sub.k provide access passwords for their subscribers. (selected users), through which the users can access the information servers I.sub.1 -I.sub.m. The subscribers pay the network vendors V1-V.sub.k for the access services on a fee schedule that typically includes a monthly subscription fee and usage based charges.<br><br>*See also* claim limitation [1e]. |
| *Claim 7* | |
| [7a] A method for providing web page customization service to a plurality of first type network nodes at a second type network node, comprising the steps of: | Herz '939 discloses a method for providing web page customization service to a plurality of first type network nodes at a second type network node. To the extent it is found that Herz '939 does not disclose this feature expressly or inherently, it would have been obvious to combine Herz '939 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |

**Appendix B-5**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,754,939 (Herz '939)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,754,939 (Herz '939) |
|---|---|
| | *See* claim limitation [1a]. |
| [7b] forming at least a page file for each of the first type network nodes; | Herz '939 discloses forming at least a page file for each of the first type network nodes. To the extent it is found that Herz '939 does not disclose this feature expressly or inherently, it would have been obvious to combine Herz '939 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1b]. |
| [7c] forming at least a page file for the second type network node; | Herz '939 discloses forming at least a page file for the second type network node. To the extent it is found that Herz '939 does not disclose this feature expressly or inherently, it would have been obvious to combine Herz '939 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1c]. |
| [7d] receiving a service request from one of the first type network nodes; | Herz '939 discloses receiving a service request from one of the first type network nodes. To the extent it is found that Herz '939 does not disclose this feature expressly or inherently, it would have been obvious to combine Herz '939 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1d]. |
| [7e] determining whether the first type network node participates in the web page customization service; | Herz '939 discloses determining whether the first type network node participates in the web page customization service. To the extent it is found that Herz '939 does not disclose this feature expressly or inherently, it would have been obvious to combine Herz '939 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1e]. |

Appendix B-5

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,754,939 (Herz '939)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,754,939 (Herz '939) |
|---|---|
| [7f] if the first type network node participates in the web page customization service, forming a customized page file for the service request by including the page file formed for the first type network node within the page file formed for the second type network node; and | Herz '939 discloses, if the first type network node participates in the web page customization service, forming a customized page file for the service request by including the page file formed for the first type network node within the page file formed for the second type network node. To the extent it is found that Herz '939 does not disclose this feature expressly or inherently, it would have been obvious to combine Herz '939 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1f]. |
| [7g] if the first type network node does not participate in the web page customization service, forming a page file for the service request by using the page file formed for the second type network node. | Herz '939 discloses, if the first type network node does not participate in the web page customization service, forming a page file for the service request by using the page file formed for the second type network node. For example, the second type network node identifies the first type network node based on the service request. If the second type network node fails to identify the first type network node, the second type network node will only form a page file for the service request by using the page file formed for the second type network node. To the extent it is found that Herz '939 does not disclose this feature expressly or inherently, it would have been obvious to combine Herz '939 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1f]. |
| *Claim 8* | |
| [8] The method of claim 7, wherein the first type network nodes are ISP nodes, and the second type network node is an ICP node. | Herz '939 discloses that the first type network nodes are ISP nodes, and the second type network node is an ICP node. To the extent it is found that Herz '939 does not disclose this feature expressly or inherently, it would have been obvious to combine Herz '939 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |

**Appendix B-5**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,754,939 (Herz '939)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,754,939 (Herz '939) |
|---|---|
| | *See* claim limitation [2]. |
| *Claim 9* | |
| [9] The method of claim 7, wherein the first type network nodes are organization nodes, and the second type network node is an ICP node. | Herz '939 discloses that the first type network nodes are organization nodes, and the second type network node is an ICP node. To the extent it is found that Herz '939 does not disclose this feature expressly or inherently, it would have been obvious to combine Herz '939 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [3]. |
| *Claim 10* | |
| [10] The method of claim 7, wherein the customized page file includes customized graphics, sounds, applets, links, and text. | Herz '939 discloses that the customized page file includes customized graphics, sounds, applets, links, and text. To the extent it is found that Herz '939 does not disclose this feature expressly or inherently, it would have been obvious to combine Herz '939 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [4]. |
| *Claim 11* | |
| [11] The method of claim 7, wherein the customized page file includes customized advertisements. | Herz '939 discloses that the customized page file includes customized advertisements. To the extent it is found that Herz '939 does not disclose this feature expressly or inherently, it would have been obvious to combine Herz '939 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [5]. |
| *Claim 12* | |
| [12a] The method of claim 7, wherein: the service request | Herz '939 discloses that the service request from one of the first type network nodes includes an IP address for identifying the first type network node. To the extent it is found that Herz '939 does not |

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,754,939 (Herz '939)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,754,939 (Herz '939) |
|---|---|
| from one of the first type network nodes includes an IP address for identifying the first type network node, and | disclose this feature expressly or inherently, it would have been obvious to combine Herz '939 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [6a]. |
| [12b] determining whether the first type network node participates in the web page customization service comprises using the IPI address included in the service request to identify the first type network node. | Herz '939 discloses that determining whether the first type network node participates in the web page customization service comprises using the IPI address included in the service request to identify the first type network node. To the extent it is found that Herz '939 does not disclose this feature expressly or inherently, it would have been obvious to combine Herz '939 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [6b]. |
| *Claim 13* | |
| [13a] A method for providing web page customization service to a plurality of first type network nodes at a second type network node, comprising the steps of: | Herz '939 discloses a method for providing web page customization service to a plurality of first type network nodes at a second type network node. To the extent it is found that Herz '939 does not disclose this feature expressly or inherently, it would have been obvious to combine Herz '939 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1a]. |
| [13b] forming a plurality of advertisements for the first type network nodes; | Herz '939 discloses forming a plurality of advertisements for the first type network nodes. To the extent it is found that Herz '939 does not disclose this feature expressly or inherently, it would have been obvious to combine Herz '939 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |

Appendix B-5

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,754,939 (Herz '939)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,754,939 (Herz '939) |
|---|---|
|  | *See* claim limitations [1b] and [5]. |
| [13c] forming at least a page file for the second type network node; | Herz '939 discloses forming at least a page file for the second type network node. To the extent it is found that Herz '939 does not disclose this feature expressly or inherently, it would have been obvious to combine Herz '939 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1c]. |
| [13d] receiving a service request from one of the first type network nodes; | Herz '939 discloses receiving a service request from one of the first type network nodes. To the extent it is found that Herz '939 does not disclose this feature expressly or inherently, it would have been obvious to combine Herz '939 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1d]. |
| [13e] identifying advertisements for the first type network node; and | Herz '939 discloses identifying advertisements for the first type network node. To the extent it is found that Herz '939 does not disclose this feature expressly or inherently, it would have been obvious to combine Herz '939 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitations [1e] and [5]. |
| [13f] forming a customized page file for the first type network node by including the identified advertisements within the page file formed for the second type network | Herz '939 discloses forming a customized page file for the first type network node by including the identified advertisements within the page file formed for the second type network node. To the extent it is found that Herz '939 does not disclose this feature expressly or inherently, it would have been obvious to combine Herz '939 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |

Appendix B-5

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,754,939 (Herz '939)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,754,939 (Herz '939) |
|---|---|
| node. | *See* claim limitation [1f]. |
| *Claim 14* | |
| [14] The method of claim 13, wherein the first type network nodes are ISP nodes, and the second type network node is an ICP node. | Herz '939 discloses that the first type network nodes are ISP nodes, and the second type network node is an ICP node. To the extent it is found that Herz '939 does not disclose this feature expressly or inherently, it would have been obvious to combine Herz '939 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. <br><br> *See* claim limitation [2]. |
| *Claim 15* | |
| [15] The method of claim 13, wherein the first type network nodes are organization nodes, and the second type network node is an ICP node. | Herz '939 discloses that the first type network nodes are organization nodes, and the second type network node is an ICP node. To the extent it is found that Herz '939 does not disclose this feature expressly or inherently, it would have been obvious to combine Herz '939 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. <br><br> *See* claim limitation [3]. |
| *Claim 16* | |
| [16] The method of claim 13, wherein the identified advertisements do not cause negative impact on the owner of the first type network node. | Herz '939 discloses that the identified advertisements do not cause negative impact on the owner of the first type network node. To the extent it is found that Herz '939 does not disclose this feature expressly or inherently, it would have been obvious to combine Herz '939 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. <br><br> *See* claim limitation [5]. |
| *Claim 17* | |
| [17a] An apparatus for | Herz '939 discloses an apparatus for dynamically forming a customized web page for a first type |

Appendix B-5

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,754,939 (Herz '939)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,754,939 (Herz '939) |
|---|---|
| dynamically forming a customized web page for a first type network node at a second type network node, comprising: | network node at a second type network node. To the extent it is found that Herz '939 does not disclose this feature expressly or inherently, it would have been obvious to combine Herz '939 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1a]. |
| [17b] means for forming at least a page file for the first type network node; | Herz '939 discloses means for forming at least a page file for the first type network node. To the extent it is found that Herz '939 does not disclose this feature expressly or inherently, it would have been obvious to combine Herz '939 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1b]. |
| [17c] means for forming at least a page file for the second type network node; | Herz '939 discloses means for forming at least a page file for the second type network node. To the extent it is found that Herz '939 does not disclose this feature expressly or inherently, it would have been obvious to combine Herz '939 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1c]. |
| [17d] means for receiving a service request from the first type network node; | Herz '939 discloses means for receiving a service request from the first type network node. To the extent it is found that Herz '939 does not disclose this feature expressly or inherently, it would have been obvious to combine Herz '939 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1d]. |
| [17e] means for identifying the first type network node | Herz '939 discloses means for identifying the first type network node based on the service request. To the extent it is found that Herz '939 does not disclose this feature expressly or inherently, it would |

Appendix B-5

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,754,939 (Herz '939)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,754,939 (Herz '939) |
|---|---|
| based on the service request; and | have been obvious to combine Herz '939 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1e]. |
| [17f] means for forming a customized page file formed for the first type network node by including the page file formed for the first type network node within the page file for the second type network node. | Herz '939 discloses means for forming a customized page file formed for the first type network node by including the page file formed for the first type network node within the page file for the second type network node. To the extent it is found that Herz '939 does not disclose this feature expressly or inherently, it would have been obvious to combine Herz '939 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1f]. |
| *Claim 18* | |
| [18] The apparatus of claim 17, wherein the first type network node is an ISP node, and the second type network node is an ICP node. | Herz '939 discloses that the first type network node is an ISP node, and the second type network node is an ICP node. To the extent it is found that Herz '939 does not disclose this feature expressly or inherently, it would have been obvious to combine Herz '939 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [2]. |
| *Claim 19* | |
| [19] The apparatus of claim 17, wherein the first type network node is an organization node, and the second type network node is an ICP node. | Herz '939 discloses that the first type network node is an organization node, and the second type network node is an ICP node. To the extent it is found that Herz '939 does not disclose this feature expressly or inherently, it would have been obvious to combine Herz '939 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |

Appendix B-5

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,754,939 (Herz '939)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,754,939 (Herz '939) |
|---|---|
| | *See* claim limitation [3]. |
| *Claim 20* | |
| [20] The apparatus of claim 17, wherein the customized page file includes customized graphics, sounds, applets, links, and text. | Herz '939 discloses that the customized page file includes customized graphics, sounds, applets, links, and text. To the extent it is found that Herz '939 does not disclose this feature expressly or inherently, it would have been obvious to combine Herz '939 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [4]. |
| *Claim 21* | |
| [21] The apparatus of claim 17, wherein the customized page file includes customized advertisements. | Herz '939 discloses that the customized page file includes customized advertisements. To the extent it is found that Herz '939 does not disclose this feature expressly or inherently, it would have been obvious to combine Herz '939 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [5]. |
| *Claim 22* | |
| [22a] An apparatus for providing web page customization service to a plurality of first type network nodes at a second type network node, comprising: | Herz '939 discloses an apparatus for providing web page customization service to a plurality of first type network nodes at a second type network node. To the extent it is found that Herz '939 does not disclose this feature expressly or inherently, it would have been obvious to combine Herz '939 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [7a]. |
| [22b] means for forming at least a page file for each of | Herz '939 discloses means for forming at least a page file for each of the first type network nodes. To the extent it is found that Herz '939 does not disclose this feature expressly or inherently, it would have been obvious to combine Herz '939 with the knowledge of a person of ordinary skill and/or other |

Appendix B-5

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,754,939 (Herz '939)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,754,939 (Herz '939) |
|---|---|
| the first type network nodes; | prior art references to obtain the claimed subject matter.  *See* Appendix C.<br><br>*See* claim limitation [7b]. |
| [22c] means for forming at least a page file for the second type network node; | Herz '939 discloses means for forming at least a page file for the second type network node.  To the extent it is found that Herz '939 does not disclose this feature expressly or inherently, it would have been obvious to combine Herz '939 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter.  *See* Appendix C.<br><br>*See* claim limitation [7c]. |
| [22d] means for receiving a service request from one of the first type network nodes; | Herz '939 discloses means for receiving a service request from one of the first type network nodes.  To the extent it is found that Herz '939 does not disclose this feature expressly or inherently, it would have been obvious to combine Herz '939 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter.  *See* Appendix C.<br><br>*See* claim limitation [7d]. |
| [22e] means for determining whether the first type network node participates in the web page customization service; | Herz '939 discloses means for determining whether the first type network node participates in the web page customization service.  To the extent it is found that Herz '939 does not disclose this feature expressly or inherently, it would have been obvious to combine Herz '939 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter.  *See* Appendix C.<br><br>*See* claim limitation [7e]. |
| [22f] means for forming a customized page file for the service request by including the page file formed for the | Herz '939 discloses means for forming a customized page file for the service request by including the page file formed for the first type network node within the page file formed for the second type network node, if the first type network node participates in the web page customization service.  To the extent it is found that Herz '939 does not disclose this feature expressly or inherently, it would |

- 33 -

Appendix B-5

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,754,939 (Herz '939)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,754,939 (Herz '939) |
|---|---|
| first type network node within the page file formed for the second type network node, if the first type network node participates in the web page customization service; and | have been obvious to combine Herz '939 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [7f]. |
| [22g] means for forming a page file for the service request by using the page file formed for the second type network node, if the first type network node does not participate in the web page customization service. | Herz '939 discloses means for forming a page file for the service request by using the page file formed for the second type network node, if the first type network node does not participate in the web page customization service. To the extent it is found that Herz '939 does not disclose this feature expressly or inherently, it would have been obvious to combine Herz '939 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [7g]. |
| *Claim 23* | |
| [23] The apparatus of claim 22, wherein the first type network nodes are ISP nodes, and the second type network node is an ICP node. | Herz '939 discloses that the first type network nodes are ISP nodes, and the second type network node is an ICP node. To the extent it is found that Herz '939 does not disclose this feature expressly or inherently, it would have been obvious to combine Herz '939 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [8]. |
| *Claim 24* | |
| [24] The apparatus of claim 22, wherein the first type network nodes are organization nodes, and the | Herz '939 discloses that the first type network nodes are organization nodes, and the second type network node is an ICP node. To the extent it is found that Herz '939 does not disclose this feature expressly or inherently, it would have been obvious to combine Herz '939 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* |

Appendix B-5

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,754,939 (Herz '939)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,754,939 (Herz '939) |
|---|---|
| second type network node is an ICP node. | Appendix C.<br><br>*See* claim limitation [9]. |
| *Claim 25* | |
| [25] The apparatus of claim 22, wherein the customized page file includes customized graphics, sounds, applets, links, and text. | Herz '939 discloses that the customized page file includes customized graphics, sounds, applets, links, and text. To the extent it is found that Herz '939 does not disclose this feature expressly or inherently, it would have been obvious to combine Herz '939 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [10]. |
| *Claim 26* | |
| [26] The apparatus of claim 25, wherein the customized page file includes customized advertisements. | Herz '939 discloses that the customized page file includes customized advertisements. To the extent it is found that Herz '939 does not disclose this feature expressly or inherently, it would have been obvious to combine Herz '939 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [11]. |
| *Claim 27* | |
| [27a] An apparatus for providing web page customization service to a plurality of first type network nodes at a second type network node, comprising: | Herz '939 discloses an apparatus for providing web page customization service to a plurality of first type network nodes at a second type network node. To the extent it is found that Herz '939 does not disclose this feature expressly or inherently, it would have been obvious to combine Herz '939 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [13a]. |
| [27b] means for forming a | Herz '939 discloses means for forming a plurality of advertisements for the first type network nodes. |

**Appendix B-5**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,754,939 (Herz '939)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,754,939 (Herz '939) |
|---|---|
| plurality of advertisements for the first type network nodes; | To the extent it is found that Herz '939 does not disclose this feature expressly or inherently, it would have been obvious to combine Herz '939 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [13b]. |
| [27c] means for forming at least a page file for the second type network node; | Herz '939 discloses means for forming at least a page file for the second type network node. To the extent it is found that Herz '939 does not disclose this feature expressly or inherently, it would have been obvious to combine Herz '939 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [13c]. |
| [27d] means for receiving a service request from one of the first type network nodes; | Herz '939 discloses means for receiving a service request from one of the first type network nodes. To the extent it is found that Herz '939 does not disclose this feature expressly or inherently, it would have been obvious to combine Herz '939 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [13d]. |
| [27e] means for identifying advertisements for the first type network node; and | Herz '939 discloses means for identifying advertisements for the first type network node. To the extent it is found that Herz '939 does not disclose this feature expressly or inherently, it would have been obvious to combine Herz '939 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [13e]. |
| [27f] means for forming a customized page file for the first type network node by | Herz '939 discloses means for forming a customized page file for the first type network node by including the identified advertisements within the page file formed for the second type network node. To the extent it is found that Herz '939 does not disclose this feature expressly or inherently, it would |

Appendix B-5

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,754,939 (Herz '939)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,754,939 (Herz '939) |
|---|---|
| including the identified advertisements within the page file formed for the second type network node. | have been obvious to combine Herz '939 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [13f]. |
| *Claim 28* | |
| [28] The apparatus of claim 27, wherein the first type network nodes are ISP nodes, and the second type network node is an ICP node. | Herz '939 discloses that the first type network nodes are ISP nodes, and the second type network node is an ICP node. To the extent it is found that Herz '939 does not disclose this feature expressly or inherently, it would have been obvious to combine Herz '939 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [14]. |
| *Claim 29* | |
| [29] The apparatus of claim 27, wherein the first type network nodes are organization nodes, and the second type network node is an ICP node. | Herz '939 discloses that the first type network nodes are organization nodes, and the second type network node is an ICP node. To the extent it is found that Herz '939 does not disclose this feature expressly or inherently, it would have been obvious to combine Herz '939 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [15]. |
| *Claim 30* | |
| [30] The apparatus of claim 27, wherein the identified advertisements do not cause negative impact on the owner of the first type network node. | Herz '939 discloses that the identified advertisements do not cause negative impact on the owner of the first type network node. To the extent it is found that Herz '939 does not disclose this feature expressly or inherently, it would have been obvious to combine Herz '939 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |

**Appendix B-5**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,754,939 (Herz '939)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,754,939 (Herz '939) |
|---|---|
|  | *See* claim limitation [16]. |

**Appendix B-6**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,794,210 (Goldhaber)**

U.S. Patent No. 5,794,210 to Goldhaber et al. ("Goldhaber") is prior art to U.S. Patent No. 6,442,577 ("the '577 patent") under 35 U.S.C. 102(a) because it issued as a U.S. patent on Aug. 11, 1998, which is prior to the Nov. 3, 1998 filing date of the '577 patent. Further, Goldhaber is prior art to the '577 patent under 35 U.S.C. 102(e) because it issued from a U.S. patent application filed on Dec. 11, 1995, which is prior to the Nov. 3, 1998 filing date of the '577 patent.

As detailed in this chart, Goldhaber anticipates at least claims 1–3, 5–9, 11–19, 21–24 and 26–30 of the '577 patent. In addition or in the alternative, claims 1–30 of the '577 patent are obvious over Goldhaber in view of the knowledge of a person of ordinary skill and/or one or more other references, as detailed in Appendix C.

This chart is based in whole or in part on the present understanding of positions taken by PageMelding regarding the coverage, scope and construction of the asserted claims to the extent those positions can be deduced from PageMelding's contentions pursuant to Patent Local Rule 3-1 served on August 3, 2012. Nothing herein is an admission that PageMelding's infringement contentions are correct, an admission that Plaintiff's apparent claim constructions are correct, or an admission that ESPN's technology infringes any asserted claim.

**Appendix B-6**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,794,210 (Goldhaber)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,794,210 (Goldhaber) |
|---|---|
| *Claim 1* | |
| [1a] A method for dynamically forming customized web pages for a first type network node at a second type network node, comprising the steps of: | Goldhaber discloses a method for dynamically forming customized web pages for a first type network node at a second type network node. To the extent it is found that Goldhaber does not disclose this feature expressly or inherently, it would have been obvious to combine Goldhaber with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.

*See* Abstract.

A system provides for the immediate payment to computer and other users for paying attention to an advertisement or other "negatively priced" information distributed over a computer network such as the Internet. Called Attention Brokerage, this is the business of brokering the buying and selling of the "attention" of users. A further invention, Orthogonal Sponsorship, allows advertisers to detach their messages from program content and explicitly target their audience. A special icon or other symbol displayed on a computer screen may represent compensation and allow users to choose whether they will view an ad or other negatively priced information and receive associated compensation. Targeting users may be provided by reference to a data base of digitally stored demographic profiles of potential users. Information can be routed to users based on demographics, and software agents can be used to actively seek out users on a digital network. Private profiles may be maintained for different users and user information may be released to advertisers and other marketers only based on user permission. Users may be compensated for allowing their information to be released. Competing advertisers may "bid" for the attention of users using automatic electronic systems, e.g., "an auction" protocol and these concepts can be generalized to provide an electronic trading house where buyers and sellers can actively find each other and negotiate transactions.

*See also* col. 3, lines 41−50.

The Internet is the first medium that can claim to be both "mass," in the sense that it reaches millions of people all over the globe, and "specialized," in the sense that its technology is capable of targeting information directly to the individual consumer. This is such a fundamental change from all previous |

**Appendix B-6**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,794,210 (Goldhaber)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,794,210 (Goldhaber) |
|---|---|
| | information technologies that it has the potential to transform the advertising transaction into an alliance between consumer and advertiser, based on mutual respect and mutual benefits.<br><br>*See also* Figs. 1, 7−11 and associated text.<br><br>*See also* claim limitations [1a] through [1f]. |
| [1b] forming at least a page file for the first type network node; | Goldhaber discloses forming at least a page file for the first type network node. To the extent it is found that Goldhaber does not disclose this feature expressly or inherently, it would have been obvious to combine Goldhaber with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* col. 4, line 64 to col. 5, line 5.<br><br>As discussed above, traditional advertising was both under-inclusive and over-inclusive. In contrast, technology provided in accordance with the present invention permits the design of ads that are virtually custom-fitted to consumer preferences, thus ensuring that the ad messages will be welcomed and attentively viewed by the consumer. This ability to finely target (and customize) ads based on the interests of particular individual consumers maximizes efficiency and benefits both the advertisers and the consumers.<br><br>*See also* col. 5, lines 43−55.<br><br>Thus, the present invention provides a method of separating advertising sponsorship from the editorial content of the medium in which the advertising appears. We call this ability to decouple the advertising content from other content "orthogonal sponsorship." The technology offered by the present invention breaks (or make inexplicit) the link between the ad and the content of the sponsored material. Advertisers will not necessarily know what content of entertainment or information they are sponsoring. Instead, advertisers will simply provide ads to the service, explicitly delineate their target audience, and offer some form of compensation for time and attention directly to those viewers willing |

Appendix B-6

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,794,210 (Goldhaber)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,794,210 (Goldhaber) |
|---|---|
| | to "view" ads.<br><br>*See also* col. 9, lines 33−40.<br><br>FIG. 1 shows an example of an overall environment 100 in which the present invention may be used. Environment 100 includes a network 102 such as, for example, the Internet or "Future Net." A plurality of consumer computers 104 are connected to network 102. Also, connected to network 102 are a plurality of information servers 106 and one or more financial clearinghouse computers 108. Network 102 allows each of computers 104, 106 and 108 to communicate with other computers.<br><br>*See also* col. 9, lines 62−67.<br><br>Servers 106 store information and disseminate it to consumer computers 104 over network 102. For example, servers 106 may act as "attention brokers" or "trading houses," and may supply consumer software agent 110 with advertisements or other information to be viewed or reviewed by consumers.<br><br>*See also* col. 11, line 59 to col. 12, lines 37.<br><br>FIG. 5 illustrates the concept of "linked sponsorship," and FIG. 6 illustrates the concept of "orthogonal sponsorship." As explained above, the "linked sponsorship" model shown in FIG. 5 is the traditional way in which advertisers 62 deliver their ads to consumers 64 via mass media providers 66. In the FIG. 5 model, the advertisers 62 compensate the mass media providers 66 to include advertisements 68 embedded in the entertainment or other content 70 being distributed by mass media to consumers 64. FIG. 6 shows the orthogonal sponsorship model provided in accordance with the present invention. FIG. 6 shows that using orthogonal sponsorship, the information content 70 provided by producer 66 is separated from the advertisements 68 provided by advertisers 62. Advertisers 62 can directly compensate consumers 64 via payment 60(a) for viewing and paying attention to their advertisements 68. Consumers 64 can use this payment 60(a) to compensate information provider 66 via another payment 60(b) for providing entertainment or other information 70 the consumer wishes to access. Sponsorship becomes unlinked from the content of the sponsored entertainment or service 70, |

- 4 -

Appendix B-6

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,794,210 (Goldhaber)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,794,210 (Goldhaber) |
|---|---|
| | much to the benefit of the consumer. As discussed above, the orthogonal sponsorship model shown in FIG. 6 is advantageous because it allows advertisers 62 to more accurately and efficiently target their ads 68 to particular consumers 64 interested in the ads. In this example, system 100 supports such more accurate targeting by providing each consumer 64 with a personalized database 120. An example consumer database is shown in FIG. 7. Database 120 may include contact information 122, interest profile information 124, account history information 125, and a digital cash repository 126. Contact information 122 identifies the consumer 64 so that other computers (e.g., 106, 108) can contact the consumer's computer 104 (or the consumer directly over communications means other than network 102). Consumer interest profile 124 includes demographic and other information detailing the consumer's interests, habits and preferences. This consumer interest profile 124 information can be used by advertisers 62 to target advertisements selectively to certain consumers and not to others (e.g., teenage boys can be sent skateboard ads, mothers can be sent children's clothing ads, retirees can be sent conservative investment information, golfers can be sent golf product ads, etc.). In the case of direct payment using digital cash, consumer database 120 may also include a digital cash repository 126 as discussed above.<br><br>*See also* col. 14, lines 17−40.<br><br>FIG. 8 shows an example of the use of consumer interest profile 124 to target advertisements 68. In this example, an advertiser 62(1) creates an ad 68 that appeals to certain consumers 64 but not others. In this schematic illustration, ad 68 created by advertiser 62 appeals primarily to consumers having certain preferences (these preferences indicated by the diamond shapes and the slanted stripes). Advertiser 62 provides ad 68 to server computer 106 which acts as an attention broker. Basically, attention broker computer 106(1) is an intermediary between consumers 64 and advertisers 62, and performs the function of routing ads 68 to appropriate consumers 64 based on consumers' interest profile 124 (see FIG. 9). In this FIG. 8 example, attention broker computer 106 may store a copy of the current interest profile 124 and associated contact information 122 for each of consumers 64. However, attention broker computer 106 may not be authorized by any of consumers 64 to release the consumers' information to advertiser 62. Instead, advertiser 62 specifies to attention broker 106 the demographics of consumers 64 to whom the advertiser wants the ad 68 shown. Server 106 may |

Appendix B-6

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,794,210 (Goldhaber)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,794,210 (Goldhaber) |
|---|---|
| | compare this advertiser-specified demographic information with the interest profile 124 of each of consumers 64, and may route the ad 68 to only those consumers (e.g., 64(1), 64(2), but not 64(N)) whose profiles 124 match the demographics specified by advertiser 62.

*See also* col. 15, lines 18−31.

There can be many attention brokerage servers 106.  Each attention brokerage server may serve a specific interest area (e.g., opera, winter sports, etc.), a specific geographic area, a specific demographic area, or any combination of these.  FIG. 10 shows an example arrangement including two attention brokerage servers 106(1), 106(2).  Attention brokerage server 106(1) may broker advertising and other information relating to winter sports in general or skiing in particular.  Thus, attention brokerage server 106(1) in this example stores a repertoire of ads (or other information) 140(1) relating to skiing.  The objective of server 106(1) is to deliver these skiing ads 140(1) to the computers 104 of consumers who are, based on their consumer interest profiles 124, interested or likely to be interested in skiing ads.

*See also* col. 15, line 57 to col. 16, line 5.

Agent 110 may present the user's interest profile 124 to attention brokerage servers 106 so as to allow the servers to attempt to match ads within their repertoires 140 with the consumer's interest profile, or in another embodiment, the software agent 110 may maintain the interest profile 124 as confidential and perform the matching itself based on ad profile criteria presented by the attention brokerage servers 106.  When matches are found, the attention brokerage servers 106 may deliver the matching ads to the consumer's computer 104, or agent 110 may retrieve the ads.  Alternatively, the software agent 110 may retrieve a "thumbnail" brief summary of the ads and display them on the consumer's computer display (see FIG. 11).  In this example, each "thumbnail description" of an ad can be displayed by consumer computer 104 with an associated CyberCoin icon 62.

*See also* Figs. 1, 7−11 and associated text. |

Appendix B-6

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,794,210 (Goldhaber)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,794,210 (Goldhaber) |
|---|---|
| [1c] forming at least a page file for the second type network node; | Goldhaber discloses forming at least a page file for the second type network node. To the extent it is found that Goldhaber does not disclose this feature expressly or inherently, it would have been obvious to combine Goldhaber with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.

*See* col. 5, lines 43−55.

Thus, the present invention provides a method of separating advertising sponsorship from the editorial content of the medium in which the advertising appears. We call this ability to decouple the advertising content from other content "orthogonal sponsorship." The technology offered by the present invention breaks (or make inexplicit) the link between the ad and the content of the sponsored material. Advertisers will not necessarily know what content of entertainment or information they are sponsoring. Instead, advertisers will simply provide ads to the service, explicitly delineate their target audience, and offer some form of compensation for time and attention directly to those viewers willing to "view" ads.

*See also* col. 7, lines 28−30.

Upon logging on to her customized home page, Cynthia would be presented with a list of ads that she may elect to view.

*See also* col. 8, lines 50−57.

The World Wide Web allows anyone to maintain public "home pages" that are visible to all, and are accessible to all with optional name-password access restrictions. The system provided by the present invention adds the capability of maintaining private home pages that are accessible and visible only to their owners. Another example feature of these pages is the capability of "dragging and dropping" content between one's private and public home pages. |

**Appendix B-6**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,794,210 (Goldhaber)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,794,210 (Goldhaber) |
|---|---|
| | *See also* col. 9, lines 33−40.<br><br>FIG. 1 shows an example of an overall environment 100 in which the present invention may be used. Environment 100 includes a network 102 such as, for example, the Internet or "Future Net." A plurality of consumer computers 104 are connected to network 102. Also, connected to network 102 are a plurality of information servers 106 and one or more financial clearinghouse computers 108. Network 102 allows each of computers 104, 106 and 108 to communicate with other computers.<br><br>*See also* col. 9, lines 62−67.<br><br>Servers 106 store information and disseminate it to consumer computers 104 over network 102. For example, servers 106 may act as "attention brokers" or "trading houses," and may supply consumer software agent 110 with advertisements or other information to be viewed or reviewed by consumers.<br><br>*See also* col. 11, line 59 to col. 12, lines 37.<br><br>FIG. 5 illustrates the concept of "linked sponsorship," and FIG. 6 illustrates the concept of "orthogonal sponsorship." As explained above, the "linked sponsorship" model shown in FIG. 5 is the traditional way in which advertisers 62 deliver their ads to consumers 64 via mass media providers 66. In the FIG. 5 model, the advertisers 62 compensate the mass media providers 66 to include advertisements 68 embedded in the entertainment or other content 70 being distributed by mass media to consumers 64. FIG. 6 shows the orthogonal sponsorship model provided in accordance with the present invention. FIG. 6 shows that using orthogonal sponsorship, the information content 70 provided by producer 66 is separated from the advertisements 68 provided by advertisers 62. Advertisers 62 can directly compensate consumers 64 via payment 60(a) for viewing and paying attention to their advertisements 68. Consumers 64 can use this payment 60(a) to compensate information provider 66 via another payment 60(b) for providing entertainment or other information 70 the consumer wishes to access. Sponsorship becomes unlinked from the content of the sponsored entertainment or service 70, much to the benefit of the consumer. As discussed above, the orthogonal sponsorship model shown in FIG. 6 is advantageous because it allows advertisers 62 to more accurately and efficiently target their |

**Appendix B-6**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,794,210 (Goldhaber)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,794,210 (Goldhaber) |
|---|---|
|  | ads 68 to particular consumers 64 interested in the ads. In this example, system 100 supports such more accurate targeting by providing each consumer 64 with a personalized database 120. An example consumer database is shown in FIG. 7. Database 120 may include contact information 122, interest profile information 124, account history information 125, and a digital cash repository 126. Contact information 122 identifies the consumer 64 so that other computers (e.g., 106, 108) can contact the consumer's computer 104 (or the consumer directly over communications means other than network 102). Consumer interest profile 124 includes demographic and other information detailing the consumer's interests, habits and preferences. This consumer interest profile 124 information can be used by advertisers 62 to target advertisements selectively to certain consumers and not to others (e.g., teenage boys can be sent skateboard ads, mothers can be sent children's clothing ads, retirees can be sent conservative investment information, golfers can be sent golf product ads, etc.). In the case of direct payment using digital cash, consumer database 120 may also include a digital cash repository 126 as discussed above.<br><br>*See also* Figs. 1, 7−11 and associated text. |
| [1d] receiving a service request from the first type network node; | Goldhaber discloses receiving a service request from the first type network node. To the extent it is found that Goldhaber does not disclose this feature expressly or inherently, it would have been obvious to combine Goldhaber with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* col. 10, lines 9−17.<br><br>For example, FIG. 2 schematically shows a transaction involving "positively priced information." Suppose a consumer requests valuable information such as, for example, a television program, prerecorded music, magazine or newspaper articles, or a research report. In this example, consumers may request such information through consumer computers 104, and the information can be delivered to the consumers in digital form via the consumer computers and/or by other means. |

Appendix B-6

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,794,210 (Goldhaber)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,794,210 (Goldhaber) |
|---|---|
| | *See also* Figs. 1, 7−11 and associated text. |
| [1e] identifying the first type network node based on the service request; and | Goldhaber discloses identifying the first type network node based on the service request. To the extent it is found that Goldhaber does not disclose this feature expressly or inherently, it would have been obvious to combine Goldhaber with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* col. 11, line 59 to col. 12, lines 37.<br><br>FIG. 5 illustrates the concept of "linked sponsorship," and FIG. 6 illustrates the concept of "orthogonal sponsorship." As explained above, the "linked sponsorship" model shown in FIG. 5 is the traditional way in which advertisers 62 deliver their ads to consumers 64 via mass media providers 66. In the FIG. 5 model, the advertisers 62 compensate the mass media providers 66 to include advertisements 68 embedded in the entertainment or other content 70 being distributed by mass media to consumers 64. FIG. 6 shows the orthogonal sponsorship model provided in accordance with the present invention. FIG. 6 shows that using orthogonal sponsorship, the information content 70 provided by producer 66 is separated from the advertisements 68 provided by advertisers 62. Advertisers 62 can directly compensate consumers 64 via payment 60(a) for viewing and paying attention to their advertisements 68. Consumers 64 can use this payment 60(a) to compensate information provider 66 via another payment 60(b) for providing entertainment or other information 70 the consumer wishes to access. Sponsorship becomes unlinked from the content of the sponsored entertainment or service 70, much to the benefit of the consumer. As discussed above, the orthogonal sponsorship model shown in FIG. 6 is advantageous because it allows advertisers 62 to more accurately and efficiently target their ads 68 to particular consumers 64 interested in the ads. In this example, system 100 supports such more accurate targeting by providing each consumer 64 with a personalized database 120. An example consumer database is shown in FIG. 7. Database 120 may include contact information 122, interest profile information 124, account history information 125, and a digital cash repository 126. Contact information 122 identifies the consumer 64 so that other computers (e.g., 106, 108) can contact the consumer's computer 104 (or the consumer directly over communications means other than network 102). Consumer interest profile 124 includes demographic and other information |

Appendix B-6

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,794,210 (Goldhaber)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,794,210 (Goldhaber) |
|---|---|
|  | detailing the consumer's interests, habits and preferences. This consumer interest profile 124 information can be used by advertisers 62 to target advertisements selectively to certain consumers and not to others (e.g., teenage boys can be sent skateboard ads, mothers can be sent children's clothing ads, retirees can be sent conservative investment information, golfers can be sent golf product ads, etc.). In the case of direct payment using digital cash, consumer database 120 may also include a digital cash repository 126 as discussed above.<br><br>*See also* Figs. 1, 7−11 and associated text.<br><br>*See also* claim limitation [1d]. |
| [1f] forming a customized page file formed for the first type network node by including the page file formed for the first type network node within the page file for the second type network node. | Goldhaber discloses forming a customized page file formed for the first type network node by including the page file formed for the first type network node within the page file for the second type network node. To the extent it is found that Goldhaber does not disclose this feature expressly or inherently, it would have been obvious to combine Goldhaber with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* col. 5, lines 43−55.<br><br>Thus, the present invention provides a method of separating advertising sponsorship from the editorial content of the medium in which the advertising appears. We call this ability to decouple the advertising content from other content "orthogonal sponsorship." The technology offered by the present invention breaks (or make inexplicit) the link between the ad and the content of the sponsored material. Advertisers will not necessarily know what content of entertainment or information they are sponsoring. Instead, advertisers will simply provide ads to the service, explicitly delineate their target audience, and offer some form of compensation for time and attention directly to those viewers willing to "view" ads.<br><br>*See also* col. 7, lines 23−45. |

**Appendix B-6**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,794,210 (Goldhaber)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,794,210 (Goldhaber) |
|---|---|
| | To show how the approaches discussed above transform a typical advertising transaction, consider a brief scenario starring "Cynthia," an Internet surfer who has recently signed on to the service provided in accordance with the present invention.  Upon logging on to her customized home page, Cynthia would be presented with a list of ads that she may elect to view.  The ads would be preselected for her on the basis of a personal profile questionnaire that she has completed plus automatic tracking of her previous Internet usage.  For example, today's list might contain ads for medium-price hotels in Mazatlan (where Cynthia is planning a vacation), a do-it-yourself telescope kit (a possibility for her son's upcoming birthday), San Francisco Forty-Niner football tickets (she's a fan), new nonfat organic dessert items (she's on a diet), and heavy equipment for earth moving (she is part-owner of a construction company).  In the system provided by the present invention, not only are the subjects of the ads keyed to Cynthia's interests, but certain aspects of their style, depth, and content can also be customized to her as well.  For example, Cynthia's love of sunsets, independent rock groups, and dancing (all available from her profile) can be used to customize ads so that she will enjoy them more.<br><br>*See also* col. 11, line 59 to col. 12, lines 37.<br><br>FIG. 5 illustrates the concept of "linked sponsorship," and FIG. 6 illustrates the concept of "orthogonal sponsorship."  As explained above, the "linked sponsorship" model shown in FIG. 5 is the traditional way in which advertisers 62 deliver their ads to consumers 64 via mass media providers 66.  In the FIG. 5 model, the advertisers 62 compensate the mass media providers 66 to include advertisements 68 embedded in the entertainment or other content 70 being distributed by mass media to consumers 64.  FIG. 6 shows the orthogonal sponsorship model provided in accordance with the present invention.  FIG. 6 shows that using orthogonal sponsorship, the information content 70 provided by producer 66 is separated from the advertisements 68 provided by advertisers 62.  Advertisers 62 can directly compensate consumers 64 via payment 60(a) for viewing and paying attention to their advertisements 68.  Consumers 64 can use this payment 60(a) to compensate information provider 66 via another payment 60(b) for providing entertainment or other information 70 the consumer wishes to access.  Sponsorship becomes unlinked from the content of the sponsored entertainment or service 70, much to the benefit of the consumer.  As discussed above, the orthogonal sponsorship model shown in FIG. 6 is advantageous because it allows advertisers 62 to more accurately and efficiently target their |

Appendix B-6

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,794,210 (Goldhaber)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,794,210 (Goldhaber) |
|---|---|
| | ads 68 to particular consumers 64 interested in the ads. In this example, system 100 supports such more accurate targeting by providing each consumer 64 with a personalized database 120. An example consumer database is shown in FIG. 7. Database 120 may include contact information 122, interest profile information 124, account history information 125, and a digital cash repository 126. Contact information 122 identifies the consumer 64 so that other computers (e.g., 106, 108) can contact the consumer's computer 104 (or the consumer directly over communications means other than network 102). Consumer interest profile 124 includes demographic and other information detailing the consumer's interests, habits and preferences. This consumer interest profile 124 information can be used by advertisers 62 to target advertisements selectively to certain consumers and not to others (e.g., teenage boys can be sent skateboard ads, mothers can be sent children's clothing ads, retirees can be sent conservative investment information, golfers can be sent golf product ads, etc.). In the case of direct payment using digital cash, consumer database 120 may also include a digital cash repository 126 as discussed above. <br><br> *See also* col. 14, lines 17−40. <br><br> FIG. 8 shows an example of the use of consumer interest profile 124 to target advertisements 68. In this example, an advertiser 62(1) creates an ad 68 that appeals to certain consumers 64 but not others. In this schematic illustration, ad 68 created by advertiser 62 appeals primarily to consumers having certain preferences (these preferences indicated by the diamond shapes and the slanted stripes). Advertiser 62 provides ad 68 to server computer 106 which acts as an attention broker. Basically, attention broker computer 106(1) is an intermediary between consumers 64 and advertisers 62, and performs the function of routing ads 68 to appropriate consumers 64 based on consumers' interest profile 124 (see FIG. 9). In this FIG. 8 example, attention broker computer 106 may store a copy of the current interest profile 124 and associated contact information 122 for each of consumers 64. However, attention broker computer 106 may not be authorized by any of consumers 64 to release the consumers' information to advertiser 62. Instead, advertiser 62 specifies to attention broker 106 the demographics of consumers 64 to whom the advertiser wants the ad 68 shown. Server 106 may compare this advertiser-specified demographic information with the interest profile 124 of each of consumers 64, and may route the ad 68 to only those consumers (e.g., 64(1), 64(2), but not 64(N)) |

Appendix B-6

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,794,210 (Goldhaber)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,794,210 (Goldhaber) |
|---|---|
| | whose profiles 124 match the demographics specified by advertiser 62.<br><br>*See also* col. 15, line 57 to col. 16, line 5.<br><br>Agent 110 may present the user's interest profile 124 to attention brokerage servers 106 so as to allow the servers to attempt to match ads within their repertoires 140 with the consumer's interest profile, or in another embodiment, the software agent 110 may maintain the interest profile 124 as confidential and perform the matching itself based on ad profile criteria presented by the attention brokerage servers 106. When matches are found, the attention brokerage servers 106 may deliver the matching ads to the consumer's computer 104, or agent 110 may retrieve the ads. Alternatively, the software agent 110 may retrieve a "thumbnail" brief summary of the ads and display them on the consumer's computer display (see FIG. 11). In this example, each "thumbnail description" of an ad can be displayed by consumer computer 104 with an associated CyberCoin icon 62.<br><br>*See also* Figs. 1, 7−11 and associated text.<br><br>*See also* claim limitations [1b] and [1c]. |
| *Claim 2* | |
| [2] The method of claim 1, wherein the first type network node is an ISP node, and the second type network node is an ICP node. | Goldhaber discloses that the first type network node is an ISP node, and the second type network node is an ICP node. To the extent it is found that Goldhaber does not disclose this feature expressly or inherently, it would have been obvious to combine Goldhaber with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* col. 9, lines 33−51.<br><br>FIG. 1 shows an example of an overall environment 100 in which the present invention may be used. Environment 100 includes a network 102 such as, for example, the Internet or "Future Net." A plurality of consumer computers 104 are connected to network 102. Also, connected to network 102 are a plurality of information servers 106 and one or more financial clearinghouse computers 108. |

Appendix B-6

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,794,210 (Goldhaber)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,794,210 (Goldhaber) |
|---|---|
| | Network 102 allows each of computers 104, 106 and 108 to communicate with other computers. Each of consumer computers 104 may be owned and operated by a different consumer. For example, computer 104(1) can be at the home of a first consumer, consumer computer 104(2) can be at the home of a second consumer, and consumer computer 104(N) may be at the home of an Nth consumer. Consumer computers 104 in this example may comprise, as one example, conventional desktop personal computers or workstations having the ability to connect to network 102 and being capable of running customized software supporting the service provided by the present invention.<br><br>*See also* col. 9, lines 62−67.<br><br>Servers 106 store information and disseminate it to consumer computers 104 over network 102. For example, servers 106 may act as "attention brokers" or "trading houses," and may supply consumer software agent 110 with advertisements or other information to be viewed or reviewed by consumers.<br><br>*See also* col. 14, lines 17−40.<br><br>FIG. 8 shows an example of the use of consumer interest profile 124 to target advertisements 68. In this example, an advertiser 62(1) creates an ad 68 that appeals to certain consumers 64 but not others. In this schematic illustration, ad 68 created by advertiser 62 appeals primarily to consumers having certain preferences (these preferences indicated by the diamond shapes and the slanted stripes). Advertiser 62 provides ad 68 to server computer 106 which acts as an attention broker. Basically, attention broker computer 106(1) is an intermediary between consumers 64 and advertisers 62, and performs the function of routing ads 68 to appropriate consumers 64 based on consumers' interest profile 124 (see FIG. 9). In this FIG. 8 example, attention broker computer 106 may store a copy of the current interest profile 124 and associated contact information 122 for each of consumers 64. However, attention broker computer 106 may not be authorized by any of consumers 64 to release the consumers' information to advertiser 62. Instead, advertiser 62 specifies to attention broker 106 the demographics of consumers 64 to whom the advertiser wants the ad 68 shown. Server 106 may compare this advertiser-specified demographic information with the interest profile 124 of each of consumers 64, and may route the ad 68 to only those consumers (e.g., 64(1), 64(2), but not 64(N)) |

Appendix B-6

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,794,210 (Goldhaber)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,794,210 (Goldhaber) |
|---|---|
| | whose profiles 124 match the demographics specified by advertiser 62. |
| | *See also* col. 15, lines 18−31. |
| | There can be many attention brokerage servers 106. Each attention brokerage server may serve a specific interest area (e.g., opera, winter sports, etc.), a specific geographic area, a specific demographic area, or any combination of these. FIG. 10 shows an example arrangement including two attention brokerage servers 106(1), 106(2). Attention brokerage server 106(1) may broker advertising and other information relating to winter sports in general or skiing in particular. Thus, attention brokerage server 106(1) in this example stores a repertoire of ads (or other information) 140(1) relating to skiing. The objective of server 106(1) is to deliver these skiing ads 140(1) to the computers 104 of consumers who are, based on their consumer interest profiles 124, interested or likely to be interested in skiing ads. |
| | *See also* Figs. 1, 7−11 and associated text. |
| | *See also* claim limitation [1a]. |
| *Claim 3* | |
| [3] The method of claim 1, wherein the first type network node is an organization node, and the second type network node is an ICP node. | Goldhaber discloses that the first type network node is an organization node, and the second type network node is an ICP node. To the extent it is found that Goldhaber does not disclose this feature expressly or inherently, it would have been obvious to combine Goldhaber with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| | *See* col. 9, lines 33−51. |
| | FIG. 1 shows an example of an overall environment 100 in which the present invention may be used. Environment 100 includes a network 102 such as, for example, the Internet or "Future Net." A plurality of consumer computers 104 are connected to network 102. Also, connected to network 102 |

Appendix B-6

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,794,210 (Goldhaber)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,794,210 (Goldhaber) |
|---|---|
| | are a plurality of information servers 106 and one or more financial clearinghouse computers 108. Network 102 allows each of computers 104, 106 and 108 to communicate with other computers. Each of consumer computers 104 may be owned and operated by a different consumer. For example, computer 104(1) can be at the home of a first consumer, consumer computer 104(2) can be at the home of a second consumer, and consumer computer 104(N) may be at the home of an Nth consumer. Consumer computers 104 in this example may comprise, as one example, conventional desktop personal computers or workstations having the ability to connect to network 102 and being capable of running customized software supporting the service provided by the present invention. <br><br> *See also* col. 9, lines 62−67. <br><br> Servers 106 store information and disseminate it to consumer computers 104 over network 102. For example, servers 106 may act as "attention brokers" or "trading houses," and may supply consumer software agent 110 with advertisements or other information to be viewed or reviewed by consumers. <br><br> *See also* col. 14, lines 17−40. <br><br> FIG. 8 shows an example of the use of consumer interest profile 124 to target advertisements 68. In this example, an advertiser 62(1) creates an ad 68 that appeals to certain consumers 64 but not others. In this schematic illustration, ad 68 created by advertiser 62 appeals primarily to consumers having certain preferences (these preferences indicated by the diamond shapes and the slanted stripes). Advertiser 62 provides ad 68 to server computer 106 which acts as attention broker. Basically, attention broker computer 106(1) is an intermediary between consumers 64 and advertisers 62, and performs the function of routing ads 68 to appropriate consumers 64 based on consumers' interest profile 124 (see FIG. 9). In this FIG. 8 example, attention broker computer 106 may store a copy of the current interest profile 124 and associated contact information 122 for each of consumers 64. However, attention broker computer 106 may not be authorized by any of consumers 64 to release the consumers' information to advertiser 62. Instead, advertiser 62 specifies to attention broker 106 the demographics of consumers 64 to whom the advertiser wants the ad 68 shown. Server 106 may compare this advertiser-specified demographic information with the interest profile 124 of each of |

Appendix B-6

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,794,210 (Goldhaber)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,794,210 (Goldhaber) |
|---|---|
| | consumers 64, and may route the ad 68 to only those consumers (e.g., 64(1), 64(2), but not 64(N)) whose profiles 124 match the demographics specified by advertiser 62.<br><br>*See also* col. 15, lines 18−31.<br><br>There can be many attention brokerage servers 106.  Each attention brokerage server may serve a specific interest area (e.g., opera, winter sports, etc.), a specific geographic area, a specific demographic area, or any combination of these.  FIG. 10 shows an example arrangement including two attention brokerage servers 106(1), 106(2).  Attention brokerage server 106(1) may broker advertising and other information relating to winter sports in general or skiing in particular.  Thus, attention brokerage server 106(1) in this example stores a repertoire of ads (or other information) 140(1) relating to skiing.  The objective of server 106(1) is to deliver these skiing ads 140(1) to the computers 104 of consumers who are, based on their consumer interest profiles 124, interested or likely to be interested in skiing ads.<br><br>*See also* col. 21, lines 1−16.<br><br>While the invention has been described in connection with what is presently considered to be the most practical and preferred embodiment, it is to be understood that the invention is not to be limited to the disclosed embodiment.  For example, although the preferred instantiation of the equipment or "viewer" the consumer uses to communicate with comprises a general-purpose desktop computer or the like, other equipment (e.g., a television with set-top box, or a dedicated display device) could be used instead.  Moreover, although the preferred instantiation of the "viewer" is connected to the other components of system 100 via the Internet 102, other forms of connection (e.g., cable TV, on-line systems, local-area networks, wide-area networks, and physically distributed CD-ROMs) are also supported.  The invention is intended to cover various modifications and equivalent arrangements included within the spirit and scope of the appended claims.<br><br>*See also* Figs. 1, 7−11 and associated text. |

Appendix B-6

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,794,210 (Goldhaber)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,794,210 (Goldhaber) |
|---|---|
| | *See also* claim limitation [1a]. |
| *Claim 4* | |
| [4] The method of claim 1, wherein the customized page file includes customized graphics, sounds, applets, links, and text. | To the extent it is found that Goldhaber does not disclose this feature expressly or inherently, it would have been obvious to combine Goldhaber with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See also* claim limitation [1b]. |
| *Claim 5* | |
| [5] The method of claim 1, wherein the customized page file includes customized advertisements. | Goldhaber discloses that the customized page file includes customized advertisements. To the extent it is found that Goldhaber does not disclose this feature expressly or inherently, it would have been obvious to combine Goldhaber with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* col. 4, line 64 to col. 5, line 24.<br><br>As discussed above, traditional advertising was both under-inclusive and over-inclusive. In contrast, technology provided in accordance with the present invention permits the design of ads that are virtually custom-fitted to consumer preferences, thus ensuring that the ad messages will be welcomed and attentively viewed by the consumer. This ability to finely target (and customize) ads based on the interests of particular individual consumers maximizes efficiency and benefits both the advertisers and the consumers. For example, when selecting ads for viewing, the consumer would be given the chance to express a preference for certain kinds of ad content. For example, if the consumer is shopping for a computer, he/she might ask to see an advertisement that provides straightforward technical specifications of specific models or configurations. For a movie commercial, one consumer might request a film clip while another asks for a plot summary. Some consumers might enjoy the entertainment value of celebrity-spokesperson ads, while a consumer viewing an ad for food or drink might ask for a list of ingredients or nutrients. A related innovation, "demographic routing," is a mechanism by which an information package or its agent (or an agent for any goods or service) can be |

**Appendix B-6**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,794,210 (Goldhaber)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,794,210 (Goldhaber) |
|---|---|
| | routed directly to interested and willing buyers. Conceptually, this is an addressing mechanism that can be used to route the information to more than one individual, e.g., to all users who are demographically suitable (e.g., "anyone who fits the following profile").<br><br>*See also* col. 6, lines 46−61.<br><br>The demographic profiles can be constructed through interest questionnaires that the consumer completes when subscribing to the service, and also through electronic tracking of his/her usage of the service (and other habits). Thus, the profiles can be dynamic, evolving with the customer's transaction history. A customer can choose to exclude any transaction (e.g., viewing of certain material or purchasing of certain products) from his profile. Profiles can also be interactive in that a customer may edit his profile at any time to add or delete interest features, and to delete any transaction records. Thus, for example, the customer can delete historical transaction entries evidencing her purchase of an "adult" film if desired. Similarly, the customer can change her profile to express interest in seeing certain types of automobile advertisements, and then, after she has selected and purchased a new car, delete those profile entries.<br><br>*See also* col. 11, line 59 to col. 12, lines 37.<br><br>FIG. 5 illustrates the concept of "linked sponsorship," and FIG. 6 illustrates the concept of "orthogonal sponsorship." As explained above, the "linked sponsorship" model shown in FIG. 5 is the traditional way in which advertisers 62 deliver their ads to consumers 64 via mass media providers 66. In the FIG. 5 model, the advertisers 62 compensate the mass media providers 66 to include advertisements 68 embedded in the entertainment or other content 70 being distributed by mass media to consumers 64. FIG. 6 shows the orthogonal sponsorship model provided in accordance with the present invention. FIG. 6 shows that using orthogonal sponsorship, the information content 70 provided by producer 66 is separated from the advertisements 68 provided by advertisers 62. Advertisers 62 can directly compensate consumers 64 via payment 60(a) for viewing and paying attention to their advertisements 68. Consumers 64 can use this payment 60(a) to compensate information provider 66 via another payment 60(b) for providing entertainment or other information 70 the consumer wishes to |

**Appendix B-6**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,794,210 (Goldhaber)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,794,210 (Goldhaber) |
|---|---|
| | access. Sponsorship becomes unlinked from the content of the sponsored entertainment or service 70, much to the benefit of the consumer. As discussed above, the orthogonal sponsorship model shown in FIG. 6 is advantageous because it allows advertisers 62 to more accurately and efficiently target their ads 68 to particular consumers 64 interested in the ads. In this example, system 100 supports such more accurate targeting by providing each consumer 64 with a personalized database 120. An example consumer database is shown in FIG. 7. Database 120 may include contact information 122, interest profile information 124, account history information 125, and a digital cash repository 126. Contact information 122 identifies the consumer 64 so that other computers (e.g., 106, 108) can contact the consumer's computer 104 (or the consumer directly over communications means other than network 102). Consumer interest profile 124 includes demographic and other information detailing the consumer's interests, habits and preferences. This consumer interest profile 124 information can be used by advertisers 62 to target advertisements selectively to certain consumers and not to others (e.g., teenage boys can be sent skateboard ads, mothers can be sent children's clothing ads, retirees can be sent conservative investment information, golfers can be sent golf product ads, etc.). In the case of direct payment using digital cash, consumer database 120 may also include a digital cash repository 126 as discussed above. *See also* col. 12, line 59 to col. 13, line 10. Contact Information--Confidential We will never release this information. You may chose to release it, however, in response to an advertiser's offer to pay you for your name and address. There is no way that an advertiser can access this information without your case-by-case consent.     Your Name     First     Middle     Last     Your Telephone Number |

Appendix B-6

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,794,210 (Goldhaber)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,794,210 (Goldhaber) |
|---|---|
| | Please leave a telephone number where we can reach you.<br><br>    Your Postal Address<br>    Street Address #1<br>    Street Address #2<br>    City<br>    State or Province<br>    Zip or Postal Code<br>    Country<br><br>*See also* col. 14, lines 17−40.<br><br>FIG. 8 shows an example of the use of consumer interest profile 124 to target advertisements 68.  In this example, an advertiser 62(1) creates an ad 68 that appeals to certain consumers 64 but not others.  In this schematic illustration, ad 68 created by advertiser 62 appeals primarily to consumers having certain preferences (these preferences indicated by the diamond shapes and the slanted stripes).  Advertiser 62 provides ad 68 to server computer 106 which acts as an attention broker.  Basically, attention broker computer 106(1) is an intermediary between consumers 64 and advertisers 62, and performs the function of routing ads 68 to appropriate consumers 64 based on consumers' interest profile 124 (see FIG. 9).  In this FIG. 8 example, attention broker computer 106 may store a copy of the current interest profile 124 and associated contact information 122 for each of consumers 64.  However, attention broker computer 106 may not be authorized by any of consumers 64 to release the consumers' information to advertiser 62.  Instead, advertiser 62 specifies to attention broker 106 the demographics of consumers 64 to whom the advertiser wants the ad 68 shown.  Server 106 may compare this advertiser-specified demographic information with the interest profile 124 of each of consumers 64, and may route the ad 68 to only those consumers (e.g., 64(1), 64(2), but not 64(N)) whose profiles 124 match the demographics specified by advertiser 62.<br><br>*See also* col. 15, lines 18−31. |

Appendix B-6

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,794,210 (Goldhaber)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,794,210 (Goldhaber) |
|---|---|
| | There can be many attention brokerage servers 106.  Each attention brokerage server may serve a specific interest area (e.g., opera, winter sports, etc.), a specific geographic area, a specific demographic area, or any combination of these.  FIG. 10 shows an example arrangement including two attention brokerage servers 106(1), 106(2).  Attention brokerage server 106(1) may broker advertising and other information relating to winter sports in general or skiing in particular.  Thus, attention brokerage server 106(1) in this example stores a repertoire of ads (or other information) 140(1) relating to skiing.  The objective of server 106(1) is to deliver these skiing ads 140(1) to the computers 104 of consumers who are, based on their consumer interest profiles 124, interested or likely to be interested in skiing ads.  *See also* Figs. 1, 7−11 and associated text.  *See also* claim limitation [1b]. |
| *Claim 6* | |
| [6a] The method of claim 1, wherein:  the service request includes an IP  address for identifying the first type network node, and | Goldhaber discloses that the service request includes an IP  address for identifying the first type network node.  To the extent it is found that Goldhaber does not disclose this feature expressly or inherently, it would have been obvious to combine Goldhaber with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter.  *See* Appendix C.  *See* col. 3, lines 41−62.  The Internet is the first medium that can claim to be both "mass," in the sense that it reaches millions of people all over the globe, and "specialized," in the sense that its technology is capable of targeting information directly to the individual consumer.  This is such a fundamental change from all previous information technologies that it has the potential to transform the advertising transaction into an alliance between consumer and advertiser, based on mutual respect and mutual benefits.  The Internet is a system of linked computers that permits fast, low-cost, global communication, entertainment, and information exchange.  The Internet may be considered the test-bed for a "Future Net" which will likely encompass the functions now provided by today's Internet, cable and broadcast television, |

**Appendix B-6**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,794,210 (Goldhaber)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,794,210 (Goldhaber) |
|---|---|
| | telephone communications (including voice and picture) and other linear and interactive business, telecommunication and entertainment systems.  This "Future Net" may be a single network or an amalgamation of two or more independent networks.  It is likely that new forms of entertainment and business will emerge, made possible by the Future Net.<br><br>*See also* claim limitation [1d]. |
| [6b] identifying the first type network node based on the service request comprises using the IP address included in the service request to identify the first type network node. | Goldhaber discloses that identifying the first type network node based on the service request comprises using the IP address included in the service request to identify the first type network node.  To the extent it is found that Goldhaber does not disclose this feature expressly or inherently, it would have been obvious to combine Goldhaber with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter.  *See* Appendix C.<br><br>*See* col. 3, lines 41−62.<br><br>The Internet is the first medium that can claim to be both "mass," in the sense that it reaches millions of people all over the globe, and "specialized," in the sense that its technology is capable of targeting information directly to the individual consumer.  This is such a fundamental change from all previous information technologies that it has the potential to transform the advertising transaction into an alliance between consumer and advertiser, based on mutual respect and mutual benefits.  The Internet is a system of linked computers that permits fast, low-cost, global communication, entertainment, and information exchange.  The Internet may be considered the test-bed for a "Future Net" which will likely encompass the functions now provided by today's Internet, cable and broadcast television, telephone communications (including voice and picture) and other linear and interactive business, telecommunication and entertainment systems.  This "Future Net" may be a single network or an amalgamation of two or more independent networks.  It is likely that new forms of entertainment and business will emerge, made possible by the Future Net.<br><br>*See also* claim limitation [1e]. |

- 24 -

**Appendix B-6**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,794,210 (Goldhaber)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,794,210 (Goldhaber) |
|---|---|
| *Claim 7* | |
| [7a] A method for providing web page customization service to a plurality of first type network nodes at a second type network node, comprising the steps of: | Goldhaber discloses a method for providing web page customization service to a plurality of first type network nodes at a second type network node. To the extent it is found that Goldhaber does not disclose this feature expressly or inherently, it would have been obvious to combine Goldhaber with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1a]. |
| [7b] forming at least a page file for each of the first type network nodes; | Goldhaber discloses forming at least a page file for each of the first type network nodes. To the extent it is found that Goldhaber does not disclose this feature expressly or inherently, it would have been obvious to combine Goldhaber with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1b]. |
| [7c] forming at least a page file for the second type network node; | Goldhaber discloses forming at least a page file for the second type network node. To the extent it is found that Goldhaber does not disclose this feature expressly or inherently, it would have been obvious to combine Goldhaber with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1c]. |
| [7d] receiving a service request from one of the first type network nodes; | Goldhaber discloses receiving a service request from one of the first type network nodes. To the extent it is found that Goldhaber does not disclose this feature expressly or inherently, it would have been obvious to combine Goldhaber with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1d]. |

Appendix B-6

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,794,210 (Goldhaber)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,794,210 (Goldhaber) |
|---|---|
| [7e] determining whether the first type network node participates in the web page customization service; | Goldhaber discloses determining whether the first type network node participates in the web page customization service. To the extent it is found that Goldhaber does not disclose this feature expressly or inherently, it would have been obvious to combine Goldhaber with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1e]. |
| [7f] if the first type network node participates in the web page customization service, forming a customized page file for the service request by including the page file formed for the first type network node within the page file formed for the second type network node; and | Goldhaber discloses, if the first type network node participates in the web page customization service, forming a customized page file for the service request by including the page file formed for the first type network node within the page file formed for the second type network node. To the extent it is found that Goldhaber does not disclose this feature expressly or inherently, it would have been obvious to combine Goldhaber with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1f]. |
| [7g] if the first type network node does not participate in the web page customization service, forming a page file for the service request by using the page file formed for the second type network node. | Goldhaber discloses, if the first type network node does not participate in the web page customization service, forming a page file for the service request by using the page file formed for the second type network node. For example, the second type network node identifies the first type network node based on the service request. If the second type network node fails to identify the first type network node, the second type network node will only form a page file for the service request by using the page file formed for the second type network node. To the extent it is found that Goldhaber does not disclose this feature expressly or inherently, it would have been obvious to combine Goldhaber with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1f]. |

**Appendix B-6**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,794,210 (Goldhaber)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,794,210 (Goldhaber) |
|---|---|
| *Claim 8* | |
| [8] The method of claim 7, wherein the first type network nodes are ISP nodes, and the second type network node is an ICP node. | Goldhaber discloses that the first type network nodes are ISP nodes, and the second type network node is an ICP node. To the extent it is found that Goldhaber does not disclose this feature expressly or inherently, it would have been obvious to combine Goldhaber with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [2]. |
| *Claim 9* | |
| [9] The method of claim 7, wherein the first type network nodes are organization nodes, and the second type network node is an ICP node. | Goldhaber discloses that the first type network nodes are organization nodes, and the second type network node is an ICP node. To the extent it is found that Goldhaber does not disclose this feature expressly or inherently, it would have been obvious to combine Goldhaber with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [3]. |
| *Claim 10* | |
| [10] The method of claim 7, wherein the customized page file includes customized graphics, sounds, applets, links, and text. | To the extent it is found that Goldhaber does not disclose this feature expressly or inherently, it would have been obvious to combine Goldhaber with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [4]. |
| *Claim 11* | |
| [11] The method of claim 7, wherein the customized page file includes customized advertisements. | Goldhaber discloses that the customized page file includes customized advertisements. To the extent it is found that Goldhaber does not disclose this feature expressly or inherently, it would have been obvious to combine Goldhaber with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |

Appendix B-6

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,794,210 (Goldhaber)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,794,210 (Goldhaber) |
|---|---|
|  | *See* claim limitation [5]. |
| *Claim 12* |  |
| [12a] The method of claim 7, wherein: the service request from one of the first type network nodes includes an IP address for identifying the first type network node, and | Goldhaber discloses that the service request from one of the first type network nodes includes an IP address for identifying the first type network node. To the extent it is found that Goldhaber does not disclose this feature expressly or inherently, it would have been obvious to combine Goldhaber with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [6a]. |
| [12b] determining whether the first type network node participates in the web page customization service comprises using the IPI address included in the service request to identify the first type network node. | Goldhaber discloses that determining whether the first type network node participates in the web page customization service comprises using the IPI address included in the service request to identify the first type network node. To the extent it is found that Goldhaber does not disclose this feature expressly or inherently, it would have been obvious to combine Goldhaber with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [6b]. |
| *Claim 13* |  |
| [13a] A method for providing web page customization service to a plurality of first type network nodes at a second type network node, comprising the steps of: | Goldhaber discloses a method for providing web page customization service to a plurality of first type web nodes at a second type network node. To the extent it is found that Goldhaber does not disclose this feature expressly or inherently, it would have been obvious to combine Goldhaber with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1a]. |
| [13b] forming a plurality of | Goldhaber discloses forming a plurality of advertisements for the first type network nodes. To the |

**Appendix B-6**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,794,210 (Goldhaber)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,794,210 (Goldhaber) |
|---|---|
| advertisements for the first type network nodes; | extent it is found that Goldhaber does not disclose this feature expressly or inherently, it would have been obvious to combine Goldhaber with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitations [1b] and [5]. |
| [13c] forming at least a page file for the second type network node; | Goldhaber discloses forming at least a page file for the second type network node. To the extent it is found that Goldhaber does not disclose this feature expressly or inherently, it would have been obvious to combine Goldhaber with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1c]. |
| [13d] receiving a service request from one of the first type network nodes; | Goldhaber discloses receiving a service request from one of the first type network nodes. To the extent it is found that Goldhaber does not disclose this feature expressly or inherently, it would have been obvious to combine Goldhaber with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1d]. |
| [13e] identifying advertisements for the first type network node; and | Goldhaber discloses identifying advertisements for the first type network node. To the extent it is found that Goldhaber does not disclose this feature expressly or inherently, it would have been obvious to combine Goldhaber with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitations [1e] and [5]. |
| [13f] forming a customized page file for the first type network node by including | Goldhaber discloses forming a customized page file for the first type network node by including the identified advertisements within the page file formed for the second type network node. To the extent it is found that Goldhaber does not disclose this feature expressly or inherently, it would have been |

**Appendix B-6**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,794,210 (Goldhaber)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,794,210 (Goldhaber) |
|---|---|
| the identified advertisements within the page file formed for the second type network node. | obvious to combine Goldhaber with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. <br><br> *See* claim limitation [1f]. |
| *Claim 14* | |
| [14] The method of claim 13, wherein the first type network nodes are ISP nodes, and the second type network node is an ICP node. | Goldhaber discloses that the first type network nodes are ISP nodes, and the second type network node is an ICP node. To the extent it is found that Goldhaber does not disclose this feature expressly or inherently, it would have been obvious to combine Goldhaber with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. <br><br> *See* claim limitation [2]. |
| *Claim 15* | |
| [15] The method of claim 13, wherein the first type network nodes are organization nodes, and the second type network node is an ICP node. | Goldhaber discloses that the first type network nodes are organization nodes, and the second type network node is an ICP node. To the extent it is found that Goldhaber does not disclose this feature expressly or inherently, it would have been obvious to combine Goldhaber with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. <br><br> *See* claim limitation [3]. |
| *Claim 16* | |
| [16] The method of claim 13, wherein the identified advertisements do not cause negative impact on the owner of the first type network node. | Goldhaber discloses that the identified advertisements do not cause negative impact on the owner of the first type network node. To the extent it is found that Goldhaber does not disclose this feature expressly or inherently, it would have been obvious to combine Goldhaber with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |

**Appendix B-6**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,794,210 (Goldhaber)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,794,210 (Goldhaber) |
|---|---|
| | *See* claim limitation [5]. |
| *Claim 17* | |
| [17a] An apparatus for dynamically forming a customized web page for a first type network node at a second type network node, comprising: | Goldhaber discloses an apparatus for dynamically forming a customized web page for a first type network node at a second type network node. To the extent it is found that Goldhaber does not disclose this feature expressly or inherently, it would have been obvious to combine Goldhaber with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.  <br><br>*See* claim limitation [1a]. |
| [17b] means for forming at least a page file for the first type network node; | Goldhaber discloses means for forming at least a page file for the first type network node. To the extent it is found that Goldhaber does not disclose this feature expressly or inherently, it would have been obvious to combine Goldhaber with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.  <br><br>*See* claim limitation [1b]. |
| [17c] means for forming at least a page file for the second type network node; | Goldhaber discloses means for forming at least a page file for the second type network node. To the extent it is found that Goldhaber does not disclose this feature expressly or inherently, it would have been obvious to combine Goldhaber with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.  <br><br>*See* claim limitation [1c]. |
| [17d] means for receiving a service request from the first type network node; | Goldhaber discloses means for receiving a service request from the first type network node. To the extent it is found that Goldhaber does not disclose this feature expressly or inherently, it would have been obvious to combine Goldhaber with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |

**Appendix B-6**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,794,210 (Goldhaber)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,794,210 (Goldhaber) |
|---|---|
| | *See* claim limitation [1d]. |
| [17e] means for identifying the first type network node based on the service request; and | Goldhaber discloses means for identifying the first type network node based on the service request. To the extent it is found that Goldhaber does not disclose this feature expressly or inherently, it would have been obvious to combine Goldhaber with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1e]. |
| [17f] means for forming a customized page file formed for the first type network node by including the page file formed for the first type network node within the page file for the second type network node. | Goldhaber discloses means for forming a customized page file formed for the first type network node by including the page file formed for the first type network node within the page file for the second type network node. To the extent it is found that Goldhaber does not disclose this feature expressly or inherently, it would have been obvious to combine Goldhaber with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1f]. |
| *Claim 18* | |
| [18] The apparatus of claim 17, wherein the first type network node is an ISP node, and the second type network node is an ICP node. | Goldhaber discloses that the first type network node is an ISP node, and the second type network node is an ICP node. To the extent it is found that Goldhaber does not disclose this feature expressly or inherently, it would have been obvious to combine Goldhaber with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [2]. |
| *Claim 19* | |
| [19] The apparatus of claim 17, wherein the first type network node is an | Goldhaber discloses that the first type network node is an organization node, and the second type network node is an ICP node. To the extent it is found that Goldhaber does not disclose this feature expressly or inherently, it would have been obvious to combine Goldhaber with the knowledge of a |

**Appendix B-6**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,794,210 (Goldhaber)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,794,210 (Goldhaber) |
|---|---|
| organization node, and the second type network node is an ICP node. | person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [3]. |
| *Claim 20* | |
| [20] The apparatus of claim 17, wherein the customized page file includes customized graphics, sounds, applets, links, and text. | To the extent it is found that Goldhaber does not disclose this feature expressly or inherently, it would have been obvious to combine Goldhaber with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [4]. |
| *Claim 21* | |
| [21] The apparatus of claim 17, wherein the customized page file includes customized advertisements. | Goldhaber discloses that the customized page file includes customized advertisements. To the extent it is found that Goldhaber does not disclose this feature expressly or inherently, it would have been obvious to combine Goldhaber with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [5]. |
| *Claim 22* | |
| [22a] An apparatus for providing web page customization service to a plurality of first type network nodes at a second type network node, comprising: | Goldhaber discloses an apparatus for providing web page customization service to a plurality of first type network nodes at a second type network node. To the extent it is found that Goldhaber does not disclose this feature expressly or inherently, it would have been obvious to combine Goldhaber with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [7a]. |
| [22b] means for forming at | Goldhaber discloses means for forming at least a page file for each of the first type network nodes. To |

Appendix B-6

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,794,210 (Goldhaber)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,794,210 (Goldhaber) |
|---|---|
| least a page file for each of the first type network nodes; | the extent it is found that Goldhaber does not disclose this feature expressly or inherently, it would have been obvious to combine Goldhaber with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [7b]. |
| [22c] means for forming at least a page file for the second type network node; | Goldhaber discloses means for forming at least a page file for the second type network node. To the extent it is found that Goldhaber does not disclose this feature expressly or inherently, it would have been obvious to combine Goldhaber with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [7c]. |
| [22d] means for receiving a service request from one of the first type network nodes; | Goldhaber discloses means for receiving a service request from one of the first type network nodes. To the extent it is found that Goldhaber does not disclose this feature expressly or inherently, it would have been obvious to combine Goldhaber with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [7d]. |
| [22e] means for determining whether the first type network node participates in the web page customization service; | Goldhaber discloses means for determining whether the first type network node participates in the web page customization service. To the extent it is found that Goldhaber does not disclose this feature expressly or inherently, it would have been obvious to combine Goldhaber with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [7e]. |
| [22f] means for forming a customized page file for the | Goldhaber discloses means for forming a customized page file for the service request by including the page file formed for the first type network node within the page file formed for the second type |

Appendix B-6

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,794,210 (Goldhaber)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,794,210 (Goldhaber) |
|---|---|
| service request by including the page file formed for the first type network node within the page file formed for the second type network node, if the first type network node participates in the web page customization service; and | network node, if the first type network node participates in the web page customization service. To the extent it is found that Goldhaber does not disclose this feature expressly or inherently, it would have been obvious to combine Goldhaber with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [7f]. |
| [22g] means for forming a page file for the service request by using the page file formed for the second type network node, if the first type network node does not participate in the web page customization service. | Goldhaber discloses means for forming a page file for the service request by using the page file formed for the second type network node, if the first type network node does not participate in the web page customization service. To the extent it is found that Goldhaber does not disclose this feature expressly or inherently, it would have been obvious to combine Goldhaber with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [7g]. |
| *Claim 23* | |
| [23] The apparatus of claim 22, wherein the first type network nodes are ISP nodes, and the second type network node is an ICP node. | Goldhaber discloses that the first type network nodes are ISP nodes, and the second type network node is an ICP node. To the extent it is found that Goldhaber does not disclose this feature expressly or inherently, it would have been obvious to combine Goldhaber with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [8]. |
| *Claim 24* | |
| [24] The apparatus of claim 22, wherein the first type | Goldhaber discloses that the first type network nodes are organization nodes, and the second type network node is an ICP node. To the extent it is found that Goldhaber does not disclose this feature |

Appendix B-6

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,794,210 (Goldhaber)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,794,210 (Goldhaber) |
|---|---|
| network nodes are organization nodes, and the second type network node is an ICP node. | expressly or inherently, it would have been obvious to combine Goldhaber with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [9]. |
| *Claim 25* | |
| [25] The apparatus of claim 22, wherein the customized page file includes customized graphics, sounds, applets, links, and text. | To the extent it is found that Goldhaber does not disclose this feature expressly or inherently, it would have been obvious to combine Goldhaber with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [10]. |
| *Claim 26* | |
| [26] The apparatus of claim 25, wherein the customized page file includes customized advertisements. | Goldhaber discloses that the customized page file includes customized advertisements. To the extent it is found that Goldhaber does not disclose this feature expressly or inherently, it would have been obvious to combine Goldhaber with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [11]. |
| *Claim 27* | |
| [27a] An apparatus for providing web page customization service to a plurality of first type network nodes at a second type network node, comprising: | Goldhaber discloses an apparatus for providing web page customization service to a plurality of first type network nodes at a second type network node. To the extent it is found that Goldhaber does not disclose this feature expressly or inherently, it would have been obvious to combine Goldhaber with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [13a]. |

Appendix B-6

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,794,210 (Goldhaber)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,794,210 (Goldhaber) |
|---|---|
| [27b] means for forming a plurality of advertisements for the first type network nodes; | Goldhaber discloses means for forming a plurality of advertisements for the first type network nodes. To the extent it is found that Goldhaber does not disclose this feature expressly or inherently, it would have been obvious to combine Goldhaber with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [13b]. |
| [27c] means for forming at least a page file for the second type network node; | Goldhaber discloses means for forming at least a page file for the second type network node. To the extent it is found that Goldhaber does not disclose this feature expressly or inherently, it would have been obvious to combine Goldhaber with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [13c]. |
| [27d] means for receiving a service request from one of the first type network nodes; | Goldhaber discloses means for receiving a service request from one of the first type network nodes. To the extent it is found that Goldhaber does not disclose this feature expressly or inherently, it would have been obvious to combine Goldhaber with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [13d]. |
| [27e] means for identifying advertisements for the first type network node; and | Goldhaber discloses means for identifying advertisements for the first type network node. To the extent it is found that Goldhaber does not disclose this feature expressly or inherently, it would have been obvious to combine Goldhaber with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [13e]. |
| [27f] means for forming a customized page file for the | Goldhaber discloses means for forming a customized page file for the first type network node by including the identified advertisements within the page file formed for the second type network node. |

**Appendix B-6**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,794,210 (Goldhaber)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,794,210 (Goldhaber) |
|---|---|
| first type network node by including the identified advertisements within the page file formed for the second type network node. | To the extent it is found that Goldhaber does not disclose this feature expressly or inherently, it would have been obvious to combine Goldhaber with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [13f]. |
| *Claim 28* | |
| [28] The apparatus of claim 27, wherein the first type network nodes are ISP nodes, and the second type network node is an ICP node. | Goldhaber discloses that the first type network nodes are ISP nodes, and the second type network node is an ICP node. To the extent it is found that Goldhaber does not disclose this feature expressly or inherently, it would have been obvious to combine Goldhaber with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [14]. |
| *Claim 29* | |
| [29] The apparatus of claim 27, wherein the first type network nodes are organization nodes, and the second type network node is an ICP node. | Goldhaber discloses that the first type network nodes are organization nodes, and the second type network node is an ICP node. To the extent it is found that Goldhaber does not disclose this feature expressly or inherently, it would have been obvious to combine Goldhaber with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [15]. |
| *Claim 30* | |
| [30] The apparatus of claim 27, wherein the identified advertisements do not cause negative impact on the owner of the first type network | Goldhaber discloses that the identified advertisements do not cause negative impact on the owner of the first type network node. To the extent it is found that Goldhaber does not disclose this feature expressly or inherently, it would have been obvious to combine Goldhaber with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |

**Appendix B-6**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,794,210 (Goldhaber)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,794,210 (Goldhaber) |
|---|---|
| node. | *See* claim limitation [16]. |

**Appendix B-7**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,422,577 Over U.S. Patent No. 5,347,632 (Davis)**

U.S. Patent No. 5,796,952 to Davis et al. ("Davis") issued from a U.S. patent application filed on March 21, 1997 and qualifies as prior art at least under 35 U.S.C. § 102(e).

Claims 1-30 of U.S. Patent No. 6,442,577 are anticipated by Davis.

In the alternative, each of claims 1-30 of the '577 patent would have been obvious over Davis standing alone or in view of the knowledge of a person of ordinary skill and/or one or more other references, as detailed in Appendix C.

This Exhibit is based in whole or in part on the present understanding of positions taken by PageMelding regarding the coverage, scope and construction of the asserted claims to the extent those positions can be deduced from PageMelding's contentions pursuant to Patent Local Rule 3-1 served on August 3, 2012. Nothing herein is an admission that PageMelding's infringement contentions are correct, an admission that Plaintiff's apparent claim constructions are correct, or an admission that ESPN's technology infringes any asserted claim.

**Appendix B-7**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,422,577 Over U.S. Patent No. 5,347,632 (Davis)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,796,952 (Davis) |
|---|---|
| *Claim 1* | |
| [1a] A method for dynamically forming customized web pages for a first type network node at a second type network node, comprising the steps of: | Davis discloses a method for dynamically forming customized web pages for a first type network node at a second type network node.<br><br>For example, Davis discloses dynamically forming customized with content and advertisements targeted to the requester, based on information obtained by tracking the requester, where the requester accesses the Internet, e.g., through a direct connection or an ISP.<br><br>*See* Abstract:<br><br>A method for monitoring client interaction with a resource downloaded from a server in a computer network includes the steps of using a client to specify an address of a resource located on a first server, downloading a file corresponding to the resource from the first server in response to specification of the address, using the client to specify an address of a first executable program located on a second server, the address of the first executable program being embedded in the file downloaded from the first server, the first executable program including a software timer for monitoring the amount of time the client spends interacting with and displaying the file downloaded from the first server, downloading the first executable program from the second server to run on the client so as to determine the amount of time the client interacts with the file downloaded from the first server, using a server to acquire client identifying indicia from the client, and uploading the amount of time determined by the first executable program to a third server.  The first executable program may also monitor time, keyboard events, mouse events, and the like, in order to |

**Appendix B-7**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,422,577 Over U.S. Patent No. 5,347,632 (Davis)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,796,952 (Davis) |
|---|---|
| | track choices and selections made by a user in the file, and may execute upon the occurrence of a predetermined event, as well as monitoring or determining the amount of information downloaded by the client. The monitored information and client identifying indicia is stored on a database in a server for use in analysis and for automatically serving out files assembled according to user interests and preferences.<br><br>*See also* col. 3, lines 14-38:<br><br>For example, one of the largest public networks, the "Internet", has become an extremely popular advertising tool. Many companies have their own Internet "Web sites" and have also purchased advertising space within more popular Web sites of other companies. For instance, many advertisers purchase so-called "advertising banner" (or "ad banner") space within the Web page of a popular site, thereby allowing consumers to "click-through" (i.e., specify a link) to the Web site of the advertiser. In many cases, the use of an ad banner substantially increases the advertiser's exposure. Using the limited monitoring techniques available to Internet servers, however, it is difficult to determine the effectiveness of individual Web sites and ad banners. For instance, known monitoring techniques are generally limited to determining the number of times a Web page was downloaded. Similar techniques are used to determine the number of times an ad banner (which is embedded inside a Web page) has been displayed, and how many times the banner was "clicked" on to visit the Web site of the advertiser.<br><br>*See also* col. 4, line 64 to col. 5, line 13: |

Appendix B-7

**Invalidity of the Asserted Claims of U.S. Patent No. 6,422,577 Over U.S. Patent No. 5,347,632 (Davis)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,796,952 (Davis) |
|---|---|
| | The acquired information is preferably stored on a server and used to build historical profiles of individual users, to serve out highly targeted information based upon user profiles, as well as to extract information about how much data was downloaded by a respective client, and how long or how often specific files were displayed or in use by the client. Preferably, the tracking program is implemented in a network based upon the client/server model, and may be implemented in a public network such as the Internet or World Wide Web.  The tracking program may monitor use of and interaction with any of the resources downloaded from a server, including an executable program, a database file, an interactive game, a multimedia application, and the like.  In the case of the Internet, for example, the tracked resource may, for example, be a file such as a Web page or part of a Web page (such as an ad banner).<br><br>*See also* col. 6, lines 52-59:<br><br>FIG. 1 illustrates a known computer network based on the client-server model, such as the Internet. The network comprises one or more "servers" 10 which are accessible by "clients" 12, such as personal computers, which, in the case of the Internet, is provided through a private access provider 14 (such as Digital Telemedia in New York City) or an on-line service provider 16 (such as America On-Line, Prodigy, CompuServe, the Microsoft Network, and the like).<br><br>*See also* col. 13, line 63 to col. 14, line 21.<br><br>For example, when a user is exposed to an ad banner having information targeted to their particular interests, the user is more likely to interact with that ad banner for a longer period of time and on a |

- 4 -

**Appendix B-7**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,422,577 Over U.S. Patent No. 5,347,632 (Davis)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,796,952 (Davis) |
|---|---|
| | more frequent basis, thereby increasing the value of that ad banner. In accordance with the present invention, in order to learn the particular interests of respective users, an ad banner may include specific information permitting the user to interact in different ways with the banner. The ad banner may have pull-down menu options, clickable buttons or "hot-spots", keyboard input, or any number of input mechanisms, whose selection or action upon in a designated manner causes corresponding events to take place in the ad banner such as the generation or synthesis of sounds, the display of images, video, or graphic animations, or the presentation of different types of information to the user, perhaps with additional choices. Such information may, for example, include links to interactive games, links to entertainment information, sports-related games and/or trivia, and the like, or information concerning particular goods and services, or means by which to order or purchase specific goods and services. The more choices that are made available, the more information that can be acquired concerning the user's particular interests. Of course, an unlimited number of possibilities are available, depending upon the application, and an exhaustive listing of such possibilities cannot be provided herein. <br><br> *See also* col. 14, line 47 to col. 15, line 5. <br><br> The tracked information may be used to assemble resources geared toward the user's interests. Based upon the historic user profiles created in the server database, downloading of information to the same client on a subsequent visit to the same or different Web page may be done on a more intelligent basis. For example, users who have previously expressed an interest in sports-related trivia (as indicated by their |

- 5 -

**Appendix B-7**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,422,577 Over U.S. Patent No. 5,347,632 (Davis)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,796,952 (Davis) |
|---|---|
| | previously tracked behavior) may be served with information targeted to audiences interested in sports. Similarly, users who have expressed greater interest in technology-related may be served with technology-related information that would be of much less interest to other users. The assembly of a resource such as a Web page may be easily accomplished. For example, the HTML document of the Web page may include a plurality of embedded resources. Previous choices made by a user on a particular client computer and stored in a user profile database may be used to determine which of the resources is to be downloaded to that client using simple logical processing instructions. For instance, a user profile which indicates that a user has a greater interest in sports-related information than in historical information may be used to download sports-related resources, such as GIF-type images and advertisements. Since the user has previously expressed a greater interest in sports, sports-related advertisements may therefore be targeted to that user. <br><br> *See also* col. 18, lines 45-62: <br><br> Also, while the preferred embodiments have been described in the context of Web browser software, the techniques of the invention apply equally whether the user accesses a local area network, a wide area network, a public network, a private network, the Internet, the World Wide Web, or the like, and whether access to the network is achieved using a direct connection or an indirect connection. For example, in connection with the World Wide Web, the teachings of the present invention apply whether a network connection is obtained via a direct Internet connection or indirectly through some on-line service provider. Thus, the "computer network" in which the invention is implemented |

**Appendix B-7**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,422,577 Over U.S. Patent No. 5,347,632 (Davis)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,796,952 (Davis) |
|---|---|
|  | should be broadly construed to include any computer network in which one or more clients is connectable to one or more servers, including those networks based upon the client-server model in which a client can link to a "remote" document (even if that document is available on the same machine, system, or "Intranet"). |
|  | *See* col. 15, lines 5-41. |
|  | A particular implementation of this mechanism is illustrated in FIG. 6. A Web page is requested by the client from Server A (S601). This Web page contains text, as well as embedded images which must be fetched from Server A (S602) and rendered (S605). In addition, the Web page contains embedded URLs that point to two resources on Server B. The first resource is a first CGI script 1, which is embedded inside the Web page using the standard HTML <IMG> tag (S603). In attempting to render the Web page, the client will automatically fetch the resource associated with the <IMG> tag on Server B, which will result in execution of the CGI script 1. This CGI script 1 can capture client information such as Network ID or Client ID (S603A). The CGI script also returns a transparent image (S603B). |
|  | The other resource on Server B is a Java applet, which is a combination ad banner and tracking program. This may be stored on any server. In attempting to render the Web page, the client will automatically fetch the Java code (S604), download, initialize, and start operation of the applet (S607, S608). After the applet is initialized, it contacts Server B to obtain other resources it needs in order to display images, play sounds, or control its overall look and behavior. In fact, the applet may obtain these resources by executing one or more CGI scripts or other processes that reside on Server B or elsewhere (S607). Based on |

Appendix B-7

**Invalidity of the Asserted Claims of U.S. Patent No. 6,422,577 Over U.S. Patent No. 5,347,632 (Davis)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,796,952 (Davis) |
|---|---|
| | information provided to these scripts through standard HTTP methods, including client information (S607A), such as network and client IDs, any other information such as the URL of the Web page, as well as information captured by the CGI script 1, and the previously constructed historical database profile (S607B), different information (images, sounds, text, etc.) may be returned to the applet. Such information can therefore be selected by the scripts based on Network and/or Client ID, the URL of the Web page, and the previously constructed client profile. This may be accomplished in the manner described above.<br><br>*See also* Figs. 1-7 and associated text.<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [1b] forming at least a page file for the first type network node; | Davis discloses forming at least a page file for the first type network node.<br><br>*See* col. 4, lines 33-36.<br><br>It is still yet another object of the present invention to provide means for assembling a resource, such as a Web page or a highly targeted ad banner, in accordance with a historic user profile.<br><br>*See also* col. 6, lines 52-67.<br><br>FIG. 1 illustrates a known computer network based on the client-server model, such as the Internet. The network comprises one or more "servers" 10 which are accessible by "clients" 12, such as personal |

- 8 -

Appendix B-7

**Invalidity of the Asserted Claims of U.S. Patent No. 6,422,577 Over U.S. Patent No. 5,347,632 (Davis)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,796,952 (Davis) |
|---|---|
| | computers, which, in the case of the Internet, is provided through a private access provider 14 (such as Digital Telemedia in New York City) or an on-line service provider 16 (such as America On-Line, Prodigy, CompuServe, the Microsoft Network, and the like). Each of the clients 12 may run a "Web browser", which is a known software tool used to access the Web via a connection obtained through an Internet access provider. The servers allow access to various network resources. In the Internet, for example, a Web server 10 allows access to so-called "Web sites" which comprise resources in various different formats. A location of a resource on a server is identified by a so-called Uniform Resource Locator, or URL.<br><br>*See also* col. 7, line 66 to col. 8, line 20.<br><br>As noted above, the Internet includes a public network using the Internet Protocol (TCP/IP) and includes servers 10 which are accessible by clients 12. When a Web browser 62 is used to access a file on a server 10, the server 10 may send information including graphics, instruction sets, sound and video files in addition to HTML documents (Web pages) to the requesting client. In accordance with the present invention, a tracking program is embedded in a resource, such as an HTML document which is sent from a server to a client based on a TCP/IP request. The tracking program may originate on a different server than the resource, in which case it may be obtained by the client through a TCP/IP request to the other server. The tracking program executes on a client machine, and is stored, for example, in RAM. The tracking program may monitor various indicia, such as time, mouse events, keyboard events, and the like, in order to track a user's interaction with the Web page. Thus, the tracking program may |

Appendix B-7

**Invalidity of the Asserted Claims of U.S. Patent No. 6,422,577 Over U.S. Patent No. 5,347,632 (Davis)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,796,952 (Davis) |
|---|---|
| | simply monitor the amount of time the user spends interacting with the Web page, or may monitor details of choices (such as links) made by individual users within a particular Web page. <br><br> *See also* col. 11, line 34 to col. 12, line 4. <br><br> A more particular embodiment of this aspect of the invention is illustrated in FIG. 4. A Web page (or HTML document) is requested by the client from a first server A, using TCP/IP and HTTP protocols (S401). This HTML document contains text, as well as embedded URLs that point to graphical images (e.g. GIF format image files) also located on the first server A. The images, in general, may be located on any HTTP server on the Internet. These images are embedded inside the Web page using the known HTML <IMG> tag, which allows one to specify the source URL for an image, as well as additional information such as size and other layout parameters. These images will then be fetched by the client using TCP/IP and HTTP protocols from Server A (S402) and rendered on the browser (S405). The Web page (or other Web or HTML document) additionally includes embedded URLs which point to two resources that reside on a second server "B". One of the resources is an executable program, which executes on Server B, and is a CGI script. This resource is also embedded inside the Web page using the <IMG> tag. Thus, in attempting to render the Web page, the client will automatically fetch this resource (S403), which forces execution of the CGI script on the second Server B and the return of information output from the script to the client. In this case, the information returned to the client is formatted as an GIF image type which is extremely small as well as completely transparent (S403B). When the CGI script executes, it may |

Appendix B-7

**Invalidity of the Asserted Claims of U.S. Patent No. 6,422,577 Over U.S. Patent No. 5,347,632 (Davis)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,796,952 (Davis) |
|---|---|
| | collect information from the HTTP request header such as browser type, network ID (IP address), and if set, client ID ("cookie"), as well as any additional available information such as time of execution and the URL of the Web page, and store it in a database--for example using SQL (S403A, S404).  In step S403B, the CGI script returns information to the client, which includes a response header which indicates (among other information), that the return type is an image, that this resource should not be cached by the client, and if no client ID is set and the client supports it, that a client ID is to be set to a value generated by the script.<br><br>*See also* col. 13, lines 5-17.<br><br>Additionally, if the above-mentioned tracking program is attached to an ad banner that is embedded in multiple Web pages across different Web sites (as is typically the case with ad banners), the database thus constructed may contain information about how often and for how long the different pages that contained the ad banner were displayed, as well as more specific information about users that visited those pages.  With this information, advertisers could determine the accuracy of data supplied to them by Web site administrators about the number of times their ad banner was displayed, as well as learn how long the Web page containing the ad banner was displayed--a number that would be of great use in determining the effectiveness of their advertising.<br><br>*See also* col. 15, lines 6-41.<br><br>A particular implementation of this mechanism is illustrated in FIG. 6.  A Web page is requested by the client from Server A (S601).  This Web page contains text, as well as embedded images which must be |

- 11 -

**Appendix B-7**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,422,577 Over U.S. Patent No. 5,347,632 (Davis)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,796,952 (Davis) |
|---|---|
|  | fetched from Server A (S602) and rendered (S605). In addition, the Web page contains embedded URLs that point to two resources on Server B. The first resource is a first CGI script 1, which is embedded inside the Web page using the standard HTML <IMG> tag (S603). In attempting to render the Web page, the client will automatically fetch the resource associated with the <IMG> tag on Server B, which will result in execution of the CGI script 1. This CGI script 1 can capture client information such as Network ID or Client ID (S603A). The CGI script also returns a transparent image (S603B). The other resource on Server B is a Java applet, which is a combination ad banner and tracking program. This may be stored on any server. In attempting to render the Web page, the client will automatically fetch the Java code (S604), download, initialize, and start operation of the applet (S607, S608). After the applet is initialized, it contacts Server B to obtain other resources it needs in order to display images, play sounds, or control its overall look and behavior. In fact, the applet may obtain these resources by executing one or more CGI scripts or other processes that reside on Server B or elsewhere (S607). Based on information provided to these scripts through standard HTTP methods, including client information (S607A), such as network and client IDs, any other information such as the URL of the Web page, as well as information captured by the CGI script 1, and the previously constructed historical database profile (S607B), different information (images, sounds, text, etc.) may be returned to the applet. Such information can therefore be selected by the scripts based on Network and/or Client ID, the URL of the Web page, and the previously constructed client profile. This may be accomplished in the manner described above. |

Appendix B-7

**Invalidity of the Asserted Claims of U.S. Patent No. 6,422,577 Over U.S. Patent No. 5,347,632 (Davis)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,796,952 (Davis) |
|---|---|
| | *See also* col. 13, line 63 to col. 14, line 21.<br><br>For example, when a user is exposed to an ad banner having information targeted to their particular interests, the user is more likely to interact with that ad banner for a longer period of time and on a more frequent basis, thereby increasing the value of that ad banner. In accordance with the present invention, in order to learn the particular interests of respective users, an ad banner may include specific information permitting the user to interact in different ways with the banner. The ad banner may have pull-down menu options, clickable buttons or "hot-spots", keyboard input, or any number of input mechanisms, whose selection or action upon in a designated manner causes corresponding events to take place in the ad banner such as the generation or synthesis of sounds, the display of images, video, or graphic animations, or the presentation of different types of information to the user, perhaps with additional choices. Such information may, for example, include links to interactive games, links to entertainment information, sports-related games and/or trivia, and the like, or information concerning particular goods and services, or means by which to order or purchase specific goods and services. The more choices that are made available, the more information that can be acquired concerning the user's particular interests. Of course, an unlimited number of possibilities are available, depending upon the application, and an exhaustive listing of such possibilities cannot be provided herein.<br><br>*See also* col. 14, line 47 to col. 15, line 5.<br><br>The tracked information may be used to assemble resources geared toward the user's interests. Based upon the historic user profiles created |

- 13 -

**Appendix B-7**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,422,577 Over U.S. Patent No. 5,347,632 (Davis)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,796,952 (Davis) |
|---|---|
| | in the server database, downloading of information to the same client on a subsequent visit to the same or different Web page may be done on a more intelligent basis. For example, users who have previously expressed an interest in sports-related trivia (as indicated by their previously tracked behavior) may be served with information targeted to audiences interested in sports. Similarly, users who have expressed greater interest in technology may be served with technology-related information that would be of much less interest to other users. The assembly of a resource such as a Web page may be easily accomplished. For example, the HTML document of the Web page may include a plurality of embedded resources. Previous choices made by a user on a particular client computer and stored in a user profile database may be used to determine which of the resources is to be downloaded to that client using simple logical processing instructions. For instance, a user profile which indicates that a user has a greater interest in sports-related information than in historical information may be used to download sports-related resources, such as GIF-type images and advertisements. Since the user has previously expressed a greater interest in sports, sports-related advertisements may therefore be targeted to that user.<br><br>*See also* col. 18, lines 45-62:<br><br>Also, while the preferred embodiments have been described in the context of Web browser software, the techniques of the invention apply equally whether the user accesses a local area network, a wide area network, a public network, a private network, the Internet, the World Wide Web, or the like, and whether access to the network is achieved using a direct connection or an indirect connection. For example, in |

**Appendix B-7**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,422,577 Over U.S. Patent No. 5,347,632 (Davis)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,796,952 (Davis) |
|---|---|
| | connection with the World Wide Web, the teachings of the present invention apply whether a network connection is obtained via a direct Internet connection or indirectly through some on-line service provider. Thus, the "computer network" in which the invention is implemented should be broadly construed to include any computer network in which one or more clients is connectable to one or more servers, including those networks based upon the client-server model in which a client can link to a "remote" document (even if that document is available on the same machine, system, or "Intranet"). *See also* Figs. 1, 3-7 and associated text. To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [1c] forming at least a page file for the second type network node; | Davis discloses forming at least a page file for the second type network node. *See also* col. 3, lines 14-38: For example, one of the largest public networks, the "Internet", has become an extremely popular advertising tool. Many companies have their own Internet "Web sites" and have also purchased advertising space within more popular Web sites of other companies. For instance, many advertisers purchase so-called "advertising banner" (or "ad banner") space within the Web page of a popular site, thereby allowing consumers to "click-through" (i.e., specify a link) to the Web site of the advertiser. In many cases, the use of an ad banner substantially increases the advertiser's exposure. Using the limited monitoring techniques available to Internet servers, however, it is difficult to |

**Appendix B-7**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,422,577 Over U.S. Patent No. 5,347,632 (Davis)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,796,952 (Davis) |
|---|---|
| | determine the effectiveness of individual Web sites and ad banners. For instance, known monitoring techniques are generally limited to determining the number of times a Web page was downloaded. Similar techniques are used to determine the number of times an ad banner (which is embedded inside a Web page) has been displayed, and how many times the banner was "clicked" on to visit the Web site of the advertiser.<br><br>*See* col. 4, lines 33-36.<br><br>It is still yet another object of the present invention to provide means for assembling a resource, such as a Web page or a highly targeted ad banner, in accordance with a historic user profile.<br><br>*See also* col. 6, lines 52-67.<br><br>FIG. 1 illustrates a known computer network based on the client-server model, such as the Internet.  The network comprises one or more "servers" 10 which are accessible by "clients" 12, such as personal computers, which, in the case of the Internet, is provided through a private access provider 14 (such as Digital Telemedia in New York City) or an on-line service provider 16 (such as America On-Line, Prodigy, CompuServe, the Microsoft Network, and the like).  Each of the clients 12 may run a "Web browser", which is a known software tool used to access the Web via a connection obtained through an Internet access provider.  The servers allow access to various network resources.  In the Internet, for example, a Web server 10 allows access to so-called "Web sites" which comprise resources in various different formats.  A location of a resource on a server is identified by a so- |

**Appendix B-7**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,422,577 Over U.S. Patent No. 5,347,632 (Davis)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,796,952 (Davis) |
|---|---|
| | called Uniform Resource Locator, or URL. *See also* col. 7, lines 19-23. A typical Web page is an HTML document with text, "links" that a user may activate (e.g. "click on"), as well as embedded URLs pointing to resources (such as images, video or sound) that the client must fetch to fully render the Web Page in a browser. *See also* col. 7, line 66 to col. 8, line 20. As noted above, the Internet includes a public network using the Internet Protocol (TCP/IP) and includes servers 10 which are accessible by clients 12. When a Web browser 62 is used to access a file on a server 10, the server 10 may send information including graphics, instruction sets, sound and video files in addition to HTML documents (Web pages) to the requesting client. In accordance with the present invention, a tracking program is embedded in a resource, such as an HTML document which is sent from a server to a client based on a TCP/IP request. The tracking program may originate on a different server than the resource, in which case it may be obtained by the client through a TCP/IP request to the other server. The tracking program executes on a client machine, and is stored, for example, in RAM. The tracking program may monitor various indicia, such as time, mouse events, keyboard events, and the like, in order to track a user's interaction with the Web page. Thus, the tracking program may simply monitor the amount of time the user spends interacting with the Web page, or may monitor details of choices (such as links) made by individual users within a particular Web page. |

Appendix B-7

**Invalidity of the Asserted Claims of U.S. Patent No. 6,422,577 Over U.S. Patent No. 5,347,632 (Davis)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,796,952 (Davis) |
|---|---|
| | *See also* col. 11, line 34 to col. 12, line 4.<br><br>A more particular embodiment of this aspect of the invention is illustrated in FIG. 4. A Web page (or HTML document) is requested by the client from a first server A, using TCP/IP and HTTP protocols (S401). This HTML document contains text, as well as embedded URLs that point to graphical images (e.g. GIF format image files) also located on the first server A. The images, in general, may be located on any HTTP server on the Internet. These images are embedded inside the Web page using the known HTML <IMG> tag, which allows one to specify the source URL for an image, as well as additional information such as size and other layout parameters. These images will then be fetched by the client using TCP/IP and HTTP protocols from Server A (S402) and rendered on the browser (S405). The Web page (or other Web or HTML document) additionally includes embedded URLs which point to two resources that reside on a second server "B". One of the resources is an executable program, which executes on Server B, and is a CGI script. This resource is also embedded inside the Web page using the <IMG> tag. Thus, in attempting to render the Web page, the client will automatically fetch this resource (S403), which forces execution of the CGI script on the second Server B and the return of information output from the script to the client. In this case, the information returned to the client is formatted as an GIF image type which is extremely small as well as completely transparent (S403B). When the CGI script executes, it may collect information from the HTTP request header such as browser type, network ID (IP address), and if set, client ID ("cookie"), as well as any additional available information such as time of execution and the URL of the Web page, and store it in a database--for example using |

**Appendix B-7**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,422,577 Over U.S. Patent No. 5,347,632 (Davis)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,796,952 (Davis) |
|---|---|
| | SQL (S403A, S404).  In step S403B, the CGI script returns information to the client, which includes a response header which indicates (among other information), that the return type is an image, that this resource should not be cached by the client, and if no client ID is set and the client supports it, that a client ID is to be set to a value generated by the script.<br><br>*See also* col. 15, lines 6-41.<br><br>A particular implementation of this mechanism is illustrated in FIG. 6.  A Web page is requested by the client from Server A (S601).  This Web page contains text, as well as embedded images which must be fetched from Server A (S602) and rendered (S605).  In addition, the Web page contains embedded URLs that point to two resources on Server B.  The first resource is a first CGI script 1, which is embedded inside the Web page using the standard HTML <IMG> tag (S603).  In attempting to render the Web page, the client will automatically fetch the resource associated with the <IMG> tag on Server B, which will result in execution of the CGI script 1.  This CGI script 1 can capture client information such as Network ID or Client ID (S603A).  The CGI script also returns a transparent image (S603B).  The other resource on Server B is a Java applet, which is a combination ad banner and tracking program.  This may be stored on any server.  In attempting to render the Web page, the client will automatically fetch the Java code (S604), download, initialize, and start operation of the applet (S607, S608).  After the applet is initialized, it contacts Server B to obtain other resources it needs in order to display images, play sounds, or control its overall look and behavior.  In fact, the applet may obtain these resources by executing one or more CGI scripts or other |

**Appendix B-7**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,422,577 Over U.S. Patent No. 5,347,632 (Davis)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,796,952 (Davis) |
|---|---|
| | processes that reside on Server B or elsewhere (S607). Based on information provided to these scripts through standard HTTP methods, including client information (S607A), such as network and client IDs, any other information such as the URL of the Web page, as well as information captured by the CGI script 1, and the previously constructed historical database profile (S607B), different information (images, sounds, text, etc.) may be returned to the applet. Such information can therefore be selected by the scripts based on Network and/or Client ID, the URL of the Web page, and the previously constructed client profile. This may be accomplished in the manner described above.<br><br>*See also* Figs. 1, 3-7 and associated text.<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [1d] receiving a service request from the first type network node; | Davis discloses receiving a service request from the first type network node.<br><br>For example, Davis discloses that a request for a web page is made using the HTTP and TCP/IP protocols over the Internet.<br><br>*See* col. 7, lines 9-13.<br><br>    Links are specified via a Uniform Resource Locator or "URL". Upon specification of a link, the client makes a TCP/IP request to the server and receives information that was specified in that URL (for example another "Web page" that was formatted according to HTML) in return. |

Appendix B-7

**Invalidity of the Asserted Claims of U.S. Patent No. 6,422,577 Over U.S. Patent No. 5,347,632 (Davis)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,796,952 (Davis) |
|---|---|
|  | *See also* col. 7, line 66 to col. 8, line 20. <br><br> As noted above, the Internet includes a public network using the Internet Protocol (TCP/IP) and includes servers 10 which are accessible by clients 12.  When a Web browser 62 is used to access a file on a server 10, the server 10 may send information including graphics, instruction sets, sound and video files in addition to HTML documents (Web pages) to the requesting client.  In accordance with the present invention, a tracking program is embedded in a resource, such as an HTML document which is sent from a server to a client based on a TCP/IP request.  The tracking program may originate on a different server than the resource, in which case it may be obtained by the client through a TCP/IP request to the other server.  The tracking program executes on a client machine, and is stored, for example, in RAM.  The tracking program may monitor various indicia, such as time, mouse events, keyboard events, and the like, in order to track a user's interaction with the Web page.  Thus, the tracking program may simply monitor the amount of time the user spends interacting with the Web page, or may monitor details of choices (such as links) made by individual users within a particular Web page. <br><br> *See also* col. 8, line 53 to col. 9, line 10. <br><br> As noted above, a client process, such as a Web browser running on the client machine, uses a TCP/IP connection to pass a request to a Web server running an HTTP service (or "daemon" under the UNIX operating system).  The HTTP service then responds to the request, typically by sending a Web page formatted in the Hypertext Markup Language, or HTML, to the browser.  The browser displays the Web page using local resources (e.g., fonts and colors).  Unless the tracking |

- 21 -

Appendix B-7

**Invalidity of the Asserted Claims of U.S. Patent No. 6,422,577 Over U.S. Patent No. 5,347,632 (Davis)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,796,952 (Davis) |
|---|---|
| | program is already resident in the client, it is embedded in the Web page and downloaded to the client along with the Web page. The tracking program is executed after any required initialization has occurred. The tracking program may monitor the length of time the user remains in the Web page, or any one or more portions thereof, and may track some or all mouse and keyboard events to provide meaningful data to the server concerning the user's interaction with the Web page. In its simplest form, the tracking program is a timer program linked to an HTML document and is downloaded and executed on a client when the HTML document is served to the client in response to a client TCP/IP request. During or after the client formats and displays the Web page specified by the HTML document, the tracking program begins a software timer to monitor the amount of time the Web page is displayed on the client computer.<br><br>*See also* col. 9, lines 16-30.<br><br>As illustrated, for example, in FIG. 3, the client issues a TCP/IP request for a Web page located on a Server A (S301). After a handshaking period, the Server A begins to send the HTML formatted document, which contains an embedded URL referencing the tracking program. The client additionally issues a TCP/IP request to the Server B referenced by the embedded URL in order to obtain the tracking program (S302). The client also makes any other TCP/IP requests (S303) to obtain any other resources (such as images, video or sound) needed in order to fully render the Web Page (S304). Each of such resources are typically referenced by individual URLs embedded in the HTML document. These requests need not occur in any specific order and may reference resources located on any server. In addition, the |

**Appendix B-7**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,422,577 Over U.S. Patent No. 5,347,632 (Davis)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,796,952 (Davis) |
|---|---|
| | information requested may be received in any order. When the tracking program has been obtained, the client process (i.e., the Web browser) saves the tracking program to RAM (S305). After any necessary initialization, the tracking program initiates a software timer to monitor the amount of time the Web page is displayed (S306). When the client leaves the Web page (S307), the tracking program calculates the amount of time the user has interacted with and displayed the Web page and sends this information to a server. Other available client information, such as the network ID and client ID, or so-called "Cookie" of the client, is also sent to the server (S308). If desired, other information concerning the client computer may be automatically acquired and sent to the server, such as the type of hardware in the client computer and various resources that are resident on the client computer.<br><br>*See also* col. 11, line 34 to col. 12, line 4.<br><br>A more particular embodiment of this aspect of the invention is illustrated in FIG. 4. A Web page (or HTML document) is requested by the client from a first server A, using TCP/IP and HTTP protocols (S401). This HTML document contains text, as well as embedded URLs that point to graphical images (e.g. GIF format image files) also located on the first server A. The images, in general, may be located on any HTTP server on the Internet. These images are embedded inside the Web page using the known HTML <IMG> tag, which allows one to specify the source URL for an image, as well as additional information such as size and other layout parameters. These images will then be fetched by the client using TCP/IP and HTTP protocols from Server A (S402) and rendered on the browser (S405). The Web |

**Appendix B-7**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,422,577 Over U.S. Patent No. 5,347,632 (Davis)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,796,952 (Davis) |
|---|---|
|  | page (or other Web or HTML document) additionally includes embedded URLs which point to two resources that reside on a second server "B". One of the resources is an executable program, which executes on Server B, and is a CGI script. This resource is also embedded inside the Web page using the <IMG> tag. Thus, in attempting to render the Web page, the client will automatically fetch this resource (S403), which forces execution of the CGI script on the second Server B and the return of information output from the script to the client. In this case, the information returned to the client is formatted as an GIF image type which is extremely small as well as completely transparent (S403B). When the CGI script executes, it may collect information such as from the HTTP request header such as browser type, network ID (IP address), and if set, client ID ("cookie"), as well as any additional available information such as time of execution and the URL of the Web page, and store it in a database-for example using SQL (S403A, S404). In step S403B, the CGI script returns information to the client, which includes a response header which indicates (among other information), that the return type is an image, that this resource should not be cached by the client, and if no client ID is set and the client supports it, that a client ID is to be set to a value generated by the script.<br><br>*See also* col. 15, lines 6-41.<br><br>A particular implementation of this mechanism is illustrated in FIG. 6. A Web page is requested by the client from Server A (S601). This Web page contains text, as well as embedded images which must be fetched from Server A (S602) and rendered (S605). In addition, the Web page contains embedded URLs that point to two resources on |

- 24 -

**Appendix B-7**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,422,577 Over U.S. Patent No. 5,347,632 (Davis)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,796,952 (Davis) |
|---|---|
| | Server B.  The first resource is a first CGI script 1, which is embedded inside the Web page using the standard HTML <IMG> tag (S603).  In attempting to render the Web page, the client will automatically fetch the resource associated with the <IMG> tag on Server B, which will result in execution of the CGI script 1.  This CGI script 1 can capture client information such as Network ID or Client ID (S603A).  The CGI script also returns a transparent image (S603B).  The other resource on Server B is a Java applet, which is a combination ad banner and tracking program.  This may be stored on any server.  In attempting to render the Web page, the client will automatically fetch the Java code (S604), download, initialize, and start operation of the applet (S607, S608).  After the applet is initialized, it contacts Server B to obtain other resources it needs in order to display images, play sounds, or control its overall look and behavior.  In fact, the applet may obtain these resources by executing one or more CGI scripts or other processes that reside on Server B or elsewhere (S607).  Based on information provided to these scripts through standard HTTP methods, including client information (S607A), such as network and client IDs, any other information such as the URL of the Web page, as well as information captured by the CGI script 1, and the previously constructed historical database profile (S607B), different information (images, sounds, text, etc.) may be returned to the applet.  Such information can therefore be selected by the scripts based on Network and/or Client ID, the URL of the Web page, and the previously constructed client profile.  This may be accomplished in the manner described above.<br><br>*See also* col. 16, lines 22-62. |

**Appendix B-7**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,422,577 Over U.S. Patent No. 5,347,632 (Davis)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,796,952 (Davis) |
|---|---|
| | In particular, a Web page is requested by the client from Server A (S701). This Web page contains text, as well as embedded images which must be fetched from Server A (S702) and rendered (S705). In addition, the Web page contains embedded URLs that point to two resources on Server B. The first resource is a CGI script, which is embedded inside the Web page using the standard HTML <IMG> tag (S703). In attempting to render the Web page, the client will automatically fetch the resource on Server B, which will result in execution of a CGI script 1. This CGI script 1 can capture client information such as Network ID or Client ID (S703A) and returns a transparent image (S703B). The other resource on Server B is a Java applet. This may be stored on any server. In attempting to render the Web page, the client will automatically fetch the JAVA code, store it in RAM, initialize, and start operation of the applet (S707). The START method of the applet is executed and the applet takes note of the current time (S708). Thereafter, the applet contacts the Server A and, if security restrictions allow it, the applet queries the Server A for the page it is embedded in, determines its size, as well as the URLs of other embedded resources (such as images or video), and requests header information about these resources in order to determine their size (S709). In this case, the tracking program may determine the size of the fully rendered Web page, (i.e., the number of bits that must be downloaded in order to fully render the Web page). If the tracking program is part of a larger embedded application that displays information downloaded from a server (such as a live news feed applet), the tracking program can also monitor the amount of information downloaded and displayed by the applet. Before or as the user leaves the Web page (S710), the tracking program can transmit this information to Server B for storage and analysis (S711, S711A, |

**Appendix B-7**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,422,577 Over U.S. Patent No. 5,347,632 (Davis)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,796,952 (Davis) |
|---|---|
| | S711B). In this manner, it is possible to build a database of accurate information concerning how often different pages of a Web site are requested, how long they are displayed, and how much information was downloaded. This information would be of use to Web site administrators in order to judge the popularity of different Web pages, as well as for example to set advertising rates for any embedded advertisements.<br><br>*See also* Figs. 1, 3-7 and associated text.<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [1e] identifying the first type network node based on the service request; and | Davis discloses identifying the first type network node based on the service request.<br><br>For example, Davis discloses that a request for a web page is made using the HTTP and TCP/IP protocols over the Internet. Such a request includes information, such as an IP address, identifying the user and the ISP or organization through which the user accesses the Internet.<br><br>*See* col. 4, lines 24-32.<br><br>Still yet another object of the present invention is to provide means for creating a database of user profiles containing details of individual user interaction with and use of network resources including, for example, Network IDs (known as "IP address") and client IDs (known as "cookies") that have accessed particular resources, the amount of time spent by users interacting with and/or using particular resources, and details of choices created by individual users within a particular |

Appendix B-7

**Invalidity of the Asserted Claims of U.S. Patent No. 6,422,577 Over U.S. Patent No. 5,347,632 (Davis)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,796,952 (Davis) |
|---|---|
| | resource. |
| | *See also* col. 9, lines 16-30. |
| | As illustrated, for example, in FIG. 3, the client issues a TCP/IP request for a Web page located on a Server A (S301). After a handshaking period, the Server A begins to send the HTML formatted document, which contains an embedded URL referencing the tracking program. The client additionally issues a TCP/IP request to the Server B referenced by the embedded URL in order to obtain the tracking program (S302). The client also makes any other TCP/IP requests (S303) to obtain any other resources (such as images, video or sound) needed in order to fully render the Web Page (S304). Each of such resources are typically referenced by individual URLs embedded in the HTML document. These requests need not occur in any specific order and may reference resources located on any server. In addition, the information requested may be received in any order. When the tracking program has been obtained, the client process (i.e., the Web browser) saves the tracking program to RAM (S305). After any necessary initialization, the tracking program initiates a software timer to monitor the amount of time the Web page is displayed (S306). When the client leaves the Web page (S307), the tracking program calculates the amount of time the user has interacted with and displayed the Web page and sends this information to a server. Other available client information, such as the network ID and client ID, or so-called "Cookie" of the client, is also sent to the server (S308). If desired, other information concerning the client computer may be automatically acquired and sent to the server, such as the type of hardware in the client computer and various resources that are resident |

Appendix B-7

**Invalidity of the Asserted Claims of U.S. Patent No. 6,422,577 Over U.S. Patent No. 5,347,632 (Davis)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,796,952 (Davis) |
|---|---|
| | on the client computer.<br><br>*See also* col. 11, lines 13-16.<br><br>In order to store client-identifying indicia, such as a user's network ID (IP) and client ID numbers (cookies) and associated tracking information, a database is set up on a server.<br><br>*See also* col. 11, line 34 to col. 12, line 4.<br><br>A more particular embodiment of this aspect of the invention is illustrated in FIG. 4. A Web page (or HTML document) is requested by the client from a first server A, using TCP/IP and HTTP protocols (S401). This HTML document contains text, as well as embedded URLs that point to graphical images (e.g. GIF format image files) also located on the first server A. The images, in general, may be located on any HTTP server on the Internet. These images are embedded inside the Web page using the known HTML <IMG> tag, which allows one to specify the source URL for an image, as well as additional information such as size and other layout parameters. These images will then be fetched by the client using TCP/IP and HTTP protocols from Server A (S402) and rendered on the browser (S405). The Web page (or other Web or HTML document) additionally includes embedded URLs which point to two resources that reside on a second server "B". One of the resources is an executable program, which executes on Server B, and is a CGI script. This resource is also embedded inside the Web page using the <IMG> tag. Thus, in attempting to render the Web page, the client will automatically fetch this resource (S403), which forces execution of the CGI script on the second Server B and the return of information output from the script to |

Appendix B-7

**Invalidity of the Asserted Claims of U.S. Patent No. 6,422,577 Over U.S. Patent No. 5,347,632 (Davis)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,796,952 (Davis) |
|---|---|
| | the client.  In this case, the information returned to the client is formatted as an GIF image type which is extremely small as well as completely transparent (S403B).  When the CGI script executes, it may collect information from the HTTP request header such as browser type, network ID (IP address), and if set, client ID ("cookie"), as well as any additional available information such as time of execution and the URL of the Web page, and store it in a database-for example using SQL (S403A, S404).  In step S403B, the CGI script returns information to the client, which includes a response header which indicates (among other information), that the return type is an image, that this resource should not be cached by the client, and if no client ID is set and the client supports it, that a client ID is to be set to a value generated by the script.<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter.  *See* Appendix C. |
| [1f] forming a customized page file formed for the first type network node by including the page file formed for the first type network node within the page file for the second type network node. | Davis discloses forming a customized page file formed for the first type network node by including the page file formed for the first type network node within the page file for the second type network node.<br><br>*See* col. 3, lines 33-42.<br><br>Generally, an ad banner is embedded inside a Web page located on a first server through the use of the known HTML <IMG> tag.  When a client machine passes a TCP/IP request for the Web page to the first server, the Web page is downloaded to the client, including the ad banner embedded using the <IMG> tag.  The <IMG> tag is used to reference a resource (i.e., the "ad banner") stored on the same or a |

- 30 -

**Appendix B-7**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,422,577 Over U.S. Patent No. 5,347,632 (Davis)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,796,952 (Davis) |
|---|---|
| | different server which captures the user's ID (via the HTTP request header) and dynamically returns an ad related image to the client for display within the Web page. |
| | *See* col. 4, lines 33-36. |
| | It is still yet another object of the present invention to provide means for assembling a resource, such as a Web page or a highly targeted ad banner, in accordance with a historic user profile. |
| | *See also* col. 7, line 66 to col. 8, line 20. |
| | As noted above, the Internet includes a public network using the Internet Protocol (TCP/IP) and includes servers 10 which are accessible by clients 12. When a Web browser 62 is used to access a file on a server 10, the server 10 may send information including graphics, instruction sets, sound and video files in addition to HTML documents (Web pages) to the requesting client. In accordance with the present invention, a tracking program is embedded in a resource, such as an HTML document which is sent from a server to a client based on a TCP/IP request. The tracking program may originate on a different server than the resource, in which case it may be obtained by the client through a TCP/IP request to the other server. The tracking program executes on a client machine, and is stored, for example, in RAM. The tracking program may monitor various indicia, such as time, mouse events, keyboard events, and the like, in order to track a user's interaction with the Web page. Thus, the tracking program may simply monitor the amount of time the user spends interacting with the Web page, or may monitor details of choices (such as links) made by |

Appendix B-7

**Invalidity of the Asserted Claims of U.S. Patent No. 6,422,577 Over U.S. Patent No. 5,347,632 (Davis)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,796,952 (Davis) |
|---|---|
| | individual users within a particular Web page. |
| | *See also* col. 13, lines 24-37. |
| |     Thus, the client first issues a TCP/IP request (S501). After a handshaking period, a first Server A begins to send an HTML formatted document, which contains an embedded URL referencing the tracking program. The client additionally issues a TCP/IP request to a second Server B referenced by the embedded URL in order to obtain the tracking program (S502B). The client also makes any other TCP/IP requests to obtain any other resources (such as images, video or sound) needed in order to fully render the Web Page (S502A). Each of such resources are typically referenced by individual URLs embedded in the HTML document. These requests need not occur in any specific order, and the information requested may be received in any order. |
| | *See also* col. 14, line 47 to col. 15, line 5. |
| |     The tracked information may be used to assemble resources geared toward the user's interests. Based upon the historic user profiles created in the server database, downloading of information to the same client on a subsequent visit to the same or different Web page may be done on a more intelligent basis. For example, users who have previously expressed an interest in sports-related trivia (as indicated by their previously tracked behavior) may be served with information targeted to audiences interested in sports. Similarly, users who have expressed greater interest in technology may be served with technology-related information that would be of much less interest to other users. The assembly of a resource such as a Web page may be |

Appendix B-7

**Invalidity of the Asserted Claims of U.S. Patent No. 6,422,577 Over U.S. Patent No. 5,347,632 (Davis)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,796,952 (Davis) |
|---|---|
| | easily accomplished. For example, the HTML document of the Web page may include a plurality of embedded resources. Previous choices made by a user on a particular client computer and stored in a user profile database may be used to determine which of the resources is to be downloaded to that client using simple logical processing instructions. For instance, a user profile which indicates that a user has a greater interest in sports-related information than in historical information may be used to download sports-related resources, such as GIF-type images and advertisements. Since the user has previously expressed a greater interest in sports, sports-related advertisements may therefore be targeted to that user.<br><br>*See also* col. 15, lines 6-41.<br><br>A particular implementation of this mechanism is illustrated in FIG. 6. A Web page is requested by the client from Server A (S601). This Web page contains text, as well as embedded images which must be fetched from Server A (S602) and rendered (S605). In addition, the Web page contains embedded URLs that point to two resources on Server B. The first resource is a first CGI script 1, which is embedded inside the Web page using the standard HTML <IMG> tag (S603). In attempting to render the Web page, the client will automatically fetch the resource associated with the <IMG> tag on Server B, which will result in execution of the CGI script 1. This CGI script 1 can capture client information such as Network ID or Client ID (S603A). The CGI script also returns a transparent image (S603B). The other resource on Server B is a Java applet, which is a combination ad banner and tracking program. This may be stored on any server. In attempting to render the Web page, the client will automatically fetch the Java code |

**Appendix B-7**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,422,577 Over U.S. Patent No. 5,347,632 (Davis)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,796,952 (Davis) |
|---|---|
| | (S604), download, initialize, and start operation of the applet (S607, S608).  After the applet is initialized, it contacts Server B to obtain other resources it needs in order to display images, play sounds, or control its overall look and behavior.  In fact, the applet may obtain these resources by executing one or more CGI scripts or other processes that reside on Server B or elsewhere (S607).  Based on information provided to these scripts through standard HTTP methods, including client information (S607A), such as network and client IDs, any other information such as the URL of the Web page, as well as information captured by the CGI script 1, and the previously constructed historical database profile (S607B), different information (images, sounds, text, etc.) may be returned to the applet.  Such information can therefore be selected by the scripts based on Network and/or Client ID, the URL of the Web page, and the previously constructed client profile.  This may be accomplished in the manner described above.<br><br>*See also* col. 13, line 63 to col. 14, line 21.<br><br>For example, when a user is exposed to an ad banner having information targeted to their particular interests, the user is more likely to interact with that ad banner for a longer period of time and on a more frequent basis, thereby increasing the value of that ad banner. In accordance with the present invention, in order to learn the particular interests of respective users, an ad banner may include specific information permitting the user to interact in different ways with the banner. The ad banner may have pull-down menu options, clickable buttons or "hot-spots", keyboard input, or any number of input mechanisms, whose selection or action upon in a designated manner |

**Appendix B-7**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,422,577 Over U.S. Patent No. 5,347,632 (Davis)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,796,952 (Davis) |
|---|---|
| | causes corresponding events to take place in the ad banner such as the generation or synthesis of sounds, the display of images, video, or graphic animations, or the presentation of different types of information to the user, perhaps with additional choices. Such information may, for example, include links to interactive games, links to entertainment information, sports-related games and/or trivia, and the like, or information concerning particular goods and services, or means by which to order or purchase specific goods and services. The more choices that are made available, the more information that can be acquired concerning the user's particular interests. Of course, an unlimited number of possibilities are available, depending upon the application, and an exhaustive listing of such possibilities cannot be provided herein.<br><br>*See also* col. 14, line 47 to col. 15, line 5.<br><br>The tracked information may be used to assemble resources geared toward the user's interests. Based upon the historic user profiles created in the server database, downloading of information to the same client on a subsequent visit to the same or different Web page may be done on a more intelligent basis. For example, users who have previously expressed an interest in sports-related trivia (as indicated by their previously tracked behavior) may be served with information targeted to audiences interested in sports. Similarly, users who have expressed greater interest in technology may be served with technology-related information that would be of much less interest to other users. The assembly of a resource such as a Web page may be easily accomplished. For example, the HTML document of the Web page may include a plurality of embedded resources. Previous choices made |

**Appendix B-7**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,422,577 Over U.S. Patent No. 5,347,632 (Davis)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,796,952 (Davis) |
|---|---|
|  | by a user on a particular client computer and stored in a user profile database may be used to determine which of the resources is to be downloaded to that client using simple logical processing instructions. For instance, a user profile which indicates that a user has a greater interest in sports-related information than in historical information may be used to download sports-related resources, such as GIF-type images and advertisements. Since the user has previously expressed a greater interest in sports, sports-related advertisements may therefore be targeted to that user.<br><br>*See also* col. 18, lines 45-62:<br><br>Also, while the preferred embodiments have been described in the context of Web browser software, the techniques of the invention apply equally whether the user accesses a local area network, a wide area network, a public network, a private network, the Internet, the World Wide Web, or the like, and whether access to the network is achieved using a direct connection or an indirect connection. For example, in connection with the World Wide Web, the teachings of the present invention apply whether a network connection is obtained via a direct Internet connection or indirectly through some on-line service provider. Thus, the "computer network" in which the invention is implemented should be broadly construed to include any computer network in which one or more clients is connectable to one or more servers, including those networks based upon the client-server model in which a client can link to a "remote" document (even if that document is available on the same machine, system, or "Intranet").<br><br>*See also* Figs. 1, 3-7 and associated text. |

Appendix B-7

**Invalidity of the Asserted Claims of U.S. Patent No. 6,422,577 Over U.S. Patent No. 5,347,632 (Davis)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,796,952 (Davis) |
|---|---|
|  | To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 2* |  |
| [2] The method of claim 1, wherein the first type network node is an ISP node, and the second type network node is an ICP node. | Davis discloses that the first type network node is an ISP node, and the second type network node is an ICP node.<br><br>*See* col. 6, lines 52-67.<br><br>      FIG. 1 illustrates a known computer network based on the client-server model, such as the Internet. The network comprises one or more "servers" 10 which are accessible by "clients" 12, such as personal computers, which, in the case of the Internet, is provided through a private access provider 14 (such as Digital Telemedia in New York City) or an on-line service provider 16 (such as America On-Line, Prodigy, CompuServe, the Microsoft Network, and the like). Each of the clients 12 may run a "Web browser", which is a known software tool used to access the Web via a connection obtained through an Internet access provider. The servers allow access to various network resources. In the Internet, for example, a Web server 10 allows access to so-called "Web sites" which comprise resources in various different formats. A location of a resource on a server is identified by a so-called Uniform Resource Locator, or URL.<br><br>*See also* col. 7, line 66 to col. 8, line 20<br><br>      As noted above, the Internet includes a public network using the Internet Protocol (TCP/IP) and includes servers 10 which are |

**Appendix B-7**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,422,577 Over U.S. Patent No. 5,347,632 (Davis)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,796,952 (Davis) |
|---|---|
| | accessible by clients 12. When a Web browser 62 is used to access a file on a server 10, the server 10 may send information including graphics, instruction sets, sound and video files in addition to HTML documents (Web pages) to the requesting client. In accordance with the present invention, a tracking program is embedded in a resource, such as an HTML document which is sent from a server to a client based on a TCP/IP request. The tracking program may originate on a different server than the resource, in which case it may be obtained by the client through a TCP/IP request to the other server. The tracking program executes on a client machine, and is stored, for example, in RAM. The tracking program may monitor various indicia, such as time, mouse events, keyboard events, and the like, in order to track a user's interaction with the Web page. Thus, the tracking program may simply monitor the amount of time the user spends interacting with the Web page, or may monitor details of choices (such as links) made by individual users within a particular Web page. <br><br> *See also* col. 11, line 34 to col. 12, line 4. <br><br> A more particular embodiment of this aspect of the invention is illustrated in FIG. 4. A Web page (or HTML document) is requested by the client from a first server A, using TCP/IP and HTTP protocols (S401). This HTML document contains text, as well as embedded URLs that point to graphical images (e.g. GIF format image files) also located on the first server A. The images, in general, may be located on any HTTP server on the Internet. These images are embedded inside the Web page using the known HTML <IMG> tag, which allows one to specify the source URL for an image, as well as additional information such as size and other layout parameters. These images |

Appendix B-7

**Invalidity of the Asserted Claims of U.S. Patent No. 6,422,577 Over U.S. Patent No. 5,347,632 (Davis)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,796,952 (Davis) |
|---|---|
| | will then be fetched by the client using TCP/IP and HTTP protocols from Server A (S402) and rendered on the browser (S405). The Web page (or other Web or HTML document) additionally includes embedded URLs which point to two resources that reside on a second server "B". One of the resources is an executable program, which executes on Server B, and is a CGI script. This resource is also embedded inside the Web page using the <IMG> tag. Thus, in attempting to render the Web page, the client will automatically fetch this resource (S403), which forces execution of the CGI script on the second Server B and the return of information output from the script to the client. In this case, the information returned to the client is formatted as an GIF image type which is extremely small as well as completely transparent (S403B). When the CGI script executes, it may collect information from the HTTP request header such as browser type, network ID (IP address), and if set, client ID ("cookie"), as well as any additional available information such as time of execution and the URL of the Web page, and store it in a database-for example using SQL (S403A, S404). In step S403B, the CGI script returns information to the client, which includes a response header which indicates (among other information), that the return type is an image, that this resource should not be cached by the client, and if no client ID is set and the client supports it, that a client ID is to be set to a value generated by the script.<br><br>*See also* col. 15, lines 6-41.<br><br>A particular implementation of this mechanism is illustrated in FIG. 6. A Web page is requested by the client from Server A (S601). This Web page contains text, as well as embedded images which must be |

- 39 -

**Appendix B-7**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,422,577 Over U.S. Patent No. 5,347,632 (Davis)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,796,952 (Davis) |
|---|---|
| | fetched from Server A (S602) and rendered (S605). In addition, the Web page contains embedded URLs that point to two resources on Server B. The first resource is a first CGI script 1, which is embedded inside the Web page using the standard HTML <IMG> tag (S603). In attempting to render the Web page, the client will automatically fetch the resource associated with the <IMG> tag on Server B, which will result in execution of the CGI script 1. This CGI script 1 can capture client information such as Network ID or Client ID (S603A). The CGI script also returns a transparent image (S603B). The other resource on Server B is a Java applet, which is a combination ad banner and tracking program. This may be stored on any server. In attempting to render the Web page, the client will automatically fetch the Java code (S604), download, initialize, and start operation of the applet (S607, S608). After the applet is initialized, it contacts Server B to obtain other resources it needs in order to display images, play sounds, or control its overall look and behavior. In fact, the applet may obtain these resources by executing one or more CGI scripts or other processes that reside on Server B or elsewhere (S607). Based on information provided to these scripts through standard HTTP methods, including client information (S607A), such as network and client IDs, any other information such as the URL of the Web page, as well as information captured by the CGI script 1, and the previously constructed historical database profile (S607B), different information (images, sounds, text, etc.) may be returned to the applet. Such information can therefore be selected by the scripts based on Network and/or Client ID, the URL of the Web page, and the previously constructed client profile. This may be accomplished in the manner described above. |

- 40 -

**Appendix B-7**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,422,577 Over U.S. Patent No. 5,347,632 (Davis)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,796,952 (Davis) |
|---|---|
| | *See also* Figs. 1, 3-7 and associated text. <br><br> To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 3* | |
| [3] The method of claim 1, wherein the first type network node is an organization node, and the second type network node is an ICP node. | Davis discloses that the first type network node is an organization node, and the second type network node is an ICP node. <br><br> *See* col. 6, lines 23-28. <br><br>       In this regard, the teachings of the present invention are equally applicable for use in local area networks of all types, wide area networks, private networks, on-line subscription services, on-line database services, private networks, and public networks including the Internet and the World Wide Web. <br><br> *See also* col. 6, lines 52-67. <br><br>       FIG. 1 illustrates a known computer network based on the client-server model, such as the Internet. The network comprises one or more "servers" 10 which are accessible by "clients" 12, such as personal computers, which, in the case of the Internet, is provided through a private access provider 14 (such as Digital Telemedia in New York City) or an on-line service provider 16 (such as America On-Line, Prodigy, CompuServe, the Microsoft Network, and the like). Each of the clients 12 may run a "Web browser", which is a known software tool used to access the Web via a connection obtained through an |

Appendix B-7

**Invalidity of the Asserted Claims of U.S. Patent No. 6,422,577 Over U.S. Patent No. 5,347,632 (Davis)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,796,952 (Davis) |
|---|---|
| | Internet access provider.  The servers allow access to various network resources.  In the Internet, for example, a Web server 10 allows access to so-called "Web sites" which comprise resources in various different formats.  A location of a resource on a server is identified by a so-called Uniform Resource Locator, or URL.<br><br>*See also* col. 7, line 66 to col. 8, line 20.<br><br>As noted above, the Internet includes a public network using the Internet Protocol (TCP/IP) and includes servers 10 which are accessible by clients 12.  When a Web browser 62 is used to access a file on a server 10, the server 10 may send information including graphics, instruction sets, sound and video files in addition to HTML documents (Web pages) to the requesting client.  In accordance with the present invention, a tracking program is embedded in a resource, such as an HTML document which is sent from a server to a client based on a TCP/IP request.  The tracking program may originate on a different server than the resource, in which case it may be obtained by the client through a TCP/IP request to the other server.  The tracking program executes on a client machine, and is stored, for example, in RAM.  The tracking program may monitor various indicia, such as time, mouse events, keyboard events, and the like, in order to track a user's interaction with the Web page.  Thus, the tracking program may simply monitor the amount of time the user spends interacting with the Web page, or may monitor details of choices (such as links) made by individual users within a particular Web page.<br><br>*See also* col. 11, line 34 to col. 12, line 4.<br><br>A more particular embodiment of this aspect of the invention is |

- 42 -

**Appendix B-7**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,422,577 Over U.S. Patent No. 5,347,632 (Davis)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,796,952 (Davis) |
|---|---|
| | illustrated in FIG. 4. A Web page (or HTML document) is requested by the client from a first server A, using TCP/IP and HTTP protocols (S401). This HTML document contains text, as well as embedded URLs that point to graphical images (e.g. GIF format image files) also located on the first server A. The images, in general, may be located on any HTTP server on the Internet. These images are embedded inside the Web page using the known HTML <IMG> tag, which allows one to specify the source URL for an image, as well as additional information such as size and other layout parameters. These images will then be fetched by the client using TCP/IP and HTTP protocols from Server A (S402) and rendered on the browser (S405). The Web page (or other Web or HTML document) additionally includes embedded URLs which point to two resources that reside on a second server "B". One of the resources is an executable program, which executes on Server B, and is a CGI script. This resource is also embedded inside the Web page using the <IMG> tag. Thus, in attempting to render the Web page, the client will automatically fetch this resource (S403), which forces execution of the CGI script on the second Server B and the return of information output from the script to the client. In this case, the information returned to the client is formatted as an GIF image type which is extremely small as well as completely transparent (S403B). When the CGI script executes, it may collect information from the HTTP request header such as browser type, network ID (IP address), and if set, client ID ("cookie"), as well as any additional available information such as time of execution and the URL of the Web page, and store it in a database-for example using SQL (S403A, S404). In step S403B, the CGI script returns information to the client, which includes a response header which indicates (among other information), that the return type is an image, |

Appendix B-7

**Invalidity of the Asserted Claims of U.S. Patent No. 6,422,577 Over U.S. Patent No. 5,347,632 (Davis)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,796,952 (Davis) |
|---|---|
| | that this resource should not be cached by the client, and if no client ID is set and the client supports it, that a client ID is to be set to a value generated by the script.

*See also* col. 15, lines 6-41.

A particular implementation of this mechanism is illustrated in FIG. 6. A Web page is requested by the client from Server A (S601). This Web page contains text, as well as embedded images which must be fetched from Server A (S602) and rendered (S605). In addition, the Web page contains embedded URLs that point to two resources on Server B. The first resource is a first CGI script 1, which is embedded inside the Web page using the standard HTML <IMG> tag (S603). In attempting to render the Web page, the client will automatically fetch the resource associated with the <IMG> tag on Server B, which will result in execution of the CGI script 1. This CGI script 1 can capture client information such as Network ID or Client ID (S603A). The CGI script also returns a transparent image (S603B). The other resource on Server B is a Java applet, which is a combination ad banner and tracking program. This may be stored on any server. In attempting to render the Web page, the client will automatically fetch the Java code (S604), download, initialize, and start operation of the applet (S607, S608). After the applet is initialized, it contacts Server B to obtain other resources it needs in order to display images, play sounds, or control its overall look and behavior. In fact, the applet may obtain these resources by executing one or more CGI scripts or other processes that reside on Server B or elsewhere (S607). Based on information provided to these scripts through standard HTTP methods, including client information (S607A), such as network and client IDs, |

Appendix B-7

**Invalidity of the Asserted Claims of U.S. Patent No. 6,422,577 Over U.S. Patent No. 5,347,632 (Davis)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,796,952 (Davis) |
|---|---|
|  | any other information such as the URL of the Web page, as well as information captured by the CGI script 1, and the previously constructed historical database profile (S607B), different information (images, sounds, text, etc.) may be returned to the applet. Such information can therefore be selected by the scripts based on Network and/or Client ID, the URL of the Web page, and the previously constructed client profile. This may be accomplished in the manner described above.<br><br>*See also* Figs. 1, 3-7 and associated text.<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 4* |  |
| [4] The method of claim 1, wherein the customized page file includes customized graphics, sounds, applets, links, and text. | Davis discloses that the customized page file includes customized graphics, sounds, applets, links, and text.<br><br>*See* col. 7, lines 1-7.<br><br>The "World Wide Web" ("Web") is that collection of servers on the Internet that utilize the Hypertext Transfer Protocol (HTTP). HTTP is a known application protocol that provides users access to resources (which can be information in different formats such as text, graphics, images, sound, video, Hypertext Markup Language— "HTML" etc., as well as programs). |

- 45 -

Appendix B-7

**Invalidity of the Asserted Claims of U.S. Patent No. 6,422,577 Over U.S. Patent No. 5,347,632 (Davis)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,796,952 (Davis) |
|---|---|
| | *See also* col. 7, line 66 to col. 8, line 20.<br><br>As noted above, the Internet includes a public network using the Internet Protocol (TCP/IP) and includes servers 10 which are accessible by clients 12. When a Web browser 62 is used to access a file on a server 10, the server 10 may send information including graphics, instruction sets, sound and video files in addition to HTML documents (Web pages) to the requesting client. In accordance with the present invention, a tracking program is embedded in a resource, such as an HTML document which is sent from a server to a client based on a TCP/IP request. The tracking program may originate on a different server than the resource, in which case it may be obtained by the client through a TCP/IP request to the other server. The tracking program executes on a client machine, and is stored, for example, in RAM. The tracking program may monitor various indicia, such as time, mouse events, keyboard events, and the like, in order to track a user's interaction with the Web page. Thus, the tracking program may simply monitor the amount of time the user spends interacting with the Web page, or may monitor details of choices (such as links) made by individual users within a particular Web page.<br><br>*See also* col. 10, lines 3-57.<br><br>As a result, many Web sites today resemble magazines whose images are for the most part static (unchanging). However, to satisfy an audience that spends many hours in front of dynamic television images, Internet programmers and engineers must provide a way to animate Web sites. One solution is to download programs written in the JAVA programming language that implement the animation. Animation is only one example of the use of JAVA. Using JAVA, programmers can |

**Appendix B-7**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,422,577 Over U.S. Patent No. 5,347,632 (Davis)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,796,952 (Davis) |
|---|---|
| | create stand alone programs similar to those that programmers can develop using C++, and can also create so-called "applets" that run within a Web browser.  To address security issues, JAVA developers ensured that a programmer could not develop a computer virus using a JAVA applet and that an applet could not arbitrarily transfer information concerning a user's system (such as a file on the user's system) back to the server.  Thus, JAVA applets have limited operations.  For example, a JAVA applet generally cannot currently read or write files on the user's system.  In this way, an applet cannot store a virus on a user's disk or arbitrarily read information stored on a user's disk.  In addition, for other security and stability reasons, JAVA developers eliminated or changed many features of the C and C++ programming languages, such as pointers, with which advanced programmers could bypass JAVA's security mechanisms.  JAVA applets run within a "JAVA-enabled client", such as Netscape Navigator version 2.0 (Windows 95 or Windows NT versions only) or later, or Microsoft's Internet Explorer version 3.0, or later.  In addition, since most users browse with personal computers running Windows, Macintosh, UNIX-based systems, and the like, the JAVA developers designed JAVA to be portable, or "platform-independent".  Thus, the same JAVA applets can be downloaded and run in any JAVA-enabled client process, irrespective of the platform type.  JAVA applets can be used by developers to create sophisticated, fully interactive multimedia Web pages and Web sites executable on any JAVA-enabled client.  Representative JAVA applets are disclosed, for example, by O.  Davis, T.  McGinn, and A.  Bhatani, in Instant Java Applets, Ziff-Davis Press, 1996.  Since JAVA provides the ability to download complex programming instructions in the form of applets that are executable by a JAVA-enabled Web browser, the tracking program of the present |

**Appendix B-7**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,422,577 Over U.S. Patent No. 5,347,632 (Davis)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,796,952 (Davis) |
|---|---|
| | invention may be implemented in the JAVA programming language. As will be readily appreciated by those of ordinary skill in the art, however, the teachings of the present invention are not limited to JAVA applets or to the JAVA programming language whatsoever. In connection with the Internet, for example, the present invention may also be implemented in a so-called "Active-X" environment, in which the tracking program is written as an Active-X component.<br><br>*See also* col. 11, lines 34-59.<br><br>A more particular embodiment of this aspect of the invention is illustrated in FIG. 4. A Web page (or HTML document) is requested by the client from a first server A, using TCP/IP and HTTP protocols (S401). This HTML document contains text, as well as embedded URLs that point to graphical images (e.g. GIF image files) also located on the first server A. The images, in general, may be located on any HTTP server on the Internet. These images are embedded inside the Web page using the known HTML <IMG> tag, which allows one to specify the source URL for an image, as well as additional information such as size and other layout parameters. These images will then be fetched by the client using TCP/IP and HTTP protocols from Server A (S402) and rendered on the browser (S405). The Web page (or other Web or HTML document) additionally includes embedded URLs which point to two resources that reside on a second server "B". One of the resources is an executable program, which executes on Server B, and is a CGI script. This resource is also embedded inside the Web page using the <IMG> tag. Thus, in attempting to render the Web page, the client will automatically fetch this resource (S403), which forces execution of the CGI script on the |

**Appendix B-7**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,422,577 Over U.S. Patent No. 5,347,632 (Davis)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,796,952 (Davis) |
|---|---|
| | second Server B and the return of information output from the script to the client. In this case, the information returned to the client is formatted as an GIF image type which is extremely small as well as completely transparent (S403B). |
| | *See also* col. 14, lines 4-11. |
| | The ad banner may have pull-down menu options, clickable buttons or "hot-spots", keyboard input, or any number of input mechanisms, whose selection or action upon in a designated manner causes corresponding events to take place in the ad banner such as the generation or synthesis of sounds, the display of images, video, or graphic animations, or the presentation of different types of information to the user, perhaps with additional choices. |
| | *See also* col. 15, lines 6-41. |
| | A particular implementation of this mechanism is illustrated in FIG. 6. A Web page is requested by the client from Server A (S601). This Web page contains text, as well as embedded images which must be fetched from Server A (S602) and rendered (S605). In addition, the Web page contains embedded URLs that point to two resources on Server B. The first resource is a first CGI script 1, which is embedded inside the Web page using the standard HTML <IMG> tag (S603). In attempting to render the Web page, the client will automatically fetch the resource associated with the <IMG> tag on Server B, which will result in execution of the CGI script 1. This CGI script 1 can capture client information such as Network ID or Client ID (S603A). The CGI script also returns a transparent image (S603B). The other resource on Server B is a Java applet, which is a combination ad banner and |

Appendix B-7

**Invalidity of the Asserted Claims of U.S. Patent No. 6,422,577 Over U.S. Patent No. 5,347,632 (Davis)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,796,952 (Davis) |
|---|---|
| | tracking program. This may be stored on any server. In attempting to render the Web page, the client will automatically fetch the Java code (S604), download, initialize, and start operation of the applet (S607, S608). After the applet is initialized, it contacts Server B to obtain other resources it needs in order to display images, play sounds, or control its overall look and behavior. In fact, the applet may obtain these resources by executing one or more CGI scripts or other processes that reside on Server B or elsewhere (S607). Based on information provided to these scripts through standard HTTP methods, including client information (S607A), such as network and client IDs, any other information such as the URL of the Web page, as well as information captured by the CGI script 1, and the previously constructed historical database profile (S607B), different information (images, sounds, text, etc.) may be returned to the applet. Such information can therefore be selected by the scripts based on Network and/or Client ID, the URL of the Web page, and the previously constructed client profile. This may be accomplished in the manner described above. *See also* Figs. 3-7 and associated text. To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 5* | |
| [5] The method of claim 1, wherein the customized page file includes customized | Davis discloses that the customized page file includes customized advertisements. |

**Appendix B-7**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,422,577 Over U.S. Patent No. 5,347,632 (Davis)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,796,952 (Davis) |
|---|---|
| advertisements. | *See* col. 1, lines 8-13.<br><br>The present invention relates to a method and apparatus for monitoring client use of and interaction with a resource downloaded from a server on a computer network, for storing monitored data, for creating a database including profiles indexed by user and/or resource identity, and for generating customized resources based upon client profiles.<br><br>*See also* col. 13, lines 57-62.<br><br>The tracking program may be used not only to monitor the time spent by a user in a Web page or an ad banner, but may also be used to create a more complex "historical" user profile to permit the server to assemble a Web page or target an ad banner based upon the diverse interests of respective users.<br><br>*See also* col. 14, line 47 to col. 15, line 5.<br><br>The tracked information may be used to assemble resources geared toward the user's interests. Based upon the historic user profiles created in the server database, downloading of information to the same client on a subsequent visit to the same or different Web page may be done on a more intelligent basis. For example, users who have previously expressed an interest in sports-related trivia (as indicated by their previously tracked behavior) may be served with information targeted to audiences interested in sports. Similarly, users who have expressed greater interest in technology may be served with technology-related information that would be of much less interest to other users. The assembly of a resource such as a Web page may be easily accomplished. For example, the HTML document of the Web |

Appendix B-7

**Invalidity of the Asserted Claims of U.S. Patent No. 6,422,577 Over U.S. Patent No. 5,347,632 (Davis)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,796,952 (Davis) |
|---|---|
| | page may include a plurality of embedded resources. Previous choices made by a user on a particular client computer and stored in a user profile database may be used to determine which of the resources is to be downloaded to that client using simple logical processing instructions. For instance, a user profile which indicates that a user has a greater interest in sports-related information than in historical information may be used to download sports-related resources, such as GIF-type images and advertisements. Since the user has previously expressed a greater interest in sports, sports-related advertisements may therefore be targeted to that user.<br><br>*See also* col. 15, lines 6-41.<br><br>A particular implementation of this mechanism is illustrated in FIG. 6. A Web page is requested by the client from Server A (S601). This Web page contains text, as well as embedded images which must be fetched from Server A (S602) and rendered (S605). In addition, the Web page contains embedded URLs that point to two resources on Server B. The first resource is a first CGI script 1, which is embedded inside the Web page using the standard HTML <IMG> tag (S603). In attempting to render the Web page, the client will automatically fetch the resource associated with the <IMG> tag on Server B, which will result in execution of the CGI script 1. This CGI script 1 can capture client information such as Network ID or Client ID (S603A). The CGI script also returns a transparent image (S603B). The other resource on Server B is a Java applet, which is a combination ad banner and tracking program. This may be stored on any server. In attempting to render the Web page, the client will automatically fetch the Java code (S604), download, initialize, and start operation of the applet (S607, |

- 52 -

**Appendix B-7**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,422,577 Over U.S. Patent No. 5,347,632 (Davis)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,796,952 (Davis) |
|---|---|
| | S608). After the applet is initialized, it contacts Server B to obtain other resources it needs in order to display images, play sounds, or control its overall look and behavior. In fact, the applet may obtain these resources by executing one or more CGI scripts or other processes that reside on Server B or elsewhere (S607). Based on information provided to these scripts through standard HTTP methods, including client information (S607A), such as network and client IDs, any other information such as the URL of the Web page, as well as information captured by the CGI script 1, and the previously constructed historical database profile (S607B), different information (images, sounds, text, etc.) may be returned to the applet. Such information can therefore be selected by the scripts based on Network and/or Client ID, the URL of the Web page, and the previously constructed client profile. This may be accomplished in the manner described above.<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 6* | |
| [6a] The method of claim 1, wherein: the service request includes an IP address for identifying the first type network node, and | Davis discloses that the service request includes an IP address for identifying the first type network node.<br><br>*See* col. 4, lines 24-32.<br><br>Still yet another object of the present invention is to provide means for creating a database of user profiles containing details of individual user interaction with and use of network resources including, for example, |

Appendix B-7

**Invalidity of the Asserted Claims of U.S. Patent No. 6,422,577 Over U.S. Patent No. 5,347,632 (Davis)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,796,952 (Davis) |
|---|---|
| | Network IDs (known as "IP address") and client IDs (known as "cookies") that have accessed particular resources, the amount of time spent by users interacting with and/or using particular resources, and details of choices created by individual users within a particular resource.<br><br>*See also* col. 8, line 53 to col. 9, line 2.<br><br>As noted above, a client process, such as a Web browser running on the client machine, uses a TCP/IP connection to pass a request to a Web server running an HTTP service (or "daemon" under the UNIX operating system). The HTTP service then responds to the request, typically by sending a Web page formatted in the Hypertext Markup Language, or HTML, to the browser. The browser displays the Web page using local resources (e.g., fonts and colors). Unless the tracking program is already resident in the client, it is embedded in the Web page and downloaded to the client along with the Web page. The tracking program is executed after any required initialization has occurred. The tracking program may monitor the length of time the user remains in the Web page, or any one or more portions thereof, and may track some or all mouse and keyboard events to provide meaningful data to the server concerning the user's interaction with the Web page.<br><br>*See also* col. 9, lines 16-30.<br><br>As illustrated, for example, in FIG. 3, the client issues a TCP/IP request for a Web page located on a Server A (S301). After a handshaking period, the Server A begins to send the HTML formatted document, which contains an embedded URL referencing the tracking |

- 54 -

**Appendix B-7**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,422,577 Over U.S. Patent No. 5,347,632 (Davis)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,796,952 (Davis) |
|---|---|
| | program.  The client additionally issues a TCP/IP request to the Server B referenced by the embedded URL in order to obtain the tracking program (S302).  The client also makes any other TCP/IP requests (S303) to obtain any other resources (such as images, video or sound) needed in order to fully render the Web Page (S304).  Each of such resources are typically referenced by individual URLs embedded in the HTML document.  These requests need not occur in any specific order and may reference resources located on any server.  In addition, the information requested may be received in any order.  When the tracking program has been obtained, the client process (i.e., the Web browser) saves the tracking program to RAM (S305).  After any necessary initialization, the tracking program initiates a software timer to monitor the amount of time the Web page is displayed (S306).  When the client leaves the Web page (S307), the tracking program calculates the amount of time the user has interacted with and displayed the Web page and sends this information to a server.  Other available client information, such as the network ID and client ID, or so-called "Cookie" of the client, is also sent to the server (S308).  If desired, other information concerning the client computer may be automatically acquired and sent to the server, such as the type of hardware in the client computer and various resources that are resident on the client computer. <br><br> *See also* col. 11, lines 13-16. <br><br> In order to store client-identifying indicia, such as a user's network ID (IP) and client ID numbers (cookies) and associated tracking information, a database is set up on a server. |

Appendix B-7

**Invalidity of the Asserted Claims of U.S. Patent No. 6,422,577 Over U.S. Patent No. 5,347,632 (Davis)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,796,952 (Davis) |
|---|---|
| | *See also* col. 11, line 34 to col. 12, line 4. <br><br> A more particular embodiment of this aspect of the invention is illustrated in FIG. 4. A Web page (or HTML document) is requested by the client from a first server A, using TCP/IP and HTTP protocols (S401). This HTML document contains text, as well as embedded URLs that point to graphical images (e.g. GIF format image files) also located on the first server A. The images, in general, may be located on any HTTP server on the Internet. These images are embedded inside the Web page using the known HTML <IMG> tag, which allows one to specify the source URL for an image, as well as additional information such as size and other layout parameters. These images will then be fetched by the client using TCP/IP and HTTP protocols from Server A (S402) and rendered on the browser (S405). The Web page (or other Web or HTML document) additionally includes embedded URLs which point to two resources that reside on a second server "B". One of the resources is an executable program, which executes on Server B, and is a CGI script. This resource is also embedded inside the Web page using the <IMG> tag. Thus, in attempting to render the Web page, the client will automatically fetch this resource (S403), which forces execution of the CGI script on the second Server B and the return of information output from the script to the client. In this case, the information returned to the client is formatted as an GIF image type which is extremely small as well as completely transparent (S403B). When the CGI script executes, it may collect information from the HTTP request header such as browser type, network ID (IP address), and if set, client ID ("cookie"), as well as any additional available information such as time of execution and the URL of the Web page, and store it in a database-for example using |

**Appendix B-7**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,422,577 Over U.S. Patent No. 5,347,632 (Davis)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,796,952 (Davis) |
|---|---|
| | SQL (S403A, S404). In step S403B, the CGI script returns information to the client, which includes a response header which indicates (among other information), that the return type is an image, that this resource should not be cached by the client, and if no client ID is set and the client supports it, that a client ID is to be set to a value generated by the script.<br><br>*See also* col. 18, lines 8-26.<br><br>It should also be appreciated that while in the preferred embodiments the tracking program uses the HTTP and TCP/IP protocols, other network data transmission protocols could be used that implement the same functionality. Moreover, use of an HTML formatted Web page is not necessary. The information supplied to the user may not be in the form of an HTML or Web document such as a Web page, but can be some other form of information. In addition, the tracking program need not be downloaded to the client from the server, but can be an added module to the client application or Web browser running on the client, or may be stored elsewhere on the client machine. For example, in the former case, added modules could be plug-ins and in the latter case could be referred to as cached resources. In such cases, the client application or Web browser would include appropriate means to enable activation of the tracking program and the uploading of a client profile based upon the user's interaction with a Web page or network resource.<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [6b] identifying the first type | Davis discloses identifying the first type network node based on the service request comprises using |

**Appendix B-7**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,422,577 Over U.S. Patent No. 5,347,632 (Davis)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,796,952 (Davis) |
|---|---|
| network node based on the service request comprises using the IP address included in the service request to identify the first type network node. | the IP address included in the service request to identify the first type network node.<br><br>*See* col. 4, lines 24-32.<br><br>    Still yet another object of the present invention is to provide means for creating a database of user profiles containing details of individual user interaction with and use of network resources including, for example, Network IDs (known as "IP address") and client IDs (known as "cookies") that have accessed particular resources, the amount of time spent by users interacting with and/or using particular resources, and details of choices created by individual users within a particular resource.<br><br>*See also* col. 8, line 53 to col. 9, line 2.<br><br>    As noted above, a client process, such as a Web browser running on the client machine, uses a TCP/IP connection to pass a request to a Web server running an HTTP service (or "daemon" under the UNIX operating system).  The HTTP service then responds to the request, typically by sending a Web page formatted in the Hypertext Markup Language, or HTML, to the browser.  The browser displays the Web page using local resources (e.g., fonts and colors).  Unless the tracking program is already resident in the client, it is embedded in the Web page and downloaded to the client along with the Web page.  The tracking program is executed after any required initialization has occurred.  The tracking program may monitor the length of time the user remains in the Web page, or any one or more portions thereof, and may track some or all mouse and keyboard events to provide meaningful data to the server concerning the user's interaction with the |

- 58 -

## Appendix B-7

### Invalidity of the Asserted Claims of U.S. Patent No. 6,422,577 Over U.S. Patent No. 5,347,632 (Davis)

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,796,952 (Davis) |
|---|---|
| | Web page.<br><br>*See also* col. 9, lines 16-30.<br><br>As illustrated, for example, in FIG. 3, the client issues a TCP/IP request for a Web page located on a Server A (S301). After a handshaking period, the Server A begins to send the HTML formatted document, which contains an embedded URL referencing the tracking program. The client additionally issues a TCP/IP request to the Server B referenced by the embedded URL in order to obtain the tracking program (S302). The client also makes any other TCP/IP requests (S303) to obtain any other resources (such as images, video or sound) needed in order to fully render the Web Page (S304). Each of such resources are typically referenced by individual URLs embedded in the HTML document. These requests need not occur in any specific order and may reference resources located on any server. In addition, the information requested may be received in any order. When the tracking program has been obtained, the client process (i.e., the Web browser) saves the tracking program to RAM (S305). After any necessary initialization, the tracking program initiates a software timer to monitor the amount of time the Web page is displayed (S306). When the client leaves the Web page (S307), the tracking program calculates the amount of time the user has interacted with and displayed the Web page and sends this information to a server. Other available client information, such as the network ID and client ID, or so-called "Cookie" of the client, is also sent to the server (S308). If desired, other information concerning the client computer may be automatically acquired and sent to the server, such as the type of hardware in the client computer and various resources that are resident |

Appendix B-7

**Invalidity of the Asserted Claims of U.S. Patent No. 6,422,577 Over U.S. Patent No. 5,347,632 (Davis)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,796,952 (Davis) |
|---|---|
| | on the client computer.<br><br>*See also* col. 11, lines 13-16.<br><br>    In order to store client-identifying indicia, such as a user's network ID (IP) and client ID numbers (cookies) and associated tracking information, a database is set up on a server.<br><br>*See also* col. 11, line 34 to col. 12, line 4.<br><br>    A more particular embodiment of this aspect of the invention is illustrated in FIG. 4.  A Web page (or HTML document) is requested by the client from a first server A, using TCP/IP and HTTP protocols (S401).  This HTML document contains text, as well as embedded URLs that point to graphical images (e.g. GIF format image files) also located on the first server A.  The images, in general, may be located on any HTTP server on the Internet.  These images are embedded inside the Web page using the known HTML <IMG> tag, which allows one to specify the source URL for an image, as well as additional information such as size and other layout parameters.  These images will then be fetched by the client using TCP/IP and HTTP protocols from Server A (S402) and rendered on the browser (S405).  The Web page (or other Web or HTML document) additionally includes embedded URLs which point to two resources that reside on a second server "B".  One of the resources is an executable program, which executes on Server B, and is a CGI script.  This resource is also embedded inside the Web page using the <IMG> tag.  Thus, in attempting to render the Web page, the client will automatically fetch this resource (S403), which forces execution of the CGI script on the second Server B and the return of information output from the script to |

**Appendix B-7**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,422,577 Over U.S. Patent No. 5,347,632 (Davis)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,796,952 (Davis) |
|---|---|
|  | the client.  In this case, the information returned to the client is formatted as an GIF image type which is extremely small as well as completely transparent (S403B).  When the CGI script executes, it may collect information from the HTTP request header such as browser type, network ID (IP address), and if set, client ID ("cookie"), as well as any additional available information such as time of execution and the URL of the Web page, and store it in a database-for example using SQL (S403A, S404).  In step S403B, the CGI script returns information to the client, which includes a response header which indicates (among other information), that the return type is an image, that this resource should not be cached by the client, and if no client ID is set and the client supports it, that a client ID is to be set to a value generated by the script.<br><br>*See also* col. 18, lines 8-26.<br><br>It should also be appreciated that while in the preferred embodiments the tracking program uses the HTTP and TCP/IP protocols, other network data transmission protocols could be used that implement the same functionality.  Moreover, use of an HTML formatted Web page is not necessary.  The information supplied to the user may not be in the form of an HTML or Web document such as a Web page, but can be some other form of information.  In addition, the tracking program need not be downloaded to the client from the server, but can be an added module to the client application or Web browser running on the client, or may be stored elsewhere on the client machine.  For example, in the former case, added modules could be plug-ins and in the latter case could be referred to as cached resources.  In such cases, the client application or Web browser would include appropriate means to enable |

- 61 -

**Appendix B-7**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,422,577 Over U.S. Patent No. 5,347,632 (Davis)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,796,952 (Davis) |
|---|---|
| | activation of the tracking program and the uploading of a client profile based upon the user's interaction with a Web page or network resource. <br><br> To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 7* | |
| [7a] A method for providing web page customization service to a plurality of first type network nodes at a second type network node, comprising the steps of: | Davis discloses a method for providing web page customization service to a plurality of first type network nodes at a second type network node. <br><br> *See* claim limitation [1a]. <br><br> To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [7b] forming at least a page file for each of the first type network nodes; | Davis discloses forming at least a page file for each of the first type network nodes. <br><br> *See* claim limitation [1b]. <br><br> To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [7c] forming at least a page file for the second type network node; | Davis discloses forming at least a page file for the second type network node. <br><br> *See* claim limitation [1c]. |

**Appendix B-7**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,422,577 Over U.S. Patent No. 5,347,632 (Davis)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,796,952 (Davis) |
|---|---|
| | To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [7d] receiving a service request from one of the first type network nodes; | Davis discloses receiving a service request from one of the first type network nodes.<br><br>*See* claim limitation [1d].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [7e] determining whether the first type network node participates in the web page customization service; | Davis discloses determining whether the first type network node participates in the web page customization service.<br><br>*See* claim limitation [1e].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [7f] if the first type network node participates in the web page customization service, forming a customized page file for the service request by including the page file formed for the first type network node within the page file formed for the | Davis discloses, if the first type network node participates in the web page customization service, forming a customized page file for the service request by including the page file formed for the first type network node within the page file formed for the second type network node.<br><br>*See* claim limitation [1f].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill |

- 63 -

Appendix B-7

**Invalidity of the Asserted Claims of U.S. Patent No. 6,422,577 Over U.S. Patent No. 5,347,632 (Davis)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,796,952 (Davis) |
|---|---|
| second type network node; and | and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [7g] if the first type network node does not participate in the web page customization service, forming a page file for the service request by using the page file formed for the second type network node. | Davis discloses, if the first type network node does not participate in the web page customization service, forming a page file for the service request by using the page file formed for the second type network node.<br><br>For example, Davis discloses the display of customized content and advertisements on web pages to users meeting certain criteria; the customized advertisements would not be shown for users not meeting the desired criteria. Davis also discloses that prior art systems provided the same content to all users.<br><br>*See* col. 1, lines 55-64.<br><br>Due largely to the lack of advanced monitoring techniques available to individual servers on a public network, the same information is generally served out to all clients on a completely untargeted basis. In other words, the same information is generally downloaded to all users that access a particular resource on a server, irrespective of individual user interests. There is therefore a need to provide servers on a public network with the ability to automatically monitor use of and interaction with resources downloaded by users so as to facilitate the targeted serving of information.<br><br>*See also* col. 13, line 63 to col. 14, line 21.<br><br>For example, when a user is exposed to an ad banner having information targeted to their particular interests, the user is more likely to interact with that ad banner for a longer period of time and on a more frequent basis, thereby increasing the value of that ad banner. In |

- 64 -

**Appendix B-7**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,422,577 Over U.S. Patent No. 5,347,632 (Davis)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,796,952 (Davis) |
|---|---|
| | accordance with the present invention, in order to learn the particular interests of respective users, an ad banner may include specific information permitting the user to interact in different ways with the banner. The ad banner may have pull-down menu options, clickable buttons or "hot-spots", keyboard input, or any number of input mechanisms, whose selection or action upon in a designated manner causes corresponding events to take place in the ad banner such as the generation or synthesis of sounds, the display of images, video, or graphic animations, or the presentation of different types of information to the user, perhaps with additional choices. Such information may, for example, include links to interactive games, links to entertainment information, sports-related games and/or trivia, and the like, or information concerning particular goods and services, or means by which to order or purchase specific goods and services. The more choices that are made available, the more information that can be acquired concerning the user's particular interests. Of course, an unlimited number of possibilities are available, depending upon the application, and an exhaustive listing of such possibilities cannot be provided herein. <br><br> *See also* col. 14, line 47 to col. 15, line 5. <br><br> The tracked information may be used to assemble resources geared toward the user's interests. Based upon the historic user profiles created in the server database, downloading of information to the same client on a subsequent visit to the same or different Web page may be done on a more intelligent basis. For example, users who have previously expressed an interest in sports-related trivia (as indicated by their previously tracked behavior) may be served with information targeted |

**Appendix B-7**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,422,577 Over U.S. Patent No. 5,347,632 (Davis)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,796,952 (Davis) |
|---|---|
| | to audiences interested in sports. Similarly, users who have expressed greater interest in technology may be served with technology-related information that would be of much less interest to other users. The assembly of a resource such as a Web page may be easily accomplished. For example, the HTML document of the Web page may include a plurality of embedded resources. Previous choices made by a user on a particular client computer and stored in a user profile database may be used to determine which of the resources is to be downloaded to that client using simple logical processing instructions. For instance, a user profile which indicates that a user has a greater interest in sports-related information than in historical information may be used to download sports-related resources, such as GIF-type images and advertisements. Since the user has previously expressed a greater interest in sports, sports-related advertisements may therefore be targeted to that user.<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 8* | |
| [8] The method of claim 7, wherein the first type network nodes are ISP nodes, and the second type network node is an ICP node. | Davis discloses that the first type network nodes are ISP nodes, and the second type network node is an ICP node.<br><br>*See* claim limitation [2].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill |

Appendix B-7

**Invalidity of the Asserted Claims of U.S. Patent No. 6,422,577 Over U.S. Patent No. 5,347,632 (Davis)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,796,952 (Davis) |
|---|---|
| | and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 9* | |
| [9] The method of claim 7, wherein the first type network nodes are organization nodes, and the second type network node is an ICP node. | Davis discloses that the first type network nodes are organization nodes, and the second type network node is an ICP node.<br><br>*See* claim limitation [3].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 10* | |
| [10] The method of claim 7, wherein the customized page file includes customized graphics, sounds, applets, links, and text. | Davis discloses that the customized page file includes customized graphics, sounds, applets, links, and text.<br><br>*See* claim limitation [4].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 11* | |
| [11] The method of claim 7, wherein the customized page file includes customized | Davis discloses that the customized page file includes customized advertisements.<br><br>*See* claim limitation [5]. |

- 67 -

Appendix B-7

**Invalidity of the Asserted Claims of U.S. Patent No. 6,422,577 Over U.S. Patent No. 5,347,632 (Davis)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,796,952 (Davis) |
|---|---|
| advertisements. | To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 12* | |
| [12a] The method of claim 7, wherein: the service request from one of the first type network nodes includes an IP address for identifying the first type network node, and | Davis discloses that the service request from one of the first type network nodes includes an IP address for identifying the first type network node.<br><br>*See* claim limitation [6a].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [12b] determining whether the first type network node participates in the web page customization service comprises using the IPI address included in the service request to identify the first type network node. | Davis discloses determining whether the first type network node participates in the web page customization service comprises using the IPI address included in the service request to identify the first type network node.<br><br>*See* claim limitation [6b].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 13* | |
| [13a] A method for providing web page customization service to a | Davis discloses a method for providing web page customization service to a plurality of first type network nodes at a second type network node. |

**Appendix B-7**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,422,577 Over U.S. Patent No. 5,347,632 (Davis)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,796,952 (Davis) |
|---|---|
| plurality of first type network nodes at a second type network node, comprising the steps of: | *See* claim limitation [1a].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [13b] forming a plurality of advertisements for the first type network nodes; | Davis discloses forming a plurality of advertisements for the first type network nodes.<br><br>*See* claim limitations [1b] and [5].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [13c] forming at least a page file for the second type network node; | Davis discloses forming at least a page file for the second type network node.<br><br>*See* claim limitation [1c].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [13d] receiving a service request from one of the first type network nodes; | Davis discloses receiving a service request from one of the first type network nodes.<br><br>*See* claim limitation [1d].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |

Appendix B-7

**Invalidity of the Asserted Claims of U.S. Patent No. 6,422,577 Over U.S. Patent No. 5,347,632 (Davis)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,796,952 (Davis) |
|---|---|
| [13e] identifying advertisements for the first type network node; and | Davis discloses identifying advertisements for the first type network node.<br><br>*See* claim limitations [1e] and [5].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [13f] forming a customized page file for the first type network node by including the identified advertisements within the page file formed for the second type network node. | Davis discloses forming a customized page file for the first type network node by including the identified advertisements within the page file formed for the second type network node.<br><br>*See* claim limitation [1f].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 14* | |
| [14] The method of claim 13, wherein the first type network nodes are ISP nodes, and the second type network node is an ICP node. | Davis discloses that the first type network nodes are ISP nodes, and the second type network node is an ICP node.<br><br>*See* claim limitation [2].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 15* | |

**Appendix B-7**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,422,577 Over U.S. Patent No. 5,347,632 (Davis)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,796,952 (Davis) |
|---|---|
| [15] The method of claim 13, wherein the first type network nodes are organization nodes, and the second type network node is an ICP node. | Davis discloses that the first type network nodes are organization nodes, and the second type network node is an ICP node.<br><br>*See* claim limitation [3].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 16* | |
| [16] The method of claim 13, wherein the identified advertisements do not cause negative impact on the owner of the first type network node. | Davis discloses that the identified advertisements do not cause negative impact on the owner of the first type network node.<br><br>For example, Davis discloses that the advertisements are targeted to the viewers of the web page, and that users access the Internet through an ISP or an organization, and can be tracked by their IP addresses. An advertisement served to the user would for the first type network node would be selected not to cause negative impact on its owner.<br><br>*See* col. 4, lines 24-32.<br><br>Still yet another object of the present invention is to provide means for creating a database of user profiles containing details of individual user interaction with and use of network resources including, for example, Network IDs (known as "IP address") and client IDs (known as "cookies") that have accessed particular resources, the amount of time spent by users interacting with and/or using particular resources, and details of choices created by individual users within a particular resource. |

Appendix B-7

**Invalidity of the Asserted Claims of U.S. Patent No. 6,422,577 Over U.S. Patent No. 5,347,632 (Davis)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,796,952 (Davis) |
|---|---|
| | *See also* col. 8, line 53 to col. 9, line 2.<br><br>    As noted above, a client process, such as a Web browser running on the client machine, uses a TCP/IP connection to pass a request to a Web server running an HTTP service (or "daemon" under the UNIX operating system). The HTTP service then responds to the request, typically by sending a Web page formatted in the Hypertext Markup Language, or HTML, to the browser. The browser displays the Web page using local resources (e.g., fonts and colors). Unless the tracking program is already resident in the client, it is embedded in the Web page and downloaded to the client along with the Web page. The tracking program is executed after any required initialization has occurred. The tracking program may monitor the length of time the user remains in the Web page, or any one or more portions thereof, and may track some or all mouse and keyboard events to provide meaningful data to the server concerning the user's interaction with the Web page.<br><br>*See also* col. 9, lines 16-30.<br><br>    As illustrated, for example, in FIG. 3, the client issues a TCP/IP request for a Web page located on a Server A (S301). After a handshaking period, the Server A begins to send the HTML formatted document, which contains an embedded URL referencing the tracking program. The client additionally issues a TCP/IP request to the Server B referenced by the embedded URL in order to obtain the tracking program (S302). The client also makes any other TCP/IP requests (S303) to obtain any other resources (such as images, video or sound) needed in order to fully render the Web Page (S304). Each of such resources are typically referenced by individual URLs embedded in the |

- 72 -

Appendix B-7

**Invalidity of the Asserted Claims of U.S. Patent No. 6,422,577 Over U.S. Patent No. 5,347,632 (Davis)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,796,952 (Davis) |
|---|---|
| | HTML document. These requests need not occur in any specific order and may reference resources located on any server. In addition, the information requested may be received in any order. When the tracking program has been obtained, the client process (i.e., the Web browser) saves the tracking program to RAM (S305). After any necessary initialization, the tracking program initiates a software timer to monitor the amount of time the Web page is displayed (S306). When the client leaves the Web page (S307), the tracking program calculates the amount of time the user has interacted with and displayed the Web page and sends this information to a server. Other available client information, such as the network ID and client ID, or so-called "Cookie" of the client, is also sent to the server (S308). If desired, other information concerning the client computer may be automatically acquired and sent to the server, such as the type of hardware in the client computer and various resources that are resident on the client computer.<br><br>*See also* col. 11, lines 13-16.<br><br>In order to store client-identifying indicia, such as a user's network ID (IP) and client ID numbers (cookies) and associated tracking information, a database is set up on a server.<br><br>*See also* col. 11, line 34 to col. 12, line 4.<br><br>A more particular embodiment of this aspect of the invention is illustrated in FIG. 4. A Web page (or HTML document) is requested by the client from a first server A, using TCP/IP and HTTP protocols (S401). This HTML document contains text, as well as embedded URLs that point to graphical images (e.g. GIF format image files) also |

**Appendix B-7**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,422,577 Over U.S. Patent No. 5,347,632 (Davis)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,796,952 (Davis) |
|---|---|
| | located on the first server A. The images, in general, may be located on any HTTP server on the Internet. These images are embedded inside the Web page using the known HTML <IMG> tag, which allows one to specify the source URL for an image, as well as additional information such as size and other layout parameters. These images will then be fetched by the client using TCP/IP and HTTP protocols from Server A (S402) and rendered on the browser (S405). The Web page (or other Web or HTML document) additionally includes embedded URLs which point to two resources that reside on a second server "B". One of the resources is an executable program, which executes on Server B, and is a CGI script. This resource is also embedded inside the Web page using the <IMG> tag. Thus, in attempting to render the Web page, the client will automatically fetch this resource (S403), which forces execution of the CGI script on the second Server B and the return of information output from the script to the client. In this case, the information returned to the client is formatted as an GIF image type which is extremely small as well as completely transparent (S403B). When the CGI script executes, it may collect information from the HTTP request header such as browser type, network ID (IP address), and if set, client ID ("cookie"), as well as any additional available information such as time of execution and the URL of the Web page, and store it in a database-for example using SQL (S403A, S404). In step S403B, the CGI script returns information to the client, which includes a response header which indicates (among other information), that the return type is an image, that this resource should not be cached by the client, and if no client ID is set and the client supports it, that a client ID is to be set to a value generated by the script. |

**Appendix B-7**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,422,577 Over U.S. Patent No. 5,347,632 (Davis)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,796,952 (Davis) |
|---|---|
| | *See also* col. 18, lines 8-26.<br><br>It should also be appreciated that while in the preferred embodiments the tracking program uses the HTTP and TCP/IP protocols, other network data transmission protocols could be used that implement the same functionality. Moreover, use of an HTML formatted Web page is not necessary. The information supplied to the user may not be in the form of an HTML or Web document such as a Web page, but can be some other form of information. In addition, the tracking program need not be downloaded to the client from the server, but can be an added module to the client application or Web browser running on the client, or may be stored elsewhere on the client machine. For example, in the former case, added modules could be plug-ins and in the latter case could be referred to as cached resources. In such cases, the client application or Web browser would include appropriate means to enable activation of the tracking program and the uploading of a client profile based upon the user's interaction with a Web page or network resource.<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 17* | |
| [17a] An apparatus for dynamically forming a customized web page for a first type network node at a second type network node, | Davis discloses an apparatus for dynamically forming a customized web page for a first type network node at a second type network node.<br><br>*See* claim limitation [1a].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it |

- 75 -

**Appendix B-7**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,422,577 Over U.S. Patent No. 5,347,632 (Davis)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,796,952 (Davis) |
|---|---|
| comprising: | would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [17b] means for forming at least a page file for the first type network node; | Davis discloses means for forming at least a page file for the first type network node.<br><br>*See* claim limitation [1b].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [17c] means for forming at least a page file for the second type network node; | Davis discloses means for forming at least a page file for the second type network node.<br><br>*See* claim limitation [1c].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [17d] means for receiving a service request from the first type network node; | Davis discloses means for receiving a service request from the first type network node.<br><br>*See* claim limitation [1d].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [17e] means for identifying the first type network node based on the service request; | Davis discloses means for identifying the first type network node based on the service request. |

Appendix B-7

**Invalidity of the Asserted Claims of U.S. Patent No. 6,422,577 Over U.S. Patent No. 5,347,632 (Davis)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,796,952 (Davis) |
|---|---|
| and | *See* claim limitation [1e].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [17f] means for forming a customized page file formed for the first type network node by including the page file formed for the first type network node within the page file for the second type network node. | Davis discloses means for forming a customized page file formed for the first type network node by including the page file formed for the first type network node within the page file for the second type network node.<br><br>*See* claim limitation [1f].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 18* | |
| [18] The apparatus of claim 17, wherein the first type network node is an ISP node, and the second type network node is an ICP node. | Davis discloses that the first type network node is an ISP node, and the second type network node is an ICP node.<br><br>*See* claim limitation [2].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 19* | |
| [19] The apparatus of claim | Davis discloses that the first type network node is an organization node, and the second type network |

Appendix B-7

**Invalidity of the Asserted Claims of U.S. Patent No. 6,422,577 Over U.S. Patent No. 5,347,632 (Davis)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,796,952 (Davis) |
|---|---|
| 17, wherein the first type network node is an organization node, and the second type network node is an ICP node. | node is an ICP node.<br><br>*See* claim limitation [3].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 20* | |
| [20] The apparatus of claim 17, wherein the customized page file includes customized graphics, sounds, applets, links, and text. | Davis discloses that the customized page file includes customized graphics, sounds, applets, links, and text.<br><br>*See* claim limitation [4].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 21* | |
| [21] The apparatus of claim 17, wherein the customized page file includes customized advertisements. | Davis discloses that the customized page file includes customized advertisements.<br><br>*See* claim limitation [5].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |

**Appendix B-7**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,422,577 Over U.S. Patent No. 5,347,632 (Davis)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,796,952 (Davis) |
|---|---|
| *Claim 22* | |
| [22a] An apparatus for providing web page customization service to a plurality of first type network nodes at a second type network node, comprising: | Davis discloses an apparatus for providing web page customization service to a plurality of first type network nodes at a second type network node.<br><br>*See* claim limitation [7a].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [22b] means for forming at least a page file for each of the first type network nodes; | Davis discloses means for forming at least a page file for each of the first type network nodes.<br><br>*See* claim limitation [7b].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [22c] means for forming at least a page file for the second type network node; | Davis discloses means for forming at least a page file for the second type network node.<br><br>*See* claim limitation [7c].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [22d] means for receiving a service request from one of | Davis discloses means for receiving a service request from one of the first type network nodes. |

**Appendix B-7**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,422,577 Over U.S. Patent No. 5,347,632 (Davis)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,796,952 (Davis) |
|---|---|
| the first type network nodes; | *See* claim limitation [7d].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [22e] means for determining whether the first type network node participates in the web page customization service; | Davis discloses means for determining whether the first type network node participates in the web page customization service.<br><br>*See* claim limitation [7e].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [22f] means for forming a customized page file for the service request by including the page file formed for the first type network node within the page file formed for the second type network node, if the first type network node participates in the web page customization service; and | Davis discloses means for forming a customized page file for the service request by including the page file formed for the first type network node within the page file formed for the second type network node, if the first type network node participates in the web page customization service.<br><br>*See* claim limitation [7f].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [22g] means for forming a page file for the service request by using the page | To the extent it is found that Davis does not disclose this feature expressly or inherently, it would have been obvious to combine Davis with the knowledge of a person of ordinary skill and/or other |

**Appendix B-7**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,422,577 Over U.S. Patent No. 5,347,632 (Davis)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,796,952 (Davis) |
|---|---|
| file formed for the second type network node, if the first type network node does not participate in the web page customization service. | prior art references to obtain the claimed subject matter.<br><br>*See* claim limitation [7g].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 23* | |
| [23] The apparatus of claim 22, wherein the first type network nodes are ISP nodes, and the second type network node is an ICP node. | Davis discloses that the first type network nodes are ISP nodes, and the second type network node is an ICP node.<br><br>*See* claim limitation [8].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 24* | |
| [24] The apparatus of claim 22, wherein the first type network nodes are organization nodes, and the second type network node is an ICP node. | Davis discloses that the first type network nodes are organization nodes, and the second type network node is an ICP node.<br><br>*See* claim limitation [9].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |

**Appendix B-7**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,422,577 Over U.S. Patent No. 5,347,632 (Davis)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,796,952 (Davis) |
|---|---|
| *Claim 25* | |
| [25] The apparatus of claim 22, wherein the customized page file includes customized graphics, sounds, applets, links, and text. | Davis discloses that the customized page file includes customized graphics, sounds, applets, links, and text.<br><br>*See* claim limitation [10].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 26* | |
| [26] The apparatus of claim 25, wherein the customized page file includes customized advertisements. | Davis discloses that the customized page file includes customized advertisements.<br><br>*See* claim limitation [11]. |
| *Claim 27* | |
| [27a] An apparatus for providing web page customization service to a plurality of first type network nodes at a second type network node, comprising: | Davis discloses an apparatus for providing web page customization service to a plurality of first type network nodes at a second type network node.<br><br>*See* claim limitation [13a].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |

- 82 -

**Appendix B-7**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,422,577 Over U.S. Patent No. 5,347,632 (Davis)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,796,952 (Davis) |
|---|---|
| [27b] means for forming a plurality of advertisements for the first type network nodes; | Davis discloses means for forming a plurality of advertisements for the first type network nodes.<br><br>*See* claim limitation [13b].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [27c] means for forming at least a page file for the second type network node; | Davis discloses means for forming at least a page file for the second type network node.<br><br>*See* claim limitation [13c].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [27d] means for receiving a service request from one of the first type network nodes; | Davis discloses means for receiving a service request from one of the first type network nodes.<br><br>*See* claim limitation [13d].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [27e] means for identifying advertisements for the first type network node; and | Davis discloses means for identifying advertisements for the first type network node.<br><br>*See* claim limitation [13e].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill |

Appendix B-7

**Invalidity of the Asserted Claims of U.S. Patent No. 6,422,577 Over U.S. Patent No. 5,347,632 (Davis)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,796,952 (Davis) |
|---|---|
|  | and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [27f] means for forming a customized page file for the first type network node by including the identified advertisements within the page file formed for the second type network node. | Davis discloses means for forming a customized page file for the first type network node by including the identified advertisements within the page file formed for the second type network node.<br><br>*See* claim limitation [13f].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 28* |  |
| [28] The apparatus of claim 27, wherein the first type network nodes are ISP nodes, and the second type network node is an ICP node. | Davis discloses that the first type network nodes are ISP nodes, and the second type network node is an ICP node.<br><br>*See* claim limitation [14].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 29* |  |
| [29] The apparatus of claim 27, wherein the first type network nodes are organization nodes, and the second type network node is | Davis discloses that the first type network nodes are organization nodes, and the second type network node is an ICP node.<br><br>*See* claim limitation [15].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it |

**Appendix B-7**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,422,577 Over U.S. Patent No. 5,347,632 (Davis)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,796,952 (Davis) |
|---|---|
| an ICP node. | would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 30* | |
| [30] The apparatus of claim 27, wherein the identified advertisements do not cause negative impact on the owner of the first type network node. | Davis discloses that the identified advertisements do not cause negative impact on the owner of the first type network node.

*See* claim limitation [16].

To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |

**Appendix B-8**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,809,242 (Shaw)**

U.S. Patent No. 5,809,242 to Shaw et al. ("Shaw") is prior art to U.S. Patent No. 6,442,577 ("the '577 patent") under 35 U.S.C. 102(a) because it issued as a U.S. patent on Sept. 15, 1998, which is prior to the Nov. 3, 1998 filing date of the '577 patent. Further, Shaw is prior art to the '577 patent under 35 U.S.C. 102(e) because it issued from a U.S. patent application filed on Apr. 19, 1996, which is prior to the Nov. 3, 1998 filing date of the '577 patent.

As detailed in this chart, Shaw anticipates at least claims 1–30 of the '577 patent. In addition or in the alternative, claims 1–30 of the '577 patent are obvious over Shaw in view of the knowledge of a person of ordinary skill and/or one or more other references, as detailed in Appendix C.

This chart is based in whole or in part on the present understanding of positions taken by PageMelding regarding the coverage, scope and construction of the asserted claims to the extent those positions can be deduced from PageMelding's contentions pursuant to Patent Local Rule 3-1 served on August 3, 2012. Nothing herein is an admission that PageMelding's infringement contentions are correct, an admission that Plaintiff's apparent claim constructions are correct, or an admission that ESPN's technology infringes any asserted claim.

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,809,242 (Shaw)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,809,242 (Shaw) |
|---|---|
| *Claim 1* | |
| [1a] A method for dynamically forming customized web pages for a first type network node at a second type network node, comprising the steps of: | Shaw discloses a method for dynamically forming customized web pages for a first type network node at a second type network node. To the extent it is found that Shaw does not disclose this feature expressly or inherently, it would have been obvious to combine Shaw with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| | *See* Abstract. |
| | A system for providing scheduled messages to a remote user in a batch oriented system. In a preferred embodiment of the present invention, a user creates and/or reads electronic mail locally. While the user creates the electronic mail, a message is displayed to the user on a portion of the local monitor, the message preferably changing in accordance with a local display schedule and stored on a local storage device. The message is preferably targeted to the particular user. When the user is ready to transmit the e-mail created and/or receive e-mail addressed to him, the user's local client establishes a connection via a modem with a remote e-mail server system. The remote e-mail server system not only receives the e-mail transmitted by the user and/or transmits e-mail addressed to the user, but also updates the user's local messages in accordance with a distribution schedule. After the e-mail and message updates are transmitted, the user's local client computer is disconnected from the remote e-mail server system. |
| | *See also* col. l, lines 8-11. |
| | The present invention is directed to an electronic mail system that displays advertisements to remote users, and in particular, to a system that displays targeted advertisements to remote users when the users are off-line. |
| | *See also* col. 13, lines 39-47. |
| | In the representative embodiment, each banner advertisement 800 is replaced by another one of the stored banner advertisements after a predetermined time has elapsed. The banner advertisement is continuously updated or replaced by the client computer 101 while the client program of the present invention is executing. Each banner advertisement 800 is displayed for a predetermined time and in |

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,809,242 (Shaw)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,809,242 (Shaw) |
|---|---|
|  | accordance with a schedule that is preset or determined by the client program "on-the-fly".<br><br>*See also* Figs. 1, 5, 6, 8, 10-12 and associated text.<br><br>*See also* claim limitations [1a] through [1f]. |
| [1b] forming at least a page file for the first type network node; | Shaw discloses forming at least a page file for the first type network node.  To the extent it is found that Shaw does not disclose this feature expressly or inherently, it would have been obvious to combine Shaw with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter.  *See* Appendix C.<br><br>*See* col. 3, line 56 to col. 4, line 10.<br><br>In the representative embodiment, a user can use the client program to read, write, edit, send, receive and store electronic mail ("e-mail").  The term e-mail when used herein includes messages that are transmitted over a communications network, computer to computer.  E-mail messages include text messages, graphics, formatted documents and files, sound files, MPEG files and the like.  It will be appreciated, however, that the principles of the present invention will apply to other types of computer based communications other than e-mail.  Sending E-Mail: Using the client program, the user composes one or more e-mail messages.  The messages include the e-mail address of the intended recipient.  The user composes the messages while off-line, i.e., when the user is composing a message, the client computer is not connected to the server system.  While composing e-mail messages, advertisements are displayed to the user by the client program.  The advertisements can be displayed in a separate window, e.g., in a small window at the top of the screen of the client computer.  When finished composing e-mail messages, the user instructs the client program to send the e-mail messages to the intended recipients.<br><br>*See also* col. 4, lines 39-47.<br><br>During the connection and transmission process, advertisements are displayed to the user by the client program.  Using the client program, the user can read the received e-mail messages.  The user reads e- |

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,809,242 (Shaw)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,809,242 (Shaw) |
|---|---|
| | mail received while off-line, i.e., when the user is reading messages, the client computer is not connected to the server system. While reading e-mail messages, advertisements are displayed to the user by the client program. <br><br> *See also* col. 5, lines 2-24. <br><br> Targeted Advertisements: <br><br> When first using the system of the present invention, the user completes a member profile (or survey) at the client computer. The member profile records information about the user, e.g., hobbies, interests, employment, education, sports, demographics, etc. The client program transmits the member profile to the server system when the user's client program first establishes a connection with the server system (e.g., on initial sign-up). The member profile is stored in the database management system of the server system. The server system utilizes the information in the member profile to determine which advertisements should be directed to the user. Accordingly, an advertisement distribution scheduler of the server system decides which advertisements are eligible for distribution for each user. Whenever a user (i.e., the client program of the user) establishes a connection with the server system (e.g., to send and/or receive mail), eligible advertisements can be transmitted from the server system to the client program and stored on a memory device (e.g., a hard disk drive) of the client computer. <br><br> *See also* col. 7, lines 34-42. <br><br> The advertisements displayed to users are not correlated with a user's e-mail in anyway. Thus, the advertisements can be regarded as context independent. The e-mail messages come from a different source than that of the advertisements (e.g., the e-mail messages originate from other network users, while the advertisements originate from advertisers). Advertisements that are transferred to a client computer are not in anyway related to the content of the e-mail messages that may be transferred to or from the client computer. <br><br> *See also* col. 8, line 43 to col. 9, line 7. |

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,809,242 (Shaw)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,809,242 (Shaw) |
|---|---|
| | Referring now to the drawings, FIG. 1 illustrates an exemplary system configuration 100 of a representative embodiment of the present invention. The representative embodiment is described in reference to an electronic mail system where a number of users can create, send, receive and read e-mail messages. E-mail messages can be sent between users of the present invention and external users who have e-mail accounts. However, the principles of the present invention should not be regarded as limited solely to e-mail systems. For example, the principles of the present invention apply to on-line services that present advertising to users while the user is accessing other content. Thus, an e-mail message may be regarded as an example of content provided to a user. As shown in FIG. 1, a client computer 101, preferably a workstation or personal computer, executes a client program. The client computer can be used by one or more users. Connected to the client computer 101 is a communication interface 102 for allowing the client computer 101 to communicate with other computer systems. The communication interface may be, for example, a modem operating at 14.4 or 28.8 kilobits per second. As illustrated, the communications interface 102 is external to the client computer 101, but a communication interface 102 that is internal to or part of the client computer 101 is also acceptable. Although the communication interface 102 illustrated is a modem, the communication interface 102 alternatively could be a network interface unit or a network card or the like for providing connectivity to other computer systems over a network using such protocols as X.25, Ethernet, or TCP/IP, or any device that allows, directly or indirectly, computer-to-computer communications.<br><br>*See also* col. 9, lines 31-56.<br><br>Referring again to FIG. 1, the client computer 101 selectively communicates with a server system 104 over the network 103 using the communication interface 102. The server system 104 is coupled to the network 103 via a communications server 105. Although FIG. 1 shows only one client computer 101, it will be appreciated that the representative embodiment of the present invention can include many client computers 101 each capable of being coupled to the server system 104. The server system 104 is preferably a computer system designed to communicate electronic mail (e-mail) messages. In the representative embodiment, the server system 104 is coupled to one or more external networks 107, such as the Internet, that allow for the sending and receiving of e-mail messages. The server system 104, acting as an intermediary, receives e-mail messages from and causes e-mail messages to be sent |

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,809,242 (Shaw)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,809,242 (Shaw) |
|---|---|
| | to users who have established an account with the server system 104 and with external parties with e-mail addresses, such as Internet users or users of proprietary on-line services. According to the present invention, the server system 104 also provides other information to and receives information from users of client computers 101, such as, for example, advertisements, software patches, statistical information, etc., as discussed in detail below.<br><br>*See also* col. 13, lines 5-29.<br><br>The client computer 101 displays advertisements on a portion of the user's display terminal 202 (step 501). As illustrated, advertisements are displayed continuously during the operation of the client software, and in particular, when the client computer 101 is not in communication with the server system 104. This is possible because the advertisements are stored on the client computer 101. In the representative embodiment there are two types of advertisements. Banner advertisements 800 are displayed at step 501 when the user is reading and creating e-mail messages, or performing other administrative tasks, e.g., moving e-mail messages between folders. In the representative embodiment, banner advertisements 800 are displayed in a box at the top right side of the window (see FIGS. 8 and 12). Showcase advertisements are displayed whenever the user is attempting to establish a connection with the server system 104 and when information is being transferred between the client computer 101 and the server system 104. The banner and showcase advertisements may be textual, graphical, or video data (or combinations thereof) and may be stored in a standard compressed data format, such as JPEG or MPEG, or in a proprietary format, or in an uncompressed format. Typically, advertisements are simple graphics files. Sounds may also be included.<br><br>*See also* Figs. 1, 5, 6, 8, 10-12 and associated text. |
| [1c] forming at least a page file for the second type network node; | Shaw discloses forming at least a page file for the second type network node. To the extent it is found that Shaw does not disclose this feature expressly or inherently, it would have been obvious to combine Shaw with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,809,242 (Shaw)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,809,242 (Shaw) |
|---|---|
|  | *See* col. 3, line 56 to col. 4, line 10. |
|  | In the representative embodiment, a user can use the client program to read, write, edit, send, receive and store electronic mail ("e-mail"). The term e-mail when used herein includes messages that are transmitted over a communications network, computer to computer. E-mail messages include text messages, graphics, formatted documents and files, sound files, MPEG files and the like. It will be appreciated, however, that the principles of the present invention will apply to other types of computer based communications other than e-mail. Sending E-Mail: Using the client program, the user composes one or more e-mail messages. The messages include the e-mail address of the intended recipient. The user composes the messages while off-line, i.e., when the user is composing a message, the client computer is not connected to the server system. While composing e-mail messages, advertisements are displayed to the user by the client program. The advertisements can be displayed in a separate window, e.g., in a small window at the top of the screen of the client computer. When finished composing e-mail messages, the user instructs the client program to send the e-mail messages to the intended recipients. |
|  | *See also* col. 7, lines 34-42. |
|  | The advertisements displayed to users are not correlated with a user's e-mail in anyway. Thus, the advertisements can be regarded as context independent. The e-mail messages come from a different source than that of the advertisements (e.g., the e-mail messages originate from other network users, while the advertisements originate from advertisers). Advertisements that are transferred to a client computer are not in anyway related to the content of the e-mail messages that may be transferred to or from the client computer. |
|  | *See also* col. 8, line 43 to col. 9, line 7. |
|  | Referring now to the drawings, FIG. 1 illustrates an exemplary system configuration 100 of a representative embodiment of the present invention. The representative embodiment is described in reference to an electronic mail system where a number of users can create, send, receive and read e-mail messages. E-mail messages can be sent between users of the present invention and external users |

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,809,242 (Shaw)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,809,242 (Shaw) |
|---|---|
| | who have e-mail accounts. However, the principles of the present invention should not be regarded as limited solely to e-mail systems. For example, the principles of the present invention apply to on-line services that present advertising to users while the user is accessing other content. Thus, an e-mail message may be regarded as an example of content provided to a user. As shown in FIG. 1, a client computer 101, preferably a workstation or personal computer, executes a client program. The client computer can be used by one or more users. Connected to the client computer 101 is a communication interface 102 for allowing the client computer 101 to communicate with other computer systems. The communication interface may be, for example, a modem operating at 14.4 or 28.8 kilobits per second. As illustrated, the communications interface 102 is external to the client computer 101, but a communication interface 102 that is internal to or part of the client computer 101 is also acceptable. Although the communication interface 102 illustrated is a modem, the communication interface 102 alternatively could be a network interface unit or a network card or the like for providing connectivity to other computer systems over a network using such protocols as X.25, Ethernet, or TCP/IP, or any device that allows, directly or indirectly, computer-to-computer communications. |
| | *See also* col. 9, lines 31-56. |
| | Referring again to FIG. 1, the client computer 101 selectively communicates with a server system 104 over the network 103 using the communication interface 102. The server system 104 is coupled to the network 103 via a communications server 105. Although FIG. 1 shows only one client computer 101, it will be appreciated that the representative embodiment of the present invention can include many client computers 101 each capable of being coupled to the server system 104. The server system 104 is preferably a computer system designed to communicate electronic mail (e-mail) messages. In the representative embodiment, the server system 104 is coupled to one or more external networks 107, such as the Internet, that allow for the sending and receiving of e-mail messages. The server system 104, acting as an intermediary, receives e-mail messages from and causes e-mail messages to be sent to users who have established an account with the server system 104 and with external parties with e-mail addresses, such as Internet users or users of proprietary on-line services. According to the present invention, the server system 104 also provides other information to and receives information from users of client computers 101, such as, for example, advertisements, software patches, statistical |

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,809,242 (Shaw)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,809,242 (Shaw) |
|---|---|
| | information, etc., as discussed in detail below. *See also* Figs. 1, 5, 6, 8, 10-12 and associated text. |
| [1d] receiving a service request from the first type network node; | Shaw discloses receiving a service request from the first type network node. To the extent it is found that Shaw does not disclose this feature expressly or inherently, it would have been obvious to combine Shaw with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. *See* col. 5, lines 5-24. Targeted Advertisements: When first using the system of the present invention, the user completes a member profile (or survey) at the client computer. The member profile records information about the user, e.g., hobbies, interests, employment, education, sports, demographics, etc. The client program transmits the member profile to the server system when the user's client program first establishes a connection with the server system (e.g., on initial sign-up). The member profile is stored in the database management system of the server system. The server system utilizes the information in the member profile to determine which advertisements should be directed to the user. Accordingly, an advertisement distribution scheduler of the server system decides which advertisements are eligible for distribution for each user. Whenever a user (i.e., the client program of the user) establishes a connection with the server system (e.g., to send and/or receive mail), eligible advertisements can be transmitted from the server system to the client program and stored on a memory device (e.g., a hard disk drive) of the client computer. *See also* col. 9, line 62 to col. 10, line 4. Received e-mail messages, addressed to users who have accounts with the server system 104, are stored in the mail servers M0-Mn. According to the representative embodiment of the present invention, each user is assigned to one mail server M0-Mn. Messages received for a user who has an account with the server system 104 are stored in a directory on the mail server M0-Mn assigned to that |

- 9 -

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,809,242 (Shaw)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,809,242 (Shaw) |
|---|---|
| | user account. Each received e-mail message is stored in a file in the intended recipient's directory until the intended recipient requests received e-mail messages, as discussed below.<br><br>*See also* Figs. 1, 5, 6, 8, 10-12 and associated text. |
| [1e] identifying the first type network node based on the service request; and | Shaw discloses identifying the first type network node based on the service request. To the extent it is found that Shaw does not disclose this feature expressly or inherently, it would have been obvious to combine Shaw with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* col. 11, lines 54-60.<br><br>Next, the client program configures the communication interface 102 to operate with the client program (step 302). For example, the client program may ask the user to identify the modem and modem speed or may autodetect the modem and modem speed. The user may also be asked to identify the type of telephone line (e.g., tone or pulse) and whether one must dial a certain number to reach an external line.<br><br>*See also* col. 12, lines 45-58.<br><br>The user's responses (i.e., the completed member profile) are stored on the client computer 101 storage device 206 for future transmission to the server system 104. In the representative embodiment, the member profile is transmitted to the server system 104 when the user first sends receives e-mail. The information can be used by the server system 104 to aid in selecting or targeting advertisements and e-mail messages containing advertisements to desired users. The member profile can be updated by the user and will then be transmitted to the server system 104 when the user next connects with the server system 104 to sent or receive e-mail messages. When transmitted, the member profile is stored at the server system 104 on the database management system 106.<br><br>*See also* Figs. 1, 5, 6, 8, 10-12 and associated text. |

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,809,242 (Shaw)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,809,242 (Shaw) |
|---|---|
| | *See also* claim limitation [1d]. |
| [1f] forming a customized page file formed for the first type network node by including the page file formed for the first type network node within the page file for the second type network node. | Shaw discloses forming a customized page file formed for the first type network node by including the page file formed for the first type network node within the page file for the second type network node. To the extent it is found that Shaw does not disclose this feature expressly or inherently, it would have been obvious to combine Shaw with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.

*See* col. 3, line 56 to col. 4, line 10.

In the representative embodiment, a user can use the client program to read, write, edit, send, receive and store electronic mail ("e-mail"). The term e-mail when used herein includes messages that are transmitted over a communications network, computer to computer. E-mail messages include text messages, graphics, formatted documents and files, sound files, MPEG files and the like. It will be appreciated, however, that the principles of the present invention will apply to other types of computer based communications other than e-mail. Sending E-Mail: Using the client program, the user composes one or more e-mail messages. The messages include the e-mail address of the intended recipient. The user composes the messages while off-line, i.e., when the user is composing a message, the client computer is not connected to the server system. While composing e-mail messages, advertisements are displayed to the user by the client program. The advertisements can be displayed in a separate window, e.g., in a small window at the top of the screen of the client computer. When finished composing e-mail messages, the user instructs the client program to send the e-mail messages to the intended recipients.

*See also* col. 8, line 43 to col. 9, line 7.

Referring now to the drawings, FIG. 1 illustrates an exemplary system configuration 100 of a representative embodiment of the present invention. The representative embodiment is described in reference to an electronic mail system where a number of users can create, send, receive and read e-mail messages. E-mail messages can be sent between users of the present invention and external users who have e-mail accounts. However, the principles of the present invention should not be regarded as |

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,809,242 (Shaw)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,809,242 (Shaw) |
|---|---|
|  | limited solely to e-mail systems.  For example, the principles of the present invention apply to on-line services that present advertising to users while the user is accessing other content.  Thus, an e-mail message may be regarded as an example of content provided to a user.  As shown in FIG. 1, a client computer 101, preferably a workstation or personal computer, executes a client program.  The client computer can be used by one or more users.  Connected to the client computer 101 is a communication interface 102 for allowing the client computer 101 to communicate with other computer systems.  The communication interface may be, for example, a modem operating at 14.4 or 28.8 kilobits per second.  As illustrated, the communications interface 102 is external to the client computer 101, but a communication interface 102 that is internal to or part of the client computer 101 is also acceptable.  Although the communication interface 102 illustrated is a modem, the communication interface 102 alternatively could be a network interface unit or a network card or the like for providing connectivity to other computer systems over a network using such protocols as X.25, Ethernet, or TCP/IP, or any device that allows, directly or indirectly, computer-to-computer communications.<br><br>*See also* col. 13, lines 5-29.<br><br>The client computer 101 displays advertisements on a portion of the user's display terminal 202 (step 501).  As illustrated, advertisements are displayed continuously during the operation of the client software, and in particular, when the client computer 101 is not in communication with the server system 104.  This is possible because the advertisements are stored on the client computer 101.  In the representative embodiment there are two types of advertisements.  Banner advertisements 800 are displayed at step 501 when the user is reading and creating e-mail messages, or performing other administrative tasks, e.g., moving e-mail messages between folders.  In the representative embodiment, banner advertisements 800 are displayed in a box at the top right side of the window (see FIGS. 8 and 12).  Showcase advertisements are displayed whenever the user is attempting to establish a connection with the server system 104 and when information is being transferred between the client computer 101 and the server system 104.  The banner and showcase advertisements may be textual, graphical, or video data (or combinations thereof) and may be stored in a standard compressed data format, such as JPEG or MPEG, or in a proprietary format, or in an uncompressed format.  Typically, |

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,809,242 (Shaw)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,809,242 (Shaw) |
|---|---|
| | advertisements are simple graphics files. Sounds may also be included<br><br>*See also* Figs. 1, 5, 6, 8, 10-12 and associated text.<br><br>*See also* claim limitations [1b] and [1c]. |
| *Claim 2* | |
| [2] The method of claim 1, wherein the first type network node is an ISP node, and the second type network node is an ICP node. | Shaw discloses that the first type network node is an ISP node, and the second type network node is an ICP node. To the extent it is found that Shaw does not disclose this feature expressly or inherently, it would have been obvious to combine Shaw with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* col. 1, lines 60-65.<br><br>An alternative method to connect with the Internet is via an Internet Service Provider. Using a modem, the user dials the access number of the Internet Service Provider, and establishes a connection with a computer "directly" connected to or part of the Internet.<br><br>*See also* col. 9, lines 31-56.<br><br>Referring again to FIG. 1, the client computer 101 selectively communicates with a server system 104 over the network 103 using the communication interface 102. The server system 104 is coupled to the network 103 via a communications server 105. Although FIG. 1 shows only one client computer 101, it will be appreciated that the representative embodiment of the present invention can include many client computers 101 each capable of being coupled to the server system 104. The server system 104 is preferably a computer system designed to communicate electronic mail (e-mail) messages. In the representative embodiment, the server system 104 is coupled to one or more external networks 107, such as the Internet, that allow for the sending and receiving of e-mail messages. The server system 104, acting as an intermediary, receives e-mail messages from and causes e-mail messages to be sent to users who have established an account with the server system 104 and with external parties with e-mail addresses, such as Internet users or users of proprietary on-line services. According to the present |

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,809,242 (Shaw)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,809,242 (Shaw) |
|---|---|
| | invention, the server system 104 also provides other information to and receives information from users of client computers 101, such as, for example, advertisements, software patches, statistical information, etc., as discussed in detail below. |
| | *See also* col. 13, lines 5-29. |
| | The client computer 101 displays advertisements on a portion of the user's display terminal 202 (step 501). As illustrated, advertisements are displayed continuously during the operation of the client software, and in particular, when the client computer 101 is not in communication with the server system 104. This is possible because the advertisements are stored on the client computer 101. In the representative embodiment there are two types of advertisements. Banner advertisements 800 are displayed at step 501 when the user is reading and creating e-mail messages, or performing other administrative tasks, e.g., moving e-mail messages between folders. In the representative embodiment, banner advertisements 800 are displayed in a box at the top right side of the window (see FIGS. 8 and 12). Showcase advertisements are displayed whenever the user is attempting to establish a connection with the server system 104 and when information is being transferred between the client computer 101 and the server system 104. The banner and showcase advertisements may be textual, graphical, or video data (or combinations thereof) and may be stored in a standard compressed data format, such as JPEG or MPEG, or in a proprietary format, or in an uncompressed format. Typically, advertisements are simple graphics files. Sounds may also be included. |
| | *See also* Figs. 1, 5, 6, 8, 10-12 and associated text. |
| | *See also* claim limitation [1a]. |
| *Claim 3* | |
| [3] The method of claim 1, wherein the first type network node is an organization node, and the second type network node is | Shaw discloses that the first type network node is an organization node, and the second type network node is an ICP node. To the extent it is found that Shaw does not disclose this feature expressly or inherently, it would have been obvious to combine Shaw with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,809,242 (Shaw)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,809,242 (Shaw) |
|---|---|
| an ICP node. | *See* col. 9, lines 8-12.<br><br>The client computer 101 is coupled via the communications interface 102 to a network 103. In the representative embodiment, the network 103 is the public telephone network, but it may be, for example, a proprietary wide area network or the like.<br><br>*See also* col. 9, lines 31-56.<br><br>Referring again to FIG. 1, the client computer 101 selectively communicates with a server system 104 over the network 103 using the communication interface 102. The server system 104 is coupled to the network 103 via a communications server 105. Although FIG. 1 shows only one client computer 101, it will be appreciated that the representative embodiment of the present invention can include many client computers 101 each capable of being coupled to the server system 104. The server system 104 is preferably a computer system designed to communicate electronic mail (e-mail) messages. In the representative embodiment, the server system 104 is coupled to one or more external networks 107, such as the Internet, that allow for the sending and receiving of e-mail messages. The server system 104, acting as an intermediary, receives e-mail messages from and causes e-mail messages to be sent to users who have established an account with the server system 104 and with external parties with e-mail addresses, such as Internet users or users of proprietary on-line services. According to the present invention, the server system 104 also provides other information to and receives information from users of client computers 101, such as, for example, advertisements, software patches, statistical information, etc., as discussed in detail below.<br><br>*See also* col. 13, lines 5-29.<br><br>The client computer 101 displays advertisements on a portion of the user's display terminal 202 (step 501). As illustrated, advertisements are displayed continuously during the operation of the client software, and in particular, when the client computer 101 is not in communication with the server system 104. This is possible because the advertisements are stored on the client computer 101. In the representative embodiment there are two types of advertisements. Banner advertisements 800 are displayed at step 501 when the user is reading and creating e-mail messages, or performing other |

- 15 -

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,809,242 (Shaw)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,809,242 (Shaw) |
|---|---|
| | administrative tasks, e.g., moving e-mail messages between folders.  In the representative embodiment, banner advertisements 800 are displayed in a box at the top right side of the window (see FIGS. 8 and 12).  Showcase advertisements are displayed whenever the user is attempting to establish a connection with the server system 104 and when information is being transferred between the client computer 101 and the server system 104.  The banner and showcase advertisements may be textual, graphical, or video data (or combinations thereof) and may be stored in a standard compressed data format, such as JPEG or MPEG, or in a proprietary format, or in an uncompressed format.  Typically, advertisements are simple graphics files.  Sounds may also be included.<br><br>*See also* Figs. 1, 5, 6, 8, 10-12 and associated text.<br><br>*See also* claim limitation [1a]. |
| *Claim 4* | |
| [4] The method of claim 1, wherein the customized page file includes customized graphics, sounds, applets, links, and text. | Shaw discloses that the customized page file includes customized graphics, sounds, applets, links, and text.  To the extent it is found that Shaw does not disclose this feature expressly or inherently, it would have been obvious to combine Shaw with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter.  *See* Appendix C.<br><br>*See* col. 3, lines 60-62.<br>E-mail messages include text messages, graphics, formatted documents and files, sound files, MPEG files and the like.  It will be appreciated, however, that the principles of the present invention will apply to other types of computer based communications other than e-mail.<br><br>*See also* col. 13, lines 5-29.<br><br>The client computer 101 displays advertisements on a portion of the user's display terminal 202 (step 501).  As illustrated, advertisements are displayed continuously during the operation of the client software, and in particular, when the client computer 101 is not in communication with the server system 104.  This is possible because the advertisements are stored on the client computer 101.  In the representative embodiment there are two types of advertisements.  Banner advertisements 800 are |

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,809,242 (Shaw)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,809,242 (Shaw) |
|---|---|
|  | displayed at step 501 when the user is reading and creating e-mail messages, or performing other administrative tasks, e.g., moving e-mail messages between folders. In the representative embodiment, banner advertisements 800 are displayed in a box at the top right side of the window (see FIGS. 8 and 12). Showcase advertisements are displayed whenever the user is attempting to establish a connection with the server system 104 and when information is being transferred between the client computer 101 and the server system 104. The banner and showcase advertisements may be textual, graphical, or video data (or combinations thereof) and may be stored in a standard compressed data format, such as JPEG or MPEG, or in a proprietary format, or in an uncompressed format. Typically, advertisements are simple graphics files. Sounds may also be included.<br><br>*See also* claim limitation [1b]. |
| *Claim 5* |  |
| [5] The method of claim 1, wherein the customized page file includes customized advertisements. | Shaw discloses that the customized page file includes customized advertisements. To the extent it is found that Shaw does not disclose this feature expressly or inherently, it would have been obvious to combine Shaw with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* col. 1, lines 8-11.<br><br>The present invention is directed to an electronic mail system that displays advertisements to remote users, and in particular, to a system that displays targeted advertisements to remote users when the users are offline.<br><br>*See also* col. 3, lines 6-16.<br><br>The present invention is directed to a disconnected electronic mail system that displays targeted advertisements. More particularly, the present invention allows users to view advertisements while receiving, composing, and managing personal electronic communications. In a representative embodiment of the present invention, a "mostly disconnected," highly scalable, client-server architecture is provided for the delivery of personal communications and advertisements. The |

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,809,242 (Shaw)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,809,242 (Shaw) |
|---|---|
| | representative embodiment provides higher performance than existing systems, and consequently lower costs per user.<br><br>*See also* col. 5, lines 5-24.<br><br>Targeted Advertisements:<br><br>When first using the system of the present invention, the user completes a member profile (or survey) at the client computer. The member profile records information about the user, e.g., hobbies, interests, employment, education, sports, demographics, etc. The client program transmits the member profile to the server system when the user's client program first establishes a connection with the server system (e.g., on initial sign-up). The member profile is stored in the database management system of the server system. The server system utilizes the information in the member profile to determine which advertisements should be directed to the user. Accordingly, an advertisement distribution scheduler of the server system decides which advertisements are eligible for distribution for each user. Whenever a user (i.e., the client program of the user) establishes a connection with the server system (e.g., to send and/or receive mail), eligible advertisements can be transmitted from the server system to the client program and stored on a memory device (e.g., a hard disk drive) of the client computer.<br><br>*See also* col. 12, lines 45-58.<br><br>The user's responses (i.e., the completed member profile) are stored on the client computer 101 storage device 206 for future transmission to the server system 104. In the representative embodiment, the member profile is transmitted to the server system 104 when the user first sends or receives e-mail. The information can be used by the server system 104 to aid in selecting or targeting advertisements and e-mail messages containing advertisements to desired users. The member profile can be updated by the user and will then be transmitted to the server system 104 when the user next connects with the server system 104 to sent or receive e-mail messages. When transmitted, the member profile is stored at the server system 104 on the database management system 106. |

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,809,242 (Shaw)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,809,242 (Shaw) |
|---|---|
|  | *See also* col. 13, lines 12-22.<br><br>In the representative embodiment there are two types of advertisements. Banner advertisements 800 are displayed at step 501 when the user is reading and creating e-mail messages, or performing other administrative tasks, e.g., moving e-mail messages between folders. In the representative embodiment, banner advertisements 800 are displayed in a box at the top right side of the window (see FIGS. 8 and 12). Showcase advertisements are displayed whenever the user is attempting to establish a connection with the server system 104 and when information is being transferred between the client computer 101 and the server system 104.<br><br>*See also* Figs. 1, 5, 6, 8, 10-12 and associated text.<br><br>*See also* claim limitation [1b]. |
| *Claim 6* |  |
| [6a] The method of claim 1, wherein: the service request includes an IP address for identifying the first type network node, and | Shaw discloses that the service request includes an IP address for identifying the first type network node. To the extent it is found that Shaw does not disclose this feature expressly or inherently, it would have been obvious to combine Shaw with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* col. 1, lines 44-67.<br>A common computer network used to send and receive e-mail is the Internet. The Internet allows users to send and receive e-mail to and from computers around the world. Typically, each user will have an Internet e-mail address unique to that user, e.g., bob@pto.com. A user with an e-mail account and a computer that can connect to the Internet can easily send and receive e-mail over the Internet. There are a number of ways that a user can connect to the Internet to send and receive e-mail. A user can have an account with a proprietary on-line network, such as, for example, Prodigy, America Online, CompuServe or Microsoft Network. Using a computer with a modem, the user dials up the on-line network's access number and connects to the on-line network. The user can then send and receive e-mail to and from other users of the on-line network and, provided that the on-line network is connected to the Internet, with those having an Internet e-mail address. An alternative method to |

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,809,242 (Shaw)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,809,242 (Shaw) |
|---|---|
| | connect with the Internet is via an Internet Service Provider. Using a modem, the user dials the access number of the Internet Service Provider, and establishes a connection with a computer "directly" connected to or part of the Internet. The user can then operate an e-mail program, such as Eudora, to send and receive e-mail over the Internet.<br><br>*See also* col. 8, line 60 to col. 9, line 7.<br><br>Connected to the client computer 101 is a communication interface 102 for allowing the client computer 101 to communicate with other computer systems. The communication interface may be, for example, a modem operating at 14.4 or 28.8 kilobits per second. As illustrated, the communications interface 102 is external to the client computer 101, but a communication interface 102 that is internal to or part of the client computer 101 is also acceptable. Although the communication interface 102 illustrated is a modem, the communication interface 102 alternatively could be a network interface unit or a network card or the like for providing connectivity to other computer systems over a network using such protocols as X.25, Ethernet, or TCP/IP, or any device that allows, directly or indirectly, computer-to-computer communications.<br><br>*See also* claim limitation [1d]. |
| [6b] identifying the first type network node based on the service request comprises using the IP address included in the service request to identify the first type network node. | Shaw discloses that identifying the first type network node based on the service request comprises using the IP address included in the service request to identify the first type network node. To the extent it is found that Shaw does not disclose this feature expressly or inherently, it would have been obvious to combine Shaw with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* col. 1, lines 44-67.<br><br>A common computer network used to send and receive e-mail is the Internet. The Internet allows users to send and receive e-mail to and from computers around the world. Typically, each user will have an Internet e-mail address unique to that user, e.g., bob@pto.com. A user with an e-mail account and a computer that can connect to the Internet can easily send and receive e-mail over the Internet. |

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,809,242 (Shaw)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,809,242 (Shaw) |
|---|---|
| | There are a number of ways that a user can connect to the Internet to send and receive e-mail.  A user can have an account with a proprietary on-line network, such as, for example, Prodigy, America Online, CompuServe or Microsoft Network.  Using a computer with a modem, the user dials up the on-line network's access number and connects to the on-line network.  The user can then send and receive e-mail to and from other users of the on-line network, and provided that the on-line network is connected to the Internet, with those having an Internet e-mail address.  An alternative method to connect with the Internet is via an Internet Service Provider.  Using a modem, the user dials the access number of the Internet Service Provider, and establishes a connection with a computer "directly" connected to or part of the Internet.  The user can then operate an e-mail program, such as Eudora, to send and receive e-mail over the Internet.  <br><br>*See also* col. 8, line 60 to col. 9, line 7. <br><br>Connected to the client computer 101 is a communication interface 102 for allowing the client computer 101 to communicate with other computer systems.  The communication interface may be, for example, a modem operating at 14.4 or 28.8 kilobits per second.  As illustrated, the communications interface 102 is external to the client computer 101, but a communication interface 102 that is internal to or part of the client computer 101 is also acceptable.  Although the communication interface 102 illustrated is a modem, the communication interface 102 alternatively could be a network interface unit or a network card or the like for providing connectivity to other computer systems over a network using such protocols as X.25, Ethernet, or TCP/IP, or any device that allows, directly or indirectly, computer-to-computer communications.  <br><br>*See also* claim limitation [1e]. |
| *Claim 7* | |
| [7a] A method for providing web page customization service to a plurality of first type network nodes at a | Shaw discloses a method for providing web page customization service to a plurality of first type network nodes at a second type network node.  To the extent it is found that Shaw does not disclose this feature expressly or inherently, it would have been obvious to combine Shaw with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter.  *See* |

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,809,242 (Shaw)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,809,242 (Shaw) |
|---|---|
| second type network node, comprising the steps of: | Appendix C.<br><br>*See* claim limitation [1a]. |
| [7b] forming at least a page file for each of the first type network nodes; | Shaw discloses forming at least a page file for each of the first type network nodes. To the extent it is found that Shaw does not disclose this feature expressly or inherently, it would have been obvious to combine Shaw with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1b]. |
| [7c] forming at least a page file for the second type network node; | Shaw discloses forming at least a page file for the second type network node. To the extent it is found that Shaw does not disclose this feature expressly or inherently, it would have been obvious to combine Shaw with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1c]. |
| [7d] receiving a service request from one of the first type network nodes; | Shaw discloses receiving a service request from one of the first type network nodes. To the extent it is found that Shaw does not disclose this feature expressly or inherently, it would have been obvious to combine Shaw with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1d]. |
| [7e] determining whether the first type network node participates in the web page customization service; | Shaw discloses determining whether the first type network node participates in the web page customization service. To the extent it is found that Shaw does not disclose this feature expressly or inherently, it would have been obvious to combine Shaw with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,809,242 (Shaw)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,809,242 (Shaw) |
|---|---|
| | *See* claim limitation [1e]. |
| [7f] if the first type network node participates in the web page customization service, forming a customized page file for the service request by including the page file formed for the first type network node within the page file formed for the second type network node; and | Shaw discloses, if the first type network node participates in the web page customization service, forming a customized page file for the service request by including the page file formed for the first type network node within the page file formed for the second type network node. To the extent it is found that Shaw does not disclose this feature expressly or inherently, it would have been obvious to combine Shaw with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1f]. |
| [7g] if the first type network node does not participate in the web page customization service, forming a page file for the service request by using the page file formed for the second type network node. | Shaw discloses, if the first type network node does not participate in the web page customization service, forming a page file for the service request by using the page file formed for the second type network node. For example, the second type network node identifies the first type network node based on the service request. If the second type network node fails to identify the first type network node, the second type network node will only form a page file for the service request by using the page file formed for the second type network node. To the extent it is found that Shaw does not disclose this feature expressly or inherently, it would have been obvious to combine Shaw with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1f]. |
| *Claim 8* | |
| [8] The method of claim 7, wherein the first type network nodes are ISP nodes, and the second type network | Shaw discloses that the first type network nodes are ISP nodes, and the second type network node is an ICP node. To the extent it is found that Shaw does not disclose this feature expressly or inherently, it would have been obvious to combine Shaw with the knowledge of a person of ordinary skill and/or |

- 23 -

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,809,242 (Shaw)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,809,242 (Shaw) |
|---|---|
| node is an ICP node. | other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [2]. |
| *Claim 9* | |
| [9] The method of claim 7, wherein the first type network nodes are organization nodes, and the second type network node is an ICP node. | Shaw discloses that the first type network nodes are organization nodes, and the second type network node is an ICP node. To the extent it is found that Shaw does not disclose this feature expressly or inherently, it would have been obvious to combine Shaw with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [3]. |
| *Claim 10* | |
| [10] The method of claim 7, wherein the customized page file includes customized graphics, sounds, applets, links, and text. | Shaw discloses that the customized page file includes customized graphics, sounds, applets, links, and text. To the extent it is found that Shaw does not disclose this feature expressly or inherently, it would have been obvious to combine Shaw with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [4]. |
| *Claim 11* | |
| [11] The method of claim 7, wherein the customized page file includes customized advertisements. | Shaw discloses that the customized page file includes customized advertisements. To the extent it is found that Shaw does not disclose this feature expressly or inherently, it would have been obvious to combine Shaw with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [5]. |
| *Claim 12* | |
| [12a] The method of claim 7, | Shaw discloses that the service request from one of the first type network nodes includes an IP address |

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,809,242 (Shaw)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,809,242 (Shaw) |
|---|---|
| wherein: the service request from one of the first type network nodes includes an IP address for identifying the first type network node, and | for identifying the first type network node. To the extent it is found that Shaw does not disclose this feature expressly or inherently, it would have been obvious to combine Shaw with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [6a]. |
| [12b] determining whether the first type network node participates in the web page customization service comprises using the IPI address included in the service request to identify the first type network node. | Shaw discloses that determining whether the first type network node participates in the web page customization service comprises using the IPI address included in the service request to identify the first type network node. To the extent it is found that Shaw does not disclose this feature expressly or inherently, it would have been obvious to combine Shaw with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [6b]. |
| *Claim 13* | |
| [13a] A method for providing web page customization service to a plurality of first type network nodes at a second type network node, comprising the steps of: | Shaw discloses a method for providing web page customization service to a plurality of first type network nodes at a second type network node. To the extent it is found that Shaw does not disclose this feature expressly or inherently, it would have been obvious to combine Shaw with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1a]. |
| [13b] forming a plurality of advertisements for the first type network nodes; | Shaw discloses forming a plurality of advertisements for the first type network nodes. To the extent it is found that Shaw does not disclose this feature expressly or inherently, it would have been obvious to combine Shaw with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,809,242 (Shaw)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,809,242 (Shaw) |
|---|---|
| | *See* claim limitations [1b] and [5]. |
| [13c] forming at least a page file for the second type network node; | Shaw discloses forming at least a page file for the second type network node. To the extent it is found that Shaw does not disclose this feature expressly or inherently, it would have been obvious to combine Shaw with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1c]. |
| [13d] receiving a service request from one of the first type network nodes; | Shaw discloses receiving a service request from one of the first type network nodes. To the extent it is found that Shaw does not disclose this feature expressly or inherently, it would have been obvious to combine Shaw with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1d]. |
| [13e] identifying advertisements for the first type network node; and | Shaw discloses identifying advertisements for the first type network node. To the extent it is found that Shaw does not disclose this feature expressly or inherently, it would have been obvious to combine Shaw with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitations [1e] and [5]. |
| [13f] forming a customized page file for the first type network node by including the identified advertisements within the page file formed for the second type network node. | Shaw discloses forming a customized page file for the first type network node by including the identified advertisements within the page file formed for the second type network node. To the extent it is found that Shaw does not disclose this feature expressly or inherently, it would have been obvious to combine Shaw with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1f]. |

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,809,242 (Shaw)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,809,242 (Shaw) |
|---|---|
| *Claim 14* | |
| [14] The method of claim 13, wherein the first type network nodes are ISP nodes, and the second type network node is an ICP node. | Shaw discloses that the first type network nodes are ISP nodes, and the second type network node is an ICP node. To the extent it is found that Shaw does not disclose this feature expressly or inherently, it would have been obvious to combine Shaw with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [2]. |
| *Claim 15* | |
| [15] The method of claim 13, wherein the first type network nodes are organization nodes, and the second type network node is an ICP node. | Shaw discloses that the first type network nodes are organization nodes, and the second type network node is an ICP node. To the extent it is found that Shaw does not disclose this feature expressly or inherently, it would have been obvious to combine Shaw with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [3]. |
| *Claim 16* | |
| [16] The method of claim 13, wherein the identified advertisements do not cause negative impact on the owner of the first type network node. | Shaw discloses that the identified advertisements do not cause negative impact on the owner of the first type network node. To the extent it is found that Shaw does not disclose this feature expressly or inherently, it would have been obvious to combine Shaw with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [5]. |
| *Claim 17* | |
| [17a] An apparatus for dynamically forming a customized web page for a first type network node at a second type network node, | Shaw discloses an apparatus for dynamically forming a customized web page for a first type network node at a second type network node. To the extent it is found that Shaw does not disclose this feature expressly or inherently, it would have been obvious to combine Shaw with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix |

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,809,242 (Shaw)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,809,242 (Shaw) |
|---|---|
| comprising: | C.<br><br>*See* claim limitation [1a]. |
| [17b] means for forming at least a page file for the first type network node; | Shaw discloses means for forming at least a page file for the first type network node. To the extent it is found that Shaw does not disclose this feature expressly or inherently, it would have been obvious to combine Shaw with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1b]. |
| [17c] means for forming at least a page file for the second type network node; | Shaw discloses means for forming at least a page file for the second type network node. To the extent it is found that Shaw does not disclose this feature expressly or inherently, it would have been obvious to combine Shaw with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1c]. |
| [17d] means for receiving a service request from the first type network node; | Shaw discloses means for receiving a service request from the first type network node. To the extent it is found that Shaw does not disclose this feature expressly or inherently, it would have been obvious to combine Shaw with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1d]. |
| [17e] means for identifying the first type network node based on the service request; and | Shaw discloses means for identifying the first type network node based on the service request. To the extent it is found that Shaw does not disclose this feature expressly or inherently, it would have been obvious to combine Shaw with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,809,242 (Shaw)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,809,242 (Shaw) |
|---|---|
| | *See* claim limitation [1e]. |
| [17f] means for forming a customized page file formed for the first type network node by including the page file formed for the first type network node within the page file for the second type network node. | Shaw discloses means for forming a customized page file formed for the first type network node by including the page file formed for the first type network node within the page file for the second type network node. To the extent it is found that Shaw does not disclose this feature expressly or inherently, it would have been obvious to combine Shaw with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1f]. |
| *Claim 18* | |
| [18] The apparatus of claim 17, wherein the first type network node is an ISP node, and the second type network node is an ICP node. | Shaw discloses that the first type network node is an ISP node, and the second type network node is an ICP node. To the extent it is found that Shaw does not disclose this feature expressly or inherently, it would have been obvious to combine Shaw with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [2]. |
| *Claim 19* | |
| [19] The apparatus of claim 17, wherein the first type network node is an organization node, and the second type network node is an ICP node. | Shaw discloses that the first type network node is an organization node, and the second type network node is an ICP node. To the extent it is found that Shaw does not disclose this feature expressly or inherently, it would have been obvious to combine Shaw with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [3]. |
| *Claim 20* | |
| [20] The apparatus of claim 17, wherein the customized | Shaw discloses that the customized page file includes customized graphics, sounds, applets, links, and text. To the extent it is found that Shaw does not disclose this feature expressly or inherently, it would |

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,809,242 (Shaw)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,809,242 (Shaw) |
|---|---|
| page file includes customized graphics, sounds, applets, links, and text. | have been obvious to combine Shaw with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [4]. |
| *Claim 21* | |
| [21] The apparatus of claim 17, wherein the customized page file includes customized advertisements. | Shaw discloses that the customized page file includes customized advertisements. To the extent it is found that Shaw does not disclose this feature expressly or inherently, it would have been obvious to combine Shaw with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [5]. |
| *Claim 22* | |
| [22a] An apparatus for providing web page customization service to a plurality of first type network nodes at a second type network node, comprising: | Shaw discloses an apparatus for providing web page customization service to a plurality of first type network nodes at a second type network node. To the extent it is found that Shaw does not disclose this feature expressly or inherently, it would have been obvious to combine Shaw with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [7a]. |
| [22b] means for forming at least a page file for each of the first type network nodes; | Shaw discloses means for forming at least a page file for each of the first type network nodes. To the extent it is found that Shaw does not disclose this feature expressly or inherently, it would have been obvious to combine Shaw with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [7b]. |
| [22c] means for forming at least a page file for the | Shaw discloses means for forming at least a page file for the second type network node. To the extent it is found that Shaw does not disclose this feature expressly or inherently, it would have been obvious |

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,809,242 (Shaw)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,809,242 (Shaw) |
|---|---|
| second type network node; | to combine Shaw with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [7c]. |
| [22d] means for receiving a service request from one of the first type network nodes; | Shaw discloses means for receiving a service request from one of the first type network nodes. To the extent it is found that Shaw does not disclose this feature expressly or inherently, it would have been obvious to combine Shaw with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [7d]. |
| [22e] means for determining whether the first type network node participates in the web page customization service; | Shaw discloses means for determining whether the first type network node participates in the web page customization service. To the extent it is found that Shaw does not disclose this feature expressly or inherently, it would have been obvious to combine Shaw with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [7e]. |
| [22f] means for forming a customized page file for the service request by including the page file formed for the first type network node within the page file formed for the second type network node, if the first type network node participates in the web page customization service; and | Shaw discloses means for forming a customized page file for the service request by including the page file formed for the first type network node within the page file formed for the second type network node, if the first type network node participates in the web page customization service. To the extent it is found that Shaw does not disclose this feature expressly or inherently, it would have been obvious to combine Shaw with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [7f]. |

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,809,242 (Shaw)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,809,242 (Shaw) |
|---|---|
| [22g] means for forming a page file for the service request by using the page file formed for the second type network node, if the first type network node does not participate in the web page customization service. | Shaw discloses means for forming a page file for the service request by using the page file formed for the second type network node, if the first type network node does not participate in the web page customization service. To the extent it is found that Shaw does not disclose this feature expressly or inherently, it would have been obvious to combine Shaw with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [7g]. |
| *Claim 23* | |
| [23] The apparatus of claim 22, wherein the first type network nodes are ISP nodes, and the second type network node is an ICP node. | Shaw discloses that the first type network nodes are ISP nodes, and the second type network node is an ICP node. To the extent it is found that Shaw does not disclose this feature expressly or inherently, it would have been obvious to combine Shaw with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [8]. |
| *Claim 24* | |
| [24] The apparatus of claim 22, wherein the first type network nodes are organization nodes, and the second type network node is an ICP node. | Shaw discloses that the first type network nodes are organization nodes, and the second type network node is an ICP node. To the extent it is found that Shaw does not disclose this feature expressly or inherently, it would have been obvious to combine Shaw with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [9]. |
| *Claim 25* | |
| [25] The apparatus of claim 22, wherein the customized page file includes customized graphics, sounds, applets, | Shaw discloses that the customized page file includes customized graphics, sounds, applets, links, and text. To the extent it is found that Shaw does not disclose this feature expressly or inherently, it would have been obvious to combine Shaw with the knowledge of a person of ordinary skill and/or other |

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,809,242 (Shaw)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,809,242 (Shaw) |
|---|---|
| links, and text. | prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [10]. |
| *Claim 26* | |
| [26] The apparatus of claim 25, wherein the customized page file includes customized advertisements. | Shaw discloses that the customized page file includes customized advertisements. To the extent it is found that Shaw does not disclose this feature expressly or inherently, it would have been obvious to combine Shaw with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [11]. |
| *Claim 27* | |
| [27a] An apparatus for providing web page customization service to a plurality of first type network nodes at a second type network node, comprising: | Shaw discloses an apparatus for providing web page customization service to a plurality of first type network nodes at a second type network node. To the extent it is found that Shaw does not disclose this feature expressly or inherently, it would have been obvious to combine Shaw with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [13a]. |
| [27b] means for forming a plurality of advertisements for the first type network nodes; | Shaw discloses means for forming a plurality of advertisements for the first type network nodes. To the extent it is found that Shaw does not disclose this feature expressly or inherently, it would have been obvious to combine Shaw with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [13b]. |
| [27c] means for forming at least a page file for the | Shaw discloses means for forming at least a page file for the second type network node. To the extent it is found that Shaw does not disclose this feature expressly or inherently, it would have been obvious to combine Shaw with the knowledge of a person of ordinary skill and/or other prior art references to |

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,809,242 (Shaw)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,809,242 (Shaw) |
|---|---|
| second type network node; | obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [13c]. |
| [27d] means for receiving a service request from one of the first type network nodes; | Shaw discloses means for receiving a service request from one of the first type network nodes. To the extent it is found that Shaw does not disclose this feature expressly or inherently, it would have been obvious to combine Shaw with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [13d]. |
| [27e] means for identifying advertisements for the first type network node; and | Shaw discloses means for identifying advertisements for the first type network node. To the extent it is found that Shaw does not disclose this feature expressly or inherently, it would have been obvious to combine Shaw with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [13e]. |
| [27f] means for forming a customized page file for the first type network node by including the identified advertisements within the page file formed for the second type network node. | Shaw discloses means for forming a customized page file for the first type network node by including the identified advertisements within the page file formed for the second type network node. To the extent it is found that Shaw does not disclose this feature expressly or inherently, it would have been obvious to combine Shaw with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [13f]. |
| *Claim 28* | |
| [28] The apparatus of claim 27, wherein the first type network nodes are ISP nodes, and the second type network | Shaw discloses that the first type network nodes are ISP nodes, and the second type network node is an ICP node. To the extent it is found that Shaw does not disclose this feature expressly or inherently, it would have been obvious to combine Shaw with the knowledge of a person of ordinary skill and/or |

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,809,242 (Shaw)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,809,242 (Shaw) |
|---|---|
| node is an ICP node. | other prior art references to obtain the claimed subject matter.  *See* Appendix C.  *See* claim limitation [14]. |
| *Claim 29* | |
| [29] The apparatus of claim 27, wherein the first type network nodes are organization nodes, and the second type network node is an ICP node. | Shaw discloses that the first type network nodes are organization nodes, and the second type network node is an ICP node.  To the extent it is found that Shaw does not disclose this feature expressly or inherently, it would have been obvious to combine Shaw with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter.  *See* Appendix C.  *See* claim limitation [15]. |
| *Claim 30* | |
| [30] The apparatus of claim 27, wherein the identified advertisements do not cause negative impact on the owner of the first type network node. | Shaw discloses that the identified advertisements do not cause negative impact on the owner of the first type network node.  To the extent it is found that Shaw does not disclose this feature expressly or inherently, it would have been obvious to combine Shaw with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter.  *See* Appendix C.  *See* claim limitation [16]. |

**Appendix B-9**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,819,092 (Ferguson '092)**

U.S. Patent No. 5,819,092 to Ferguson et al. ("Ferguson '092") is prior art to U.S. Patent No. 6,442,577 ("the '577 patent") under 35 U.S.C. 102(a) because it issued as a U.S. patent on Oct. 6, 1998, which is prior to the Nov. 3, 1998 filing date of the '577 patent. Further, Ferguson '092 is prior art to the '577 patent under 35 U.S.C. 102(e) because it claims priority to a patent application filed on Nov. 8, 1994, which is prior to the Nov. 3, 1998 filing date of the '577 patent.

As detailed in this chart, Ferguson '092 anticipates at least claims 1–30 of the '577 patent. In addition or in the alternative, claims 1–30 of the '577 patent are obvious over Ferguson '092 in view of the knowledge of a person of ordinary skill and/or one or more other references, as detailed in Appendix C.

This chart is based in whole or in part on the present understanding of positions taken by PageMelding regarding the coverage, scope and construction of the asserted claims to the extent those positions can be deduced from PageMelding's contentions pursuant to Patent Local Rule 3-1 served on August 3, 2012. Nothing herein is an admission that PageMelding's infringement contentions are correct, an admission that Plaintiff's apparent claim constructions are correct, or an admission that ESPN's technology infringes any asserted claim.

**Appendix B-9**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,819,092 (Ferguson '092)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,819,092 (Ferguson '092) |
|---|---|
| *Claim 1* | |
| [1a] A method for dynamically forming customized web pages for a first type network node at a second type network node, comprising the steps of: | Ferguson '092 discloses a method for dynamically forming customized web pages for a first type network node at a second type network node. To the extent it is found that Ferguson '092 does not disclose this feature expressly or inherently, it would have been obvious to combine Ferguson '092 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* col. 15, lines 12–23.<br>Referring to FIG. 4, the Publishing Designer 420 is used to design electronic Publishing subservices. An Electronic Publishing subservice provides a user with an electronic edition of a newspaper or magazine that the user may download to the user's local client hardware. An Electronic Publishing subservice can create a customized daily newspaper, that provides only news stories that match certain criteria provided previously by the user. Downloaded material may take the form of static documents, or hypermedia documents with images, sound, video, and hyperlinks to move through the hypermedia document.<br><br>*See also* col. 14, lines 39–44.<br>The online service provider controls the content of a Reference subservice. However, the online service allows the user to submit additional personal entries that are seamlessly integrated into the subservice, but are only *Seen* by that user. These personal entries can be stored within the service repository of the client hardware system.<br><br>*See also* col. 3, lines 47–55.<br>Third, an online service may charge a content provider for placing certain information on the online service. For example, a content provider can be charged for placing an advertisement on the online service. Finally, a content provider can be paid by the online service for providing information that users may wish to access, can be can be provided on a for-fee basis. Conversely, an online service provider may wish to pay third party content providers for placing useful material on the online service |

**Appendix B-9**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,819,092 (Ferguson '092)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,819,092 (Ferguson '092) |
|---|---|
| | *See also* col. 10, lines 1–11.<br>Another type of online service the development tool can create is a service that selects specific items from a collection of newsfeeds, based on a user's previously registered interests, and assembles a customized electronic newspaper for which the user is charged a fee. Payment for any transaction with any online service can be handled using secure, authenticated electronic transaction techniques as is well known in the art. Alternatively, other methods of payment such as credit card payment, electronic funds transfer, or external payment mechanisms (e.g., mailing a check) can be used.<br><br>*See also* col. 16, lines 57–59.<br>When the data is distributed, it still appears to the developer and user as a seamless whole.<br><br>*See also* claim limitations [1a] through [1f]. |
| [1b] forming at least a page file for the first type network node; | Ferguson '092 discloses forming at least a page file for the first type network node. To the extent it is found that Ferguson '092 does not disclose this feature expressly or inherently, it would have been obvious to combine Ferguson '092 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* col. 15, lines 12–23.<br>Referring to FIG. 4, the Publishing Designer 420 is used to design electronic Publishing subservices. An Electronic Publishing subservice provides a user with an electronic edition of a newspaper or magazine that the user may download to the user's local client hardware. An Electronic Publishing subservice can create a customized daily newspaper, that provides only news stories that match certain criteria provided previously by the user. Downloaded material may take the form of static documents, or hypermedia documents with images, sound, video, and hyperlinks to move through the hypermedia document.<br><br>*See also* col. 14, lines 39–44. |

Appendix B-9

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,819,092 (Ferguson '092)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,819,092 (Ferguson '092) |
|---|---|
| | The online service provider controls the content of a Reference subservice. However, the online service allows the user to submit additional personal entries that are seamlessly integrated into the subservice, but are only *See*n by that user. These personal entries can be stored within the service repository of the client hardware system. |
| | *See also* col. 3, lines 47–55. |
| | Third, an online service may charge a content provider for placing certain information on the online service. For example, a content provider can be charged for placing an advertisement on the online service. Finally, a content provider can be paid by the online service for providing information that users may wish to access, can be can be provided on a for-fee basis. Conversely, an online service provider may wish to pay third party content providers for placing useful material on the online service. |
| | *See also* col. 16, lines 22–32. |
| | The "content" of an online service is the information that the each of the subservices delivers to users. Some of the content of an online service can be static, provided by the developer when the online service is designed; and some of the content can be dynamic, provided by the developer or other users at run-time without requiring further online service design work. Examples of static content includes the screen displays for different regions of an online service. Examples of dynamic content includes bulletin board messages written by users and classified advertisements submitted by users. |
| [1c] forming at least a page file for the second type network node; | Ferguson '092 discloses forming at least a page file for the second type network node. To the extent it is found that Ferguson '092 does not disclose this feature expressly or inherently, it would have been obvious to combine Ferguson '092 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| | *See* Abstract. |
| | The fee structure can handle both fees levied against users and third party content providers. For |

- 4 -

**Appendix B-9**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,819,092 (Ferguson '092)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,819,092 (Ferguson '092) |
|---|---|
| | example, users can be levied fees for logging onto an online service, performing searches, or downloading information. Third party content providers can be levied fees for submitting advertisements or for executing a transaction with a user. Similarly, the fee setting tool also allows the developer to assign a payment system whereby users or content providers can be paid for certain actions. A user may be paid when that user that fills out a marketing questionnaire or wins a contest. A third party content provider can be paid when that third party content provider supplies valuable information desired by the users of the online service. <br><br> *See also* col. 16, lines 22–32. <br> The "content" of an online service is the information that the each of the subservices delivers to users. Some of the content of an online service can be static, provided by the developer when the online service is designed; and some of the content can be dynamic, provided by the developer or other users at run-time without requiring further online service design work. Examples of static content includes the screen displays for different regions of an online service. Examples of dynamic content includes bulletin board messages written by users and classified advertisements submitted by users. <br><br> *See also* col. 15, lines 12–23. <br> Referring to FIG. 4, the Publishing Designer 420 is used to design electronic Publishing subservices. An Electronic Publishing subservice provides a user with an electronic edition of a newspaper or magazine that the user may download to the user's local client hardware. An Electronic Publishing subservice can create a customized daily newspaper, that provides only news stories that match certain criteria provided previously by the user. Downloaded material may take the form of static documents, or hypermedia documents with images, sound, video, and hyperlinks to move through the hypermedia document. <br><br> *See also* col. 12, lines 58–65. <br> . . . Each online service consists of one or more types of "subservices." Each subservice is a server program for handling a particular type of online service user interaction. Each subservice program has an associated database that stores the information that can be provided to the user and a set of scripts |

**Appendix B-9**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,819,092 (Ferguson '092)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,819,092 (Ferguson '092) |
|---|---|
| | for handling events.<br><br>*See also* col. 12, lines 10–13.<br>Replication of online service content: The service's content and structure can be replicated to other online services on-demand or on an automatic, regularly scheduled basis.<br><br>*See also* col. 3, lines 47–55.<br>Third, an online service may charge a content provider for placing certain information on the online service. For example, a content provider can be charged for placing an advertisement on the online service. Finally, a content provider can be paid by the online service for providing information that users may wish to access, can be can be provided on a for-fee basis. Conversely, an online service provider may wish to pay third party content providers for placing useful material on the online service.<br><br>*See also* col. 11, lines 9–26.<br>Support for communication between different online services: Service-to-Service Protocol is a communication protocol whereby different online services can communicate information. Using the Service-to-Service protocol of the present invention, an online service can: (1) transfer control to another online service; (2) act on behalf of the user to query or update another online service; (3) automatically update another online service without user initiation; (4) appear to be seamlessly part of another online service; (5) keep a record of how many times users traverse to another online service; (6) pass along automatic user registration data to another online service; (7) automatically register a new online service with a service-of-services or "yellow pages" service; (8) check whether another server is running a particular online service or type of service; and (9) exchange usage and metering information, for aggregation and later analysis.<br><br>*See also* col. 12, lines 52–54.<br>Searching and connecting to other online services: Allows a user to access a service-of-services which |

**Appendix B-9**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,819,092 (Ferguson '092)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,819,092 (Ferguson '092) |
|---|---|
|  | will search and connect to other online services.<br><br>*See also* col. 13, lines 29–38.<br>The Online Designer includes specific Designer Subtools for designing each different type of subservice. In general, an online service may include more than one subservice of the same type or of different types. The following nine types of subservices are examples of subservices supported by the Online Designer: Hyperdocument/Commerce, Directory Lookup, Classified Advertisement, Reference, Bulletin Board, Document Retrieval, Electronic Publishing, and Meta-Service. Additional types of subservices can be added later. |
| [1d] receiving a service request from the first type network node; | Ferguson '092 discloses receiving a service request from the first type network node. To the extent it is found that Ferguson '092 does not disclose this feature expressly or inherently, it would have been obvious to combine Ferguson '092 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* col. 28, lines 52–67.<br>Service-to-service communication primitives The Script Language provides service-to-service communication primitives that allow one online service to: (1) act on behalf of the user to query or update another online service; (2) automatically update another online service without user initiation; (3) appear to be seamlessly part of another online service; (4) keep a record of how many times users traverse to another online service; (5) pass along automatic user registration data to another online service; (6) automatically register a new online service with a service-of-services or "yellow pages" service; (7) check whether another server is running a particular online service or type of service; and (8) exchange usage and metering information, for aggregation and later analysis. Each of these primitives opens a virtual connection to the target service, using the service-to-service protocol.<br>*See also* col. 33, lines 32–45.<br>Provider% The provider identifier number of the content provider associated with the action that triggered the Fee Specifier. This predefined global variable is available when the entity element of the |

Appendix B-9

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,819,092 (Ferguson '092)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,819,092 (Ferguson '092) |
|---|---|
|  | Fee Specifier is "Provider". If the action is "Access", the value of Provider% is the identifier number of the content provider that owns the information that was accessed. If the action is "Daily", "Weekly", "Monthly", or "Annually" (and the Fee Specifier is "Provider"), the Fee Specifier is evaluated once for each content provider of the online service. In this case, the Provider% value is the provider identifier number of the current content provider being referenced in this iteration of the Fee Specifier computation. |
|  | *See also* col. 11, lines 9–26. |
|  | Support for communication between different online services: Service-to-Service Protocol is a communication protocol whereby different online services can communicate information. Using the Service-to-Service protocol of the present invention, an online service can: (1) transfer control to another online service; (2) act on behalf of the user to query or update another online service; (3) automatically update another online service without user initiation; (4) appear to be seamlessly part of another online service; (5) keep a record of how many times users traverse to another online service; (6) pass along automatic user registration data to another online service; (7) automatically register a new online service with a service-of-services or "yellow pages" service; (8) check whether another server is running a particular online service or type of service; and (9) exchange usage and metering information, for aggregation and later analysis. |
|  | *See also* col. 12, lines 58–65. |
|  | …Each online service consists of one or more types of "subservices." Each subservice is a server program for handling a particular type of online service user interaction. Each subservice program has an associated database that stores the information that can be provided to the user and a set of scripts for handling events. |
|  | *See also* col. 16, lines 22–32. |
|  | The "content" of an online service is the information that the each of the subservices delivers to users. Some of the content of an online service can be static, provided by the developer when the online service is designed; and some of the content can be dynamic, provided by the developer or other users |

**Appendix B-9**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,819,092 (Ferguson '092)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,819,092 (Ferguson '092) |
|---|---|
| | at run-time without requiring further online service design work. Examples of static content includes the screen displays for different regions of an online service. Examples of dynamic content includes bulletin board messages written by users and classified advertisements submitted by users. |
| [1e] identifying the first type network node based on the service request; and | Ferguson '092 discloses identifying the first type network node based on the service request. To the extent it is found that Ferguson '092 does not disclose this feature expressly or inherently, it would have been obvious to combine Ferguson '092 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| | *See* col. 35, lines 46–58. |
| | User% The user identifier number of the user associated with the action that triggered the Fee Specifier. This predefined global variable is available when the entity element of the Fee Specifier is "User". If the action is "Access" or "Submit", the value of User% is the ID number of the user that accessed or submitted the information. If the action is "Daily", "Weekly", "Monthly", or "Annually" (and the Fee Specifier is "User"), the Fee Specifier is evaluated once for each user of the online service. In this case, the User% value is the user identifier number of the current user being referenced in this iteration of the Fee Specifier computation. |
| | *See also* col. 37, lines 16–22. |
| | UserAttrGet$(<user - - num>, <attr - - name>) |
| | Gets the value of the attribute named <attr - - name> for the user whose user identifier is <user - - num>. The value is returned as a string, but can be converted to any other appropriate type using the data type conversion functions provided by the Computation Language and the Script Language. |
| | *See also* col. 28, lines 52–67. |
| | Service-to-service communication primitives |
| | The Script Language provides service-to-service communication primitives that allow one online service to: (1) act on behalf of the user to query or update another online service; (2) automatically update another online service without user initiation; (3) appear to be seamlessly part of another online |

**Appendix B-9**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,819,092 (Ferguson '092)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,819,092 (Ferguson '092) |
|---|---|
| | service; (4) keep a record of how many times users traverse to another online service; (5) pass along automatic user registration data to another online service; (6) automatically register a new online service with a service-of-services or "yellow pages" service; (7) check whether another server is running a particular online service or type of service; and (8) exchange usage and metering information, for aggregation and later analysis. Each of these primitives opens a virtual connection to the target service, using the service-to-service protocol. <br><br> *See also* col. 10, lines 1–11. <br> Another type of online service the development tool can create is a service that selects specific items from a collection of newsfeeds, based on a user's previously registered interests, and assembles a customized electronic newspaper for which the user is charged a fee. Payment for any transaction with any online service can be handled using secure, authenticated electronic transaction techniques as is well known in the art. Alternatively, other methods of payment such as credit card payment, electronic funds transfer, or external payment mechanisms (e.g., mailing a check) can be used. <br><br> *See also* claim limitation [1d]. |
| [1f] forming a customized page file formed for the first type network node by including the page file formed for the first type network node within the page file for the second type network node. | Ferguson '092 discloses forming a customized page file formed for the first type network node by including the page file formed for the first type network node within the page file for the second type network node. To the extent it is found that Ferguson '092 does not disclose this feature expressly or inherently, it would have been obvious to combine Ferguson '092 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. <br><br> *See* col. 15, lines 12–23. <br> Referring to FIG. 4, the Publishing Designer 420 is used to design electronic Publishing subservices. An Electronic Publishing subservice provides a user with an electronic edition of a newspaper or magazine that the user may download to the user's local client hardware. An Electronic Publishing subservice can create a customized daily newspaper, that provides only news stories that match certain criteria provided previously by the user. Downloaded material may take the form of static documents, |

**Appendix B-9**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,819,092 (Ferguson '092)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,819,092 (Ferguson '092) |
|---|---|
| | or hypermedia documents with images, sound, video, and hyperlinks to move through the hypermedia document.<br><br>*See also* col. 14, lines 39–44.<br>The online service provider controls the content of a Reference subservice. However, the online service allows the user to submit additional personal entries that are seamlessly integrated into the subservice, but are only *See*n by that user. These personal entries can be stored within the service repository of the client hardware system.<br><br>*See also* col. 12, lines 10–13.<br>Replication of online service content: The service's content and structure can be replicated to other online services on-demand or on an automatic, regularly scheduled basis.<br><br>*See also* col. 12, lines 52–54.<br>Searching and connecting to other online services: Allows a user to access a service-of-services which will search and connect to other online services.<br><br>*See also* col. 3, lines 47–55.<br>Third, an online service may charge a content provider for placing certain information on the online service. For example, a content provider can be charged for placing an advertisement on the online service. Finally, a content provider can be paid by the online service for providing information that users may wish to access, can be can be provided on a for-fee basis. Conversely, an online service provider may wish to pay third party content providers for placing useful material on the online service.<br><br>*See also* col. 10, lines 1–11.<br>Another type of online service the development tool can create is a service that selects specific items from a collection of newsfeeds, based on a user's previously registered interests, and assembles a customized electronic newspaper for which the user is charged a fee. Payment for any transaction with |

**Appendix B-9**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,819,092 (Ferguson '092)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,819,092 (Ferguson '092) |
|---|---|
| | any online service can be handled using secure, authenticated electronic transaction techniques as is well known in the art. Alternatively, other methods of payment such as credit card payment, electronic funds transfer, or external payment mechanisms (e.g., mailing a check) can be used. |
| | *See also* col. 11, lines 9–26.<br>Support for communication between different online services: Service-to-Service Protocol is a communication protocol whereby different online services can communicate information. Using the Service-to-Service protocol of the present invention, an online service can: (1) transfer control to another online service; (2) act on behalf of the user to query or update another online service; (3) automatically update another online service without user initiation; (4) appear to be seamlessly part of another online service; (5) keep a record of how many times users traverse to another online service; (6) pass along automatic user registration data to another online service; (7) automatically register a new online service with a service-of-services or "yellow pages" service; (8) check whether another server is running a particular online service or type of service; and (9) exchange usage and metering information, for aggregation and later analysis. |
| | *See also* col. 16, lines 57–59.<br>When the data is distributed, it still appears to the developer and user as a seamless whole. |
| | *See also* claim limitations [1b] and [1c]. |
| *Claim 2* | |
| [2] The method of claim 1, wherein the first type network node is an ISP node, and the second type network node is an ICP node. | Ferguson '092 discloses that the first type network node is an ISP node, and the second type network node is an ICP node. To the extent it is found that Ferguson '092 does not disclose this feature expressly or inherently, it would have been obvious to combine Ferguson '092 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* col. 3, lines 47–55. |

Appendix B-9

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,819,092 (Ferguson '092)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,819,092 (Ferguson '092) |
|---|---|
| | Third, an online service may charge a content provider for placing certain information on the online service. For example, a content provider can be charged for placing an advertisement on the online service. Finally, a content provider can be paid by the online service for providing information that users may wish to access, can be can be provided on a for-fee basis. Conversely, an online service provider may wish to pay third party content providers for placing useful material on the online service. *See also* col. 14, lines 39–44. The online service provider controls the content of a Reference subservice. However, the online service allows the user to submit additional personal entries that are seamlessly integrated into the subservice, but are only *See*n by that user. These personal entries can be stored within the service repository of the client hardware system. *See also* Abstract. The fee structure can handle both fees levied against users and third party content providers. For example, users can be levied fees for logging onto an online service, performing searches, or downloading information. Third party content providers can be levied fees for submitting advertisements or for executing a transaction with a user. Similarly, the fee setting tool also allows the developer to assign a payment system whereby users or content providers can be paid for certain actions. A user may be paid when that user that fills out a marketing questionnaire or wins a contest. A third party content provider can be paid when that third party content provider supplies valuable information desired by the users of the online service. *See also* claim limitation [1a]. |
| *Claim 3* | |
| [3] The method of claim 1, wherein the first type network node is an | Ferguson '092 discloses that the first type network node is an organization node, and the second type network node is an ICP node. To the extent it is found that Ferguson '092 does not disclose this feature expressly or inherently, it would have been obvious to combine Ferguson '092 with the |

**Appendix B-9**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,819,092 (Ferguson '092)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,819,092 (Ferguson '092) |
|---|---|
| organization node, and the second type network node is an ICP node. | knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* col. 7, lines 36–57.<br>. . . The Application Program Interfaces that define communication between the client software and server software are largely independent of the underlying transport protocol. For example, the development tool of the present invention does not require that the client and server computers communicate using HTTP or the underlying TCP/IP protocol. Any suitable transport protocol, across Local Area Networks (LAN's), Wide Area Networks (WAN's), dial-up or leased telephone lines, etc., may be used between the client hardware and the server hardware.<br><br>*See also* col. 14, lines 39–44.<br>The online service provider controls the content of a Reference subservice. However, the online service allows the user to submit additional personal entries that are seamlessly integrated into the subservice, but are only *See*n by that user. These personal entries can be stored within the service repository of the client hardware system.<br><br>*See also* col. 3, lines 47–55.<br>Third, an online service may charge a content provider for placing certain information on the online service. For example, a content provider can be charged for placing an advertisement on the online service. Finally, a content provider can be paid by the online service for providing information that users may wish to access, can be can be provided on a for-fee basis. Conversely, an online service provider may wish to pay third party content providers for placing useful material on the online service.<br><br>*See also* Abstract.<br>The fee structure can handle both fees levied against users and third party content providers. For example, users can be levied fees for logging onto an online service, performing searches, or downloading information. Third party content providers can be levied fees for submitting |

- 14 -

**Appendix B-9**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,819,092 (Ferguson '092)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,819,092 (Ferguson '092) |
|---|---|
| | advertisements or for executing a transaction with a user. Similarly, the fee setting tool also allows the developer to assign a payment system whereby users or content providers can be paid for certain actions. A user may be paid when that user that fills out a marketing questionnaire or wins a contest. A third party content provider can be paid when that third party content provider supplies valuable information desired by the users of the online service.<br><br>*See also* claim limitation [1a]. |
| *Claim 4* | |
| [4] The method of claim 1, wherein the customized page file includes customized graphics, sounds, applets, links, and text. | Ferguson '092 discloses that the customized page file includes customized graphics, sounds, applets, links, and text. To the extent it is found that Ferguson '092 does not disclose this feature expressly or inherently, it would have been obvious to combine Ferguson '092 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* col. 1, line 67 to col. 2, line 3.<br>A World-Wide Web Server can store images, text, animation, and sounds that provide information about the company.<br><br>*See also* col. 15, lines 12–23.<br>Referring to FIG. 4, the Publishing Designer 420 is used to design electronic Publishing subservices. An Electronic Publishing subservice provides a user with an electronic edition of a newspaper or magazine that the user may download to the user's local client hardware. An Electronic Publishing subservice can create a customized daily newspaper, that provides only news stories that match certain criteria provided previously by the user. Downloaded material may take the form of static documents, or hypermedia documents with images, sound, video, and hyperlinks to move through the hypermedia document.<br><br>*See also* claim limitation [1b]. |

Appendix B-9

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,819,092 (Ferguson '092)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,819,092 (Ferguson '092) |
|---|---|
| *Claim 5* | |
| [5] The method of claim 1, wherein the customized page file includes customized advertisements. | Ferguson '092 discloses that the customized page file includes customized advertisements. To the extent it is found that Ferguson '092 does not disclose this feature expressly or inherently, it would have been obvious to combine Ferguson '092 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| | *See* col. 3, lines 47–55.<br>Third, an online service may charge a content provider for placing certain information on the online service. For example, a content provider can be charged for placing an advertisement on the online service. Finally, a content provider can be paid by the online service for providing information that users may wish to access, can be can be provided on a for-fee basis. Conversely, an online service provider may wish to pay third party content providers for placing useful material on the online service |
| | *See also* Abstract.<br>. . . Different subservices exist for displaying hypermedia documents, searching directories and databases, displaying classified advertisements, providing a bulletin board system, etc. |
| | *See also* claim limitation [1b]. |
| *Claim 6* | |
| [6a] The method of claim 1, wherein: the service request includes an IP address for identifying the first type network node, and | Ferguson '092 discloses that the service request includes an IP address for identifying the first type network node. To the extent it is found that Ferguson '092 does not disclose this feature expressly or inherently, it would have been obvious to combine Ferguson '092 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| | *See* col. 1, lines 31–35.<br>One way a company can contact millions of potential customers is to use the global Internet. The global Internet is a network of computer networks that links together millions of computer systems |

- 16 -

**Appendix B-9**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,819,092 (Ferguson '092)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,819,092 (Ferguson '092) |
|---|---|
|  | using the well defined TCP/IP protocol.<br><br>*See also* col. 8, lines 29–35.<br>The communications network 150 couples the users running client software with the online service server software running on the server hardware. In the present embodiment, the communications network 150 is a packet switched network implemented using TCP/IP protocol. However, the communications network 150 could simply be the existing telephone network.<br><br>*See also* col. 7, lines 36–57.<br>The invention's design characteristics are described here in the context of its preferred embodiment, a development tool for the Molisa online services platform. The Molisa platform leverages existing HyperText Transfer Protocol (HTTP) based World-Wide Web servers, and Mosaic and other HTTP client browsers (with software extensions), on the global Internet. However, the design principles of the present invention are largely applicable to online services in other settings, including non-architected centralized online services, other decentralized online services, and services in which the client and server software reside on a single machine (such as CD-ROM based information services). The Application Program Interfaces that define communication between the client software and server software are largely independent of the underlying transport protocol. For example, the development tool of the present invention does not require that the client and server computers communicate using HTTP or the underlying TCP/IP protocol. Any suitable transport protocol, across Local Area Networks (LAN's), Wide Area Networks (WAN's), dial-up or leased telephone lines, etc., may be used between the client hardware and the server hardware.<br><br>*See also* claim limitation [1d]. |
| [6b] identifying the first type network node based on the service request comprises using the IP address included | Ferguson '092 discloses that identifying the first type network node based on the service request comprises using the IP address included in the service request to identify the first type network node. To the extent it is found that Ferguson '092 does not disclose this feature expressly or inherently, it would have been obvious to combine Ferguson '092 with the knowledge of a person of ordinary skill |

**Appendix B-9**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,819,092 (Ferguson '092)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,819,092 (Ferguson '092) |
|---|---|
| in the service request to identify the first type network node. | and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* col. 1, lines 31–35.<br>One way a company can contact millions of potential customers is to use the global Internet. The global Internet is a network of computer networks that links together millions of computer systems using the well defined TCP/IP protocol.<br><br>*See also* col. 8, lines 29–35.<br>The communications network 150 couples the users running client software with the online service server software running on the server hardware. In the present embodiment, the communications network 150 is a packet switched network implemented using TCP/IP protocol. However, the communications network 150 could simply be the existing telephone network.<br><br>*See also* col. 7, lines 36–57.<br>The invention's design characteristics are described here in the context of its preferred embodiment, a development tool for the Molisa online services platform. The Molisa platform leverages existing HyperText Transfer Protocol (HTTP) based World-Wide Web servers, and Mosaic and other HTTP client browsers (with software extensions), on the global Internet. However, the design principles of the present invention are largely applicable to online services in other settings, including non-architected centralized online services, other decentralized online services, and services in which the client and server software reside on a single machine (such as CD-ROM based information services). The Application Program Interfaces that define communication between the client software and server software are largely independent of the underlying transport protocol. For example, the development tool of the present invention does not require that the client and server computers communicate using HTTP or the underlying TCP/IP protocol. Any suitable transport protocol, across Local Area Networks (LAN's), Wide Area Networks (WAN's), dial-up or leased telephone lines, etc., may be used between the client hardware and the server hardware. |

Appendix B-9

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,819,092 (Ferguson '092)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,819,092 (Ferguson '092) |
|---|---|
| | *See also* claim limitation [1e]. |
| *Claim 7* | |
| [7a] A method for providing web page customization service to a plurality of first type network nodes at a second type network node, comprising the steps of: | Ferguson '092 discloses a method for providing web page customization service to a plurality of first type network nodes at a second type network node. To the extent it is found that Ferguson '092 does not disclose this feature expressly or inherently, it would have been obvious to combine Ferguson '092 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1a]. |
| [7b] forming at least a page file for each of the first type network nodes; | Ferguson '092 discloses forming at least a page file for each of the first type network nodes. To the extent it is found that Ferguson '092 does not disclose this feature expressly or inherently, it would have been obvious to combine Ferguson '092 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1b]. |
| [7c] forming at least a page file for the second type network node; | Ferguson '092 discloses forming at least a page file for the second type network node. To the extent it is found that Ferguson '092 does not disclose this feature expressly or inherently, it would have been obvious to combine Ferguson '092 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1c]. |
| [7d] receiving a service request from one of the first type network nodes; | Ferguson '092 discloses receiving a service request from one of the first type network nodes. To the extent it is found that Ferguson '092 does not disclose this feature expressly or inherently, it would have been obvious to combine Ferguson '092 with the knowledge of a person of ordinary skill and/or |

Appendix B-9

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,819,092 (Ferguson '092)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,819,092 (Ferguson '092) |
|---|---|
| | other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1d]. |
| [7e] determining whether the first type network node participates in the web page customization service; | Ferguson '092 discloses determining whether the first type network node participates in the web page customization service. To the extent it is found that Ferguson '092 does not disclose this feature expressly or inherently, it would have been obvious to combine Ferguson '092 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1e]. |
| [7f] if the first type network node participates in the web page customization service, forming a customized page file for the service request by including the page file formed for the first type network node within the page file formed for the second type network node; and | Ferguson '092 discloses, if the first type network node participates in the web page customization service, forming a customized page file for the service request by including the page file formed for the first type network node within the page file formed for the second type network node. To the extent it is found that Ferguson '092 does not disclose this feature expressly or inherently, it would have been obvious to combine Ferguson '092 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1f]. |
| [7g] if the first type network node does not participate in the web page customization service, forming a page file for the service request by using the page file formed for | Ferguson '092 discloses, if the first type network node does not participate in the web page customization service, forming a page file for the service request by using the page file formed for the second type network node. For example, the second type network node identifies the first type network node based on the service request. If the second type network node fails to identify the first type network node, the second type network node will only form a page file for the service request by using the page file formed for the second type network node. To the extent it is found that Ferguson |

Appendix B-9

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,819,092 (Ferguson '092)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,819,092 (Ferguson '092) |
|---|---|
| the second type network node. | '092 does not disclose this feature expressly or inherently, it would have been obvious to combine Ferguson '092 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1f]. |
| *Claim 8* | |
| [8] The method of claim 7, wherein the first type network nodes are ISP nodes, and the second type network node is an ICP node. | Ferguson '092 discloses that the first type network nodes are ISP nodes, and the second type network node is an ICP node. To the extent it is found that Ferguson '092 does not disclose this feature expressly or inherently, it would have been obvious to combine Ferguson '092 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [2]. |
| *Claim 9* | |
| [9] The method of claim 7, wherein the first type network nodes are organization nodes, and the second type network node is an ICP node. | Ferguson '092 discloses that the first type network nodes are organization nodes, and the second type network node is an ICP node. To the extent it is found that Ferguson '092 does not disclose this feature expressly or inherently, it would have been obvious to combine Ferguson '092 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [3]. |
| *Claim 10* | |
| [10] The method of claim 7, wherein the customized page file includes customized graphics, sounds, applets, | Ferguson '092 discloses that the customized page file includes customized graphics, sounds, applets, links, and text. To the extent it is found that Ferguson '092 does not disclose this feature expressly or inherently, it would have been obvious to combine Ferguson '092 with the knowledge of a person of |

**Appendix B-9**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,819,092 (Ferguson '092)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,819,092 (Ferguson '092) |
|---|---|
| links, and text. | ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| | *See* claim limitation [4]. |
| *Claim 11* | |
| [11] The method of claim 7, wherein the customized page file includes customized advertisements. | Ferguson '092 discloses that the customized page file includes customized advertisements. To the extent it is found that Ferguson '092 does not disclose this feature expressly or inherently, it would have been obvious to combine Ferguson '092 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| | *See* claim limitation [5]. |
| *Claim 12* | |
| [12a] The method of claim 7, wherein: the service request from one of the first type network nodes includes an IP address for identifying the first type network node, and | Ferguson '092 discloses that the service request from one of the first type network nodes includes an IP address for identifying the first type network node. To the extent it is found that Ferguson '092 does not disclose this feature expressly or inherently, it would have been obvious to combine Ferguson '092 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| | *See* claim limitation [6a]. |
| [12b] determining whether the first type network node participates in the web page customization service comprises using the IPI address included in the service request to identify the | Ferguson '092 discloses that determining whether the first type network node participates in the web page customization service comprises using the IPI address included in the service request to identify the first type network node. To the extent it is found that Ferguson '092 does not disclose this feature expressly or inherently, it would have been obvious to combine Ferguson '092 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |

Appendix B-9

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,819,092 (Ferguson '092)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,819,092 (Ferguson '092) |
|---|---|
| first type network node. | *See* claim limitation [6b]. |
| *Claim 13* | |
| [13a] A method for providing web page customization service to a plurality of first type network nodes at a second type network node, comprising the steps of: | Ferguson '092 discloses a method for providing web page customization service to a plurality of first type network nodes at a second type network node. To the extent it is found that Ferguson '092 does not disclose this feature expressly or inherently, it would have been obvious to combine Ferguson '092 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.

*See* claim limitation [1a]. |
| [13b] forming a plurality of advertisements for the first type network nodes; | Ferguson '092 discloses forming a plurality of advertisements for the first type network nodes. To the extent it is found that Ferguson '092 does not disclose this feature expressly or inherently, it would have been obvious to combine Ferguson '092 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.

*See* claim limitations [1b] and [5]. |
| [13c] forming at least a page file for the second type network node; | Ferguson '092 discloses forming at least a page file for the second type network node. To the extent it is found that Ferguson '092 does not disclose this feature expressly or inherently, it would have been obvious to combine Ferguson '092 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.

*See* claim limitation [1c]. |
| [13d] receiving a service request from one of the first type network nodes; | Ferguson '092 discloses receiving a service request from one of the first type network nodes. To the extent it is found that Ferguson '092 does not disclose this feature expressly or inherently, it would have been obvious to combine Ferguson '092 with the knowledge of a person of ordinary skill and/or |

- 23 -

Appendix B-9

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,819,092 (Ferguson '092)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,819,092 (Ferguson '092) |
|---|---|
| | other prior art references to obtain the claimed subject matter. *See* Appendix C.  *See* claim limitation [1d]. |
| [13e] identifying advertisements for the first type network node; and | Ferguson '092 discloses identifying advertisements for the first type network node.  To the extent it is found that Ferguson '092 does not disclose this feature expressly or inherently, it would have been obvious to combine Ferguson '092 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.  *See* claim limitations [1e] and [5]. |
| [13f] forming a customized page file for the first type network node by including the identified advertisements within the page file formed for the second type network node. | Ferguson '092 discloses forming a customized page file for the first type network node by including the identified advertisements within the page file formed for the second type network node.  To the extent it is found that Ferguson '092 does not disclose this feature expressly or inherently, it would have been obvious to combine Ferguson '092 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.  *See* claim limitation [1f]. |
| *Claim 14* | |
| [14] The method of claim 13, wherein the first type network nodes are ISP nodes, and the second type network node is an ICP node. | Ferguson '092 discloses that the first type network nodes are ISP nodes, and the second type network node is an ICP node.  To the extent it is found that Ferguson '092 does not disclose this feature expressly or inherently, it would have been obvious to combine Ferguson '092 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.  *See* claim limitation [2]. |
| *Claim 15* | |

- 24 -

**Appendix B-9**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,819,092 (Ferguson '092)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,819,092 (Ferguson '092) |
|---|---|
| [15] The method of claim 13, wherein the first type network nodes are organization nodes, and the second type network node is an ICP node. | Ferguson '092 discloses that the first type network nodes are organization nodes, and the second type network node is an ICP node. To the extent it is found that Ferguson '092 does not disclose this feature expressly or inherently, it would have been obvious to combine Ferguson '092 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.

*See* claim limitation [3]. |
| *Claim 16* | |
| [16] The method of claim 13, wherein the identified advertisements do not cause negative impact on the owner of the first type network node. | Ferguson '092 discloses that the identified advertisements do not cause negative impact on the owner of the first type network node. To the extent it is found that Ferguson '092 does not disclose this feature expressly or inherently, it would have been obvious to combine Ferguson '092 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.

*See* claim limitation [5]. |
| *Claim 17* | |
| [17a] An apparatus for dynamically forming a customized web page for a first type network node at a second type network node, comprising: | Ferguson '092 discloses an apparatus for dynamically forming a customized web page for a first type network node at a second type network node. To the extent it is found that Ferguson '092 does not disclose this feature expressly or inherently, it would have been obvious to combine Ferguson '092 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.

*See* claim limitation [1a]. |
| [17b] means for forming at least a page file for the first | Ferguson '092 discloses means for forming at least a page file for the first type network node. To the extent it is found that Ferguson '092 does not disclose this feature expressly or inherently, it would have been obvious to combine Ferguson '092 with the knowledge of a person of ordinary skill and/or |

**Appendix B-9**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,819,092 (Ferguson '092)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,819,092 (Ferguson '092) |
|---|---|
| type network node; | other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1b]. |
| [17c] means for forming at least a page file for the second type network node; | Ferguson '092 discloses means for forming at least a page file for the second type network node. To the extent it is found that Ferguson '092 does not disclose this feature expressly or inherently, it would have been obvious to combine Ferguson '092 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1c]. |
| [17d] means for receiving a service request from the first type network node; | Ferguson '092 discloses means for receiving a service request from the first type network node. To the extent it is found that Ferguson '092 does not disclose this feature expressly or inherently, it would have been obvious to combine Ferguson '092 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1d]. |
| [17e] means for identifying the first type network node based on the service request; and | Ferguson '092 discloses means for identifying the first type network node based on the service request. To the extent it is found that Ferguson '092 does not disclose this feature expressly or inherently, it would have been obvious to combine Ferguson '092 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1e]. |
| [17f] means for forming a customized page file formed for the first type network node by including the page | Ferguson '092 discloses means for forming a customized page file formed for the first type network node by including the page file formed for the first type network node within the page file for the second type network node. To the extent it is found that Ferguson '092 does not disclose this feature expressly or inherently, it would have been obvious to combine Ferguson '092 with the knowledge of |

**Appendix B-9**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,819,092 (Ferguson '092)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,819,092 (Ferguson '092) |
|---|---|
| file formed for the first type network node within the page file for the second type network node. | a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1f]. |
| *Claim 18* | |
| [18] The apparatus of claim 17, wherein the first type network node is an ISP node, and the second type network node is an ICP node. | Ferguson '092 discloses that the first type network node is an ISP node, and the second type network node is an ICP node. To the extent it is found that Ferguson '092 does not disclose this feature expressly or inherently, it would have been obvious to combine Ferguson '092 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [2]. |
| *Claim 19* | |
| [19] The apparatus of claim 17, wherein the first type network node is an organization node, and the second type network node is an ICP node. | Ferguson '092 discloses that the first type network node is an organization node, and the second type network node is an ICP node. To the extent it is found that Ferguson '092 does not disclose this feature expressly or inherently, it would have been obvious to combine Ferguson '092 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [3]. |
| *Claim 20* | |
| [20] The apparatus of claim 17, wherein the customized page file includes customized graphics, sounds, applets, | Ferguson '092 discloses that the customized page file includes customized graphics, sounds, applets, links, and text. To the extent it is found that Ferguson '092 does not disclose this feature expressly or inherently, it would have been obvious to combine Ferguson '092 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |

**Appendix B-9**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,819,092 (Ferguson '092)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,819,092 (Ferguson '092) |
|---|---|
| links, and text. | *See* claim limitation [4]. |
| *Claim 21* | |
| [21] The apparatus of claim 17, wherein the customized page file includes customized advertisements. | Ferguson '092 discloses that the customized page file includes customized advertisements. To the extent it is found that Ferguson '092 does not disclose this feature expressly or inherently, it would have been obvious to combine Ferguson '092 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [5]. |
| *Claim 22* | |
| [22a] An apparatus for providing web page customization service to a plurality of first type network nodes at a second type network node, comprising: | Ferguson '092 discloses an apparatus for providing web page customization service to a plurality of first type network nodes at a second type network node. To the extent it is found that Ferguson '092 does not disclose this feature expressly or inherently, it would have been obvious to combine Ferguson '092 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [7a]. |
| [22b] means for forming at least a page file for each of the first type network nodes; | Ferguson '092 discloses means for forming at least a page file for each of the first type network nodes. To the extent it is found that Ferguson '092 does not disclose this feature expressly or inherently, it would have been obvious to combine Ferguson '092 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [7b]. |
| [22c] means for forming at least a page file for the | Ferguson '092 discloses means for forming at least a page file for the second type network node. To the extent it is found that Ferguson '092 does not disclose this feature expressly or inherently, it would have been obvious to combine Ferguson '092 with the knowledge of a person of ordinary skill and/or |

Appendix B-9

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,819,092 (Ferguson '092)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,819,092 (Ferguson '092) |
|---|---|
| second type network node; | other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [7c]. |
| [22d] means for receiving a service request from one of the first type network nodes; | Ferguson '092 discloses means for receiving a service request from one of the first type network nodes. To the extent it is found that Ferguson '092 does not disclose this feature expressly or inherently, it would have been obvious to combine Ferguson '092 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [7d]. |
| [22e] means for determining whether the first type network node participates in the web page customization service; | Ferguson '092 discloses means for determining whether the first type network node participates in the web page customization service. To the extent it is found that Ferguson '092 does not disclose this feature expressly or inherently, it would have been obvious to combine Ferguson '092 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [7e]. |
| [22f] means for forming a customized page file for the service request by including the page file formed for the first type network node within the page file formed for the second type network node, if the first type network node participates in the web page customization service; | Ferguson '092 discloses means for forming a customized page file for the service request by including the page file formed for the first type network node within the page file formed for the second type network node, if the first type network node participates in the web page customization service. To the extent it is found that Ferguson '092 does not disclose this feature expressly or inherently, it would have been obvious to combine Ferguson '092 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [7f]. |

- 29 -

Appendix B-9

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,819,092 (Ferguson '092)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,819,092 (Ferguson '092) |
|---|---|
| and | |
| [22g] means for forming a page file for the service request by using the page file formed for the second type network node, if the first type network node does not participate in the web page customization service. | Ferguson '092 discloses means for forming a page file for the service request by using the page file formed for the second type network node, if the first type network node does not participate in the web page customization service. To the extent it is found that Ferguson '092 does not disclose this feature expressly or inherently, it would have been obvious to combine Ferguson '092 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [7g]. |
| *Claim 23* | |
| [23] The apparatus of claim 22, wherein the first type network nodes are ISP nodes, and the second type network node is an ICP node. | Ferguson '092 discloses that the first type network nodes are ISP nodes, and the second type network node is an ICP node. To the extent it is found that Ferguson '092 does not disclose this feature expressly or inherently, it would have been obvious to combine Ferguson '092 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [8]. |
| *Claim 24* | |
| [24] The apparatus of claim 22, wherein the first type network nodes are organization nodes, and the second type network node is an ICP node. | Ferguson '092 discloses that the first type network nodes are organization nodes, and the second type network node is an ICP node. To the extent it is found that Ferguson '092 does not disclose this feature expressly or inherently, it would have been obvious to combine Ferguson '092 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [9]. |

**Appendix B-9**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,819,092 (Ferguson '092)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,819,092 (Ferguson '092) |
|---|---|
| *Claim 25* | |
| [25] The apparatus of claim 22, wherein the customized page file includes customized graphics, sounds, applets, links, and text. | Ferguson '092 discloses that the customized page file includes customized graphics, sounds, applets, links, and text. To the extent it is found that Ferguson '092 does not disclose this feature expressly or inherently, it would have been obvious to combine Ferguson '092 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.

*See* claim limitation [10]. |
| *Claim 26* | |
| [26] The apparatus of claim 25, wherein the customized page file includes customized advertisements. | Ferguson '092 discloses that the customized page file includes customized advertisements. To the extent it is found that Ferguson '092 does not disclose this feature expressly or inherently, it would have been obvious to combine Ferguson '092 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.

*See* claim limitation [11]. |
| *Claim 27* | |
| [27a] An apparatus for providing web page customization service to a plurality of first type network nodes at a second type network node, comprising: | Ferguson '092 discloses an apparatus for providing web page customization service to a plurality of first type network nodes at a second type network node. To the extent it is found that Ferguson '092 does not disclose this feature expressly or inherently, it would have been obvious to combine Ferguson '092 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.

*See* claim limitation [13a]. |
| [27b] means for forming a plurality of advertisements for the first type network | Ferguson '092 discloses means for forming a plurality of advertisements for the first type network nodes. To the extent it is found that Ferguson '092 does not disclose this feature expressly or inherently, it would have been obvious to combine Ferguson '092 with the knowledge of a person of |

**Appendix B-9**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,819,092 (Ferguson '092)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,819,092 (Ferguson '092) |
|---|---|
| nodes; | ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [13b]. |
| [27c] means for forming at least a page file for the second type network node; | Ferguson '092 discloses means for forming at least a page file for the second type network node. To the extent it is found that Ferguson '092 does not disclose this feature expressly or inherently, it would have been obvious to combine Ferguson '092 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [13c]. |
| [27d] means for receiving a service request from one of the first type network nodes; | Ferguson '092 discloses means for receiving a service request from one of the first type network nodes. To the extent it is found that Ferguson '092 does not disclose this feature expressly or inherently, it would have been obvious to combine Ferguson '092 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [13d]. |
| [27e] means for identifying advertisements for the first type network node; and | Ferguson '092 discloses means for identifying advertisements for the first type network node. To the extent it is found that Ferguson '092 does not disclose this feature expressly or inherently, it would have been obvious to combine Ferguson '092 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [13e]. |
| [27f] means for forming a customized page file for the first type network node by including the identified | Ferguson '092 discloses means for forming a customized page file for the first type network node by including the identified advertisements within the page file formed for the second type network node. To the extent it is found that Ferguson '092 does not disclose this feature expressly or inherently, it would have been obvious to combine Ferguson '092 with the knowledge of a person of ordinary skill |

Appendix B-9

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,819,092 (Ferguson '092)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,819,092 (Ferguson '092) |
|---|---|
| advertisements within the page file formed for the second type network node. | and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. <br><br> *See* claim limitation [13f]. |
| *Claim 28* | |
| [28] The apparatus of claim 27, wherein the first type network nodes are ISP nodes, and the second type network node is an ICP node. | Ferguson '092 discloses that the first type network nodes are ISP nodes, and the second type network node is an ICP node. To the extent it is found that Ferguson '092 does not disclose this feature expressly or inherently, it would have been obvious to combine Ferguson '092 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. <br><br> *See* claim limitation [14]. |
| *Claim 29* | |
| [29] The apparatus of claim 27, wherein the first type network nodes are organization nodes, and the second type network node is an ICP node. | Ferguson '092 discloses that the first type network nodes are organization nodes, and the second type network node is an ICP node. To the extent it is found that Ferguson '092 does not disclose this feature expressly or inherently, it would have been obvious to combine Ferguson '092 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. <br><br> *See* claim limitation [15]. |
| *Claim 30* | |
| [30] The apparatus of claim 27, wherein the identified advertisements do not cause negative impact on the owner of the first type network | Ferguson '092 discloses that the identified advertisements do not cause negative impact on the owner of the first type network node. To the extent it is found that Ferguson '092 does not disclose this feature expressly or inherently, it would have been obvious to combine Ferguson '092 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |

**Appendix B-9**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,819,092 (Ferguson '092)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,819,092 (Ferguson '092) |
|---|---|
| node. | *See* claim limitation [16]. |

**Appendix B-10**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,848,396 (Gerace)**

U.S. Patent No. 5,848,396 to Gerace ("Gerace") issued from a U.S. patent application filed on April 26, 1996 and qualifies as prior art at least under 35 U.S.C. § 102(e).

Gerace anticipates claims 1-30 of U.S. Patent No. 6,442,577.

Additionally or in the alternative, each of claims 1-30 of the '577 patent would have been obvious over Gerace standing alone or in view of the knowledge of a person of ordinary skill and/or one or more other references, as detailed in Appendix C.

This chart is based in whole or in part on the present understanding of positions taken by PageMelding regarding the coverage, scope and construction of the asserted claims to the extent those positions can be deduced from PageMelding's contentions pursuant to Patent Local Rule 3-1 served on August 3, 2012. Nothing herein is an admission that PageMelding's infringement contentions are correct, an admission that Plaintiff's apparent claim constructions are correct, or an admission that ESPN's technology infringes any asserted claim.

**Appendix B-10**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,848,396 (Gerace)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,848,396 (Gerace) |
|---|---|
| *Claim 1* | |
| [1a] A method for dynamically forming customized web pages for a first type network node at a second type network node, comprising the steps of: | Gerace discloses a method for dynamically forming customized web pages for a first type network node at a second type network node.<br><br>*See* Abstract.<br><br>    Computer network method and apparatus provides targeting of appropriate audience based on psychographic or behavioral profiles of end users. The psychographic profile is formed by recording computer activity and viewing habits of the end user. Content of categories of interest and display format in each category are revealed by the psychographic profile, based on user viewing of agate information. Using the profile (with or without additional user demographics), advertisements are displayed to appropriately selected users. Based on regression analysis of recorded responses of a first set of users viewing the advertisements, the target user profile is refined. Viewing by and regression analysis of recorded responses of subsequent sets of users continually auto-targets and customizes ads for the optimal end user audience.<br><br>*See also* col. 1, lines 6-67.<br><br>    BACKGROUND<br><br>    In traditional print media, the term "agate" was originally used to refer to any information printed in columns 1.5 inches wide in 5 point type (e.g., stock quotes). Today, agate is used to refer to time-sensitive, reference information that is not read linearly. Examples are telephone listings, classified advertisements, weather reports, sports scores and statistics, market data, |

**Appendix B-10**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,848,396 (Gerace)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,848,396 (Gerace) |
|---|---|
| | books and recordings in print, and television and film listings. … <br><br> One of the largest pools of databases and electronic media is found on The Internet. The World Wide Web (Web) is a two-year-old protocol used to create and publish documents on the Internet. Web documents may contain graphics, text, sound, video or any combination of these. Web documents can include "hyperlinks" which are highlighted areas of information in one document that, when user-selected, open a related document. In late 1994, "forms" were added to the Web to make it interactive. Previously, Web pages could only be used to display information or point to other Web sites where information was available. The 1994 change allowed those publishing Web pages to publish "forms", i.e., documents that include blank spaces to be completed by users and then returned to the publishing computer, thus allowing interactivity. <br><br> Publishing information on the Web requires two software components. Electronic publishers must run HyperText Transfer Protocol (HTTP) server software. Users scanning or searching on the Internet must use Web browser software. A variety of firms including Microsoft, Oracle, Netscape Communications, Spyglass, Spry, Netcom, and EINet all distribute Web software. <br><br> A variety of businesses are now offering information, some of it agate, on the Internet. One example is newspaper distribution on the Internet. However, the agate found in newspapers is at least twelve hours old. In the case of stock quotes, the information found usually recaps trading for the previous day, listing the high, low and closing prices as well as the number of shares traded. While this information is sufficient for tracking investments, investors often require real-time information to trade on the market. <br><br> Other examples of businesses that offer agate information on the Internet are Movie Phone whose World Wide Web Site is WWW.777film.com and |

**Appendix B-10**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,848,396 (Gerace)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,848,396 (Gerace) |
|---|---|
| | Securities APL (at WWW.secapl.com) which allows users to look up individual stock quotes (delayed 15 minutes).<br><br>To date, however, there is no general agate provider on the Web.<br><br>*See also* col. 2, line 1 to col. 3, line 19.<br><br>SUMMARY OF THE INVENTION<br><br>The present invention uses agate information to determine the profile of a computer user, and in particular the behavioral or psychographic profile, as distinguished from the demographic profile, of a user. To accomplish this, the present invention provides (i) a data assembly for displaying customized agate information to a computer user, and (ii) a tracking and profiling member for recording user activity with respect to agate information displayed through the data assembly. Over time, the tracking and profiling member holds a history and/or pattern of user activity which in turn is interpreted as a user's habits and/or preferences. To that end, a psychographic profile is inferred from the recorded activities in the tracking and profiling member.<br><br>Further, the tracking and profiling member records presentation (format) preferences of the users based on user viewing activity. Preferences with respect to color schemes, text size, shapes, and the like are recorded as part of the psychographic profile of a user. In turn, the psychographic profile enables the data assembly to customize presentation (format) of agate information, per user, for display to the user.<br><br>In the preferred embodiment, the data assembly displays agate information and/or advertisements (combined in a common screen view or separately in respective screen views). The advertisements (stored in an advertisement module, for example) are displayed to users in accordance with the |

**Appendix B-10**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,848,396 (Gerace)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,848,396 (Gerace) |
|---|---|
| | psychographic profile of the user. |
| | The tracking and profiling member also records demographics of each user. As a result, the data assembly is able to transmit advertisements for display to users based on psychographic and demographic profiles of the user to provide targeted marketing. |
| | In accordance with another aspect of the present invention, there is a module (e.g., advertisement module) that records history of users viewing the advertisements. For each advertisement, the module records (i) number of times viewed by a user; (ii) number of times selected for further information by a user, and/or (iii) number of purchases initiated from display of the advertisement to a user. … |
| | In accordance with another aspect of the present invention, there are Agate Objects for providing the agate information and a Sponsor Object. In a preferred embodiment, the agate information includes stock information, advertisements, sports statistics, weather reports and the like. With regard to stock information, an Agate Object routine receives stock data on line, parses the data and makes a value-added calculation. As a result, the stock information is made searchable by variables such as price-earnings ratio, and the like. |
| | The Sponsor Object categorizes advertisement or other sponsor provided information according to content and presentation, including colors used, size, shape, and whether audio and/or video components are involved. An advertiser profile building routine automates the process of identifying colors, size, shape, and whether video and/or audio are involved. |
| | Also the Sponsor and User Objects track how many times each piece of advertisement information is shown to, is selected by and/or spawns a |

**Appendix B-10**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,848,396 (Gerace)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,848,396 (Gerace) |
|---|---|
| | purchase by users. In other words, the Sponsor and User Objects track performance of sponsor provided information, especially advertisements. In the preferred embodiment, a performance routine employs regression techniques to provide performance reports. The performance routine may also be run (executed) remotely by suppliers of the advertisement information. |
| | *See also* col. 8, lines 13-51. |
| | In each of the foregoing formats, the preferred embodiment includes incorporation of ads or sponsorship indications as top and/or closing banners. The Home Page 43 (FIG. 4a) provides scores of recent games and news in the "sports" category. If a user selects the sports category from the Home Page, a Page Display Object 35c generates various screens bearing sports information and news. For sports pages/screen views, there are seven page/screen formats of Page Display Object 35c outlined in Appendix I. Briefly, a "General Sports Page" format includes (a) game scores and standings, by league, for professional and collegiate sports, and (b) player standings (professional and collegiate) for baseball, football, hockey and basketball. Statistics are updated and displayed during play of a game, so that the General Sports Page provides game-in-progress statistics in real-time. Also a news window is provided for each sport with a link to a "News Page" (object) for more news. The "News Page" format includes information regarding major trades, signings and injuries. In the preferred embodiment, a scrolling window of latest news is also included. |
| | A "Team Page" format provides a roster of a given team. Thus program 31 has several Team Page Display Objects 35c. The roster lists players by name, jersey number, position and some statistics. A "Team v. Team Page" format lists similar information as the "Team Page" format but for two teams in facing columns. Indications of favored teams and game scores for an entire season are |

**Appendix B-10**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,848,396 (Gerace)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,848,396 (Gerace) |
|---|---|
| | also provided on a "Team v. Team Page" Display Object 35c.<br><br>Player information is provided in three formats—a "Player Page" format, a "Player v. Team Page" format and "Player v. Player Page" format. Comparison of a player's statistics to his team's statistics is provided in a "Player v. Team Page" Display Object 35c. Comparison statistics of two players on different teams is provided in the "Player v. Player Page" format. Further, some of the above sports page formats allow advertisements to be displayed at the top and/or bottom of the screen view in the preferred embodiment.<br><br>*See also* col. 21, lines 28-51.<br><br>Weather:<br><br>Program 31 uses the weather to determine, in part, where users live and where they are going. As such, program 31 enables users to see the weather in 1, 2 or 3 places they are or would like to be. Thus, another program feature allows users to view weather from more than one place simultaneously. Program 31 typically gives users a quick glimpse at the 5-day forecast on the login page, with additional information about their local area or others in map format, graphical images (e.g., a snowflake), and data. Weather summaries may be available (short text blurbs) for larger regions, and possibly for individual cities. The greatest challenge here is how to locate the user. This can be done either with maps, zip codes/postal codes or by city (selectable lists which change by country). Alternatively, it is desirable to have a clickable map which allows the user to get to their location within 2 clicks. Also the system may offer a shortcut where the user can do it by postal code (and have a global database of postal codes). If postal codes duplicate, let the user select from the possible options. Alerts: Users will be able to request alerts of bad or good |

**Appendix B-10**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,848,396 (Gerace)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,848,396 (Gerace) |
|---|---|
| | (e.g., for weekend plans) weather in their area via E-mail. *See also* Figs. 1-5D and associated text. To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [1b] forming at least a page file for the first type network node; | Gerace discloses forming at least a page file for the first type network node. *See* col. 2, lines 30-34.     As a result, the data assembly is able to transmit advertisements for display to users based on psychographic and demographic profiles of the user to provide targeted marketing. *See also* col. 3, line 39 to col. 4, line 49.     Illustrated in FIG. 1 is a plurality of networks 19a, 19b, 19c. Each network 19 includes a multiplicity of digital processors 11, 13, 15, 17 (e.g., PC's, mini computers and the like) loosely coupled to a host processor or server 21a, 21b, 21c for communication among the processors within that network 19. Also included in each network 19 are printers, facsimiles and the like. In turn, each host processor 21 is coupled to a communication line 23 which interconnects or links the networks 19a, 19b, 19c to each other to form an internet. That is, each of the networks 19 are themselves loosely coupled along a communication line 23 to enable access from a digital processor 11, 13, 15, 17 of one network 19 to a digital processor 11, 13, 15, 17 of another network 19. In the preferred embodiment, the loose coupling of networks 19 is the Internet.     Also linked to communication line 23 are various servers 25a, 25b which |

**Appendix B-10**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,848,396 (Gerace)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,848,396 (Gerace) |
|---|---|
| | provide to end users access to the Internet (i.e., access to potentially all other networks 19, and hence processors 11, 13, 15, 17 connected to the Internet). The present invention is a software program 31 operated on and connected through a server 27 to the Internet for communication among the various networks 19 and/or processors 11, 13, 15, 17 and other end users connected through respective servers 25. In the preferred embodiment, the server 27 is a Digital Equipment Corp. Alpha server cluster (e.g., 2400-8000 Series), or a multiplicity of similar such servers. Server 27 runs Oracle 2.0 Webserver as HyperText Transfer Protocol (HTTP) server software to support operation of present invention program 31.<br><br>Upon an end user logging onto program 31 through common Internet protocol, program 31 generates an initial screen view (commonly known as the "Home Page") for display to the end user. During the user's first visit, the initial screen view provides menu selections of various agate information (e.g., stock market data, weather, sports, etc.) Upon user selection (using a click of a mouse or other input means) of a menu item, program 31 displays corresponding up-to-date information. Similarly, each time the user selects another menu item, program 31 generates and displays current agate information relating to that selection.<br><br>In addition, program 31 records the user's selections and his viewing activity with respect to the agate information. In particular, for each piece of displayed agate information, program 31 records the date and time of user viewing and the format which the user has selected for viewing. After multiple sessions, a pattern of the user's viewing actions or viewing habits is obtained, from the recorded activity. In turn, certain inferences about the user are made based on the user's viewing habits and the specific pieces of agate information he views, including content and presentation of that information. To that end, for each user the present invention program 31 creates a user profile from the agate information viewing habits of the user. The system then generates a custom |

**Appendix B-10**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,848,396 (Gerace)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,848,396 (Gerace) |
|---|---|
| | Home Page, including a user's preferred (content and presentation) agate information. On subsequent visits to program 31 (as a Website) by the user, program 31 displays the customized Home Page for that user instead of the initial Home Page.<br><br>Based on the created user profile for a given user, program 31 enables sponsors to better direct their advertisements and enables advertisements to be tailored to target users' display preferences. That is, both subject matter/content and presentation of advertisements are able to be customized to the end user's preferences due to the information tracked and recorded (i.e., the created user profile) by program 31.<br><br>Accordingly, program 31 in its most general form has an agate data assembly 71, a user profiling member 73, an advertisement module 75 and a program controller 79 as illustrated in FIG. 2. The agate data assembly 71 stores the various agate information for user viewing. The user profiling member 73 records information regarding each user, including a user's identification, categories of interest and the user's display preferences of each category. Advertisement module 75 holds sponsor information and their advertisements, with a target audience profile indicated for each advertisement.<br><br>Program controller 79 is a series of routines (methods) on Web server 27.<br><br>*See also* col. 7, lines 23-38.<br><br>Returning to FIG. 3a, the set of Page Display Objects 35a-35c defines the screen views transmitted and displayed to end users. A Page object 35a cross references a User Interface Object 37c which specifies which Page Display Object 35c and which agate information (content and presentation) is appropriate for the current user. Page Data Objects 35b hold the agate or other data to be displayed to end users. Included are advertisements (objects |

**Appendix B-10**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,848,396 (Gerace)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,848,396 (Gerace) |
|---|---|
| | themselves) which may be integrated into the agate data. Preferably advertisements are positioned along the periphery (i.e., above, below, left or right) of the agate data, as defined by a respective Page Display Object 35c. Accordingly, Page Data Objects 35b support Page Display Objects 35c which outline the possible screen content and presentation formats in which agate data advertisements are to be displayed.<br><br>*See also* col. 10, lines 24-27.<br><br>In the preferred embodiment, program 31 displays user generated messages and system generated notices (or warnings) to the end user in addition to the foregoing "Pages"/screen views of category information.<br><br>*See also* Figs. 1-5D and associated text.<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [1c] forming at least a page file for the second type network node; | Gerace discloses forming at least a page file for the second type network node.<br><br>*See* col. 1, lines 29-50.<br><br>One of the largest pools of databases and electronic media is found on The Internet. The World Wide Web (Web) is a two-year-old protocol used to create and publish documents on the Internet. Web documents may contain graphics, text, sound, video or any combination of these. Web documents can include "hyperlinks" which are highlighted areas of information in one document that, when user-selected, open a related document. In late 1994, "forms" were added to the Web to make it interactive. Previously, Web pages could only be used to display information or point to other Web sites where information was |

**Appendix B-10**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,848,396 (Gerace)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,848,396 (Gerace) |
|---|---|
|  | available. The 1994 change allowed those publishing Web pages to publish "forms," i.e., documents that include blank spaces to be completed by users and then returned to the publishing computer, thus allowing interactivity. Publishing information on the Web requires two software components. Electronic publishers must run HyperText Transfer Protocol (HTTP) server software. Users scanning or searching on the Internet must use Web browser software. A variety of firms including Microsoft, Oracle, Netscape Communications, Spyglass, Spry, Netcom, and EINet all distribute Web software.<br><br>*See also* col. 3, line 39 to col. 4, line 49.<br><br>Illustrated in FIG. 1 is a plurality of networks 19a, 19b, 19c. Each network 19 includes a multiplicity of digital processors 11, 13, 15, 17 (e.g., PC's, mini computers and the like) loosely coupled to a host processor or server 21a, 21b, 21c for communication among the processors within that network 19. Also included in each network 19 are printers, facsimiles and the like. In turn, each host processor 21 is coupled to a communication line 23 which interconnects or links the networks 19a, 19b, 19c to each other to form an internet. That is, each of the networks 19 are themselves loosely coupled along a communication line 23 to enable access from a digital processor 11, 13, 15, 17 of one network 19 to a digital processor 11, 13, 15, 17 of another network 19. In the preferred embodiment, the loose coupling of networks 19 is the Internet. Also linked to communication line 23 are various servers 25a, 25b which provide to end users access to the Internet (i.e., access to potentially all other networks 19, and hence processors 11, 13, 15, 17 connected to the Internet). The present invention is a software program 31 operated on and connected through a server 27 to the Internet for communication among the various networks 19 and/or processors 11, 13, 15, 17 and other end users connected through respective servers 25. In the preferred embodiment, the server 27 is a Digital Equipment Corp. Alpha server cluster (e.g., 2400-8000 Series), or a |

**Appendix B-10**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,848,396 (Gerace)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,848,396 (Gerace) |
|---|---|
|  | multiplicity of similar such servers. Server 27 runs Oracle 2.0 Webserver as HyperText Transfer Protocol (HTTP) server software to support operation of present invention program 31. Upon an end user logging onto program 31 through common Internet protocol, program 31 generates an initial screen view (commonly known as the "Home Page") for display to the end user. During the user's first visit, the initial screen view provides menu selections of various agate information (e.g., stock market data, weather, sports, etc.) Upon user selection (using a click of a mouse or other input means) of a menu item, program 31 displays corresponding up-to-date information. Similarly, each time the user selects another menu item, program 31 generates and displays current agate information relating to that selection. In addition, program 31 records the user's selections and his viewing activity with respect to the agate information. In particular, for each piece of displayed agate information, program 31 records the date and time of user viewing and the format which the user has selected for viewing. After multiple sessions, a pattern of the user's viewing actions or viewing habits is obtained, from the recorded activity. In turn, certain inferences about the user are made based on the user's viewing habits and the specific pieces of agate information he views, including content and presentation of that information. To that end, for each user the present invention program 31 creates a user profile from the agate information viewing habits of the user. The system then generates a custom Home Page, including a user's preferred (content and presentation) agate information. On subsequent visits to program 31 (as a Website) by the user, program 31 displays the customized Home Page for that user instead of the initial Home Page. Based on the created user profile for a given user, program 31 enables sponsors to better direct their advertisements and enables advertisements to be tailored to target users' display preferences. That is, both subject matter/content and presentation of advertisements are able to be customized to the end user's preferences due to the information tracked and recorded (i.e., the created user profile) by program 31. Accordingly, program 31 in its most general form has |

**Appendix B-10**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,848,396 (Gerace)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,848,396 (Gerace) |
|---|---|
| | an agate data assembly 71, a user profiling member 73, an advertisement module 75 and a program controller 79 as illustrated in FIG. 2. The agate data assembly 71 stores the various agate information for user viewing. The user profiling member 73 records information regarding each user, including a user's identification, categories of interest and the user's display preferences of each category. Advertisement module 75 holds sponsor information and their advertisements, with a target audience profile indicated for each advertisement. Program controller 79 is a series of routines (methods) on Web server 27. <br><br> *See also* col. 7, lines 23-38. <br><br> Returning to FIG. 3a, the set of Page Display Objects 35a-35c defines the screen views transmitted and displayed to end users. A Page object 35a cross references a User Interface Object 37c which specifies which Page Display Object 35c and which agate information (content and presentation) is appropriate for the current user. Page Data Objects 35b hold the agate or other data to be displayed to end users. Included are advertisements (objects themselves) which may be integrated into the agate data. Preferably advertisements are positioned along the periphery (i.e., above, below, left or right) of the agate data, as defined by a respective Page Display Object 35c. Accordingly, Page Data Objects 35b support Page Display Objects 35c which outline the possible screen content and presentation formats in which agate data advertisements are to be displayed. <br><br> *See also* col. 20, lines 40-41. <br><br> For example, the term "page" is used synonymously with screen view. <br><br> *See also* Figs. 1-5D and associated text. <br><br> To the extent it is found that this reference does not disclose this limitation expressly or inherently, it |

Appendix B-10

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,848,396 (Gerace)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,848,396 (Gerace) |
|---|---|
| | would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [1d] receiving a service request from the first type network node; | Gerace discloses receiving a service request from the first type network node.<br><br>*See* col. 3, line 39 to col. 4, line 49.<br><br>Illustrated in FIG. 1 is a plurality of networks 19a, 19b, 19c. Each network 19 includes a multiplicity of digital processors 11, 13, 15, 17 (e.g., PC's, mini computers and the like) loosely coupled to a host processor or server 21a, 21b, 21c for communication among the processors within that network 19. Also included in each network 19 are printers, facsimiles and the like. In turn, each host processor 21 is coupled to a communication line 23 which interconnects or links the networks 19a, 19b, 19c to each other to form an internet. That is, each of the networks 19 are themselves loosely coupled along a communication line 23 to enable access from a digital processor 11, 13, 15, 17 of one network 19 to a digital processor 11, 13, 15, 17 of another network 19. In the preferred embodiment, the loose coupling of networks 19 is the Internet. Also linked to communication line 23 are various servers 25a, 25b which provide to end users access to the Internet (i.e., access to potentially all other networks 19, and hence processors 11, 13, 15, 17 connected to the Internet). The present invention is a software program 31 operated on and connected through a server 27 to the Internet for communication among the various networks 19 and/or processors 11, 13, 15, 17 and other end users connected through respective servers 25. In the preferred embodiment, the server 27 is a Digital Equipment Corp. Alpha server cluster (e.g., 2400-8000 Series), or a multiplicity of similar such servers. Server 27 runs Oracle 2.0 Webserver as HyperText Transfer Protocol (HTTP) server software to support operation of present invention program 31. Upon an end user logging onto program 31 through common Internet protocol, program 31 generates an initial screen view (commonly known as the "Home Page") for display to the end user. During the |

**Appendix B-10**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,848,396 (Gerace)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,848,396 (Gerace) |
|---|---|
| | user's first visit, the initial screen view provides menu selections of various agate information (e.g., stock market data, weather, sports, etc.) Upon user selection (using a click of a mouse or other input means) of a menu item, program 31 displays corresponding up-to-date information. Similarly, each time the user selects another menu item, program 31 generates and displays current agate information relating to that selection. In addition, program 31 records the user's selections and his viewing activity with respect to the agate information. In particular, for each piece of displayed agate information, program 31 records the date and time of user viewing and the format which the user has selected for viewing. After multiple sessions, a pattern of the user's viewing actions or viewing habits is obtained, from the recorded activity. In turn, certain inferences about the user are made based on the user's viewing habits and the specific pieces of agate information he views, including content and presentation of that information. To that end, for each user the present invention program 31 creates a user profile from the agate information viewing habits of the user. The system then generates a custom Home Page, including a user's preferred (content and presentation) agate information. On subsequent visits to program 31 (as a Website) by the user, program 31 displays the customized Home Page for that user instead of the initial Home Page. Based on the created user profile for a given user, program 31 enables sponsors to better direct their advertisements and enables advertisements to be tailored to target users' display preferences. That is, both subject matter/content and presentation of advertisements are able to be customized to the end user's preferences due to the information tracked and recorded (i.e., the created user profile) by program 31. Accordingly, program 31 in its most general form has an agate data assembly 71, a user profiling member 73, an advertisement module 75 and a program controller 79 as illustrated in FIG. 2. The agate data assembly 71 stores the various agate information for user viewing. The user profiling member 73 records information regarding each user, including a user's identification, categories of interest and the user's display preferences of |

**Appendix B-10**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,848,396 (Gerace)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,848,396 (Gerace) |
|---|---|
| | each category. Advertisement module 75 holds sponsor information and their advertisements, with a target audience profile indicated for each advertisement. Program controller 79 is a series of routines (methods) on Web server 27. <br><br> *See also* col. 11, lines 24-41. <br><br> In addition, program 31 enables user customization of content and format of screen views for each category of information. That is, for each of the Home Page 43 and City Page categories (financial information, sports, weather, travel, telephone directory, personals and classifieds), the user is able to request structured data, preformatted data packages and/or value-added analyses from program 31. Thus if a user provides certain data and an indication of desired form of analyses (ranging from a numeric indication to a simple yes/no indication), program 31 provides prepared analytical views for the user selected data in the subject category. Alternatively, program 31 provides prepared profiles to assist users in selecting data. In response to a user providing a simple analytical statement/request, program 31 responds with data that fits that request. For example, if the user requests college stocks, program 31 suggests some. Also direct user selection of category items and display format is enabled through this feature. <br><br> *See also* col. 13, lines 37-47. <br><br> Stored locally on a user's PC is a cookie (technology by Digital Equipment Corp.) for identifying the user and his preferences. The user logs onto the Internet 29 and enters the URL or Website address of program 31 which initializes main routine 39. The URL request is received by Web server 27 which in turn transmits (a) a login advertisement screen view (i.e., from Page Objects 35a,b,c and Ad Package Object 33b) and (b) a request for a cookie that indicates whether this is a first time user. When no cookie is present, the main routine 39 transmits through server 27 the standard introductory screen view |

**Appendix B-10**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,848,396 (Gerace)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,848,396 (Gerace) |
|---|---|
| | page (Home Page 43, FIG. 4a).<br><br>*See also* col. 14, lines 24-35.<br><br>Say for example, the new user selected (i.e., "clicked on") the "Stock Data" option from the Home Page. Program 31 responds by displaying a screen view featuring the exchange prices from various global exchanges. Main routine 39 also enables a banner to appear at the top of the screen reading (for example) "Brought to you by Dean Witter." The user is able to select/click on this banner to effectively request more Dean Witter information from program 31. To accomplish this, the screen view contains a hyperlink formed of the URL for Dean Witter information on the Internet, and program 31 would list the new user as the requester and the current screen view as the page from which he made the request.<br><br>*See also* Figs. 1-5D and associated text.<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [1e] identifying the first type network node based on the service request; and | Gerace discloses identifying the first type network node based on the service request.<br><br>*See* col. 3, line 39 to col. 4, line 49.<br><br>Illustrated in FIG. 1 is a plurality of networks 19a, 19b, 19c. Each network 19 includes a multiplicity of digital processors 11, 13, 15, 17 (e.g., PC's, mini computers and the like) loosely coupled to a host processor or server 21a, 21b, 21c for communication among the processors within that network 19. Also included in each network 19 are printers, facsimiles and the like. In turn, each host processor 21 is coupled to a communication line 23 which interconnects |

**Appendix B-10**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,848,396 (Gerace)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,848,396 (Gerace) |
|---|---|
| | or links the networks 19a, 19b, 19c to each other to form an internet. That is, each of the networks 19 are themselves loosely coupled along a communication line 23 to enable access from a digital processor 11, 13, 15, 17 of one network 19 to a digital processor 11, 13, 15, 17 of another network 19. In the preferred embodiment, the loose coupling of networks 19 is the Internet.<br><br>Also linked to communication line 23 are various servers 25a, 25b which provide to end users access to the Internet (i.e., access to potentially all other networks 19, and hence processors 11, 13, 15, 17 connected to the Internet). The present invention is a software program 31 operated on and connected through a server 27 to the Internet for communication among the various networks 19 and/or processors 11, 13, 15, 17 and other end users connected through respective servers 25. In the preferred embodiment, the server 27 is a Digital Equipment Corp. Alpha server cluster (e.g., 2400-8000 Series), or a multiplicity of similar such servers. Server 27 runs Oracle 2.0 Webserver as HyperText Transfer Protocol (HTTP) server software to support operation of present invention program 31.<br><br>Upon an end user logging onto program 31 through common Internet protocol, program 31 generates an initial screen view (commonly known as the "Home Page") for display to the end user. During the user's first visit, the initial screen view provides menu selections of various agate information (e.g., stock market data, weather, sports, etc.) Upon user selection (using a click of a mouse or other input means) of a menu item, program 31 displays corresponding up-to-date information. Similarly, each time the user selects another menu item, program 31 generates and displays current agate information relating to that selection.<br><br>In addition, program 31 records the user's selections and his viewing activity with respect to the agate information. In particular, for each piece of displayed agate information, program 31 records the date and time of user viewing and |

**Appendix B-10**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,848,396 (Gerace)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,848,396 (Gerace) |
|---|---|
| | the format which the user has selected for viewing. After multiple sessions, a pattern of the user's viewing actions or viewing habits is obtained, from the recorded activity. In turn, certain inferences about the user are made based on the user's viewing habits and the specific pieces of agate information he views, including content and presentation of that information. To that end, for each user the present invention program 31 creates a user profile from the agate information viewing habits of the user. The system then generates a custom Home Page, including a user's preferred (content and presentation) agate information. On subsequent visits to program 31 (as a Website) by the user, program 31 displays the customized Home Page for that user instead of the initial Home Page.<br><br>Based on the created user profile for a given user, program 31 enables sponsors to better direct their advertisements and enables advertisements to be tailored to target users' display preferences. That is, both subject matter/content and presentation of advertisements are able to be customized to the end user's preferences due to the information tracked and recorded (i.e., the created user profile) by program 31.<br><br>Accordingly, program 31 in its most general form has an agate data assembly 71, a user profiling member 73, an advertisement module 75 and a program controller 79 as illustrated in FIG. 2. The agate data assembly 71 stores the various agate information for user viewing. The user profiling member 73 records information regarding each user, including a user's identification, categories of interest and the user's display preferences of each category. Advertisement module 75 holds sponsor information and their advertisements, with a target audience profile indicated for each advertisement. Program controller 79 is a series of routines (methods) on Web server 27.<br><br>*See also* col. 6, lines 1-12. |

**Appendix B-10**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,848,396 (Gerace)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,848,396 (Gerace) |
|---|---|
|  | In particular, for each set there is a User Object 37a. User Object 37a identifies a respective user by nickname (user chosen), password (user chosen), and optionally E-mail address, postal address, telephone number, credit card number, and the like. User Object 37a also provides language, geographic, demographic and lifestyle information about the user. To accomplish this, User Object 37a stores a separate record for each of the above mentioned information, the collection of records forming the table or data of User Object 37a. FIG. 3b illustrates the fields or records of information employed by User Object 37a in the preferred embodiment. <br><br> *See also* col. 13, lines 37-47. <br><br> Stored locally on a user's PC is a cookie (technology by Digital Equipment Corp.) for identifying the user and his preferences. The user logs onto the Internet 29 and enters the URL or Website address of program 31 which initializes main routine 39. The URL request is received by Web server 27 which in turn transmits (a) a login advertisement screen view (i.e., from Page Objects 35a,b,c and Ad Package Object 33b) and (b) a request for a cookie that indicates whether this is a first time user. When no cookie is present, the main routine 39 transmits through server 27 the standard introductory screen view page (Home Page 43, FIG. 4a). <br><br> *See also* col. 16, lines 19-36. <br><br> Say the user now logs out. Program 31 notes the total usage time and adds it to the user's usage log. When the user subsequently logs on, Web server 27 locates his cookie, and main routine 39 queries the User Object 37a, User Computer Object 37b and User Interface Object 37c of the user to identify who he is and what his preferences are. In turn, main routine 39 queries the Financial and Weather Page objects of the user and returns with data (screen views) of that last session. Using this data, program 31 automatically generates |

**Appendix B-10**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,848,396 (Gerace)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,848,396 (Gerace) |
|---|---|
| | a Home Page 43 tailored to the user, i.e., lists his portfolio and the weather in his last specified city. Also the Home Page 43 displays an option to "click here for weather in other areas." Upon the user doing so and entering a home zip code, program 31 records that information in the User Action History Object 37e and User Object 37a (home zip code field). Program 31 also generates a Weather Page/Screen View for the designated zip code area using the Page Objects 35a,b,c as described above.<br><br>*See also* Figs. 1-5D and associated text.<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [1f] forming a customized page file formed for the first type network node by including the page file formed for the first type network node within the page file for the second type network node. | Gerace discloses forming a customized page file formed for the first type network node by including the page file formed for the first type network node within the page file for the second type network node.<br><br>*See* col. 2, lines 1-34.<br><br>The present invention uses agate information to determine the profile of a computer user, and in particular the behavioral or psychographic profile, as distinguished from the demographic profile, of a user. To accomplish this, the present invention provides (i) a data assembly for displaying customized agate information to a computer user, and (ii) a tracking and profiling member for recording user activity with respect to agate information displayed through the data assembly. Over time, the tracking and profiling member holds a history and/or pattern of user activity which in turn is interpreted as a user's habits and/or preferences. To that end, a psychographic profile is inferred from the recorded activities in the tracking and profiling member. |

**Appendix B-10**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,848,396 (Gerace)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,848,396 (Gerace) |
|---|---|
| | Further, the tracking and profiling member records presentation (format) preferences of the users based on user viewing activity. Preferences with respect to color schemes, text size, shapes, and the like are recorded as part of the psychographic profile of a user. In turn, the psychographic profile enables the data assembly to customize presentation (format) of agate information, per user, for display to the user. |
| | In the preferred embodiment, the data assembly displays agate information and/or advertisements (combined in a common screen view or separately in respective screen views). The advertisements (stored in an advertisement module, for example) are displayed to users in accordance with the psychographic profile of the user. |
| | The tracking and profiling member also records demographics of each user. As a result, the data assembly is able to transmit advertisements for display to users based on psychographic and demographic profiles of the user to provide targeted marketing. |
| | *See also* col. 5, lines 15-25. |
| | With respect to the advertisement module 75, program controller 79 obtains sponsor submitted advertisements from module 75 and generates a screen view formatted according to user preferences as determined from the psychographic profile in the user profiling member 73. That is, program controller 79 enables display of advertisements customized to the user, as to content and presentation (i.e., colors used, orientation on the screen, audio/video components, and the like). Program controller 79 obtains the content from the advertisement module 75 and the presentation details for the subject user from the user profiling member 73. |

**Appendix B-10**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,848,396 (Gerace)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,848,396 (Gerace) |
|---|---|
| | *See also* col. 7, lines 23-38.<br><br>Returning to FIG. 3a, the set of Page Display Objects 35a-35c defines the screen views transmitted and displayed to end users. A Page object 35a cross references a User Interface Object 37c which specifies which Page Display Object 35c and which agate information (content and presentation) is appropriate for the current user. Page Data Objects 35b hold the agate or other data to be displayed to end users. Included are advertisements (objects themselves) which may be integrated into the agate data. Preferably advertisements are positioned along the periphery (i.e., above, below, left or right) of the agate data, as defined by a respective Page Display Object 35c. Accordingly, Page Data Objects 35b support Page Display Objects 35c which outline the possible screen content and presentation formats in which agate data advertisements are to be displayed.<br><br>*See also* col. 7, line 58 to col. 8, line 15.<br><br>Briefly, five types of Financial Pages Objects 35c are utilized by the preferred embodiment. They are named "Stock Page", "Company Page", "Expert Articles Page", "Expert Guide Page" and "Show Me Some Page" (see Appendix I). The "Stock Page" includes (a) data on user-selected stocks in a tabular format, a portfolio value graph and message window (for quickly moving companies present and titles of articles by experts in the field), (b) a tracking list, (c) indices such as Dow Jones Industrial Average and NASDAQ, and (d) a ticker customized to the user (user-selected stock). The expert articles are formatted on screen views for display according to the "Expert Articles Page" format. The "Company Page" format includes the trading symbol/code, stock information and corporate data about a specific company. The "Expert Guide Page" and "Show Me Some Page" formats enable the user to interactively create his own screen display of stock information. In particular, the Expert Guide Page surveys the user on his investment interests. Using the |

**Appendix B-10**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,848,396 (Gerace)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,848,396 (Gerace) |
|---|---|
|  | Expert Guide Page and Show Me Some Page formats, Page Display Object 35c then displays names of companies found to match the user provided criteria. |
|  | In each of the foregoing formats, the preferred embodiment includes incorporation of ads or sponsorship indications as top and/or closing banners. |
|  | *See also* col. 8, lines 13-51. |
|  | In each of the foregoing formats, the preferred embodiment includes incorporation of ads or sponsorship indications as top and/or closing banners. The Home Page 43 (FIG. 4a) provides scores of recent games and news in the "sports" category. If a user selects the sports category from the Home Page, a Page Display Object 35c generates various screens bearing sports information and news. For sports pages/screen views, there are seven page/screen formats of Page Display Object 35c outlined in Appendix I. Briefly, a "General Sports Page" format includes (a) game scores and standings, by league, for professional and collegiate sports, and (b) player standings (professional and collegiate) for baseball, football, hockey and basketball. Statistics are updated and displayed during play of a game, so that the General Sports Page provides game-in-progress statistics in real-time. Also a news window is provided for each sport with a link to a "News Page" (object) for more news. The "News Page" format includes information regarding major trades, signings and injuries. In the preferred embodiment, a scrolling window of latest news is also included. |
|  | A "Team Page" format provides a roster of a given team. Thus program 31 has several Team Page Display Objects 35c. The roster lists players by name, jersey number, position and some statistics. A "Team v. Team Page" format lists similar information as the "Team Page" format but for two teams in facing columns. Indications of favored teams and game scores for an entire season are |

**Appendix B-10**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,848,396 (Gerace)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,848,396 (Gerace) |
|---|---|
| | also provided on a "Team v. Team Page" Display Object 35c.<br><br>Player information is provided in three formats—a "Player Page" format, a "Player v. Team Page" format and "Player v. Player Page" format. Comparison of a player's statistics to his team's statistics is provided in a "Player v. Team Page" Display Object 35c. Comparison statistics of two players on different teams is provided in the "Player v. Player Page" format. Further, some of the above sports page formats allow advertisements to be displayed at the top and/or bottom of the screen view in the preferred embodiment.<br><br>*See also* col. 8, line 52 to col. 9, line 15.<br><br>Referring back to FIG. 4a, the Home Page 43 also provides a weather category. Shown on the Home Page 43 under that category is a long-range (e.g., 5-day) forecast for the user's local area and cities of interest to the user. Also that category provides storm warnings and the like for local areas and cities of interest. Upon user selection of the weather category, a Weather Page Display Object 35c enables display of weather information in one of two formats-- a National Weather Page and a Regional Weather Page (Appendix I). Briefly, the "National Weather Page" format displays temperature and precipitation indications across a relevant map, along with textual descriptions. Audio forecast readings are also provided. Incorporation of a sponsorship ad is provided at the top and/or bottom of the screen view (termed "banners" in Appendix I). The "Regional Weather Page" displays (a) a regional map (e.g., state) with temperature and precipitation indications, (b) a graphical forecast (e.g., high and low temperatures and sun/cloudy, rain or snow predictions for the next several days), and (c) a detailed forecast with tabular and textual descriptions. Also the Regional Weather Page provides weather warnings and advertisements at the bottom of the screen view in the preferred embodiment. |

**Appendix B-10**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,848,396 (Gerace)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,848,396 (Gerace) |
|---|---|
|  | Referring back to the Home Page 43 of FIG. 4a, also included is a Travel Category. Data/information displayed in that category include travel and other ticket purchases of a user within an approaching date and specials advertised in areas of interest to the user. Upon user selection of the Travel Schedule Category of the Home Page 43, a Travel Page Display Object 35c enables display of a Travel Options Page (screen view). |
|  | *See also* col. 14, lines 24-35. |
|  | Say for example, the new user selected (i.e., "clicked on") the "Stock Data" option from the Home Page. Program 31 responds by displaying a screen view featuring the exchange prices from various global exchanges. Main routine 39 also enables a banner to appear at the top of the screen reading (for example) "Brought to you by Dean Witter." The user is able to select/click on this banner to effectively request more Dean Witter information from program 31. To accomplish this, the screen view contains a hyperlink formed of the URL for Dean Witter information on the Internet, and program 31 would list the new user as the requester and the current screen view as the page from which he made the request. |
|  | *See also* col. 14, line 66 to col. 15, line 10. |
|  | Also main routine 39 selects and includes advertisements on the newly assembled page/screen view at server 27. Main routine 39 accomplishes that by (i) determining, for each Ad Package Object 33b, if the advertisements there are appropriate for the user and (ii) ranking all appropriate advertisements. To determine appropriateness, for each ad placed by a sponsor, the sponsor weights demographic and psychographic criteria by importance and identifies which terms are required. The sponsor then gives a minimum total weight required for a user to see the ad series. The weighted criteria and indications of required terms and minimum total weight are recorded in Ad |

**Appendix B-10**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,848,396 (Gerace)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,848,396 (Gerace) |
|---|---|
| | Series Objects 33c (FIG. 5c). |
| | *See also* col. 15, lines 45-48. |
| | Referring back to the example, server 27 transmits the generated screen view (i.e., "Quick Quotation Page" of user specified company with user appropriate ads) for display to the user. |
| | *See also* col. 17, lines 38-52. |
| | Similarly, user-to-user messages and/or notices (e.g., special events or new information available through program 31) are provided to a user. User Viewing History Objects 37f and other User Objects 37 may be searched by program administrators to find users to target notices to, depending on category of information and presentation details. For example, if there is a new satellite picture of a hurricane off the southeast coast, a program administrator could search the User Viewing History Objects 37f to find all users who have in the past viewed weather maps of the southeast coast. The resulting indicated users can then be sent a notice (via their respective Message/Warnings Object 45) saying "Check out hurricane X off the coast of Florida (This message brought to you by White Rain hairspray)", for example. |
| | *See also* col. 19, lines 7-32. |
| | When displayed to the sponsor-user, reports may also have ads integrated therein, similar to pages/screen views displayed to users discussed previously. In the example, say another company previously placed an ad targeting advertisers in the telecommunications industry. When the sponsor-user of the example logs in, the server 27 queries the corresponding Sponsor Object 33a for the company's SIC code and industry description. Recognizing a match, program 31 places the other company's ad on the report screen view displayed |

**Appendix B-10**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,848,396 (Gerace)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,848,396 (Gerace) |
|---|---|
| | to the sponsor-user. If the sponsor-user clicks on the ad, program 31 records the hit for the other company's advertisement, just as it would with any other end user. As such, program 31 tracks advertiser usage as user information and develops demographic profiles for advertisers. This data is stored in the sponsor's Users Objects 33a (FIG. 5 a). When the sponsor-user of the example decides to create a second package, the sponsor-user clicks on a "request an ad package" option and completes a form detailing the package (number of hits/click throughs requested, profiling, etc.). This time however the sponsor-user decides not to identify a target market for this ad. Impressed by the system's regression information, the sponsor-user decides instead to choose "auto target" and allow program 31 to make the most efficient use of the new ad. Graphics of the new ad are "pasted" onto the form and submitted to server 27.<br><br>*See also* Figs. 1-5D and associated text.<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 2* | |
| [2] The method of claim 1, wherein the first type network node is an ISP node, and the second type network node is an ICP node. | Gerace discloses that the first type network node is an ISP node, and the second type network node is an ICP node.<br><br>For example, Gerace discloses that users access web pages through the Internet. *See* claim limitation [1a]. Gerace also discloses customized web pages showing various kinds of content. Thus, the second type network node is an ICP node.<br><br>*See* col. 3, line 39 to col. 4, line 49. |

**Appendix B-10**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,848,396 (Gerace)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,848,396 (Gerace) |
|---|---|
| | Illustrated in FIG. 1 is a plurality of networks 19a, 19b, 19c. Each network 19 includes a multiplicity of digital processors 11, 13, 15, 17 (e.g., PC's, mini computers and the like) loosely coupled to a host processor or server 21a, 21b, 21c for communication among the processors within that network 19. Also included in each network 19 are printers, facsimiles and the like. In turn, each host processor 21 is coupled to a communication line 23 which interconnects or links the networks 19a, 19b, 19c to each other to form an internet. That is, each of the networks 19 are themselves loosely coupled along a communication line 23 to enable access from a digital processor 11, 13, 15, 17 of one network 19 to a digital processor 11, 13, 15, 17 of another network 19. In the preferred embodiment, the loose coupling of networks 19 is the Internet.<br><br>Also linked to communication line 23 are various servers 25a, 25b which provide to end users access to the Internet (i.e., access to potentially all other networks 19, and hence processors 11, 13, 15, 17 connected to the Internet). The present invention is a software program 31 operated on and connected through a server 27 to the Internet for communication among the various networks 19 and/or processors 11, 13, 15, 17 and other end users connected through respective servers 25. In the preferred embodiment, the server 27 is a Digital Equipment Corp. Alpha server cluster (e.g., 2400-8000 Series), or a multiplicity of similar such servers. Server 27 runs Oracle 2.0 Webserver as HyperText Transfer Protocol (HTTP) server software to support operation of present invention program 31.<br><br>Upon an end user logging onto program 31 through common Internet protocol, program 31 generates an initial screen view (commonly known as the "Home Page") for display to the end user. During the user's first visit, the initial screen view provides menu selections of various agate information (e.g., stock market data, weather, sports, etc.) Upon user selection (using a click of a mouse or other input means) of a menu item, program 31 displays corresponding up-to-date information. Similarly, each time the user selects |

**Appendix B-10**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,848,396 (Gerace)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,848,396 (Gerace) |
|---|---|
| | another menu item, program 31 generates and displays current agate information relating to that selection.<br><br>In addition, program 31 records the user's selections and his viewing activity with respect to the agate information. In particular, for each piece of displayed agate information, program 31 records the date and time of user viewing and the format which the user has selected for viewing. After multiple sessions, a pattern of the user's viewing actions or viewing habits is obtained, from the recorded activity. In turn, certain inferences about the user are made based on the user's viewing habits and the specific pieces of agate information he views, including content and presentation of that information. To that end, for each user the present invention program 31 creates a user profile from the agate information viewing habits of the user. The system then generates a custom Home Page, including a user's preferred (content and presentation) agate information. On subsequent visits to program 31 (as a Website) by the user, program 31 displays the customized Home Page for that user instead of the initial Home Page.<br><br>Based on the created user profile for a given user, program 31 enables sponsors to better direct their advertisements and enables advertisements to be tailored to target users' display preferences. That is, both subject matter/content and presentation of advertisements are able to be customized to the end user's preferences due to the information tracked and recorded (i.e., the created user profile) by program 31. Accordingly, program 31 in its most general form has an agate data assembly 71, a user profiling member 73, an advertisement module 75 and a program controller 79 as illustrated in FIG. 2. The agate data assembly 71 stores the various agate information for user viewing. The user profiling member 73 records information regarding each user, including a user's identification, categories of interest and the user's display preferences of each category. Advertisement module 75 holds sponsor information and their advertisements, with a target audience profile indicated |

**Appendix B-10**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,848,396 (Gerace)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,848,396 (Gerace) |
|---|---|
| | for each advertisement. Program controller 79 is a series of routines (methods) on Web server 27.<br><br>*See also* col. 20, lines 46-48.<br><br>    The use of the term "program administer" singularly or in plural is intended to refer to people who operate the Web site of program 31, or the functional equivalent.<br><br>*See also* Figs. 1-5D and associated text.<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter.  *See* Appendix C. |
| *Claim 3* | |
| [3] The method of claim 1, wherein the first type network node is an organization node, and the second type network node is an ICP node. | Gerace discloses that the first type network node is an organization node, and the second type network node is an ICP node.<br><br>For example, Gerace discloses customized web pages showing various kinds of content.  Thus, the second type network node is an ICP node.  Gerace also discloses that customized advertisements could be served to users from a sponsor of advertisements, which would constitute an organization node.<br><br>*See* col. 11, line 64 to col. 12, line 6.<br><br>    For each sponsor (or advertiser), a corresponding Sponsor Object 33a (FIG. 5a) stores in a table (or sponsor directory) the company name, numeric identification unique to that sponsor, user contact information and program 31 administrator contact information. Also Sponsor Object 33a records an indication of the demographic profile of the sponsor company itself in order to |

**Appendix B-10**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,848,396 (Gerace)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,848,396 (Gerace) |
|---|---|
| | advertise to the sponsor company user as is appropriate. Further, Sponsor Object 33a indicates standardized report configurations (display preferences, etc.) for that sponsor. |
| | *See* col. 3, line 39 to col. 4, line 49. |
| | Illustrated in FIG. 1 is a plurality of networks 19a, 19b, 19c. Each network 19 includes a multiplicity of digital processors 11, 13, 15, 17 (e.g., PC's, mini computers and the like) loosely coupled to a host processor or server 21a, 21b, 21c for communication among the processors within that network 19. Also included in each network 19 are printers, facsimiles and the like. In turn, each host processor 21 is coupled to a communication line 23 which interconnects or links the networks 19a, 19b, 19c to each other to form an internet. That is, each of the networks 19 are themselves loosely coupled along a communication line 23 to enable access from a digital processor 11, 13, 15, 17 of one network 19 to a digital processor 11, 13, 15, 17 of another network 19. In the preferred embodiment, the loose coupling of networks 19 is the Internet. |
| | Also linked to communication line 23 are various servers 25a, 25b which provide to end users access to the Internet (i.e., access to potentially all other networks 19, and hence processors 11, 13, 15, 17 connected to the Internet). The present invention is a software program 31 operated on and connected through a server 27 to the Internet for communication among the various networks 19 and/or processors 11, 13, 15, 17 and other end users connected through respective servers 25. In the preferred embodiment, the server 27 is a Digital Equipment Corp. Alpha server cluster (e.g., 2400-8000 Series), or a multiplicity of similar such servers. Server 27 runs Oracle 2.0 Webserver as HyperText Transfer Protocol (HTTP) server software to support operation of present invention program 31. |
| | Upon an end user logging onto program 31 through common Internet protocol, |

**Appendix B-10**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,848,396 (Gerace)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,848,396 (Gerace) |
|---|---|
| | program 31 generates an initial screen view (commonly known as the "Home Page") for display to the end user. During the user's first visit, the initial screen view provides menu selections of various agate information (e.g., stock market data, weather, sports, etc.) Upon user selection (using a click of a mouse or other input means) of a menu item, program 31 displays corresponding up-to-date information. Similarly, each time the user selects another menu item, program 31 generates and displays current agate information relating to that selection.<br><br>In addition, program 31 records the user's selections and his viewing activity with respect to the agate information. In particular, for each piece of displayed agate information, program 31 records the date and time of user viewing and the format which the user has selected for viewing. After multiple sessions, a pattern of the user's viewing actions or viewing habits is obtained, from the recorded activity. In turn, certain inferences about the user are made based on the user's viewing habits and the specific pieces of agate information he views, including content and presentation of that information. To that end, for each user the present invention program 31 creates a user profile from the agate information viewing habits of the user. The system then generates a custom Home Page, including a user's preferred (content and presentation) agate information. On subsequent visits to program 31 (as a Website) by the user, program 31 displays the customized Home Page for that user instead of the initial Home Page.<br><br>Based on the created user profile for a given user, program 31 enables sponsors to better direct their advertisements and enables advertisements to be tailored to target users' display preferences. That is, both subject matter/content and presentation of advertisements are able to be customized to the end user's preferences due to the information tracked and recorded (i.e., the created user profile) by program 31. Accordingly, program 31 in its most general form has an agate data assembly 71, a user profiling member 73, an |

**Appendix B-10**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,848,396 (Gerace)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,848,396 (Gerace) |
|---|---|
| | advertisement module 75 and a program controller 79 as illustrated in FIG. 2. The agate data assembly 71 stores the various agate information for user viewing. The user profiling member 73 records information regarding each user, including a user's identification, categories of interest and the user's display preferences of each category. Advertisement module 75 holds sponsor information and their advertisements, with a target audience profile indicated for each advertisement. Program controller 79 is a series of routines (methods) on Web server 27.<br><br>*See also* col. 20, lines 46-48.<br><br>The use of the term "program administer" singularly or in plural is intended to refer to people who operate the Web site of program 31, or the functional equivalent.<br><br>*See also* Figs. 1-5D and associated text.<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 4* | |
| [4] The method of claim 1, wherein the customized page file includes customized graphics, sounds, applets, links, and text. | Gerace discloses that the customized page file includes customized graphics, sounds, applets, links, and text.<br><br>*See* col. 1, lines 29-44.<br><br>One of the largest pools of databases and electronic media is found on The Internet. The World Wide Web (Web) is a two-year-old protocol used to create and publish documents on the Internet. Web documents may contain graphics, |

**Appendix B-10**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,848,396 (Gerace)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,848,396 (Gerace) |
|---|---|
| | text, sound, video or any combination of these. Web documents can include "hyperlinks" which are highlighted areas of information in one document that, when user-selected, open a related document. In late 1994, "forms" were added to the Web to make it interactive. Previously, Web pages could only be used to display information or point to other Web sites where information was available. The 1994 change allowed those publishing Web pages to publish "forms," i.e., documents that include blank spaces to be completed by users and then returned to the publishing computer, thus allowing interactivity. <br><br>*See also* col. 3, lines 4-7. <br><br> The Sponsor Object categorizes advertisement or other sponsor provided information according to content and presentation, including colors used, size, shape, and whether audio and/or video components are involved. <br><br>*See also* col. 12, lines 50-56. <br><br> Ad Object 33d also provides references to graphic, sound, and multimedia portions of an advertisement. A text-only format of an advertisement is used for users receiving messages on their own E-mail service or on a text-only browser (e.g., Links systems for VAX/VMS operating systems) rather than through the messaging feature of program 31. <br><br>*See also* col. 13, lines 48-61. <br><br> Preferably the Home Page 43 (FIG. 4a) is an HTML (HyperText) document generated through the set of Page Objects 35a,b,c. The Home Page 43 describes to new users the data available at the program 31 Website and allows existing users to log in. The Home Page 43 is formed of several graphical and text documents in the HTML and Java formats. For example, behind the "stock data" menu selection a Stock Exchange ticker flashes, and behind the |

**Appendix B-10**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,848,396 (Gerace)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,848,396 (Gerace) |
|---|---|
| | "weather" option, a display of clouds swirling over San Francisco and then sunshine over Washington, D.C. is shown. A clip of a newly released movie plays behind the "Media Schedule" option, and sports scores scroll behind the "Sports" option. At the bottom of the screen view are login fields and prompts.<br><br>*See also* col. 20, lines 19-24.<br><br>With respect to reporting, if the reports of program 31 show that customers respond to still advertisements more often than moving ones, bright colors more often than darker ones, graphics rather than text, large text rather than small, detailed text or square advertisements rather than bar style ones, such is relayed to the sponsors/advertisers.<br><br>*See also* Figs. 2-5D and associated text.<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter.  *See* Appendix C. |
| *Claim 5* | |
| [5] The method of claim 1, wherein the customized page file includes customized advertisements. | Gerace discloses that the customized page file includes customized advertisements.<br><br>*See* Abstract.<br><br>Computer network method and apparatus provides targeting of appropriate audience based on psychographic or behavioral profiles of end users. The psychographic profile is formed by recording computer activity and viewing habits of the end user. Content of categories of interest and display format in each category are revealed by the psychographic profile, based on user viewing of agate information. Using the profile (with or without additional |

**Appendix B-10**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,848,396 (Gerace)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,848,396 (Gerace) |
|---|---|
| | user demographics), advertisements are displayed to appropriately selected users. Based on regression analysis of recorded responses of a first set of users viewing the advertisements, the target user profile is refined. Viewing by and regression analysis of recorded responses of subsequent sets of users continually auto-targets and customizes ads for the optimal end user audience.<br><br>*See also* col. 2, lines 1-34.<br><br>The present invention uses agate information to determine the profile of a computer user, and in particular the behavioral or psychographic profile, as distinguished from the demographic profile, of a user. To accomplish this, the present invention provides (i) a data assembly for displaying customized agate information to a computer user, and (ii) a tracking and profiling member for recording user activity with respect to agate information displayed through the data assembly. Over time, the tracking and profiling member holds a history and/or pattern of user activity which in turn is interpreted as a user's habits and/or preferences. To that end, a psychographic profile is inferred from the recorded activities in the tracking and profiling member. Further, the tracking and profiling member records presentation (format) preferences of the users based on user viewing activity. Preferences with respect to color schemes, text size, shapes, and the like are recorded as part of the psychographic profile of a user. In turn, the psychographic profile enables the data assembly to customize presentation (format) of agate information, per user, for display to the user. In the preferred embodiment, the data assembly displays agate information and/or advertisements (combined in a common screen view or separately in respective screen views). The advertisements (stored in an advertisement module, for example) are displayed to users in accordance with the psychographic profile of the user. The tracking and profiling member also records demographics of each user. As a result, the data assembly is able to transmit advertisements for display to users based on psychographic and demographic profiles of the user |

**Appendix B-10**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,848,396 (Gerace)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,848,396 (Gerace) |
|---|---|
| | to provide targeted marketing.<br><br>*See also* col. 4, lines 30-47.<br><br>Based on the created user profile for a given user, program 31 enables sponsors to better direct their advertisements and enables advertisements to be tailored to target users' display preferences. That is, both subject matter/content and presentation of advertisements are able to be customized to the end user's preferences due to the information tracked and recorded (i.e., the created user profile) by program 31. Accordingly, program 31 in its most general form has an agate data assembly 71, a user profiling member 73, an advertisement module 75 and a program controller 79 as illustrated in FIG. 2. The agate data assembly 71 stores the various agate information for user viewing. The user profiling member 73 records information regarding each user, including a user's identification, categories of interest and the user's display preferences of each category. Advertisement module 75 holds sponsor information and their advertisements, with a target audience profile indicated for each advertisement.<br><br>*See also* col. 5, lines 15-25.<br><br>With respect to the advertisement module 75, program controller 79 obtains sponsor submitted advertisements from module 75 and generates a screen view formatted according to user preferences as determined from the psychographic profile in the user profiling member 73. That is, program controller 79 enables display of advertisements customized to the user, as to content and presentation (i.e., colors used, orientation on the screen, audio/video components, and the like). Program controller 79 obtains the content from the advertisement module 75 and the presentation details for the subject user from the user profiling member 73. |

**Appendix B-10**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,848,396 (Gerace)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,848,396 (Gerace) |
|---|---|
| | *See also* col. 6, lines 1-12. |
| | In particular, for each set there is a User Object 37a. User Object 37a identifies a respective user by nickname (user chosen), password (user chosen), and optionally E-mail address, postal address, telephone number, credit card number, and the like. User Object 37a also provides language, geographic, demographic and lifestyle information about the user. To accomplish this, User Object 37a stores a separate record for each of the above mentioned information, the collection of records forming the table or data of User Object 37a. FIG. 3b illustrates the fields or records of information employed by User Object 37a in the preferred embodiment. |
| | *See also* col. 8, line 52 to col. 9, line 15. |
| | Referring back to FIG. 4a, the Home Page 43 also provides a weather category. Shown on the Home Page 43 under that category is a long-range (e.g., 5-day) forecast for the user's local area and cities of interest to the user. Also that category provides storm warnings and the like for local areas and cities of interest. Upon user selection of the weather category, a Weather Page Display Object 35c enables display of weather information in one of two formats--a National Weather Page and a Regional Weather Page (Appendix I). Briefly, the "National Weather Page" format displays temperature and precipitation indications across a relevant map, along with textual descriptions. Audio forecast readings are also provided. Incorporation of a sponsorship ad is provided at the top and/or bottom of the screen view (termed "banners" in Appendix I). The "Regional Weather Page" displays (a) a regional map (e.g., state) with temperature and precipitation indications, (b) a graphical forecast (e.g., high and low temperatures and sun/cloudy, rain or snow predictions for the next several days), and (c) a detailed forecast with tabular and textual descriptions. Also the Regional Weather Page provides weather warnings and advertisements at the bottom of the screen view in the preferred embodiment. |

**Appendix B-10**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,848,396 (Gerace)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,848,396 (Gerace) |
|---|---|
| | Referring back to the Home Page 43 of FIG. 4a, also included is a Travel Category. Data/information displayed in that category include travel and other ticket purchases of a user within an approaching date and specials advertised in areas of interest to the user. Upon user selection of the Travel Schedule Category of the Home Page 43, a Travel Page Display Object 35c enables display of a Travel Options Page (screen view). *See also* col. 15, line 66 to col. 16, line 18. The user next selects the Weather category. In response, the set of pertinent User Objects 37 register the user's activities (i.e., what he "clicked on") and record indications of the screen view he was viewing as described before. Main routine 39 prompts the user for his zip code or the name of the city for which he wants weather information. In response to the user specified city, the User Object 37a for the user records an indication of that city as a city of interest to the user. Further, main program 39 generates a Weather Page Object (Appendix I) through Page Objects 35a,b,c to display a weather report for the subject city. This is accomplished in a similar manner to that described above for a Stock Page, but the source of data is one or more on-line services such as Weather Service Corp., Acu Weather, and WSI, for example. As described above, the User Interface Object 37c, User Session Object 37d, User Viewing History Object 37f, and Weather Page Object 35 record (a) open and leave times of the weather screen view, (b) indications of what elements were displayed in that view, and (c) indications of what weather elements the user liked to view in his weather page, including national radar maps and 5-day forecasts. *See also* col. 21, lines 28-51. Weather: |

Appendix B-10

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,848,396 (Gerace)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,848,396 (Gerace) |
|---|---|
|  | Program 31 uses the weather to determine, in part, where users live and where they are going. As such, program 31 enables users to see the weather in 1, 2 or 3 places they are or would like to be. Thus, another program feature allows users to view weather from more than one place simultaneously. Program 31 typically gives users a quick glimpse at the 5-day forecast on the login page, with additional information about their local area or others in map format, graphical images (e.g., a snowflake), and data. Weather summaries may be available (short text blurbs) for larger regions, and possibly for individual cities. The greatest challenge here is how to locate the user. This can be done either with maps, zip codes/postal codes or by city (selectable lists which change by country). Alternatively, it is desirable to have a clickable map which allows the user to get to their location within 2 clicks. Also the system may offer a shortcut where the user can do it by postal code (and have a global database of postal codes). If postal codes duplicate, let the user select from the possible options. Alerts: Users will be able to request alerts of bad or good (e.g., for weekend plans) weather in their area via E-mail.<br><br>*See also* Figs. 1-5D and associated text.<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 6* |  |
| [6a] The method of claim 1, wherein: the service request includes an IP address for identifying the first type network node, and | Gerace discloses that the service request includes an IP address for identifying the first type network node.<br><br>*See* col. 1, lines 29-50.<br><br>One of the largest pools of databases and electronic media is found on The |

- 42 -

**Appendix B-10**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,848,396 (Gerace)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,848,396 (Gerace) |
|---|---|
| | Internet. The World Wide Web (Web) is a two-year-old protocol used to create and publish documents on the Internet. Web documents may contain graphics, text, sound, video or any combination of these. Web documents can include "hyperlinks" which are highlighted areas of information in one document that, when user-selected, open a related document. In late 1994, "forms" were added to the Web to make it interactive. Previously, Web pages could only be used to display information or point to other Web sites where information was available. The 1994 change allowed those publishing Web pages to publish "forms," i.e., documents that include blank spaces to be completed by users and then returned to the publishing computer, thus allowing interactivity. Publishing information on the Web requires two software components. Electronic publishers must run HyperText Transfer Protocol (HTTP) server software. Users scanning or searching on the Internet must use Web browser software. A variety of firms including Microsoft, Oracle, Netscape Communications, Spyglass, Spry, Netcom, and EINet all distribute Web software. <br><br> *See also* col. 4, lines 1-10. <br><br> Upon an end user logging onto program 31 through common Internet protocol, program 31 generates an initial screen view (commonly known as the "Home Page") for display to the end user. During the user's first visit, the initial screen view provides menu selections of various agate information (e.g., stock market data, weather, sports, etc.) Upon user selection (using a click of a mouse or other input means) of a menu item, program 31 displays corresponding up-to-date information. Similarly, each time the user selects another menu item, program 31 generates and displays current agate information relating to that selection. <br><br> *See also* Figs. 1-5D and associated text. |

**Appendix B-10**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,848,396 (Gerace)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,848,396 (Gerace) |
|---|---|
|  | To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [6b] identifying the first type network node based on the service request comprises using the IP address included in the service request to identify the first type network node. | Gerace discloses identifying the first type network node based on the service request comprises using the IP address included in the service request to identify the first type network node.<br><br>*See* col. 1, lines 29-50.<br><br>One of the largest pools of databases and electronic media is found on The Internet. The World Wide Web (Web) is a two-year-old protocol used to create and publish documents on the Internet. Web documents may contain graphics, text, sound, video or any combination of these. Web documents can include "hyperlinks" which are highlighted areas of information in one document that, when user-selected, open a related document. In late 1994, "forms" were added to the Web to make it interactive. Previously, Web pages could only be used to display information or point to other Web sites where information was available. The 1994 change allowed those publishing Web pages to publish "forms," i.e., documents that include blank spaces to be completed by users and then returned to the publishing computer, thus allowing interactivity. Publishing information on the Web requires two software components. Electronic publishers must run HyperText Transfer Protocol (HTTP) server software. Users scanning or searching on the Internet must use Web browser software. A variety of firms including Microsoft, Oracle, Netscape Communications, Spyglass, Spry, Netcom, and EINet all distribute Web software.<br><br>*See also* col. 4, lines 1-10.<br><br>Upon an end user logging onto program 31 through common Internet protocol, program 31 generates an initial screen view (commonly known as the "Home |

- 44 -

**Appendix B-10**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,848,396 (Gerace)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,848,396 (Gerace) |
|---|---|
| | Page") for display to the end user. During the user's first visit, the initial screen view provides menu selections of various agate information (e.g., stock market data, weather, sports, etc.) Upon user selection (using a click of a mouse or other input means) of a menu item, program 31 displays corresponding up-to-date information. Similarly, each time the user selects another menu item, program 31 generates and displays current agate information relating to that selection.<br><br>*See also* Figs. 1-5D and associated text.<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 7* | |
| [7a] A method for providing web page customization service to a plurality of first type network nodes at a second type network node, comprising the steps of: | Gerace discloses a method for providing web page customization service to a plurality of first type network nodes at a second type network node.<br><br>*See* claim limitation [1a].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [7b] forming at least a page file for each of the first type network nodes; | Gerace discloses forming at least a page file for each of the first type network nodes.<br><br>*See* claim limitation [1b].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill |

**Appendix B-10**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,848,396 (Gerace)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,848,396 (Gerace) |
|---|---|
| | and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [7c] forming at least a page file for the second type network node; | Gerace discloses forming at least a page file for the second type network node.<br><br>*See* claim limitation [1c].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [7d] receiving a service request from one of the first type network nodes; | Gerace discloses receiving a service request from one of the first type network nodes.<br><br>*See* claim limitation [1d].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [7e] determining whether the first type network node participates in the web page customization service; | Gerace discloses determining whether the first type network node participates in the web page customization service.<br><br>*See* claim limitation [1e].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [7f] if the first type network node participates in the web page customization service, forming a customized page | Gerace discloses, if the first type network node participates in the web page customization service, forming a customized page file for the service request by including the page file formed for the first type network node within the page file formed for the second type network node. |

**Appendix B-10**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,848,396 (Gerace)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,848,396 (Gerace) |
|---|---|
| file for the service request by including the page file formed for the first type network node within the page file formed for the second type network node; and | *See* claim limitation [1f].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [7g] if the first type network node does not participate in the web page customization service, forming a page file for the service request by using the page file formed for the second type network node. | Gerace discloses, if the first type network node does not participate in the web page customization service, forming a page file for the service request by using the page file formed for the second type network node.<br><br>For example, Gerace discloses dynamically forming a customized page for a user. *See* claim limitations [1a] to [1f]. Gerace also discloses forming a non-customized page if the user does not require customization.<br><br>*See* col. 4, lines 4-36.<br><br>    Upon an end user logging onto program 31 through common Internet protocol, program 31 generates an initial screen view (commonly known as the "Home Page") for display to the end user. During the user's first visit, the initial screen view provides menu selections of various agate information (e.g., stock market data, weather, sports, etc.) Upon user selection (using a click of a mouse or other input means) of a menu item, program 31 displays corresponding up-to-date information. Similarly, each time the user selects another menu item, program 31 generates and displays current agate information relating to that selection.<br><br>    In addition, program 31 records the user's selections and his viewing activity with respect to the agate information. In particular, for each piece of displayed agate information, program 31 records the date and time of user viewing and the format which the user has selected for viewing. After multiple sessions, a |

**Appendix B-10**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,848,396 (Gerace)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,848,396 (Gerace) |
|---|---|
| | pattern of the user's viewing actions or viewing habits is obtained, from the recorded activity. In turn, certain inferences about the user are made based on the user's viewing habits and the specific pieces of agate information he views, including content and presentation of that information. To that end, for each user the present invention program 31 creates a user profile from the agate information viewing habits of the user. The system then generates a custom Home Page, including a user's preferred (content and presentation) agate information. On subsequent visits to program 31 (as a Website) by the user, program 31 displays the customized Home Page for that user instead of the initial Home Page. Based on the created user profile for a given user, program 31 enables sponsors to better direct their advertisements and enables advertisements to be tailored to target users' display preferences. That is, both subject matter/content and presentation of advertisements are able to be customized to the end user's preferences due to the information tracked and recorded (i.e., the created user profile) by program 31. To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 8* | |
| [8] The method of claim 7, wherein the first type network nodes are ISP nodes, and the second type network node is an ICP node. | Gerace discloses that the first type network nodes are ISP nodes, and the second type network node is an ICP node. *See* claim limitation [2]. To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill |

Appendix B-10

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,848,396 (Gerace)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,848,396 (Gerace) |
|---|---|
| | and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 9* | |
| [9] The method of claim 7, wherein the first type network nodes are organization nodes, and the second type network node is an ICP node. | Gerace discloses that the first type network nodes are organization nodes, and the second type network node is an ICP node. *See* claim limitation [3]. To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 10* | |
| [10] The method of claim 7, wherein the customized page file includes customized graphics, sounds, applets, links, and text. | Gerace discloses that the customized page file includes customized graphics, sounds, applets, links, and text. *See* claim limitation [4]. To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 11* | |
| [11] The method of claim 7, wherein the customized page file includes customized advertisements. | Gerace discloses that the customized page file includes customized advertisements. *See* claim limitation [5]. To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill |

**Appendix B-10**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,848,396 (Gerace)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,848,396 (Gerace) |
|---|---|
| | and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 12* | |
| [12a] The method of claim 7, wherein: the service request from one of the first type network nodes includes an IP address for identifying the first type network node, and | Gerace discloses that the service request from one of the first type network nodes includes an IP address for identifying the first type network node. *See* claim limitation [6a]. To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [12b] determining whether the first type network node participates in the web page customization service comprises using the IPI address included in the service request to identify the first type network node. | Gerace discloses determining whether the first type network node participates in the web page customization service comprises using the IPI address included in the service request to identify the first type network node. *See* claim limitation [6b]. To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 13* | |
| [13a] A method for providing web page customization service to a plurality of first type network nodes at a second type network node, | Gerace discloses a method for providing web page customization service to a plurality of first type network nodes at a second type network node. *See* claim limitation [1a]. To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill |

**Appendix B-10**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,848,396 (Gerace)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,848,396 (Gerace) |
|---|---|
| comprising the steps of: | and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [13b] forming a plurality of advertisements for the first type network nodes; | Gerace discloses forming a plurality of advertisements for the first type network nodes.<br><br>*See* claim limitations [1b] and [5].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [13c] forming at least a page file for the second type network node; | Gerace discloses forming at least a page file for the second type network node.<br><br>*See* claim limitation [1c].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [13d] receiving a service request from one of the first type network nodes; | Gerace discloses receiving a service request from one of the first type network nodes.<br><br>*See* claim limitation [1d].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [13e] identifying advertisements for the first type network node; and | Gerace discloses identifying advertisements for the first type network node.<br><br>*See* claim limitations [1e] and [5].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill |

Appendix B-10

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,848,396 (Gerace)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,848,396 (Gerace) |
|---|---|
|  | and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [13f] forming a customized page file for the first type network node by including the identified advertisements within the page file formed for the second type network node. | Gerace discloses forming a customized page file for the first type network node by including the identified advertisements within the page file formed for the second type network node.<br><br>*See* claim limitation [1f].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 14* |  |
| [14] The method of claim 13, wherein the first type network nodes are ISP nodes, and the second type network node is an ICP node. | Gerace discloses that the first type network nodes are ISP nodes, and the second type network node is an ICP node.<br><br>*See* claim limitation [2].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 15* |  |
| [15] The method of claim 13, wherein the first type network nodes are organization nodes, and the second type network node is an ICP node. | Gerace discloses that the first type network nodes are organization nodes, and the second type network node is an ICP node.<br><br>*See* claim limitation [3].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill |

**Appendix B-10**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,848,396 (Gerace)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,848,396 (Gerace) |
|---|---|
| | and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 16* | |
| [16] The method of claim 13, wherein the identified advertisements do not cause negative impact on the owner of the first type network node. | Gerace discloses that the identified advertisements do not cause negative impact on the owner of the first type network node. |
| | For example, Gerace discloses that customized advertisements could be served to users from a sponsor of advertisements. It would have been understood that such advertisements would be identified so as not to cause negative impact on the owner of the first type network node. |
| | *See* col. 11, line 64 to col. 12, line 6. |
| | > For each sponsor (or advertiser), a corresponding Sponsor Object 33a (FIG. 5a) stores in a table (or sponsor directory) the company name, numeric identification unique to that sponsor, user contact information and program 31 administrator contact information. Also Sponsor Object 33a records an indication of the demographic profile of the sponsor company itself in order to advertise to the sponsor company user as is appropriate. Further, Sponsor Object 33a indicates standardized report configurations (display preferences, etc.) for that sponsor. |
| | To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 17* | |
| [17a] An apparatus for dynamically forming a customized web page for a | Gerace discloses an apparatus for dynamically forming a customized web page for a first type network node at a second type network node. |

**Appendix B-10**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,848,396 (Gerace)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,848,396 (Gerace) |
|---|---|
| first type network node at a second type network node, comprising: | *See* claim limitation [1a].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [17b] means for forming at least a page file for the first type network node; | Gerace discloses means for forming at least a page file for the first type network node.<br><br>*See* claim limitation [1b].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [17c] means for forming at least a page file for the second type network node; | Gerace discloses means for forming at least a page file for the second type network node.<br><br>*See* claim limitation [1c].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [17d] means for receiving a service request from the first type network node; | Gerace discloses means for receiving a service request from the first type network node.<br><br>*See* claim limitation [1d].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [17e] means for identifying the first type network node | Gerace discloses means for identifying the first type network node based on the service request. |

**Appendix B-10**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,848,396 (Gerace)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,848,396 (Gerace) |
|---|---|
| based on the service request; and | *See* claim limitation [1e].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [17f] means for forming a customized page file formed for the first type network node by including the page file formed for the first type network node within the page file for the second type network node. | Gerace discloses means for forming a customized page file formed for the first type network node by including the page file formed for the first type network node within the page file for the second type network node.<br><br>*See* claim limitation [1f].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 18* | |
| [18] The apparatus of claim 17, wherein the first type network node is an ISP node, and the second type network node is an ICP node. | Gerace discloses that the first type network node is an organization node, and the second type network node is an ICP node.<br><br>*See* claim limitation [2].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 19* | |
| [19] The apparatus of claim 17, wherein the first type | Gerace discloses that the first type network nodes is an organization node, and the second type network node is an ICP node. |

Appendix B-10

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,848,396 (Gerace)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,848,396 (Gerace) |
|---|---|
| network node is an organization node, and the second type network node is an ICP node. | *See* claim limitation [3].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 20* | |
| [20] The apparatus of claim 17, wherein the customized page file includes customized graphics, sounds, applets, links, and text. | Gerace discloses that the customized page file includes customized graphics, sounds, applets, links, and text.<br><br>*See* claim limitation [4].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 21* | |
| [21] The apparatus of claim 17, wherein the customized page file includes customized advertisements. | Gerace discloses that the customized page file includes customized advertisements.<br><br>*See* claim limitation [5].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 22* | |
| [22a] An apparatus for providing web page customization service to a | Gerace discloses an apparatus for providing web page customization service to a plurality of first type network nodes at a second type network node. |

**Appendix B-10**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,848,396 (Gerace)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,848,396 (Gerace) |
|---|---|
| plurality of first type network nodes at a second type network node, comprising: | *See* claim limitation [7a].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [22b] means for forming at least a page file for each of the first type network nodes; | Gerace discloses means for forming at least a page file for each of the first type network nodes.<br><br>*See* claim limitation [7b].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [22c] means for forming at least a page file for the second type network node; | Gerace discloses means for forming at least a page file for the second type network node.<br><br>*See* claim limitation [7c].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [22d] means for receiving a service request from one of the first type network nodes; | Gerace discloses means for receiving a service request from one of the first type network nodes.<br><br>*See* claim limitation [7d].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [22e] means for determining whether the first type network | Gerace discloses means for determining whether the first type network node participates in the web |

**Appendix B-10**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,848,396 (Gerace)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,848,396 (Gerace) |
|---|---|
| node participates in the web page customization service; | page customization service.<br><br>*See* claim limitation [7e].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [22f] means for forming a customized page file for the service request by including the page file formed for the first type network node within the page file formed for the second type network node, if the first type network node participates in the web page customization service; and | Gerace discloses means for forming a customized page file for the service request by including the page file formed for the first type network node within the page file formed for the second type network node, if the first type network node participates in the web page customization service.<br><br>*See* claim limitation [7f].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [22g] means for forming a page file for the service request by using the page file formed for the second type network node, if the first type network node does not participate in the web page customization service. | Gerace discloses means for forming a page file for the service request by using the page file formed for the second type network node, if the first type network node does not participate in the web page customization service.<br><br>*See* claim limitation [7g].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 23* | |

**Appendix B-10**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,848,396 (Gerace)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,848,396 (Gerace) |
|---|---|
| [23] The apparatus of claim 22, wherein the first type network nodes are ISP nodes, and the second type network node is an ICP node. | Gerace discloses that the first type network nodes are ISP nodes, and the second type network node is an ICP node.<br><br>*See* claim limitation [2].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 24* | |
| [24] The apparatus of claim 22, wherein the first type network nodes are organization nodes, and the second type network node is an ICP node. | Gerace discloses that the first type network nodes are organization nodes, and the second type network node is an ICP node.<br><br>*See* claim limitation [3].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 25* | |
| [25] The apparatus of claim 22, wherein the customized page file includes customized graphics, sounds, applets, links, and text. | Gerace discloses that the customized page file includes customized graphics, sounds, applets, links, and text.<br><br>*See* claim limitation [4].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |

**Appendix B-10**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,848,396 (Gerace)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,848,396 (Gerace) |
|---|---|
| *Claim 26* | |
| [26] The apparatus of claim 25, wherein the customized page file includes customized advertisements. | Gerace discloses that the customized page file includes customized advertisements.<br><br>*See* claim limitation [5].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 27* | |
| [27a] An apparatus for providing web page customization service to a plurality of first type network nodes at a second type network node, comprising: | Gerace discloses an apparatus for providing web page customization service to a plurality of first type network nodes at a second type network node.<br><br>*See* claim limitation [13a].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [27b] means for forming a plurality of advertisements for the first type network nodes; | Gerace discloses means for forming a plurality of advertisements for the first type network nodes.<br><br>*See* claim limitation [13b].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [27c] means for forming at least a page file for the | Gerace discloses means for forming at least a page file for the second type network node. |

**Appendix B-10**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,848,396 (Gerace)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,848,396 (Gerace) |
|---|---|
| second type network node; | *See* claim limitation [13c].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [27d] means for receiving a service request from one of the first type network nodes; | Gerace discloses means for receiving a service request from one of the first type network nodes.<br><br>*See* claim limitation [13d].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [27e] means for identifying advertisements for the first type network node; and | Gerace discloses means for identifying advertisements for the first type network node.<br><br>*See* claim limitation [13e].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [27f] means for forming a customized page file for the first type network node by including the identified advertisements within the page file formed for the second type network node. | Gerace discloses means for forming a customized page file for the first type network node by including the identified advertisements within the page file formed for the second type network node.<br><br>*See* claim limitation [13f].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |

**Appendix B-10**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,848,396 (Gerace)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,848,396 (Gerace) |
|---|---|
| *Claim 28* | |
| [28] The apparatus of claim 27, wherein the first type network nodes are ISP nodes, and the second type network node is an ICP node. | Gerace discloses that the first type network nodes are ISP nodes, and the second type network node is an ICP node.<br><br>*See* claim limitation [2].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 29* | |
| [29] The apparatus of claim 27, wherein the first type network nodes are organization nodes, and the second type network node is an ICP node. | Gerace discloses that the first type network nodes are organization nodes, and the second type network node is an ICP node.<br><br>*See* claim limitation [3].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 30* | |
| [30] The apparatus of claim 27, wherein the identified advertisements do not cause negative impact on the owner of the first type network node. | Gerace discloses that the identified advertisements do not cause negative impact on the owner of the first type network node.<br><br>*See* claim limitation [16].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill |

**Appendix B-10**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,848,396 (Gerace)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,848,396 (Gerace) |
|---|---|
| | and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |

**Appendix B-11**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,854,897 (Radziewicz)**

U.S. Patent No. 5,854,897 to Radziewicz ("Radziewicz") issued from a U.S. patent application filed on December 27, 1996 and qualifies as prior art at least under 35 U.S.C. § 102(e).

Claims 1-30 of U.S. Patent No. 6,442,577 are anticipated by Radziewicz.

In the alternative, each of claims 1-30 of the '577 patent would have been obvious over Radziewicz standing alone or in view of the knowledge of a person of ordinary skill and/or one or more other references, as detailed in Appendix C.

This Exhibit is based in whole or in part on the present understanding of positions taken by PageMelding regarding the coverage, scope and construction of the asserted claims to the extent those positions can be deduced from PageMelding's contentions pursuant to Patent Local Rule 3-1 served on August 3, 2012. Nothing herein is an admission that PageMelding's infringement contentions are correct, an admission that Plaintiff's apparent claim constructions are correct, or an admission that ESPN's technology infringes any asserted claim.

**Appendix B-11**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,854,897 (Radziewicz)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,854,897 (Radziewicz) |
|---|---|
| *Claim 1* | |
| [1a] A method for dynamically forming customized web pages for a first type network node at a second type network node, comprising the steps of: | Radziewicz discloses a method for dynamically forming customized web pages for a first type network node at a second type network node. |
| | For example, Radziewicz discloses dynamically forming customized web pages for an Internet Service Provider at an Internet Content Provider, in which advertisements or other content for the ISP is included in a web page retrieved by a user from an ICP. |
| | *See* Abstract. |
| | A communications marketing system allows a client station accessing a computer network through a Network Service Provider (NSP) to receive advertisements whenever the connection path between the client station and the NSP is idle. The NSP monitors traffic to/from the client station to determine when the connection path is idle. An announcement server connected to the NSP transmits advertising messages and other information to the client station when the connection path is idle. The advertisements are displayed in a predetermined location of a browser client window of the client station. The advertisements can be played/displayed for a predetermined time period. |
| | *See also* col. 8, lines 16–44. |
| | In addition to storing, retrieving and transmitting advertising messages to the DTE 14, the announcement server 30 is programmed to retrieve and transmit certain types of real-time information, such as current financial information, current sports related information, etc. That is, the announcement server 30 is connected to a plurality of remote processors 12 by way of the NSP 16 which have available such real-time information and continually updates a local database or storage structure 34. Then, for example, in the case of a user that subscribes to a real-time information service which provides up to the minute sports information, such sports information is retrieved from the local database 34 and transmitted to the subscriber, along with or in place of advertising messages. |

**Appendix B-11**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,854,897 (Radziewicz)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,854,897 (Radziewicz) |
|---|---|
| | Alternatively, a separate real-time information server 36 is provided which is continually retrieving predetermined categories or types of information so that such information is available to subscribers of real-time information service. The real-time information server 36 operates preferably in an identical manner to the announcement server 30 except for the inclusion of a plurality of databases 38 for storing predetermined types of real-time information. The real-time information server 36 continually updates the plurality of databases 38 by retrieving information from a variety of sources, networks or computers 12. The means and methods of retrieving and storing such information is known by those of ordinary skill in the art. Preferably, the real-time information server 36 comprises the same hardware as the announcement server 30.

*See also* Figs. 1, 2, 4A–4E, 6A–6E, 7–8D and associated text.

To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [1b] forming at least a page file for the first type network node; | Radziewicz discloses forming at least a page file for the first type network node.

For example, Radziewicz discloses dynamically forming customized web pages for an Internet Service Provider at an Internet Content Provider, in which advertisements or other content for the ISP is included in a web page retrieved by a user from an ICP.

*See* Abstract.

A communications marketing system allows a client station accessing a computer network through a Network Service Provider (NSP) to receive advertisements whenever the connection path between the client station and the NSP is idle. The NSP monitors traffic to/from the client station to determine when the connection path is idle. An announcement server connected to the NSP transmits advertising messages and other information to the client station when the connection path is idle. The advertisements are displayed in a predetermined location of a browser client window of the client |

**Appendix B-11**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,854,897 (Radziewicz)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,854,897 (Radziewicz) |
|---|---|
| | station. The advertisements can be played/displayed for a predetermined time period. |
| | *See also* col. 1, lines 49–63. |
| | It would be advantageous to have a communications system which would fill idle line time with a series of pre-recorded announcements which would provide the waiting user with useful information. When the device at the called network address or station line is answered or is responding to the waiting user, the transmission of announcements would discontinue and the connection would be completed in the usual manner. In addition, the announcements would be discontinued if the user abandons the communication or attempted communication. The announcements could comprise a custom audio/video/graphics/text message and menuing system which would allow the user to receive audio, visual, graphics and/or text announcements and interact with the network or make menu choices providing the user with useful information. |
| | *See also* col. 4, line 49 to col. 5, line 7. |
| | As is known to those of ordinary skill in the art, a network terminating device or data terminal equipment (DTE) 14 may be connected to one of the computers 12, by way of a Network Service Provider (NSP) 16 or, in the case of the Internet, by an Internet Service Provider (ISP). The NSP 16 is basically a computer including one or more means for communicating 18 to the computer network 10 and one or more communication paths 20 for allowing users to connect to the NSP 16. The means for communicating 18 may comprise any variety of communications means, such as an analog or digital telephone line, a coaxial cable, wireless communications means, or hybrid communications means. Such means are known to those of ordinary skill in the art and further description of such means is not required for a complete understanding of the present invention. Similarly, the connection path 20 to the DTE 14 may comprise any type of communications medium for connecting the DTE 14 to the NSP 16 which allows data to be passed therebetween, in either analog or digital form. The DTE 14 may communicate with the NSP 16 using a data communications equipment (DCE), such as a modem 22, as is known to those of ordinary skill in the art. Alternatively, the DTE 14 could be connected to the NSP 16 using a dedicated communications line or a digital communications line, such as an ISDN, |

**Appendix B-11**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,854,897 (Radziewicz)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,854,897 (Radziewicz) |
|---|---|
| | HFC, DSL, or other type of access line provided by a local communications provider.<br><br>*See also* col. 5, lines 8–21.<br><br>The DTE 14 may comprise a wide variety of devices for allowing a user to connect to the NSP 16. In the presently preferred embodiment, the DTE 14 comprises a personal computer. However, it should be clearly understood by those skilled in the art from this disclosure that the present invention is not limited to such standard network terminating devices and that the DTE 14, also referred to herein with the term "station", should be read to include but not be limited to devices such as televisions, video monitors, video telephones, telephones, computers, television set-top converters, video servers, front end processors, Internet appliances, fax machines, or other communications devices, and combinations or hybrids thereof connected via the computer network 10.<br><br>*See also* col. 5, lines 22–42.<br><br>As is known to those of ordinary skill in the art, the DTE 14 may communicate with a computer 12 on the computer network 10 by way of the NSP 16 using browser client-server software, in which server software executes on the computer 12 and browser client software resides on the DTE 14. Generally, the server software executes user requests to the computers 12 on the computer network 10 made by the DTE 14, while the browser client software comprises a user-interface, receiving input and displaying information at the DTE 14. The NSP 16 routes communications between the computers 12 on the computer network 10 and the DTE 14, and performs any associated administrative functions, by using standard network server equipment and software. According to a first method of the present invention, the NSP 16 executes a modified network server software program 24 and the DTE 14 executes a modified browser client software program 26, as described in more detail below. The modified network server software 24 and the modified browser client software 26 allow announcements or messages, such as advertising messages, to be transmitted from the NSP 16 to the DTE 14 and played/displayed on the DTE 14.<br><br>*See also* col. 5, line 43 to col. 6, line 12. |

**Appendix B-11**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,854,897 (Radziewicz)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,854,897 (Radziewicz) |
|---|---|
| | The present invention allows messages, announcements or advertisements to be played or displayed on the DTE 14. In the presently preferred embodiment, such advertisements are transmitted to the DTE 14 whenever the connection path 20 is idle. A number of methods are described below for transmitting advertisements to the DTE 14 when the connection path 20 is idle. The present invention allows for any one of the following methods to be implemented, depending on how the DTE 14 interacts with the NSP 16. In a first method, the DTE 14 executes the modified browser client software 26 and the advertisements are transmitted to the DTE 14 whenever the connection path 20 is idle, with the DTE 14 displaying the advertisements in a fixed window of the browser display area. In a second method, the DTE 14 does not have the modified browser client software 26 and the NSP 16 includes a modified home page which allows the DTE 14 to communicate with other devices/computers on the computer network 10 through the modified home page of the NSP 16. The advertisements are displayed in a fixed window of the modified home page of the NSP 16, with the modified home page (including advertisements) being displayed on the DTE 14. In a third method, in which the DTE 14 is not executing the modified browser client software 26, a code module is downloaded from the NSP 16 to the DTE 14 which allows the browser to include a window for displaying the advertisements. In a fourth method, when the connection path 20 is idle, the advertisements are transmitted to the DTE 14 and displayed in a transient display window. The transient window is opened on the DTE 14 allowing the advertisements to be played/displayed while the connection path 20 is idle. When there are data packets to be transmitted to/from the DTE 14 such that the connection path 20 is no longer idle, the transient window is either closed or made a background window. If the transient window is made a background window, the transient window is movable to the foreground upon entry of a predetermined command at the network terminating device. <br><br>*See also* col. 6, lines 33–64. <br><br>The present invention further comprises an advertising or announcement server 30 connected to or in communication with the NSP 16. The announcement server 30 stores and retrieves advertising messages. The advertising messages transmitted to the DTE 14 may comprise text, graphics, audio, video, combinations thereof, and the like, as is known to those of ordinary skill in the art. Preferably, when a user at the DTE 14 establishes communication with the NSP 16 (i.e. connects or logs on), the NSP 16 initiates a task on the announcement server 30 which determines whether the user subscribes |

**Appendix B-11**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,854,897 (Radziewicz)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,854,897 (Radziewicz) |
|---|---|
| | to available advertising services, for instance by checking the user or the user's identification against a list of known subscribers stored in a database 32 of the announcement server 30. Alternatively, the NSP 16 could check if the user is a subscriber and the database 32 could be stored in a memory of the NSP 16. Note also that in the presently preferred embodiment, the announcement server 30 is connected to the subscriber's local NSP 16, and not to a remote host or computer 12. It is presently preferred that each NSP 16 will have its own announcement server 30 coupled thereto for transmitting messages to individual NSP subscribers. However, the NSP 16 could be served by an announcement server 30 which is not co-located with the NSP 16. It is presently preferred that the announcement server 30 comprises a processor and associated memory separate from the NSP 16, such as a personal computer or workstation. However, it will be apparent to those of ordinary skill in the art that the functions of the announcement server 30 could be performed by the NSP 16, for instance, by executing a software program, such as a terminate and stay resident program, on the NSP 16, which fetches advertisements and transmits the advertisements to the DTE 14.<br><br>*See also* Figs. 1, 2, 8A–8D and associated text.<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [1c] forming at least a page file for the second type network node; | Radziewicz discloses forming at least a page file for the second type network node.<br><br>For example, Radziewicz discloses dynamically forming customized web pages for an Internet Service Provider at an Internet Content Provider, in which advertisements or other content for the ISP is included in a web page retrieved by a user from an ICP.<br><br>*See* col. 5, lines 8–21.<br><br>The DTE 14 may comprise a wide variety of devices for allowing a user to connect to the NSP 16. In the presently preferred embodiment, the DTE 14 comprises a personal computer. However, it should be clearly understood by those skilled in the art from this disclosure that the present invention is not |

**Appendix B-11**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,854,897 (Radziewicz)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,854,897 (Radziewicz) |
|---|---|
|  | limited to such standard network terminating devices and that the DTE 14, also referred to herein with the term "station", should be read to include but not be limited to devices such as televisions, video monitors, video telephones, telephones, computers, television set-top converters, video servers, front end processors, Internet appliances, fax machines, or other communications devices, and combinations or hybrids thereof connected via the computer network 10.<br><br>*See also* col. 5, line 43 to col. 6, line 12.<br><br>The present invention allows messages, announcements or advertisements to be played or displayed on the DTE 14. In the presently preferred embodiment, such advertisements are transmitted to the DTE 14 whenever the connection path 20 is idle. A number of methods are described below for transmitting advertisements to the DTE 14 when the connection path 20 is idle. The present invention allows for any one of the following methods to be implemented, depending on how the DTE 14 interacts with the NSP 16. In a first method, the DTE 14 executes the modified browser client software 26 and the advertisements are transmitted to the DTE 14 whenever the connection path 20 is idle, with the DTE 14 displaying the advertisements in a fixed window of the browser display area. In a second method, the DTE 14 does not have the modified browser client software 26 and the NSP 16 includes a modified home page which allows the DTE 14 to communicate with other devices/computers on the computer network 10 through the modified home page of the NSP 16. The advertisements are displayed in a fixed window of the modified home page of the NSP 16, with the modified home page (including advertisements) being displayed on the DTE 14. In a third method, in which the DTE 14 is not executing the modified browser client software 26, a code module is downloaded from the NSP 16 to the DTE 14 which allows the browser to include a window for displaying the advertisements. In a fourth method, when the connection path 20 is idle, the advertisements are transmitted to the DTE 14 and displayed in a transient display window. The transient window is opened on the DTE 14 allowing the advertisements to be played/displayed while the connection path 20 is idle. When there are data packets to be transmitted to/from the DTE 14 such that the connection path 20 is no longer idle, the transient window is either closed or made a background window. If the transient window is made a background window, the transient window is movable to the foreground upon entry of a predetermined command at the network terminating device. |

**Appendix B-11**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,854,897 (Radziewicz)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,854,897 (Radziewicz) |
|---|---|
|  | *See also* Figs. 1, 2, 8A–8D and associated text.<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [1d] receiving a service request from the first type network node; | Radziewicz discloses receiving a service request from the first type network node.<br><br>For example, Radziewicz teaches that ISPs provide access to the Internet through which a user could access the customized web pages.  Users access web pages through service requests made using TCP/IP and HTTP, which the web server receives from the ISP.  The service request necessarily identifies the user and the ISP, because such identification is required for the proper routing of the requested web page to the user.<br><br>*See* col. 5, lines 22–42.<br><br>As is known to those of ordinary skill in the art, the DTE 14 may communicate with a computer 12 on the computer network 10 by way of the NSP 16 using browser client-server software, in which server software executes on the computer 12 and browser client software resides on the DTE 14. Generally, the server software executes user requests to the computers 12 on the computer network 10 made by the DTE 14, while the browser client software comprises a user-interface, receiving input and displaying information at the DTE 14. The NSP 16 routes communications between the computers 12 on the computer network 10 and the DTE 14, and performs any associated administrative functions, by using standard network server equipment and software. According to a first method of the present invention, the NSP 16 executes a modified network server software program 24 and the DTE 14 executes a modified browser client software program 26, as described in more detail below. The modified network server software 24 and the modified browser client software 26 allow announcements or messages, such as advertising messages, to be transmitted from the NSP 16 to the DTE 14 and played/displayed on the DTE 14. |

**Appendix B-11**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,854,897 (Radziewicz)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,854,897 (Radziewicz) |
|---|---|
| | *See also* col. 17, lines 17–28.<br><br>Referring now to FIGS. 4A-4E, the second method of playing/displaying advertisements at the DTE 14 while the connection path 20 is idle is shown. According to the second method, the user at the DTE 14 communicates with the computer network 10 using an "access" page of the NSP 16 as the user's window to the computer network 10. The home page of the NSP 16 is modified and this modified home page is viewed by the user at the DTE 14. The advertisements are displayed in a fixed area of the NSP modified home page. According to this second method, the DTE 14 operates under the control of a conventional browser client program and not the modified browser client program 26.<br><br>*See also* col. 18, lines 30–53.<br><br>At step 224, the user requests an Internet service from within the access page or modified browser client window 75 of the modified network server software 24 displayed on the DTE 14, as is known by those of ordinary skill in the art, by typing in a URL and entering return or clicking on an icon or a highlighted keyword, etc., which causes the DTE 14 to transmit a command to the NSP 16. At step 226, the modified network server software 24 receives the user's service request. The service request includes an IP address and/or an URL. At step 228, the modified network server software 24 routes the service request over the computer network 10 for execution by a remote host computer 12, as specified by the request. At step 230, the modified network server software 24 notifies the announcement server 30 to begin executing an advertising sequence. As with the first embodiment, an advertising sequence is at least one generally continuous advertising message or preferably, a sequence of announcements which are repeatedly generated by the announcement server 30. At step 232, the announcement server 30 checks its database 32 to determine appropriate advertising messages to be played/displayed to the user at the DTE 14 and begins transmitting messages to the modified network server software 24 for display in the fixed announcement window 76.<br><br>*See also* col. 25, line 47 to col. 26, line 12.<br><br>At step 420, the user requests an Internet service, as is known by those of ordinary skill in the art, by typing in a URL and entering return or clicking on an icon, or clicking on a highlighted keyword, etc., |

- 10 -

**Appendix B-11**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,854,897 (Radziewicz)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,854,897 (Radziewicz) |
|---|---|
| | from within the display window 79, which causes the DTE 14 to transmit a command to the modified network server software 24. At step 422, the modified network server software 24 reads the user's service request packets (data packets are formed by the browser client software program and transmitted to the network server software program as is known by those of ordinary skill in the art). The service request packets include an IP address and/or an URL. At step 424, the modified network server software 24 routes the service request packet over the computer network 10 for execution by a remote host computer 12, as specified in the request packet. At step 426, if an FEP 28 is connected for monitoring the traffic to/from the DTE 14, the FEP 28 informs the modified network server software 24 that the connection path 20 is idle, and the modified network server software 24 notifies the announcement server 30 to begin executing an advertising sequence. Alternatively, the modified network server software 24 monitors the traffic destined for or generated by the DTE 14. An advertising sequence is at least one generally continuous advertising message or preferably, a sequence of announcements which are repeatedly generated by the announcement server 30. At step 428, the announcement server 30 opens the transient information window 84 in the browser display window 79 on the DTE 14 and at step 430, the announcement server 30 checks its database 32 to determine appropriate advertising messages to be transmitted to the DTE 14. The announcement server 30 begins transmitting messages to the user by way of the modified network server software 24, for display in the transient window 84 on the DTE 14. *See also* Figs. 1–8D and associated text. To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [1e] identifying the first type network node based on the service request; and | Radziewicz discloses identifying the first type network node based on the service request. For example, Radziewicz teaches that ISPs provide access to the Internet through which a user could access the customized web pages. Users access web pages through service requests made using TCP/IP and HTTP, which the web server receives from the ISP. The service request necessarily identifies the user and the ISP, because such identification is required for the proper routing of the |

**Appendix B-11**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,854,897 (Radziewicz)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,854,897 (Radziewicz) |
|---|---|
| | requested web page to the user. Radziewicz further discloses that the ISP user is identified by his or her IP address. |
| | *See* col. 6, lines 33–64. |
| | The present invention further comprises an advertising or announcement server 30 connected to or in communication with the NSP 16. The announcement server 30 stores and retrieves advertising messages. The advertising messages transmitted to the DTE 14 may comprise text, graphics, audio, video, combinations thereof, and the like, as is known to those of ordinary skill in the art. Preferably, when a user at the DTE 14 establishes communication with the NSP 16 (i.e. connects or logs on), the NSP 16 initiates a task on the announcement server 30 which determines whether the user subscribes to available advertising services, for instance by checking the user or the user's identification against a list of known subscribers stored in a database 32 of the announcement server 30. Alternatively, the NSP 16 could check if the user is a subscriber and the database 32 could be stored in a memory of the NSP 16. Note also that in the presently preferred embodiment, the announcement server 30 is connected to the subscriber's local NSP 16, and not to a remote host or computer 12. It is presently preferred that each NSP 16 will have its own announcement server 30 coupled thereto for transmitting messages to individual NSP subscribers. However, the NSP 16 could be served by an announcement server 30 which is not co-located with the NSP 16. It is presently preferred that the announcement server 30 comprises a processor and associated memory separate from the NSP 16, such as a personal computer or workstation. However, it will be apparent to those of ordinary skill in the art that the functions of the announcement server 30 could be performed by the NSP 16, for instance, by executing a software program, such as a terminate and stay resident program, on the NSP 16, which fetches advertisements and transmits the advertisements to the DTE 14. |
| | *See also* col. 7, lines 28–54. |
| | In the preferred embodiment, the announcement server 30 selects the type of announcements which are transmitted to the DTE 14. The announcement server 30 can also determine the time when a particular announcement is to be played based upon a number of criteria or factors, such as but not limited to, the time of day, the day of the week, the month of the year, the Internet Protocol (IP) address of the DTE |

**Appendix B-11**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,854,897 (Radziewicz)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,854,897 (Radziewicz) |
|---|---|
| | 14 or the IP or universal resource locator (URL) of a computer 12, etc. If the announcement server 30 is set to determine which announcements are to be played based upon the IP address of the DTE 14, the announcement server 30 reads the IP address as provided by the NSP 16 and determines the identity of the user by matching the IP address with a data record stored in the database 32 or other storage structure of the announcement server 30, such as by executing a table look up. The announcement server 30 determines which announcements are designated for the particular IP address and transmits the prestored announcements in a predetermined manner, as described in more detail below. If the announcement server 30 is set to determine which announcements are to be played based upon the time of day, day of week, month of year or any other time frame reference, the announcement server 30 can access the time from a clock (not shown) located within the announcement server 30, which maintains the time of day, day of week, day of month, month of year and year. When a connection is made to the NSP 16 from the DTE 14, and the announcement server 30 has been signaled to initiate a message sequence, the information from the clock is read by the announcement server 30 and compared to information located in a look-up table in the memory of the announcement server 30 to determine which messages are to be played. The announcement server 30 retrieves the designated messages while the connection path 20 is idle until the DTE 14 to NSP 16 connection is terminated. It should be appreciated that, if desired, live announcements may be provided under control of the announcement server 30. <br><br> *See also* col. 10, lines 3–15. <br><br> The main controller 54 generates a billing schedule for determining the amount which the sponsoring person or entity should be charged. Thus, the main controller 54 maintains data files and logs into its data files each announcement which is played to a particular DTE 14. In the preferred embodiment, the controller 54 records other information about the advertisements, such as statistical information, including the advertisement's file name, play time, geographical area in which the advertisement has been played, IP address of the subscriber and/or URL of the computer 12 accessed, and any billing charge associated with the playing of the announcement. <br><br> *See also* col. 18, lines 30–53. |

**Appendix B-11**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,854,897 (Radziewicz)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,854,897 (Radziewicz) |
|---|---|
| | At step 224, the user requests an Internet service from within the access page or modified browser client window 75 of the modified network server software 24 displayed on the DTE 14, as is known by those of ordinary skill in the art, by typing in a URL and entering return or clicking on an icon or a highlighted keyword, etc., which causes the DTE 14 to transmit a command to the NSP 16. At step 226, the modified network server software 24 receives the user's service request. The service request includes an IP address and/or an URL. At step 228, the modified network server software 24 routes the service request over the computer network 10 for execution by a remote host computer 12, as specified by the request. At step 230, the modified network server software 24 notifies the announcement server 30 to begin executing an advertising sequence. As with the first embodiment, an advertising sequence is at least one generally continuous advertising message or preferably, a sequence of announcements which are repeatedly generated by the announcement server 30. At step 232, the announcement server 30 checks its database 32 to determine appropriate advertising messages to be played/displayed to the user at the DTE 14 and begins transmitting messages to the modified network server software 24 for display in the fixed announcement window 76.

*See also* col. 25, line 47 to col. 26, line 12.

At step 420, the user requests an Internet service, as is known by those of ordinary skill in the art, by typing in a URL and entering return or clicking on an icon, or clicking on a highlighted keyword, etc., from within the display window 79, which causes the DTE 14 to transmit a command to the modified network server software 24. At step 422, the modified network server software 24 reads the user's service request packets (data packets are formed by the browser client software program and transmitted to the network server software program as is known by those of ordinary skill in the art). The service request packets include an IP address and/or an URL. At step 424, the modified network server software 24 routes the service request packet over the computer network 10 for execution by a remote host computer 12, as specified in the request packet. At step 426, if an FEP 28 is connected for monitoring the traffic to/from the DTE 14, the FEP 28 informs the modified network server software 24 that the connection path 20 is idle, and the modified network server software 24 notifies the announcement server 30 to begin executing an advertising sequence. Alternatively, the modified network server software 24 monitors the traffic destined for or generated by the DTE 14. An advertising sequence is at least one generally continuous advertising message or preferably, a sequence |

- 14 -

**Appendix B-11**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,854,897 (Radziewicz)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,854,897 (Radziewicz) |
|---|---|
| | of announcements which are repeatedly generated by the announcement server 30. At step 428, the announcement server 30 opens the transient information window 84 in the browser display window 79 on the DTE 14 and at step 430, the announcement server 30 checks its database 32 to determine appropriate advertising messages to be transmitted to the DTE 14. The announcement server 30 begins transmitting messages to the user by way of the modified network server software 24, for display in the transient window 84 on the DTE 14.<br><br>*See also* Figs. 3A–8D and associated text.<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [1f] forming a customized page file for the first type network node by including the page file formed for the first type network node within the page file for the second type network node. | Radziewicz discloses forming a customized page file formed for the first type network node by including the page file formed for the first type network node within the page file for the second type network node.<br><br>For example, Radziewicz discloses dynamically forming customized web pages for an Internet Service Provider at an Internet Content Provider, in which advertisements or other content for the ISP is included in a web page retrieved by a user from an ICP.<br><br>*See* col. 5, line 43 to col. 6, line 12.<br><br>The present invention allows messages, announcements or advertisements to be played or displayed on the DTE 14. In the presently preferred embodiment, such advertisements are transmitted to the DTE 14 whenever the connection path 20 is idle. A number of methods are described below for transmitting advertisements to the DTE 14 when the connection path 20 is idle. The present invention allows for any one of the following methods to be implemented, depending on how the DTE 14 interacts with the NSP 16. In a first method, the DTE 14 executes the modified browser client software 26 and the advertisements are transmitted to the DTE 14 whenever the connection path 20 is idle, with the DTE 14 displaying the advertisements in a fixed window of the browser display area. In a second method, |

**Appendix B-11**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,854,897 (Radziewicz)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,854,897 (Radziewicz) |
|---|---|
| | the DTE 14 does not have the modified browser client software 26 and the NSP 16 includes a modified home page which allows the DTE 14 to communicate with other devices/computers on the computer network 10 through the modified home page of the NSP 16. The advertisements are displayed in a fixed window of the modified home page of the NSP 16, with the modified home page (including advertisements) being displayed on the DTE 14. In a third method, in which the DTE 14 is not executing the modified browser client software 26, a code module is downloaded from the NSP 16 to the DTE 14 which allows the browser to include a window for displaying the advertisements. In a fourth method, when the connection path 20 is idle, the advertisements are transmitted to the DTE 14 and displayed in a transient display window. The transient window is opened on the DTE 14 allowing the advertisements to be played/displayed while the connection path 20 is idle. When there are data packets to be transmitted to/from the DTE 14 such that the connection path 20 is no longer idle, the transient window is either closed or made a background window. If the transient window is made a background window, the transient window is movable to the foreground upon entry of a predetermined command at the network terminating device.<br><br>*See also* col. 17, lines 17–28.<br><br>Referring now to FIGS. 4A-4E, the second method of playing/displaying advertisements at the DTE 14 while the connection path 20 is idle is shown. According to the second method, the user at the DTE 14 communicates with the computer network 10 using an "access" page of the NSP 16 as the user's window to the computer network 10. The home page of the NSP 16 is modified and this modified home page is viewed by the user at the DTE 14. The advertisements are displayed in a fixed area of the NSP modified home page. According to this second method, the DTE 14 operates under the control of a conventional browser client program and not the modified browser client program 26.<br><br>*See also* col. 24, lines 27-45.<br><br>Referring now to FIGS. 6A-6E, the fourth method of playing/displaying advertisements on the DTE 14 while the connection path 20 is idle is shown. In the fourth embodiment, the user at the DTE 14 accesses the NSP 16 using a conventional browser client software program. The NSP 16 executes the modified network server software 24, which transmits advertisements to the DTE 14 when the |

**Appendix B-11**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,854,897 (Radziewicz)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,854,897 (Radziewicz) |
|---|---|
| | connection path 20 is idle, with the advertisements being displayed in a transient display window on the DTE 14. That is, the transient window pops up on the display area of the DTE 14 whenever the advertisements are being transmitted to the DTE 14 and disappears whenever the connection path 20 is otherwise busy. By disappearing, the transient window is either no longer displayed on the DTE 14 or alternatively, the transient window is moved to or made a background window. If the transient window is made a background window, then the transient window is movable to the foreground upon entry of a predetermined command at the DTE 14, as is known by those of ordinary skill in the art.<br><br>*See also* Figs. 1–8D and associated text.<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 2* | |
| [2] The method of claim 1, wherein the first type network node is an ISP node, and the second type network node is an ICP node. | Radziewicz discloses that the first type network node is an ISP node, and the second type network node is an ICP node.<br><br>For example, Radziewicz discloses dynamically forming customized web pages for an Internet Service Provider at an Internet Content Provider, in which advertisements or other content for the ISP is included in a web page retrieved by a user from an ICP.<br><br>*See* col. 2, lines 13–38.<br><br>Briefly stated, the present invention provides a marketing system for displaying an announcement at a network terminating device connected to a communications network by way of a network service provider (NSP) preferably, the marketing system comprises: a browser client program including a display window executing on the network terminating device for allowing the network terminating device to communicate with other devices on the communications network, the NSP providing the network terminating device access to the communications network; a network server program |

**Appendix B-11**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,854,897 (Radziewicz)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,854,897 (Radziewicz) |
|---|---|
| | operating on the NSP for handling communications with the network terminating device and other devices on the communications network; a connection path for connecting the network terminating device with the NSP and allowing communications there between; a traffic monitor for monitoring the connection path to determine when the connection path is idle; and an announcement server connected to the NSP for transmitting at least one announcement to the network terminating device by way of the NSP, wherein the network server program transmits the at least one announcement from the announcement server to the network terminating device when the connection path is idle.<br><br>*See also* col. 4, lines 11–48.<br><br>Referring to the drawings, wherein like numerals indicate like elements throughout, there is shown in FIG. 1 a schematic block diagram of a decentralized computer network 10 including a network communications system in accordance with the present invention. The decentralized computer network 10 generally comprises a plurality of computers 12 which may communicate with each other over communications paths, as is known to those of ordinary skill in the art. An example of the decentralized computer network 10 is the Internet, which is a group of computer networks that communicate with each other by way of the communications paths. However, the computer network 10 may comprise a private local area network or wide area network if desired. The computers 12 may comprise any type of computer or network server, such as a mainframe computer, a midframe computer, a minicomputer, a network server, router, switch, a personal computer, a laptop computer, telephone, fax machine, or any other computing or communications device. As is known to those of ordinary skill in the art, the computers 12 may act as a host or node to which other computers may connect, or as a router for forwarding data packets between networks or computers. The communication paths may comprise any type of communication path capable of transmitting packets of information, such as voice, data, video, multimedia, real-time, store and forward, interactive, or hybrid types of information, in either analog or digital format in symmetrical or asymmetrical format, in packets, frames, cells, or in a continuous stream or in a virtual or dedicated connection, or in any hybrid arrangement. The communications paths may be provided by private or publicly owned local, local exchange, inter-exchange, long distance, international, telecommunications, cable television, broadcast, switched, dedicated or hybrid types of network providers utilizing wireless, facilities-based, satellite-based, or hybrid types of transmission schemes and/or mechanisms, including copper wire, |

**Appendix B-11**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,854,897 (Radziewicz)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,854,897 (Radziewicz) |
|---|---|
| | coaxial cable, fiber-optic cables, microwave and radio towers or satellite dishes. |
| | *See also* col. 4, line 49 to col. 5, line 7. |
| | As is known to those of ordinary skill in the art, a network terminating device or data terminal equipment (DTE) 14 may be connected to one of the computers 12, by way of a Network Service Provider (NSP) 16 or, in the case of the Internet, by an Internet Service Provider (ISP). The NSP 16 is basically a computer including one or more means for communicating 18 to the computer network 10 and one or more communication paths 20 for allowing users to connect to the NSP 16. The means for communicating 18 may comprise any variety of communications means, such as an analog or digital telephone line, a coaxial cable, wireless communications means, or hybrid communications means. Such means are known to those of ordinary skill in the art and further description of such means is not required for a complete understanding of the present invention. Similarly, the connection path 20 to the DTE 14 may comprise any type of communications medium for connecting the DTE 14 to the NSP 16 which allows data to be passed therebetween, in either analog or digital form. The DTE 14 may communicate with the NSP 16 using a data communications equipment (DCE), such as a modem 22, as is known to those of ordinary skill in the art. Alternatively, the DTE 14 could be connected to the NSP 16 using a dedicated communications line or a digital communications line, such as an ISDN, HFC, DSL, or other type of access line provided by a local communications provider. |
| | *See also* col. 5, lines 22–42. |
| | As is known to those of ordinary skill in the art, the DTE 14 may communicate with a computer 12 on the computer network 10 by way of the NSP 16 using browser client-server software, in which server software executes on the computer 12 and browser client software resides on the DTE 14. Generally, the server software executes user requests to the computers 12 on the computer network 10 made by the DTE 14, while the browser client software comprises a user-interface, receiving input and displaying information at the DTE 14. The NSP 16 routes communications between the computers 12 on the computer network 10 and the DTE 14, and performs any associated administrative functions, by using standard network server equipment and software. According to a first method of the present invention, the NSP 16 executes a modified network server software program 24 and the DTE 14 |

**Appendix B-11**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,854,897 (Radziewicz)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,854,897 (Radziewicz) |
|---|---|
| | executes a modified browser client software program 26, as described in more detail below. The modified network server software 24 and the modified browser client software 26 allow announcements or messages, such as advertising messages, to be transmitted from the NSP 16 to the DTE 14 and played/displayed on the DTE 14.<br><br>*See also* col. 6, lines 33–64.<br><br>The present invention further comprises an advertising or announcement server 30 connected to or in communication with the NSP 16. The announcement server 30 stores and retrieves advertising messages. The advertising messages transmitted to the DTE 14 may comprise text, graphics, audio, video, combinations thereof, and the like, as is known to those of ordinary skill in the art. Preferably, when a user at the DTE 14 establishes communication with the NSP 16 (i.e. connects or logs on), the NSP 16 initiates a task on the announcement server 30 which determines whether the user subscribes to available advertising services, for instance by checking the user or the user's identification against a list of known subscribers stored in a database 32 of the announcement server 30. Alternatively, the NSP 16 could check if the user is a subscriber and the database 32 could be stored in a memory of the NSP 16. Note also that in the presently preferred embodiment, the announcement server 30 is connected to the subscriber's local NSP 16, and not to a remote host or computer 12. It is presently preferred that each NSP 16 will have its own announcement server 30 coupled thereto for transmitting messages to individual NSP subscribers. However, the NSP 16 could be served by an announcement server 30 which is not co-located with the NSP 16. It is presently preferred that the announcement server 30 comprises a processor and associated memory separate from the NSP 16, such as a personal computer or workstation. However, it will be apparent to those of ordinary skill in the art that the functions of the announcement server 30 could be performed by the NSP 16, for instance, by executing a software program, such as a terminate and stay resident program, on the NSP 16, which fetches advertisements and transmits the advertisements to the DTE 14.<br><br>*See also* col. 18, lines 30–53.<br><br>At step 224, the user requests an Internet service from within the access page or modified browser client window 75 of the modified network server software 24 displayed on the DTE 14, as is known by |

**Appendix B-11**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,854,897 (Radziewicz)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,854,897 (Radziewicz) |
|---|---|
| | those of ordinary skill in the art, by typing in a URL and entering return or clicking on an icon or a highlighted keyword, etc., which causes the DTE 14 to transmit a command to the NSP 16. At step 226, the modified network server software 24 receives the user's service request. The service request includes an IP address and/or an URL. At step 228, the modified network server software 24 routes the service request over the computer network 10 for execution by a remote host computer 12, as specified by the request. At step 230, the modified network server software 24 notifies the announcement server 30 to begin executing an advertising sequence. As with the first embodiment, an advertising sequence is at least one generally continuous advertising message or preferably, a sequence of announcements which are repeatedly generated by the announcement server 30. At step 232, the announcement server 30 checks its database 32 to determine appropriate advertising messages to be played/displayed to the user at the DTE 14 and begins transmitting messages to the modified network server software 24 for display in the fixed announcement window 76.

*See also* col. 25, line 47 to col. 26, line 12.

At step 420, the user requests an Internet service, as is known by those of ordinary skill in the art, by typing in a URL and entering return or clicking on an icon, or clicking on a highlighted keyword, etc., from within the display window 79, which causes the DTE 14 to transmit a command to the modified network server software 24. At step 422, the modified network server software 24 reads the user's service request packets (data packets are formed by the browser client software program and transmitted to the network server software program as is known by those of ordinary skill in the art). The service request packets include an IP address and/or an URL. At step 424, the modified network server software 24 routes the service request packet over the computer network 10 for execution by a remote host computer 12, as specified in the request packet. At step 426, if an FEP 28 is connected for monitoring the traffic to/from the DTE 14, the FEP 28 informs the modified network server software 24 that the connection path 20 is idle, and the modified network server software 24 notifies the announcement server 30 to begin executing an advertising sequence. Alternatively, the modified network server software 24 monitors the traffic destined for or generated by the DTE 14. An advertising sequence is at least one generally continuous advertising message or preferably, a sequence of announcements which are repeatedly generated by the announcement server 30. At step 428, the announcement server 30 opens the transient information window 84 in the browser display window 79 |

- 21 -

**Appendix B-11**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,854,897 (Radziewicz)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,854,897 (Radziewicz) |
|---|---|
| | on the DTE 14 and at step 430, the announcement server 30 checks its database 32 to determine appropriate advertising messages to be transmitted to the DTE 14. The announcement server 30 begins transmitting messages to the user by way of the modified network server software 24, for display in the transient window 84 on the DTE 14. <br><br> *See also* Figs. 1–7 and associated text. <br><br> To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 3* | |
| [3] The method of claim 1, wherein the first type network node is an organization node, and the second type network node is an ICP node. | Radziewicz discloses that the first type network node is an organization node, and the second type network node is an ICP node. <br><br> For example, Radziewicz discloses dynamically forming customized web pages for an Internet Service Provider at an Internet Content Provider, in which advertisements or other content for the ISP is included in a web page retrieved by a user from an ICP. Radziewicz discloses that the system could be used for an organization node, such as one connected in a local area network or wide area network. <br><br> *See* col. 2, lines 13–38. <br><br> Briefly stated, the present invention provides a marketing system for displaying an announcement at a network terminating device connected to a communications network by way of a network service provider (NSP). preferably, the marketing system comprises: a browser client program including a display window executing on the network terminating device for allowing the network terminating device to communicate with other devices on the communications network, the NSP providing the network terminating device access to the communications network; a network server program operating on the NSP for handling communications with the network terminating device and other devices on the communications network; a connection path for connecting the network terminating |

**Appendix B-11**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,854,897 (Radziewicz)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,854,897 (Radziewicz) |
|---|---|
|  | device with the NSP and allowing communications therebetween; a traffic monitor for monitoring the connection path to determine when the connection path is idle; and an announcement server connected to the NSP for transmitting at least one announcement to the network terminating device by way of the NSP, wherein the network server program transmits the at least one announcement from the announcement server to the network terminating device when the connection path is idle.<br><br>*See also* col. 4, lines 11–48.<br><br>Referring to the drawings, wherein like numerals indicate like elements throughout, there is shown in FIG. 1 a schematic block diagram of a decentralized computer network 10 including a network communications system in accordance with the present invention. The decentralized computer network 10 generally comprises a plurality of computers 12 which may communicate with each other over communications paths, as is known to those of ordinary skill in the art. An example of the decentralized computer network 10 is the Internet, which is a group of computer networks that communicate with each other by way of the communications paths. However, the computer network 10 may comprise a private local area network or wide area network if desired. The computers 12 may comprise any type of computer or network server, such as a mainframe computer, a midframe computer, a minicomputer, a network server, router, switch, a personal computer, a laptop computer, telephone, fax machine, or any other computing or communications device. As is known to those of ordinary skill in the art, the computers 12 may act as a host or node to which other computers may connect, or as a router for forwarding data packets between networks or computers.  The communication paths may comprise any type of communication path capable of transmitting packets of information, such as voice, data, video, multimedia, real-time, store and forward, interactive, or hybrid types of information, in either analog or digital format in symmetrical or asymmetrical format, in packets, frames, cells, or in a continuous stream or in a virtual or dedicated connection, or in any hybrid arrangement. The communications paths may be provided by private or publicly owned local, local exchange, inter-exchange, long distance, international, telecommunications, cable television, broadcast, switched, dedicated or hybrid types of network providers utilizing wireless, facilities-based, satellite-based, or hybrid types of transmission schemes and/or mechanisms, including copper wire, coaxial cable, fiber-optic cables, microwave and radio towers or satellite dishes. |

**Appendix B-11**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,854,897 (Radziewicz)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,854,897 (Radziewicz) |
|---|---|
| | *See also* col. 5, lines 22–42. |
| | As is known to those of ordinary skill in the art, the DTE 14 may communicate with a computer 12 on the computer network 10 by way of the NSP 16 using browser client-server software, in which server software executes on the computer 12 and browser client software resides on the DTE 14. Generally, the server software executes user requests to the computers 12 on the computer network 10 made by the DTE 14, while the browser client software comprises a user-interface, receiving input and displaying information at the DTE 14. The NSP 16 routes communications between the computers 12 on the computer network 10 and the DTE 14, and performs any associated administrative functions, by using standard network server equipment and software. According to a first method of the present invention, the NSP 16 executes a modified network server software program 24 and the DTE 14 executes a modified browser client software program 26, as described in more detail below. The modified network server software 24 and the modified browser client software 26 allow announcements or messages, such as advertising messages, to be transmitted from the NSP 16 to the DTE 14 and played/displayed on the DTE 14. |
| | *See also* col. 6, lines 33–64. |
| | The present invention further comprises an advertising or announcement server 30 connected to or in communication with the NSP 16. The announcement server 30 stores and retrieves advertising messages. The advertising messages transmitted to the DTE 14 may comprise text, graphics, audio, video, combinations thereof, and the like, as is known to those of ordinary skill in the art. Preferably, when a user at the DTE 14 establishes communication with the NSP 16 (i.e. connects or logs on), the NSP 16 initiates a task on the announcement server 30 which determines whether the user subscribes to available advertising services, for instance by checking the user or the user's identification against a list of known subscribers stored in a database 32 of the announcement server 30. Alternatively, the NSP 16 could check if the user is a subscriber and the database 32 could be stored in a memory of the NSP 16. Note also that in the presently preferred embodiment, the announcement server 30 is connected to the subscriber's local NSP 16, and not to a remote host or computer 12. It is presently preferred that each NSP 16 will have its own announcement server 30 coupled thereto for transmitting messages to individual NSP subscribers. However, the NSP 16 could be served by an announcement |

**Appendix B-11**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,854,897 (Radziewicz)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,854,897 (Radziewicz) |
|---|---|
| | server 30 which is not co-located with the NSP 16. It is presently preferred that the announcement server 30 comprises a processor and associated memory separate from the NSP 16, such as a personal computer or workstation. However, it will be apparent to those of ordinary skill in the art that the functions of the announcement server 30 could be performed by the NSP 16, for instance, by executing a software program, such as a terminate and stay resident program, on the NSP 16, which fetches advertisements and transmits the advertisements to the DTE 14.<br><br>*See also* col. 18, lines 30–53.<br><br>At step 224, the user requests an Internet service from within the access page or modified browser client window 75 of the modified network server software 24 displayed on the DTE 14, as is known by those of ordinary skill in the art, by typing in a URL and entering return or clicking on an icon or a highlighted keyword, etc., which causes the DTE 14 to transmit a command to the NSP 16. At step 226, the modified network server software 24 receives the user's service request. The service request includes an IP address and/or an URL. At step 228, the modified network server software 24 routes the service request over the computer network 10 for execution by a remote host computer 12, as specified by the request. At step 230, the modified network server software 24 notifies the announcement server 30 to begin executing an advertising sequence. As with the first embodiment, an advertising sequence is at least one generally continuous advertising message or preferably, a sequence of announcements which are repeatedly generated by the announcement server 30. At step 232, the announcement server 30 checks its database 32 to determine appropriate advertising messages to be played/displayed to the user at the DTE 14 and begins transmitting messages to the modified network server software 24 for display in the fixed announcement window 76.<br><br>*See also* col. 25, line 47 to col. 26, line 12.<br><br>At step 420, the user requests an Internet service, as is known by those of ordinary skill in the art, by typing in a URL and entering return or clicking on an icon, or clicking on a highlighted keyword, etc., from within the display window 79, which causes the DTE 14 to transmit a command to the modified network server software 24. At step 422, the modified network server software 24 reads the user's service request packets (data packets are formed by the browser client software program and |

- 25 -

**Appendix B-11**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,854,897 (Radziewicz)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,854,897 (Radziewicz) |
|---|---|
| | transmitted to the network server software program as is known by those of ordinary skill in the art). The service request packets include an IP address and/or an URL. At step 424, the modified network server software 24 routes the service request packet over the computer network 10 for execution by a remote host computer 12, as specified in the request packet. At step 426, if an FEP 28 is connected for monitoring the traffic to/from the DTE 14, the FEP 28 informs the modified network server software 24 that the connection path 20 is idle, and the modified network server software 24 notifies the announcement server 30 to begin executing an advertising sequence. Alternatively, the modified network server software 24 monitors the traffic destined for or generated by the DTE 14. An advertising sequence is at least one generally continuous advertising message or preferably, a sequence of announcements which are repeatedly generated by the announcement server 30. At step 428, the announcement server 30 opens the transient information window 84 in the browser display window 79 on the DTE 14 and at step 430, the announcement server 30 checks its database 32 to determine appropriate advertising messages to be transmitted to the DTE 14. The announcement server 30 begins transmitting messages to the user by way of the modified network server software 24, for display in the transient window 84 on the DTE 14. *See also* Figs. 1–7 and associated text. To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 4* | |
| [4] The method of claim 1, wherein the customized page file includes customized graphics, sounds, applets, links, and text. | Radziewicz discloses that the customized page file includes customized graphics, sounds, applets, links, and text. *See* col. 1, lines 49–63. It would be advantageous to have a communications system which would fill idle line time with a series of pre-recorded announcements which would provide the waiting user with useful information. |

Appendix B-11

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,854,897 (Radziewicz)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,854,897 (Radziewicz) |
|---|---|
| | When the device at the called network address or station line is answered or is responding to the waiting user, the transmission of announcements would discontinue and the connection would be completed in the usual manner. In addition, the announcements would be discontinued if the user abandons the communication or attempted communication. The announcements could comprise a custom audio/video/graphics/text message and menuing system which would allow the user to receive audio, visual, graphics and/or text announcements and interact with the network or make menu choices providing the user with useful information.<br><br>*See also* col. 4, lines 11–48.<br><br>Referring to the drawings, wherein like numerals indicate like elements throughout, there is shown in FIG. 1 a schematic block diagram of a decentralized computer network 10 including a network communications system in accordance with the present invention. The decentralized computer network 10 generally comprises a plurality of computers 12 which may communicate with each other over communications paths, as is known to those of ordinary skill in the art. An example of the decentralized computer network 10 is the Internet, which is a group of computer networks that communicate with each other by way of the communications paths. However, the computer network 10 may comprise a private local area network or wide area network if desired. The computers 12 may comprise any type of computer or network server, such as a mainframe computer, a midframe computer, a minicomputer, a network server, router, switch, a personal computer, a laptop computer, telephone, fax machine, or any other computing or communications device. As is known to those of ordinary skill in the art, the computers 12 may act as a host or node to which other computers may connect, or as a router for forwarding data packets between networks or computers. The communication paths may comprise any type of communication path capable of transmitting packets of information, such as voice, data, video, multimedia, real-time, store and forward, interactive, or hybrid types of information, in either analog or digital format in symmetrical or asymmetrical format, in packets, frames, cells, or in a continuous stream or in a virtual or dedicated connection, or in any hybrid arrangement. The communications paths may be provided by private or publicly owned local, local exchange, inter-exchange, long distance, international, telecommunications, cable television, broadcast, switched, dedicated or hybrid types of network providers utilizing wireless, facilities-based, satellite-based, or hybrid types of transmission schemes and/or mechanisms, including copper wire, |

**Appendix B-11**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,854,897 (Radziewicz)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,854,897 (Radziewicz) |
|---|---|
| | coaxial cable, fiber-optic cables, microwave and radio towers or satellite dishes. |
| | *See also* col. 6, lines 33–64. |
| | The present invention further comprises an advertising or announcement server 30 connected to or in communication with the NSP 16. The announcement server 30 stores and retrieves advertising messages. The advertising messages transmitted to the DTE 14 may comprise text, graphics, audio, video, combinations thereof, and the like, as is known to those of ordinary skill in the art. Preferably, when a user at the DTE 14 establishes communication with the NSP 16 (i.e. connects or logs on), the NSP 16 initiates a task on the announcement server 30 which determines whether the user subscribes to available advertising services, for instance by checking the user or the user's identification against a list of known subscribers stored in a database 32 of the announcement server 30. Alternatively, the NSP 16 could check if the user is a subscriber and the database 32 could be stored in a memory of the NSP 16. Note also that in the presently preferred embodiment, the announcement server 30 is connected to the subscriber's local NSP 16, and not to a remote host or computer 12. It is presently preferred that each NSP 16 will have its own announcement server 30 coupled thereto for transmitting messages to individual NSP subscribers. However, the NSP 16 could be served by an announcement server 30 which is not co-located with the NSP 16. It is presently preferred that the announcement server 30 comprises a processor and associated memory separate from the NSP 16, such as a personal computer or workstation. However, it will be apparent to those of ordinary skill in the art that the functions of the announcement server 30 could be performed by the NSP 16, for instance, by executing a software program, such as a terminate and stay resident program, on the NSP 16, which fetches advertisements and transmits the advertisements to the DTE 14. |
| | *See also* col. 11, lines 7–29. |
| | A playing format is determined from information stored in the database 32 about each subscriber's DTE 14 or by information determined by the NSP 16. The NSP 16 determines the speed of the DTE 14 access connection and relays this information to the announcement server 30. The announcement server 30 uses the connection speed to select the appropriate types of announcements or advertisements to play. That is, if the DTE 14 is connected to the NSP 16 via a low speed connection |

- 28 -

**Appendix B-11**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,854,897 (Radziewicz)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,854,897 (Radziewicz) |
|---|---|
|  | or the DTE 14 is not capable of handling advanced video graphics or audio messages, then only graphics and text based advertisements are selected for displaying at the DTE 14. However, if the DTE 14 has a high speed connection to the NSP 16 and the DTE 14 is capable of playing video and/or audio messages, then advertisements including more sophisticated video and audio data are played on the DTE 14. It is to be understood by those skilled in the art that any type of advertisement and/or message can be generated by the announcement server 30. Once the playing format is determined, the digitally stored announcements are retrieved from the storage device 32 of the announcement server 30 by the modified network server software 24 operating on the NSP 16 and transmitted to the DTE 14.<br><br>*See also* Figs. 1, 2, 4A–4E, 6A–6E, 7–8D and associated text.<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 5* |  |
| [5] The method of claim 1, wherein the customized page file includes customized advertisements. | Radziewicz discloses the customized page file includes customized advertisements.<br><br>*See* col. 7, lines 28–54.<br><br>In the preferred embodiment, the announcement server 30 selects the type of announcements which are transmitted to the DTE 14. The announcement server 30 can also determine the time when a particular announcement is to be played based upon a number of criteria or factors, such as but not limited to, the time of day, the day of the week, the month of the year, the Internet Protocol (IP) address of the DTE 14 or the IP or universal resource locator (URL) of a computer 12, etc. If the announcement server 30 is set to determine which announcements are to be played based upon the IP address of the DTE 14, the announcement server 30 reads the IP address as provided by the NSP 16 and determines the identity of the user by matching the IP address with a data record stored in the database 32 or other storage structure of the announcement server 30, such as by executing a table look up. The announcement server 30 determines which announcements are designated for the particular IP address |

**Appendix B-11**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,854,897 (Radziewicz)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,854,897 (Radziewicz) |
|---|---|
| | and transmits the prestored announcements in a predetermined manner, as described in more detail below. If the announcement server 30 is set to determine which announcements are to be played based upon the time of day, day of week, month of year or any other time frame reference, the announcement server 30 can access the time from a clock (not shown) located within the announcement server 30, which maintains the time of day, day of week, day of month, month of year and year. When a connection is made to the NSP 16 from the DTE 14, and the announcement server 30 has been signaled to initiate a message sequence, the information from the clock is read by the announcement server 30 and compared to information located in a look-up table in the memory of the announcement server 30 to determine which messages are to be played. The announcement server 30 retrieves the designated messages while the connection path 20 is idle until the DTE 14 to NSP 16 connection is terminated. It should be appreciated that, if desired, live announcements may be provided under control of the announcement server 30.<br><br>*See also* col. 7, line 55 to col. 8, line 15.<br><br>Alternatively, the type of announcements transmitted by the announcement server 30 to the NSP 16 may comprise a type of announcement selected by the user at the DTE 14. For instance, the announcements transmitted to the DTE 14 could be selected from different predetermined categories, such as finance related announcements, automobile related announcements, sports related announcements, etc. The subscriber/user can select a category of interest and then the announcement server 30 transmits advertisements applicable to the user selected category to the DTE 14. It is to be understood by those skilled in the art, that the advertisements can be of any particular subject matter and are not restricted to those mentioned above. The announcement server 30 includes software which is capable of providing a custom menu and custom announcements to subscribers. The announcement server 30 provides customized menus for selected subscribers based upon previous menu selections made by the subscribers. That is, the software contains software filters and agents which allow the software to learn (i.e., remember and act upon) a subscriber's previous menu selections and customize an individual subscriber menu based upon the previous selections or other subscriber input. It is understood by those of ordinary skill in the art how to provide software including software filters and agents to provide a system which self-learns based upon previous subscriber menu selections or other |

**Appendix B-11**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,854,897 (Radziewicz)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,854,897 (Radziewicz) |
|---|---|
| | subscriber input and accordingly, such software is not further discussed herein.<br><br>*See also* col. 11, lines 7–29.<br><br>A playing format is determined from information stored in the database 32 about each subscriber's DTE 14 or by information determined by the NSP 16. The NSP 16 determines the speed of the DTE 14 access connection and relays this information to the announcement server 30. The announcement server 30 uses the connection speed to select the appropriate types of announcements or advertisements to play. That is, if the DTE 14 is connected to the NSP 16 via a low speed connection or the DTE 14 is not capable of handling advanced video graphics or audio messages, then only graphics and text based advertisements are selected for displaying at the DTE 14. However, if the DTE 14 has a high speed connection to the NSP 16 and the DTE 14 is capable of playing video and/or audio messages, then advertisements including more sophisticated video and audio data are played on the DTE 14. It is to be understood by those skilled in the art that any type of advertisement and/or message can be generated by the announcement server 30. Once the playing format is determined, the digitally stored announcements are retrieved from the storage device 32 of the announcement server 30 by the modified network server software 24 operating on the NSP 16 and transmitted to the DTE 14.<br><br>*See also* Figs. 1–8D and associated text.<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 6* | |
| [6a] The method of claim 1, wherein: the service request includes an IP address for identifying the first type | Radziewicz discloses the service request includes an IP address for identifying the first type network node.<br><br>For example, Radziewicz teaches that ISPs provide access to the Internet through which a user could access the customized web pages. Users access web pages through service requests made using |

**Appendix B-11**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,854,897 (Radziewicz)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,854,897 (Radziewicz) |
|---|---|
| network node, and | TCP/IP and HTTP, which the web server receives from the ISP. The service request necessarily identifies the user and the ISP, because such identification is required for the proper routing of the requested web page to the user. Radziewicz further discloses that the ISP user is identified by his or her IP address.<br><br>*See* col. 7, lines 28–54.<br><br>In the preferred embodiment, the announcement server 30 selects the type of announcements which are transmitted to the DTE 14. The announcement server 30 can also determine the time when a particular announcement is to be played based upon a number of criteria or factors, such as but not limited to, the time of day, the day of the week, the month of the year, the Internet Protocol (IP) address of the DTE 14 or the IP or universal resource locator (URL) of a computer 12, etc. If the announcement server 30 is set to determine which announcements are to be played based upon the IP address of the DTE 14, the announcement server 30 reads the IP address as provided by the NSP 16 and determines the identity of the user by matching the IP address with a data record stored in the database 32 or other storage structure of the announcement server 30, such as by executing a table look up. The announcement server 30 determines which announcements are designated for the particular IP address and transmits the prestored announcements in a predetermined manner, as described in more detail below. If the announcement server 30 is set to determine which announcements are to be played based upon the time of day, day of week, month of year or any other time frame reference, the announcement server 30 can access the time from a clock (not shown) located within the announcement server 30, which maintains the time of day, day of week, day of month, month of year and year. When a connection is made to the NSP 16 from the DTE 14, and the announcement server 30 has been signaled to initiate a message sequence, the information from the clock is read by the announcement server 30 and compared to information located in a look-up table in the memory of the announcement server 30 to determine which messages are to be played. The announcement server 30 retrieves the designated messages while the connection path 20 is idle until the DTE 14 to NSP 16 connection is terminated. It should be appreciated that, if desired, live announcements may be provided under control of the announcement server 30. |

**Appendix B-11**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,854,897 (Radziewicz)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,854,897 (Radziewicz) |
|---|---|
| | *See also* col. 18, lines 30–53.<br><br>At step 224, the user requests an Internet service from within the access page or modified browser client window 75 of the modified network server software 24 displayed on the DTE 14, as is known by those of ordinary skill in the art, by typing in a URL and entering return or clicking on an icon or a highlighted keyword, etc., which causes the DTE 14 to transmit a command to the NSP 16. At step 226, the modified network server software 24 receives the user's service request. The service request includes an IP address and/or an URL. At step 228, the modified network server software 24 routes the service request over the computer network 10 for execution by a remote host computer 12, as specified by the request. At step 230, the modified network server software 24 notifies the announcement server 30 to begin executing an advertising sequence. As with the first embodiment, an advertising sequence is at least one generally continuous advertising message or preferably, a sequence of announcements which are repeatedly generated by the announcement server 30. At step 232, the announcement server 30 checks its database 32 to determine appropriate advertising messages to be played/displayed to the user at the DTE 14 and begins transmitting messages to the modified network server software 24 for display in the fixed announcement window 76.<br><br>*See also* col. 25, line 47 to col. 26, line 12.<br><br>At step 420, the user requests an Internet service, as is known by those of ordinary skill in the art, by typing in a URL and entering return or clicking on an icon, or clicking on a highlighted keyword, etc., from within the display window 79, which causes the DTE 14 to transmit a command to the modified network server software 24. At step 422, the modified network server software 24 reads the user's service request packets (data packets are formed by the browser client software program and transmitted to the network server software program as is known by those of ordinary skill in the art). The service request packets include an IP address and/or an URL. At step 424, the modified network server software 24 routes the service request packet over the computer network 10 for execution by a remote host computer 12, as specified in the request packet. At step 426, if an FEP 28 is connected for monitoring the traffic to/from the DTE 14, the FEP 28 informs the modified network server software 24 that the connection path 20 is idle, and the modified network server software 24 notifies the announcement server 30 to begin executing an advertising sequence. Alternatively, the modified |

**Appendix B-11**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,854,897 (Radziewicz)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,854,897 (Radziewicz) |
|---|---|
| | network server software 24 monitors the traffic destined for or generated by the DTE 14. An advertising sequence is at least one generally continuous advertising message or preferably, a sequence of announcements which are repeatedly generated by the announcement server 30. At step 428, the announcement server 30 opens the transient information window 84 in the browser display window 79 on the DTE 14 and at step 430, the announcement server 30 checks its database 32 to determine appropriate advertising messages to be transmitted to the DTE 14. The announcement server 30 begins transmitting messages to the user by way of the modified network server software 24, for display in the transient window 84 on the DTE 14.<br><br>*See also* Figs. 3A–7 and associated text.<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [6b] identifying the first type network node based on the service request comprises using the IP address included in the service request to identify the first type network node. | Radziewicz discloses identifying the first type network node based on the service request comprises using the IP address included in the service request to identify the first type network node.<br><br>For example, Radziewicz teaches that ISPs provide access to the Internet through which a user could access the customized web pages. Users access web pages through service requests made using TCP/IP and HTTP, which the web server receives from the ISP. The service request necessarily identifies the user and the ISP, because such identification is required for the proper routing of the requested web page to the user. Radziewicz further discloses that the ISP user is identified by his or her IP address.<br><br>*See* col. 7, lines 28–54.<br><br>In the preferred embodiment, the announcement server 30 selects the type of announcements which are transmitted to the DTE 14. The announcement server 30 can also determine the time when a particular announcement is to be played based upon a number of criteria or factors, such as but not limited to, the time of day, the day of the week, the month of the year, the Internet Protocol (IP) address of the DTE |

**Appendix B-11**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,854,897 (Radziewicz)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,854,897 (Radziewicz) |
|---|---|
| | 14 or the IP or universal resource locator (URL) of a computer 12, etc. If the announcement server 30 is set to determine which announcements are to be played based upon the IP address of the DTE 14, the announcement server 30 reads the IP address as provided by the NSP 16 and determines the identity of the user by matching the IP address with a data record stored in the database 32 or other storage structure of the announcement server 30, such as by executing a table look up. The announcement server 30 determines which announcements are designated for the particular IP address and transmits the prestored announcements in a predetermined manner, as described in more detail below. If the announcement server 30 is set to determine which announcements are to be played based upon the time of day, day of week, month of year or any other time frame reference, the announcement server 30 can access the time from a clock (not shown) located within the announcement server 30, which maintains the time of day, day of week, day of month, month of year and year. When a connection is made to the NSP 16 from the DTE 14, and the announcement server 30 has been signaled to initiate a message sequence, the information from the clock is read by the announcement server 30 and compared to information located in a look-up table in the memory of the announcement server 30 to determine which messages are to be played. The announcement server 30 retrieves the designated messages while the connection path 20 is idle until the DTE 14 to NSP 16 connection is terminated. It should be appreciated that, if desired, live announcements may be provided under control of the announcement server 30.<br><br>*See also* col. 10, lines 3–15.<br><br>The main controller 54 generates a billing schedule for determining the amount which the sponsoring person or entity should be charged. Thus, the main controller 54 maintains data files and logs into its data files each announcement which is played to a particular DTE 14. In the preferred embodiment, the controller 54 records other information about the advertisements, such as statistical information, including the advertisement's file name, play time, geographical area in which the advertisement has been played, IP address of the subscriber and/or URL of the computer 12 accessed, and any billing charge associated with the playing of the announcement.<br><br>*See also* col. 18, lines 30–53. |

**Appendix B-11**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,854,897 (Radziewicz)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,854,897 (Radziewicz) |
|---|---|
| | At step 224, the user requests an Internet service from within the access page or modified browser client window 75 of the modified network server software 24 displayed on the DTE 14, as is known by those of ordinary skill in the art, by typing in a URL and entering return or clicking on an icon or a highlighted keyword, etc., which causes the DTE 14 to transmit a command to the NSP 16. At step 226, the modified network server software 24 receives the user's service request. The service request includes an IP address and/or an URL. At step 228, the modified network server software 24 routes the service request over the computer network 10 for execution by a remote host computer 12, as specified by the request. At step 230, the modified network server software 24 notifies the announcement server 30 to begin executing an advertising sequence. As with the first embodiment, an advertising sequence is at least one generally continuous advertising message or preferably, a sequence of announcements which are repeatedly generated by the announcement server 30. At step 232, the announcement server 30 checks its database 32 to determine appropriate advertising messages to be played/displayed to the user at the DTE 14 and begins transmitting messages to the modified network server software 24 for display in the fixed announcement window 76.

*See also* col. 25, line 47 to col. 26, line 12.

At step 420, the user requests an Internet service, as is known by those of ordinary skill in the art, by typing in a URL and entering return or clicking on an icon, or clicking on a highlighted keyword, etc., from within the display window 79, which causes the DTE 14 to transmit a command to the modified network server software 24. At step 422, the modified network server software 24 reads the user's service request packets (data packets are formed by the browser client software program and transmitted to the network server software program as is known by those of ordinary skill in the art). The service request packets include an IP address and/or a URL. At step 424, the modified network server software 24 routes the service request packet over the computer network 10 for execution by a remote host computer 12, as specified in the request packet. At step 426, if an FEP 28 is connected for monitoring the traffic to/from the DTE 14, the FEP 28 informs the modified network server software 24 that the connection path 20 is idle, and the modified network server software 24 notifies the announcement server 30 to begin executing an advertising sequence. Alternatively, the modified network server software 24 monitors the traffic destined for or generated by the DTE 14. An advertising sequence is at least one generally continuous advertising message or preferably, a sequence |

**Appendix B-11**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,854,897 (Radziewicz)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,854,897 (Radziewicz) |
|---|---|
| | of announcements which are repeatedly generated by the announcement server 30. At step 428, the announcement server 30 opens the transient information window 84 in the browser display window 79 on the DTE 14 and at step 430, the announcement server 30 checks its database 32 to determine appropriate advertising messages to be transmitted to the DTE 14. The announcement server 30 begins transmitting messages to the user by way of the modified network server software 24, for display in the transient window 84 on the DTE 14.<br><br>*See also* Figs. 3A–7 and associated text.<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 7* | |
| [7a] A method for providing web page customization service to a plurality of first type network nodes at a second type network node, comprising the steps of: | Radziewicz discloses a method for providing web page customization service to a plurality of first type network nodes at a second type network node.<br><br>*See* claim limitation [1a].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [7b] forming at least a page file for each of the first type network nodes; | Radziewicz discloses forming at least a page file for each of the first type network nodes.<br><br>*See* claim limitation [1b].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |

**Appendix B-11**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,854,897 (Radziewicz)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,854,897 (Radziewicz) |
|---|---|
| [7c] forming at least a page file for the second type network node; | Radziewicz discloses forming at least a page file for the second type network node. *See* claim limitation [1c]. To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [7d] receiving a service request from one of the first type network nodes; | Radziewicz discloses receiving a service request from one of the first type network nodes. *See* claim limitation [1d]. To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [7e] determining whether the first type network node participates in the web page customization service; | Radziewicz discloses determining whether the first type network node participates in the web page customization service. *See* claim limitation [1e]. To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [7f] if the first type network node participates in the web page customization service, forming a customized page file for the service request by including the page file formed | Radziewicz discloses, if the first type network node participates in the web page customization service, forming a customized page file for the service request by including the page file formed for the first type network node within the page file formed for the second type network node. *See* claim limitation [1f]. To the extent it is found that this reference does not disclose this limitation expressly or inherently, it |

**Appendix B-11**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,854,897 (Radziewicz)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,854,897 (Radziewicz) |
|---|---|
| for the first type network node within the page file formed for the second type network node; and | would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter.  *See* Appendix C. |
| [7g] if the first type network node does not participate in the web page customization service, forming a page file for the service request by using the page file formed for the second type network node. | Radziewicz discloses, if the first type network node does not participate in the web page customization service, forming a page file for the service request by using the page file formed for the second type network node.<br><br>For example, Radziewicz discloses that the customized web pages are shown only in certain circumstances; the web pages from the ICP could be shown to the user as is without any modification.<br><br>*See* Abstract.<br><br>A communications marketing system allows a client station accessing a computer network through a Network Service Provider (NSP) to receive advertisements whenever the connection path between the client station and the NSP is idle. The NSP monitors traffic to/from the client station to determine when the connection path is idle. An announcement server connected to the NSP transmits advertising messages and other information to the client station when the connection path is idle. The advertisements are displayed in a predetermined location of a browser client window of the client station. The advertisements can be played/displayed for a predetermined time period.<br><br>*See also* col. 8, lines 16–44.<br><br>In addition to storing, retrieving and transmitting advertising messages to the DTE 14, the announcement server 30 is programmed to retrieve and transmit certain types of real-time information, such as current financial information, current sports related information, etc. That is, the announcement server 30 is connected to a plurality of remote processors 12 by way of the NSP 16 which have available such real-time information and continually updates a local database or storage structure 34. Then, for example, in the case of a user that subscribes to a real-time information service which provides up to the minute sports information, such sports information is retrieved from the local |

**Appendix B-11**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,854,897 (Radziewicz)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,854,897 (Radziewicz) |
|---|---|
| | database 34 and transmitted to the subscriber, along with or in place of advertising messages. Alternatively, a separate real-time information server 36 is provided which is continually retrieving predetermined categories or types of information so that such information is available to subscribers of real-time information service. The real-time information server 36 operates preferably in an identical manner to the announcement server 30 except for the inclusion of a plurality of databases 38 for storing predetermined types of real-time information. The real-time information server 36 continually updates the plurality of databases 38 by retrieving information from a variety of sources, networks or computers 12. The means and methods of retrieving and storing such information is known by those of ordinary skill in the art. Preferably, the real-time information server 36 comprises the same hardware as the announcement server 30.<br><br>*See also* Figs. 1, 2, 4A–4E, 6A–6E, 7–8D and associated text.<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 8* | |
| [8] The method of claim 7, wherein the first type network nodes are ISP nodes, and the second type network node is an ICP node. | Radziewicz discloses that the first type network nodes are ISP nodes, and the second type network node is an ICP node.<br><br>*See* claim limitation [2].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 9* | |
| [9] The method of claim 7, | Radziewicz discloses that the first type network nodes are organization nodes, and the second type |

Appendix B-11

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,854,897 (Radziewicz)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,854,897 (Radziewicz) |
|---|---|
| wherein the first type network nodes are organization nodes, and the second type network node is an ICP node. | network node is an ICP node.<br><br>*See* claim limitation [3].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 10* | |
| [10] The method of claim 7, wherein the customized page file includes customized graphics, sounds, applets, links, and text. | Radziewicz discloses that the customized page file includes customized graphics, sounds, applets, links, and text.<br><br>*See* claim limitation [4].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 11* | |
| [11] The method of claim 7, wherein the customized page file includes customized advertisements. | Radziewicz discloses that the customized page file includes customized advertisements.<br><br>*See* claim limitation [5].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 12* | |
| [12a] The method of claim 7, | Radziewicz discloses that the service request from one of the first type network nodes includes an IP |

**Appendix B-11**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,854,897 (Radziewicz)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,854,897 (Radziewicz) |
|---|---|
| wherein: the service request from one of the first type network nodes includes an IP address for identifying the first type network node, and | address for identifying the first type network node.<br><br>*See* claim limitation [6a].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [12b] determining whether the first type network node participates in the web page customization service comprises using the IPI address included in the service request to identify the first type network node. | Radziewicz discloses determining whether the first type network node participates in the web page customization service comprises using the IPI address included in the service request to identify the first type network node.<br><br>*See* claim limitation [6b].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 13* | |
| [13a] A method for providing web page customization service to a plurality of first type network nodes at a second type network node, comprising the steps of: | Radziewicz discloses a method for providing web page customization service to a plurality of first type network nodes at a second type network node.<br><br>*See* claim limitation [1a].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [13b] forming a plurality of advertisements for the first | Radziewicz discloses forming a plurality of advertisements for the first type network nodes. |

**Appendix B-11**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,854,897 (Radziewicz)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,854,897 (Radziewicz) |
|---|---|
| type network nodes; | *See* claim limitations [1b] and [5].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [13c] forming at least a page file for the second type network node; | Radziewicz discloses forming at least a page file for the second type network node.<br><br>*See* claim limitation [1c].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [13d] receiving a service request from one of the first type network nodes; | Radziewicz discloses receiving a service request from one of the first type network nodes.<br><br>*See* claim limitation [1d].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [13e] identifying advertisements for the first type network node; and | Radziewicz discloses identifying advertisements for the first type network node.<br><br>*See* claim limitations [1e] and [5].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [13f] forming a customized page file for the first type | Radziewicz discloses forming a customized page file for the first type network node by including the |

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,854,897 (Radziewicz)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,854,897 (Radziewicz) |
|---|---|
| network node by including the identified advertisements within the page file formed for the second type network node. | identified advertisements within the page file formed for the second type network node.<br><br>*See* claim limitation [1f].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 14* | |
| [14] The method of claim 13, wherein the first type network nodes are ISP nodes, and the second type network node is an ICP node. | Radziewicz discloses that the first type network nodes are ISP nodes, and the second type network node is an ICP node.<br><br>*See* claim limitation [2].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 15* | |
| [15] The method of claim 13, wherein the first type network nodes are organization nodes, and the second type network node is an ICP node. | Radziewicz discloses that the first type network nodes are organization nodes, and the second type network node is an ICP node.<br><br>*See* claim limitation [3].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 16* | |

**Appendix B-11**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,854,897 (Radziewicz)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,854,897 (Radziewicz) |
|---|---|
| [16] The method of claim 13, wherein the identified advertisements do not cause negative impact on the owner of the first type network node. | Radziewicz discloses that the identified advertisements do not cause negative impact on the owner of the first type network node.<br><br>For example, Radziewicz discloses that the ISP is involved in the identification of the advertisements to include in the customized web page. Thus, the advertisements would be selected so as not to have negative impact on the ISP.<br><br>*See* Abstract.<br><br>A communications marketing system allows a client station accessing a computer network through a Network Service Provider (NSP) to receive advertisements whenever the connection path between the client station and the NSP is idle. The NSP monitors traffic to/from the client station to determine when the connection path is idle. An announcement server connected to the NSP transmits advertising messages and other information to the client station when the connection path is idle. The advertisements are displayed in a predetermined location of a browser client window of the client station. The advertisements can be played/displayed for a predetermined time period.<br><br>*See also* col. 8, lines 16–44.<br><br>In addition to storing, retrieving and transmitting advertising messages to the DTE 14, the announcement server 30 is programmed to retrieve and transmit certain types of real-time information, such as current financial information, current sports related information, etc. That is, the announcement server 30 is connected to a plurality of remote processors 12 by way of the NSP 16 which have available such real-time information and continually updates a local database or storage structure 34. Then, for example, in the case of a user that subscribes to a real-time information service which provides up to the minute sports information, such sports information is retrieved from the local database 34 and transmitted to the subscriber, along with or in place of advertising messages. Alternatively, a separate real-time information server 36 is provided which is continually retrieving predetermined categories or types of information so that such information is available to subscribers of real-time information service. The real-time information server 36 operates preferably in an identical manner to the announcement server 30 except for the inclusion of a plurality of databases 38 for |

**Appendix B-11**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,854,897 (Radziewicz)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,854,897 (Radziewicz) |
|---|---|
| | storing predetermined types of real-time information. The real-time information server 36 continually updates the plurality of databases 38 by retrieving information from a variety of sources, networks or computers 12. The means and methods of retrieving and storing such information is known by those of ordinary skill in the art. Preferably, the real-time information server 36 comprises the same hardware as the announcement server 30.<br><br>*See also* Figs. 1, 2, 4A–4E, 6A–6E, 7–8D and associated text.<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 17* | |
| [17a] An apparatus for dynamically forming a customized web page for a first type network node at a second type network node, comprising: | Radziewicz discloses an apparatus for dynamically forming a customized web page for a first type network node at a second type network node.<br><br>*See* claim limitation [1a].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [17b] means for forming at least a page file for the first type network node; | Radziewicz discloses means for forming at least a page file for the first type network node.<br><br>*See* claim limitation [1b].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |

**Appendix B-11**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,854,897 (Radziewicz)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,854,897 (Radziewicz) |
|---|---|
| [17c] means for forming at least a page file for the second type network node; | Radziewicz discloses means for forming at least a page file for the second type network node.<br><br>*See* claim limitation [1c].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [17d] means for receiving a service request from the first type network node; | Radziewicz discloses means for receiving a service request from the first type network node.<br><br>*See* claim limitation [1d].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [17e] means for identifying the first type network node based on the service request; and | Radziewicz discloses means for identifying the first type network node based on the service request.<br><br>*See* claim limitation [1e].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [17f] means for forming a customized page file formed for the first type network node by including the page file formed for the first type network node within the page file for the second type | Radziewicz discloses means for forming a customized page file formed for the first type network node by including the page file formed for the first type network node within the page file for the second type network node.<br><br>*See* claim limitation [1f].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill |

**Appendix B-11**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,854,897 (Radziewicz)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,854,897 (Radziewicz) |
|---|---|
| network node. | and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 18* | |
| [18] The apparatus of claim 17, wherein the first type network node is an ISP node, and the second type network node is an ICP node. | Radziewicz discloses that the first type network node is an ISP node, and the second type network node is an ICP node.<br><br>*See* claim limitation [2].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 19* | |
| [19] The apparatus of claim 17, wherein the first type network node is an organization node, and the second type network node is an ICP node. | Radziewicz discloses that the first type network node is an organization node, and the second type network node is an ICP node.<br><br>*See* claim limitation [3].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 20* | |
| [20] The apparatus of claim 17, wherein the customized page file includes customized graphics, sounds, applets, | Radziewicz discloses that the customized page file includes customized graphics, sounds, applets, links, and text. |

Appendix B-11

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,854,897 (Radziewicz)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,854,897 (Radziewicz) |
|---|---|
| links, and text. | *See* claim limitation [4].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 21* | |
| [21] The apparatus of claim 17, wherein the customized page file includes customized advertisements. | Radziewicz discloses that the customized page file includes customized advertisements.<br><br>*See* claim limitation [5].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 22* | |
| [22a] An apparatus for providing web page customization service to a plurality of first type network nodes at a second type network node, comprising: | Radziewicz discloses an apparatus for providing web page customization service to a plurality of first type network nodes at a second type network node.<br><br>*See* claim limitation [7a].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [22b] means for forming at least a page file for each of the first type network nodes; | Radziewicz discloses means for forming at least a page file for each of the first type network nodes.<br><br>*See* claim limitation [7b].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it |

**Appendix B-11**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,854,897 (Radziewicz)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,854,897 (Radziewicz) |
|---|---|
| | would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [22c] means for forming at least a page file for the second type network node; | Radziewicz discloses means for forming at least a page file for the second type network node. *See* claim limitation [7c]. To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [22d] means for receiving a service request from one of the first type network nodes; | Radziewicz discloses means for receiving a service request from one of the first type network nodes. *See* claim limitation [7d]. To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [22e] means for determining whether the first type network node participates in the web page customization service; | Radziewicz discloses means for determining whether the first type network node participates in the web page customization service. *See* claim limitation [7e]. To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [22f] means for forming a customized page file for the service request by including | Radziewicz discloses means for forming a customized page file for the service request by including the page file formed for the first type network node within the page file formed for the second type network node, if the first type network node participates in the web page customization service. |

**Appendix B-11**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,854,897 (Radziewicz)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,854,897 (Radziewicz) |
|---|---|
| the page file formed for the first type network node within the page file formed for the second type network node, if the first type network node participates in the web page customization service; and | *See* claim limitation [7f]. <br><br> To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [22g] means for forming a page file for the service request by using the page file formed for the second type network node, if the first type network node does not participate in the web page customization service. | Radziewicz discloses means for forming a page file for the service request by using the page file formed for the second type network node, if the first type network node does not participate in the web page customization service. <br><br> *See* claim limitation [7g]. <br><br> To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 23* | |
| [23] The apparatus of claim 22, wherein the first type network nodes are ISP nodes, and the second type network node is an ICP node. | Radziewicz discloses that the first type network nodes are ISP nodes, and the second type network node is an ICP node. <br><br> *See* claim limitation [8]. <br><br> To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 24* | |

**Appendix B-11**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,854,897 (Radziewicz)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,854,897 (Radziewicz) |
|---|---|
| [24] The apparatus of claim 22, wherein the first type network nodes are organization nodes, and the second type network node is an ICP node. | Radziewicz discloses that the first type network nodes are organization nodes, and the second type network node is an ICP node.<br><br>*See* claim limitation [9].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 25* | |
| [25] The apparatus of claim 22, wherein the customized page file includes customized graphics, sounds, applets, links, and text. | Radziewicz discloses that the customized page file includes customized graphics, sounds, applets, links, and text.<br><br>*See* claim limitation [10].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 26* | |
| [26] The apparatus of claim 25, wherein the customized page file includes customized advertisements. | Radziewicz discloses that the customized page file includes customized advertisements.<br><br>*See* claim limitation [11].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 27* | |

**Appendix B-11**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,854,897 (Radziewicz)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,854,897 (Radziewicz) |
|---|---|
| [27a] An apparatus for providing web page customization service to a plurality of first type network nodes at a second type network node, comprising: | Radziewicz discloses an apparatus for providing web page customization service to a plurality of first type network nodes at a second type network node. *See* claim limitation [13a]. To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [27b] means for forming a plurality of advertisements for the first type network nodes; | Radziewicz discloses means for forming a plurality of advertisements for the first type network nodes. *See* claim limitation [13b]. To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [27c] means for forming at least a page file for the second type network node; | Radziewicz discloses means for forming at least a page file for the second type network node. *See* claim limitation [13c]. To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [27d] means for receiving a service request from one of the first type network nodes; | Radziewicz discloses means for receiving a service request from one of the first type network nodes. *See* claim limitation [13d]. To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill |

**Appendix B-11**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,854,897 (Radziewicz)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,854,897 (Radziewicz) |
|---|---|
| | and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [27e] means for identifying advertisements for the first type network node; and | Radziewicz discloses means for identifying advertisements for the first type network node.<br><br>*See* claim limitation [13e].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [27f] means for forming a customized page file for the first type network node by including the identified advertisements within the page file formed for the second type network node. | Radziewicz discloses means for forming a customized page file for the first type network node by including the identified advertisements within the page file formed for the second type network node.<br><br>*See* claim limitation [13f].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 28* | |
| [28] The apparatus of claim 27, wherein the first type network nodes are ISP nodes, and the second type network node is an ICP node. | Radziewicz discloses that the first type network nodes are ISP nodes, and the second type network node is an ICP node.<br><br>*See* claim limitation [14].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 29* | |

**Appendix B-11**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,854,897 (Radziewicz)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,854,897 (Radziewicz) |
|---|---|
| [29] The apparatus of claim 27, wherein the first type network nodes are organization nodes, and the second type network node is an ICP node. | Radziewicz discloses that the first type network nodes are organization nodes, and the second type network node is an ICP node.<br><br>*See* claim limitation [15].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 30* | |
| [30] The apparatus of claim 27, wherein the identified advertisements do not cause negative impact on the owner of the first type network node. | Radziewicz discloses that the identified advertisements do not cause negative impact on the owner of the first type network node.<br><br>*See* claim limitation [16].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |

**Appendix B-12**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,894,554 (Lowery)**

U.S. Patent No. 5,894,554 to Lowery et al. ("Lowery") issued from a U.S. patent application filed on April 23, 1996 and qualifies as prior art at least under 35 U.S.C. § 102(e).

Lowery anticipates at least claims 1-4, 6-10, 12, 17-20, and 22-25 of U.S. Patent No. 6,442,577.

Additionally or in the alternative, each of claims 1-30 of the '577 patent would have been obvious over Lowery standing alone or in view of the knowledge of a person of ordinary skill and/or one or more other references, as detailed in Appendix C.

This chart is based in whole or in part on the present understanding of positions taken by PageMelding regarding the coverage, scope and construction of the asserted claims to the extent those positions can be deduced from PageMelding's contentions pursuant to Patent Local Rule 3-1 served on August 3, 2012. Nothing herein is an admission that PageMelding's infringement contentions are correct, an admission that Plaintiff's apparent claim constructions are correct, or an admission that ESPN's technology infringes any asserted claim.

**Appendix B-12**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,894,554 (Lowery)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,894,554 (Lowery) |
|---|---|
| *Claim 1* | |
| [1a] A method for dynamically forming customized web pages for a first type network node at a second type network node, comprising the steps of: | Lowery discloses a method for dynamically forming customized web pages for a first type network node at a second type network node.<br><br>*See* Abstract.<br><br>    The present invention teaches a method and apparatus for creating and managing custom Web sites. Specifically, one embodiment of the present invention claims a computer-implemented method for managing a dynamic Web page generation request to a Web server, the computer-implemented method comprising the steps of routing the request from the Web server to a page server, the page server receiving the request and releasing the Web server to process other requests, processing the request, the processing being performed by the page server concurrently with the Web server, as the Web server processes the other requests, and dynamically generating a Web page in response to the request, the Web page including data dynamically retrieved from one or more data sources.<br><br>*See also* col. 2, lines 23-32.<br><br>    Method for managing a dynamic web page generation request to a web server. The web server generates a web page including data dynamically retrieved from one or more data sources.<br><br>*See also* Fig. 4 and associated text.<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill |

**Appendix B-12**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,894,554 (Lowery)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,894,554 (Lowery) |
|---|---|
|  | and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [1b] forming at least a page file for the first type network node; | Lowery discloses forming at least a page file for the first type network node.<br><br>*See* col. 6, lines 26-28.<br><br>      A page server dynamically generates a web page in response to a web client request.<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [1c] forming at least a page file for the second type network node; | Lowery discloses forming at least a page file for the second type network node.<br><br>*See* col. 4, lines 1-24.<br><br>      Each web server may have a number of web pages, which may utilize different applications, such as CGI applications or HTML documents.<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [1d] receiving a service request from the first type network node; | Lowery discloses receiving a service request from the first type network node.<br><br>*See* col. 1, lines 23-38.<br><br>      Once created, Web pages reside on the Web, on Web servers or Web sites. A Web site can contain numerous Web pages. Web client machines running Web browsers can access these Web pages at Web sites via a communications protocol known as HyperText Transport Protocol (HTTP). Web browsers are |

**Appendix B-12**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,894,554 (Lowery)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,894,554 (Lowery) |
|---|---|
|  | software interfaces that run on World Wide Web clients to allow access to Web sites via a simple user interface. A Web browser allows a Web client to request a particular Web page from a Web site by specifying a Uniform Resource Locator (URL). A URL is a Web address that identifies the Web page and its location on the Web. When the appropriate Web site receives the URL, the Web page corresponding to the requested URL is located, and if required, HTML output is generated. The HTML output is then sent via HTTP to the client for formatting on the client's screen.<br><br>*See also* col. 4, lines 12-15.<br><br>The web client makes a URL request. This URL request is examined by the web browser to determine the appropriate web server to route the request to.<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [1e] identifying the first type network node based on the service request; and | Lowery discloses identifying the first type network node based on the service request.<br><br>*See* col. 1, lines 23-38.<br><br>Once created, Web pages reside on the Web, on Web servers or Web sites. A Web site can contain numerous Web pages. Web client machines running Web browsers can access these Web pages at Web sites via a communications protocol known as HyperText Transport Protocol (HTTP). Web browsers are software interfaces that run on World Wide Web clients to allow access to Web sites via a simple user interface. A Web browser allows a Web client to request a particular Web page from a Web site by specifying a Uniform Resource Locator (URL). A URL is a Web address that identifies the Web page and its location on the Web. When the appropriate Web site receives the |

**Appendix B-12**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,894,554 (Lowery)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,894,554 (Lowery) |
|---|---|
|  | URL, the Web page corresponding to the requested URL is located, and if required, HTML output is generated. The HTML output is then sent via HTTP to the client for formatting on the client's screen.<br><br>*See also* col. 5, lines 56-58.<br><br>Dispatcher 402 thus examines a particular request and determines which Page servers can service the URL request.<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [1f] forming a customized page file formed for the first type network node by including the page file formed for the first type network node within the page file for the second type network node. | Lowery discloses forming a customized page file formed for the first type network node by including the page file formed for the first type network node within the page file for the second type network node.<br><br>*See* Abstract.<br><br>The present invention teaches a method and apparatus for creating and managing custom Web sites. Specifically, one embodiment of the present invention claims a computer-implemented method for managing a dynamic Web page generation request to a Web server, the computer-implemented method comprising the steps of routing the request from the Web server to a page server, the page server receiving the request and releasing the Web server to process other requests, processing the request, the processing being performed by the page server concurrently with the Web server, as the Web server processes the other requests, and dynamically generating a Web page in response to the request, the Web page including data dynamically retrieved from one or more data sources. |

**Appendix B-12**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,894,554 (Lowery)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,894,554 (Lowery) |
|---|---|
|  | *See also* col. 6, lines 33-38.<br><br>One embodiment of the claimed invention also provides a Web page designer with HTML extensions, or "dyna" tags. These dyna tags provide customized HTML functionality to a Web page designer, to allow the designer to build customized HTML templates that specify the source and placement of retrieved data<br><br>*See also* Fig. 4 and associated text.<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 2* |  |
|  |  |
| [2] The method of claim 1, wherein the first type network node is an ISP node, and the second type network node is an ICP node. | Lowery discloses that the first type network node is an ISP node, and the second type network node is an ICP node.<br><br>*See* Abstract.<br><br>The present invention teaches a method and apparatus for creating and managing custom Web sites. Specifically, one embodiment of the present invention claims a computer-implemented method for managing a dynamic Web page generation request to a Web server, the computer-implemented method comprising the steps of routing the request from the Web server to a page server, the page server receiving the request and releasing the Web server to process other requests, processing the request, the processing being performed by the page server concurrently with the Web server, as the Web server processes the other requests, and dynamically generating a Web page in response to the request, the Web page including data dynamically retrieved |

**Appendix B-12**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,894,554 (Lowery)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,894,554 (Lowery) |
|---|---|
| | from one or more data sources.<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 3* | |
| [3] The method of claim 1, wherein the first type network node is an organization node, and the second type network node is an ICP node. | Lowery discloses that the first type network node is an organization node, and the second type network node is an ICP node.<br><br>*See* Abstract.<br><br>    The present invention teaches a method and apparatus for creating and managing custom Web sites. Specifically, one embodiment of the present invention claims a computer-implemented method for managing a dynamic Web page generation request to a Web server, the computer-implemented method comprising the steps of routing the request from the Web server to a page server, the page server receiving the request and releasing the Web server to process other requests, processing the request, the processing being performed by the page server concurrently with the Web server, as the Web server processes the other requests, and dynamically generating a Web page in response to the request, the Web page including data dynamically retrieved from one or more data sources.<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 4* | |

**Appendix B-12**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,894,554 (Lowery)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,894,554 (Lowery) |
|---|---|
| [4] The method of claim 1, wherein the customized page file includes customized graphics, sounds, applets, links, and text. | Lowery discloses that the customized page file includes customized graphics, sounds, applets, links, and text.<br><br>*See* col. 1, lines 14-22.<br><br>       The World Wide Web (the Web) represents all of the computers on the Internet that offer users access to information on the Internet via interactive documents or Web pages. These Web pages contain hypertext links that are used to connect any combination of graphics, audio, video and text, in a non-linear, non-sequential manner. Hypertext links are created using a special software language known as HyperText Mark-Up Language (HTML).<br><br>*See also* col. 1, lines 47-67.<br><br>       The Common Gateway Interface (CGI) standard was developed to resolve the problem of allowing dynamic content to be included in Web pages. CGI "calls" or procedures enable applications to generate dynamically created HTML output, thus creating Web pages with dynamic content. Once created, these CGI applications do not have to be modified in order to retrieve "new" or dynamic data. Instead, when the Web page is invoked, CGI "calls" or procedures are used to dynamically retrieve the necessary data and to generate a Web page.<br><br>       CGI applications also enhanced the ability of Web site administrators to manage Web sites. Administrators no longer have to constantly update static Web pages. A number of vendors have developed tools for CGI based development, to address the issue of dynamic Web page generation. Companies like Spider.TM. and Bluestone.TM., for example, have each created development tools for CGI-based Web page development. Another company, Haht Software.TM., has developed a Web page generation tool that |

**Appendix B-12**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,894,554 (Lowery)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,894,554 (Lowery) |
|---|---|
| | uses a BASIC-like scripting language, instead of a CGI scripting language.<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 5* | |
| [5] The method of claim 1, wherein the customized page file includes customized advertisements. | This limitation would have been obvious over Lowery standing alone or in combination with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 6* | |
| [6a] The method of claim 1, wherein: the service request includes an IP address for identifying the first type network node, and | Lowery discloses that the service request includes an IP address for identifying the first type network node.<br><br>*See* col. 1, lines 23-38.<br><br>    Once created, Web pages reside on the Web, on Web servers or Web sites. A Web site can contain numerous Web pages. Web client machines running Web browsers can access these Web pages at Web sites via a communications protocol known as HyperText Transport Protocol (HTTP). Web browsers are software interfaces that run on World Wide Web clients to allow access to Web sites via a simple user interface. A Web browser allows a Web client to request a particular Web page from a Web site by specifying a Uniform Resource Locator (URL). A URL is a Web address that identifies the Web page and its location on the Web. When the appropriate Web site receives the URL, the Web page corresponding to the requested URL is located, and if required, HTML output is generated. The HTML output is then sent via HTTP |

**Appendix B-12**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,894,554 (Lowery)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,894,554 (Lowery) |
|---|---|
| | to the client for formatting on the client's screen.<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [6b] identifying the first type network node based on the service request comprises using the IP address included in the service request to identify the first type network node. | Lowery discloses identifying the first type network node based on the service request comprises using the IP address included in the service request to identify the first type network node.<br><br>*See* col. 1, lines 23-38.<br><br>    Once created, Web pages reside on the Web, on Web servers or Web sites. A Web site can contain numerous Web pages. Web client machines running Web browsers can access these Web pages at Web sites via a communications protocol known as HyperText Transport Protocol (HTTP). Web browsers are software interfaces that run on World Wide Web clients to allow access to Web sites via a simple user interface. A Web browser allows a Web client to request a particular Web page from a Web site by specifying a Uniform Resource Locator (URL). A URL is a Web address that identifies the Web page and its location on the Web. When the appropriate Web site receives the URL, the Web page corresponding to the requested URL is located, and if required, HTML output is generated. The HTML output is then sent via HTTP to the client for formatting on the client's screen.<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 7* | |
| [7a] A method for providing | Lowery discloses a method for providing web page customization service to a plurality of first type |

**Appendix B-12**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,894,554 (Lowery)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,894,554 (Lowery) |
|---|---|
| web page customization service to a plurality of first type network nodes at a second type network node, comprising the steps of: | network nodes at a second type network node.<br><br>*See* claim limitation [1a].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [7b] forming at least a page file for each of the first type network nodes; | Lowery discloses forming at least a page file for each of the first type network nodes.<br><br>*See* claim limitation [1b].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [7c] forming at least a page file for the second type network node; | Lowery discloses forming at least a page file for the second type network node.<br><br>*See* claim limitation [1c].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [7d] receiving a service request from one of the first type network nodes; | Lowery discloses receiving a service request from one of the first type network nodes.<br><br>*See* claim limitation [1d].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |

- 11 -

**Appendix B-12**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,894,554 (Lowery)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,894,554 (Lowery) |
|---|---|
| [7e] determining whether the first type network node participates in the web page customization service; | Lowery discloses determining whether the first type network node participates in the web page customization service.<br><br>*See* claim limitation [1e].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [7f] if the first type network node participates in the web page customization service, forming a customized page file for the service request by including the page file formed for the first type network node within the page file formed for the second type network node; and | Lowery discloses, if the first type network node participates in the web page customization service, forming a customized page file for the service request by including the page file formed for the first type network node within the page file formed for the second type network node.<br><br>*See* claim limitation [1f].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [7g] if the first type network node does not participate in the web page customization service, forming a page file for the service request by using the page file formed for the second type network node. | Lowery discloses, if the first type network node does not participate in the web page customization service, forming a page file for the service request by using the page file formed for the second type network node.<br><br>*See* claim limitation [1f].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |

Appendix B-12

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,894,554 (Lowery)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,894,554 (Lowery) |
|---|---|
| *Claim 8* | |
| [8] The method of claim 7, wherein the first type network nodes are ISP nodes, and the second type network node is an ICP node. | Lowery discloses that the first type network nodes are ISP nodes, and the second type network node is an ICP node.<br><br>*See* claim limitation [2].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 9* | |
| [9] The method of claim 7, wherein the first type network nodes are organization nodes, and the second type network node is an ICP node. | Lowery discloses that the first type network nodes are organization nodes, and the second type network node is an ICP node.<br><br>*See* claim limitation [3].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 10* | |
| [10] The method of claim 7, wherein the customized page file includes customized graphics, sounds, applets, links, and text. | Lowery discloses that the customized page file includes customized graphics, sounds, applets, links, and text.<br><br>*See* claim limitation [4].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill |

**Appendix B-12**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,894,554 (Lowery)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,894,554 (Lowery) |
|---|---|
| | and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 11* | |
| [11] The method of claim 7, wherein the customized page file includes customized advertisements. | *See* claim limitation [5]. |
| *Claim 12* | |
| [12a] The method of claim 7, wherein: the service request from one of the first type network nodes includes an IP address for identifying the first type network node, and | Lowery discloses that the service request from one of the first type network nodes includes an IP address for identifying the first type network node.<br><br>*See* claim limitation [6a].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [12b] determining whether the first type network node participates in the web page customization service comprises using the IPI address included in the service request to identify the first type network node. | Lowery discloses determining whether the first type network node participates in the web page customization service comprises using the IPI address included in the service request to identify the first type network node.<br><br>*See* claim limitation [6b].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 13* | |

Appendix B-12

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,894,554 (Lowery)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,894,554 (Lowery) |
|---|---|
| [13a] A method for providing web page customization service to a plurality of first type network nodes at a second type network node, comprising the steps of: | Lowery discloses a method for providing web page customization service to a plurality of first type network nodes at a second type network node.<br><br>*See* claim limitation [1a].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [13b] forming a plurality of advertisements for the first type network nodes; | This limitation would have been obvious over Lowery standing alone or in combination with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [13c] forming at least a page file for the second type network nodes; | Lowery discloses forming at least a page file for the second type network node.<br><br>*See* claim limitation [1c].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [13d] receiving a service request from one of the first type network nodes; | Lowery discloses receiving a service request from one of the first type network nodes.<br><br>*See* claim limitation [1d].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [13e] identifying advertisements for the first | This limitation would have been obvious over Lowery standing alone or in combination with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject |

**Appendix B-12**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,894,554 (Lowery)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,894,554 (Lowery) |
|---|---|
| type network node; and | matter. *See* Appendix C. |
| [13f] forming a customized page file for the first type network node by including the identified advertisements within the page file formed for the second type network node. | This limitation would have been obvious over Lowery standing alone or in combination with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 14* | |
| [14] The method of claim 13, wherein the first type network nodes are ISP nodes, and the second type network node is an ICP node. | Lowery discloses that the first type network nodes are ISP nodes, and the second type network node is an ICP node.<br><br>*See* claim limitation [2].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 15* | |
| [15] The method of claim 13, wherein the first type network nodes are organization nodes, and the second type network node is an ICP node. | Lowery discloses that the first type network nodes are organization nodes, and the second type network node is an ICP node.<br><br>*See* claim limitation [3].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill |

**Appendix B-12**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,894,554 (Lowery)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,894,554 (Lowery) |
|---|---|
| | and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 16* | |
| [16] The method of claim 13, wherein the identified advertisements do not cause negative impact on the owner of the first type network node. | This limitation would have been obvious over Lowery standing alone or in combination with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 17* | |
| [17a] An apparatus for dynamically forming a customized web page for a first type network node at a second type network node, comprising: | Lowery discloses an apparatus for dynamically forming a customized web page for a first type network node at a second type network node.<br><br>*See* claim limitation [1a].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [17b] means for forming at least a page file for the first type network node; | Lowery discloses means for forming at least a page file for the first type network node.<br><br>*See* claim limitation [1b].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [17c] means for forming at least a page file for the | Lowery discloses means for forming at least a page file for the second type network node. |

**Appendix B-12**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,894,554 (Lowery)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,894,554 (Lowery) |
|---|---|
| second type network node; | *See* claim limitation [1c].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [17d] means for receiving a service request from the first type network node; | Lowery discloses means for receiving a service request from the first type network node.<br><br>*See* claim limitation [1d].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [17e] means for identifying the first type network node based on the service request; and | Lowery discloses means for identifying the first type network node based on the service request.<br><br>*See* claim limitation [1e].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [17f] means for forming a customized page file formed for the first type network node by including the page file formed for the first type network node within the page file for the second type network node. | Lowery discloses means for forming a customized page file formed for the first type network node by including the page file formed for the first type network node within the page file for the second type network node.<br><br>*See* claim limitation [1f].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |

**Appendix B-12**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,894,554 (Lowery)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,894,554 (Lowery) |
|---|---|
| *Claim 18* | |
| [18] The apparatus of claim 17, wherein the first type network node is an ISP node, and the second type network node is an ICP node. | Lowery discloses that the first type network nodes is an ISP node, and the second type network node is an ICP node.<br><br>*See* claim limitation [2].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 19* | |
| [19] The apparatus of claim 17, wherein the first type network node is an organization node, and the second type network node is an ICP node. | Lowery discloses that the first type network nodes is an organization node, and the second type network node is an ICP node.<br><br>*See* claim limitation [3].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 20* | |
| [20] The apparatus of claim 17, wherein the customized page file includes customized graphics, sounds, applets, links, and text. | Lowery discloses that the customized page file includes customized graphics, sounds, applets, links, and text.<br><br>*See* claim limitation [4].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill |

**Appendix B-12**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,894,554 (Lowery)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,894,554 (Lowery) |
|---|---|
|  | and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 21* |  |
| [21] The apparatus of claim 17, wherein the customized page file includes customized advertisements. | *See* claim limitation [5]. |
| *Claim 22* |  |
| [22a] An apparatus for providing web page customization service to a plurality of first type network nodes at a second type network node, comprising: | Lowery discloses an apparatus for providing web page customization service to a plurality of first type network nodes at a second type network node.<br><br>*See* claim limitation [1a].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [22b] means for forming at least a page file for each of the first type network nodes; | Lowery discloses means for forming at least a page file for each of the first type network nodes.<br><br>*See* claim limitation [1b].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [22c] means for forming at least a page file for the second type network node; | Lowery discloses means for forming at least a page file for the second type network node.<br><br>*See* claim limitation [1c]. |

- 20 -

**Appendix B-12**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,894,554 (Lowery)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,894,554 (Lowery) |
|---|---|
| | To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [22d] means for receiving a service request from one of the first type network nodes; | Lowery discloses means for receiving a service request from one of the first type network nodes.<br><br>*See* claim limitation [1d].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [22e] means for determining whether the first type network node participates in the web page customization service; | Lowery discloses means for determining whether the first type network node participates in the web page customization service.<br><br>*See* claim limitation [1e].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [22f] means for forming a customized page file for the service request by including the page file formed for the first type network node within the page file formed for the second type network node, if the first type network node participates in the web page | Lowery discloses means for forming a customized page file for the service request by including the page file formed for the first type network node within the page file formed for the second type network node, if the first type network node participates in the web page customization service.<br><br>*See* claim limitation [1f].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |

**Appendix B-12**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,894,554 (Lowery)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,894,554 (Lowery) |
|---|---|
| customization service; and | |
| [22g] means for forming a page file for the service request by using the page file formed for the second type network node, if the first type network node does not participate in the web page customization service. | Lowery discloses means for forming a page file for the service request by using the page file formed for the second type network node, if the first type network node does not participate in the web page customization service. *See* claim limitation [1f]. To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 23* | |
| [23] The apparatus of claim 22, wherein the first type network nodes are ISP nodes, and the second type network node is an ICP node. | Lowery discloses that the first type network nodes are ISP nodes, and the second type network node is an ICP node. *See* claim limitation [2]. To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 24* | |
| [24] The apparatus of claim 22, wherein the first type network nodes are organization nodes, and the second type network node is | Lowery discloses that the first type network nodes are organization nodes, and the second type network node is an ICP node. *See* claim limitation [2]. To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill |

**Appendix B-12**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,894,554 (Lowery)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,894,554 (Lowery) |
|---|---|
| an ICP node. | and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 25* | |
| [25] The apparatus of claim 22, wherein the customized page file includes customized graphics, sounds, applets, links, and text. | Lowery discloses that the customized page file includes customized graphics, sounds, applets, links, and text.<br><br>*See* claim limitation [4].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 26* | |
| [26] The apparatus of claim 25, wherein the customized page file includes customized advertisements. | *See* claim limitation [5]. |
| *Claim 27* | |
| [27a] An apparatus for providing web page customization service to a plurality of first type network nodes at a second type network node, comprising: | Lowery discloses an apparatus for providing web page customization service to a plurality of first type network nodes at a second type network node.<br><br>*See* claim limitation [13a].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |

**Appendix B-12**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,894,554 (Lowery)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,894,554 (Lowery) |
|---|---|
| [27b] means for forming a plurality of advertisements for the first type network nodes; | *See* claim limitation [13b]. |
| [27c] means for forming at least a page file for the second type network node; | Lowery discloses means for forming at least a page file for the second type network node.<br><br>*See* claim limitation [13c].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [27d] means for receiving a service request from one of the first type network nodes; | Lowery discloses means for receiving a service request from one of the first type network nodes.<br><br>*See* claim limitation [13d].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [27e] means for identifying advertisements for the first type network node; and | *See* claim limitation [13e]. |
| [27f] means for forming a customized page file for the first type network node by including the identified advertisements within the page file formed for the | *See* claim limitation [13f]. |

**Appendix B-12**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,894,554 (Lowery)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,894,554 (Lowery) |
|---|---|
| second type network node. | |
| *Claim 28* | |
| [28] The apparatus of claim 27, wherein the first type network nodes are ISP nodes, and the second type network node is an ICP node. | Lowery discloses that the first type network nodes are ISP nodes, and the second type network node is an ICP node.<br><br>*See* claim limitation [2].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 29* | |
| [29] The apparatus of claim 27, wherein the first type network nodes are organization nodes, and the second type network node is an ICP node. | Lowery discloses that the first type network nodes are organization nodes, and the second type network node is an ICP node.<br><br>*See* claim limitation [3].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 30* | |
| [30] The apparatus of claim 27, wherein the identified advertisements do not cause negative impact on the owner of the first type network node. | *See* claim limitation [16]. |

**Appendix B-12**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,894,554 (Lowery)**

**Appendix B-13**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,918,010 (Appleman)**

U.S. Patent No. 5,918,010 to Appleman et al. ("Appleman") issued from a U.S. patent application filed on February 6, 1998 and claims priority to February 7, 1997; it qualifies as prior art at least under 35 U.S.C. § 102(e).

Appleman anticipates claims 1-30 of U.S. Patent No. 6,442,577.

Additionally or in the alternative, each of claims 1-30 of the '577 patent would have been obvious over Appleman standing alone or in view of the knowledge of a person of ordinary skill and/or one or more other references, as detailed in Appendix C.

This chart is based in whole or in part on the present understanding of positions taken by PageMelding regarding the coverage, scope and construction of the asserted claims to the extent those positions can be deduced from PageMelding's contentions pursuant to Patent Local Rule 3-1 served on August 3, 2012. Nothing herein is an admission that PageMelding's infringement contentions are correct, an admission that Plaintiff's apparent claim constructions are correct, or an admission that ESPN's technology infringes any asserted claim.

**Appendix B-13**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,918,010 (Appleman)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,918,010 (Appleman) |
|---|---|
| *Claim 1* | |
| [1a] A method for dynamically forming customized web pages for a first type network node at a second type network node, comprising the steps of: | Appleman discloses a method for dynamically forming customized web pages for a first type network node at a second type network node.<br><br>For example, Appleman discloses dynamically forming a plurality of customized web pages for visitors to a "branded network" to show common branding on the web pages. Branded banners and advertising are dynamically incorporated into the web pages.<br><br>*See* Abstract.<br><br>    A collaborative Internet data mining system for facilitating a group effort from a plurality of guides to the Internet, by automatically processing the information provided by the guides and thereby create a branded or uniform look and feel to the web sites supported by the plurality of guides.<br><br>*See also* col. 2, lines 53-67.<br><br>    The present invention provides methods and apparatus for managing, implementing and creating a collaborative Internet data mining system. The collaborative data mining system is comprised of many human "guides" that maintain web sites on their respective topic areas. The guides may use conventional search services, their own knowledge and judgment and their knowledge of where information may be found on the Internet to construct high quality and authoritative web pages. The collaborative data mining system uses automated methods and apparatus to process the web pages created by the guides. The processing automatically "brands" the web pages by inserting uniform characteristics and information into the pages. The system may then sell advertising on the branded network and remunerate the guides based on predetermined criteria. |

**Appendix B-13**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,918,010 (Appleman)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,918,010 (Appleman) |
|---|---|
|  | *See also* col. 3, lines 10-14.<br><br>One aspect of the present invention provides an automated system for use in conjunction with a pre-determined form or template based methodology to generate web pages that automatically maintain the simultaneous and coordinated presentation of framed based data.<br><br>*See also* col. 4, lines 61-67.<br><br>One aspect of the present invention provides a means for providing a "brand name" look and feel to a plurality of web pages by using frames to provide a consistent banner across the pages that reside on the network regardless of how a user "surfs" into the network. This aspect of the present invention provides a brand look and feel to the network while maintaining the ability to randomly surf to a web page of interest.<br><br>*See also* col. 7, lines 25–28.<br><br>The collaborative page generator system (12) provides a means for processing data input from the guide network to produce complete HTML document for use with the live network.<br><br>*See also* col. 15, lines 34-58.<br><br>FIG. 6 provides a detailed diagram of the frame system. The frame system assures that the proper frame set is displayed at the end user's web browser no matter how that user entered into the network of sites in the collaborative data mining system. More specifically, a page may arrive at a web browser (502). At that time, embedded java script code may be executed to query the "frames" object. If the frames object is greater than one then the java script may ask the object for the name of frame number one. If the name of frame number one designates a predetermined frame then the system knows the appropriate banner is already displayed (508) and the frame system does nothing more (506). If, however, the name of the frame is not the predetermined frame (510) |

**Appendix B-13**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,918,010 (Appleman)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,918,010 (Appleman) |
|---|---|
| | then the system dynamically builds the frame set for the requested page (512). The frame system may then pass the frame set and appropriate data to the browser where the browser can process the frame set and cause the appropriate banner and page data display (514). The frame system may then exit (516).<br><br>FIG. 7 depicts a very simple frame based data format. The banner frame is shown (602) above the content frame (604). In the typical application, the banner frame provides the branded look and feel to the web site and the content frame (604) provides the topical content.<br><br>*See also* Fig. 8. |

**Appendix B-13**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,918,010 (Appleman)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,918,010 (Appleman) |
|---|---|
| | <br><br>*See also* Figs. 1, 6–10C and associated text.<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |

**Appendix B-13**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,918,010 (Appleman)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,918,010 (Appleman) |
|---|---|
| [1b] forming at least a page file for the first type network node; | Appleman discloses forming at least a page file for the first type network node.<br><br>For example, Appleman discloses dynamically forming a plurality of customized web pages for visitors to a "branded network" to show common branding on the web pages. Branded banners and advertising are dynamically incorporated into the web pages.<br><br>*See* col. 2, lines 53-67.<br><br>The present invention provides methods and apparatus for managing, implementing and creating a collaborative Internet data mining system. The collaborative data mining system is comprised of many human "guides" that maintain web sites on their respective topic areas. The guides may use conventional search services, their own knowledge and judgment and their knowledge of where information may be found on the Internet to construct high quality and authoritative web pages. The collaborative data mining system uses automated methods and apparatus to process the web pages created by the guides. The processing automatically "brands" the web pages by inserting uniform characteristics and information into the pages. The system may then sell advertising on the branded network and remunerate the guides based on predetermined criteria.<br><br>*See also* col. 4, lines 15–19.<br><br>FIG. 8 is a detailed diagram of the collaborative page generator (12) in which the global HTML data (10) and advertising data (16) are brought together to create page content for the frames system (18) and the Internet user at a web browser (20).<br><br>*See also* col. 5, lines 1–14.<br><br>FIG. 1 provides an overview of the system elements of the collaborative data mining system. The present invention achieves its co-branded look and feel through the use of the guide authoring system (6), in conjunction with the collaborative page generator system (12) and the frames system (18). The guide authoring system (6) provides a |

**Appendix B-13**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,918,010 (Appleman)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,918,010 (Appleman) |
|---|---|
| | guide with predetermined templates that are developed in conjunction with the global HTML data (10) and the frames system (18). The templates are developed by creating a finished web page and then removing the global brand elements and replacing them with "include" comments. The remaining page, with global sections replaced with the "include" comments and section blocked off for the guide to insert content form the basis for a HTML template.<br><br>*See also* col. 15, lines 34-58.<br><br>FIG. 6 provides a detailed diagram of the frame system. The frame system assures that the proper frame set is displayed at the end user's web browser no matter how that user entered into the network of sites in the collaborative data mining system. More specifically, a page may arrive at a web browser (502). At that time, embedded java script code may be executed to query the "frames" object. If the frames object is greater than one then the java script may ask the object for the name of frame number one. If the name of frame number one designates a predetermined frame then the system knows the appropriate banner is already displayed (508) and the frame system does nothing more (506). If, however, the name of the frame is not the predetermined frame (510) then the system dynamically builds the frame set for the requested page (512). The frame system may then pass the frame set and appropriate data to the browser where the browser can process the frame set and cause the appropriate banner and page data display (514). The frame system may then exit (516).<br><br>FIG. 7 depicts a very simple frame based data format. The banner frame is shown (602) above the content frame (604). In the typical application, the banner frame provides the branded look and feel to the web site and the content frame (604) provides the topical content.<br><br>*See also* Fig. 7. |

**Appendix B-13**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,918,010 (Appleman)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,918,010 (Appleman) |
|---|---|
| | <br><br>*See also* Figs. 1, 6–10C and associated text.<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [1c] forming at least a page file for the second type network node; | Appleman discloses forming at least a page file for the second type network node.<br><br>For example, Appleman discloses dynamically forming a plurality of customized web pages for visitors to a "branded network" to show common branding on the web pages. Branded banners and advertising are dynamically incorporated into the web pages.<br><br>*See* col. 2, lines 53-67.<br><br>The present invention provides methods and apparatus for managing, implementing and creating a collaborative Internet data mining system. The collaborative data mining system is comprised of many human "guides" that maintain web sites on their |

**Appendix B-13**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,918,010 (Appleman)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,918,010 (Appleman) |
|---|---|
| | respective topic areas. The guides may use conventional search services, their own knowledge and judgment and their knowledge of where information may be found on the Internet to construct high quality and authoritative web pages. The collaborative data mining system uses automated methods and apparatus to process the web pages created by the guides. The processing automatically "brands" the web pages by inserting uniform characteristics and information into the pages. The system may then sell advertising on the branded network and remunerate the guides based on predetermined criteria. <br><br>*See also* col. 4, lines 15–19. <br><br>FIG. 8 is a detailed diagram of the collaborative page generator (12) in which the global HTML data (10) and advertising data (16) are brought together to create page content for the frames system (18) and the Internet user at a web browser (20). <br><br>*See also* col. 5, lines 1–14. <br><br>FIG. 1 provides an overview of the system elements of the collaborative data mining system. The present invention achieves its co-branded look and feel through the use of the guide authoring system (6), in conjunction with the collaborative page generator system (12) and the frames system (18). The guide authoring system (6) provides a guide with predetermined templates that are developed in conjunction with the global HTML data (10) and the frames system (18). The templates are developed by creating a finished web page and then removing the global brand elements and replacing them with "include" comments. The remaining page, with global sections replaced with the "include" comments and section blocked off for the guide to insert content form the basis for a HTML template. <br><br>*See also* col. 15, lines 34-58. <br><br>FIG. 6 provides a detailed diagram of the frame system. The frame system assures that the proper frame set is displayed at the end user's web browser no matter how that user |

**Appendix B-13**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,918,010 (Appleman)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,918,010 (Appleman) |
|---|---|
| | entered into the network of sites in the collaborative data mining system. More specifically, a page may arrive at a web browser (502). At that time, embedded java script code may be executed to query the "frames" object. If the frames object is greater than one then the java script may ask the object for the name of frame number one. If the name of frame number one designates a predetermined frame then the system knows the appropriate banner is already displayed (508) and the frame system does nothing more (506). If, however, the name of the frame is not the predetermined frame (510) then the system dynamically builds the frame set for the requested page (512). The frame system may then pass the frame set and appropriate data to the browser where the browser can process the frame set and cause the appropriate banner and page data display (514). The frame system may then exit (516).<br><br>FIG. 7 depicts a very simple frame based data format. The banner frame is shown (602) above the content frame (604). In the typical application, the banner frame provides the branded look and feel to the web site and the content frame (604) provides the topical content.<br><br>*See also* Fig. 7. |

**Appendix B-13**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,918,010 (Appleman)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,918,010 (Appleman) |
|---|---|
| | <br><br>*See also* Figs. 1, 6–10C and associated text.<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [1d] receiving a service request from the first type network node; | Appleman discloses receiving a service request from the first type network node.<br><br>For example, Appleman discloses receiving a service request from the user for the web page.<br><br>*See* col. 1, line 22 to col. 2, line 3.<br><br>The explosive growth of the Internet has been fueled, in large part, by the development and wide adoption of the HyperText Transfer Protocol (HTTP). HTTP is the Internet protocol used to transfer documents and other Multipurpose Internet Mail Extensions (MIME) type data between systems. HTTP is the protocol on which the World Wide Web ("the web") is based. To the Internet user, the web is an easy to use graphical user |

**Appendix B-13**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,918,010 (Appleman)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,918,010 (Appleman) |
|---|---|
| | protocol on which the World Wide Web ("the web") is based. To the Internet user, the web is an easy to use graphical user interface that provides "point-and-click" access to data from an enormous number of remote computers. <br><br> The communication technology of the web can be explained by analogy to the Open System Interconnect Model (OSI) for computer communication. HTTP resides above the Transport Control Protocol/Internet Protocol (TCP/IP) layers and provides a transfer protocol between the web server and the browser client. TCP/IP divides networking functionality into only four layers: (1) a network interface layer that corresponds to the OSI link layer, (2) an Internet layer which corresponds to the OSI network layer (3) a transport layer which corresponds to the OSI transport layer and (4) an application layer which corresponds to the session, presentation and application layers of the OSI model. The web browser (client) may correspond to the application layer of the OSI model and Hyper-Text Markup Language may correspond to the presentation layer. <br><br> The Hyper-Text Markup Language (HTML) is the software language in which most of the web is written. HTML is basically ASCII text surrounded by HTML commands in angled brackets. HTML commands are interpreted by a web browser to determine how to display a web page. <br><br> The web, as a whole, is made up of web page servers and web browsers that provide a hardware and operating system independent environment. A web browser is an application program that interprets and displays HTML pages. The web is hardware and operating system independent because of the common HTTP and HTML protocols and languages used between the web servers and the browser client applications. <br><br> HTML web pages usually contain links or HyperText that point to other HTML pages on the web. By pointing and clicking on these links, a user can skip or "surf" from page to page on the web. <br><br> A primary function of a web browser is to display the page located at an Universal Resource Location (URL) address. A URL is an address that includes the protocol to |

Appendix B-13

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,918,010 (Appleman)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,918,010 (Appleman) |
|---|---|
| | reference the data, the system path and data filename. The data file addressed by the URL data filename is located on a server.<br><br>*See also* Fig. 8.<br><br> |

Appendix B-13

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,918,010 (Appleman)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,918,010 (Appleman) |
|---|---|
|  | *See also* Figs. 1, 6–10C and associated text.<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [1e] identifying the first type network node based on the service request; and | Appleman discloses identifying the first type network node based on the service request.<br><br>For example, Appleman discloses receiving a service request from the user for the web page. *See* claim limitation [1d]. The service request necessarily identifies the user, because such identification is required for the proper routing of the requested web page to the user.<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [1f] forming a customized page file formed for the first type network node by including the page file formed for the first type network node within the page file for the second type network node. | Appleman discloses a method for dynamically forming customized web pages for a first type network node at a second type network node.<br><br>For example, Appleman discloses dynamically forming a plurality of customized web pages for visitors to a "branded network" to show common branding on the web pages. Branded banners and advertising are dynamically incorporated into the web pages.<br><br>*See* Abstract.<br><br>    A collaborative Internet data mining system for facilitating a group effort from a plurality of guides to the Internet, by automatically processing the information provided by the guides and thereby create a branded or uniform look and feel to the web sites supported by the plurality of guides.<br><br>*See also* col. 2, lines 53-67.<br><br>    The present invention provides methods and apparatus for managing, implementing and |

**Appendix B-13**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,918,010 (Appleman)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,918,010 (Appleman) |
|---|---|
| | creating a collaborative Internet data mining system. The collaborative data mining system is comprised of many human "guides" that maintain web sites on their respective topic areas. The guides may use conventional search services, their own knowledge and judgment and their knowledge of where information may be found on the Internet to construct high quality and authoritative web pages. The collaborative data mining system uses automated methods and apparatus to process the web pages created by the guides. The processing automatically "brands" the web pages by inserting uniform characteristics and information into the pages. The system may then sell advertising on the branded network and remunerate the guides based on predetermined criteria.<br><br>*See also* col. 3, lines 10-14.<br><br>One aspect of the present invention provides an automated system for use in conjunction with a pre-determined form or template based methodology to generate web pages that automatically maintain the simultaneous and coordinated presentation of framed based data.<br><br>*See also* col. 4, lines 61-67.<br><br>One aspect of the present invention provides a means for providing a "brand name" look and feel to a plurality of web pages by using frames to provide a consistent banner across the pages that reside on the network regardless of how a user "surfs" into the network. This aspect of the present invention provides a brand look and feel to the network while maintaining the ability to randomly surf to a web page of interest.<br><br>*See also* col. 7, lines 25–28.<br><br>The collaborative page generator system (12) provides a means for processing data input from the guide network to produce complete HTML document for use with the live network. |

**Appendix B-13**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,918,010 (Appleman)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,918,010 (Appleman) |
|---|---|
| | *See also* col. 15, lines 34-58.<br><br>FIG. 6 provides a detailed diagram of the frame system. The frame system assures that the proper frame set is displayed at the end user's web browser no matter how that user entered into the network of sites in the collaborative data mining system. More specifically, a page may arrive at a web browser (502). At that time, embedded java script code may be executed to query the "frames" object. If the frames object is greater than one then the java script may ask the object for the name of frame number one. If the name of frame number one designates a predetermined frame then the system knows the appropriate banner is already displayed (508) and the frame system does nothing more (506). If, however, the name of the frame is not the predetermined frame (510) then the system dynamically builds the frame set for the requested page (512). The frame system may then pass the frame set and appropriate data to the browser where the browser can process the frame set and cause the appropriate banner and page data display (514). The frame system may then exit (516).<br><br>FIG. 7 depicts a very simple frame based data format. The banner frame is shown (602) above the content frame (604). In the typical application, the banner frame provides the branded look and feel to the web site and the content frame (604) provides the topical content.<br><br>*See also* Fig. 7. |

**Appendix B-13**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,918,010 (Appleman)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,918,010 (Appleman) |
|---|---|
| |  |
| | *See also* Fig. 8. |

**Appendix B-13**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,918,010 (Appleman)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,918,010 (Appleman) |
|---|---|
| |  FIG. 8 |

*See also* Figs. 1, 6–10C and associated text.

To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.

**Appendix B-13**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,918,010 (Appleman)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,918,010 (Appleman) |
|---|---|
| *Claim 2* | |
| [2] The method of claim 1, wherein the first type network node is an ISP node, and the second type network node is an ICP node. | Appleman discloses that the first type network node is an ISP node, and the second type network node is an ICP node.<br><br>Appleman discloses that the customized pages are web pages containing content on various "topic areas." *See*, *e.g.*, col. 2, lines 53-67. These web pages thus constitute ICP nodes.<br><br>Appleman discloses that requests for the web pages are made by users over the Internet using, among other things, the HTTP and TCP/IP protocols. *See* col. 1, line 22 to col. 2, line 3; Fig. 8. It would have been understood that users could access the Internet through ISPs.<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 3* | |
| [3] The method of claim 1, wherein the first type network node is an organization node, and the second type network node is an ICP node. | Appleman discloses that the first type network node is an organization node, and the second type network node is an ICP node.<br><br>Appleman discloses that the customized pages are web pages containing content on various "topic areas." *See*, *e.g.*, col. 2, lines 53-67. These web pages thus constitute ICP nodes.<br><br>Appleman discloses that requests for the web pages are made by users over the Internet using, among other things, the HTTP and TCP/IP protocols. *See* col. 1, line 22 to col. 2, line 3; Fig. 8. It would have been understood that users could access the Internet through organizations.<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |

- 19

**Appendix B-13**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,918,010 (Appleman)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,918,010 (Appleman) |
|---|---|
| *Claim 4* | |
| [4] The method of claim 1, wherein the customized page file includes customized graphics, sounds, applets, links, and text. | Appleman discloses that the customized page file includes customized graphics, sounds, applets, links, and text. <br><br> *See* col. 1, lines 62–63. <br><br>     HTML web pages usually contain links or HyperText that point to other HTML pages on the web. <br><br> *See also* col. 8, line 56 to col. 9, line 7. <br><br>     Information for the system (932) may include: a subdirectory of site specific pictures, graphics and/or images; a subdirectory of hub specific pictures, graphics and/or images; pages used by the system; search parameters that may be useful for outside search services to help find the site; a subdirectory for chat room parameters; programs, and/or other chat room related data; a subdirectory for boards such as board parameters, programs, and/or other board related data; a subdirectory for dynamic data for programmatically created web pages; a subdirectory for a template configuration file; a subdirectory for site parameters such as URL, hub and navigation parameters, a subdirectory for advertising data; a subdirectory for navigation parameters; a subdirectory for content ratings, and a locked subdirectory for system only access. <br><br> *See also* col. 15, lines 34-58. <br><br>     FIG. 6 provides a detailed diagram of the frame system. The frame system assures that the proper frame set is displayed at the end user's web browser no matter how that user entered into the network of sites in the collaborative data mining system. More specifically, a page may arrive at a web browser (502). At that time, embedded java script code may be executed to query the "frames" object. If the frames object is greater than one then the java script may ask the object for the name of frame number one. If the name of frame number one designates a predetermined frame then the system knows |

**Appendix B-13**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,918,010 (Appleman)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,918,010 (Appleman) |
|---|---|
| | the appropriate banner is already displayed (508) and the frame system does nothing more (506). If, however, the name of the frame is not the predetermined frame (510) then the system dynamically builds the frame set for the requested page (512). The frame system may then pass the frame set and appropriate data to the browser where the browser can process the frame set and cause the appropriate banner and page data display (514). The frame system may then exit (516). |
| | FIG. 7 depicts a very simple frame based data format. The banner frame is shown (602) above the content frame (604). In the typical application, the banner frame provides the branded look and feel to the web site and the content frame (604) provides the topical content. |
| | To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 5* | |
| [5] The method of claim 1, wherein the customized page file includes customized advertisements. | Appleman discloses that the customized page file includes customized advertisements.<br><br>*See also* col. 2, lines 53-67.<br><br>The present invention provides methods and apparatus for managing, implementing and creating a collaborative Internet data mining system. The collaborative data mining system is comprised of many human "guides" that maintain web sites on their respective topic areas. The guides may use conventional search services, their own knowledge and judgment and their knowledge of where information may be found on the Internet to construct high quality and authoritative web pages. The collaborative data mining system uses automated methods and apparatus to process the web pages created by the guides. The processing automatically "brands" the web pages by inserting uniform characteristics and information into the pages. The system may then sell advertising on the branded network and remunerate the guides based on |

**Appendix B-13**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,918,010 (Appleman)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,918,010 (Appleman) |
|---|---|
| | predetermined criteria.<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 6* | |
| [6a] The method of claim 1, wherein: the service request includes an IP address for identifying the first type network node, and | Appleman discloses that the service request includes an IP address for identifying the first type network node.<br><br>Appleman discloses that requests for the web pages are made by users over the Internet using, among other things, the HTTP and TCP/IP protocols. *See* col. 1, line 22 to col. 2, line 3; Fig. 8. The requests necessarily would include at least an IP address for identifying the requester.<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [6b] identifying the first type network node based on the service request comprises using the IP address included in the service request to identify the first type network node. | Appleman discloses that the service request includes an IP address for identifying the first type network node.<br><br>Appleman discloses that requests for the web pages are made by users over the Internet using, among other things, the HTTP and TCP/IP protocols. *See* col. 1, line 22 to col. 2, line 3; Fig. 8. The requests necessarily would include at least an IP address for identifying the requester. The IP address would be used to identify the requester in order so that the requested data would be properly routed.<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 7* | |

**Appendix B-13**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,918,010 (Appleman)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,918,010 (Appleman) |
|---|---|
| [7a] A method for providing web page customization service to a plurality of first type network nodes at a second type network node, comprising the steps of: | Appleman discloses a method for providing web page customization service to a plurality of first type network nodes at a second type network node.<br><br>*See* claim limitation [1a].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [7b] forming at least a page file for each of the first type network nodes; | Appleman discloses forming at least a page file for each of the first type network nodes.<br><br>*See* claim limitation [1b].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [7c] forming at least a page file for the second type network node; | Appleman discloses forming at least a page file for the second type network node.<br><br>*See* claim limitation [1c].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [7d] receiving a service request from one of the first type network nodes; | Appleman discloses receiving a service request from one of the first type network nodes.<br><br>*See* claim limitation [1d].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |

**Appendix B-13**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,918,010 (Appleman)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,918,010 (Appleman) |
|---|---|
| [7e] determining whether the first type network node participates in the web page customization service; | Appleman discloses determining whether the first type network node participates in the web page customization service.<br><br>*See* claim limitation [1e].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [7f] if the first type network node participates in the web page customization service, forming a customized page file for the service request by including the page file formed for the first type network node within the page file formed for the second type network node; and | Appleman discloses, if the first type network node participates in the web page customization service, forming a customized page file for the service request by including the page file formed for the first type network node within the page file formed for the second type network node.<br><br>*See* claim limitation [1f].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [7g] if the first type network node does not participate in the web page customization service, forming a page file for the service request by using the page file formed for the second type network node. | Appleman discloses, if the first type network node does not participate in the web page customization service, forming a page file for the service request by using the page file formed for the second type network node.<br><br>*See* claim limitation [1f].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 8* | |

**Appendix B-13**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,918,010 (Appleman)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,918,010 (Appleman) |
|---|---|
| [8] The method of claim 7, wherein the first type network nodes are ISP nodes, and the second type network node is an ICP node. | Appleman discloses that the first type network nodes are ISP nodes, and the second type network node is an ICP node.<br><br>*See* claim limitation [2].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 9* | |
| [9] The method of claim 7, wherein the first type network nodes are organization nodes, and the second type network node is an ICP node. | Appleman discloses that the first type network nodes are organization nodes, and the second type network node is an ICP node.<br><br>*See* claim limitation [3].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 10* | |
| [10] The method of claim 7, wherein the customized page file includes customized graphics, sounds, applets, links, and text. | Appleman discloses that the customized page file includes customized graphics, sounds, applets, links, and text.<br><br>*See* claim limitation [4].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 11* | |

Appendix B-13

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,918,010 (Appleman)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,918,010 (Appleman) |
|---|---|
| [11] The method of claim 7, wherein the customized page file includes customized advertisements. | Appleman discloses that the customized page file includes customized advertisements.<br><br>To the extent it is found that Appleman does not disclose this feature, it would have been obvious to combine Appleman with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter.  *See* Appendix C.<br><br>*See* claim limitation [5]. |
| *Claim 12* | |
| [12a] The method of claim 7, wherein: the service request from one of the first type network nodes includes an IP address for identifying the first type network node, and | Appleman discloses that the service request from one of the first type network nodes includes an IP address for identifying the first type network node.<br><br>To the extent it is found that Appleman does not disclose this feature, it would have been obvious to combine Appleman with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter.  *See* Appendix C.<br><br>*See* claim limitation [6a]. |
| [12b] determining whether the first type network node participates in the web page customization service comprises using the IPI address included in the service request to identify the first type network node. | Appleman discloses determining whether the first type network node participates in the web page customization service comprises using the IPI address included in the service request to identify the first type network node.<br><br>To the extent it is found that Appleman does not disclose this feature, it would have been obvious to combine Appleman with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter.  *See* Appendix C.<br><br>*See* claim limitation [6b]. |
| *Claim 13* | |
| [13a] A method for providing web page customization | Appleman discloses a method for providing web page customization service to a plurality of first type |

**Appendix B-13**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,918,010 (Appleman)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,918,010 (Appleman) |
|---|---|
| service to a plurality of first type network nodes at a second type network node, comprising the steps of: | network nodes at a second type network node.<br><br>To the extent it is found that Appleman does not disclose this feature, it would have been obvious to combine Appleman with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1a]. |
| [13b] forming a plurality of advertisements for the first type network nodes; | Appleman discloses forming a plurality of advertisements for the first type network nodes.<br><br>To the extent it is found that Appleman does not disclose this feature, it would have been obvious to combine Appleman with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitations [1b] and [5]. |
| [13c] forming at least a page file for the second type network node; | Appleman discloses forming at least a page file for the second type network node.<br><br>To the extent it is found that Appleman does not disclose this feature, it would have been obvious to combine Appleman with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1c]. |
| [13d] receiving a service request from one of the first type network nodes; | Appleman discloses receiving a service request from one of the first type network nodes.<br><br>To the extent it is found that Appleman does not disclose this feature, it would have been obvious to combine Appleman with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1d]. |

- 27

**Appendix B-13**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,918,010 (Appleman)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,918,010 (Appleman) |
|---|---|
| [13e] identifying advertisements for the first type network node; and | Appleman discloses identifying advertisements for the first type network node.<br><br>To the extent it is found that Appleman does not disclose this feature, it would have been obvious to combine Appleman with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitations [1e] and [5]. |
| [13f] forming a customized page file for the first type network node by including the identified advertisements within the page file formed for the second type network node. | Appleman discloses forming a customized page file for the first type network node by including the identified advertisements within the page file formed for the second type network node.<br><br>To the extent it is found that Appleman does not disclose this feature, it would have been obvious to combine Appleman with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1f]. |
| *Claim 14* | |
| [14] The method of claim 13, wherein the first type network nodes are ISP nodes, and the second type network node is an ICP node. | Appleman discloses that the first type network nodes are ISP nodes, and the second type network node is an ICP node.<br><br>To the extent it is found that Appleman does not disclose this feature, it would have been obvious to combine Appleman with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [2]. |
| *Claim 15* | |
| [15] The method of claim 13, wherein the first type network nodes are organization nodes, | Appleman discloses that the first type network nodes are organization nodes, and the second type network node is an ICP node. |

**Appendix B-13**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,918,010 (Appleman)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,918,010 (Appleman) |
|---|---|
| and the second type network node is an ICP node. | To the extent it is found that Appleman does not disclose this feature, it would have been obvious to combine Appleman with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [3]. |
| *Claim 16* | |
| [16] The method of claim 13, wherein the identified advertisements do not cause negative impact on the owner of the first type network node. | Appleman discloses that the identified advertisements do not cause negative impact on the owner of the first type network node.<br><br>For example, Appleman discloses dynamically forming a plurality of customized web pages for visitors to a "branded network" to show common branding on the web pages. Branded banners and advertising are dynamically incorporated into the web pages. *See* claim limitation [1a]. This does not cause negative impact on the owner of the first type network node.<br><br>To the extent it is found that Appleman does not disclose this feature, it would have been obvious to combine Appleman with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 17* | |
| [17a] An apparatus for dynamically forming a customized web page for a first type network node at a second type network node, comprising: | Appleman discloses an apparatus for dynamically forming a customized web page for a first type network node at a second type network node.<br><br>To the extent it is found that Appleman does not disclose this feature expressly or inherently, it would have been obvious to combine Appleman with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1a]. |
| [17b] means for forming at | Appleman discloses means for forming at least a page file for the first type network node. |

**Appendix B-13**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,918,010 (Appleman)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,918,010 (Appleman) |
|---|---|
| least a page file for the first type network node; | To the extent it is found that Appleman does not disclose this feature expressly or inherently, it would have been obvious to combine Appleman with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter.  *See* Appendix C.<br><br>*See* claim limitation [1b]. |
| [17c] means for forming at least a page file for the second type network node; | Appleman discloses means for forming at least a page file for the second type network node.<br><br>To the extent it is found that Appleman does not disclose this feature expressly or inherently, it would have been obvious to combine Appleman with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter.  *See* Appendix C.<br><br>*See* claim limitation [1c]. |
| [17d] means for receiving a service request from the first type network node; | Appleman discloses means for receiving a service request from the first type network node.<br><br>To the extent it is found that Appleman does not disclose this feature expressly or inherently, it would have been obvious to combine Appleman with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter.  *See* Appendix C.<br><br>*See* claim limitation [1d]. |
| [17e] means for identifying the first type network node based on the service request; and | Appleman discloses means for identifying the first type network node based on the service request.<br><br>To the extent it is found that Appleman does not disclose this feature expressly or inherently, it would have been obvious to combine Appleman with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter.  *See* Appendix C.<br><br>*See* claim limitation [1e]. |
| [17f] means for forming a customized page file formed for the first type network | Appleman discloses means for forming a customized page file formed for the first type network node by including the page file formed for the first type network node within the page file for the second |

**Appendix B-13**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,918,010 (Appleman)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,918,010 (Appleman) |
|---|---|
| node by including the page file formed for the first type network node within the page file for the second type network node. | type network node.<br><br>To the extent it is found that Appleman does not disclose this feature expressly or inherently, it would have been obvious to combine Appleman with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1f]. |
| *Claim 18* | |
| [18] The apparatus of claim 17, wherein the first type network node is an ISP node, and the second type network node is an ICP node. | Appleman discloses that the first type network node is an ISP node, and the second type network node is an ICP node.<br><br>To the extent it is found that Appleman does not disclose this feature expressly or inherently, it would have been obvious to combine Appleman with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [2]. |
| *Claim 19* | |
| [19] The apparatus of claim 17, wherein the first type network node is an organization node, and the second type network node is an ICP node. | Appleman discloses that the first type network node is an organization node, and the second type network node is an ICP node.<br><br>To the extent it is found that Appleman does not disclose this feature expressly or inherently, it would have been obvious to combine Appleman with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [3]. |
| *Claim 20* | |
| [20] The apparatus of claim | Appleman discloses that the customized page file includes customized graphics, sounds, applets, links, |

**Appendix B-13**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,918,010 (Appleman)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,918,010 (Appleman) |
|---|---|
| 17, wherein the customized page file includes customized graphics, sounds, applets, links, and text. | and text.<br><br>To the extent it is found that Appleman does not disclose this feature expressly or inherently, it would have been obvious to combine Appleman with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter.  *See* Appendix C.<br><br>*See* claim limitation [4]. |
| *Claim 21* | |
| [21] The apparatus of claim 17, wherein the customized page file includes customized advertisements. | Appleman discloses that the customized page file includes customized advertisements.<br><br>To the extent it is found that Appleman does not disclose this feature expressly or inherently, it would have been obvious to combine Appleman with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter.  *See* Appendix C.<br><br>*See* claim limitation [5]. |
| *Claim 22* | |
| [22a] An apparatus for providing web page customization service to a plurality of first type network nodes at a second type network node, comprising: | Appleman discloses an apparatus for providing web page customization service to a plurality of first type network nodes at a second type network node.<br><br>To the extent it is found that Appleman does not disclose this feature expressly or inherently, it would have been obvious to combine Appleman with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter.  *See* Appendix C.<br><br>*See* claim limitation [7a]. |
| [22b] means for forming at least a page file for each of the first type network nodes; | Appleman discloses means for forming at least a page file for each of the first type network nodes.<br><br>To the extent it is found that Appleman does not disclose this feature expressly or inherently, it would have been obvious to combine Appleman with the knowledge of a person of ordinary skill and/or other |

**Appendix B-13**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,918,010 (Appleman)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,918,010 (Appleman) |
|---|---|
| | prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [7b]. |
| [22c] means for forming at least a page file for the second type network node; | Appleman discloses means for forming at least a page file for the second type network node.<br><br>To the extent it is found that Appleman does not disclose this feature expressly or inherently, it would have been obvious to combine Appleman with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [7c]. |
| [22d] means for receiving a service request from one of the first type network nodes; | Appleman discloses means for receiving a service request from one of the first type network nodes.<br><br>To the extent it is found that Appleman does not disclose this feature expressly or inherently, it would have been obvious to combine Appleman with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [7d]. |
| [22e] means for determining whether the first type network node participates in the web page customization service; | Appleman discloses means for determining whether the first type network node participates in the web page customization service.<br><br>To the extent it is found that Appleman does not disclose this feature expressly or inherently, it would have been obvious to combine Appleman with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [7e]. |
| [22f] means for forming a customized page file for the service request by including the page file formed for the | Appleman discloses means for forming a customized page file for the service request by including the page file formed for the first type network node within the page file formed for the second type network node, if the first type network node participates in the web page customization service. |

**Appendix B-13**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,918,010 (Appleman)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,918,010 (Appleman) |
|---|---|
| first type network node within the page file formed for the second type network node, if the first type network node participates in the web page customization service; and | To the extent it is found that Appleman does not disclose this feature expressly or inherently, it would have been obvious to combine Appleman with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter.  *See* Appendix C.<br><br>*See* claim limitation [7f]. |
| [22g] means for forming a page file for the service request by using the page file formed for the second type network node, if the first type network node does not participate in the web page customization service. | Appleman discloses means for forming a page file for the service request by using the page file formed for the second type network node, if the first type network node does not participate in the web page customization service.<br><br>To the extent it is found that Appleman does not disclose this feature expressly or inherently, it would have been obvious to combine Appleman with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter.  *See* Appendix C.<br><br>*See* claim limitation [7g]. |
| *Claim 23* | |
| [23] The apparatus of claim 22, wherein the first type network nodes are ISP nodes, and the second type network node is an ICP node. | Appleman discloses that the first type network nodes are ISP nodes, and the second type network node is an ICP node.<br><br>To the extent it is found that Appleman does not disclose this feature expressly or inherently, it would have been obvious to combine Appleman with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter.  *See* Appendix C.<br><br>*See* claim limitation [8]. |
| *Claim 24* | |
| [24] The apparatus of claim 22, wherein the first type | Appleman discloses that the first type network nodes are organization nodes, and the second type |

**Appendix B-13**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,918,010 (Appleman)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,918,010 (Appleman) |
|---|---|
| network nodes are organization nodes, and the second type network node is an ICP node. | network node is an ICP node.<br><br>To the extent it is found that Appleman does not disclose this feature expressly or inherently, it would have been obvious to combine Appleman with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [9]. |
| *Claim 25* | |
| [25] The apparatus of claim 22, wherein the customized page file includes customized graphics, sounds, applets, links, and text. | Appleman discloses that the customized page file includes customized graphics, sounds, applets, links, and text.<br><br>To the extent it is found that Appleman does not disclose this feature expressly or inherently, it would have been obvious to combine Appleman with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [10]. |
| *Claim 26* | |
| [26] The apparatus of claim 25, wherein the customized page file includes customized advertisements. | Appleman discloses that the customized page file includes customized advertisements.<br><br>To the extent it is found that Appleman does not disclose this feature expressly or inherently, it would have been obvious to combine Appleman with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [11]. |
| *Claim 27* | |
| [27a] An apparatus for providing web page | Appleman discloses an apparatus for providing web page customization service to a plurality of first |

**Appendix B-13**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,918,010 (Appleman)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,918,010 (Appleman) |
|---|---|
| customization service to a plurality of first type network nodes at a second type network node, comprising: | type network nodes at a second type network node.<br><br>To the extent it is found that Appleman does not disclose this feature expressly or inherently, it would have been obvious to combine Appleman with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter.  *See* Appendix C.<br><br>*See* claim limitation [13a]. |
| [27b] means for forming a plurality of advertisements for the first type network nodes; | Appleman discloses means for forming a plurality of advertisements for the first type network nodes.<br><br>To the extent it is found that Appleman does not disclose this feature expressly or inherently, it would have been obvious to combine Appleman with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter.  *See* Appendix C.<br><br>*See* claim limitation [13b]. |
| [27c] means for forming at least a page file for the second type network node; | Appleman discloses means for forming at least a page file for the second type network node.<br><br>To the extent it is found that Appleman does not disclose this feature expressly or inherently, it would have been obvious to combine Appleman with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter.  *See* Appendix C.<br><br>*See* claim limitation [13c]. |
| [27d] means for receiving a service request from one of the first type network nodes; | Appleman discloses means for receiving a service request from one of the first type network nodes.<br><br>To the extent it is found that Appleman does not disclose this feature expressly or inherently, it would have been obvious to combine Appleman with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter.  *See* Appendix C.<br><br>*See* claim limitation [13d]. |

**Appendix B-13**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,918,010 (Appleman)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,918,010 (Appleman) |
|---|---|
| [27e] means for identifying advertisements for the first type network node; and | Appleman discloses means for identifying advertisements for the first type network node.<br><br>To the extent it is found that Appleman does not disclose this feature expressly or inherently, it would have been obvious to combine Appleman with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [13e]. |
| [27f] means for forming a customized page file for the first type network node by including the identified advertisements within the page file formed for the second type network node. | Appleman discloses means for forming a customized page file for the first type network node by including the identified advertisements within the page file formed for the second type network node.<br><br>To the extent it is found that Appleman does not disclose this feature expressly or inherently, it would have been obvious to combine Appleman with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [13f]. |
| *Claim 28* | |
| [28] The apparatus of claim 27, wherein the first type network nodes are ISP nodes, and the second type network node is an ICP node. | Appleman discloses that the first type network nodes are ISP nodes, and the second type network node is an ICP node.<br><br>To the extent it is found that Appleman does not disclose this feature expressly or inherently, it would have been obvious to combine Appleman with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [14]. |
| *Claim 29* | |
| [29] The apparatus of claim 27, wherein the first type network nodes are | Appleman discloses that the first type network nodes are organization nodes, and the second type network node is an ICP node. |

- 37

**Appendix B-13**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,918,010 (Appleman)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,918,010 (Appleman) |
|---|---|
| organization nodes, and the second type network node is an ICP node. | To the extent it is found that Appleman does not disclose this feature expressly or inherently, it would have been obvious to combine Appleman with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [15]. |
| *Claim 30* | |
| [30] The apparatus of claim 27, wherein the identified advertisements do not cause negative impact on the owner of the first type network node. | Appleman discloses that the identified advertisements do not cause negative impact on the owner of the first type network node.<br><br>To the extent it is found that Appleman does not disclose this feature expressly or inherently, it would have been obvious to combine Appleman with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [16]. |

**Appendix B-14**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,918,014 (Robinson)**

U.S. Patent No. 5,918,014 to Robinson ("Robinson") issued from a U.S. patent application filed on July 3, 1997 and qualifies as prior art at least under 35 U.S.C. § 102(e).

Claims 1-30 of U.S. Patent No. 6,442,577 are anticipated by Robinson

In the alternative, each of claims 1-30 of the '577 patent would have been obvious over Robinson standing alone or in view of the knowledge of a person of ordinary skill and/or one or more other references, as detailed in Appendix C.

This Exhibit is based in whole or in part on the present understanding of positions taken by PageMelding regarding the coverage, scope and construction of the asserted claims to the extent those positions can be deduced from PageMelding's contentions pursuant to Patent Local Rule 3-1 served on August 3, 2012. Nothing herein is an admission that PageMelding's infringement contentions are correct, an admission that Plaintiff's apparent claim constructions are correct, or an admission that ESPN's technology infringes any asserted claim.

**Appendix B-14**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,918,014 (Robinson)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,918,014 (Robinson) |
|---|---|
| *Claim 1* | |
| [1a] A method for dynamically forming customized web pages for a first type network node at a second type network node, comprising the steps of: | Robinson discloses a method for dynamically forming customized web pages for a first type network node at a second type network node. For example, Robinson discloses a system that dynamically forms web pages with customized advertisements and content targeting particular users.<br><br>*See* Abstract:<br><br>On the World Wide Web, and other interactive media, it is possible to show different ads to different people who are simultaneously viewing the same content. This invention is based on the fact that people who have shown a tendency for similar likes and dislikes in the past will show a tendency for such similarities in the future. Those people who strongly display such similarities with respect to a particular person ("the subject") are referred to as that person's "community." If the members of a subject's community tend to click on a particular Web ad, then it is likely that the subject will also tend to click on that ad. This invention combines techniques for: determining the subject's community, and determining which ads to show based on characteristics of the subject's community. The information used to determine whether a given individual should be in the subject's community is gleaned from the individual's activities in the interactive medium. Means are provided to track a consumer's activities so all the information he generates can be tied together in the database, e.g. by means of "cookies;" or by software running on the consumer's computer, such as an in-line plug-in, a screensaver working in conjunction with the Web browser, or the Web browser itself. A measure of similarity between individuals is generated. The individuals with the greatest calculated similarity become the subject's community; e.g. clusters are formed of groups of very similar consumers. Ads are presented to the |

**Appendix B-14**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,918,014 (Robinson)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,918,014 (Robinson) |
|---|---|
| | subject based on his community, optionally selected based on demographics associated with the community. |
| | *See also* col. 2, lines 27–30: |
| | To take advantage of this fact, this invention combines techniques for solving two problems: determining the subject's community, and determining which ads to show based on characteristics of the subject's community. |
| | *See also* col. 4, lines 8–13: |
| | The centerpiece of this invention is the "Smart Ad Box." A Smart Ad Box is an area on a Web page (usually rectangular) which is used to display Web advertising. Special software algorithms are used to determine which ads are shown to which users; different visitors to a Web page can simultaneously see different ads. |
| | *See also* col. 4, lines 14–23: |
| | A number of factors can be used by the software in determining which ads to show. For instance, based on their Dec. 6, 1995 press release, the company C/Net appears to be planning to implement a Smart Ad Box-like system which decides which ads to present to which users based on such information as the type of Web browser they're using, their age, gender, Internet domain (EDU, COM, etc.) and other demographic information. A Dec. 19, 1995 press release from Novo Media Group indicates at least somewhat similar plans. |
| | *See also* col. 4, lines 43–49: |

**Appendix B-14**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,918,014 (Robinson)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,918,014 (Robinson) |
|---|---|
| | When a Smart Ad Box appears on a page, a user viewing that page will see an ad which is targeted to that particular user. Thus, simultaneous viewers of the same page will often be presented with different ads. The ad is visually contained in the Smart Ad Box. The Smart Ad Box may or may not be rectangular in shape; it will often, but not necessarily, exist in a fixed region on the screen. |
| | *See also* col. 11, line 65 to col. 12, line 3: |
| | An example of content that would motivate many users to download the Internet Screensaver would be a continuously updated stock ticker. A couple of other examples would be continuously updated news headlines or weather reports. A further example might be showing the status of the user's email box. |
| | *See also* Fig. 1 and associated text. |
| | To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [1b] forming at least a page file for the first type network node; | Robinson discloses forming at least a page file for the first type network node. For example, it discloses the use of a "Smart Ad Box" on a web page that shows advertisements targeted to particular users. |
| | *See* Abstract: |
| | On the World Wide Web, and other interactive media, it is possible to show different ads to different people who are simultaneously viewing the same content. This invention is based on the fact that people who have shown a tendency for similar likes and dislikes in the past will show a tendency for such similarities in the future. Those people who strongly |

**Appendix B-14**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,918,014 (Robinson)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,918,014 (Robinson) |
|---|---|
| | display such similarities with respect to a particular person ("the subject") are referred to as that person's "community." If the members of a subject's community tend to click on a particular Web ad, then it is likely that the subject will also tend to click on that ad.  This invention combines techniques for: determining the subject's community, and determining which ads to show based on characteristics of the subject's community. The information used to determine whether a given individual should be in the subject's community is gleaned from the individual's activities in the interactive medium.  Means are provided to track a consumer's activities so all the information he generates can be tied together in the database, e.g. by means of "cookies;" or by software running on the consumer's computer, such as an in-line plug-in, a screensaver working in conjunction with the Web browser, or the Web browser itself.  A measure of similarity between individuals is generated.  The individuals with the greatest calculated similarity become the subject's community; e.g. clusters are formed of groups of very similar consumers.  Ads are presented to the subject based on his community, optionally selected based on demographics associated with the community.<br><br>*See also* col. 2, lines 27–30:<br><br>To take advantage of this fact, this invention combines techniques for solving two problems: determining the subject's community, and determining which ads to show based on characteristics of the subject's community.<br><br>*See also* col. 4, lines 8–13:<br><br>The centerpiece of this invention is the "Smart Ad Box." A Smart Ad Box is an area on a Web page (usually rectangular) which is used to display Web advertising.  Special software algorithms are used to determine |

**Appendix B-14**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,918,014 (Robinson)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,918,014 (Robinson) |
|---|---|
| | which ads are shown to which users; different visitors to a Web page can simultaneously see different ads. *See also* col. 4, lines 14–23: A number of factors can be used by the software in determining which ads to show. For instance, based on their Dec. 6, 1995 press release, the company C/Net appears to be planning to implement a Smart Ad Box-like system which decides which ads to present to which users based on such information as the type of Web browser they're using, their age, gender, Internet domain (EDU, COM, etc.) and other demographic information. A Dec. 19, 1995 press release from Novo Media Group indicates at least somewhat similar plans. *See also* col. 4, lines 43–49: When a Smart Ad Box appears on a page, a user viewing that page will see an ad which is targeted to that particular user. Thus, simultaneous viewers of the same page will often be presented with different ads. The ad is visually contained in the Smart Ad Box. The Smart Ad Box may or may not be rectangular in shape; it will often, but not necessarily, exist in a fixed region on the screen. *See also* col. 11, line 65 to col. 12, line 3: An example of content that would motivate many users to download the Internet Screensaver would be a continuously updated stock ticker. A couple of other examples would be continuously updated news headlines or weather reports. A further example might be showing the status of the user's email box. |

**Appendix B-14**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,918,014 (Robinson)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,918,014 (Robinson) |
|---|---|
| | *See also* Fig. 1 and associated text.<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [1c] forming at least a page file for the second type network node; | Robinson discloses forming at least a page file for the second type network node. For example, Robinson discloses that customized advertisements are shown on web pages containing content that are viewed by various people.<br><br>*See* col. 2, lines 31–47:<br><br>In this invention, the information used to determine whether a given individual should be in the subject's community is gleaned from the activities of the individual in the interactive medium in question. For instance, when the interactive medium is the World Wide Web, the information may involve such facts as the choices of Web sites the individuals have each visited, the frequency of such visits, the nature of the content at those sites, etc. If the sites are online stores, the information may involve the choice of specific items purchased, as well as the prices of those items. As another example, if the site is an entertainment recommendation service based on user-supplied ratings (Firefly at www.ffly.com is an example), the ratings can be used. One more example is the selection of Web ads each individual has chosen to click on. In one embodiment, there is a feature which allows individuals to indicate their disinterest in an ad; this serves as additional input.<br><br>*See also* col. 4, lines 14–23:<br><br>A number of factors can be used by the software in determining which ads to show. For instance, based on their Dec. 6, 1995 press release, the |

**Appendix B-14**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,918,014 (Robinson)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,918,014 (Robinson) |
|---|---|
| | company C/Net appears to be planning to implement a Smart Ad Box-like system which decides which ads to present to which users based on such information as the type of Web browser they're using, their age, gender, Internet domain (EDU, COM, etc.) and other demographic information. A Dec. 19, 1995 press release from Novo Media Group indicates at least somewhat similar plans.<br><br>*See also* col. 4, lines 43–49:<br><br>    When a Smart Ad Box appears on a page, a user viewing that page will see an ad which is targeted to that particular user. Thus, simultaneous viewers of the same page will often be presented with different ads. The ad is visually contained in the Smart Ad Box. The Smart Ad Box may or may not be rectangular in shape; it will often, but not necessarily, exist in a fixed region on the screen.<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [1d] receiving a service request from the first type network node; | Robinson discloses receiving a service request from the first type network node. For example, Robinson relates to display of customized advertisements on web pages accessed by users over the Internet. This necessarily entails that a service request, such as an HTTP request, is received from a variety of network nodes, such as the client computer of an user, the ISP or organization through which the user accesses the Internet, and/or nodes associated with the advertisements.<br><br>*See* Abstract:<br><br>    On the World Wide Web, and other interactive media, it is possible to show different ads to different people who are simultaneously viewing the same content. This invention is based on the fact that people who have |

- 8 -

**Appendix B-14**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,918,014 (Robinson)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,918,014 (Robinson) |
|---|---|
| | shown a tendency for similar likes and dislikes in the past will show a tendency for such similarities in the future. Those people who strongly display such similarities with respect to a particular person ("the subject") are referred to as that person's "community." If the members of a subject's community tend to click on a particular Web ad, then it is likely that the subject will also tend to click on that ad. This invention combines techniques for: determining the subject's community, and determining which ads to show based on characteristics of the subject's community. The information used to determine whether a given individual should be in the subject's community is gleaned from the individual's activities in the interactive medium. Means are provided to track a consumer's activities so all the information he generates can be tied together in the database, e.g. by means of "cookies;" or by software running on the consumer's computer, such as an in-line plug-in, a screensaver working in conjunction with the Web browser, or the Web browser itself. A measure of similarity between individuals is generated. The individuals with the greatest calculated similarity become the subject's community; e.g. clusters are formed of groups of very similar consumers. Ads are presented to the subject based on his community, optionally selected based on demographics associated with the community. *See also* col. 2, lines 27–30: To take advantage of this fact, this invention combines techniques for solving two problems: determining the subject's community, and determining which ads to show based on characteristics of the subject's community. *See also* col. 4, lines 8–13: The centerpiece of this invention is the "Smart Ad Box." A Smart Ad Box |

**Appendix B-14**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,918,014 (Robinson)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,918,014 (Robinson) |
|---|---|
| | is an area on a Web page (usually rectangular) which is used to display Web advertising. Special software algorithms are used to determine which ads are shown to which users; different visitors to a Web page can simultaneously see different ads.<br><br>*See also* col. 4, lines 14–23:<br><br>    A number of factors can be used by the software in determining which ads to show. For instance, based on their Dec. 6, 1995 press release, the company C/Net appears to be planning to implement a Smart Ad Box-like system which decides which ads to present to which users based on such information as the type of Web browser they're using, their age, gender, Internet domain (EDU, COM, etc.) and other demographic information. A Dec. 19, 1995 press release from Novo Media Group indicates at least somewhat similar plans.<br><br>*See also* col. 4, lines 43–49:<br><br>    When a Smart Ad Box appears on a page, a user viewing that page will see an ad which is targeted to that particular user. Thus, simultaneous viewers of the same page will often be presented with different ads. The ad is visually contained in the Smart Ad Box. The Smart Ad Box may or may not be rectangular in shape; it will often, but not necessarily, exist in a fixed region on the screen.<br><br>*See also* col. 11, line 65 to col. 12, line 3:<br><br>    An example of content that would motivate many users to download the Internet Screensaver would be a continuously updated stock ticker. A couple of other examples would be continuously updated news headlines or weather reports. A further example might be showing the status of the |

**Appendix B-14**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,918,014 (Robinson)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,918,014 (Robinson) |
|---|---|
| | user's email box.<br><br>*See also* col. 13, lines 22-39:<br><br>It would be valuable for embodiments of this invention to make it very easy for Web sites to participate.<br><br>To do this, a Web site (or, perhaps, a page or set of pages) should be made available that contains complete instructions on how to set up a participating page. Instructions should explain how to place a Smart Ad Box on a page, as well as bow to enable the tracking of users on a page (if the embodiment involves separate code for tracking and for the Smart Ad Box).<br><br>The code could be designed in such a way that there need be no direct communication between the people supplying the Smart Ad Box service and related services and the people who want to enable their Web site to participate in those services. Any competent practitioner could design such code. Furthermore, it should be designed in such a way that the modifications required to enable a Web page to participate are minimal. Again, any competent practitioner could design such code.<br><br>*See also* Fig. 1 and associated text.<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [1e] identifying the first type network node based on | Robinson discloses identifying the first type network node based on the service request. For example, it discloses that the customized advertisements can be targeted to users meeting certain criteria, such as the user's Internet domain, and that users can be identified and tracked by the use of cookies or the IP |

**Appendix B-14**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,918,014 (Robinson)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,918,014 (Robinson) |
|---|---|
| the service request; and | address included in the HTTP request for a web page.<br><br>*See also* col. 2, lines 49–57:<br><br>There needs to be a means to track a consumer's activities so all the information he generates can be tied together in the database. In one embodiment, this is accomplished by means of Netscape-style "cookies," which are stored on the consumer's hard disk under CGI control. In other embodiments, software running on the consumer's computer, such as an Netscape-style in-line plug-in, a screensaver working in conjunction with the Web browser, or the Web browser itself, is used to tie the data together.<br><br>*See also* col. 4, lines 14–23:<br><br>A number of factors can be used by the software in determining which ads to show. For instance, based on their Dec. 6, 1995 press release, the company C/Net appears to be planning to implement a Smart Ad Box-like system which decides which ads to present to which users based on such information as the type of Web browser they're using, their age, gender, Internet domain (EDU, COM, etc.) and other demographic information. A Dec. 19, 1995 press release from Novo Media Group indicates at least somewhat similar plans.<br><br>*See also* col. 7, lines 18–25:<br><br>Users can optionally be given the ability to tell the system not to store their tracking data. (If the user elected not to be tracked, the system would have to decide what ads to display based on other means, such as domain type [EDU, NET, etc.], browser and computer types, demographic data |

**Appendix B-14**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,918,014 (Robinson)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,918,014 (Robinson) |
|---|---|
| | that had been obtained, etc.)<br><br>*See also* col. 10, lines 8–44:<br><br>The Tracking Script will examine the cookies passed to it to see whether one of them is the Tracking Cookie.  If it did receive the Tracking Cookie: then this cookie will contain the identifier of the user; the central database can then be updated with the ID of the user and of the current page, and, optionally, other information such as the time spent on the page.  Optionally, the expiration date of the Tracking Cookie could be updated; for instance, it could always be set to one year after the last Tracking Cookie access.  If it did not receive the Tracking Cookie: then it creates it.  The value of the Tracking Cookie could be generated using a random number generator; one of many other alternatives would simply be to pick a number one greater than the last value generated.  The Tracking Cookie is then stored on the user's machine using the Netscape cookie mechanism; each time from then on that a user visits a tracking-enabled page, the stored Tracking Cookie will be used to re-identify that user.  The Tracking Cookie should be assigned an expiration date so that it doesn't disappear when the user leaves.  The expiration date could be, for instance, one year in the future.  Note that the Tracking Cookie will not allow anyone to intrude on the user's privacy by sending him email or by any other means.  There need be no way to associate the Tracking Cookie with the user's name, physical location, or any other personally-identifying information.<br><br>The techniques involved in writing these CGI's are known to any competent practitioner of Netscape-related CGI programming.<br><br>There are other ways to track users, such as using environment |

**Appendix B-14**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,918,014 (Robinson)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,918,014 (Robinson) |
|---|---|
| | variables such as REMOTE_ ADDR, REMOTE_HOST, REMOTE_IDENT and the header field HTTP FROM. These are known to any competent practitioner of CGI programming. Moreover, other methods will probably become practical in time. So the cookie mechanism is not required, but docs have advantages.<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [1f] forming a customized page file formed for the first type network node by including the page file formed for the first type network node within the page file for the second type network node. | Robinson discloses forming a customized page file formed for the first type network node by including the page file formed for the first type network node within the page file for the second type network node. For example, it discloses the use of a "Smart Ad Box" on a web page that shows advertisements targeted to particular users.<br><br>*See* col. 1, line 65 to col. 2, line 8:<br><br>On the World Wide Web, and other media such as interactive television, it is possible to show different ads to different people who are simultaneously viewing or interacting with the same content. For instance, a particular Web page may have an area reserved for advertisements. Anyone of average experience in the field of Web programming would be able to create code to show different advertisements to different people simultaneously viewing that page. This can be accomplished, for instance, by means of a CGI script.<br><br>*See also* col. 4, lines 8–13:<br><br>The centerpiece of this invention is the "Smart Ad Box." A Smart Ad Box is an area on a Web page (usually rectangular) which is used to display Web advertising. Special software algorithms are used to determine |

**Appendix B-14**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,918,014 (Robinson)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,918,014 (Robinson) |
|---|---|
| | which ads are shown to which users; different visitors to a Web page can simultaneously see different ads.<br><br>*See also* col. 4, lines 14–23:<br><br>A number of factors can be used by the software in determining which ads to show. For instance, based on their Dec. 6, 1995 press release, the company C/Net appears to be planning to implement a Smart Ad Box-like system which decides which ads to present to which users based on such information as the type of Web browser they're using, their age, gender, Internet domain (EDU, COM, etc.) and other demographic information. A Dec. 19, 1995 press release from Novo Media Group indicates at least somewhat similar plans.<br><br>*See also* col. 4, lines 43–49:<br><br>When a Smart Ad Box appears on a page, a user viewing that page will see an ad which is targeted to that particular user. Thus, simultaneous viewers of the same page will often be presented with different ads. The ad is visually contained in the Smart Ad Box. The Smart Ad Box may or may not be rectangular in shape; it will often, but not necessarily, exist in a fixed region on the screen.<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 2* | |
| [2] The method of claim 1, wherein the first type | Robinson discloses the first type network node is an ISP node, and the second type network node is an ICP node. For example, it discloses that customized advertisements are shown on web pages displaying |

**Appendix B-14**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,918,014 (Robinson)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,918,014 (Robinson) |
|---|---|
| network node is an ISP node, and the second type network node is an ICP node. | content accessed by users over the Internet. It also discloses that users can be identified by their ISP or organization and that the advertisements could be targeted on this basis.<br><br>*See also* col. 4, lines 14–23:<br><br>A number of factors can be used by the software in determining which ads to show. For instance, based on their Dec. 6, 1995 press release, the company C/Net appears to be planning to implement a Smart Ad Box-like system which decides which ads to present to which users based on such information as the type of Web browser they're using, their age, gender, Internet domain (EDU, COM, etc.) and other demographic information. A Dec. 19, 1995 press release from Novo Media Group indicates at least somewhat similar plans.<br><br>*See also* col. 7, lines 18–25:<br><br>Users can optionally be given the ability to tell the system not to store their tracking data. (If the user elected not to be tracked, the system would have to decide what ads to display based on other means, such as domain type [EDU, NET, etc.], browser and computer types, demographic data that had been obtained, etc.)<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 3* | |
| [3] The method of claim 1, wherein the first type network node is an | Robinson discloses the first type network node is an organization node, and the second type network node is an ICP node. For example, it discloses that customized advertisements are shown on web pages displaying content accessed by users over the Internet. It also discloses that users can be identified by |

**Appendix B-14**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,918,014 (Robinson)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,918,014 (Robinson) |
|---|---|
| organization node, and the second type network node is an ICP node. | their ISP or organization and that the advertisements could be targeted on this basis.<br><br>*See also* col. 4, lines 14–23:<br><br>     A number of factors can be used by the software in determining which ads to show. For instance, based on their Dec. 6, 1995 press release, the company C/Net appears to be planning to implement a Smart Ad Box-like system which decides which ads to present to which users based on such information as the type of Web browser they're using, their age, gender, Internet domain (EDU, COM, etc.) and other demographic information. A Dec. 19, 1995 press release from Novo Media Group indicates at least somewhat similar plans.<br><br>*See also* col. 7, lines 18–25:<br><br>     Users can optionally be given the ability to tell the system not to store their tracking data. (If the user elected not to be tracked, the system would have to decide what ads to display based on other means, such as domain type [EDU, NET, etc.], browser and computer types, demographic data that had been obtained, etc.)<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 4* | |
| [4] The method of claim 1, wherein the customized page file includes customized graphics, | Robinson discloses that the customized page file includes customized graphics, sounds, applets, links, and text. |

**Appendix B-14**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,918,014 (Robinson)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,918,014 (Robinson) |
|---|---|
| sounds, applets, links, and text. | *See* col. 8, line 64 to col. 9, line 7:<br><br>Tracking by means of code on participating Web sites.<br><br>Each Web page which contains a Smart Ad Box will contain code, which may be comprised of HTML, Java, or other languages, which will allow a user to be tracked. (This code may work in conjunction with other software, such as Netscape-style Inline Plug-Ins.) In addition, such means for tracking a user can be embedded in pages that do not themselves display advertising. Pages which have the ability to cause a central database to be updated with tracking information will be referred to in this document as "tracking-enabled."<br><br>*See* also col. 11, lines 49–55:<br><br>For instance, this screensaver could be designed so that it could display HTML and/or execute Java code. In fact, it could have much of the functionality of a Web browser. (Or, it could use its own protocols for displaying images and text on the screen, different from those used in Web browsers. However, it would probably be best for it to use standard protocols.)<br><br>See also col. 12, lines 43–55:<br><br>(Additional note: the Internet Screensaver does not necessarily have to be a separate piece of software from a Web browser. A Web browser could itself be a screensaver, through the addition of screensaver-related capabilities such as the ability to sense user inactivity, the ability to bring itself into the foreground when user inactivity is sensed, and the ability to completely take over the screen so that only the desired screensaver content is visible [usual menus, etc. would be hidden]. Screensaver |

**Appendix B-14**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,918,014 (Robinson)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,918,014 (Robinson) |
|---|---|
| | content is usually, but not exclusively, a dark screen containing moving images.  Such a Web browser could use its regular graphics abilities to display screensaver content in the form of HTML, Java, JavaScript, or other protocols.)<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter.  *See* Appendix C. |
| *Claim 5* | |
| [5] The method of claim 1, wherein the customized page file includes customized advertisements. | Robinson discloses that the customized page file includes customized advertisements.<br><br>*See* Abstract:<br><br>On the World Wide Web, and other interactive media, it is possible to show different ads to different people who are simultaneously viewing the same content.  This invention is based on the fact that people who have shown a tendency for similar likes and dislikes in the past will show a tendency for such similarities in the future.  Those people who strongly display such similarities with respect to a particular person ("the subject") are referred to as that person's "community." If the members of a subject's community tend to click on a particular Web ad, then it is likely that the subject will also tend to click on that ad.  This invention combines techniques for: determining the subject's community, and determining which ads to show based on characteristics of the subject's community.  The information used to determine whether a given individual should be in the subject's community is gleaned from the individual's activities in the interactive medium.  Means are provided to track a consumer's activities so all the information he generates can be tied together in the database, e.g. by means of "cookies;" or by software running on the consumer's |

**Appendix B-14**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,918,014 (Robinson)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,918,014 (Robinson) |
|---|---|
| | computer, such as an in-line plug-in, a screensaver working in conjunction with the Web browser, or the Web browser itself.  A measure of similarity between individuals is generated.  The individuals with the greatest calculated similarity become the subject's community; e.g. clusters are formed of groups of very similar consumers.  Ads are presented to the subject based on his community, optionally selected based on demographics associated with the community.<br><br>*See also* col. 3, lines 18–27:<br><br>In one embodiment, the advertiser specifies the demographic profile he wants to show the ad to.  In that case, as long as we have demographic information available for some consumers, the system targets ads by considering the subject's community members who have supplied demographic information.  For instance, by computing the average age of the members of the subject's community who have supplied their ages, the system is enabled to make an "intelligent guess" about the subject's age, and use that guess for the purpose of targeting ads.<br><br>*See also* col. 4, lines 14–23:<br><br>A number of factors can be used by the software in determining which ads to show.  For instance, based on their Dec. 6, 1995 press release, the company C/Net appears to be planning to implement a Smart Ad Box-like system which decides which ads to present to which users based on such information as the type of Web browser they're using, their age, gender, Internet domain (EDU, COM, etc.) and other demographic information.  A Dec. 19, 1995 press release from Novo Media Group indicates at least somewhat similar plans. |

**Appendix B-14**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,918,014 (Robinson)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,918,014 (Robinson) |
|---|---|
| | *See also* col. 4, lines 24–37:<br><br>This invention involves using automated collaborative filtering (ACF) either instead of, or in addition to, the above-mentioned techniques. (ACF is also referred to as social information filtering.) As far as is known, there is no prior art that involves using ACF in determining which ads to show to whom. For ease of discussion, this patent will focus exclusively on the use of ACF in Web advertising. However, it must be stressed that ACF can be used in a complementary manner to techniques such as those C.vertline.Net and Novo Media Group are developing. ACF can give us a certain amount of evidence that a particular ad should be shown to a particular user; such information as age, sex, Internet domain, etc. can be considered as well.<br><br>*See also* col. 7, lines 18–25:<br><br>Users can optionally be given the ability to tell the system not to store their tracking data. (If the user elected not to be tracked, the system would have to decide what ads to display based on other means, such as domain type [EDU, NET, etc.], browser and computer types, demographic data that had been obtained, etc.) |
| *Claim 6* | |
| [6a] The method of claim 1, wherein: the service request includes an IP address for identifying the first type network node, and | Robinson discloses that the service request includes an IP address for identifying the first type network node. For example, Robinson relates to display of customized advertisements on web pages accessed by users over the Internet. This necessarily entails that a service request, such as an HTTP request is received over the Internet using the TCP/IP protocol. Such a service request would include an IP address for identifying the first type network node. |

**Appendix B-14**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,918,014 (Robinson)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,918,014 (Robinson) |
|---|---|
| | *See also* col. 2, lines 49–57:<br><br>There needs to be a means to track a consumer's activities so all the information he generates can be tied together in the database. In one embodiment, this is accomplished by means of Netscape-style "cookies," which are stored on the consumer's hard disk under CGI control. In other embodiments, software running on the consumer's computer, such as an Netscape-style in-line plug-in, a screensaver working in conjunction with the Web browser, or the Web browser itself, is used to tie the data together.<br><br>*See also* col. 4, lines 14–23:<br><br>A number of factors can be used by the software in determining which ads to show. For instance, based on their Dec. 6, 1995 press release, the company C/Net appears to be planning to implement a Smart Ad Box-like system which decides which ads to present to which users based on such information as the type of Web browser they're using, their age, gender, Internet domain (EDU, COM, etc.) and other demographic information. A Dec. 19, 1995 press release from Novo Media Group indicates at least somewhat similar plans.<br><br>*See also* col. 7, lines 18–25:<br><br>Users can optionally be given the ability to tell the system not to store their tracking data. (If the user elected not to be tracked, the system would have to decide what ads to display based on other means, such as domain type [EDU, NET, etc.], browser and computer types, demographic data that had been obtained, etc.) |

**Appendix B-14**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,918,014 (Robinson)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,918,014 (Robinson) |
|---|---|
| | *See also* col. 10, lines 8–44:<br><br>The Tracking Script will examine the cookies passed to it to see whether one of them is the Tracking Cookie.  If it did receive the Tracking Cookie: then this cookie will contain the identifier of the user; the central database can then be updated with the ID of the user and of the current page, and, optionally, other information such as the time spent on the page.  Optionally, the expiration date of the Tracking Cookie could be updated; for instance, it could always be set to one year after the last Tracking Cookie access.  If it did not receive the Tracking Cookie: then it creates it.  The value of the Tracking Cookie could be generated using a random number generator; one of many other alternatives would simply be to pick a number one greater than the last value generated.  The Tracking Cookie is then stored on the user's machine using the Netscape cookie mechanism; each time from then on that a user visits a tracking-enabled page, the stored Tracking Cookie will be used to re-identify that user.  The Tracking Cookie should be assigned an expiration date so that it doesn't disappear when the user leaves.  The expiration date could be, for instance, one year in the future.  Note that the Tracking Cookie will not allow anyone to intrude on the user's privacy by sending him email or by any other means.  There need be no way to associate the Tracking Cookie with the user's name, physical location, or any other personally-identifying information.<br><br>The techniques involved in writing these CGI's are known to any competent practitioner of Netscape-related CGI programming.<br><br>There are other ways to track users, such as using environment<br><br>variables such as REMOTE_ ADDR, REMOTE_HOST, REMOTE_IDENT and the header field HTTP FROM. These are known to |

- 23 -

**Appendix B-14**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,918,014 (Robinson)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,918,014 (Robinson) |
|---|---|
| | any competent practitioner of CGI programming. Moreover, other methods will probably become practical in time. So the cookie mechanism is not required, but docs have advantages.<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [6b] identifying the first type network node based on the service request comprises using the IP address included in the service request to identify the first type network node. | Robinson discloses identifying the first type network node based on the service request comprises using the IP address included in the service request to identify the first type network node. For example, Robinson discloses that the HTTP request includes the IP address of the user and that the customized advertisements may be selected based on criteria including the ISP or organization of the user.<br><br>*See* claim limitation [1e].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 7* | |
| [7a] A method for providing web page customization service to a plurality of first type network nodes at a second type network node, comprising the steps of: | Robinson discloses a method for providing web page customization service to a plurality of first type network nodes at a second type network node.<br><br>*See* claim limitation [1a].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |

Appendix B-14

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,918,014 (Robinson)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,918,014 (Robinson) |
|---|---|
| [7b] forming at least a page file for each of the first type network nodes; | Robinson discloses forming at least a page file for each of the first type network nodes.<br><br>*See* claim limitation [1b].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [7c] forming at least a page file for the second type network node; | Robinson discloses forming at least a page file for the second type network node.<br><br>*See* claim limitation [1c].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [7d] receiving a service request from one of the first type network nodes; | Robinson discloses receiving a service request from one of the first type network nodes.<br><br>*See* claim limitation [1d].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [7e] determining whether the first type network node participates in the web page customization service; | Robinson discloses determining whether the first type network node participates in the web page customization service.<br><br>*See* claim limitation [1e].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill |

Appendix B-14

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,918,014 (Robinson)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,918,014 (Robinson) |
|---|---|
| | and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [7f] if the first type network node participates in the web page customization service, forming a customized page file for the service request by including the page file formed for the first type network node within the page file formed for the second type network node; and | Robinson discloses, if the first type network node participates in the web page customization service, forming a customized page file for the service request by including the page file formed for the first type network node within the page file formed for the second type network node. *See* claim limitation [1f]. To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [7g] if the first type network node does not participate in the web page customization service, forming a page file for the service request by using the page file formed for the second type network node. | Robinson discloses, if the first type network node does not participate in the web page customization service, forming a page file for the service request by using the page file formed for the second type network node. For example, Robinson discloses the display of customized advertisements on web pages to users meeting certain criteria; the customized advertisements would not be shown for users not meet the desired criteria. Robinson also discloses that some advertisements are not targeted to certain users. *See* Abstract: On the World Wide Web, and other interactive media, it is possible to show different ads to different people who are simultaneously viewing the same content. This invention is based on the fact that people who have shown a tendency for similar likes and dislikes in the past will show a tendency for such similarities in the future. Those people who strongly display such similarities with respect to a particular person ("the subject") are referred to as that person's "community." If the members of a subject's community tend to click on a particular Web ad, then it is likely that the subject will also tend to click on that ad. This invention combines |

- 26 -

**Appendix B-14**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,918,014 (Robinson)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,918,014 (Robinson) |
|---|---|
| | techniques for: determining the subject's community, and determining which ads to show based on characteristics of the subject's community. The information used to determine whether a given individual should be in the subject's community is gleaned from the individual's activities in the interactive medium. Means are provided to track a consumer's activities so all the information he generates can be tied together in the database, e.g. by means of "cookies;" or by software running on the consumer's computer, such as an in-line plug-in, a screensaver working in conjunction with the Web browser, or the Web browser itself. A measure of similarity between individuals is generated. The individuals with the greatest calculated similarity become the subject's community; e.g. clusters are formed of groups of very similar consumers. Ads are presented to the subject based on his community, optionally selected based on demographics associated with the community.<br><br>*See also* col. 2, lines 27–30:<br><br>To take advantage of this fact, this invention combines techniques for solving two problems: determining the subject's community, and determining which ads to show based on characteristics of the subject's community.<br><br>*See also* col. 3, lines 3-15:<br><br>In one embodiment of the invention, a new ad is displayed randomly or on a fixed schedule to a certain number of users. During this "training period" for the new ad, a certain percentage of the members of the subject's community will click on it. If this is an unusually high proportion, then there is a relatively high likelihood that the ad will be of relatively high interest to the subject. In one embodiment, statistical techniques are used to determine a probability, associated with a fixed confidence level, with |

**Appendix B-14**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,918,014 (Robinson)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,918,014 (Robinson) |
|---|---|
|  | which we can assume a randomly-chosen member of the subject's community will tend to click on the ad; this probability is used as the measure of similarity. Other embodiments involve other analytic techniques.<br><br>*See also* col. 4, lines 8–13:<br><br>The centerpiece of this invention is the "Smart Ad Box." A Smart Ad Box is an area on a Web page (usually rectangular) which is used to display Web advertising. Special software algorithms are used to determine which ads are shown to which users; different visitors to a Web page can simultaneously see different ads.<br><br>*See also* col. 4, lines 14–23:<br><br>A number of factors can be used by the software in determining which ads to show. For instance, based on their Dec. 6, 1995 press release, the company C/Net appears to be planning to implement a Smart Ad Box-like system which decides which ads to present to which users based on such information as the type of Web browser they're using, their age, gender, Internet domain (EDU, COM, etc.) and other demographic information. A Dec. 19, 1995 press release from Novo Media Group indicates at least somewhat similar plans.<br><br>*See also* col. 4, lines 43–49:<br><br>When a Smart Ad Box appears on a page, a user viewing that page will see an ad which is targeted to that particular user. Thus, simultaneous viewers of the same page will often be presented with different ads. The ad is visually contained in the Smart Ad Box. The Smart Ad Box may or may not be rectangular in shape; it will often, but not necessarily, exist in |

**Appendix B-14**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,918,014 (Robinson)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,918,014 (Robinson) |
|---|---|
|  | a fixed region on the screen. |
|  | *See also* col. 11, line 65 to col. 12, line 3: |
|  | An example of content that would motivate many users to download the Internet Screensaver would be a continuously updated stock ticker. A couple of other examples would be continuously updated news headlines or weather reports. A further example might be showing the status of the user's email box. |
|  | *See also* Fig. 1 and associated text. |
|  | To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 8* |  |
| [8] The method of claim 7, wherein the first type network nodes are ISP nodes, and the second type network node is an ICP node. | Robinson discloses that the first type network nodes are ISP nodes, and the second type network node is an ICP node. |
|  | *See* claim limitation [2]. |
|  | To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 9* |  |
| [9] The method of claim 7, wherein the first type | Robinson discloses that the first type network nodes are organization nodes, and the second type network node is an ICP node. |

**Appendix B-14**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,918,014 (Robinson)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,918,014 (Robinson) |
|---|---|
| network nodes are organization nodes, and the second type network node is an ICP node. | *See* claim limitation [3].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 10* | |
| [10] The method of claim 7, wherein the customized page file includes customized graphics, sounds, applets, links, and text. | Robinson discloses that the customized page file includes customized graphics, sounds, applets, links, and text.<br><br>*See* claim limitation [4].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 11* | |
| [11] The method of claim 7, wherein the customized page file includes customized advertisements. | Robinson discloses that the customized page file includes customized advertisements.<br><br>*See* claim limitation [5].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 12* | |
| [12a] The method of claim 7, wherein: the service request from one of the first | Robinson discloses that the service request from one of the first type network nodes includes an IP address for identifying the first type network node. |

**Appendix B-14**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,918,014 (Robinson)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,918,014 (Robinson) |
|---|---|
| type network nodes includes an IP address for identifying the first type network node, and | *See* claim limitation [6a]. <br><br> To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [12b] determining whether the first type network node participates in the web page customization service comprises using the IPI address included in the service request to identify the first type network node. | Robinson discloses determining whether the first type network node participates in the web page customization service comprises using the IPI address included in the service request to identify the first type network node. <br><br> *See* claim limitation [6b]. <br><br> To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 13* | |
| [13a] A method for providing web page customization service to a plurality of first type network nodes at a second type network node, comprising the steps of: | Robinson discloses a method for providing web page customization service to a plurality of first type network nodes at a second type network node. <br><br> *See* claim limitation [1a]. <br><br> To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [13b] forming a plurality of advertisements for the first type network nodes; | Robinson discloses forming a plurality of advertisements for the first type network nodes. <br><br> *See* claim limitations [1b] and [5]. <br><br> To the extent it is found that this reference does not disclose this limitation expressly or inherently, it |

**Appendix B-14**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,918,014 (Robinson)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,918,014 (Robinson) |
|---|---|
| | would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [13c] forming at least a page file for the second type network node; | Robinson discloses forming at least a page file for the second type network node.<br><br>*See* claim limitation [1c].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [13d] receiving a service request from one of the first type network nodes; | Robinson discloses receiving a service request from one of the first type network nodes.<br><br>*See* claim limitation [1d].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [13e] identifying advertisements for the first type network node; and | Robinson discloses identifying advertisements for the first type network node.<br><br>*See* claim limitations [1e] and [5].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [13f] forming a customized page file for the first type network node by including the identified | Robinson discloses forming a customized page file for the first type network node by including the identified advertisements within the page file formed for the second type network node.<br><br>*See* claim limitation [1f]. |

Appendix B-14

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,918,014 (Robinson)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,918,014 (Robinson) |
|---|---|
| advertisements within the page file formed for the second type network node. | To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 14* | |
| [14] The method of claim 13, wherein the first type network nodes are ISP nodes, and the second type network node is an ICP node. | Robinson discloses that the first type network nodes are ISP nodes, and the second type network node is an ICP node.<br><br>*See* claim limitation [2].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 15* | |
| [15] The method of claim 13, wherein the first type network nodes are organization nodes, and the second type network node is an ICP node. | Robinson discloses that the first type network nodes are organization nodes, and the second type network node is an ICP node.<br><br>*See* claim limitation [3].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 16* | |
| [16] The method of claim 13, wherein the identified advertisements do not cause | Robinson discloses that the identified advertisements do not cause negative impact on the owner of the first type network node. For example, Robinson discloses that the advertisements are targeted to the interests or demographic criteria of a person viewing the web page, including the ISP or organization |

- 33 -

**Appendix B-14**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,918,014 (Robinson)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,918,014 (Robinson) |
|---|---|
| negative impact on the owner of the first type network node. | through which the user accesses the Internet.  Such advertisements would be selected so that they do not cause negative impact on the owner of the first type network node.  Robinson also discloses that the advertisements can be subject to control rules; e.g., advertisers can choose the web sites on which their advertisements would be shown or not shown, or that web sites can choose which advertisers or types of advertisements to show. 

*See* Abstract:

On the World Wide Web, and other interactive media, it is possible to show different ads to different people who are simultaneously viewing the same content.  This invention is based on the fact that people who have shown a tendency for similar likes and dislikes in the past will show a tendency for such similarities in the future.  Those people who strongly display such similarities with respect to a particular person ("the subject") are referred to as that person's "community." If the members of a subject's community tend to click on a particular Web ad, then it is likely that the subject will also tend to click on that ad.  This invention combines techniques for: determining the subject's community, and determining which ads to show based on characteristics of the subject's community.  The information used to determine whether a given individual should be in the subject's community is gleaned from the individual's activities in the interactive medium.  Means are provided to track a consumer's activities so all the information he generates can be tied together in the database, e.g. by means of "cookies;" or by software running on the consumer's computer, such as an in-line plug-in, a screensaver working in conjunction with the Web browser, or the Web browser itself.  A measure of similarity between individuals is generated.  The individuals with the greatest calculated similarity become the subject's community; e.g. clusters are formed of groups of very similar consumers.  Ads are presented to the subject based on his community, optionally selected based on |

**Appendix B-14**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,918,014 (Robinson)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,918,014 (Robinson) |
|---|---|
| | demographics associated with the community.<br><br>*See also* col. 3, lines 18–27:<br><br>    In one embodiment, the advertiser specifies the demographic profile he wants to show the ad to. In that case, as long as we have demographic information available for some consumers, the system targets ads by considering the subject's community members who have supplied demographic information. For instance, by computing the average age of the members of the subject's community who have supplied their ages, the system is enabled to make an "intelligent guess" about the subject's age, and use that guess for the purpose of targeting ads.<br><br>*See also* col. 4, lines 14–23:<br><br>    A number of factors can be used by the software in determining which ads to show. For instance, based on their Dec. 6, 1995 press release, the company C/Net appears to be planning to implement a Smart Ad Box-like system which decides which ads to present to which users based on such information as the type of Web browser they're using, their age, gender, Internet domain (EDU, COM, etc.) and other demographic information. A Dec. 19, 1995 press release from Novo Media Group indicates at least somewhat similar plans.<br><br>*See also* col. 4, lines 24–37:<br><br>    This invention involves using automated collaborative filtering (ACF) either instead of, or in addition to, the above-mentioned techniques. (ACF is also referred to as social information filtering.) As far as is known, there is no prior art that involves using ACF in determining which ads to show to whom. For ease of discussion, this patent will focus exclusively on the |

**Appendix B-14**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,918,014 (Robinson)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,918,014 (Robinson) |
|---|---|
| | use of ACF in Web advertising.  However, it must be stressed that ACF can be used in a complementary manner to techniques such as those C.vertline.Net and Novo Media Group are developing.  ACF can give us a certain amount of evidence that a particular ad should be shown to a particular user; such information as age, sex, Internet domain, etc. can be considered as well. |
| | *See also* col. 5, lines 11-26: |
| | The central database can optionally contain rules or control records provided by advertisers and Web site managers. These could be used for the following purposes: |
| | An advertiser may not want to be associated with certain Web sites or types of Web sites; alternatively there may be certain sites or types of sites they would like to be associated with as strongly as possible. Advertisers could specify such inclinations, and they can be stored in a database. Then, when the software is choosing the next ad to show to a particular user who is visiting a particular Web site, those factors can be taken into account. |
| | Similarly, a Web site may prefer certain advertisers or advertisements or types of advertisements to others. The Web site can specify such inclinations, and they can be taken into account when the next ad is chosen for a particular user currently visiting that Web site. |
| | *See also* col. 7, lines 18–25: |
| | Users can optionally be given the ability to tell the system not to store their tracking data.  (If the user elected not to be tracked, the system would have to decide what ads to display based on other means, such as domain |

**Appendix B-14**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,918,014 (Robinson)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,918,014 (Robinson) |
|---|---|
|  | type [EDU, NET, etc.], browser and computer types, demographic data that had been obtained, etc.)<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 17* |  |
| [17a] An apparatus for dynamically forming a customized web page for a first type network node at a second type network node, comprising: | Robinson discloses an apparatus for dynamically forming a customized web page for a first type network node at a second type network node.<br><br>*See* claim limitation [1a].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [17b] means for forming at least a page file for the first type network node; | Robinson discloses means for forming at least a page file for the first type network node.<br><br>*See* claim limitation [1b].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [17c] means for forming at least a page file for the second type network node; | Robinson discloses means for forming at least a page file for the second type network node.<br><br>*See* claim limitation [1c].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill |

**Appendix B-14**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,918,014 (Robinson)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,918,014 (Robinson) |
|---|---|
|  | and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [17d] means for receiving a service request from the first type network node; | Robinson discloses means for receiving a service request from the first type network node.<br><br>*See* claim limitation [1d].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [17e] means for identifying the first type network node based on the service request; and | Robinson discloses means for identifying the first type network node based on the service request.<br><br>*See* claim limitation [1e].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [17f] means for forming a customized page file formed for the first type network node by including the page file formed for the first type network node within the page file for the second type network node. | Robinson discloses means for forming a customized page file formed for the first type network node by including the page file formed for the first type network node within the page file for the second type network node.<br><br>*See* claim limitation [1f].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 18* | |
| [18] The apparatus of claim 17, wherein the first type | Robinson discloses that the first type network node is an ISP node, and the second type network node is |

**Appendix B-14**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,918,014 (Robinson)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,918,014 (Robinson) |
|---|---|
| network node is an ISP node, and the second type network node is an ICP node. | an ICP node.<br><br>*See* claim limitation [2].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 19* | |
| [19] The apparatus of claim 17, wherein the first type network node is an organization node, and the second type network node is an ICP node. | Robinson discloses that the first type network node is an organization node, and the second type network node is an ICP node.<br><br>*See* claim limitation [3].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 20* | |
| [20] The apparatus of claim 17, wherein the customized page file includes customized graphics, sounds, applets, links, and text. | Robinson discloses that the customized page file includes customized graphics, sounds, applets, links, and text.<br><br>*See* claim limitation [4].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 21* | |

**Appendix B-14**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,918,014 (Robinson)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,918,014 (Robinson) |
|---|---|
| [21] The apparatus of claim 17, wherein the customized page file includes customized advertisements. | Robinson discloses that the customized page file includes customized advertisements.<br><br>*See* claim limitation [5].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 22* | |
| [22a] An apparatus for providing web page customization service to a plurality of first type network nodes at a second type network node, comprising: | Robinson discloses an apparatus for providing web page customization service to a plurality of first type network nodes at a second type network node.<br><br>*See* claim limitation [7a].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [22b] means for forming at least a page file for each of the first type network nodes; | Robinson discloses means for forming at least a page file for each of the first type network nodes.<br><br>*See* claim limitation [7b].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [22c] means for forming at least a page file for the second type network node; | Robinson discloses means for forming at least a page file for the second type network node.<br><br>*See* claim limitation [7c].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it |

**Appendix B-14**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,918,014 (Robinson)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,918,014 (Robinson) |
|---|---|
| | would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter.  *See* Appendix C. |
| [22d] means for receiving a service request from one of the first type network nodes; | Robinson discloses means for receiving a service request from one of the first type network nodes.<br><br>*See* claim limitation [7d].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter.  *See* Appendix C. |
| [22e] means for determining whether the first type network node participates in the web page customization service; | Robinson discloses means for determining whether the first type network node participates in the web page customization service.<br><br>*See* claim limitation [7e].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [22f] means for forming a customized page file for the service request by including the page file formed for the first type network node within the page file formed for the second type network node, if the first type network node participates in the web page customization | Robinson discloses means for forming a customized page file for the service request by including the page file formed for the first type network node within the page file formed for the second type network node, if the first type network node participates in the web page customization service.<br><br>*See* claim limitation [7f].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter.  *See* Appendix C. |

**Appendix B-14**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,918,014 (Robinson)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,918,014 (Robinson) |
|---|---|
| service; and | |
| [22g] means for forming a page file for the service request by using the page file formed for the second type network node, if the first type network node does not participate in the web page customization service. | To the extent it is found that Robinson does not disclose this feature expressly or inherently, it would have been obvious to combine Robinson with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. <br><br> *See* claim limitation [7g]. <br><br> To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 23* | |
| [23] The apparatus of claim 22, wherein the first type network nodes are ISP nodes, and the second type network node is an ICP node. | Robinson discloses that the first type network nodes are ISP nodes, and the second type network node is an ICP node. <br><br> *See* claim limitation [8]. <br><br> To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 24* | |
| [24] The apparatus of claim 22, wherein the first type network nodes are organization nodes, and the second type network node is | Robinson discloses that the first type network nodes are organization nodes, and the second type network node is an ICP node. <br><br> *See* claim limitation [9]. <br><br> To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill |

**Appendix B-14**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,918,014 (Robinson)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,918,014 (Robinson) |
|---|---|
| an ICP node. | and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 25* | |
| [25] The apparatus of claim 22, wherein the customized page file includes customized graphics, sounds, applets, links, and text. | Robinson discloses that the customized page file includes customized graphics, sounds, applets, links, and text.<br><br>*See* claim limitation [10].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 26* | |
| [26] The apparatus of claim 25, wherein the customized page file includes customized advertisements. | Robinson discloses that the customized page file includes customized advertisements.<br><br>*See* claim limitation [11]. |
| *Claim 27* | |
| [27a] An apparatus for providing web page customization service to a plurality of first type network nodes at a second type network node, comprising: | Robinson discloses an apparatus for providing web page customization service to a plurality of first type network nodes at a second type network node.<br><br>*See* claim limitation [13a].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |

**Appendix B-14**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,918,014 (Robinson)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,918,014 (Robinson) |
|---|---|
| [27b] means for forming a plurality of advertisements for the first type network nodes; | Robinson discloses means for forming a plurality of advertisements for the first type network nodes.<br><br>*See* claim limitation [13b].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [27c] means for forming at least a page file for the second type network node; | Robinson discloses means for forming at least a page file for the second type network node.<br><br>*See* claim limitation [13c].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [27d] means for receiving a service request from one of the first type network nodes; | Robinson discloses means for receiving a service request from one of the first type network nodes.<br><br>*See* claim limitation [13d].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [27e] means for identifying advertisements for the first type network node; and | Robinson discloses means for identifying advertisements for the first type network node.<br><br>*See* claim limitation [13e].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |

**Appendix B-14**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,918,014 (Robinson)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,918,014 (Robinson) |
|---|---|
| [27f] means for forming a customized page file for the first type network node by including the identified advertisements within the page file formed for the second type network node. | Robinson discloses means for forming a customized page file for the first type network node by including the identified advertisements within the page file formed for the second type network node.<br><br>*See* claim limitation [13f].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 28* | |
| [28] The apparatus of claim 27, wherein the first type network nodes are ISP nodes, and the second type network node is an ICP node. | Robinson discloses that the first type network nodes are ISP nodes, and the second type network node is an ICP node.<br><br>*See* claim limitation [14].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 29* | |
| [29] The apparatus of claim 27, wherein the first type network nodes are organization nodes, and the second type network node is an ICP node. | Robinson discloses that the first type network nodes are organization nodes, and the second type network node is an ICP node.<br><br>*See* claim limitation [15].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |

**Appendix B-14**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,918,014 (Robinson)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,918,014 (Robinson) |
|---|---|
| *Claim 30* | |
| [30] The apparatus of claim 27, wherein the identified advertisements do not cause negative impact on the owner of the first type network node. | Robinson discloses that the identified advertisements do not cause negative impact on the owner of the first type network node.<br><br>*See* claim limitation [16].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |

**Appendix B-15**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,933,811 (Angles '811)**

U.S. Patent No. 5,933,811 to Angles et al. ("Angles '811") is prior art to U.S. Patent No. 6,442,577 ("the '577 patent") under 35 U.S.C. 102(e) because it issued from a U.S. patent application filed on Aug. 20, 1996, which is prior to the Nov. 3, 1998 filing date of the '577 patent.

As detailed in this chart, Angles '811 anticipates at least claims 1–30 of the '577 patent. In addition or in the alternative, claims 1–30 of the '577 patent are obvious over Angles '811 in view of the knowledge of a person of ordinary skill and/or one or more other references, as detailed in Appendix C.

This chart is based in whole or in part on the present understanding of positions taken by PageMelding regarding the coverage, scope and construction of the asserted claims to the extent those positions can be deduced from PageMelding's contentions pursuant to Patent Local Rule 3-1 served on August 3, 2012. Nothing herein is an admission that PageMelding's infringement contentions are correct, an admission that Plaintiff's apparent claim constructions are correct, or an admission that ESPN's technology infringes any asserted claim.

**Appendix B-15**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,933,811 (Angles '811)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,933,811 (Angles '811) |
|---|---|
| *Claim 1* | |
| [1a] A method for dynamically forming customized web pages for a first type network node at a second type network node, comprising the steps of: | Angles '811 discloses a method for dynamically forming customized web pages for a first type network node at a second type network node. To the extent it is found that Angles '811 does not disclose this feature expressly or inherently, it would have been obvious to combine Angles '811 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. <br><br> *See* Abstract. <br> The present invention is a system and method for delivering customized electronic advertisements in an interactive communication system. The customized advertisements are selected based on consumer profiles and are then integrated with offerings maintained by different content providers. The preferred interactive communication system interconnects multiple consumer computers, multiple content provider computers and multiple Internet provider computers with an advertisement provider computer. Whenever a consumer directs one of the consumer computers to access an offering existing in one of the content provider computers, an advertising request is sent to the advertisement provider computer. Upon receiving the advertising request, the advertising provider computer generates a custom advertisement based on the consumer's profile. The custom advertisement is then combined with the offering from the content provider computer and displayed to the consumer. The advertisement provider computer also credits a consumer account, a content provider account and an internet provider account each time a consumer views a custom advertisement. Furthermore, the advertisement provider computer tracks consumer responses to the customized advertisements. <br><br> *See also* col. 14, lines 16–26. <br> Thus, when a consumer registers with the advertisement provider computer 18, the registration module 60 displays a HTML document which prompts the consumer to enter demographic data. The demographic data can contain a wide variety of information, including, but not limited to, age, sex, income, career, interests, hobbies, consumer preferences, the account number of the consumer's Internet provider, other account information, etc. Once the consumer enters the demographic data, the registration module 60 stores the demographic data as a profile in the registration database 68. |

**Appendix B-15**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,933,811 (Angles '811)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,933,811 (Angles '811) |
|---|---|
| | *See also* Figs. 1–11 and associated text. |
| | *See also* claim limitations [1a] through [1f]. |
| [1b] forming at least a page file for the first type network node; | Angles '811 discloses forming at least a page file for the first type network node. To the extent it is found that Angles '811 does not disclose this feature expressly or inherently, it would have been obvious to combine Angles '811 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.

*See* Abstract.
The present invention is a system and method for delivering customized electronic advertisements in an interactive communication system. The customized advertisements are selected based on consumer profiles and are then integrated with offerings maintained by different content providers. The preferred interactive communication system interconnects multiple consumer computers, multiple content provider computers and multiple Internet provider computers with an advertisement provider computer. Whenever a consumer directs one of the consumer computers to access an offering existing in one of the content provider computers, an advertising request is sent to the advertisement provider computer. Upon receiving the advertising request, the advertising provider computer generates a custom advertisement based on the consumer's profile. The custom advertisement is then combined with the offering from the content provider computer and displayed to the consumer. The advertisement provider computer also credits a consumer account, a content provider account and an internet provider account each time a consumer views a custom advertisement. Furthermore, the advertisement provider computer tracks consumer responses to the customized advertisements.

*See also* col. 2, line 59 to col. 3, line 5.
In the preferred embodiment, the invention is directed to delivering custom advertisements to consumers who use their computers to view information offered by different content providers existing on the Internet. Preferably, when a consumer accesses a content provider, the content provider transmits an electronic document to the consumer. Embedded within the electronic document is a [sic] advertisement request. When the consumer's computer displays the electronic document, the |

**Appendix B-15**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,933,811 (Angles '811)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,933,811 (Angles '811) |
|---|---|
| | embedded advertisement request directs the consumer computer to communicate with an advertisement provider. In response, the advertisement provider provides a customized advertisement. The advertisement provider then tracks the consumer's response to the customized advertisement. *See also* col. 7, lines 53–60. Once the consumer computer 12 establishes a communication link with the content provider computer 14, the content provider computer 14 transfers an electronic page 32 to the consumer computer 12. The preferred electronic page 32 contains an embedded advertisement request 26. *See also* col. 8, lines 56–61. Proceeding to state 310, the advertisement provider computer 18 uses the consumer member code 22 to access the consumer's profile. The advertisement provider computer 18 selects an appropriate advertisement based on the consumer's profile and then sends the customized advertisement 30 to the consumer computer 12. *See also* col. 9, line 35 to col. 10, line 7. In addition to the Internet 33, the communication medium 20 may also contain Internet providers 34. An Internet provider 34 is a computer system which provides Internet 33 access to the consumer computers. Examples of Internet providers 34 include American On-line, the Microsoft Network, Prodigy, Compuserve, and Network Intensive to name a few. Many users pay monthly access fees to the Internet providers 34 because the Internet providers 34 provide local telephone connections, a variety of help services and an organized format for accessing the Internet 33. The Internet providers 34 are optional, and in some cases, the consumer computers 12 may have direct access to the Internet 33. For example, the consumer computers 12 may be connected to a local area network which in turn is directly connected to the Internet 33. It should be understood that the local area network may also connect to the Internet 33 via a conventional telephone line; however, since local area networks typically have a higher volume of data traffic, it is advantageous to include a high-speed connection to support the volume of information which the local area network will transfer to and from the Internet 33. As further depicted in FIG. 2, an Internet provider 34 connects a consumer computer 12 to the |

**Appendix B-15**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,933,811 (Angles '811)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,933,811 (Angles '811) |
|---|---|
| | Internet 33. Typically, the Internet provider 34 is connected to an Internet routing hub via a high speed communications link. The communication links, in turn, connect to the content provider computers. When a consumer desires to access information available on the Internet 33 via an Internet provider 34, the consumer initiates a connection with the Internet provider 34 from his or her consumer computer 12. For example, the consumer invokes a browser which executes on the consumer computer 12. The browser, in turn, establishes a communication link directly with the Internet 33 or with the Internet provider 34 via a communications link. Once connected to the Internet provider 34, the consumer can direct the browser to access information provided by one of the content provider computers 14. The Internet provider 34 then communicates with the Internet 33 to establish a communications link between the consumer computer 12 and the desired content provider computer 14.<br><br>*See also* Figs. 1–11 and associated text. |
| [1c] forming at least a page file for the second type network node; | Angles '811 discloses forming at least a page file for the second type network node. To the extent it is found that Angles '811 does not disclose this feature expressly or inherently, it would have been obvious to combine Angles '811 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* Abstract.<br>The present invention is a system and method for delivering customized electronic advertisements in an interactive communication system. The customized advertisements are selected based on consumer profiles and are then integrated with offerings maintained by different content providers. The preferred interactive communication system interconnects multiple consumer computers, multiple content provider computers and multiple Internet provider computers with an advertisement provider computer. Whenever a consumer directs one of the consumer computers to access an offering existing in one of the content provider computers, an advertising request is sent to the advertisement provider computer. Upon receiving the advertising request, the advertising provider computer generates a custom advertisement based on the consumer's profile. The custom advertisement is then combined with the offering from the content provider computer and displayed to the consumer. The |

**Appendix B-15**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,933,811 (Angles '811)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,933,811 (Angles '811) |
|---|---|
| | advertisement provider computer also credits a consumer account, a content provider account and an internet provider account each time a consumer views a custom advertisement. Furthermore, the advertisement provider computer tracks consumer responses to the customized advertisements. |
| | *See also* col. 2, line 59 to col. 3, line 5. |
| | In the preferred embodiment, the invention is directed to delivering custom advertisements to consumers who use their computers to view information offered by different content providers existing on the Internet. Preferably, when a consumer accesses a content provider, the content provider transmits an electronic document to the consumer. Embedded within the electronic document is a advertisement request. When the consumer's computer displays the electronic document, the embedded advertisement request directs the consumer computer to communicate with an advertisement provider. In response, the advertisement provider provides a customized advertisement. The advertisement provider then tracks the consumer's response to the customized advertisement. |
| | *See also* col. 10, lines 8–18. |
| | One popular part of the Internet 33 is the World Wide Web. The World Wide Web contains different computers which store HTML documents capable of displaying graphical and textual information. The content provider computers 14 which provide information on the World Wide Web are typically called "websites." A website is defined by an Internet address which has an associated electronic page. Generally, an electronic page is a document which organizes the presentation of text, graphical images, audio and video. As discussed above, these websites are operated by a wide variety of content provider computers 14. |
| | *See also* Figs. 1–11 and associated text. |
| [1d] receiving a service request from the first type network node; | Angles '811 discloses receiving a service request from the first type network node. To the extent it is found that Angles '811 does not disclose this feature expressly or inherently, it would have been obvious to combine Angles '811 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |

**Appendix B-15**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,933,811 (Angles '811)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,933,811 (Angles '811) |
|---|---|
| | *See* Abstract.<br>The present invention is a system and method for delivering customized electronic advertisements in an interactive communication system. The customized advertisements are selected based on consumer profiles and are then integrated with offerings maintained by different content providers. The preferred interactive communication system interconnects multiple consumer computers, multiple content provider computers and multiple Internet provider computers with an advertisement provider computer. Whenever a consumer directs one of the consumer computers to access an offering existing in one of the content provider computers, an advertising request is sent to the advertisement provider computer. Upon receiving the advertising request, the advertising provider computer generates a custom advertisement based on the consumer's profile. The custom advertisement is then combined with the offering from the content provider computer and displayed to the consumer. The advertisement provider computer also credits a consumer account, a content provider account and an internet provider account each time a consumer views a custom advertisement. Furthermore, the advertisement provider computer tracks consumer responses to the customized advertisements.<br><br>*See also* col. 8, lines 33–42.<br>Referring to FIG. 3, an overview of the process of a consumer requesting an electronic document is shown. At start state 300 the process initializes and moves to state 302 wherein the consumer computer 12 requests an electronic page 32 from the content provider computer 14.<br><br>As discussed in more detail below, the consumer computer 12 uses internet browsing software (not shown) to access the content provider's URL address. The consumer browser software then accesses an electronic document 32 stored on the content provider computer 14.<br><br>*See also* col. 9, line 35 to col. 10, line 7.<br>In addition to the Internet 33, the communication medium 20 may also contain Internet providers 34. An Internet provider 34 is a computer system which provides Internet 33 access to the consumer computers. Examples of Internet providers 34 include American On-line, the Microsoft Network, Prodigy, Compuserve, and Network Intensive to name a few. Many users pay monthly access fees to the Internet providers 34 because the Internet providers 34 provide local telephone connections, a |

**Appendix B-15**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,933,811 (Angles '811)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,933,811 (Angles '811) |
|---|---|
| | variety of help services and an organized format for accessing the Internet 33. The Internet providers 34 are optional, and in some cases, the consumer computers 12 may have direct access to the Internet 33. For example, the consumer computers 12 may be connected to a local area network which in turn is directly connected to the Internet 33. It should be understood that the local area network may also connect to the Internet 33 via a conventional telephone line; however, since local area networks typically have a higher volume of data traffic, it is advantageous to include a high-speed connection to support the volume of information which the local area network will transfer to and from the Internet 33. As further depicted in FIG. 2, an Internet provider 34 connects a consumer computer 12 to the Internet 33. Typically, the Internet provider 34 is connected to an Internet routing hub via a high speed communications link. The communication links, in turn, connect to the content provider computers. When a consumer desires to access information available on the Internet 33 via an Internet provider 34, the consumer initiates a connection with the Internet provider 34 from his or her consumer computer 12. For example, the consumer invokes a browser which executes on the consumer computer 12. |
| | The browser, in turn, establishes a communication link directly with the Internet 33 or with the Internet provider 34 via a communications link. Once connected to the Internet provider 34, the consumer can direct the browser to access information provided by one of the content provider computers 14. The Internet provider 34 then communicates with the Internet 33 to establish a communications link between the consumer computer 12 and the desired content provider computer 14. |
| | *See also* Figs. 1–11 and associated text. |
| [1e] identifying the first type network node based on the service request; and | Angles '811 discloses identifying the first type network node based on the service request. To the extent it is found that Angles '811 does not disclose this feature expressly or inherently, it would have been obvious to combine Angles '811 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| | *See* Abstract. |

**Appendix B-15**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,933,811 (Angles '811)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,933,811 (Angles '811) |
|---|---|
| | The present invention is a system and method for delivering customized electronic advertisements in an interactive communication system. The customized advertisements are selected based on consumer profiles and are then integrated with offerings maintained by different content providers. The preferred interactive communication system interconnects multiple consumer computers, multiple content provider computers and multiple Internet provider computers with an advertisement provider computer. Whenever a consumer directs one of the consumer computers to access an offering existing in one of the content provider computers, an advertising request is sent to the advertisement provider computer. Upon receiving the advertising request, the advertising provider computer generates a custom advertisement based on the consumer's profile. The custom advertisement is then combined with the offering from the content provider computer and displayed to the consumer. The advertisement provider computer also credits a consumer account, a content provider account and an internet provider account each time a consumer views a custom advertisement. Furthermore, the advertisement provider computer tracks consumer responses to the customized advertisements.<br><br>*See also* col. 8, lines 8–19.<br>In addition, the consumer computer 12 contains a consumer member code 22 which uniquely identifies the consumer. The advertisement provider computer 18 obtains the consumer member code 22 and uses the consumer's member code 22 to access the consumer's profile in a demographic database (not shown). Based on the consumer's profile, the advertisement provider computer 18 selects an appropriate customized advertisement 30. The advertisement provider computer 18 then sends the customized advertisement 30 to the consumer computer 12. As discussed in more detail below, the consumer computer 12 merges the electronic page 32 and customized advertisement 30.<br><br>*See also* col. 10, line 60 to col. 11, line 4.<br>The consumer member code module 22 stores a code which uniquely identifies each consumer. In the preferred embodiment, the consumer member code module 22, which is hereinafter referred to as the consumer member code 22, is a set of alpha-numeric characters. The consumer member code 22, as is discussed in more detail below, is assigned when the consumer registers with the advertisement provider computer 18. Thus, when a consumer registers with the advertisement provider computer 18, the consumer is assigned a unique member code. A copy of the consumer member code 22 is then |

Appendix B-15

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,933,811 (Angles '811)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,933,811 (Angles '811) |
|---|---|
| | stored on the consumer computer 12 in a "cookie."<br><br>*See also* col. 16, lines 26–37.<br>Furthermore, because the preferred embodiment also is capable of storing a consumer's Internet provider account number in the registration database 68, the preferred embodiment can monitor the number of advertisements viewed by consumers associated with a particular Internet provider 34. Accordingly, the invention can pay an Internet provider 34 based on the number of advertisements viewed by its consumers. The Internet providers 34 can then use this advertising revenue to reduce consumer access fees. Alternatively, the preferred embodiment can pay a consumer for viewing advertisements by crediting a consumer's Internet provider account.<br><br>*See also* col. 17, lines 3–10.<br>Upon establishing a link with the registration module 60, the registration module 60 displays a HTML document which invites the consumer to input demographic information. Proceeding to state 504, the consumer enters information which includes, but is not limited to, age, sex, income, career, interests, hobbies, consumer preferences, the account number of the consumer's Internet provider 34, other account information, etc.<br><br>*See also* Figs. 1–11 and associated text.<br><br>*See also* claim limitation [1d]. |
| [1f] forming a customized page file formed for the first type network node by including the page file formed for the first type network node within the page file for the second type | Angles '811 discloses forming a customized page file formed for the first type network node by including the page file formed for the first type network node within the page file for the second type network node. To the extent it is found that Angles '811 does not disclose this feature expressly or inherently, it would have been obvious to combine Angles '811 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* Abstract.<br>The present invention is a system and method for delivering customized electronic advertisements in |

- 10 -

Appendix B-15

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,933,811 (Angles '811)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,933,811 (Angles '811) |
|---|---|
| network node. | an interactive communication system. The customized advertisements are selected based on consumer profiles and are then integrated with offerings maintained by different content providers. The preferred interactive communication system interconnects multiple consumer computers, multiple content provider computers and multiple Internet provider computers with an advertisement provider computer. Whenever a consumer directs one of the consumer computers to access an offering existing in one of the content provider computers, an advertising request is sent to the advertisement provider computer. Upon receiving the advertising request, the advertising provider computer generates a custom advertisement based on the consumer's profile. The custom advertisement is then combined with the offering from the content provider computer and displayed to the consumer. The advertisement provider computer also credits a consumer account, a content provider account and an internet provider account each time a consumer views a custom advertisement. Furthermore, the advertisement provider computer tracks consumer responses to the customized advertisements.<br><br>*See also* col. 2, line 59 to col. 3, line 5.<br>In the preferred embodiment, the invention is directed to delivering custom advertisements to consumers who use their computers to view information offered by different content providers existing on the Internet. Preferably, when a consumer accesses a content provider, the content provider transmits an electronic document to the consumer. Embedded within the electronic document is a advertisement request. When the consumer's computer displays the electronic document, the embedded advertisement request directs the consumer computer to communicate with an advertisement provider. In response, the advertisement provider provides a customized advertisement. The advertisement provider then tracks the consumer's response to the customized advertisement.<br><br>*See also* col. 3, lines 6–28.<br>The advertisement provider operates a computer which is also connected to the Internet. The advertisement provider's computer stores demographic information about consumers, and sends customized advertisements to the consumers based on the consumers demographic profile and tracks consumer responses to the customized advertisements. For example, when accessing a content provider's website, a consumer with a demographic profile indicating an interest in farming would be sent customized advertisements for farm products by the advertisement provider. Customer requests |

- 11 -

**Appendix B-15**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,933,811 (Angles '811)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,933,811 (Angles '811) |
|---|---|
| | for more information about the advertised farm products are also monitored. A consumer who wishes to receive customized advertisements first registers with the advertisement provider by entering pertinent demographic information into the advertisement provider's demographic database. The advertisement provider then retains a demographic profile of the consumer. In return, the advertisement provider assigns the consumer a unique member code. In an alternate embodiment, the consumer is sent unique software which enhances the consumer's Internet browser so that custom advertisements can be merged with electronic documents obtained from the content provider. <br><br> *See also* col. 5, lines 28–37. <br> The present invention is an apparatus and method for providing customized advertisements to consumers. In a preferred embodiment, the customized advertisements are generated by an advertisement provider computer whenever a consumer accesses a content provider website. Although the present invention is described herein with reference to a preferred interactive communications system, the invention is not so limited, and can be used in a variety of other contexts in which it is desirable to provide customized advertisements to consumers. <br><br> *See also* col. 8, lines 62–67. <br> Proceeding to state 312, the process combines the electronic page 32 from the content provider computer 14 and the customized advertisement 30 from the advertisement provider computer 18 into a displayable page. Once the combined page has been displayed to the consumer, the process ends at end state 314. <br><br> *See also* col. 21, lines 34–60 <br> FIG. 9 shows an alternative embodiment of the present invention wherein the advertisement provider computer 18 sends the customized advertisement 30 to the content provider computer 14. Upon receiving the customized advertisement, the content provider incorporates the customized advertisement 30 into an electronic page 32. The content provider computer 14 then forwards the electronic page 32, combined with the customized advertisement 30 to the consumer computer 12. The consumer computer 12 then displays the electronic page 32 and customized advertisement 30 to the consumer. Because transferring the customized advertisement 30 from the advertisement provider |

**Appendix B-15**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,933,811 (Angles '811)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,933,811 (Angles '811) |
|---|---|
| | computer 18 to the content provider computer 14 happens prior to sending the electronic page 32 to the consumer, the electronic page 32 appears to the consumer like all other electronic pages 32 on the Internet 33, except that it contains the customized advertisement 30 which has been pre-selected for that consumer.  The embodiment shown in FIG. 9 allows the customized advertisements 30 to be incorporated directly into the content provider's offerings.  Thus, in addition to integrating the customized advertisements 30 in to an electronic page 32, the content provider computer 14 can integrate the customized advertisements 30 into offerings such as on-line games, video programming, internet radio, virtual reality environments and the like.

*See also* Figs. 1–11 and associated text.

*See also* claim limitations [1b] and [1c]. |
| *Claim 2* | |
| [2] The method of claim 1, wherein the first type network node is an ISP node, and the second type network node is an ICP node. | Angles '811 discloses that the first type network node is an ISP node, and the second type network node is an ICP node.  To the extent it is found that Angles '811 does not disclose this feature expressly or inherently, it would have been obvious to combine Angles '811 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter.  *See* Appendix C.

*See* Abstract.
The present invention is a system and method for delivering customized electronic advertisements in an interactive communication system.  The customized advertisements are selected based on consumer profiles and are then integrated with offerings maintained by different content providers.  The preferred interactive communication system interconnects multiple consumer computers, multiple content provider computers and multiple Internet provider computers with an advertisement provider computer.  Whenever a consumer directs one of the consumer computers to access an offering existing in one of the content provider computers, an advertising request is sent to the advertisement provider computer.  Upon receiving the advertising request, the advertising provider computer generates a custom advertisement based on the consumer's profile.  The custom advertisement is then combined with the offering from the content provider computer and displayed to the consumer.  The |

**Appendix B-15**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,933,811 (Angles '811)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,933,811 (Angles '811) |
|---|---|
| | advertisement provider computer also credits a consumer account, a content provider account and an internet provider account each time a consumer views a custom advertisement. Furthermore, the advertisement provider computer tracks consumer responses to the customized advertisements.<br><br>*See also* col. 4, lines 27–47.<br>Another aspect of the invention relates to the addition of a fourth category of entities--the Internet providers. An Internet provider is a service which provides Internet access to consumers. Examples of Internet providers include American On-line, the Microsoft Network, Prodigy, Compuserve, and Network Intensive. Many users pay monthly access fees to the Internet providers to obtain local telephone connections, a variety of help services and an organized format for accessing the Internet. When a consumer registers with the advertisement provider, this aspect of the present invention obtains information about the consumer's Internet provider and stores this information in the demographic profile. The system of the present invention can then monitor the number of advertisements viewed by consumers associated with a particular Internet provider. Accordingly, the system of the present invention can pay an Internet provider based on the number of advertisements viewed by its consumers. The Internet providers can then use this advertising revenue to reduce consumer access fees.<br><br>*See also* col. 9, line 35 to col. 10, line 7.<br>In addition to the Internet 33, the communication medium 20 may also contain Internet providers 34. An Internet provider 34 is a computer system which provides Internet 33 access to the consumer computers. Examples of Internet providers 34 include American On-line, the Microsoft Network, Prodigy, Compuserve, and Network Intensive to name a few. Many users pay monthly access fees to the Internet providers 34 because the Internet providers 34 provide local telephone connections, a variety of help services and an organized format for accessing the Internet 33. The Internet providers 34 are optional, and in some cases, the consumer computers 12 may have direct access to the Internet 33. For example, the consumer computers 12 may be connected to a local area network which in turn is directly connected to the Internet 33. It should be understood that the local area network may also connect to the Internet 33 via a conventional telephone line; however, since local area networks typically have a higher volume of data traffic, it is advantageous to include a high-speed connection to |

- 14 -

**Appendix B-15**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,933,811 (Angles '811)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,933,811 (Angles '811) |
|---|---|
| | support the volume of information which the local area network will transfer to and from the Internet 33. As further depicted in FIG. 2, an Internet provider 34 connects a consumer computer 12 to the Internet 33. Typically, the Internet provider 34 is connected to an Internet routing hub via a high speed communications link. The communication links, in turn, connect to the content provider computers. When a consumer desires to access information available on the Internet 33 via an Internet provider 34, the consumer initiates a connection with the Internet provider 34 from his or her consumer computer 12. For example, the consumer invokes a browser which executes on the consumer computer 12. The browser, in turn, establishes a communication link directly with the Internet 33 or with the Internet provider 34 via a communications link. Once connected to the Internet provider 34, the consumer can direct the browser to access information provided by one of the content provider computers 14. The Internet provider 34 then communicates with the Internet 33 to establish a communications link between the consumer computer 12 and the desired content provider computer 14.<br><br>*See also* col. 10, lines 8–18.<br>One popular part of the Internet 33 is the World Wide Web. The World Wide Web contains different computers which store HTML documents capable of displaying graphical and textual information. The content provider computers 14 which provide information on the World Wide Web are typically called "websites." A website is defined by an Internet address which has an associated electronic page. Generally, an electronic page is a document which organizes the presentation of text, graphical images, audio and video. As discussed above, these websites are operated by a wide variety of content provider computers 14.<br><br>*See also* col. 21, line 34–60.<br>FIG. 9 shows an alternative embodiment of the present invention wherein the advertisement provider computer 18 sends the customized advertisement 30 to the content provider computer 14. Upon receiving the customized advertisement, the content provider incorporates the customized advertisement 30 into an electronic page 32. The content provider computer 14 then forwards the electronic page 32, combined with the customized advertisement 30 to the consumer computer 12. The consumer computer 12 then displays the electronic page 32 and customized advertisement 30 to |

- 15 -

**Appendix B-15**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,933,811 (Angles '811)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,933,811 (Angles '811) |
|---|---|
| | the consumer. Because transferring the customized advertisement 30 from the advertisement provider computer 18 to the content provider computer 14 happens prior to sending the electronic page 32 to the consumer, the electronic page 32 appears to the consumer like all other electronic pages 32 on the Internet 33, except that it contains the customized advertisement 30 which has been pre-selected for that consumer. The embodiment shown in FIG. 9 allows the customized advertisements 30 to be incorporated directly into the content provider's offerings. Thus, in addition to integrating the customized advertisements 30 in to an electronic page 32, the content provider computer 14 can integrate the customized advertisements 30 into offerings such as on-line games, video programming, internet radio, virtual reality environments and the like.

*See also* col. 1, lines 33–44.
One popular part of the Internet is the World Wide Web. The World Wide Web contains computers which display graphical and textual information. Computers which provide information on the World Wide Web are typically called "websites." A website is defined by an Internet address which has an associated electronic page, often called a "home page." Generally, a home page is an electronic document which organizes the presentation of text, graphical images, audio and video into a desired display. These websites are operated by a wide variety of entities which are typically called "content providers."

*See also* col. 1, lines 59–62.
In this setting, a content provider is an individual or company that places information (content) on the Internet so that it can be accessed by others.

*See also* Figs. 1–11 and associated text.

*See also* claim limitation [1a]. |
| *Claim 3* | |
| [3] The method of claim 1, wherein the first type | Angles '811 discloses that the first type network node is an organization node, and the second type network node is an ICP node. To the extent it is found that Angles '811 does not disclose this feature |

- 16 -

Appendix B-15

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,933,811 (Angles '811)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,933,811 (Angles '811) |
|---|---|
| network node is an organization node, and the second type network node is an ICP node. | expressly or inherently, it would have been obvious to combine Angles '811 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* Abstract.<br>The present invention is a system and method for delivering customized electronic advertisements in an interactive communication system. The customized advertisements are selected based on consumer profiles and are then integrated with offerings maintained by different content providers. The preferred interactive communication system interconnects multiple consumer computers, multiple content provider computers and multiple Internet provider computers with an advertisement provider computer. Whenever a consumer directs one of the consumer computers to access an offering existing in one of the content provider computers, an advertising request is sent to the advertisement provider computer. Upon receiving the advertising request, the advertising provider computer generates a custom advertisement based on the consumer's profile. The custom advertisement is then combined with the offering from the content provider computer and displayed to the consumer. The advertisement provider computer also credits a consumer account, a content provider account and an internet provider account each time a consumer views a custom advertisement. Furthermore, the advertisement provider computer tracks consumer responses to the customized advertisements.<br><br>*See also* col. 1, lines 33–44.<br>One popular part of the Internet is the World Wide Web.<br>The World Wide Web contains computers which display graphical and textual information. Computers which provide information on the World Wide Web are typically called "websites." A website is defined by an Internet address which has an associated electronic page, often called a "home page." Generally, a home page is an electronic document which organizes the presentation of text, graphical images, audio and video into a desired display. These websites are operated by a wide variety of entities which are typically called "content providers."<br><br>*See also* col. 1, lines 59–62.<br>In this setting, a content provider is an individual or company that places information (content) on the |

**Appendix B-15**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,933,811 (Angles '811)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,933,811 (Angles '811) |
|---|---|
| | Internet so that it can be accessed by others.<br><br>*See also* col. 9, line 35 to col. 10, line 7.<br>In addition to the Internet 33, the communication medium 20 may also contain Internet providers 34. An Internet provider 34 is a computer system which provides Internet 33 access to the consumer computers. Examples of Internet providers 34 include American On-line, the Microsoft Network, Prodigy, Compuserve, and Network Intensive to name a few. Many users pay monthly access fees to the Internet providers 34 because the Internet providers 34 provide local telephone connections, a variety of help services and an organized format for accessing the Internet 33. The Internet providers 34 are optional, and in some cases, the consumer computers 12 may have direct access to the Internet 33. For example, the consumer computers 12 may be connected to a local area network which in turn is directly connected to the Internet 33. It should be understood that the local area network may also connect to the Internet 33 via a conventional telephone line; however, since local area networks typically have a higher volume of data traffic, it is advantageous to include a high-speed connection to support the volume of information which the local area network will transfer to and from the Internet 33. As further depicted in FIG. 2, an Internet provider 34 connects a consumer computer 12 to the Internet 33. Typically, the Internet provider 34 is connected to an Internet routing hub via a high speed communications link. The communication links, in turn, connect to the content provider computers. When a consumer desires to access information available on the Internet 33 via an Internet provider 34, the consumer initiates a connection with the Internet provider 34 from his or her consumer computer 12. For example, the consumer invokes a browser which executes on the consumer computer 12. The browser, in turn, establishes a communication link directly with the Internet 33 or with the Internet provider 34 via a communications link. Once connected to the Internet provider 34, the consumer can direct the browser to access information provided by one of the content provider computers 14. The Internet provider 34 then communicates with the Internet 33 to establish a communications link between the consumer computer 12 and the desired content provider computer 14.<br><br>*See also* col. 10, lines 8–18.<br>One popular part of the Internet 33 is the World Wide Web. The World Wide Web contains different |

- 18 -

Appendix B-15

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,933,811 (Angles '811)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,933,811 (Angles '811) |
|---|---|
| | computers which store HTML documents capable of displaying graphical and textual information. The content provider computers 14 which provide information on the World Wide Web are typically called "websites." A website is defined by an Internet address which has an associated electronic page. Generally, an electronic page is a document which organizes the presentation of text, graphical images, audio and video. As discussed above, these websites are operated by a wide variety of content provider computers 14.<br><br>*See also* col. 21, lines 34–60.<br>FIG. 9 shows an alternative embodiment of the present invention wherein the advertisement provider computer 18 sends the customized advertisement 30 to the content provider computer 14. Upon receiving the customized advertisement, the content provider incorporates the customized advertisement 30 into an electronic page 32. The content provider computer 14 then forwards the electronic page 32, combined with the customized advertisement 30 to the consumer computer 12. The consumer computer 12 then displays the electronic page 32 and customized advertisement 30 to the consumer. Because transferring the customized advertisement 30 from the advertisement provider computer 18 to the content provider computer 14 happens prior to sending the electronic page 32 to the consumer, the electronic page 32 appears to the consumer like all other electronic pages 32 on the Internet 33, except that it contains the customized advertisement 30 which has been pre-selected for that consumer. The embodiment shown in FIG. 9 allows the customized advertisement 30 to be incorporated directly into the content provider's offerings. Thus, in addition to integrating the customized advertisements 30 in to an electronic page 32, the content provider computer 14 can integrate the customized advertisements 30 into offerings such as on-line games, video programming, internet radio, virtual reality environments and the like.<br><br>*See also* Figs. 1–11 and associated text.<br><br>*See also* claim limitation [1a]. |
| *Claim 4* | |
| [4] The method of claim 1, | Angles '811 discloses that the customized page file includes customized graphics, sounds, applets, |

**Appendix B-15**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,933,811 (Angles '811)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,933,811 (Angles '811) |
|---|---|
| wherein the customized page file includes customized graphics, sounds, applets, links, and text. | links, and text. To the extent it is found that Angles '811 does not disclose this feature expressly or inherently, it would have been obvious to combine Angles '811 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* col. 1, lines 33–44.<br>One popular part of the Internet is the World Wide Web. The World Wide Web contains computers which display graphical and textual information. Computers which provide information on the World Wide Web are typically called "websites." A website is defined by an Internet address which has an associated electronic page, often called a "home page." Generally, a home page is an electronic document which organizes the presentation of text, graphical images, audio and video into a desired display. These websites are operated by a wide variety of entities which are typically called "content providers."<br><br>*See also* col. 10, lines 8–18.<br>One popular part of the Internet 33 is the World Wide Web. The World Wide Web contains different computers which store HTML documents capable of displaying graphical and textual information. The content provider computers 14 which provide information on the World Wide Web are typically called "websites." A website is defined by an Internet address which has an associated electronic page. Generally, an electronic page is a document which organizes the presentation of text, graphical images, audio and video. As discussed above, these websites are operated by a wide variety of content provider computers 14.<br><br>*See also* col. 23, lines 16–24.<br>In other embodiments, the consumer control module 42 in the consumer computer 12 is adapted to receive a Java plug-in from the content provider computer 14 which creates a separate window which can display customized advertisements 30 on the consumer computer 12. The Java programming language is a robust, secure, architecture-neutral, portable, general-purpose programming language developed by Sun Microsystems. Java supports programming for the Internet 33 in the form of independent Java "applets." |

**Appendix B-15**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,933,811 (Angles '811)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,933,811 (Angles '811) |
|---|---|
| | *See also* claim limitation [1b]. |
| *Claim 5* | |
| [5] The method of claim 1, wherein the customized page file includes customized advertisements. | Angles '811 discloses that the customized page file includes customized advertisements. To the extent it is found that Angles '811 does not disclose this feature expressly or inherently, it would have been obvious to combine Angles '811 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* Abstract.<br>The present invention is a system and method for delivering customized electronic advertisements in an interactive communication system. The customized advertisements are selected based on consumer profiles and are then integrated with offerings maintained by different content providers. The preferred interactive communication system interconnects multiple consumer computers, multiple content provider computers and multiple Internet provider computers with an advertisement provider computer. Whenever a consumer directs one of the consumer computers to access an offering existing in one of the content provider computers, an advertising request is sent to the advertisement provider computer. Upon receiving the advertising request, the advertising provider computer generates a custom advertisement based on the consumer's profile. The custom advertisement is then combined with the offering from the content provider computer and displayed to the consumer. The advertisement provider computer also credits a consumer account, a content provider account and an internet provider account each time a consumer views a custom advertisement. Furthermore, the advertisement provider computer tracks consumer responses to the customized advertisements.<br><br>*See also* col. 2, line 59 to col. 3, line 5.<br>In the preferred embodiment, the invention is directed to delivering custom advertisements to consumers who use their computers to view information offered by different content providers existing on the Internet. Preferably, when a consumer accesses a content provider, the content provider transmits an electronic document to the consumer. Embedded within the electronic document is a advertisement request. When the consumer's computer displays the electronic document, the embedded advertisement request directs the consumer computer to communicate with an |

**Appendix B-15**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,933,811 (Angles '811)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,933,811 (Angles '811) |
|---|---|
| | advertisement provider. In response, the advertisement provider provides a customized advertisement. The advertisement provider then tracks the consumer's response to the customized advertisement. *See also* col. 5, lines 28–37. The present invention is an apparatus and method for providing customized advertisements to consumers. In a preferred embodiment, the customized advertisements are generated by an advertisement provider computer whenever a consumer accesses a content provider website. Although the present invention is described herein with reference to a preferred interactive communications system, the invention is not so limited, and can be used in a variety of other contexts in which it is desirable to provide customized advertisements to consumers. *See also* col. 8, lines 13–19. Based on the consumer's profile, the advertisement provider computer 18 selects an appropriate customized advertisement 30. The advertisement provider computer 18 then sends the customized advertisement 30 to the consumer computer 12. As discussed in more detail below, the consumer computer 12 merges the electronic page 32 and customized advertisement 30. *See also* col. 13, lines 20–25. The advertisement provider computer 18 shown in FIG. 4 maintains consumer information and generates customized advertisements 30. In the preferred embodiment, the advertisement provider computer 18 is a website connected to the World Wide Web. *See also* col. 15, lines 20–31. The advertising module 62 uses the consumer member code 22 to obtain a consumer profile from the registration database 68. As discussed in more detail below, the advertising module 62 then uses the consumer profile to select an appropriate advertisement from the advertisement database 70. In another embodiment, the advertising module 62 uses both the consumer profile and the content provider information to select an appropriate advertisement from the advertisement database 70. The advertising module 62 then sends a customized advertisement 30 directly to the consumer computer 12 |

**Appendix B-15**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,933,811 (Angles '811)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,933,811 (Angles '811) |
|---|---|
| | to be incorporated into an electronic page 32 from the content provider computer 14.<br><br>*See also* col. 20, lines 45–63.<br>In FIG. 8, a detailed flow chart of the operational states which occur during process 712 are shown. Beginning in a start state 712, the advertising module proceeds to state 800. In state 800, the advertising module 62 uses the consumer member code 22 to access the corresponding consumer preferences stored in the consumer's profile in the registration database 60. The advertising module 62 then processes the consumer preferences to determine the appropriate customized advertisement 30. In the preferred embodiment, the advertising module 62 uses well known advertising techniques to categorize the consumer into a particular demographic group based on the consumer's preferences. In another embodiment, the advertising module 62 identifies advertisements which correspond to specific preferences. In yet another embodiment, the advertising module 62 focuses on a subset of advertisements and then selects the most appropriate advertisement in the subset. In still other embodiments, the advertising module can be programmed to accommodate special sales and advertising promotions.<br><br>*See also* Figs. 1–11 and associated text.<br><br>*See also* claim limitation [1b]. |
| *Claim 6* | |
| [6a] The method of claim 1, wherein: the service request includes an IP address for identifying the first type network node, and | Angles '811 discloses that the service request includes an IP address for identifying the first type network node. To the extent it is found that Angles '811 does not disclose this feature expressly or inherently, it would have been obvious to combine Angles '811 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* col. 7, lines 10–42.<br>Transmission Control Protocol/Internet Protocol (TCP/IP). A standard Internet protocol (or set of protocols) which specifies how two computers exchange data over the Internet. TCP/IP handles issues such as packetization, packet addressing, handshaking and error correction. For more information on |

**Appendix B-15**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,933,811 (Angles '811)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,933,811 (Angles '811) |
|---|---|
|  | TCP/IP, see Volumes I, II and III of Comer and Stevens, Internetworking with TCP/IP, Prentice Hall, Inc., ISBNs 0-13-468505-9 (vol. I), 0-13-125527-4 (vol. II), and 0-13-474222-2 (vol. III).<br><br>Uniform Resource Locator (URL). A unique address which fully specifies the location of a file or other resource on the Internet. The general format of a URL is protocol://machine address:port/path/filename. The port specification is optional, and if none is entered by the user, the Web browser defaults to the standard port for whatever service is specified as the protocol. For example, if HTTP is specified as the protocol, the Web browser will use the HTTP default port. World Wide Web ("Web"). Used herein to refer generally to both (1) a distributed collection of interlinked, user-viewable hypertext documents (commonly referred to as "Web documents" or "electronic pages" or "home pages") that are accessible via the Internet, and (2) the client and server software components which provide user access to such documents using standardized Internet protocols. Currently, the primary standard protocol for allowing applications to locate and acquire Web documents is the HyperText Transfer Protocol (HTTP), and the electronic pages are encoded using the HyperText Markup Language (HTML). However, the terms "Web" and "World Wide Web" are intended to encompass future markup languages and transport protocols which may be used in place of or in addition to the HyperText Markup Language and the HyperText Transfer Protocol.<br><br>*See also* claim limitation [1d]. |
| [6b] identifying the first type network node based on the service request comprises using the IP address included in the service request to identify the first type network node. | Angles '811 discloses that identifying the first type network node based on the service request comprises using the IP address included in the service request to identify the first type network node. To the extent it is found that Angles '811 does not disclose this feature expressly or inherently, it would have been obvious to combine Angles '811 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* col. 7, lines 10–42.<br>Transmission Control Protocol/Internet Protocol (TCP/IP). A standard Internet protocol (or set of protocols) which specifies how two computers exchange data over the Internet. TCP/IP handles issues such as packetization, packet addressing, handshaking and error correction. For more information on |

**Appendix B-15**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,933,811 (Angles '811)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,933,811 (Angles '811) |
|---|---|
| | TCP/IP, see Volumes I, II and III of Comer and Stevens, Internetworking with TCP/IP, Prentice Hall, Inc., ISBNs 0-13-468505-9 (vol. I), 0-13-125527-4 (vol. II), and 0-13-474222-2 (vol. III). |
| | Uniform Resource Locator (URL). A unique address which fully specifies the location of a file or other resource on the Internet. The general format of a URL is protocol://machine address:port/path/filename. The port specification is optional, and if none is entered by the user, the Web browser defaults to the standard port for whatever service is specified as the protocol. For example, if HTTP is specified as the protocol, the Web browser will use the HTTP default port. World Wide Web ("Web"). Used herein to refer generally to both (1) a distributed collection of interlinked, user-viewable hypertext documents (commonly referred to as "Web documents" or "electronic pages" or "home pages") that are accessible via the Internet, and (2) the client and server software components which provide user access to such documents using standardized Internet protocols. Currently, the primary standard protocol for allowing applications to locate and acquire Web documents is the HyperText Transfer Protocol (HTTP), and the electronic pages are encoded using the HyperText Markup Language (HTML). However, the terms "Web" and "World Wide Web" are intended to encompass future markup languages and transport protocols which may be used in place of or in addition to the HyperText Markup Language and the HyperText Transfer Protocol. |
| | *See also* col. 14, lines 16–26. |
| | Thus, when a consumer registers with the advertisement provider computer 18, the registration module 60 displays a HTML document which prompts the consumer to enter demographic data. The demographic data can contain a wide variety of information, including, but not limited to, age, sex, income, career, interests, hobbies, consumer preferences, the account number of the consumer's Internet provider, other account information, etc. Once the consumer enters the demographic data, the registration module 60 stores the demographic data as a profile in the registration database 68. |
| | *See also* claim limitation [1e]. |
| *Claim 7* | |
| [7a] A method for providing | Angles '811 discloses a method for providing web page customization service to a plurality of first |

Appendix B-15

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,933,811 (Angles '811)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,933,811 (Angles '811) |
|---|---|
| web page customization service to a plurality of first type network nodes at a second type network node, comprising the steps of: | type network nodes at a second type network node. To the extent it is found that Angles '811 does not disclose this feature expressly or inherently, it would have been obvious to combine Angles '811 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1a]. |
| [7b] forming at least a page file for each of the first type network nodes; | Angles '811 discloses forming at least a page file for each of the first type network nodes. To the extent it is found that Angles '811 does not disclose this feature expressly or inherently, it would have been obvious to combine Angles '811 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1b]. |
| [7c] forming at least a page file for the second type network node; | Angles '811 discloses forming at least a page file for the second type network node. To the extent it is found that Angles '811 does not disclose this feature expressly or inherently, it would have been obvious to combine Angles '811 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1c]. |
| [7d] receiving a service request from one of the first type network nodes; | Angles '811 discloses receiving a service request from one of the first type network nodes. To the extent it is found that Angles '811 does not disclose this feature expressly or inherently, it would have been obvious to combine Angles '811 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1d]. |
| [7e] determining whether the first type network node | Angles '811 discloses determining whether the first type network node participates in the web page customization service. To the extent it is found that Angles '811 does not disclose this feature |

**Appendix B-15**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,933,811 (Angles '811)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,933,811 (Angles '811) |
|---|---|
| participates in the web page customization service; | expressly or inherently, it would have been obvious to combine Angles '811 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1e]. |
| [7f] if the first type network node participates in the web page customization service, forming a customized page file for the service request by including the page file formed for the first type network node within the page file formed for the second type network node; and | Angles '811 discloses, if the first type network node participates in the web page customization service, forming a customized page file for the service request by including the page file formed for the first type network node within the page file formed for the second type network node. To the extent it is found that Angles '811 does not disclose this feature expressly or inherently, it would have been obvious to combine Angles '811 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1f]. |
| [7g] if the first type network node does not participate in the web page customization service, forming a page file for the service request by using the page file formed for the second type network node. | Angles '811 discloses, if the first type network node does not participate in the web page customization service, forming a page file for the service request by using the page file formed for the second type network node. For example, the second type network node identifies the first type network node based on the service request. If the second type network node fails to identify the first type network node, the second type network node will only form a page file for the service request by using the page file formed for the second type network node. To the extent it is found that Angles '811 does not disclose this feature expressly or inherently, it would have been obvious to combine Angles '811 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1f]. |
| *Claim 8* | |

**Appendix B-15**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,933,811 (Angles '811)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,933,811 (Angles '811) |
|---|---|
| [8] The method of claim 7, wherein the first type network nodes are ISP nodes, and the second type network node is an ICP node. | Angles '811 discloses that the first type network nodes are ISP nodes, and the second type network node is an ICP node. To the extent it is found that Angles '811 does not disclose this feature expressly or inherently, it would have been obvious to combine Angles '811 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [2]. |
| *Claim 9* | |
| [9] The method of claim 7, wherein the first type network nodes are organization nodes, and the second type network node is an ICP node. | Angles '811 discloses that the first type network nodes are organization nodes, and the second type network node is an ICP node. To the extent it is found that Angles '811 does not disclose this feature expressly or inherently, it would have been obvious to combine Angles '811 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [3]. |
| *Claim 10* | |
| [10] The method of claim 7, wherein the customized page file includes customized graphics, sounds, applets, links, and text. | Angles '811 discloses that the customized page file includes customized graphics, sounds, applets, links, and text. To the extent it is found that Angles '811 does not disclose this feature expressly or inherently, it would have been obvious to combine Angles '811 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [4]. |
| *Claim 11* | |
| [11] The method of claim 7, wherein the customized page file includes customized advertisements. | Angles '811 discloses that the customized page file includes customized advertisements. To the extent it is found that Angles '811 does not disclose this feature expressly or inherently, it would have been obvious to combine Angles '811 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |

**Appendix B-15**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,933,811 (Angles '811)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,933,811 (Angles '811) |
|---|---|
| | *See* claim limitation [5]. |
| *Claim 12* | |
| [12a] The method of claim 7, wherein: the service request from one of the first type network nodes includes an IP address for identifying the first type network node, and | Angles '811 discloses that the service request from one of the first type network nodes includes an IP address for identifying the first type network node. To the extent it is found that Angles '811 does not disclose this feature expressly or inherently, it would have been obvious to combine Angles '811 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [6a]. |
| [12b] determining whether the first type network node participates in the web page customization service comprises using the IPI address included in the service request to identify the first type network node. | Angles '811 discloses that determining whether the first type network node participates in the web page customization service comprises using the IPI address included in the service request to identify the first type network node. To the extent it is found that Angles '811 does not disclose this feature expressly or inherently, it would have been obvious to combine Angles '811 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [6b]. |
| *Claim 13* | |
| [13a] A method for providing web page customization service to a plurality of first type network nodes at a second type network node, comprising the steps of: | Angles '811 discloses a method for providing web page customization service to a plurality of first type network nodes at a second type network node. To the extent it is found that Angles '811 does not disclose this feature expressly or inherently, it would have been obvious to combine Angles '811 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1a]. |
| [13b] forming a plurality of | Angles '811 discloses forming a plurality of advertisements for the first type network nodes. To the |

**Appendix B-15**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,933,811 (Angles '811)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,933,811 (Angles '811) |
|---|---|
| advertisements for the first type network nodes; | extent it is found that Angles '811 does not disclose this feature expressly or inherently, it would have been obvious to combine Angles '811 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitations [1b] and [5]. |
| [13c] forming at least a page file for the second type network node; | Angles '811 discloses forming at least a page file for the second type network node. To the extent it is found that Angles '811 does not disclose this feature expressly or inherently, it would have been obvious to combine Angles '811 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1c]. |
| [13d] receiving a service request from one of the first type network nodes; | Angles '811 discloses receiving a service request from one of the first type network nodes. To the extent it is found that Angles '811 does not disclose this feature expressly or inherently, it would have been obvious to combine Angles '811 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1d]. |
| [13e] identifying advertisements for the first type network node; and | Angles '811 discloses identifying advertisements for the first type network node. To the extent it is found that Angles '811 does not disclose this feature expressly or inherently, it would have been obvious to combine Angles '811 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitations [1e] and [5]. |
| [13f] forming a customized page file for the first type network node by including | Angles '811 discloses forming a customized page file for the first type network node by including the identified advertisements within the page file formed for the second type network node. To the extent it is found that Angles '811 does not disclose this feature expressly or inherently, it would have been |

- 30 -

**Appendix B-15**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,933,811 (Angles '811)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,933,811 (Angles '811) |
|---|---|
| the identified advertisements within the page file formed for the second type network node. | obvious to combine Angles '811 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1f]. |
| *Claim 14* | |
| [14] The method of claim 13, wherein the first type network nodes are ISP nodes, and the second type network node is an ICP node. | Angles '811 discloses that the first type network nodes are ISP nodes, and the second type network node is an ICP node. To the extent it is found that Angles '811 does not disclose this feature expressly or inherently, it would have been obvious to combine Angles '811 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [2]. |
| *Claim 15* | |
| [15] The method of claim 13, wherein the first type network nodes are organization nodes, and the second type network node is an ICP node. | Angles '811 discloses that the first type network nodes are organization nodes, and the second type network node is an ICP node. To the extent it is found that Angles '811 does not disclose this feature expressly or inherently, it would have been obvious to combine Angles '811 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [3]. |
| *Claim 16* | |
| [16] The method of claim 13, wherein the identified advertisements do not cause negative impact on the owner of the first type network node. | Angles '811 discloses that the identified advertisements do not cause negative impact on the owner of the first type network node. To the extent it is found that Angles '811 does not disclose this feature expressly or inherently, it would have been obvious to combine Angles '811 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |

**Appendix B-15**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,933,811 (Angles '811)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,933,811 (Angles '811) |
|---|---|
| | *See* claim limitation [5]. |
| *Claim 17* | |
| [17a] An apparatus for dynamically forming a customized web page for a first type network node at a second type network node, comprising: | Angles '811 discloses an apparatus for dynamically forming a customized web page for a first type network node at a second type network node. To the extent it is found that Angles '811 does not disclose this feature expressly or inherently, it would have been obvious to combine Angles '811 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1a]. |
| [17b] means for forming at least a page file for the first type network node; | Angles '811 discloses means for forming at least a page file for the first type network node. To the extent it is found that Angles '811 does not disclose this feature expressly or inherently, it would have been obvious to combine Angles '811 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1b]. |
| [17c] means for forming at least a page file for the second type network node; | Angles '811 discloses means for forming at least a page file for the second type network node. To the extent it is found that Angles '811 does not disclose this feature expressly or inherently, it would have been obvious to combine Angles '811 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1c]. |
| [17d] means for receiving a service request from the first type network node; | Angles '811 discloses means for receiving a service request from the first type network node. To the extent it is found that Angles '811 does not disclose this feature expressly or inherently, it would have been obvious to combine Angles '811 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |

**Appendix B-15**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,933,811 (Angles '811)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,933,811 (Angles '811) |
|---|---|
| | *See* claim limitation [1d]. |
| [17e] means for identifying the first type network node based on the service request; and | Angles '811 discloses means for identifying the first type network node based on the service request. To the extent it is found that Angles '811 does not disclose this feature expressly or inherently, it would have been obvious to combine Angles '811 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1e]. |
| [17f] means for forming a customized page file formed for the first type network node by including the page file formed for the first type network node within the page file for the second type network node. | Angles '811 discloses means for forming a customized page file formed for the first type network node by including the page file formed for the first type network node within the page file for the second type network node. To the extent it is found that Angles '811 does not disclose this feature expressly or inherently, it would have been obvious to combine Angles '811 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1f]. |
| *Claim 18* | |
| [18] The apparatus of claim 17, wherein the first type network node is an ISP node, and the second type network node is an ICP node. | Angles '811 discloses that the first type network node is an ISP node, and the second type network node is an ICP node. To the extent it is found that Angles '811 does not disclose this feature expressly or inherently, it would have been obvious to combine Angles '811 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [2]. |
| *Claim 19* | |
| [19] The apparatus of claim 17, wherein the first type network node is an | Angles '811 discloses that the first type network node is an organization node, and the second type network node is an ICP node. To the extent it is found that Angles '811 does not disclose this feature expressly or inherently, it would have been obvious to combine Angles '811 with the knowledge of a |

**Appendix B-15**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,933,811 (Angles '811)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,933,811 (Angles '811) |
|---|---|
| organization node, and the second type network node is an ICP node. | person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [3]. |
| *Claim 20* | |
| [20] The apparatus of claim 17, wherein the customized page file includes customized graphics, sounds, applets, links, and text. | Angles '811 discloses that the customized page file includes customized graphics, sounds, applets, links, and text. To the extent it is found that Angles '811 does not disclose this feature expressly or inherently, it would have been obvious to combine Angles '811 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [4]. |
| *Claim 21* | |
| [21] The apparatus of claim 17, wherein the customized page file includes customized advertisements. | Angles '811 discloses that the customized page file includes customized advertisements. To the extent it is found that Angles '811 does not disclose this feature expressly or inherently, it would have been obvious to combine Angles '811 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [5]. |
| *Claim 22* | |
| [22a] An apparatus for providing web page customization service to a plurality of first type network nodes at a second type network node, comprising: | Angles '811 discloses an apparatus for providing web page customization service to a plurality of first type network nodes at a second type network node. To the extent it is found that Angles '811 does not disclose this feature expressly or inherently, it would have been obvious to combine Angles '811 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [7a]. |

**Appendix B-15**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,933,811 (Angles '811)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,933,811 (Angles '811) |
|---|---|
| [22b] means for forming at least a page file for each of the first type network nodes; | Angles '811 discloses means for forming at least a page file for each of the first type network nodes. To the extent it is found that Angles '811 does not disclose this feature expressly or inherently, it would have been obvious to combine Angles '811 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [7b]. |
| [22c] means for forming at least a page file for the second type network node; | Angles '811 discloses means for forming at least a page file for the second type network node. To the extent it is found that Angles '811 does not disclose this feature expressly or inherently, it would have been obvious to combine Angles '811 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [7c]. |
| [22d] means for receiving a service request from one of the first type network nodes; | Angles '811 discloses means for receiving a service request from one of the first type network nodes. To the extent it is found that Angles '811 does not disclose this feature expressly or inherently, it would have been obvious to combine Angles '811 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [7d]. |
| [22e] means for determining whether the first type network node participates in the web page customization service; | Angles '811 discloses means for determining whether the first type network node participates in the web page customization service. To the extent it is found that Angles '811 does not disclose this feature expressly or inherently, it would have been obvious to combine Angles '811 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [7e]. |
| [22f] means for forming a | Angles '811 discloses means for forming a customized page file for the service request by including |

**Appendix B-15**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,933,811 (Angles '811)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,933,811 (Angles '811) |
|---|---|
| customized page file for the service request by including the page file formed for the first type network node within the page file formed for the second type network node, if the first type network node participates in the web page customization service; and | the page file formed for the first type network node within the page file formed for the second type network node, if the first type network node participates in the web page customization service. To the extent it is found that Angles '811 does not disclose this feature expressly or inherently, it would have been obvious to combine Angles '811 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [7f]. |
| [22g] means for forming a page file for the service request by using the page file formed for the second type network node, if the first type network node does not participate in the web page customization service. | Angles '811 discloses means for forming a page file for the service request by using the page file formed for the second type network node, if the first type network node does not participate in the web page customization service. To the extent it is found that Angles '811 does not disclose this feature expressly or inherently, it would have been obvious to combine Angles '811 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [7g]. |
| *Claim 23* | |
| [23] The apparatus of claim 22, wherein the first type network nodes are ISP nodes, and the second type network node is an ICP node. | Angles '811 discloses that the first type network nodes are ISP nodes, and the second type network node is an ICP node. To the extent it is found that Angles '811 does not disclose this feature expressly or inherently, it would have been obvious to combine Angles '811 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [8]. |
| *Claim 24* | |
| [24] The apparatus of claim | Angles '811 discloses that the first type network nodes are organization nodes, and the second type |

- 36 -

**Appendix B-15**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,933,811 (Angles '811)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,933,811 (Angles '811) |
|---|---|
| 22, wherein the first type network nodes are organization nodes, and the second type network node is an ICP node. | network node is an ICP node. To the extent it is found that Angles '811 does not disclose this feature expressly or inherently, it would have been obvious to combine Angles '811 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. *See* claim limitation [9]. |
| *Claim 25* | |
| [25] The apparatus of claim 22, wherein the customized page file includes customized graphics, sounds, applets, links, and text. | Angles '811 discloses that the customized page file includes customized graphics, sounds, applets, links, and text. To the extent it is found that Angles '811 does not disclose this feature expressly or inherently, it would have been obvious to combine Angles '811 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. *See* claim limitation [10]. |
| *Claim 26* | |
| [26] The apparatus of claim 25, wherein the customized page file includes customized advertisements. | Angles '811 discloses that the customized page file includes customized advertisements. To the extent it is found that Angles '811 does not disclose this feature expressly or inherently, it would have been obvious to combine Angles '811 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. *See* claim limitation [11]. |
| *Claim 27* | |
| [27a] An apparatus for providing web page customization service to a plurality of first type network nodes at a second type | Angles '811 discloses an apparatus for providing web page customization service to a plurality of first type network nodes at a second type network node. To the extent it is found that Angles '811 does not disclose this feature expressly or inherently, it would have been obvious to combine Angles '811 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |

**Appendix B-15**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,933,811 (Angles '811)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,933,811 (Angles '811) |
|---|---|
| network node, comprising: | *See* claim limitation [13a]. |
| [27b] means for forming a plurality of advertisements for the first type network nodes; | Angles '811 discloses means for forming a plurality of advertisements for the first type network nodes. To the extent it is found that Angles '811 does not disclose this feature expressly or inherently, it would have been obvious to combine Angles '811 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [13b]. |
| [27c] means for forming at least a page file for the second type network node; | Angles '811 discloses means for forming at least a page file for the second type network node. To the extent it is found that Angles '811 does not disclose this feature expressly or inherently, it would have been obvious to combine Angles '811 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [13c]. |
| [27d] means for receiving a service request from one of the first type network nodes; | Angles '811 discloses means for receiving a service request from one of the first type network nodes. To the extent it is found that Angles '811 does not disclose this feature expressly or inherently, it would have been obvious to combine Angles '811 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [13d]. |
| [27e] means for identifying advertisements for the first type network node; and | Angles '811 discloses means for identifying advertisements for the first type network node. To the extent it is found that Angles '811 does not disclose this feature expressly or inherently, it would have been obvious to combine Angles '811 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [13e]. |

**Appendix B-15**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,933,811 (Angles '811)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,933,811 (Angles '811) |
|---|---|
| [27f] means for forming a customized page file for the first type network node by including the identified advertisements within the page file formed for the second type network node. | Angles '811 discloses means for forming a customized page file for the first type network node by including the identified advertisements within the page file formed for the second type network node. To the extent it is found that Angles '811 does not disclose this feature expressly or inherently, it would have been obvious to combine Angles '811 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [13f]. |
| *Claim 28* | |
| [28] The apparatus of claim 27, wherein the first type network nodes are ISP nodes, and the second type network node is an ICP node. | Angles '811 discloses that the first type network nodes are ISP nodes, and the second type network node is an ICP node. To the extent it is found that Angles '811 does not disclose this feature expressly or inherently, it would have been obvious to combine Angles '811 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [14]. |
| *Claim 29* | |
| [29] The apparatus of claim 27, wherein the first type network nodes are organization nodes, and the second type network node is an ICP node. | Angles '811 discloses that the first type network nodes are organization nodes, and the second type network node is an ICP node. To the extent it is found that Angles '811 does not disclose this feature expressly or inherently, it would have been obvious to combine Angles '811 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [15]. |
| *Claim 30* | |
| [30] The apparatus of claim 27, wherein the identified advertisements do not cause negative impact on the owner | Angles '811 discloses that the identified advertisements do not cause negative impact on the owner of the first type network node. To the extent it is found that Angles '811 does not disclose this feature expressly or inherently, it would have been obvious to combine Angles '811 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* |

**Appendix B-15**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,933,811 (Angles '811)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,933,811 (Angles '811) |
|---|---|
| of the first type network node. | Appendix C.<br><br>*See* claim limitation [16]. |

**Appendix B-16**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,477 Over U.S. Patent No. 5,937,392 (Alberts)**

U.S. Patent No. 5,937,392 to Alberts ("Alberts") issued from a U.S. patent application filed on July 28, 1997 and qualifies as prior art at least under 35 U.S.C. § 102(e).

Alberts anticipates claims 1-30 of U.S. Patent No. 6,442,577.

Additionally or in the alternative, each of claims 1-30 of the '577 patent would have been obvious over Alberts standing alone or in view of the knowledge of a person of ordinary skill and/or one or more other references, as detailed in Appendix C.

This chart is based in whole or in part on the present understanding of positions taken by PageMelding regarding the coverage, scope and construction of the asserted claims to the extent those positions can be deduced from PageMelding's contentions pursuant to Patent Local Rule 3-1 served on August 3, 2012. Nothing herein is an admission that PageMelding's infringement contentions are correct, an admission that Plaintiff's apparent claim constructions are correct, or an admission that ESPN's technology infringes any asserted claim.

**Appendix B-16**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,477 Over U.S. Patent No. 5,937,392 (Alberts)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,937,392 (Alberts) |
|---|---|
| *Claim 1* | |
| [1a] A method for dynamically forming customized web pages for a first type network node at a second type network node, comprising the steps of: | Alberts discloses a method for dynamically forming customized web pages for a first type network node at a second type network node.<br><br>For example, Alberts discloses dynamically forming customized web pages with customized advertisements for a visitor to a web page.<br><br>*See* Abstract.<br><br>    An Internet advertising system has a database, a controller, and an ad server operating as part of a web server. The database has advertising campaign information, including identification information and frequency information for how often the ad is to be served.  The ad server uses the campaign information from the database to control the relative ratios of serving ads, the distribution of ads throughout the day, and any triggering mechanisms for controlling what ads are served.<br><br>*See also* col. 1, lines 9-20.<br><br>    Along with other information, Internet information providers can provide ads to users in a number of forms, one of which is as a "banner" across an Internet page, often at the top of the page. A banner ad can have text and still or moving graphics, and typically serves as an HTML (HyperText Markup Language) link, such that the user is linked to another specified page if the user clicks on the banner. Some Internet sites are always associated with the same particular one or more banner ads; each time the site is accessed, the particular ad or ads are displayed along with the other information that is displayed (an |

**Appendix B-16**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,477 Over U.S. Patent No. 5,937,392 (Alberts)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,937,392 (Alberts) |
|---|---|
| | access to a site or page is referred to as a "hit"). |
| | *See also* col. 1, lines 55-65. |
| | The present invention is an advertising system for use with a large, publicly accessible network, such as the Internet. The system has at least one server for providing information in response to a request from a user. The system includes an advertising server, an advertising database, and an advertising controller for communicating with the ad server and the ad database. The database stores information about the ads, and the controller loads advertising campaign data, preferably in the form of tables, from the database to the ad server. The ad server uses the information to cause the ads to be served as desired. |
| | *See also* col. 2, lines 5-24. |
| | The system can predictively model the number of hits to control the distribution of serves, either to ensure even distribution, or to concentrate ads during particular times. The system also preferably has triggering information that allows ads to be targeted. Ads can be targeted to users seeking certain types of information, e.g., on a yellow pages system or on a search engine, access to "photography" could cause the serving of an ad for a manufacturer of film; to users from particular geographic locations; to particular users; or to users at different times of the day. |
| | *See also* Fig. 1. |

**Appendix B-16**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,477 Over U.S. Patent No. 5,937,392 (Alberts)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,937,392 (Alberts) |
|---|---|
| |  *See also* Figs. 1-6b and associated text.<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [1b] forming at least a page file for the first type network node; | Alberts discloses forming at least a page file for the first type network node.<br><br>*See* col. 2, lines 55-67.<br><br>     Internet 10 is a large interconnected network of computers, a subset of which |

- 4 -

**Appendix B-16**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,477 Over U.S. Patent No. 5,937,392 (Alberts)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,937,392 (Alberts) |
|---|---|
| | is the World Wide Web. Users can access servers to obtain information over the web with a conventional web browser 11. In a system according to the present invention, an accessible web site 8 has a number of web servers 12 in communication with the Internet for responding to users by providing files or information from databases. Each web server 12 has an advertising (ad) server 14 that has known, conventional data insertion tools for causing one or more ads, such as banner ads that also serve as HTML links, to be displayed when a page of information, such as a file or database information, is returned to a user who accesses web site 8. <br><br> *See also* col. 3, lines 18-33. <br><br> Referring also to FIG. 2, ad servers 14 can be implemented with common gateway interface (CGI) scripts, or they can be implemented as software that runs as part of the web server process. When a user contacts one of web servers 12 with a query or a request for information, ad server 14 causes one or more ads to be served along with a response to that request. Each ad server 14 communicates with an ad controller 16 and with a database engine 18. Database engine 18, in turn, communicates with an advertising database 20. Referring also to FIG. 3, advertiser database 20 (which can be configured as and considered to be one database or multiple databases) has tables 30 that maintain information indicating parameters for the display of ads. These tables thus hold what is referred here to as advertising campaign data. <br><br> *See also* col. 4, lines 34-45. <br><br> According to the present invention, ad servers 14 provide rotational control that ensures that ads are served a desired number of times per day and with a desired distribution throughout the day, even with a large number of ads, a wide variation in ratios of hits, and/or wide variations of hits per day over multiple days. Each ad server 14 determines which ads are active based on the |

**Appendix B-16**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,477 Over U.S. Patent No. 5,937,392 (Alberts)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,937,392 (Alberts) |
|---|---|
| | start and run length information from table 30; for each active ad, ad server 14 looks to the frequency to determine a number of serves per day for each ad. Server 18 then associates each active ad with at least counters that are implemented and configured for rotational control. *See also* Fig. 1.  *See also* Figs. 1-4 and associated text. To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill |

Appendix B-16

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,477 Over U.S. Patent No. 5,937,392 (Alberts)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,937,392 (Alberts) |
|---|---|
| | and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [1c] forming at least a page file for the second type network node; | Alberts discloses forming at least a page file for the second type network node. |
| | *See* col. 2, lines 55-67. |
| | Internet 10 is a large interconnected network of computers, a subset of which is the World Wide Web. Users can access servers to obtain information over the web with a conventional web browser 11. In a system according to the present invention, an accessible web site 8 has a number of web servers 12 in communication with the Internet for responding to users by providing files or information from databases. Each web server 12 has an advertising (ad) server 14 that has known, conventional data insertion tools for causing one or more ads, such as banner ads that also serve as HTML links, to be displayed when a page of information, such as a file or database information, is returned to a user who accesses web site 8. |
| | *See also* col. 3, lines 18-33. |
| | Referring also to FIG. 2, ad servers 14 can be implemented with common gateway interface (CGI) scripts, or they can be implemented as software that runs as part of the web server process. When a user contacts one of web servers 12 with a query or a request for information, ad server 14 causes one or more ads to be served along with a response to that request. Each ad server 14 communicates with an ad controller 16 and with a database engine 18. Database engine 18, in turn, communicates with an advertising database 20. Referring also to FIG. 3, advertiser database 20 (which can be configured as and considered to be one database or multiple databases) has tables 30 that maintain information indicating parameters for the display of ads. These tables thus hold what is referred here to as advertising campaign data. |

Appendix B-16

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,477 Over U.S. Patent No. 5,937,392 (Alberts)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,937,392 (Alberts) |
|---|---|
| | *See also* col. 4, lines 34-45. |
| | According to the present invention, ad servers 14 provide rotational control that ensures that ads are served a desired number of times per day and with a desired distribution throughout the day, even with a large number of ads, a wide variation in ratios of hits, and/or wide variations of hits per day over multiple days. Each ad server 14 determines which ads are active based on the start and run length information from table 30; for each active ad, ad server 14 looks to the frequency to determine a number of serves per day for each ad. Server 18 then associates each active ad with at least counters that are implemented and configured for rotational control. |
| | *See also* Figs. 1-4 and associated text. |
| | To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [1d] receiving a service request from the first type network node; | Alberts discloses receiving a service request from the first type network node. |
| | *See* col. 1, lines 55-65. |
| | The present invention is an advertising system for use with a large, publicly accessible network, such as the Internet. The system has at least one server for providing information in response to a request from a user. The system includes an advertising server, an advertising database, and an advertising controller for communicating with the ad server and the ad database. The database stores information about the ads, and the controller loads advertising campaign data, preferably in the form of tables, from the database to the ad server. The ad server uses the information to cause the ads to be served as |

- 8 -

**Appendix B-16**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,477 Over U.S. Patent No. 5,937,392 (Alberts)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,937,392 (Alberts) |
|---|---|
| | desired.<br><br>*See also* col. 2, lines 55-67.<br><br>Internet 10 is a large interconnected network of computers, a subset of which is the World Wide Web. Users can access servers to obtain information over the web with a conventional web browser 11. In a system according to the present invention, an accessible web site 8 has a number of web servers 12 in communication with the Internet for responding to users by providing files or information from databases. Each web server 12 has an advertising (ad) server 14 that has known, conventional data insertion tools for causing one or more ads, such as banner ads that also serve as HTML links, to be displayed when a page of information, such as a file or database information, is returned to a user who accesses web site 8.<br><br>*See also* col. 3, lines 18-33.<br><br>Referring also to FIG. 2, ad servers 14 can be implemented with common gateway interface (CGI) scripts, or they can be implemented as software that runs as part of the web server process. When a user contacts one of web servers 12 with a query or a request for information, ad server 14 causes one or more ads to be served along with a response to that request. Each ad server 14 communicates with an ad controller 16 and with a database engine 18. Database engine 18, in turn, communicates with an advertising database 20. Referring also to FIG. 3, advertiser database 20 (which can be configured as and considered to be one database or multiple databases) has tables 30 that maintain information indicating parameters for the display of ads. These tables thus hold what is referred here to as advertising campaign data.<br><br>*See also* Fig. 1. |

Appendix B-16

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,477 Over U.S. Patent No. 5,937,392 (Alberts)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,937,392 (Alberts) |
|---|---|
|  | <br><br>*See also* Figs. 1-4 and associated text.<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [1e] identifying the first type network node based on the service request; and | Alberts discloses identifying the first type network node based on the service request.<br><br>*See* col. 7, lines 6-21.<br><br>    The present invention also provides the control and flexibility to allow ads to |

**Appendix B-16**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,477 Over U.S. Patent No. 5,937,392 (Alberts)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,937,392 (Alberts) |
|---|---|
| | be served based on different triggering events. One way to implement this feature is by using multiple tables, each of which corresponds to a different triggering event. For example, an access by a user from a particular region could cause ads targeted to some regional-based businesses, such as department stores or grocery stores, to be served. Another type of targeting uses the accessed information to infer that the user has a particular interest, e.g., if a user searches a business directory for a business in a particular category, such as photography or skiing. In this system, some ads may be designed to go to all users, regardless of location or specific interests, while other ads may be targeted based on whatever triggering events are desired. <br><br> *See also* col. 2, lines 55-67. <br><br> Internet 10 is a large interconnected network of computers, a subset of which is the World Wide Web. Users can access servers to obtain information over the web with a conventional web browser 11. In a system according to the present invention, an accessible web site 8 has a number of web servers 12 in communication with the Internet for responding to users by providing files or information from databases. Each web server 12 has an advertising (ad) server 14 that has known, conventional data insertion tools for causing one or more ads, such as banner ads that also serve as HTML links, to be displayed when a page of information, such as a file or database information, is returned to a user who accesses web site 8. <br><br> *See also* col. 3, lines 18-33. <br><br> Referring also to FIG. 2, ad servers 14 can be implemented with common gateway interface (CGI) scripts, or they can be implemented as software that runs as part of the web server process. When a user contacts one of web servers 12 with a query or a request for information, ad server 14 causes one or more ads to be served along with a response to that request. Each ad server 14 |

**Appendix B-16**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,477 Over U.S. Patent No. 5,937,392 (Alberts)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,937,392 (Alberts) |
|---|---|
| | communicates with an ad controller 16 and with a database engine 18. Database engine 18, in turn, communicates with an advertising database 20. Referring also to FIG. 3, advertiser database 20 (which can be configured as and considered to be one database or multiple databases) has tables 30 that maintain information indicating parameters for the display of ads. These tables thus hold what is referred here to as advertising campaign data.<br><br>*See also* Figs. 1-4 and associated text.<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [1f] forming a customized page file formed for the first type network node by including the page file formed for the first type network node within the page file for the second type network node. | Alberts discloses forming a customized page file formed for the first type network node by including the page file formed for the first type network node within the page file for the second type network node.<br><br>*See* col. 1, lines 9-20.<br><br>Along with other information, Internet information providers can provide ads to users in a number of forms, one of which is as a "banner" across an Internet page, often at the top of the page. A banner ad can have text and still or moving graphics, and typically serves as an HTML (HyperText Markup Language) link, such that the user is linked to another specified page if the user clicks on the banner. Some Internet sites are always associated with the same particular one or more banner ads; each time the site is accessed, the particular ad or ads are displayed along with the other information that is displayed (an access to a site or page is referred to as a "hit").<br><br>*See also* col. 1, line 55 to col. 2, line 39. |

**Appendix B-16**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,477 Over U.S. Patent No. 5,937,392 (Alberts)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,937,392 (Alberts) |
|---|---|
| | The present invention is an advertising system for use with a large, publicly accessible network, such as the Internet. The system has at least one server for providing information in response to a request from a user. The system includes an advertising server, an advertising database, and an advertising controller for communicating with the ad server and the ad database. The database stores information about the ads, and the controller loads advertising campaign data, preferably in the form of tables, from the database to the ad server. The ad server uses the information to cause the ads to be served as desired.<br><br>To obtain efficient distribution of the ads relative to each other and throughout the day (referred to here as "rotation control"), each ad is preferably associated with at least two counters that are operated such that the system can quickly determine which ad is to be served, without intensive computational overhead. Rotation control can be performed as desired, even with a large number of ads and with a wide range of variation and non-integral ratios between the number of times the ads are to be served. The ad server effectively makes a single list of ads and has a pointer that moves through the list until it reaches an ad to be served. To reduce steps for each serve, the system is designed so that the pointer need not move through more than one cycle of ads on the list without determining an ad to be served. Unused hits can be dedicated to other entities on an unpaid basis, such as to charities, but treated like other ads.<br><br>The system can predictively model the number of hits to control the distribution of serves, either to ensure even distribution, or to concentrate ads during particular times. The system also preferably has triggering information that allows ads to be targeted. Ads can be targeted to users seeking certain types of information, e.g., on a yellow pages system or on a search engine, access to "photography" could cause the serving of an ad for a manufacturer of film; to users from particular geographic locations; to particular users; or to |

**Appendix B-16**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,477 Over U.S. Patent No. 5,937,392 (Alberts)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,937,392 (Alberts) |
|---|---|
| | users at different times of the day. |
| | The system of the present invention also provide statistical, reporting, and feedback functions to allow a system manager to monitor and report the serves. This data can be used for control purposes, and also to provide reports to verify the ads that have been served. |
| | The present invention provides an integrated system that allows ads to be served in a highly flexible and accurate manner a desired number of times throughout the day and evenly distributed throughout the day, or intensified at times if desired. Different ads can be served based on different triggering events, such as the location of the user, the type of information being accessed by the user, or the categories accessed. Other features and advantages that have become apparent from the following detailed description, drawings and claims. |
| | *See also* col. 2, lines 55-67. |
| | Internet 10 is a large interconnected network of computers, a subset of which is the World Wide Web. Users can access servers to obtain information over the web with a conventional web browser 11. In a system according to the present invention, an accessible web site 8 has a number of web servers 12 in communication with the Internet for responding to users by providing files or information from databases. Each web server 12 has an advertising (ad) server 14 that has known, conventional data insertion tools for causing one or more ads, such as banner ads that also serve as HTML links, to be displayed when a page of information, such as a file or database information, is returned to a user who accesses web site 8. |
| | *See also* col. 3, lines 18-33. |

**Appendix B-16**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,477 Over U.S. Patent No. 5,937,392 (Alberts)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,937,392 (Alberts) |
|---|---|
| | Referring also to FIG. 2, ad servers 14 can be implemented with common gateway interface (CGI) scripts, or they can be implemented as software that runs as part of the web server process. When a user contacts one of web servers 12 with a query or a request for information, ad server 14 causes one or more ads to be served along with a response to that request. Each ad server 14 communicates with an ad controller 16 and with a database engine 18. Database engine 18, in turn, communicates with an advertising database 20. Referring also to FIG. 3, advertiser database 20 (which can be configured as and considered to be one database or multiple databases) has tables 30 that maintain information indicating parameters for the display of ads. These tables thus hold what is referred here to as advertising campaign data.<br><br>*See also* Figs. 1-4 and associated text.<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 2* | |
| [2] The method of claim 1, wherein the first type network node is an ISP node, and the second type network node is an ICP node. | Alberts discloses that the first type network node is an ISP node, and the second type network node is an ICP node.<br><br>*See* col. 1, line 55 to col. 2, line 39.<br><br>The present invention is an advertising system for use with a large, publicly accessible network, such as the Internet. The system has at least one server for providing information in response to a request from a user. The system includes an advertising server, an advertising database, and an advertising controller for communicating with the ad server and the ad database. The database stores information about the ads, and the controller loads advertising |

**Appendix B-16**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,477 Over U.S. Patent No. 5,937,392 (Alberts)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,937,392 (Alberts) |
|---|---|
| | campaign data, preferably in the form of tables, from the database to the ad server. The ad server uses the information to cause the ads to be served as desired.<br><br>To obtain efficient distribution of the ads relative to each other and throughout the day (referred to here as "rotation control"), each ad is preferably associated with at least two counters that are operated such that the system can quickly determine which ad is to be served, without intensive computational overhead. Rotation control can be performed as desired, even with a large number of ads and with a wide range of variation and non-integral ratios between the number of times the ads are to be served. The ad server effectively makes a single list of ads and has a pointer that moves through the list until it reaches an ad to be served. To reduce steps for each serve, the system is designed so that the pointer need not move through more than one cycle of ads on the list without determining an ad to be served. Unused hits can be dedicated to other entities on an unpaid basis, such as to charities, but treated like other ads.<br><br>The system can predictively model the number of hits to control the distribution of serves, either to ensure even distribution, or to concentrate ads during particular times. The system also preferably has triggering information that allows ads to be targeted. Ads can be targeted to users seeking certain types of information, e.g., on a yellow pages system or on a search engine, access to "photography" could cause the serving of an ad for a manufacturer of film; to users from particular geographic locations; to particular users; or to users at different times of the day.<br><br>The system of the present invention also provide statistical, reporting, and feedback functions to allow a system manager to monitor and report the serves. This data can be used for control purposes, and also to provide reports to verify the ads that have been served. |

**Appendix B-16**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,477 Over U.S. Patent No. 5,937,392 (Alberts)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,937,392 (Alberts) |
|---|---|
| | The present invention provides an integrated system that allows ads to be served in a highly flexible and accurate manner a desired number of times throughout the day and evenly distributed throughout the day, or intensified at times if desired.  Different ads can be served based on different triggering events, such as the location of the user, the type of information being accessed by the user, or the categories accessed.  Other features and advantages that have become apparent from the following detailed description, drawings and claims.<br><br>*See also* col. 2, lines 55-67.<br><br>Internet 10 is a large interconnected network of computers, a subset of which is the World Wide Web.  Users can access servers to obtain information over the web with a conventional web browser 11.  In a system according to the present invention, an accessible web site 8 has a number of web servers 12 in communication with the Internet for responding to users by providing files or information from databases.  Each web server 12 has an advertising (ad) server 14 that has known, conventional data insertion tools for causing one or more ads, such as banner ads that also serve as HTML links, to be displayed when a page of information, such as a file or database information, is returned to a user who accesses web site 8.<br><br>*See also* col. 3, lines 18-33.<br><br>Referring also to FIG. 2, ad servers 14 can be implemented with common gateway interface (CGI) scripts, or they can be implemented as software that runs as part of the web server process.  When a user contacts one of web servers 12 with a query or a request for information, ad server 14 causes one or more ads to be served along with a response to that request.  Each ad server 14 communicates with an ad controller 16 and with a database engine 18.  Database engine 18, in turn, communicates with an advertising database 20. |

**Appendix B-16**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,477 Over U.S. Patent No. 5,937,392 (Alberts)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,937,392 (Alberts) |
|---|---|
| | Referring also to FIG. 3, advertiser database 20 (which can be configured as and considered to be one database or multiple databases) has tables 30 that maintain information indicating parameters for the display of ads. These tables thus hold what is referred here to as advertising campaign data. <br><br> *See also* col. 4, lines 34-45. <br><br> According to the present invention, ad servers 14 provide rotational control that ensures that ads are served a desired number of times per day and with a desired distribution throughout the day, even with a large number of ads, a wide variation in ratios of hits, and/or wide variations of hits per day over multiple days. Each ad server 14 determines which ads are active based on the start and run length information from table 30; for each active ad, ad server 14 looks to the frequency to determine a number of serves per day for each ad. Server 18 then associates each active ad with at least counters that are implemented and configured for rotational control. <br><br> *See also* Figs. 1-6b and associated text. <br><br> To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 3* | |
| [3] The method of claim 1, wherein the first type network node is an organization node, and the second type network node is an ICP node. | Alberts discloses that the first type network node is an organization node, and the second type network node is an ICP node. <br><br> *See* col. 1, line 55 to col. 2, line 39. <br><br> The present invention is an advertising system for use with a large, publicly |

**Appendix B-16**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,477 Over U.S. Patent No. 5,937,392 (Alberts)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,937,392 (Alberts) |
|---|---|
|  | accessible network, such as the Internet. The system has at least one server for providing information in response to a request from a user. The system includes an advertising server, an advertising database, and an advertising controller for communicating with the ad server and the ad database. The database stores information about the ads, and the controller loads advertising campaign data, preferably in the form of tables, from the database to the ad server. The ad server uses the information to cause the ads to be served as desired.<br><br>To obtain efficient distribution of the ads relative to each other and throughout the day (referred to here as "rotation control"), each ad is preferably associated with at least two counters that are operated such that the system can quickly determine which ad is to be served, without intensive computational overhead. Rotation control can be performed as desired, even with a large number of ads and with a wide range of variation and non-integral ratios between the number of times the ads are to be served. The ad server effectively makes a single list of ads and has a pointer that moves through the list until it reaches an ad to be served. To reduce steps for each serve, the system is designed so that the pointer need not move through more than one cycle of ads on the list without determining an ad to be served. Unused hits can be dedicated to other entities on an unpaid basis, such as to charities, but treated like other ads.<br><br>The system can predictively model the number of hits to control the distribution of serves, either to ensure even distribution, or to concentrate ads during particular times. The system also preferably has triggering information that allows ads to be targeted. Ads can be targeted to users seeking certain types of information, e.g., on a yellow pages system or on a search engine, access to "photography" could cause the serving of an ad for a manufacturer of film; to users from particular geographic locations; to particular users; or to users at different times of the day. |

**Appendix B-16**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,477 Over U.S. Patent No. 5,937,392 (Alberts)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,937,392 (Alberts) |
|---|---|
|  | The system of the present invention also provide statistical, reporting, and feedback functions to allow a system manager to monitor and report the serves. This data can be used for control purposes, and also to provide reports to verify the ads that have been served.<br><br>The present invention provides an integrated system that allows ads to be served in a highly flexible and accurate manner a desired number of times throughout the day and evenly distributed throughout the day, or intensified at times if desired. Different ads can be served based on different triggering events, such as the location of the user, the type of information being accessed by the user, or the categories accessed. Other features and advantages that have become apparent from the following detailed description, drawings and claims.<br><br>*See also* col. 2, lines 55-67.<br><br>Internet 10 is a large interconnected network of computers, a subset of which is the World Wide Web. Users can access servers to obtain information over the web with a conventional web browser 11. In a system according to the present invention, an accessible web site 8 has a number of web servers 12 in communication with the Internet for responding to users by providing files or information from databases. Each web server 12 has an advertising (ad) server 14 that has known, conventional data insertion tools for causing one or more ads, such as banner ads that also serve as HTML links, to be displayed when a page of information, such as a file or database information, is returned to a user who accesses web site 8.<br><br>*See also* col. 3, lines 18-33.<br><br>Referring also to FIG. 2, ad servers 14 can be implemented with common gateway interface (CGI) scripts, or they can be implemented as software that |

**Appendix B-16**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,477 Over U.S. Patent No. 5,937,392 (Alberts)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,937,392 (Alberts) |
|---|---|
| | runs as part of the web server process. When a user contacts one of web servers 12 with a query or a request for information, ad server 14 causes one or more ads to be served along with a response to that request. Each ad server 14 communicates with an ad controller 16 and with a database engine 18. Database engine 18, in turn, communicates with an advertising database 20. Referring also to FIG. 3, advertiser database 20 (which can be configured as and considered to be one database or multiple databases) has tables 30 that maintain information indicating parameters for the display of ads. These tables thus hold what is referred here to as advertising campaign data.<br><br>*See also* col. 4, lines 34-45.<br><br>According to the present invention, ad servers 14 provide rotational control that ensures that ads are served a desired number of times per day and with a desired distribution throughout the day, even with a large number of ads, a wide variation in ratios of hits, and/or wide variations of hits per day over multiple days. Each ad server 14 determines which ads are active based on the start and run length information from table 30; for each active ad, ad server 14 looks to the frequency to determine a number of serves per day for each ad. Server 18 then associates each active ad with at least counters that are implemented and configured for rotational control.<br><br>*See also* Figs. 1-6b and associated text.<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 4* | |
| [4] The method of claim 1, | Alberts discloses that the customized page file includes customized graphics, sounds, applets, links, |

Appendix B-16

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,477 Over U.S. Patent No. 5,937,392 (Alberts)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,937,392 (Alberts) |
|---|---|
| wherein the customized page file includes customized graphics, sounds, applets, links, and text. | and text.<br><br>*See* col. 1, lines 9-20.<br><br>Along with other information, Internet information providers can provide ads to users in a number of forms, one of which is as a "banner" across an Internet page, often at the top of the page. A banner ad can have text and still or moving graphics, and typically serves as an HTML (HyperText Markup Language) link, such that the user is linked to another specified page if the user clicks on the banner. Some Internet sites are always associated with the same particular one or more banner ads; each time the site is accessed, the particular ad or ads are displayed along with the other information that is displayed (an access to a site or page is referred to as a "hit").<br><br>*See also* Appendix C.<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 5* | |
| [5] The method of claim 1, wherein the customized page file includes customized advertisements. | Alberts discloses that the customized page file includes customized advertisements.<br><br>*See* col. 1, line 55 to col. 2, line 39.<br><br>The present invention is an advertising system for use with a large, publicly accessible network, such as the Internet. The system has at least one server for providing information in response to a request from a user. The system includes an advertising server, an advertising database, and an advertising controller for communicating with the ad server and the ad database. The |

**Appendix B-16**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,477 Over U.S. Patent No. 5,937,392 (Alberts)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,937,392 (Alberts) |
|---|---|
| | database stores information about the ads, and the controller loads advertising campaign data, preferably in the form of tables, from the database to the ad server. The ad server uses the information to cause the ads to be served as desired.<br><br>To obtain efficient distribution of the ads relative to each other and throughout the day (referred to here as "rotation control"), each ad is preferably associated with at least two counters that are operated such that the system can quickly determine which ad is to be served, without intensive computational overhead. Rotation control can be performed as desired, even with a large number of ads and with a wide range of variation and non-integral ratios between the number of times the ads are to be served. The ad server effectively makes a single list of ads and has a pointer that moves through the list until it reaches an ad to be served. To reduce steps for each serve, the system is designed so that the pointer need not move through more than one cycle of ads on the list without determining an ad to be served. Unused hits can be dedicated to other entities on an unpaid basis, such as to charities, but treated like other ads.<br><br>The system can predictively model the number of hits to control the distribution of serves, either to ensure even distribution, or to concentrate ads during particular times. The system also preferably has triggering information that allows ads to be targeted. Ads can be targeted to users seeking certain types of information, e.g., on a yellow pages system or on a search engine, access to "photography" could cause the serving of an ad for a manufacturer of film; to users from particular geographic locations; to particular users; or to users at different times of the day.<br><br>The system of the present invention also provide statistical, reporting, and feedback functions to allow a system manager to monitor and report the serves. This data can be used for control purposes, and also to provide reports to verify |

Appendix B-16

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,477 Over U.S. Patent No. 5,937,392 (Alberts)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,937,392 (Alberts) |
|---|---|
| | the ads that have been served.<br><br>The present invention provides an integrated system that allows ads to be served in a highly flexible and accurate manner a desired number of times throughout the day and evenly distributed throughout the day, or intensified at times if desired. Different ads can be served based on different triggering events, such as the location of the user, the type of information being accessed by the user, or the categories accessed. Other features and advantages that have become apparent from the following detailed description, drawings and claims.<br><br>*See also* col. 3, lines 18-33.<br><br>Referring also to FIG. 2, ad servers 14 can be implemented with common gateway interface (CGI) scripts, or they can be implemented as software that runs as part of the web server process. When a user contacts one of web servers 12 with a query or a request for information, ad server 14 causes one or more ads to be served along with a response to that request. Each ad server 14 communicates with an ad controller 16 and with a database engine 18. Database engine 18, in turn, communicates with an advertising database 20. Referring also to FIG. 3, advertiser database 20 (which can be configured as and considered to be one database or multiple databases) has tables 30 that maintain information indicating parameters for the display of ads. These tables thus hold what is referred here to as advertising campaign data.<br><br>*See also* col. 4, lines 34-45.<br><br>According to the present invention, ad servers 14 provide rotational control that ensures that ads are served a desired number of times per day and with a desired distribution throughout the day, even with a large number of ads, a wide variation in ratios of hits, and/or wide variations of hits per day over |

**Appendix B-16**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,477 Over U.S. Patent No. 5,937,392 (Alberts)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,937,392 (Alberts) |
|---|---|
| | multiple days. Each ad server 14 determines which ads are active based on the start and run length information from table 30; for each active ad, ad server 14 looks to the frequency to determine a number of serves per day for each ad. Server 18 then associates each active ad with at least counters that are implemented and configured for rotational control.<br><br>*See also* col. 7, lines 6-21.<br><br>The present invention also provides the control and flexibility to allow ads to be served based on different triggering events. One way to implement this feature is by using multiple tables, each of which corresponds to a different triggering event. For example, an access by a user from a particular region could cause ads targeted to some regional-based businesses, such as department stores or grocery stores, to be served. Another type of targeting uses the accessed information to infer that the user has a particular interest, e.g., if a user searches a business directory for a business in a particular category, such as photography or skiing. In this system, some ads may be designed to go to all users, regardless of location or specific interests, while other ads may be targeted based on whatever triggering events are desired.<br><br>*See also* Figs. 1-6b and associated text.<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 6* | |
| [6a] The method of claim 1, wherein: the service request includes an IP address for | Alberts discloses that the service request includes an IP address for identifying the first type network node. |

- 25 -

Appendix B-16

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,477 Over U.S. Patent No. 5,937,392 (Alberts)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,937,392 (Alberts) |
|---|---|
| identifying the first type network node, and | *See* col. 2, lines 55-67.<br><br>Internet 10 is a large interconnected network of computers, a subset of which is the World Wide Web. Users can access servers to obtain information over the web with a conventional web browser 11. In a system according to the present invention, an accessible web site 8 has a number of web servers 12 in communication with the Internet for responding to users by providing files or information from databases. Each web server 12 has an advertising (ad) server 14 that has known, conventional data insertion tools for causing one or more ads, such as banner ads that also serve as HTML links, to be displayed when a page of information, such as a file or database information, is returned to a user who accesses web site 8.<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [6b] identifying the first type network node based on the service request comprises using the IP address included in the service request to identify the first type network node. | Alberts discloses identifying the first type network node based on the service request comprises using the IP address included in the service request to identify the first type network node.<br><br>*See* col. 2, lines 55-67.<br><br>Internet 10 is a large interconnected network of computers, a subset of which is the World Wide Web. Users can access servers to obtain information over the web with a conventional web browser 11. In a system according to the present invention, an accessible web site 8 has a number of web servers 12 in communication with the Internet for responding to users by providing files or information from databases. Each web server 12 has an advertising (ad) server 14 that has known, conventional data insertion tools for causing one or more ads, such as banner ads that also serve as HTML links, to be displayed when a page of information, such as a file or database information, is returned to a |

Appendix B-16

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,477 Over U.S. Patent No. 5,937,392 (Alberts)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,937,392 (Alberts) |
|---|---|
| | user who accesses web site 8. To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 7* | |
| [7a] A method for providing web page customization service to a plurality of first type network nodes at a second type network node, comprising the steps of: | Alberts discloses a method for providing web page customization service to a plurality of first type network nodes at a second type network node. *See* claim limitation [1a]. To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [7b] forming at least a page file for each of the first type network nodes; | Alberts discloses forming at least a page file for each of the first type network nodes. *See* claim limitation [1b]. To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [7c] forming at least a page file for the second type network node; | Alberts discloses forming at least a page file for the second type network node. *See* claim limitation [1c]. To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill |

- 27 -

Appendix B-16

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,477 Over U.S. Patent No. 5,937,392 (Alberts)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,937,392 (Alberts) |
|---|---|
| | and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [7d] receiving a service request from one of the first type network nodes; | Alberts discloses receiving a service request from one of the first type network nodes. *See* claim limitation [1d]. To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [7e] determining whether the first type network node participates in the web page customization service; | Alberts discloses determining whether the first type network node participates in the web page customization service. *See* claim limitation [1e]. To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [7f] if the first type network node participates in the web page customization service, forming a customized page file for the service request by including the page file formed for the first type network node within the page file formed for the second type network node; and | Alberts discloses, if the first type network node participates in the web page customization service, forming a customized page file for the service request by including the page file formed for the first type network node within the page file formed for the second type network node. *See* claim limitation [1f]. To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [7g] if the first type network | Alberts discloses, if the first type network node does not participate in the web page customization |

**Appendix B-16**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,477 Over U.S. Patent No. 5,937,392 (Alberts)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,937,392 (Alberts) |
|---|---|
| node does not participate in the web page customization service, forming a page file for the service request by using the page file formed for the second type network node. | service, forming a page file for the service request by using the page file formed for the second type network node.<br><br>For example, Alberts discloses dynamically forming web pages customized to show targeted advertisements to visitors to the web page. Alberts discloses that advertisements are identified for inclusion into a web page based on a number of criteria, including to target particular interests or geographic locations. *See* claim limitations [1a] to [1f]. It would be understood that if an advertisement is targeted only to certain criteria, it would not be shown to users not meeting those criteria<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 8* | |
| [8] The method of claim 7, wherein the first type network nodes are ISP nodes, and the second type network node is an ICP node. | Alberts discloses that the first type network node are ISP nodes, and the second type network node is an ICP node.<br><br>*See* claim limitation [2].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 9* | |
| [9] The method of claim 7, wherein the first type network nodes are organization nodes, and the second type network | Alberts discloses that the first type network node are organization nodes, and the second type network node is an ICP node. |

- 29 -

Appendix B-16

Invalidity of the Asserted Claims of U.S. Patent No. 6,442,477 Over U.S. Patent No. 5,937,392 (Alberts)

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,937,392 (Alberts) |
|---|---|
| node is an ICP node. | *See* claim limitation [3].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 10* | |
| [10] The method of claim 7, wherein the customized page file includes customized graphics, sounds, applets, links, and text. | Alberts discloses that the customized page file includes customized graphics, sounds, applets, links, and text.<br><br>*See* claim limitation [4].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 11* | |
| [11] The method of claim 7, wherein the customized page file includes customized advertisements. | Alberts discloses that the customized page file includes customized advertisements.<br><br>*See* claim limitation [5].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 12* | |
| [12a] The method of claim 7, wherein: the service request from one of the first type | Alberts discloses that the service request from one of the first type network nodes includes an IP address for identifying the first type network node. |

**Appendix B-16**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,477 Over U.S. Patent No. 5,937,392 (Alberts)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,937,392 (Alberts) |
|---|---|
| network nodes includes an IP address for identifying the first type network node, and | *See* claim limitation [6a].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [12b] determining whether the first type network node participates in the web page customization service comprises using the IPI address included in the service request to identify the first type network node. | Alberts discloses determining whether the first type network node participates in the web page customization service comprises using the IPI address included in the service request to identify the first type network node.<br><br>*See* claim limitation [6b].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 13* | |
| [13a] A method for providing web page customization service to a plurality of first type network nodes at a second type network node, comprising the steps of: | Alberts discloses a method for providing web page customization service to a plurality of first type network nodes at a second type network node.<br><br>*See* claim limitation [1a].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [13b] forming a plurality of advertisements for the first type network nodes; | Alberts discloses forming a plurality of advertisements for the first type network nodes.<br><br>*See* claim limitations [1b] and [5].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it |

**Appendix B-16**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,477 Over U.S. Patent No. 5,937,392 (Alberts)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,937,392 (Alberts) |
|---|---|
| | would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [13c] forming at least a page file for the second type network node; | Alberts discloses forming at least a page file for the second type network node.<br><br>*See* claim limitation [1c].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [13d] receiving a service request from one of the first type network nodes; | Alberts discloses receiving a service request from one of the first type network nodes.<br><br>*See* claim limitation [1d].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [13e] identifying advertisements for the first type network node; and | Alberts discloses identifying advertisements for the first type network node.<br><br>*See* claim limitations [1e] and [5].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [13f] forming a customized page file for the first type network node by including the identified advertisements | Alberts discloses forming a customized page file for the first type network node by including the identified advertisements within the page file formed for the second type network node.<br><br>*See* claim limitation [1f]. |

**Appendix B-16**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,477 Over U.S. Patent No. 5,937,392 (Alberts)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,937,392 (Alberts) |
|---|---|
| within the page file formed for the second type network node. | To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 14* | |
| [14] The method of claim 13, wherein the first type network nodes are ISP nodes, and the second type network node is an ICP node. | Alberts discloses that the first type network node are ISP nodes, and the second type network node is an ICP node.<br><br>*See* claim limitation [2].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 15* | |
| [15] The method of claim 13, wherein the first type network nodes are organization nodes, and the second type network node is an ICP node. | Alberts discloses that the first type network node are organization nodes, and the second type network node is an ICP node.<br><br>*See* claim limitation [3].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 16* | |
| [16] The method of claim 13, wherein the identified advertisements do not cause | Alberts discloses that the identified advertisements do not cause negative impact on the owner of the first type network node.<br><br>For example, Alberts discloses that customized advertisements could be served to users based on the |

- 33 -

Appendix B-16

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,477 Over U.S. Patent No. 5,937,392 (Alberts)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,937,392 (Alberts) |
|---|---|
| negative impact on the owner of the first type network node. | user's interests. *See* claim limitations [1a] to [1f]. This does not have a negative impact on the user or the user's ISP or organization. |
| *Claim 17* | |
| [17a] An apparatus for dynamically forming a customized web page for a first type network node at a second type network node, comprising: | Alberts discloses an apparatus for dynamically forming a customized web page for a first type network node at a second type network node.<br><br>*See* claim limitation [1a].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [17b] means for forming at least a page file for the first type network node; | Alberts discloses means for forming at least a page file for the first type network node.<br><br>*See* claim limitation [1b].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [17c] means for forming at least a page file for the second type network node; | Alberts discloses means for forming at least a page file for the second type network node.<br><br>*See* claim limitation [1c].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [17d] means for receiving a service request from the first | Alberts discloses means for receiving a service request from the first type network node. |

Appendix B-16

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,477 Over U.S. Patent No. 5,937,392 (Alberts)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,937,392 (Alberts) |
|---|---|
| type network node; | *See* claim limitation [1d].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [17e] means for identifying the first type network node based on the service request; and | Alberts discloses means for identifying the first type network node based on the service request.<br><br>*See* claim limitation [1e].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [17f] means for forming a customized page file formed for the first type network node by including the page file formed for the first type network node within the page file for the second type network node. | Alberts discloses means for forming a customized page file formed for the first type network node by including the page file formed for the first type network node within the page file for the second type network node.<br><br>*See* claim limitation [1f].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 18* | |
| [18] The apparatus of claim 17, wherein the first type network node is an ISP node, and the second type network | Alberts discloses that the first type network node is an ISP node, and the second type network node is an ICP node.<br><br>*See* claim limitation [2].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it |

- 35 -

**Appendix B-16**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,477 Over U.S. Patent No. 5,937,392 (Alberts)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,937,392 (Alberts) |
|---|---|
| node is an ICP node. | would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 19* | |
| [19] The apparatus of claim 17, wherein the first type network node is an organization node, and the second type network node is an ICP node. | Alberts discloses that the first type network node is an organization node, and the second type network node is an ICP node.<br><br>*See* claim limitation [3].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 20* | |
| [20] The apparatus of claim 17, wherein the customized page file includes customized graphics, sounds, applets, links, and text. | Alberts discloses that the customized page file includes customized graphics, sounds, applets, links, and text.<br><br>*See* claim limitation [4].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 21* | |
| [21] The apparatus of claim 17, wherein the customized page file includes customized advertisements. | Alberts discloses that the customized page file includes customized advertisements.<br><br>*See* claim limitation [5].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it |

Appendix B-16

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,477 Over U.S. Patent No. 5,937,392 (Alberts)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,937,392 (Alberts) |
|---|---|
| | would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 22* | |
| [22a] An apparatus for providing web page customization service to a plurality of first type network nodes at a second type network node, comprising: | Alberts discloses an apparatus for providing web page customization service to a plurality of first type network nodes at a second type network node.<br><br>*See* claim limitation [7a].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [22b] means for forming at least a page file for each of the first type network nodes; | Alberts discloses means for forming at least a page file for each of the first type network nodes.<br><br>*See* claim limitation [7b].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [22c] means for forming at least a page file for the second type network node; | Alberts discloses means for forming at least a page file for the second type network node.<br><br>*See* claim limitation [7c].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [22d] means for receiving a service request from one of | Alberts discloses means for receiving a service request from one of the first type network nodes. |

**Appendix B-16**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,477 Over U.S. Patent No. 5,937,392 (Alberts)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,937,392 (Alberts) |
|---|---|
| the first type network nodes; | *See* claim limitation [7d].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [22e] means for determining whether the first type network node participates in the web page customization service; | Alberts discloses means for determining whether the first type network node participates in the web page customization service.<br><br>*See* claim limitation [7e].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [22f] means for forming a customized page file for the service request by including the page file formed for the first type network node within the page file formed for the second type network node, if the first type network node participates in the web page customization service; and | Alberts discloses means for forming a customized page file for the service request by including the page file formed for the first type network node within the page file formed for the second type network node, if the first type network node participates in the web page customization service.<br><br>*See* claim limitation [7f].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [22g] means for forming a page file for the service request by using the page file formed for the second type network node, if the first type | Alberts discloses means for forming a page file for the service request by using the page file formed for the second type network node, if the first type network node does not participate in the web page customization service. |

- 38 -

Appendix B-16

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,477 Over U.S. Patent No. 5,937,392 (Alberts)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,937,392 (Alberts) |
|---|---|
| network node does not participate in the web page customization service. | *See* claim limitation [7g].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 23* | |
| [23] The apparatus of claim 22, wherein the first type network nodes are ISP nodes, and the second type network node is an ICP node. | Alberts discloses that the first type network node are ISP nodes, and the second type network node is an ICP node.<br><br>*See* claim limitation [2].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 24* | |
| [24] The apparatus of claim 22, wherein the first type network nodes are organization nodes, and the second type network node is an ICP node. | Alberts discloses that the first type network node are organization nodes, and the second type network node is an ICP node.<br><br>*See* claim limitation [3].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 25* | |
| [25] The apparatus of claim 22, wherein the customized | Alberts discloses that the customized page file includes customized graphics, sounds, applets, links, |

**Appendix B-16**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,477 Over U.S. Patent No. 5,937,392 (Alberts)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,937,392 (Alberts) |
|---|---|
| page file includes customized graphics, sounds, applets, links, and text. | and text.<br><br>*See* claim limitation [4].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 26* | |
| [26] The apparatus of claim 25, wherein the customized page file includes customized advertisements. | Alberts discloses that the customized page file includes customized advertisements.<br><br>*See* claim limitation [5].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 27* | |
| [27a] An apparatus for providing web page customization service to a plurality of first type network nodes at a second type network node, comprising: | Alberts discloses an apparatus for providing web page customization service to a plurality of first type network nodes at a second type network node.<br><br>*See* claim limitation [13a].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [27b] means for forming a plurality of advertisements for | Alberts discloses means for forming a plurality of advertisements for the first type network nodes. |

- 40 -

Appendix B-16

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,477 Over U.S. Patent No. 5,937,392 (Alberts)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,937,392 (Alberts) |
|---|---|
| the first type network nodes; | *See* claim limitation [13b].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [27c] means for forming at least a page file for the second type network node; | Alberts discloses means for forming at least a page file for the second type network node.<br><br>*See* claim limitation [13c].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [27d] means for receiving a service request from one of the first type network nodes; | Alberts discloses means for receiving a service request from one of the first type network nodes.<br><br>*See* claim limitation [13d].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [27e] means for identifying advertisements for the first type network node; and | Alberts discloses means for identifying advertisements for the first type network node.<br><br>*See* claim limitation [13e].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [27f] means for forming a customized page file for the | Alberts discloses means for forming a customized page file for the first type network node by |

**Appendix B-16**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,477 Over U.S. Patent No. 5,937,392 (Alberts)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,937,392 (Alberts) |
|---|---|
| first type network node by including the identified advertisements within the page file formed for the second type network node. | including the identified advertisements within the page file formed for the second type network node.<br><br>*See* claim limitation [13f].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 28* | |
| [28] The apparatus of claim 27, wherein the first type network nodes are ISP nodes, and the second type network node is an ICP node. | Alberts discloses that the first type network node are ISP nodes, and the second type network node is an ICP node.<br><br>*See* claim limitation [2].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 29* | |
| [29] The apparatus of claim 27, wherein the first type network nodes are organization nodes, and the second type network node is an ICP node. | Alberts discloses that the first type network node are organization nodes, and the second type network node is an ICP node.<br><br>*See* claim limitation [3].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 30* | |

**Appendix B-16**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,477 Over U.S. Patent No. 5,937,392 (Alberts)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,937,392 (Alberts) |
|---|---|
| [30] The apparatus of claim 27, wherein the identified advertisements do not cause negative impact on the owner of the first type network node. | Alberts discloses that the identified advertisements do not cause negative impact on the owner of the first type network node.<br><br>*See* claim limitation [16].<br><br>To the extent it is found that this reference does not disclose this limitation expressly or inherently, it would have been obvious to combine this reference with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter.  *See* Appendix C. |

**Appendix B-17**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,477 Over U.S. Patent No. 5,948,061 (Merriman '061)**

U.S. Patent No. 5,948,061 to Merriman et al. ("Merriman '061") is prior art to U.S. Patent No. 6,442,577 ("the '577 patent") under 35 U.S.C. 102(e) because it issued from a U.S. patent application filed on Oct. 29, 1996, which is prior to the Nov. 3, 1998 filing date of the '577 patent.

As detailed in this chart, Merriman '061 anticipates claims 1–30 of the '577 patent. In addition or in the alternative, claims 1–30 of the '577 patent are obvious over Merriman '061 in view of the knowledge of a person of ordinary skill and/or one or more other references, as detailed in Appendix C.

This chart is based in whole or in part on the present understanding of positions taken by PageMelding regarding the coverage, scope and construction of the asserted claims to the extent those positions can be deduced from PageMelding's contentions pursuant to Patent Local Rule 3-1 served on August 3, 2012. Nothing herein is an admission that PageMelding's infringement contentions are correct, an admission that Plaintiff's apparent claim constructions are correct, or an admission that ESPN's technology infringes any asserted claim.

**Appendix B-17**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,477 Over U.S. Patent No. 5,948,061 (Merriman '061)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,948,061 (Merriman '061) |
|---|---|
| *Claim 1* | |
| [1a] A method for dynamically forming customized web pages for a first type network node at a second type network node, comprising the steps of: | Merriman '061 discloses a method for dynamically forming customized web pages for a first type network node at a second type network node. For example, an affiliate web site and/or an advertisement server (either of which can be a second type network node) form customized web pages for a user (which can also be a network, an organization, and/or an ISP). The user uses a computer, PDA, or other Internet capable device (first type network node). The customized web pages include content from the affiliate web site and targeted advertisements from the advertisement server. |
| | *See* Abstract. |
| | Methods and apparatuses for targeting the delivery of advertisements over a network such as the Internet are disclosed. Statistics are compiled on individual users and networks and the use of the advertisements is tracked to permit targeting of the advertisements of individual users. In response to requests from affiliated sites, an advertising server transmits to people accessing the page of a site an appropriate one of the advertisement based upon profiling of users and networks. |
| | *See also* col. 1, lines 8-11. |
| | This invention relates to methods of delivery of advertisements and measuring responses to those delivered advertisements and in particular relates to the targeting of advertisements delivered over networks such as the Internet. |
| | *See also* col. 1, lines 45-53. |
| | Nonetheless, such advertising has had, so far, a poor rate of response because it is untargeted advertising. Thus, someone who is totally uninterested in computers other than they happen to be on the Internet, may continually see advertisements for computers. On the other hand, someone who is interested in computers may continually see advertisements for gardening tools when browsing through a particular web site. Thus it would be highly desirable to have a |

**Appendix B-17**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,477 Over U.S. Patent No. 5,948,061 (Merriman '061)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,948,061 (Merriman '061) |
|---|---|
| | method of targeting the advertising to the appropriate user. |
| | *See also* col. 2, lines 6–36.<br>These and other objects of the invention are achieved by the disclosed system and methods. Information about networks and subnetworks is routinely collected. In addition, information about individual users is also gathered when users select (click on) different advertisements. Also, data is tracked on how often a given advertisement has been displayed, how often a given user has seen a given advertisement, and other information regarding the user and the frequency of the display of the advertisement.  To effect such a capability, an advertising server process is provided as a node on the network. The various advertisements are stored on the network of the server and preferably on the server. When, for example, a user using a web browser accesses a web page that is affiliated with the advertising server process, the affiliated page's encoding includes an embedded reference to an object provided by the advertising server process. That causes the user's browser to contact the advertising server process to provide the advertising image or information that will appear on the accessed web page as displayed by the user's browser. Using the address information and/or other information passed by the browser for the user, including the page being accessed by the user, the advertising server process determines an appropriate advertisement to select for the particular user. In addition, the advertising server process will use information such as the number of times the user has seen various advertisements, how often the advertisement has been seen by any user and the start and stop date for the various advertisements to select which advertisement to transmit to the user's web page for display.<br><br>*See also* col. 2, line 59 to col. 3, line 4.<br>The basic architecture of the network 10 comprises at least one affiliate web site 12, an advertisement (ad) server web site 19 and one or more individual advertiser's web sites 18. Affiliates are one or more entities that generally for a fee contract with the entity providing the advertisement server permit third party advertisements to be displayed on their web sites. When a user using a browser accesses or "visits" a web site of an affiliate, an advertisement provided |

**Appendix B-17**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,477 Over U.S. Patent No. 5,948,061 (Merriman '061)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,948,061 (Merriman '061) |
|---|---|
|  | by the advertisement server 19 will be superimposed on the display of the affiliate's web page displayed by the user's browser. Examples of appropriate affiliates include locator services, service providers, and entities that have popular web sites such as museums, movie studios, etc. <br><br> *See also* col. 3, lines 24–28. <br> In FIG. 1, a user operates a web browser, such as Netscape or Microsoft Internet Explorer, on a computer or PDA or other Internet capable device 16 to generate through the hypertext transfer protocol (HTTP) 14 a request 20 to any one of preferably a plurality of affiliate web sites 12. <br><br> *See also* col. 4, lines 12–20. <br> While in the above embodiments, the user is a computer on an IP network using a browser, the affiliate web sites are web pages of affiliates located somewhere on the Internet and the ad server is a particular node on the Internet, other setups are also possible. The affiliates may be ISP's or may be actual dedicated web servers and the users may be an entire network instead of an individual browsing on a single computer with a browser. <br><br> *See also* col. 9, lines 5-16. <br> Still further, those of ordinary skill in the field will also understand that while the advertising server, the affiliate web site and the advertiser's web site are described as being in different geographic locations, that is not required.  Still further, while the advertising server process, reporting process, derive profile process and management process are described as being implemented on one computer platform performing all of the above described functions, it is readily understood by those of skill that any or all of these functions may be implemented on one or more different computers and further that these processes may be performed at different nodes on the network. <br><br> *See also* Figs. 1-3C and associated text. <br><br> *See also* claim limitations [1b] through [1f]. |

Appendix B-17

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,477 Over U.S. Patent No. 5,948,061 (Merriman '061)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,948,061 (Merriman '061) |
|---|---|
| | To the extent it is found that Merriman '061 does not disclose this feature expressly or inherently, it would have been obvious to combine Merriman '061 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [1b] forming at least a page file for the first type network node; | Merriman '061 discloses forming at least a page file for the first type network node. For example, the advertising server forms a targeted advertisement for the user (first type network node) based on the user's IP address, Internet service provider, and/or organization type. A targeted advertisement is a page file, such as an advertisement banner (e.g., in a GIF or JPEG file format), an icon, or a video or an audio clip.<br><br>*See* col. 1, lines 29–44.<br>The recent development of on-line networks, such as America On-Line, Compuserve, and the Internet, has led to "on-line" advertising. For example, on the Internet, often such on-line advertisements will appear on a web page, such as a banner on the top or the bottom of the page. When the user views a web page using a browser such as Internet Explorer 3 or Netscape 3, the banner appears at the appropriate location and the user may then try to find out more information regarding the advertisement by selecting the advertisement (clicking through on that banner) through the use of the mouse or other pointing device. This will cause a HTTP message to be generated by the browser using the information encapsulated in association with the banner to send a request for an object with a given URL address to a different appropriate web site to access, for example, the advertiser's home page.<br><br>*See also* col. 2, lines 15–35.<br>To effect such a capability, an advertising server process is provided as a node on the network. The various advertisements are stored on the network of the server and preferably on the server. When, for example, a user using a web browser accesses a web page that is affiliated with the advertising server process, the affiliated page's encoding includes an embedded reference to an object provided by the advertising server process. That causes the user's browser to contact the |

- 5 -

**Appendix B-17**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,477 Over U.S. Patent No. 5,948,061 (Merriman '061)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,948,061 (Merriman '061) |
|---|---|
| | advertising server process to provide the advertising image or information that will appear on the accessed web page as displayed by the user's browser. Using the address information and/or other information passed by the browser for the user, including the page being accessed by the user, the advertising server process determines an appropriate advertisement to select for the particular user. In addition, the advertising server process will use information such as the number of times the user has seen various advertisements, how often the advertisement has been seen by any user and the start and stop date for the various advertisements to select which advertisement to transmit to the user's web page for display.<br><br>*See also* col. 2, line 59 to col. 3, line 4.<br>The basic architecture of the network 10 comprises at least one affiliate web site 12, an advertisement (ad) server web site 19 and one or more individual advertiser's web sites 18. Affiliates are one or more entities that generally for a fee contract with the entity providing the advertisement server permit third party advertisements to be displayed on their web sites. When a user using a browser accesses or "visits" a web site of an affiliate, an advertisement provided by the advertisement server 19 will be superimposed on the display of the affiliate's web page displayed by the user's browser. Examples of appropriate affiliates include locator services, service providers, and entities that have popular web sites such as museums, movie studios, etc.<br><br>*See also* col. 3, lines 5-23.<br>The basic operation of the system is as follows in the preferred embodiment. When a user browsing on the Internet accesses an affiliate's web site 12, the user's browser generates an HTTP message 20 to get the information for the desired web page. The affiliate's web site in response to the message 20 transmits one or more messages back 22 containing the information to be displayed by the user's browser. In addition, an advertising server process 19 will provide additional information comprising one or more objects such as banner advertisements to be displayed with the information provided from the affiliate web site. Normally, the computers supporting the browser, the affiliate web site and the advertising server process will be at entirely different nodes on the Internet. Upon clicking through or otherwise selecting the |

**Appendix B-17**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,477 Over U.S. Patent No. 5,948,061 (Merriman '061)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,948,061 (Merriman '061) |
|---|---|
| | advertisement object, which may be an image such as an advertisement banner, an icon, or a video or an audio clip, the browser ends up being connected to the advertiser's server or web site 18 for that advertisement object.<br><br>*See also* col. 3, lines 24-63.<br>In FIG. 1, a user operates a web browser, such as Netscape or Microsoft Internet Explorer, on a computer or PDA or other Internet capable device 16 to generate through the hypertext transfer protocol (HTTP) 14 a request 20 to any one of preferably a plurality of affiliate web sites 12. The affiliate web site sends one or more messages back 22 using the same protocol. Those messages 22 preferably contain all of the information available at the particular web site 12 for the requested page to be displayed by the user's browser 16 except for one or more advertising objects such as banner advertisements. These objects preferably do not reside on the affiliate's web server. Instead, the affiliate's web server sends back a link including an IP address for a node running an advertiser server process 19 as well as information about the page on which the advertisement will be displayed. The link by way of example may be a hypertext markup language (HTML) <img> tag, referring to, for example, an inline image such as a banner. The user's browser 16 then transmits a message 23 using the received IP address to access such an object indicated by the HTML tag from the advertisement server 19. Included in each message 23 typically to the advertising server 19 are: (i) the user's IP address, (ii) a cookie if the browser 16 is cookie enabled and stores cookie information, (iii) a substring key indicating the page in which the advertisement to be provided from the server is to be embedded, and (iv) MIME header information indicating the browser type and version, the operating system of the computer on which the browser is operating and the proxy server type. Upon receiving the request in the message 23, the advertising server process 19 determines which advertisement or other object to provide to user's browser and transmits the messages 24 containing the object such as a banner advertisement to the user's browser 16 using the HTTP protocol. Preferably contained within the HTTP message is a unique identifier for the advertiser's web page appropriate for the advertisement. That advertisement object is then displayed on the image created by the web user's browser as a composite of the received affiliate's web page plus the |

**Appendix B-17**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,477 Over U.S. Patent No. 5,948,061 (Merriman '061)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,948,061 (Merriman '061) |
|---|---|
| | object transmitted back by the advertising web server. <br><br> *See also* col. 4, lines 12-19. <br> While in the above embodiments, the user is a computer on an IP network using a browser, the affiliate web sites are web pages of affiliates located somewhere on the Internet and the ad server is a particular node on the Internet, other setups are also possible. The affiliates may be ISP's or may be actual dedicated web servers and the users may be an entire network instead of an individual browsing on a single computer with a browser. <br><br> *See also* col. 4, lines 20-43. <br> FIG. 2 shows the ad server architecture. The ad server, which may comprise one or more servers uses a database 54 that will be described below and performs reporting processes 59, management processes 58, derivation of profile processes 52 and advertisement processes 19. The derive profile process 52 is how the advertisement server gathers information about individual users or TCP/IP networks for individual users. Advertisements, which may be advertisement banners are stored within the ad server process 19 as part of the advertising server process 19 and are periodically updated and refreshed. The advertisement server process 19 is used for responding to requests from advertisements provided by the user's as described above. The management process 58 is used for updating the various advertisements and overall control of the advertising server process 19 and also permits the advertisers to interface with the database to obtain up to the date reports on the placement of the advertisements. The report process 59 is used for generating online reports about the success rate of the advertisement and statistics on the users that are viewing and clicking through on various advertisements and also updating the counters in the database that store how often an advertisement has been displayed. <br><br> *See also* col. 4, lines 44-55. <br> The basic database structure is shown in FIG. 3. For each user identified by the system as shown in FIG. 3A, a user identification, IP address, domain type, time zone, location of the user, standard industrial code for the user's network, the particular advertisements seen and the |

- 8 -

**Appendix B-17**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,477 Over U.S. Patent No. 5,948,061 (Merriman '061)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,948,061 (Merriman '061) |
|---|---|
| | number of times each such advertisement is seen, the advertisements that were selected or "clicked on" and the pages on which the various users' advertisements were seen is collected. By using the information such as which advertisements a user has expressed interest in and which pages the user was viewing when the user clicked through along with other information, targeted Internet advertising is possible.<br><br>*See also* col. 4, lines 56–64.<br>FIG. 3B shows a database structure for the advertisements. Included in the information for an advertisement are an identifier for the advertisement, the start date for the advertisement being carried, the last date the advertisement is to be carried, the total number of people who have viewed the advertisements, the target or the minimum number of times the advertisement is to be viewed, acceptable viewers by their web site's SICS (Standard Industry Codes), clicked through and pages that the advertisements are seen on.<br><br>*See also* col. 5, line 64 to col. 6, line 11.<br>Each advertisement along with a table of the targeting profile criteria for the advertisement and other data regarding the advertisement currently available is stored in a database such as shown in FIG. 3B. The actual advertising object, which may be a banner image in a GIF or JPEG file format, an icon for an audio or video clip or some other object is kept as part of the advertising server process. This information may include targeted consumers by SIC, country, organization type and type of advertisements previously selected by the user. For any of the advertisements currently provided for which there is a match (for example there may be several advertisements targeted at people interested in computers), the next step is to determine which of the advertisements for which there is a match should be selected.<br><br>*See also* col. 9, lines 45–54.<br>4. A network in accordance with claim 3, wherein said advertisement server node selects said advertiser node based on at least one of the characteristics of said user selected from the group consisting of user ID, IP address, user cookie, user login code, user digital certificate, |

**Appendix B-17**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,477 Over U.S. Patent No. 5,948,061 (Merriman '061)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,948,061 (Merriman '061) |
|---|---|
| | geographic location, time zone, country, domain type, Internet service provider, organization type, employer, industry type, company size, number of employees, types of advertisements previously viewed and types of advertisements previously clicked. |
| | *See also* col. 10, lines 21–30; col. 11, lines 22–31; col. 12, lines 8–17; col. 13, lines 15–24 and 28–38; col. 14, line 63 to col. 15, line 5. |
| | *See also* Figs. 1-3C and associated text. |
| | To the extent it is found that Merriman '061 does not disclose this feature expressly or inherently, it would have been obvious to combine Merriman '061 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [1c] forming at least a page file for the second type network node; | Merriman '061 discloses forming at least a page file for the second type network node. For example, an affiliate web site forms a web page which includes an embedded reference to an object provided by the advertising server. The affiliate web site's web page is a page file. The web page is not customized for the user, therefore it is formed for the second type network node. |
| | *See* col. 1, lines 29–44.<br>The recent development of on-line networks, such as America On-Line, Compuserve, and the Internet, has led to "on-line" advertising. For example, on the Internet, often such on-line advertisements will appear on a web page, such as a banner on the top or the bottom of the page. When the user views a web page using a browser such as Internet Explorer 3 or Netscape 3, the banner appears at the appropriate location and the user may then try to find out more information regarding the advertisement by selecting the advertisement (clicking through on that banner) through the use of the mouse or other pointing device. This will cause a HTTP message to be generated by the browser using the information encapsulated in association with |

**Appendix B-17**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,477 Over U.S. Patent No. 5,948,061 (Merriman '061)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,948,061 (Merriman '061) |
|---|---|
| | the banner to send a request for an object with a given URL address to a different appropriate web site to access, for example, the advertiser's home page. |
| | *See also* col. 2, lines 15-35. |
| | To effect such a capability, an advertising server process is provided as a node on the network. The various advertisements are stored on the network of the server and preferably on the server. When, for example, a user using a web browser accesses a web page that is affiliated with the advertising server process, the affiliated page's encoding includes an embedded reference to an object provided by the advertising server process. That causes the user's browser to contact the advertising server process to provide the advertising image or information that will appear on the accessed web page as displayed by the user's browser. Using the address information and/or other information passed by the browser for the user, including the page being accessed by the user, the advertising server process determines an appropriate advertisement to select for the particular user. In addition, the advertising server process will use information such as the number of times the user has seen various advertisements, how often the advertisement has been seen by any user and the start and stop date for the various advertisements to select which advertisement to transmit to the user's web page for display. |
| | *See also* col. 2, line 59 to col. 3, line 4. |
| | The basic architecture of the network 10 comprises at least one affiliate web site 12, an advertisement (ad) server web site 19 and one or more individual advertiser's web sites 18. Affiliates are one or more entities that generally for a fee contract with the entity providing the advertisement server permit third party advertisements to be displayed on their web sites. When a user using a browser accesses or "visits" a web site of an affiliate, an advertisement provided by the advertisement server 19 will be superimposed on the display of the affiliate's web page displayed by the user's browser. Examples of appropriate affiliates include locator services, service providers, and entities that have popular web sites such as museums, movie studios, etc. |

**Appendix B-17**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,477 Over U.S. Patent No. 5,948,061 (Merriman '061)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,948,061 (Merriman '061) |
|---|---|
| | *See also* col. 3, lines 5-23. |
| | The basic operation of the system is as follows in the preferred embodiment. When a user browsing on the Internet accesses an affiliate's web site 12, the user's browser generates an HTTP message 20 to get the information for the desired web page. The affiliate's web site in response to the message 20 transmits one or more messages back 22 containing the information to be displayed by the user's browser. In addition, an advertising server process 19 will provide additional information comprising one or more objects such as banner advertisements to be displayed with the information provided from the affiliate web site. Normally, the computers supporting the browser, the affiliate web site and the advertising server process will be at entirely different nodes on the Internet. Upon clicking through or otherwise selecting the advertisement object, which may be an image such as an advertisement banner, an icon, or a video or an audio clip, the browser ends up being connected to the advertiser's server or web site 18 for that advertisement object. |
| | *See also* col. 3, lines 24-63. |
| | In FIG. 1, a user operates a web browser, such as Netscape or Microsoft Internet Explorer, on a computer or PDA or other Internet capable device 16 to generate through the hypertext transfer protocol (HTTP) 14 a request 20 to any one of preferably a plurality of affiliate web sites 12. The affiliate web site sends one or more messages back 22 using the same protocol. Those messages 22 preferably contain all of the information available at the particular web site 12 for the requested page to be displayed by the user's browser 16 except for one or more advertising objects such as banner advertisements. These objects preferably do not reside on the affiliate's web server. Instead, the affiliate's web server sends back a link including an IP address for a node running an advertiser server process 19 as well as information about the page on which the advertisement will be displayed. The link by way of example may be a hypertext markup language (HTML) <img> tag, referring to, for example, an inline image such as a banner. The user's browser 16 then transmits a message 23 using the received IP address to access such an object indicated by the HTML tag from the advertisement server 19. Included in each message 23 typically to the advertising server 19 are: (i) the user's IP address, (ii) a cookie if the |

**Appendix B-17**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,477 Over U.S. Patent No. 5,948,061 (Merriman '061)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,948,061 (Merriman '061) |
|---|---|
| | browser 16 is cookie enabled and stores cookie information, (iii) a substring key indicating the page in which the advertisement to be provided from the server is to be embedded, and (iv) MIME header information indicating the browser type and version, the operating system of the computer on which the browser is operating and the proxy server type. Upon receiving the request in the message 23, the advertising server process 19 determines which advertisement or other object to provide to user's browser and transmits the messages 24 containing the object such as a banner advertisement to the user's browser 16 using the HTTP protocol. Preferably contained within the HTTP message is a unique identifier for the advertiser's web page appropriate for the advertisement. That advertisement object is then displayed on the image created by the web user's browser as a composite of the received affiliate's web page plus the object transmitted back by the advertising web server. <br><br> *See also* Figs. 1-3C and associated text. <br><br> To the extent it is found that Merriman '061 does not disclose this feature expressly or inherently, it would have been obvious to combine Merriman '061 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [1d] receiving a service request from the first type network node; | Merriman '061 discloses receiving a service request from the first type network node. For example, when a user accesses a web page on the affiliate web site, the affiliate web site receives an HTTP service request from the user's browser (first type network node). In response, the affiliate web site provides information that causes the user's browser to send an HTTP service request to the advertisement server. The advertisement server receives the service request from the user's browser (first type network node). <br><br> *See* Abstract. <br> Methods and apparatuses for targeting the delivery of advertisements over a network such as the Internet are disclosed. Statistics are compiled on individual users and networks and the use |

- 13 -

**Appendix B-17**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,477 Over U.S. Patent No. 5,948,061 (Merriman '061)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,948,061 (Merriman '061) |
|---|---|
| | of the advertisements is tracked to permit targeting of the advertisements of individual users. In response to requests from affiliated sites, an advertising server transmits to people accessing the page of a site an appropriate one of the advertisement based upon profiling of users and networks.<br><br>*See also* col. 2, lines 15-35.<br>To effect such a capability, an advertising server process is provided as a node on the network. The various advertisements are stored on the network of the server and preferably on the server. When, for example, a user using a web browser accesses a web page that is affiliated with the advertising server process, the affiliated page's encoding includes an embedded reference to an object provided by the advertising server process. That causes the user's browser to contact the advertising server process to provide the advertising image or information that will appear on the accessed web page as displayed by the user's browser. Using the address information and/or other information passed by the browser for the user, including the page being accessed by the user, the advertising server process determines an appropriate advertisement to select for the particular user. In addition, the advertising server process will use information such as the number of times the user has seen various advertisements, how often the advertisement has been seen by any user and the start and stop date for the various advertisements to select which advertisement to transmit to the user's web page for display.<br><br>*See also* col. 3, lines 5-23.<br>The basic operation of the system is as follows in the preferred embodiment. When a user browsing on the Internet accesses an affiliate's web site 12, the user's browser generates an HTTP message 20 to get the information for the desired web page. The affiliate's web site in response to the message 20 transmits one or more messages back 22 containing the information to be displayed by the user's browser. In addition, an advertising server process 19 will provide additional information comprising one or more objects such as banner advertisements to be displayed with the information provided from the affiliate web site. Normally, the computers supporting the browser, the affiliate web site and the advertising server process will be at |

**Appendix B-17**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,477 Over U.S. Patent No. 5,948,061 (Merriman '061)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,948,061 (Merriman '061) |
|---|---|
|  | entirely different nodes on the Internet.  Upon clicking through or otherwise selecting the advertisement object, which may be an image such as an advertisement banner, an icon, or a video or an audio clip, the browser ends up being connected to the advertiser's server or web site 18 for that advertisement object. <br><br> *See also* col. 3, lines 24-63. <br> In FIG. 1, a user operates a web browser, such as Netscape or Microsoft Internet Explorer, on a computer or PDA or other Internet capable device 16 to generate through the hypertext transfer protocol (HTTP) 14 a request 20 to any one of preferably a plurality of affiliate web sites 12. The affiliate web site sends one or more messages back 22 using the same protocol. Those messages 22 preferably contain all of the information available at the particular web site 12 for the requested page to be displayed by the user's browser 16 except for one or more advertising objects such as banner advertisements.  These objects preferably do not reside on the affiliate's web server.  Instead, the affiliate's web server sends back a link including an IP address for a node running an advertiser server process 19 as well as information about the page on which the advertisement will be displayed.  The link by way of example may be a hypertext markup language (HTML) <img> tag, referring to, for example, an inline image such as a banner.  The user's browser 16 then transmits a message 23 using the received IP address to access such an object indicated by the HTML tag from the advertisement server 19.  Included in each message 23 typically to the advertising server 19 are:  (i) the user's IP address, (ii) a cookie if the browser 16 is cookie enabled and stores cookie information, (iii) a substring key indicating the page in which the advertisement to be provided from the server is to be embedded, and (iv) MIME header information indicating the browser type and version, the operating system of the computer on which the browser is operating and the proxy server type.  Upon receiving the request in the message 23, the advertising server process 19 determines which advertisement or other object to provide to user's browser and transmits the messages 24 containing the object such as a banner advertisement to the user's browser 16 using the HTTP protocol. Preferably contained within the HTTP message is a unique identifier for the advertiser's web page appropriate for the advertisement.  That advertisement object is then displayed on the image |

**Appendix B-17**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,477 Over U.S. Patent No. 5,948,061 (Merriman '061)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,948,061 (Merriman '061) |
|---|---|
| | created by the web user's browser as a composite of the received affiliate's web page plus the object transmitted back by the advertising web server.<br><br>*See also* col. 4, lines 12-19.<br>While in the above embodiments, the user is a computer on an IP network using a browser, the affiliate web sites are web pages of affiliates located somewhere on the Internet and the ad server is a particular node on the Internet, other setups are also possible. The affiliates may be ISP's or may be actual dedicated web servers and the users may be an entire network instead of an individual browsing on a single computer with a browser.<br><br>*See also* col. 4, lines 20-43.<br>FIG. 2 shows the ad server architecture. The ad server, which may comprise one or more servers uses a database 54 that will be described below and performs reporting processes 59, management processes 58, derivation of profile processes 52 and advertisement processes 19. The derive profile process 52 is how the advertisement server gathers information about individual users or TCP/IP networks for individual users. Advertisements, which may be advertisement banners are stored within the ad server process 19 as part of the advertising server process 19 and are periodically updated and refreshed. The advertisement server process 19 is used for responding to requests from advertisements provided by the user's as described above. The management process 58 is used for updating the various advertisements and overall control of the advertising server process 19 and also permits the advertisers to interface with the database to obtain up to the date reports on the placement of the advertisements. The report process 59 is used for generating online reports about the success rate of the advertisement and statistics on the users that are viewing and clicking through on various advertisements and also updating the counters in the database that store how often an advertisement has been displayed.<br><br>*See also* col. 5, lines 10-32.<br>In response to an incoming message to the advertising server process 19, the advertising server processes 19 first attempts to identify the user in FIG. 2. This can be accomplished by at least |

**Appendix B-17**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,477 Over U.S. Patent No. 5,948,061 (Merriman '061)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,948,061 (Merriman '061) |
|---|---|
| | one of two means. First, any incoming request for an image or a multimedia object is examined to determined the IP address of the requesting browser. The advertising server then notes whether a cookie was received in the MIME heading of the request. From these two pieces of information, a user identification is determined. If a cookie was detected, then the cookie contains the user's identification number that can be accessed in the database. If the user's browser is cookie enabled but no cookie is detected, then the request is from a new user so a user identification must be assigned to the user and that user's new identification number will be transmitted back to the users browser along with a write cookie instruction that causes the browser to write a cookie containing that unique identification number on the user's local drive for future accesses to affiliate sites. The cookie instruction is transmitted back with the advertisement messages 24. Alternatively, instead of using cookies, digital signatures or certificates or log ins uniquely identifying the user accessing the affiliate page may be used.<br><br>*See also* Figs. 1-2 and associated text.<br><br>To the extent it is found that Merriman '061 does not disclose this feature expressly or inherently, it would have been obvious to combine Merriman '061 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [1e] identifying the first type network node based on the service request; and | Merriman '061 discloses identifying the first type network node based on the service request. For example, the HTTP requests from the user's browser (first type network node) to the affiliate web site and the advertisement server both include the user's IP address. The affiliate web site and/or the advertising server identify the first type network node from the IP address and/or cookie included within the HTTP service request.<br><br>*See* Abstract.<br>Methods and apparatuses for targeting the delivery of advertisements over a network such as the Internet are disclosed. Statistics are compiled on individual users and networks and the use |

**Appendix B-17**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,477 Over U.S. Patent No. 5,948,061 (Merriman '061)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,948,061 (Merriman '061) |
|---|---|
| | of the advertisements is tracked to permit targeting of the advertisements of individual users. In response to requests from affiliated sites, an advertising server transmits to people accessing the page of a site an appropriate one of the advertisement based upon profiling of users and networks.<br><br>*See* col. 2, lines 15-35.<br>To effect such a capability, an advertising server process is provided as a node on the network. The various advertisements are stored on the network of the server and preferably on the server. When, for example, a user using a web browser accesses a web page that is affiliated with the advertising server process, the affiliated page's encoding includes an embedded reference to an object provided by the advertising server process. That causes the user's browser to contact the advertising server process to provide the advertising image or information that will appear on the accessed web page as displayed by the user's browser. Using the address information and/or other information passed by the browser for the user, including the page being accessed by the user, the advertising server process determines an appropriate advertisement to select for the particular user. In addition, the advertising server process will use information such as the number of times the user has seen various advertisements, how often the advertisement has been seen by any user and the start and stop date for the various advertisements to select which advertisement to transmit to the user's web page for display.<br><br>*See also* col. 3, lines 5-23.<br>The basic operation of the system is as follows in the preferred embodiment. When a user browsing on the Internet accesses an affiliate's web site 12, the user's browser generates an HTTP message 20 to get the information for the desired web page. The affiliate's web site in response to the message 20 transmits one or more messages back 22 containing the information to be displayed by the user's browser. In addition, an advertising server process 19 will provide additional information comprising one or more objects such as banner advertisements to be displayed with the information provided from the affiliate web site. Normally, the computers supporting the browser, the affiliate web site and the advertising server process will be at |

- 18 -

**Appendix B-17**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,477 Over U.S. Patent No. 5,948,061 (Merriman '061)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,948,061 (Merriman '061) |
|---|---|
| | entirely different nodes on the Internet. Upon clicking through or otherwise selecting the advertisement object, which may be an image such as an advertisement banner, an icon, or a video or an audio clip, the browser ends up being connected to the advertiser's server or web site 18 for that advertisement object. |
| | *See also* col. 3, lines 24-63. |
| | In FIG. 1, a user operates a web browser, such as Netscape or Microsoft Internet Explorer, on a computer or PDA or other Internet capable device 16 to generate through the hypertext transfer protocol (HTTP) 14 a request 20 to any one of preferably a plurality of affiliate web sites 12. The affiliate web site sends one or more messages back 22 using the same protocol. Those messages 22 preferably contain all of the information available at the particular web site 12 for the requested page to be displayed by the user's browser 16 except for one or more advertising objects such as banner advertisements. These objects preferably do not reside on the affiliate's web server. Instead, the affiliate's web server sends back a link including an IP address for a node running an advertiser server process 19 as well as information about the page on which the advertisement will be displayed. The link by way of example may be a hypertext markup language (HTML) <img> tag, referring to, for example, an inline image such as a banner. The user's browser 16 then transmits a message 23 using the received IP address to access such an object indicated by the HTML tag from the advertisement server 19. Included in each message 23 typically to the advertising server 19 are: (i) the user's IP address, (ii) a cookie if the browser 16 is cookie enabled and stores cookie information, (iii) a substring key indicating the page in which the advertisement to be provided from the server is to be embedded, and (iv) MIME header information indicating the browser type and version, the operating system of the computer on which the browser is operating and the proxy server type. Upon receiving the request in the message 23, the advertising server process 19 determines which advertisement or other object to provide to user's browser and transmits the messages 24 containing the object such as a banner advertisement to the user's browser 16 using the HTTP protocol. Preferably contained within the HTTP message is a unique identifier for the advertiser's web page appropriate for the advertisement. That advertisement object is then displayed on the image |

**Appendix B-17**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,477 Over U.S. Patent No. 5,948,061 (Merriman '061)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,948,061 (Merriman '061) |
|---|---|
| | created by the web user's browser as a composite of the received affiliate's web page plus the object transmitted back by the advertising web server.<br><br>*See also* col. 3, line 64 to col. 4, line 11.<br>As part of the "click through" process, when the user clicks on the banner or other advertising object displayed by the user's browser 16, the user's browser again transmits a message to the ad server. The ad server notes the address of the computer of the browser (or any other identifier such as a cookie or a digital signature) that generated the message 23 and transmits back the URL of the advertiser's web page so that the user's web browser 16 generates a message 26 to contact the advertiser's web site 18. The ad server process 19 also notes that a "click through" for an advertisement has occurred and updates the various databases in the manner described below. In the above scenario for the click through process, the ad server process must remember which advertisement was sent to the user's browser in order to know where to redirect the user's browser.<br><br>*See also* col. 4, lines 12-19.<br>While in the above embodiments, the user is a computer on an IP network using a browser, the affiliate web sites are web pages of affiliates located somewhere on the Internet and the ad server is a particular node on the Internet, other setups are also possible. The affiliates may be ISP's or may be actual dedicated web servers and the users may be an entire network instead of an individual browsing on a single computer with a browser.<br><br>*See also* col. 4, lines 20-43.<br>FIG. 2 shows the ad server architecture. The ad server, which may comprise one or more servers uses a database 54 that will be described below and performs reporting processes 59, management processes 58, derivation of profile processes 52 and advertisement processes 19. The derive profile process 52 is how the advertisement server gathers information about individual users or TCP/IP networks for individual users. Advertisements, which may be advertisement banners are stored within the ad server process 19 as part of the advertising |

**Appendix B-17**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,477 Over U.S. Patent No. 5,948,061 (Merriman '061)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,948,061 (Merriman '061) |
|---|---|
| | server process 19 and are periodically updated and refreshed. The advertisement server process 19 is used for responding to requests from advertisements provided by the user's as described above. The management process 58 is used for updating the various advertisements and overall control of the advertising server process 19 and also permits the advertisers to interface with the database to obtain up to the date reports on the placement of the advertisements. The report process 59 is used for generating online reports about the success rate of the advertisement and statistics on the users that are viewing and clicking through on various advertisements and also updating the counters in the database that store how often an advertisement has been displayed. |
| | *See also* col. 4, lines 44-55. |
| | The basic database structure is shown in FIG. 3. For each user identified by the system as shown in FIG. 3A, a user identification, IP address, domain type, time zone, location of the user, standard industrial code for the user's network, the particular advertisements seen and the number of times each such advertisement is seen, the advertisements that were selected or "clicked on" and the pages on which the various users' advertisements were seen is collected. By using the information such as which advertisements a user has expressed interest in and which pages the user was viewing when the user clicked through along with other information, targeted Internet advertising is possible. |
| | *See also* col. 4, line 65 to col. 5, line 7. |
| | Also, as noted above, to enhance the process of identifying information about various users, information on domains or networks is also tracked. This information includes the domain name and type (e.g., military, government, commerce, foreign countries), the IP address, the standard industrial code, the time zone and the address as shown in FIG. 3C. This information can be used in developing information about users. Through the use of these three databases and other appropriate databases that may be kept, the various processes of the advertising server process 19 are performed. |
| | *See also* col. 5, lines 10-32. |

**Appendix B-17**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,477 Over U.S. Patent No. 5,948,061 (Merriman '061)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,948,061 (Merriman '061) |
|---|---|
| | In response to an incoming message to the advertising server process 19, the advertising server processes 19 first attempts to identify the user in FIG. 2. This can be accomplished by at least one of two means. First, any incoming request for an image or a multimedia object is examined to determined the IP address of the requesting browser. The advertising server then notes whether a cookie was received in the MIME heading of the request. From these two pieces of information, a user identification is determined. If a cookie was detected, then the cookie contains the user's identification number that can be accessed in the database. If the user's browser is cookie enabled but no cookie is detected, then the request is from a new user so a user identification must be assigned to the user and that user's new identification number will be transmitted back to the users browser along with a write cookie instruction that causes the browser to write a cookie containing that unique identification number on the user's local drive for future accesses to affiliate sites. The cookie instruction is transmitted back with the advertisement messages 24. Alternatively, instead of using cookies, digital signatures or certificates or log ins uniquely identifying the user accessing the affiliate page may be used.<br><br>*See also* col. 5, lines 34–49.<br>If the user's browser does not support cookies, the advertising server process looks up the user's IP address in a table that stores identification numbers that correspond to IP addresses for the users who have previously contacted the advertising server process. If the IP address is not found in the table, then the user is a new user and is assigned an unused identification number. Also, for each new user, that user's identification number will be marked for further processing under the derive profile process 52 described below. Also, if the domain for the new user has not previously been processed in the domain profile process, it may not be possible to target the advertisement for the new user and rather the new user should be shown a generic advertisement. Also, for new users, a promotional advertisement may be shown to get the new user to provide information about him or herself and his or her employer.<br><br>*See also* col. 7, lines 15–31.<br>If the user then decides that he wants to respond to the advertisement and then clicks on the |

**Appendix B-17**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,477 Over U.S. Patent No. 5,948,061 (Merriman '061)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,948,061 (Merriman '061) |
|---|---|
|  | advertisement, the advertisement server 19 receives an HTTP request 23 for a click through which it will recognize by receiving the same IP address (and optionally, the user ID specified by the cookie, digital signature or certificate or log in identification) in the request from the same affiliate's web page within a predetermined period. Since the advertisement server previously recorded which advertisement was sent to that IP address, it sends the redirect message causing the user's browser to receive the URL for the advertiser's web site based upon data stored in the server. In addition, the server logs that the advertisement was clicked through, which user selected the advertisement based upon the IP address, and the page on which the advertisement was seen based upon the click through. This information can then be logged in later reporting processes 59.<br><br>*See also* col. 7, lines 46–56.<br>In addition, as part of the profiling process for gathering information about users and IP addresses needs to be done. First, appropriate "networks" need to be identified based upon the TCP/IP network address of the user. Periodically, the derive profiles process searches the user database for the address of additional users that have addresses for unknown networks, indicating that they are new users. Then the server does a reverse domain name search to locate the domain name of the user. The server also queries Internet Whols databases to find information about the network, which will often include the domain name.<br><br>*See also* Figs. 1-3C and associated text.<br><br>*See also* claim limitation [1d].<br><br>To the extent it is found that Merriman '061 does not disclose this feature expressly or inherently, it would have been obvious to combine Merriman '061 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |

Appendix B-17

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,477 Over U.S. Patent No. 5,948,061 (Merriman '061)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,948,061 (Merriman '061) |
|---|---|
| [1f] forming a customized page file formed for the first type network node by including the page file formed for the first type network node within the page file for the second type network node. | Merriman '061 discloses forming a customized page file formed for the first type network node by including the page file formed for the first type network node within the page file for the second type network node. For example, a customized advertisement provided by the advertisement server (page file formed for the first type network node) is superimposed on the display of the affiliate's web page (page file for the second type network node) displayed by the user's browser.

*See* col. 1, lines 29–44.
The recent development of on-line networks, such as America On-Line, Compuserve, and the Internet, has led to "on-line" advertising. For example, on the Internet, often such on-line advertisements will appear on a web page, such as a banner on the top or the bottom of the page. When the user views a web page using a browser such as Internet Explorer 3 or Netscape 3, the banner appears at the appropriate location and the user may then try to find out more information regarding the advertisement by selecting the advertisement (clicking through on that banner) through the use of the mouse or other pointing device. This will cause a HTTP message to be generated by the browser using the information encapsulated in association with the banner to send a request for an object with a given URL address to a different appropriate web site to access, for example, the advertiser's home page.

*See also* col. 2, lines 15-35.
To effect such a capability, an advertising server process is provided as a node on the network. The various advertisements are stored on the network of the server and preferably on the server. When, for example, a user using a web browser accesses a web page that is affiliated with the advertising server process, the affiliated page's encoding includes an embedded reference to an object provided by the advertising server process. That causes the user's browser to contact the advertising server process to provide the advertising image or information that will appear on the accessed web page as displayed by the user's browser. Using the address information and/or other information passed by the browser for the user, including the page being accessed by the user, the advertising server process determines an appropriate advertisement to select for |

- 24 -

**Appendix B-17**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,477 Over U.S. Patent No. 5,948,061 (Merriman '061)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,948,061 (Merriman '061) |
|---|---|
| | the particular user.  In addition, the advertising server process will use information such as the number of times the user has seen various advertisements, how often the advertisement has been seen by any user and the start and stop date for the various advertisements to select which advertisement to transmit to the user's web page for display.<br><br>*See also* col. 2, line 59 to col. 3, line 23.<br>The basic architecture of the network 10 comprises at least one affiliate web site 12, an advertisement (ad) server web site 19 and one or more individual advertiser's web sites 18.  Affiliates are one or more entities that generally for a fee contract with the entity providing the advertisement server permit third party advertisements to be displayed on their web sites.  When a user using a browser accesses or "visits" a web site of an affiliate, an advertisement provided by the advertisement server 19 will be superimposed on the display of the affiliate's web page displayed by the user's browser.  Examples of appropriate affiliates include locator services, service providers, and entities that have popular web sites such as museums, movie studios, etc.  The basic operation of the system is as follows in the preferred embodiment.  When a user browsing on the Internet accesses an affiliate's web site 12, the user's browser generates an HTTP message 20 to get the information for the desired web page.  The affiliate's web site in response to the message 20 transmits one or more messages back 22 containing the information to be displayed by the user's browser.  In addition, an advertising server process 19 will provide additional information comprising one or more objects such as banner advertisements to be displayed with the information provided from the affiliate web site.  Normally, the computers supporting the browser, the affiliate web site and the advertising server process will be at entirely different nodes on the Internet.  Upon clicking through or otherwise selecting the advertisement object, which may be an image such as an advertisement banner, an icon, or a video or an audio clip, the browser ends up being connected to the advertiser's server or web site 18 for that advertisement object.<br><br>*See also* col. 3, lines 24-63.<br>In FIG. 1, a user operates a web browser, such as Netscape or Microsoft Internet Explorer, on a |

**Appendix B-17**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,477 Over U.S. Patent No. 5,948,061 (Merriman '061)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,948,061 (Merriman '061) |
|---|---|
| | computer or PDA or other Internet capable device 16 to generate through the hypertext transfer protocol (HTTP) 14 a request 20 to any one of preferably a plurality of affiliate web sites 12. The affiliate web site sends one or more messages back 22 using the same protocol. Those messages 22 preferably contain all of the information available at the particular web site 12 for the requested page to be displayed by the user's browser 16 except for one or more advertising objects such as banner advertisements. These objects preferably do not reside on the affiliate's web server. Instead, the affiliate's web server sends back a link including an IP address for a node running an advertiser server process 19 as well as information about the page on which the advertisement will be displayed. The link by way of example may be a hypertext markup language (HTML) <img> tag, referring to, for example, an inline image such as a banner. The user's browser 16 then transmits a message 23 using the received IP address to access such an object indicated by the HTML tag from the advertisement server 19. Included in each message 23 typically to the advertising server 19 are: (i) the user's IP address, (ii) a cookie if the browser 16 is cookie enabled and stores cookie information, (iii) a substring key indicating the page in which the advertisement to be provided from the server is to be embedded, and (iv) MIME header information indicating the browser type and version, the operating system of the computer on which the browser is operating and the proxy server type. Upon receiving the request in the message 23, the advertising server process 19 determines which advertisement or other object to provide to user's browser and transmits the messages 24 containing the object such as a banner advertisement to the user's browser 16 using the HTTP protocol. Preferably contained within the HTTP message is a unique identifier for the advertiser's web page appropriate for the advertisement. That advertisement object is then displayed on the image created by the web user's browser as a composite of the received affiliate's web page plus the object transmitted back by the advertising web server. <br><br> *See also* col. 4, lines 12-19. <br> While in the above embodiments, the user is a computer on an IP network using a browser, the affiliate web sites are web pages of affiliates located somewhere on the Internet and the ad server is a particular node on the Internet, other setups are also possible. The affiliates may be |

**Appendix B-17**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,477 Over U.S. Patent No. 5,948,061 (Merriman '061)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,948,061 (Merriman '061) |
|---|---|
| | ISP's or may be actual dedicated web servers and the users may be an entire network instead of an individual browsing on a single computer with a browser.<br><br>*See also* col. 4, lines 20-43.<br>FIG. 2 shows the ad server architecture. The ad server, which may comprise one or more servers uses a database 54 that will be described below and performs reporting processes 59, management processes 58, derivation of profile processes 52 and advertisement processes 19. The derive profile process 52 is how the advertisement server gathers information about individual users or TCP/IP networks for individual users. Advertisements, which may be advertisement banners are stored within the ad server process 19 as part of the advertising server process 19 and are periodically updated and refreshed. The advertisement server process 19 is used for responding to requests from advertisements provided by the user's as described above. The management process 58 is used for updating the various advertisements and overall control of the advertising server process 19 and also permits the advertisers to interface with the database to obtain up to the date reports on the placement of the advertisements. The report process 59 is used for generating online reports about the success rate of the advertisement and statistics on the users that are viewing and clicking through on various advertisements and also updating the counters in the database that store how often an advertisement has been displayed.<br><br>*See also* col. 5, line 64 to col. 6, line 11.<br>Each advertisement along with a table of the targeting profile criteria for the advertisement and other data regarding the advertisement currently available is stored in a database such as shown in FIG. 3B. The actual advertising object, which may be a banner image in a GIF or JPEG file format, an icon for an audio or video clip or some other object is kept as part of the advertising server process. This information may include targeted consumers by SIC, country, organization type and type of advertisements previously selected by the user. For any of the advertisements currently provided for which there is a match (for example there may be several advertisements targeted at people interested in computers), the next step is to determine which of the |

**Appendix B-17**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,477 Over U.S. Patent No. 5,948,061 (Merriman '061)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,948,061 (Merriman '061) |
|---|---|
| | advertisements for which there is a match should be selected. *See also* Figs. 1-3C and associated text. *See also* claim limitations [1b] and [1c]. To the extent it is found that Merriman '061 does not disclose this feature expressly or inherently, it would have been obvious to combine Merriman '061 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 2* | |
| [2] The method of claim 1, wherein the first type network node is an ISP node, and the second type network node is an ICP node. | Merriman '061 discloses that the first type network node is an ISP node, and the second type network node is an ICP node. For example, the advertisement server customizes advertisements based on the ISP of the user (first type network node). Therefore, the first type network node is an ISP node. Also, the second type network node is an ICP node such as a museum, movie studio, etc. *See* col. 2, lines 6–15. These and other objects of the invention are achieved by the disclosed system and methods. Information about networks and subnetworks is routinely collected. In addition, information about individual users is also gathered when users select (click on) different advertisements. Also, data is tracked on how often a given advertisement has been displayed, how often a given user has seen a given advertisement, and other information regarding the user and the frequency of the display of the advertisement. *See also* col. 2, line 59 to col. 3, line 4. The basic architecture of the network 10 comprises at least one affiliate web site 12, an advertisement (ad) server web site 19 and one or more individual advertiser's web sites 18. Affiliates are one or more entities that generally for a fee contract with the entity providing the |

**Appendix B-17**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,477 Over U.S. Patent No. 5,948,061 (Merriman '061)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,948,061 (Merriman '061) |
|---|---|
| | advertisement server permit third party advertisements to be displayed on their web sites. When a user using a browser accesses or "visits" a web site of an affiliate, an advertisement provided by the advertisement server 19 will be superimposed on the display of the affiliate's web page displayed by the user's browser. Examples of appropriate affiliates include locator services, service providers, and entities that have popular web sites such as museums, movie studios, etc.<br><br>*See also* col. 3, lines 24-63.<br>In FIG. 1, a user operates a web browser, such as Netscape or Microsoft Internet Explorer, on a computer or PDA or other Internet capable device 16 to generate through the hypertext transfer protocol (HTTP) 14 a request 20 to any one of preferably a plurality of affiliate web sites 12. The affiliate web site sends one or more messages back 22 using the same protocol. Those messages 22 preferably contain all of the information available at the particular web site 12 for the requested page to be displayed by the user's browser 16 except for one or more advertising objects such as banner advertisements. These objects preferably do not reside on the affiliate's web server. Instead, the affiliate's web server sends back a link including an IP address for a node running an advertiser server process 19 as well as information about the page on which the advertisement will be displayed. The link by way of example may be a hypertext markup language (HTML) <img> tag, referring to, for example, an inline image such as a banner. The user's browser 16 then transmits a message 23 using the received IP address to access such an object indicated by the HTML tag from the advertisement server 19. Included in each message 23 typically to the advertising server 19 are: (i) the user's IP address, (ii) a cookie if the browser 16 is cookie enabled and stores cookie information, (iii) a substring key indicating the page in which the advertisement to be provided from the server is to be embedded, and (iv) MIME header information indicating the browser type and version, the operating system of the computer on which the browser is operating and the proxy server type. Upon receiving the request in the message 23, the advertising server process 19 determines which advertisement or other object to provide to user's browser and transmits the messages 24 containing the object such as a banner advertisement to the user's browser 16 using the HTTP protocol. Preferably |

**Appendix B-17**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,477 Over U.S. Patent No. 5,948,061 (Merriman '061)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,948,061 (Merriman '061) |
|---|---|
| | contained within the HTTP message is a unique identifier for the advertiser's web page appropriate for the advertisement. That advertisement object is then displayed on the image created by the web user's browser as a composite of the received affiliate's web page plus the object transmitted back by the advertising web server.<br><br>*See also* col. 4, lines 12-19.<br>While in the above embodiments, the user is a computer on an IP network using a browser, the affiliate web sites are web pages of affiliates located somewhere on the Internet and the ad server is a particular node on the Internet, other setups are also possible. The affiliates may be ISP's or may be actual dedicated web servers and the users may be an entire network instead of an individual browsing on a single computer with a browser.<br><br>*See also* col. 4, line 44 to col. 5, line 7.<br>The basic database structure is shown in FIG. 3. For each user identified by the system as shown in FIG. 3A, a user identification, IP address, domain type, time zone, location of the user, standard industrial code for the user's network, the particular advertisements seen and the number of times each such advertisement is seen, the advertisements that were selected or "clicked on" and the pages on which the various users' advertisements were seen is collected. By using the information such as which advertisements a user has expressed interest in and which pages the user was viewing when the user clicked through along with other information, targeted Internet advertising is possible. FIG. 3B shows a database structure for the advertisements. Included in the information for an advertisement are an identifier for the advertisement, the start date for the advertisement being carried, the last date the advertisement is to be carried, the total number of people who have viewed the advertisements, the target or the minimum number of times the advertisement is to be viewed, acceptable viewers by their web site's SICS (Standard Industry Codes), clicked through and pages that the advertisements are seen on. Also, as noted above, to enhance the process of identifying information about various users, information on domains or networks is also tracked. This information includes the domain name and type (e.g., military, government, commerce, foreign countries), the IP |

**Appendix B-17**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,477 Over U.S. Patent No. 5,948,061 (Merriman '061)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,948,061 (Merriman '061) |
|---|---|
| | address, the standard industrial code, the time zone and the address as shown in FIG. 3C. This information can be used in developing information about users. Through the use of these three databases and other appropriate databases that may be kept, the various processes of the advertising server process 19 are performed.<br><br>*See also* col. 5, line 50 to col. 6, line 11.<br>If the user is an existing user, the ad server 19 obtains from a database all of the information known about the user including the user's geographic location, the domain type (commercial educational, governmental, the Internet service provided), the organization type where the user works (for example a SIC code), the company size, the number of employees in that company, the particular types of advertisements that the user has clicked on by SIC or other appropriate coding and the number of times that the user has been exposed to each advertisement currently in the system as described in FIG. 3A. Also, the relative time of day for the user is calculated based upon either the user's country code or the user's IP access provider or the location of their domain. Each advertisement along with a table of the targeting profile criteria for the advertisement and other data regarding the advertisement currently available is stored in a database such as shown in FIG. 3B. The actual advertising object, which may be a banner image in a GIF or JPEG file format, an icon for an audio or video clip or some other object is kept as part of the advertising server process. This information may include targeted consumers by SIC, country, organization type and type of advertisements previously selected by the user. For any of the advertisements currently provided for which there is a match (for example there may be several advertisements targeted at people interested in computers), the next step is to determine which of the advertisements for which there is a match should be selected.<br><br>*See also* col. 7, line 57 to col. 8, line 29.<br>Alternatively, a reverse form of look up can be used independent of people accessing the network. When a domain is discovered, the server will check common DNS names for the name, such as those starting with "www" and "ftp." These resolve to IP addresses in most cases. From the IP addresses, the network number can be extracted and if the network does not |

**Appendix B-17**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,477 Over U.S. Patent No. 5,948,061 (Merriman '061)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,948,061 (Merriman '061) |
|---|---|
| | yet have a domain name associated with the network number or address, the new domain associated with the network. A reverse domain name look up (A Whois lookup) will then usually provide the name, address and phone number of the organization, thereby providing the geographic location and the time zone of the network. Once the domain name is acquired, the server will determine whether the domain is an educational, military, governmental network and for non-U.S. based networks what country the network is located in through the extension. However, it should be noted that some networks cover broad geographic areas and that further checking needs to be done to ensure that the data may be inaccurate. This can be done by performing a trace route operation to trace the network topology back to the network being examined. If the last two or three nodes on the trace show as being from a given region, the chances are high that the specific user on a network is located in that geographic area. Thus, reverse traces can be used to confirm location with a database for geographic locations. By checking telephone directories and other sources, the specific location for such users may be found by looking up the locations where the owner of the domain name has facilities and using the one closest to the outcome of the trace back step if the information for a given user is different than the location of the domain based upon the location on the trace back, it is this address and location information that is then used. Further for each domain that is found, a determination must be made as to whether the domain is an Internet Service Provider (ISP). A list of domains that are ISP's is compiled manually. For any user having a domain name of an ISP, the user is presumed to be an individual and so only information relating to that individual are used for the profiling process.<br><br>*See also* col. 8, lines 39-60.<br>In addition to using the domain profiling process and logging advertisement clicked on by individual users and the pages being accessed by users of affiliate web sites, in addition surveying may be used. Further, for those survey respondents who are responding for non-ISP users discussed above, the results of the survey can be attributed to others on the same network. This provides further information for targeting the display of the advertisements. Of course, those of skill in the field will understand that the disclosed techniques need not just be confined |

**Appendix B-17**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,477 Over U.S. Patent No. 5,948,061 (Merriman '061)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,948,061 (Merriman '061) |
|---|---|
| | to Internet advertising but will work on other communication networks and private on line services such as CompuServe and America On Line. In addition, while specific user and domain profile information and matching criteria are discussed, it will be obvious to those of ordinary skill in the field that the specific type of user and domain name information profiled and used as matching criteria may include other or different criteria. In addition, while the specific examples are for IP networks, the same concepts can be applied to virtual LAN's such that a VLAN is the equivalent of a domain or on IPX based protocols or other network protocols.<br><br>*See also* col. 9, lines 45–54.<br>4. A network in accordance with claim 3, wherein said advertisement server node selects said advertiser node based on at least one of the characteristics of said user selected from the group consisting of user ID, IP address, user cookie, user login code, user digital certificate, geographic location, time zone, country, domain type, Internet service provider, organization type, employer, industry type, company size, number of employees, types of advertisements previously viewed and types of advertisements previously clicked.<br><br>*See also* col. 10, lines 21–30; col. 11, lines 22–31; col. 12, lines 8–17; col. 13, lines 15–24 and 28–38; col. 14, line 63 to col. 15, line 5.<br><br>*See also* Figs. 1-3C and associated text.<br><br>*See also* claim limitation [1a].<br><br>To the extent it is found that Merriman '061 does not disclose this feature expressly or inherently, it would have been obvious to combine Merriman '061 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 3* | |

**Appendix B-17**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,477 Over U.S. Patent No. 5,948,061 (Merriman '061)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,948,061 (Merriman '061) |
|---|---|
| [3] The method of claim 1, wherein the first type network node is an organization node, and the second type network node is an ICP node. | Merriman '061 discloses that the first type network node is an organization node, and the second type network node is an ICP node. For example, the advertisement server customizes advertisements based on the domain type (e.g., military, government, commerce), standard industrial code (SIP), organization type, company size, number of employees, etc of the user's computer (first type network node). Therefore, the first type network node is an organization node. Also, the second type network node is an ICP node such as a museum, movie studio, etc.<br><br>*See* col. 2, lines 6–15.<br>These and other objects of the invention are achieved by the disclosed system and methods. Information about networks and subnetworks is routinely collected. In addition, information about individual users is also gathered when users select (click on) different advertisements. Also, data is tracked on how often a given advertisement has been displayed, how often a given user has seen a given advertisement, and other information regarding the user and the frequency of the display of the advertisement.<br><br>*See also* col. 2, line 59 to col. 3, line 4.<br>The basic architecture of the network 10 comprises at least one affiliate web site 12, an advertisement (ad) server web site 19 and one or more individual advertiser's web sites 18. Affiliates are one or more entities that generally for a fee contract with the entity providing the advertisement server permit third party advertisements to be displayed on their web sites. When a user using a browser accesses or "visits" a web site of an affiliate, an advertisement provided by the advertisement server 19 will be superimposed on the display of the affiliate's web page displayed by the user's browser. Examples of appropriate affiliates include locator services, service providers, and entities that have popular web sites such as museums, movie studios, etc.<br><br>*See also* col. 3, lines 24-63.<br>In FIG. 1, a user operates a web browser, such as Netscape or Microsoft Internet Explorer, on a computer or PDA or other Internet capable device 16 to generate through the hypertext transfer |

- 34 -

**Appendix B-17**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,477 Over U.S. Patent No. 5,948,061 (Merriman '061)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,948,061 (Merriman '061) |
|---|---|
| | protocol (HTTP) 14 a request 20 to any one of preferably a plurality of affiliate web sites 12. The affiliate web site sends one or more messages back 22 using the same protocol. Those messages 22 preferably contain all of the information available at the particular web site 12 for the requested page to be displayed by the user's browser 16 except for one or more advertising objects such as banner advertisements.  These objects preferably do not reside on the affiliate's web server.  Instead, the affiliate's web server sends back a link including an IP address for a node running an advertiser server process 19 as well as information about the page on which the advertisement will be displayed.  The link by way of example may be a hypertext markup language (HTML) <img> tag, referring to, for example, an inline image such as a banner.  The user's browser 16 then transmits a message 23 using the received IP address to access such an object indicated by the HTML tag from the advertisement server 19.  Included in each message 23 typically to the advertising server 19 are:  (i) the user's IP address, (ii) a cookie if the browser 16 is cookie enabled and stores cookie information, (iii) a substring key indicating the page in which the advertisement to be provided from the server is to be embedded, and (iv) MIME header information indicating the browser type and version, the operating system of the computer on which the browser is operating and the proxy server type.  Upon receiving the request in the message 23, the advertising server process 19 determines which advertisement or other object to provide to user's browser and transmits the messages 24 containing the object such as a banner advertisement to the user's browser 16 using the HTTP protocol. Preferably contained within the HTTP message is a unique identifier for the advertiser's web page appropriate for the advertisement.  That advertisement object is then displayed on the image created by the web user's browser as a composite of the received affiliate's web page plus the object transmitted back by the advertising web server.

*See also* col. 4, lines 12-19.
While in the above embodiments, the user is a computer on an IP network using a browser, the affiliate web sites are web pages of affiliates located somewhere on the Internet and the ad server is a particular node on the Internet, other setups are also possible.  The affiliates may be ISP's or may be actual dedicated web servers and the users may be an entire network instead of |

- 35 -

**Appendix B-17**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,477 Over U.S. Patent No. 5,948,061 (Merriman '061)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,948,061 (Merriman '061) |
|---|---|
| | an individual browsing on a single computer with a browser. |
| | *See also* col. 4, line 44 to col. 5, line 7. |
| | The basic database structure is shown in FIG. 3. For each user identified by the system as shown in FIG. 3A, a user identification, IP address, domain type, time zone, location of the user, standard industrial code for the user's network, the particular advertisements seen and the number of times each such advertisement is seen, the advertisements that were selected or "clicked on" and the pages on which the various users' advertisements were seen is collected. By using the information such as which advertisements a user has expressed interest in and which pages the user was viewing when the user clicked through along with other information, targeted Internet advertising is possible. FIG. 3B shows a database structure for the advertisements. Included in the information for an advertisement are an identifier for the advertisement, the start date for the advertisement being carried, the last date the advertisement is to be carried, the total number of people who have viewed the advertisements, the target or the minimum number of times the advertisement is to be viewed, acceptable viewers by their web site's SICS (Standard Industry Codes), clicked through and pages that the advertisements are seen on. Also, as noted above, to enhance the process of identifying information about various users, information on domains or networks is also tracked. This information includes the domain name and type (e.g., military, government, commerce, foreign countries), the IP address, the standard industrial code, the time zone and the address as shown in FIG. 3C. This information can be used in developing information about users. Through the use of these three databases and other appropriate databases that may be kept, the various processes of the advertising server process 19 are performed. |
| | *See also* col. 5, line 50 to col. 6, line 11. |
| | If the user is an existing user, the ad server 19 obtains from a database all of the information known about the user including the user's geographic location, the domain type (commercial educational, governmental, the Internet service provided), the organization type where the user works (for example a SIC code), the company size, the number of employees in that company, |

- 36 -

**Appendix B-17**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,477 Over U.S. Patent No. 5,948,061 (Merriman '061)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,948,061 (Merriman '061) |
|---|---|
| | the particular types of advertisements that the user has clicked on by SIC or other appropriate coding and the number of times that the user has been exposed to each advertisement currently in the system as described in FIG. 3A. Also, the relative time of day for the user is calculated based upon either the user's country code or the user's IP access provider or the location of their domain. Each advertisement along with a table of the targeting profile criteria for the advertisement and other data regarding the advertisement currently available is stored in a database such as shown in FIG. 3B. The actual advertising object, which may be a banner image in a GIF or JPEG file format, an icon for an audio or video clip or some other object is kept as part of the advertising server process. This information may include targeted consumers by SIC, country, organization type and type of advertisements previously selected by the user. For any of the advertisements currently provided for which there is a match (for example there may be several advertisements targeted at people interested in computers), the next step is to determine which of the advertisements for which there is a match should be selected.<br><br>*See also* col. 7, line 57 to col. 8, line 29.<br>Alternatively, a reverse form of look up can be used independent of people accessing the network. When a domain is discovered, the server will check common DNS names for the name, such as those starting with "www" and "ftp." These resolve to IP addresses in most cases. From the IP addresses, the network number can be extracted and if the network does not yet have a domain name associated with the network number or address, the new domain associated with the network. A reverse domain name look up (A Whois lookup) will then usually provide the name, address and phone number of the organization, thereby providing the geographic location and the time zone of the network. Once the domain name is acquired, the server will determine whether the domain is an educational, military, governmental network and for non-U.S. based networks what country the network is located in through the extension. However, it should be noted that some networks cover broad geographic areas and that further checking needs to be done to ensure that the data may be inaccurate. This can be done by performing a trace route operation to trace the network topology back to the network being examined. If the last two or three nodes on the trace show as being from a given region, the |

**Appendix B-17**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,477 Over U.S. Patent No. 5,948,061 (Merriman '061)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,948,061 (Merriman '061) |
|---|---|
| | chances are high that the specific user on a network is located in that geographic area. Thus, reverse traces can be used to confirm location with a database for geographic locations. By checking telephone directories and other sources, the specific location for such users may be found by looking up the locations where the owner of the domain name has facilities and using the one closest to the outcome of the trace back step if the information for a given user is different than the location of the domain based upon the trace back, it is this address and location information that is then used. Further for each domain that is found, a determination must be made as to whether the domain is an Internet Service Provider (ISP). A list of domains that are ISP's is compiled manually. For any user having a domain name of an ISP, the user is presumed to be an individual and so only information relating to that individual are used for the profiling process.<br><br>*See also* col. 8, lines 39-60.<br>In addition to using the domain profiling process and logging advertisement clicked on by individual users and the pages being accessed by users of affiliate web sites, in addition surveying may be used. Further, for those survey respondents who are responding for non-ISP users discussed above, the results of the survey can be attributed to others on the same network. This provides further information for targeting the display of the advertisements. Of course, those of skill in the field will understand that the disclosed techniques need not just be confined to Internet advertising but will work on other communication networks and private on line services such as CompuServe and America On Line. In addition, while specific user and domain profile information and matching criteria are discussed, it will be obvious to those of ordinary skill in the field that the specific type of user and domain name information profiled and used as matching criteria may include other or different criteria. In addition, while the specific examples are for IP networks, the same concepts can be applied to virtual LAN's such that a VLAN is the equivalent of a domain or on IPX based protocols or other network protocols.<br><br>*See also* col. 9, lines 45–54. |

**Appendix B-17**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,477 Over U.S. Patent No. 5,948,061 (Merriman '061)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,948,061 (Merriman '061) |
|---|---|
|  | 4. A network in accordance with claim 3, wherein said advertisement server node selects said advertiser node based on at least one of the characteristics of said user selected from the group consisting of user ID, IP address, user cookie, user login code, user digital certificate, geographic location, time zone, country, domain type, Internet service provider, organization type, employer, industry type, company size, number of employees, types of advertisements previously viewed and types of advertisements previously clicked. *See also* col. 10, lines 21–30; col. 11, lines 22–31; col. 12, lines 8–17; col. 13, lines 15–24 and 28–38; col. 14, line 63 to col. 15, line 5. *See also* Figs. 1-3C and associated text. *See also* claim limitation [1a]. To the extent it is found that Merriman '061 does not disclose this feature expressly or inherently, it would have been obvious to combine Merriman '061 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 4* |  |
| [4] The method of claim 1, wherein the customized page file includes customized graphics, sounds, applets, links, and text. | Merriman '061 discloses that the customized page file includes customized graphics, sounds, applets, links, and text. For example, the web page provided by the affiliate site is an HTML page, which includes text and links. Moreover, the customized advertisement may be a banner image (which is customized graphics), an icon for an audio or video clip (which includes sound), or a multimedia object. *See* col. 3, lines 5-23. The basic operation of the system is as follows in the preferred embodiment. When a user browsing on the Internet accesses an affiliate's web site 12, the user's browser generates an HTTP message 20 to get the information for the desired web page. The affiliate's web site in |

**Appendix B-17**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,477 Over U.S. Patent No. 5,948,061 (Merriman '061)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,948,061 (Merriman '061) |
|---|---|
| | response to the message 20 transmits one or more messages back 22 containing the information to be displayed by the user's browser.  In addition, an advertising server process 19 will provide additional information comprising one or more objects such as banner advertisements to be displayed with the information provided from the affiliate web site.  Normally, the computers supporting the browser, the affiliate web site and the advertising server process will be at entirely different nodes on the Internet.  Upon clicking through or otherwise selecting the advertisement object, which may be an image such as an advertisement banner, an icon, or a video or an audio clip, the browser ends up being connected to the advertiser's server or web site 18 for that advertisement object.<br><br>*See also* col. 3, lines 24–63.<br>In FIG. 1, a user operates a web browser, such as Netscape or Microsoft Internet Explorer, on a computer or PDA or other Internet capable device 16 to generate through the hypertext transfer protocol (HTTP) 14 a request 20 to any one of preferably a plurality of affiliate web sites 12. The affiliate web site sends one or more messages back 22 using the same protocol. Those messages 22 preferably contain all of the information available at the particular web site 12 for the requested page to be displayed by the user's browser 16 except for one or more advertising objects such as banner advertisements. These objects preferably do not reside on the affiliate's web server. Instead, the affiliate's web server sends back a link including an IP address for a node running an advertiser server process 19 as well as information about the page on which the advertisement will be displayed. The link by way of example may be a hypertext markup language (HTML) <img> tag, referring to, for example, an inline image such as a banner. The user's browser 16 then transmits a message 23 using the received IP address to access such an object indicated by the HTML tag from the advertisement server 19. Included in each message 23 typically to the advertising server 19 are: (i) the user's IP address, (ii) a cookie if the browser 16 is cookie enabled and stores cookie information, (iii) a substring key indicating the page in which the advertisement to be provided from the server is to be embedded, and (iv) MIME header information indicating the browser type and version, the operating system of the computer on which the browser is operating and the proxy server type. Upon receiving the |

- 40 -

**Appendix B-17**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,477 Over U.S. Patent No. 5,948,061 (Merriman '061)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,948,061 (Merriman '061) |
|---|---|
| | request in the message 23, the advertising server process 19 determines which advertisement or other object to provide to user's browser and transmits the messages 24 containing the object such as a banner advertisement to the user's browser 16 using the HTTP protocol. Preferably contained within the HTTP message is a unique identifier for the advertiser's web page appropriate for the advertisement. That advertisement object is then displayed on the image created by the web user's browser as a composite of the received affiliate's web page plus the object transmitted back by the advertising web server.

*See also* col. 5, lines 10–32.
In response to an incoming message to the advertising server process 19, the advertising server processes 19 first attempts to identify the user in FIG. 2. This can be accomplished by at least one of two means. First, any incoming request for an image or a multimedia object is examined to determined the IP address of the requesting browser. The advertising server then notes whether a cookie was received in the MIME heading of the request. From these two pieces of information, a user identification is determined. If a cookie was detected, then the cookie contains the user's identification number that can be accessed in the database. If the user's browser is cookie enabled but no cookie is detected, then the request is from a new user so a user identification must be assigned to the user and that user's new identification number will be transmitted back to the users browser along with a write cookie instruction that causes the browser to write a cookie containing that unique identification number on the user's local drive for future accesses to affiliate sites. The cookie instruction is transmitted back with the advertisement messages 24. Alternatively, instead of using cookies, digital signatures or certificates or log ins uniquely identifying the user accessing the affiliate page may be used.

*See also* col. 5, line 64 to col. 6, line 11.
Each advertisement along with a table of the targeting profile criteria for the advertisement and other data regarding the advertisement currently available is stored in a database such as shown in FIG. 3B. The actual advertising object, which may be a banner image in a GIF or JPEG file format, an icon for an audio or video clip or some other object is kept as part of the advertising |

**Appendix B-17**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,477 Over U.S. Patent No. 5,948,061 (Merriman '061)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,948,061 (Merriman '061) |
|---|---|
| | server process. This information may include targeted consumers by SIC, country, organization type and type of advertisements previously selected by the user. For any of the advertisements currently provided for which there is a match (for example there may be several advertisements targeted at people interested in computers), the next step is to determine which of the advertisements for which there is a match should be selected. *See also* Figs. 3A-3C and associated text. *See also* claim limitation [1b]. To the extent Merriman '061 does not expressly or inherently disclose this limitation, it would have been obvious to combine Merriman with other prior art references and/or the knowledge of a person of ordinary skill in the art to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 5* | |
| [5] The method of claim 1, wherein the customized page file includes customized advertisements. | Merriman '061 discloses that the customized page file includes customized advertisements. *See* Abstract. Methods and apparatuses for targeting the delivery of advertisements over a network such as the Internet are disclosed. Statistics are compiled on individual users and networks and the use of the advertisements is tracked to permit targeting of the advertisements of individual users. In response to requests from affiliated sites, an advertising server transmits to people accessing the page of a site an appropriate one of the advertisement based upon profiling of users and networks. *See also* col. 2, lines 15-35. To effect such a capability, an advertising server process is provided as a node on the network. The various advertisements are stored on the network of the server and preferably on the server. When, for example, a user using a web browser accesses a web page that is affiliated with the advertising server process, the affiliated page's encoding includes an embedded reference to an |

**Appendix B-17**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,477 Over U.S. Patent No. 5,948,061 (Merriman '061)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,948,061 (Merriman '061) |
|---|---|
| | object provided by the advertising server process. That causes the user's browser to contact the advertising server process to provide the advertising image or information that will appear on the accessed web page as displayed by the user's browser. Using the address information and/or other information passed by the browser for the user, including the page being accessed by the user, the advertising server process determines an appropriate advertisement to select for the particular user. In addition, the advertising server process will use information such as the number of times the user has seen various advertisements, how often the advertisement has been seen by any user and the start and stop date for the various advertisements to select which advertisement to transmit to the user's web page for display.<br><br>*See also* col. 3, lines 24-63.<br>In FIG. 1, a user operates a web browser, such as Netscape or Microsoft Internet Explorer, on a computer or PDA or other Internet capable device 16 to generate through the hypertext transfer protocol (HTTP) 14 a request 20 to any one of preferably a plurality of affiliate web sites 12. The affiliate web site sends one or more messages back 22 using the same protocol. Those messages 22 preferably contain all of the information available at the particular web site 12 for the requested page to be displayed by the user's browser 16 except for one or more advertising objects such as banner advertisements. These objects preferably do not reside on the affiliate's web server. Instead, the affiliate's web server sends back a link including an IP address for a node running an advertiser server process 19 as well as information about the page on which the advertisement will be displayed. The link by way of example may be a hypertext markup language (HTML) <img> tag, referring to, for example, an inline image such as a banner. The user's browser 16 then transmits a message 23 using the received IP address to access such an object indicated by the HTML tag from the advertisement server 19. Included in each message 23 typically to the advertising server 19 are: (i) the user's IP address, (ii) a cookie if the browser 16 is cookie enabled and stores cookie information, (iii) a substring key indicating the page in which the advertisement to be provided from the server is to be embedded, and (iv) MIME header information indicating the browser type and version, the operating system of the computer on which the browser is operating and the proxy server type. Upon receiving the |

**Appendix B-17**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,477 Over U.S. Patent No. 5,948,061 (Merriman '061)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,948,061 (Merriman '061) |
|---|---|
| | request in the message 23, the advertising server process 19 determines which advertisement or other object to provide to user's browser and transmits the messages 24 containing the object such as a banner advertisement to the user's browser 16 using the HTTP protocol. Preferably contained within the HTTP message is a unique identifier for the advertiser's web page appropriate for the advertisement. That advertisement object is then displayed on the image created by the web user's browser as a composite of the received affiliate's web page plus the object transmitted back by the advertising web server.<br><br>*See also* col. 4, lines 20-43.<br>FIG. 2 shows the ad server architecture. The ad server, which may comprise one or more servers uses a database 54 that will be described below and performs reporting processes 59, management processes 58, derivation of profile processes 52 and advertisement processes 19. The derive profile process 52 is how the advertisement server gathers information about individual users or TCP/IP networks for individual users. Advertisements, which may be advertisement banners are stored within the ad server process 19 as part of the advertising server process 19 and are periodically updated and refreshed. The advertisement server process 19 is used for responding to requests from advertisements provided by the user's as described above. The management process 58 is used for updating the various advertisements and overall control of the advertising server process 19 and also permits the advertisers to interface with the database to obtain up to the date reports on the placement of the advertisements. The report process 59 is used for generating online reports about the success rate of the advertisement and statistics on the users that are viewing and clicking through on various advertisements and also updating the counters in the database that store how often an advertisement has been displayed.<br><br>*See also* col. 4, lines 44-55.<br>The basic database structure is shown in FIG. 3. For each user identified by the system as shown in FIG. 3A, a user identification, IP address, domain type, time zone, location of the user, standard industrial code for the user's network, the particular advertisements seen and the number of times each such advertisement is seen, the advertisements that were selected or |

Case 3:11-cv-06263-WHA Document 108-4 Filed 12/28/12 Page 763 of 1004
Case 3:11-cv-06268-WHA Document 78-3 Filed 04/27/12 Page 45 of 100

Appendix B-17

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,477 Over U.S. Patent No. 5,948,061 (Merriman '061)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,948,061 (Merriman '061) |
|---|---|
| | "clicked on" and the pages on which the various users' advertisements were seen is collected. By using the information such as which advertisements a user has expressed interest in and which pages the user was viewing when the user clicked through along with other information, targeted Internet advertising is possible.<br><br>*See also* col. 4, line 56 to col. 5, line 7.<br>FIG. 3B shows a database structure for the advertisements. Included in the information for an advertisement are an identifier for the advertisement, the start date for the advertisement being carried, the last date the advertisement is to be carried, the total number of people who have viewed the advertisements, the target or the minimum number of times the advertisement is to be viewed, acceptable viewers by their web site's SICS (Standard Industry Codes), clicked through and pages that the advertisements are seen on. Also, as noted above, to enhance the process of identifying information about various users, information on domains or networks is also tracked. This information includes the domain name and type (e.g., military, government, commerce, foreign countries), the IP address, the standard industrial code, the time zone and the address as shown in FIG. 3C. This information can be used in developing information about users. Through the use of these three databases and other appropriate databases that may be kept, the various processes of the advertising server process 19 are performed.<br><br>*See also* col. 5, lines 50-63.<br>If the user is an existing user, the ad server 19 obtains from a database all of the information known about the user including the user's geographic location, the domain type (commercial educational, governmental, the Internet service provided), the organization type where the user works (for example a SIC code), the company size, the number of employees in that company, the particular types of advertisements that the user has clicked on by SIC or other appropriate coding and the number of times that the user has been exposed to each advertisement currently in the system as described in FIG. 3A. Also, the relative time of day for the user is calculated based upon either the user's country code or the user's IP access provider or the location of |

**Appendix B-17**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,477 Over U.S. Patent No. 5,948,061 (Merriman '061)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,948,061 (Merriman '061) |
|---|---|
| | their domain. |
| | *See also* col. 7, line 57 to col. 8, line 22. |
| | Alternatively, a reverse form of look up can be used independent of people accessing the network. When a domain is discovered, the server will check common DNS names for the name, such as those starting with "www" and "ftp." These resolve to IP addresses in most cases. From the IP addresses, the network number can be extracted and if the network does not yet have a domain name associated with the network number or address, the new domain associated with the network. A reverse domain name look up (A Whois lookup) will then usually provide the name, address and phone number of the organization, thereby providing the geographic location and the time zone of the network. Once the domain name is acquired, the server will determine whether the domain is an educational, military, governmental network and for non-U.S. based networks what country the network is located in through the extension. However, it should be noted that some networks cover broad geographic areas and that further checking needs to be done to ensure that the data may be inaccurate. This can be done by performing a trace route operation to trace the network topology back to the network being examined. If the last two or three nodes on the trace show as being from a given region, the chances are high that the specific user on a network is located in that geographic area. Thus, reverse traces can be used to confirm location with a database for geographic locations. By checking telephone directories and other sources, the specific location for such users may be found by looking up the locations where the owner of the domain name has facilities and using the one closest to the outcome of the trace back step if the information for a given user is different than the location of the domain based upon the trace back, it is this address and location information that is then used. |
| | *See also* col. 1, line 6 to col. 2, line 3; col. 2, line 59 to col. 3, line 23; col. 5, line 64 to col. 7, line 43. |

Appendix B-17

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,477 Over U.S. Patent No. 5,948,061 (Merriman '061)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,948,061 (Merriman '061) |
|---|---|
| | *See also* Figs. 1-3C and associated text. |
| | *See also* claim limitation [1b]. |
| | To the extent it is found that Merriman '061 does not disclose this feature expressly or inherently, it would have been obvious to combine Merriman '061 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 6* | |
| [6a] The method of claim 1, wherein: the service request includes an IP address for identifying the first type network node, and | Merriman '061 discloses that the service request includes an IP address for identifying the first type network node. For example, when a user accesses a web page on the affiliate web site, the affiliate web site receives an HTTP service request from the user's browser (first type network node). In response, the affiliate web site provides information that causes the user's browser to send an HTTP service request to the advertisement server. Both HTTP service requests include an IP address that identifies the user's computer (first type network node). As discussed below in reference to limitation [6b], the affiliate web site and/or the advertisement server use the IP address to identify the first type network node. |
| | *See* Abstract. <br>Methods and apparatuses for targeting the delivery of advertisements over a network such as the Internet are disclosed. Statistics are compiled on individual users and networks and the use of the advertisements is tracked to permit targeting of the advertisements of individual users. In response to requests from affiliated sites, an advertising server transmits to people accessing the page of a site an appropriate one of the advertisement based upon profiling of users and networks. |
| | *See also* col. 2, lines 15-35. <br>To effect such a capability, an advertising server process is provided as a node on the network. |

**Appendix B-17**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,477 Over U.S. Patent No. 5,948,061 (Merriman '061)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,948,061 (Merriman '061) |
|---|---|
| | The various advertisements are stored on the network of the server and preferably on the server. When, for example, a user using a web browser accesses a web page that is affiliated with the advertising server process, the affiliated page's encoding includes an embedded reference to an object provided by the advertising server process. That causes the user's browser to contact the advertising server process to provide the advertising image or information that will appear on the accessed web page as displayed by the user's browser. Using the address information and/or other information passed by the browser for the user, including the page being accessed by the user, the advertising server process determines an appropriate advertisement to select for the particular user. In addition, the advertising server process will use information such as the number of times the user has seen various advertisements, how often the advertisement has been seen by any user and the start and stop date for the various advertisements to select which advertisement to transmit to the user's web page for display. |
| | *See also* col. 3, lines 5-23. |
| | The basic operation of the system is as follows in the preferred embodiment. When a user browsing on the Internet accesses an affiliate's web site 12, the user's browser generates an HTTP message 20 to get the information for the desired web page. The affiliate's web site in response to the message 20 transmits one or more messages back 22 containing the information to be displayed by the user's browser. In addition, an advertising server process 19 will provide additional information comprising one or more objects such as banner advertisements to be displayed with the information provided from the affiliate web site. Normally, the computers supporting the browser, the affiliate web site and the advertising server process will be at entirely different nodes on the Internet. Upon clicking through or otherwise selecting the advertisement object, which may be an image such as an advertisement banner, an icon, or a video or an audio clip, the browser ends up being connected to the advertiser's server or web site 18 for that advertisement object. |
| | *See* col. 3, lines 24-63. |
| | In FIG. 1, a user operates a web browser, such as Netscape or Microsoft Internet Explorer, on a |

**Appendix B-17**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,477 Over U.S. Patent No. 5,948,061 (Merriman '061)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,948,061 (Merriman '061) |
|---|---|
| | computer or PDA or other Internet capable device 16 to generate through the hypertext transfer protocol (HTTP) 14 a request 20 to any one of preferably a plurality of affiliate web sites 12. The affiliate web site sends one or more messages back 22 using the same protocol. Those messages 22 preferably contain all of the information available at the particular web site 12 for the requested page to be displayed by the user's browser 16 except for one or more advertising objects such as banner advertisements. These objects preferably do not reside on the affiliate's web server. Instead, the affiliate's web server sends back a link including an IP address for a node running an advertiser server process 19 as well as information about the page on which the advertisement will be displayed. The link by way of example may be a hypertext markup language (HTML) <img> tag, referring to, for example, an inline image such as a banner. The user's browser 16 then transmits a message 23 using the received IP address to access such an object indicated by the HTML tag from the advertisement server 19. Included in each message 23 typically to the advertising server 19 are: (i) the user's IP address, (ii) a cookie if the browser 16 is cookie enabled and stores cookie information, (iii) a substring key indicating the page in which the advertisement to be provided from the server is to be embedded, and (iv) MIME header information indicating the browser type and version, the operating system of the computer on which the browser is operating and the proxy server type. Upon receiving the request in the message 23, the advertising server process 19 determines which advertisement or other object to provide to user's browser and transmits the messages 24 containing the object such as a banner advertisement to the user's browser 16 using the HTTP protocol. Preferably contained within the HTTP message is a unique identifier for the advertiser's web page appropriate for the advertisement. That advertisement object is then displayed on the image created by the web user's browser as a composite of the received affiliate's web page plus the object transmitted back by the advertising web server.

*See also* col. 3, line 64 to col. 4, line 11.
As part of the "click through" process, when the user clicks on the banner or other advertising object displayed by the user's browser 16, the user's browser again transmits a message to the ad server. The ad server notes the address of the computer of the browser (or any other |

**Appendix B-17**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,477 Over U.S. Patent No. 5,948,061 (Merriman '061)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,948,061 (Merriman '061) |
|---|---|
|  | identifier such as a cookie or a digital signature) that generated the message 23 and transmits back the URL of the advertiser's web page so that the user's web browser 16 generates a message 26 to contact the advertiser's web site 18. The ad server process 19 also notes that a "click through" for an advertisement has occurred and updates the various databases in the manner described below. In the above scenario for the click through process, the ad server process must remember which advertisement was sent to the user's browser in order to know where to redirect the user's browser.

*See also* col. 4, lines 12-19.
While in the above embodiments, the user is a computer on an IP network using a browser, the affiliate web sites are web pages of affiliates located somewhere on the Internet and the ad server is a particular node on the Internet, other setups are also possible. The affiliates may be ISP's or may be actual dedicated web servers and the users may be an entire network instead of an individual browsing on a single computer with a browser.

*See also* col. 4, lines 20-43.
FIG. 2 shows the ad server architecture. The ad server, which may comprise one or more servers uses a database 54 that will be described below and performs reporting processes 59, management processes 58, derivation of profile processes 52 and advertisement processes 19. The derive profile process 52 is how the advertisement server gathers information about individual users or TCP/IP networks for individual users. Advertisements, which may be advertisement banners are stored within the ad server process 19 as part of the advertising server process 19 and are periodically updated and refreshed. The advertisement server process 19 is used for responding to requests from advertisements provided by the user's as described above. The management process 58 is used for updating the various advertisements and overall control of the advertising server process 19 and also permits the advertisers to interface with the database to obtain up to the date reports on the placement of the advertisements. The report process 59 is used for generating online reports about the success rate of the advertisement and statistics on the users that are viewing and clicking through on various advertisements and also |

**Appendix B-17**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,477 Over U.S. Patent No. 5,948,061 (Merriman '061)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,948,061 (Merriman '061) |
|---|---|
| | updating the counters in the database that store how often an advertisement has been displayed. |
| | *See also* col. 4, lines 44-55. |
| | The basic database structure is shown in FIG. 3. For each user identified by the system as shown in FIG. 3A, a user identification, IP address, domain type, time zone, location of the user, standard industrial code for the user's network, the particular advertisements seen and the number of times each such advertisement is seen, the advertisements that were selected or "clicked on" and the pages on which the various users' advertisements were seen is collected. By using the information such as which advertisements a user has expressed interest in and which pages the user was viewing when the user clicked through along with other information, targeted Internet advertising is possible. |
| | *See also* col. 4, line 56 to col. 5, line 7. |
| | FIG. 3B shows a database structure for the advertisements. Included in the information for an advertisement are an identifier for the advertisement, the start date for the advertisement being carried, the last date the advertisement is to be carried, the total number of people who have viewed the advertisements, the target or the minimum number of times the advertisement is to be viewed, acceptable viewers by their web site's SICS (Standard Industry Codes), clicked through and pages that the advertisements are seen on. Also, as noted above, to enhance the process of identifying information about various users, information on domains or networks is also tracked. This information includes the domain name and type (e.g., military, government, commerce, foreign countries), the IP address, the standard industrial code, the time zone and the address as shown in FIG. 3C. This information can be used in developing information about users. Through the use of these three databases and other appropriate databases that may be kept, the various processes of the advertising server process 19 are performed. |
| | *See also* col. 5, lines 10-63. |
| | In response to an incoming message to the advertising server process 19, the advertising server processes 19 first attempts to identify the user in FIG. 2. This can be accomplished by at least |

**Appendix B-17**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,477 Over U.S. Patent No. 5,948,061 (Merriman '061)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,948,061 (Merriman '061) |
|---|---|
| | one of two means. First, any incoming request for an image or a multimedia object is examined to determined the IP address of the requesting browser. The advertising server then notes whether a cookie was received in the MIME heading of the request. From these two pieces of information, a user identification is determined. If a cookie was detected, then the cookie contains the user's identification number that can be accessed in the database. If the user's browser is cookie enabled but no cookie is detected, then the request is from a new user so a user identification must be assigned to the user and that user's new identification number will be transmitted back to the users browser along with a write cookie instruction that causes the browser to write a cookie containing that unique identification number on the user's local drive for future accesses to affiliate sites. The cookie instruction is transmitted back with the advertisement messages 24. Alternatively, instead of using cookies, digital signatures or certificates or log ins uniquely identifying the user accessing the affiliate page may be used. If the user's browser does not support cookies, the advertising server process looks up the user's IP address in a table that stores identification numbers that correspond to IP addresses for the users who have previously contacted the advertising server process. If the IP address is not found in the table, then the user is a new user and is assigned an unused identification number. Also, for each new user, that user's identification number will be marked for further processing under the derive profile process 52 described below. Also, if the domain for the new user has not previously been processed in the domain profile process, it may not be possible to target the advertisement for the new user and rather the new user should be shown a generic advertisement. Also, for new users, a promotional advertisement may be shown to get the new user to provide information about him or herself and his or her employer. If the user is an existing user, the ad server 19 obtains from a database all of the information known about the user including the user's geographic location, the domain type (commercial educational, governmental, the Internet service provided), the organization type where the user works (for example a SIC code), the company size, the number of employees in that company, the particular types of advertisements that the user has clicked on by SIC or other appropriate coding and the number of times that the user has been exposed to each advertisement currently in the system as described in FIG. 3A. Also, the relative time of day for the user is calculated |

**Appendix B-17**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,477 Over U.S. Patent No. 5,948,061 (Merriman '061)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,948,061 (Merriman '061) |
|---|---|
| | based upon either the user's country code or the user's IP access provider or the location of their domain.<br><br>*See also* col. 7, lines 15-31.<br>If the user then decides that he wants to respond to the advertisement and then clicks on the advertisement, the advertisement server 19 receives an HTTP request 23 for a click through which it will recognize by receiving the same IP address (and optionally, the user ID specified by the cookie, digital signature or certificate or log in identification) in the request from the same affiliate's web page within a predetermined period. Since the advertisement server previously recorded which advertisement was sent to that IP address, it sends the redirect message causing the user's browser to receive the URL for the advertiser's web site based upon data stored in the server. In addition, the server logs that the advertisement was clicked through, which user selected the advertisement based upon the IP address, and the page on which the advertisement was seen based upon the click through. This information can then be logged in later reporting processes 59.<br><br>*See also* col. 7, line 46 to col. 8, line 5.<br>In addition, as part of the profiling process for gathering information about users and IP addresses needs to be done. First, appropriate "networks" need to be identified based upon the TCP/IP network address of the user. Periodically, the derive profiles process searches the user database for the address of additional users that have addresses for unknown networks, indicating that they are new users. Then the server does a reverse domain name search to locate the domain name of the user. The server also queries Internet Whois databases to find information about the network, which will often include the domain name. Alternatively, a reverse form of look up can be used independent of people accessing the network. When a domain is discovered, the server will check common DNS names for the name, such as those starting with "www" and "ftp." These resolve to IP addresses in most cases. From the IP addresses, the network number can be extracted and if the network does not yet have a domain name associated with the network number or address, the new domain associated with the |

- 53 -

**Appendix B-17**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,477 Over U.S. Patent No. 5,948,061 (Merriman '061)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,948,061 (Merriman '061) |
|---|---|
|  | network. A reverse domain name look up (A Whois lookup) will then usually provide the name, address and phone number of the organization, thereby providing the geographic location and the time zone of the network. Once the domain name is acquired, the server will determine whether the domain is an educational, military, governmental network and for non-U.S. based networks what country the network is located in through the extension.<br><br>*See also* Figs. 1-3C and associated text.<br><br>*See also* claim limitation [1d].<br><br>To the extent Merriman '061 does not expressly or inherently disclose this limitation, it would have been obvious to combine Merriman with other prior art references and/or the knowledge of a person of ordinary skill in the art to obtain the claimed subject matter. *See* Appendix C. |
| [6b] identifying the first type network node based on the service request comprises using the IP address included in the service request to identify the first type network node. | Merriman '061 discloses that identifying the first type network node based on the service request comprises using the IP address included in the service request to identify the first type network node. For example, when a user accesses a web page on the affiliate web site, the affiliate web site receives an HTTP service request from the user's browser (first type network node). In response, the affiliate web site provides information that causes the user's browser to send an HTTP service request to the advertisement server. Both HTTP service requests include an IP address that identifies the user's computer (first type network node). The affiliate web site and/or the advertisement server use the IP address to identify the user (first type network node), e.g., by looking up the user's IP address in a table that stores identification numbers that correspond to IP addresses for the users who have previously contacted the service.<br><br>*See* Abstract.<br>Methods and apparatuses for targeting the delivery of advertisements over a network such as the Internet are disclosed. Statistics are compiled on individual users and networks and the use of the advertisements is tracked to permit targeting of the advertisements of individual users. In |

**Appendix B-17**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,477 Over U.S. Patent No. 5,948,061 (Merriman '061)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,948,061 (Merriman '061) |
|---|---|
| | response to requests from affiliated sites, an advertising server transmits to people accessing the page of a site an appropriate one of the advertisement based upon profiling of users and networks. |
| | *See also* col. 2, lines 15-35. |
| | To effect such a capability, an advertising server process is provided as a node on the network. The various advertisements are stored on the network of the server and preferably on the server. When, for example, a user using a web browser accesses a web page that is affiliated with the advertising server process, the affiliated page's encoding includes an embedded reference to an object provided by the advertising server process. That causes the user's browser to contact the advertising server process to provide the advertising image or information that will appear on the accessed web page as displayed by the user's browser. Using the address information and/or other information passed by the browser for the user, including the page being accessed by the user, the advertising server process determines an appropriate advertisement to select for the particular user. In addition, the advertising server process will use information such as the number of times the user has seen various advertisements, how often the advertisement has been seen by any user and the start and stop date for the various advertisements to select which advertisement to transmit to the user's web page for display. |
| | *See also* col. 3, lines 5-23. |
| | The basic operation of the system is as follows in the preferred embodiment. When a user browsing on the Internet accesses an affiliate's web site 12, the user's browser generates an HTTP message 20 to get the information for the desired web page. The affiliate's web site in response to the message 20 transmits one or more messages back 22 containing the information to be displayed by the user's browser. In addition, an advertising server process 19 will provide additional information comprising one or more objects such as banner advertisements to be displayed with the information provided from the affiliate web site. Normally, the computers supporting the browser, the affiliate web site and the advertising server process will be at entirely different nodes on the Internet. Upon clicking through or otherwise selecting the |

**Appendix B-17**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,477 Over U.S. Patent No. 5,948,061 (Merriman '061)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,948,061 (Merriman '061) |
|---|---|
| | advertisement object, which may be an image such as an advertisement banner, an icon, or a video or an audio clip, the browser ends up being connected to the advertiser's server or web site 18 for that advertisement object.<br><br>*See* col. 3, lines 24-63.<br>In FIG. 1, a user operates a web browser, such as Netscape or Microsoft Internet Explorer, on a computer or PDA or other Internet capable device 16 to generate through the hypertext transfer protocol (HTTP) 14 a request 20 to any one of preferably a plurality of affiliate web sites 12. The affiliate web site sends one or more messages back 22 using the same protocol. Those messages 22 preferably contain all of the information available at the particular web site 12 for the requested page to be displayed by the user's browser 16 except for one or more advertising objects such as banner advertisements. These objects preferably do not reside on the affiliate's web server. Instead, the affiliate's web server sends back a link including an IP address for a node running an advertiser server process 19 as well as information about the page on which the advertisement will be displayed. The link by way of example may be a hypertext markup language (HTML) <img> tag, referring to, for example, an inline image such as a banner. The user's browser 16 then transmits a message 23 using the received IP address to access such an object indicated by the HTML tag from the advertisement server 19. Included in each message 23 typically to the advertising server 19 are: (i) the user's IP address, (ii) a cookie if the browser 16 is cookie enabled and stores cookie information, (iii) a substring key indicating the page in which the advertisement to be provided from the server is to be embedded, and (iv) MIME header information indicating the browser type and version, the operating system of the computer on which the browser is operating and the proxy server type. Upon receiving the request in the message 23, the advertising server process 19 determines which advertisement or other object to provide to user's browser and transmits the messages 24 containing the object such as a banner advertisement to the user's browser 16 using the HTTP protocol. Preferably contained within the HTTP message is a unique identifier for the advertiser's web page appropriate for the advertisement. That advertisement object is then displayed on the image created by the web user's browser as a composite of the received affiliate's web page plus the |

**Appendix B-17**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,477 Over U.S. Patent No. 5,948,061 (Merriman '061)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,948,061 (Merriman '061) |
|---|---|
| | object transmitted back by the advertising web server. <br><br> *See also* col. 3, line 64 to col. 4, line 11. <br> As part of the "click through" process, when the user clicks on the banner or other advertising object displayed by the user's browser 16, the user's browser again transmits a message to the ad server. The ad server notes the address of the computer of the browser (or any other identifier such as a cookie or a digital signature) that generated the message 23 and transmits back the URL of the advertiser's web page so that the user's web browser 16 generates a message 26 to contact the advertiser's web site 18. The ad server process 19 also notes that a "click through" for an advertisement has occurred and updates the various databases in the manner described below. In the above scenario for the click through process, the ad server process must remember which advertisement was sent to the user's browser in order to know where to redirect the user's browser. <br><br> *See also* col. 4, lines 12-19. <br> While in the above embodiments, the user is a computer on an IP network using a browser, the affiliate web sites are web pages of affiliates located somewhere on the Internet and the ad server is a particular node on the Internet, other setups are also possible. The affiliates may be ISP's or may be actual dedicated web servers and the users may be an entire network instead of an individual browsing on a single computer with a browser. <br><br> *See also* col. 4, lines 20-43. <br> FIG. 2 shows the ad server architecture. The ad server, which may comprise one or more servers uses a database 54 that will be described below and performs reporting processes 59, management processes 58, derivation of profile processes 52 and advertisement processes 19. The derive profile process 52 is how the advertisement server gathers information about individual users or TCP/IP networks for individual users. Advertisements, which may be advertisement banners are stored within the ad server process 19 as part of the advertising server process 19 and are periodically updated and refreshed. The advertisement server process |

**Appendix B-17**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,477 Over U.S. Patent No. 5,948,061 (Merriman '061)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,948,061 (Merriman '061) |
|---|---|
| | 19 is used for responding to requests from advertisements provided by the user's as described above. The management process 58 is used for updating the various advertisements and overall control of the advertising server process 19 and also permits the advertisers to interface with the database to obtain up to the date reports on the placement of the advertisements. The report process 59 is used for generating online reports about the success rate of the advertisement and statistics on the users that are viewing and clicking through on various advertisements and also updating the counters in the database that store how often an advertisement has been displayed. |
| | *See also* col. 4, lines 44-55.<br>The basic database structure is shown in FIG. 3. For each user identified by the system as shown in FIG. 3A, a user identification, IP address, domain type, time zone, location of the user, standard industrial code for the user's network, the particular advertisements seen and the number of times each such advertisement is seen, the advertisements that were selected or "clicked on" and the pages on which the various users' advertisements were seen is collected. By using the information such as which advertisements a user has expressed interest in and which pages the user was viewing when the user clicked through along with other information, targeted Internet advertising is possible. |
| | *See also* col. 4, line 56 to col. 5, line 7.<br>FIG. 3B shows a database structure for the advertisements. Included in the information for an advertisement are an identifier for the advertisement, the start date for the advertisement being carried, the last date the advertisement is to be carried, the total number of people who have viewed the advertisements, the target or the minimum number of times the advertisement is to be viewed, acceptable viewers by their web site's SICS (Standard Industry Codes), clicked through and pages that the advertisements are seen on. Also, as noted above, to enhance the process of identifying information about various users, information on domains or networks is also tracked. This information includes the domain name and type (e.g., military, government, commerce, foreign countries), the IP address, the standard industrial code, the time zone and the address as shown in FIG. 3C. This information can be used in developing information about |

Case 2:11-cv-06263-MHA Document 109-4 Filed 12/28/12 Page 77 of 1004
Case 3:11-cv-06263-WHA Document 98-3 Filed 09/27/12 Page 47 of 100

Appendix B-17

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,477 Over U.S. Patent No. 5,948,061 (Merriman '061)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,948,061 (Merriman '061) |
|---|---|
| | users. Through the use of these three databases and other appropriate databases that may be kept, the various processes of the advertising server process 19 are performed.<br><br>*See also* col. 5, lines 10-63.<br>In response to an incoming message to the advertising server process 19, the advertising server processes 19 first attempts to identify the user in FIG. 2. This can be accomplished by at least one of two means. First, any incoming request for an image or a multimedia object is examined to determined the IP address of the requesting browser. The advertising server then notes whether a cookie was received in the MIME heading of the request. From these two pieces of information, a user identification is determined. If a cookie was detected, then the cookie contains the user's identification number that can be accessed in the database. If the user's browser is cookie enabled but no cookie is detected, then the request is from a new user so a user identification must be assigned to the user and that user's new identification number will be transmitted back to the users browser along with a write cookie instruction that causes the browser to write a cookie containing that unique identification number on the user's local drive for future accesses to affiliate sites. The cookie instruction is transmitted back with the advertisement messages 24. Alternatively, instead of using cookies, digital signatures or certificates or log ins uniquely identifying the user accessing the affiliate page may be used. If the user's browser does not support cookies, the advertising server process looks up the user's IP address in a table that stores identification numbers that correspond to IP addresses for the users who have previously contacted the advertising server process. If the IP address is not found in the table, then the user is a new user and is assigned an unused identification number. Also, for each new user, that user's identification number will be marked for further processing under the derive profile process 52 described below. Also, if the domain for the new user has not previously been processed in the domain profile process, it may not be possible to target the advertisement for the new user and rather the new user should be shown a generic advertisement. Also, for new users, a promotional advertisement may be shown to get the new user to provide information about him or herself and his or her employer. If the user is an existing user, the ad server 19 obtains from a database all of the information known about the |

**Appendix B-17**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,477 Over U.S. Patent No. 5,948,061 (Merriman '061)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,948,061 (Merriman '061) |
|---|---|
| | user including the user's geographic location, the domain type (commercial educational, governmental, the Internet service provided), the organization type where the user works (for example a SIC code), the company size, the number of employees in that company, the particular types of advertisements that the user has clicked on by SIC or other appropriate coding and the number of times that the user has been exposed to each advertisement currently in the system as described in FIG. 3A. Also, the relative time of day for the user is calculated based upon either the user's country code or the user's IP access provider or the location of their domain.<br><br>*See also* col. 7, lines 15-31.<br>If the user then decides that he wants to respond to the advertisement and then clicks on the advertisement, the advertisement server 19 receives an HTTP request 23 for a click through which it will recognize by receiving the same IP address (and optionally, the user ID specified by the cookie, digital signature or certificate or log in identification) in the request from the same affiliate's web page within a predetermined period. Since the advertisement server previously recorded which advertisement was sent to that IP address, it sends the redirect message causing the user's browser to receive the URL for the advertiser's web site based upon data stored in the server. In addition, the server logs that the advertisement was clicked through, which user selected the advertisement based upon the IP address, and the page on which the advertisement was seen based upon the click through. This information can then be logged in later reporting processes 59.<br><br>*See also* col. 7, line 46 to col. 8, line 5.<br>In addition, as part of the profiling process for gathering information about users and IP addresses needs to be done. First, appropriate "networks" need to be identified based upon the TCP/IP network address of the user. Periodically, the derive profiles process searches the user database for the address of additional users that have addresses for unknown networks, indicating that they are new users. Then the server does a reverse domain name search to locate the domain name of the user. The server also queries Internet Whois databases to find |

**Appendix B-17**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,477 Over U.S. Patent No. 5,948,061 (Merriman '061)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,948,061 (Merriman '061) |
|---|---|
| | information about the network, which will often include the domain name.  Alternatively, a reverse form of look up can be used independent of people accessing the network.  When a domain is discovered, the server will check common DNS names for the name, such as those starting with "www" and "ftp." These resolve to IP addresses in most cases.  From the IP addresses, the network number can be extracted and if the network does not yet have a domain name associated with the network number or address, the new domain associated with the network.  A reverse domain name look up (A Whois lookup) will then usually provide the name, address and phone number of the organization, thereby providing the geographic location and the time zone of the network.  Once the domain name is acquired, the server will determine whether the domain is an educational, military, governmental network and for non-U.S. based networks what country the network is located in through the extension.

*See also* Figs. 1-3C and associated text.

*See also* claim limitation [1e].

To the extent Merriman '061 does not expressly or inherently disclose this limitation, it would have been obvious to combine Merriman with other prior art references and/or the knowledge of a person of ordinary skill in the art to obtain the claimed subject matter.  *See* Appendix C. |
| *Claim 7* | |
| [7a] A method for providing web page customization service to a plurality of first type network nodes at a second type network node, comprising the steps of: | Merriman '061 discloses a method for providing web page customization service to a plurality of first type network nodes at a second type network node.

To the extent it is found that Merriman '061 does not disclose this feature expressly or inherently, it would have been obvious to combine Merriman '061 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |

- 61 -

**Appendix B-17**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,477 Over U.S. Patent No. 5,948,061 (Merriman '061)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,948,061 (Merriman '061) |
|---|---|
| | *See* claim limitation [1a]. |
| [7b] forming at least a page file for each of the first type network nodes; | Merriman '061 discloses forming at least a page file for each of the first type network nodes.<br><br>To the extent it is found that Merriman '061 does not disclose this feature expressly or inherently, it would have been obvious to combine Merriman '061 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1b]. |
| [7c] forming at least a page file for the second type network node; | Merriman '061 discloses forming at least a page file for the second type network node.<br><br>To the extent it is found that Merriman '061 does not disclose this feature expressly or inherently, it would have been obvious to combine Merriman '061 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1c]. |
| [7d] receiving a service request from one of the first type network nodes; | Merriman '061 discloses receiving a service request from one of the first type network nodes.<br><br>To the extent it is found that Merriman '061 does not disclose this feature expressly or inherently, it would have been obvious to combine Merriman '061 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1d]. |
| [7e] determining whether the first | Merriman '061 discloses determining whether the first type network node participates in the |

**Appendix B-17**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,477 Over U.S. Patent No. 5,948,061 (Merriman '061)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,948,061 (Merriman '061) |
|---|---|
| type network node participates in the web page customization service; | web page customization service.<br><br>To the extent it is found that Merriman '061 does not disclose this feature expressly or inherently, it would have been obvious to combine Merriman '061 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1e]. |
| [7f] if the first type network node participates in the web page customization service, forming a customized page file for the service request by including the page file formed for the first type network node within the page file formed for the second type network node; and | Merriman '061 discloses, if the first type network node participates in the web page customization service, forming a customized page file for the service request by including the page file formed for the first type network node within the page file formed for the second type network node.<br><br>To the extent it is found that Merriman '061 does not disclose this feature expressly or inherently, it would have been obvious to combine Merriman '061 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1f]. |
| [7g] if the first type network node does not participate in the web page customization service, forming a page file for the service request by using the page file formed for the second type network node. | Merriman '061 discloses, if the first type network node does not participate in the web page customization service, forming a page file for the service request by using the page file formed for the second type network node. For example, if the advertisement server cannot identify the user's IP address, the new user is shown a generic (non-targeted) advertisement, i.e., a page file formed for the second type network node.<br><br>*See* col. 2, lines 6–36.<br>These and other objects of the invention are achieved by the disclosed system and methods. Information about networks and subnetworks is routinely collected. In addition, information |

**Appendix B-17**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,477 Over U.S. Patent No. 5,948,061 (Merriman '061)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,948,061 (Merriman '061) |
|---|---|
| | about individual users is also gathered when users select (click on) different advertisements. Also, data is tracked on how often a given advertisement has been displayed, how often a given user has seen a given advertisement, and other information regarding the user and the frequency of the display of the advertisement. To effect such a capability, an advertising server process is provided as a node on the network. The various advertisements are stored on the network of the server and preferably on the server. When, for example, a user using a web browser accesses a web page that is affiliated with the advertising server process, the affiliated page's encoding includes an embedded reference to an object provided by the advertising server process. That causes the user's browser to contact the advertising server process to provide the advertising image or information that will appear on the accessed web page as displayed by the user's browser. Using the address information and/or other information passed by the browser for the user, including the page being accessed by the user, the advertising server process determines an appropriate advertisement to select for the particular user. In addition, the advertising server process will use information such as the number of times the user has seen various advertisements, how often the advertisement has been seen by any user and the start and stop date for the various advertisements to select which advertisement to transmit to the user's web page for display.<br><br>*See also* col. 2, line 59 to col. 3, line 4.<br>The basic architecture of the network 10 comprises at least one affiliate web site 12, an advertisement (ad) server web site 19 and one or more individual advertiser's web sites 18. Affiliates are one or more entities that generally for a fee contract with the entity providing the advertisement server permit third party advertisements to be displayed on their web sites. When a user using a browser accesses or "visits" a web site of an affiliate, an advertisement provided by the advertisement server 19 will be superimposed on the display of the affiliate's web page displayed by the user's browser. Examples of appropriate affiliates include locator services, service providers, and entities that have popular web sites such as museums, movie studios, etc.<br><br>*See also* col. 3, lines 5-23. |

**Appendix B-17**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,477 Over U.S. Patent No. 5,948,061 (Merriman '061)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,948,061 (Merriman '061) |
|---|---|
| | The basic operation of the system is as follows in the preferred embodiment. When a user browsing on the Internet accesses an affiliate's web site 12, the user's browser generates an HTTP message 20 to get the information for the desired web page. The affiliate's web site in response to the message 20 transmits one or more messages back 22 containing the information to be displayed by the user's browser. In addition, an advertising server process 19 will provide additional information comprising one or more objects such as banner advertisements to be displayed with the information provided from the affiliate web site. Normally, the computers supporting the browser, the affiliate web site and the advertising server process will be at entirely different nodes on the Internet. Upon clicking through or otherwise selecting the advertisement object, which may be an image such as an advertisement banner, an icon, or a video or an audio clip, the browser ends up being connected to the advertiser's server or web site 18 for that advertisement object.<br><br>*See also* col. 3, lines 24-63.<br>In FIG. 1, a user operates a web browser, such as Netscape or Microsoft Internet Explorer, on a computer or PDA or other Internet capable device 16 to generate through the hypertext transfer protocol (HTTP) 14 a request 20 to any one of preferably a plurality of affiliate web sites 12. The affiliate web site sends one or more messages back 22 using the same protocol. Those messages 22 preferably contain all of the information available at the particular web site 12 for the requested page to be displayed by the user's browser 16 except for one or more advertising objects such as banner advertisements. These objects preferably do not reside on the affiliate's web server. Instead, the affiliate's web server sends back a link including an IP address for a node running an advertiser server process 19 as well as information about the page on which the advertisement will be displayed. The link by way of example may be a hypertext markup language (HTML) <img> tag, referring to, for example, an inline image such as a banner. The user's browser 16 then transmits a message 23 using the received IP address to access such an object indicated by the HTML tag from the advertisement server 19. Included in each message 23 typically to the advertising server 19 are: (i) the user's IP address, (ii) a cookie if the browser 16 is cookie enabled and stores cookie information, (iii) a substring key indicating the |

**Appendix B-17**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,477 Over U.S. Patent No. 5,948,061 (Merriman '061)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,948,061 (Merriman '061) |
|---|---|
| | page in which the advertisement to be provided from the server is to be embedded, and (iv) MIME header information indicating the browser type and version, the operating system of the computer on which the browser is operating and the proxy server type. Upon receiving the request in the message 23, the advertising server process 19 determines which advertisement or other object to provide to user's browser and transmits the messages 24 containing the object such as a banner advertisement to the user's browser 16 using the HTTP protocol. Preferably contained within the HTTP message is a unique identifier for the advertiser's web page appropriate for the advertisement. That advertisement object is then displayed on the image created by the web user's browser as a composite of the received affiliate's web page plus the object transmitted back by the advertising web server.<br><br>*See also* col. 5, lines 34–49.<br>If the user's browser does not support cookies, the advertising server process looks up the user's IP address in a table that stores identification numbers that correspond to IP addresses for the users who have previously contacted the advertising server process. If the IP address is not found in the table, then the user is a new user and is assigned an unused identification number. Also, for each new user, that user's identification number will be marked for further processing under the derive profile process 52 described below. Also, if the domain for the new user has not previously been processed in the domain profile process, it may not be possible to target the advertisement for the new user and rather the new user should be shown a generic advertisement. Also, for new users, a promotional advertisement may be shown to get the new user to provide information about him or herself and his or her employer.<br><br>*See also* Figures 1–3C and associated text.<br><br>*See also* claim limitation [1f].<br><br>To the extent it is found that Merriman '061 does not disclose this feature expressly or inherently, it would have been obvious to combine Merriman '061 with the knowledge of a |

**Appendix B-17**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,477 Over U.S. Patent No. 5,948,061 (Merriman '061)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,948,061 (Merriman '061) |
|---|---|
| | person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 8* | |
| [8] The method of claim 7, wherein the first type network nodes are ISP nodes, and the second type network node is an ICP node. | Merriman '061 discloses that the first type network nodes are ISP nodes, and the second type network node is an ICP node. To the extent it is found that Merriman '061 does not disclose this feature expressly or inherently, it would have been obvious to combine Merriman '061 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. *See* claim limitation [2]. |
| *Claim 9* | |
| [9] The method of claim 7, wherein the first type network nodes are organization nodes, and the second type network node is an ICP node. | Merriman '061 discloses that the first type network nodes are organization nodes, and the second type network node is an ICP node. To the extent it is found that Merriman '061 does not disclose this feature expressly or inherently, it would have been obvious to combine Merriman '061 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. *See* claim limitation [3]. |
| *Claim 10* | |
| [10] The method of claim 7, wherein the customized page file includes customized graphics, sounds, applets, | Merriman '061 discloses that the customized page file includes customized graphics, sounds, applets, links, and text. To the extent it is found that Merriman '061 does not disclose this feature expressly or inherently, it would have been obvious to combine Merriman '061 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed |

Appendix B-17

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,477 Over U.S. Patent No. 5,948,061 (Merriman '061)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,948,061 (Merriman '061) |
|---|---|
| links, and text. | subject matter. *See* Appendix C.<br><br>*See* claim limitation [4]. |
| *Claim 11* | |
| [11] The method of claim 7, wherein the customized page file includes customized advertisements. | Merriman '061 discloses that the customized page file includes customized advertisements.<br><br>To the extent it is found that Merriman '061 does not disclose this feature expressly or inherently, it would have been obvious to combine Merriman '061 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [5]. |
| *Claim 12* | |
| [12a] The method of claim 7, wherein: the service request from one of the first type network nodes includes an IP address for identifying the first type network node, and | Merriman '061 discloses that the service request from one of the first type network nodes includes an IP address for identifying the first type network node.<br><br>To the extent it is found that Merriman '061 does not disclose this feature expressly or inherently, it would have been obvious to combine Merriman '061 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [6a]. |
| [12b] determining whether the first type network node participates in the web page customization service comprises using the IPI address included in the service request to | Merriman '061 discloses determining whether the first type network node participates in the web page customization service comprises using the IPI address included in the service request to identify the first type network node.<br><br>To the extent it is found that Merriman '061 does not disclose this feature expressly or |

- 68 -

Appendix B-17

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,477 Over U.S. Patent No. 5,948,061 (Merriman '061)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,948,061 (Merriman '061) |
|---|---|
| identify the first type network node. | inherently, it would have been obvious to combine Merriman '061 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [6b]. |
| *Claim 13* | |
| [13a] A method for providing web page customization service to a plurality of first type network nodes at a second type network node, comprising the steps of: | Merriman '061 discloses a method for providing web page customization service to a plurality of first type network nodes at a second type network node.<br><br>To the extent it is found that Merriman '061 does not disclose this feature expressly or inherently, it would have been obvious to combine Merriman '061 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1a]. |
| [13b] forming a plurality of advertisements for the first type network nodes; | Merriman '061 discloses forming a plurality of advertisements for the first type network nodes.<br><br>To the extent it is found that Merriman '061 does not disclose this feature expressly or inherently, it would have been obvious to combine Merriman '061 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitations [1b] and [5]. |
| [13c] forming at least a page file for the second type network node; | Merriman '061 discloses forming at least a page file for the second type network node.<br><br>To the extent it is found that Merriman '061 does not disclose this feature expressly or inherently, it would have been obvious to combine Merriman '061 with the knowledge of a |

**Appendix B-17**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,477 Over U.S. Patent No. 5,948,061 (Merriman '061)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,948,061 (Merriman '061) |
|---|---|
| | person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. *See* claim limitation [1c]. |
| [13d] receiving a service request from one of the first type network nodes; | Merriman '061 discloses receiving a service request from one of the first type network nodes. To the extent it is found that Merriman '061 does not disclose this feature expressly or inherently, it would have been obvious to combine Merriman '061 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. *See* claim limitation [1d]. |
| [13e] identifying advertisements for the first type network node; and | Merriman '061 discloses identifying advertisements for the first type network node. To the extent it is found that Merriman '061 does not disclose this feature expressly or inherently, it would have been obvious to combine Merriman '061 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. *See* claim limitations [1e] and [5]. |
| [13f] forming a customized page file for the first type network node by including the identified advertisements within the page file formed for the second type network node. | Merriman '061 discloses forming a customized page file for the first type network node by including the identified advertisements within the page file formed for the second type network node. To the extent it is found that Merriman '061 does not disclose this feature expressly or inherently, it would have been obvious to combine Merriman '061 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. |

**Appendix B-17**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,477 Over U.S. Patent No. 5,948,061 (Merriman '061)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,948,061 (Merriman '061) |
|---|---|
| | *See* Appendix C.<br><br>*See* claim limitation [1f]. |
| *Claim 14* | |
| [14] The method of claim 13, wherein the first type network nodes are ISP nodes, and the second type network node is an ICP node. | Merriman '061 discloses that the first type network nodes are ISP nodes, and the second type network node is an ICP node.<br><br>To the extent it is found that Merriman '061 does not disclose this feature expressly or inherently, it would have been obvious to combine Merriman '061 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [2]. |
| *Claim 15* | |
| [15] The method of claim 13, wherein the first type network nodes are organization nodes, and the second type network node is an ICP node. | Merriman '061 discloses that the first type network nodes are organization nodes, and the second type network node is an ICP node.<br><br>To the extent it is found that Merriman '061 does not disclose this feature expressly or inherently, it would have been obvious to combine Merriman '061 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [3]. |
| *Claim 16* | |
| [16] The method of claim 13, wherein the identified advertisements do not cause negative impact on the | Merriman '061 discloses that the identified advertisements do not cause negative impact on the owner of the first type network node. For example, the advertisement server associates each advertisement with acceptable viewers by their web site's SICs (Standard Industry Codes). |

**Appendix B-17**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,477 Over U.S. Patent No. 5,948,061 (Merriman '061)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,948,061 (Merriman '061) |
|---|---|
| owner of the first type network node. | Also, the advertisement server stops providing an advertisement if the number of times that the user has seen a given advertisement exceeds a threshold.  As a consequence, the targeted advertisements do not cause negative impact on the user, organization, and/or ISP (owner of the first type network node). |
| | *See* col. 1, lines 13–27. |
| | In advertising, it is considered highly desirable to target advertisements to the appropriate potential customer base, rather than to broadcast advertisements in general. It has long been known that, for example, advertisements for computers should generally not appear in magazines on gardening and, conversely, advertisements for gardening tools should not appear in magazines on computers. Similarly, advertisers have generally targeted their advertisements on television to programs appropriate for the desired customer base.  It has also long been known that an advertisement that is repeated too often will eventually become ignored by consumers. Therefore, an advertiser typically wishes to eliminate duplication and reach as many individuals in the advertiser's target group as possible. |
| | *See* col. 1, lines 45–63. |
| | Nonetheless, such advertising has had, so far, a poor rate of response because it is untargeted advertising. Thus, someone who is totally uninterested in computers other than they happen to be on the Internet, may continually see advertisements for computers. On the other hand, someone who is interested in computers may continually see advertisements for gardening tools when browsing through a particular web site. Thus it would be highly desirable to have a method of targeting the advertising to the appropriate user.  In addition, if a user of such computer networks is continuously exposed to the same advertisement, the response rate to the advertisement will generally decline. Therefore, it is highly desirable to have a system that controls the frequency of exposure of advertisements to particular users. In addition, it is also important for the advertisers to track response to the advertisements and to acquire as much information about those people responding to the advertisements for targeting those same |

**Appendix B-17**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,477 Over U.S. Patent No. 5,948,061 (Merriman '061)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,948,061 (Merriman '061) |
|---|---|
| | people at later dates. |
| | |
| | *See* 4, lines 56–64. |
| | FIG. 3B shows a database structure for the advertisements. Included in the information for an advertisement are an identifier for the advertisement, the start date for the advertisement being carried, the last date the advertisement is to be carried, the total number of people who have viewed the advertisements, the target or the minimum number of times the advertisement is to be viewed, acceptable viewers by their web site's SICS (Standard Industry Codes), clicked through and pages that the advertisements are seen on. |
| | |
| | *See* col. 6, lines 12–26. |
| | The preferred embodiment also includes determining which advertising object should be selected if two or more advertising object have criteria matching the user. selecting from the matched advertisements by determining how often the particular user has been exposed to the given advertisement. For each user, data is kept about the number of times that a user has seen a given advertisement based upon the user ID. For each advertisement where the user matches the criteria, if the number of times that the user has seen the advertisement is less than a predetermined threshold, the advertisement is retained as one of the possible matches. If the number of times that the user has seen a given advertisement exceeds the threshold, the advertisement is discarded as a possible candidate for transmitting back to the user. |
| | |
| | *See also* col. 6, line 60 to col. 7, line 14. |
| | After delivery of the advertisement to the user, additional processing needs to be done both for tracking the exposure of the advertisement and for having more information about the user. First, the system stores the fact that the advertisement was sent to the user by storing that information in the database based upon the user ID. This information is used for processing the user's response to the advertisement when the user "clicks" on the advertisement. Also, the advertising processor updates the advertisements satisfaction index and logs the advertisement delivery for providing reports. Also, if the advertisement that has been sent has a limit on the |

Appendix B-17

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,477 Over U.S. Patent No. 5,948,061 (Merriman '061)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,948,061 (Merriman '061) |
|---|---|
|  | number of times that the advertisement can be sent, the count of the number of times that the advertisement has been transmitted is incremented. This limit can be the overall limit for the number of times that the advertisement is viewed and/or the limit that any specific user can view the advertisement. If the limit on the number of times the advertisement can be sent is reached, then the particular advertisement is removed from the list of those that can be transmitted. In addition, even if an advertisement has not been transmitted recently, the SI is updated to reflect the passage of time.<br><br>*See also* claim limitation [5].<br><br>To the extent it is found that Merriman '061 does not disclose this feature expressly or inherently, it would have been obvious to combine Merriman '061 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 17* |  |
| [17a] An apparatus for dynamically forming a customized web page for a first type network node at a second type network node, comprising: | Merriman '061 discloses an apparatus for dynamically forming a customized web page for a first type network node at a second type network node.<br><br>To the extent it is found that Merriman '061 does not disclose this feature expressly or inherently, it would have been obvious to combine Merriman '061 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1a]. |
| [17b] means for forming at least a page file for the first type network node; | Merriman '061 discloses means for forming at least a page file for the first type network node.<br><br>To the extent it is found that Merriman '061 does not disclose this feature expressly or inherently, it would have been obvious to combine Merriman '061 with the knowledge of a |

**Appendix B-17**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,477 Over U.S. Patent No. 5,948,061 (Merriman '061)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,948,061 (Merriman '061) |
|---|---|
| | person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.  *See* claim limitation [1b]. |
| [17c] means for forming at least a page file for the second type network node; | Merriman '061 discloses means for forming at least a page file for the second type network node.  To the extent it is found that Merriman '061 does not disclose this feature expressly or inherently, it would have been obvious to combine Merriman '061 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.  *See* claim limitation [1c]. |
| [17d] means for receiving a service request from the first type network node; | Merriman '061 discloses means for receiving a service request from the first type network node.  To the extent it is found that Merriman '061 does not disclose this feature expressly or inherently, it would have been obvious to combine Merriman '061 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.  *See* claim limitation [1d]. |
| [17e] means for identifying the first type network node based on the service request; and | Merriman '061 discloses means for identifying the first type network node based on the service request.  To the extent it is found that Merriman '061 does not disclose this feature expressly or inherently, it would have been obvious to combine Merriman '061 with the knowledge of a |

Appendix B-17

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,477 Over U.S. Patent No. 5,948,061 (Merriman '061)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,948,061 (Merriman '061) |
|---|---|
| | person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1e]. |
| [17f] means for forming a customized page file formed for the first type network node by including the page file formed for the first type network node within the page file for the second type network node. | Merriman '061 discloses means for forming a customized page file formed for the first type network node by including the page file formed for the first type network node within the page file for the second type network node.<br><br>To the extent it is found that Merriman '061 does not disclose this feature expressly or inherently, it would have been obvious to combine Merriman '061 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1f]. |
| *Claim 18* | |
| [18] The apparatus of claim 17, wherein the first type network node is an ISP node, and the second type network node is an ICP node. | Merriman '061 discloses that the first type network node is an ISP node, and the second type network node is an ICP node.<br><br>To the extent it is found that Merriman '061 does not disclose this feature expressly or inherently, it would have been obvious to combine Merriman '061 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [2]. |
| *Claim 19* | |
| [19] The apparatus of claim 17, wherein the first type network node is | Merriman '061 discloses that the first type network node is an organization node, and the |

**Appendix B-17**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,477 Over U.S. Patent No. 5,948,061 (Merriman '061)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,948,061 (Merriman '061) |
|---|---|
| an organization node, and the second type network node is an ICP node. | second type network node is an ICP node.<br><br>To the extent it is found that Merriman '061 does not disclose this feature expressly or inherently, it would have been obvious to combine Merriman '061 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [3]. |
| *Claim 20* | |
| [20] The apparatus of claim 17, wherein the customized page file includes customized graphics, sounds, applets, links, and text. | Merriman '061 discloses that the customized page file includes customized graphics, sounds, applets, links, and text. To the extent it is found that Merriman '061 does not disclose this feature expressly or inherently, it would have been obvious to combine Merriman '061 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [4]. |
| *Claim 21* | |
| [21] The apparatus of claim 17, wherein the customized page file includes customized advertisements. | Merriman '061 discloses that the customized page file includes customized advertisements.<br><br>To the extent it is found that Merriman '061 does not disclose this feature expressly or inherently, it would have been obvious to combine Merriman '061 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [5]. |
| *Claim 22* | |
| [22a] An apparatus for providing web | Merriman '061 discloses an apparatus for providing web page customization service to a |

- 77 -

**Appendix B-17**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,477 Over U.S. Patent No. 5,948,061 (Merriman '061)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,948,061 (Merriman '061) |
|---|---|
| page customization service to a plurality of first type network nodes at a second type network node, comprising: | plurality of first type network nodes at a second type network node. <br><br> To the extent it is found that Merriman '061 does not disclose this feature expressly or inherently, it would have been obvious to combine Merriman '061 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. <br><br> *See* claim limitation [7a]. |
| [22b] means for forming at least a page file for each of the first type network nodes; | Merriman '061 discloses means for forming at least a page file for each of the first type network nodes. <br><br> To the extent it is found that Merriman '061 does not disclose this feature expressly or inherently, it would have been obvious to combine Merriman '061 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. <br><br> *See* claim limitation [7b]. |
| [22c] means for forming at least a page file for the second type network node; | Merriman '061 discloses means for forming at least a page file for the second type network node. <br><br> To the extent it is found that Merriman '061 does not disclose this feature expressly or inherently, it would have been obvious to combine Merriman '061 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. <br><br> *See* claim limitation [7c]. |
| [22d] means for receiving a service | Merriman '061 discloses means for receiving a service request from one of the first type |

**Appendix B-17**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,477 Over U.S. Patent No. 5,948,061 (Merriman '061)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,948,061 (Merriman '061) |
|---|---|
| request from one of the first type network nodes; | network nodes.<br><br>To the extent it is found that Merriman '061 does not disclose this feature expressly or inherently, it would have been obvious to combine Merriman '061 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [7d]. |
| [22e] means for determining whether the first type network node participates in the web page customization service; | Merriman '061 discloses means for determining whether the first type network node participates in the web page customization service.<br><br>To the extent it is found that Merriman '061 does not disclose this feature expressly or inherently, it would have been obvious to combine Merriman '061 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [7e]. |
| [22f] means for forming a customized page file for the service request by including the page file formed for the first type network node within the page file formed for the second type network node, if the first type network node participates in the web page customization service; and | Merriman '061 discloses means for forming a customized page file for the service request by including the page file formed for the first type network node within the page file formed for the second type network node, if the first type network node participates in the web page customization service.<br><br>To the extent it is found that Merriman '061 does not disclose this feature expressly or inherently, it would have been obvious to combine Merriman '061 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |

**Appendix B-17**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,477 Over U.S. Patent No. 5,948,061 (Merriman '061)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,948,061 (Merriman '061) |
|---|---|
| | *See* claim limitation [7f]. |
| [22g] means for forming a page file for the service request by using the page file formed for the second type network node, if the first type network node does not participate in the web page customization service. | Merriman '061 discloses means for forming a page file for the service request by using the page file formed for the second type network node, if the first type network node does not participate in the web page customization service.<br><br>To the extent it is found that Merriman '061 does not disclose this feature expressly or inherently, it would have been obvious to combine Merriman '061 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [7g]. |
| *Claim 23* | |
| [23] The apparatus of claim 22, wherein the first type network nodes are ISP nodes, and the second type network node is an ICP node. | Merriman '061 discloses that the first type network nodes are ISP nodes, and the second type network node is an ICP node.<br><br>To the extent it is found that Merriman '061 does not disclose this feature expressly or inherently, it would have been obvious to combine Merriman '061 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [8]. |
| *Claim 24* | |
| [24] The apparatus of claim 22, wherein the first type network nodes are organization nodes, and the second type network node is an ICP | Merriman '061 discloses that the first type network nodes are organization nodes, and the second type network node is an ICP node.<br><br>To the extent it is found that Merriman '061 does not disclose this feature expressly or inherently, it would have been obvious to combine Merriman '061 with the knowledge of a |

**Appendix B-17**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,477 Over U.S. Patent No. 5,948,061 (Merriman '061)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,948,061 (Merriman '061) |
|---|---|
| node. | person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. <br><br> *See* claim limitation [9]. |
| *Claim 25* | |
| [25] The apparatus of claim 22, wherein the customized page file includes customized graphics, sounds, applets, links, and text. | Merriman '061 discloses that the customized page file includes customized graphics, sounds, applets, links, and text. To the extent it is found that Merriman '061 does not disclose this feature expressly or inherently, it would have been obvious to combine Merriman '061 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. <br><br> *See* claim limitation [10]. |
| *Claim 26* | |
| [26] The apparatus of claim 25, wherein the customized page file includes customized advertisements. | Merriman '061 discloses that the customized page file includes customized advertisements. <br><br> To the extent it is found that Merriman '061 does not disclose this feature expressly or inherently, it would have been obvious to combine Merriman '061 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. <br><br> *See* claim limitation [11]. |
| *Claim 27* | |
| [27a] An apparatus for providing web page customization service to a plurality of first type network nodes at a second type network node, | Merriman '061 discloses an apparatus for providing web page customization service to a plurality of first type network nodes at a second type network node. <br><br> To the extent it is found that Merriman '061 does not disclose this feature expressly or inherently, it would have been obvious to combine Merriman '061 with the knowledge of a |

Appendix B-17

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,477 Over U.S. Patent No. 5,948,061 (Merriman '061)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,948,061 (Merriman '061) |
|---|---|
| comprising: | person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [13a]. |
| [27b] means for forming a plurality of advertisements for the first type network nodes; | Merriman '061 discloses means for forming a plurality of advertisements for the first type network nodes.<br><br>To the extent it is found that Merriman '061 does not disclose this feature expressly or inherently, it would have been obvious to combine Merriman '061 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [13b]. |
| [27c] means for forming at least a page file for the second type network node; | Merriman '061 discloses means for forming at least a page file for the second type network node.<br><br>To the extent it is found that Merriman '061 does not disclose this feature expressly or inherently, it would have been obvious to combine Merriman '061 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [13c]. |
| [27d] means for receiving a service request from one of the first type network nodes; | Merriman '061 discloses means for receiving a service request from one of the first type network nodes.<br><br>To the extent it is found that Merriman '061 does not disclose this feature expressly or inherently, it would have been obvious to combine Merriman '061 with the knowledge of a |

**Appendix B-17**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,477 Over U.S. Patent No. 5,948,061 (Merriman '061)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,948,061 (Merriman '061) |
|---|---|
| | person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [13d]. |
| [27e] means for identifying advertisements for the first type network node; and | Merriman '061 discloses means for identifying advertisements for the first type network node.<br><br>To the extent it is found that Merriman '061 does not disclose this feature expressly or inherently, it would have been obvious to combine Merriman '061 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [13e]. |
| [27f] means for forming a customized page file for the first type network node by including the identified advertisements within the page file formed for the second type network node. | Merriman '061 discloses means for forming a customized page file for the first type network node by including the identified advertisements within the page file formed for the second type network node.<br><br>To the extent it is found that Merriman '061 does not disclose this feature expressly or inherently, it would have been obvious to combine Merriman '061 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [13f]. |
| *Claim 28* | |
| [28] The apparatus of claim 27, wherein the first type network nodes are ISP nodes, and the second type | Merriman '061 discloses that the first type network nodes are ISP nodes, and the second type network node is an ICP node.<br><br>To the extent it is found that Merriman '061 does not disclose this feature expressly or |

**Appendix B-17**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,477 Over U.S. Patent No. 5,948,061 (Merriman '061)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,948,061 (Merriman '061) |
|---|---|
| network node is an ICP node. | inherently, it would have been obvious to combine Merriman '061 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [14]. |
| *Claim 29* | |
| [29] The apparatus of claim 27, wherein the first type network nodes are organization nodes, and the second type network node is an ICP node. | Merriman '061 discloses that the first type network nodes are organization nodes, and the second type network node is an ICP node.<br><br>To the extent it is found that Merriman '061 does not disclose this feature expressly or inherently, it would have been obvious to combine Merriman '061 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [15]. |
| *Claim 30* | |
| [30] The apparatus of claim 27, wherein the identified advertisements do not cause negative impact on the owner of the first type network node. | Merriman '061 discloses that the identified advertisements do not cause negative impact on the owner of the first type network node.<br><br>To the extent it is found that Merriman '061 does not disclose this feature expressly or inherently, it would have been obvious to combine Merriman '061 with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [16]. |

**Appendix B-18**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,959,621 (Nawaz)**

U.S. Patent No. 5,959,621 to Nawz et al. ("Nawaz") is prior art to U.S. Patent No. 6,442,577 ("the '577 patent") under 35 U.S.C. 102(e) because it issued from a U.S. patent application filed on Dec. 6, 1996, which is prior to the Nov. 3, 1998 filing date of the '577 patent.

As detailed in this chart, Nawaz anticipates at least claims 1–30 of the '577 patent. In addition or in the alternative, claims 1–30 of the '577 patent are obvious over Nawaz in view of the knowledge of a person of ordinary skill and/or one or more other references, as detailed in Appendix C.

This chart is based in whole or in part on the present understanding of positions taken by PageMelding regarding the coverage, scope and construction of the asserted claims to the extent those positions can be deduced from PageMelding's contentions pursuant to Patent Local Rule 3-1 served on August 3, 2012. Nothing herein is an admission that PageMelding's infringement contentions are correct, an admission that Plaintiff's apparent claim constructions are correct, or an admission that ESPN's technology infringes any asserted claim.

## Appendix B-18

### Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,959,621 (Nawaz)

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,959,621 (Nawaz) |
|---|---|
| *Claim 1* | |
| [la] A method for dynamically forming customized web pages for a first type network node at a second type network node, comprising the steps of: | Nawaz discloses a method for dynamically forming customized web pages for a first type network node at a second type network node. To the extent it is found that Nawaz does not disclose this feature expressly or inherently, it would have been obvious to combine Nawaz with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* Abstract.<br>A system and method for dynamically displaying data items on a client computer. In one aspect of the invention, the client computer displays a graphical user interface having a windowing environment and a desktop. The desktop includes a ticker display pane for dynamically displaying the data items. The data items may contain hyperlinks so that a user has access to information on multiple server computers. The data items are displayed in a substantially continuous sequence and may be provided from Internet servers, Intranet servers, LAN servers, and/or the client computer itself.<br><br>*See also* col. 3, line 64 to col. 4, line 9.<br>The source identifier may include a hyperlink. Upon activating the hyperlink (e.g., clicking on the source identifier), the system retrieves and displays a document on a server computer associated with the hyperlink. The source identifier may further be an HTML page allowing the content provider to place advertisements and other information in a display space for the source identifier. Thus, using the present invention, rich multimedia data is dynamically integrated directly into the desktop on a client computer. The data may be provided from multiple server computers on multiple networks, such as Internet servers, Intranet servers, LAN servers, etc. Further, the data may include hyperlinks allowing the user to browse to related documents on a computer network. Finally, the data displayed is the most up-to-date content, since it is provided directly from the content providers.<br><br>*See also* col. 2, lines 42–59.<br>One provider of an Internet broadcasting application is PointCast Inc. PointCast provides an Internet broadcast application on its Internet site (http://www.pointcast.com) that a user can download to the user's computer. The Internet broadcast application executes as a windowed application on the user's |

**Appendix B-18**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,959,621 (Nawaz)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,959,621 (Nawaz) |
|---|---|
| | computer. In the application's window, the Pointcast application displays a channel viewer. The channel viewer contains different panes for organizing and reading news. One pane lists a collection of channels encompassing such topics as companies, industries, life styles, news, and sports. When a user activates a channel, a second pane is displayed showing a list of current stories relating to the selected channel. If a user activates a story, the full text for that story is displayed on a third pane. The PointCast application also includes what is called a "SmartScreen" that is triggered after a preset period of inactivity (as in a screen saver). SmartScreen launches a collection of headlines, sports scores, and stock tickers.<br><br>*See also* col. 9, lines 4–9.<br>The data may be downloaded from the content providers through regularly scheduled downloads. Alternatively, the user may choose to update information when the user selects a proper keystroke or chooses a menu item. The data may also be downloaded during idle time, such as when a user is reading currently downloaded data.<br><br>*See also* col. 9, lines 10–20.<br>The data displayed in the viewer can relate to different topics of information, such as sports, business, weather, stock information, etc. The different topics correspond to user-selected channels chosen from the channel guide (described further below). Messages from other users on a computer network also can be displayed. As will be further described below, the substantially continuous sequence of data items can include data items provided by multiple servers on multiple networks, such as LAN servers, Intranet servers and Internet servers. The client computer also can source data items for display in the ticker display pane.<br><br>*See also* Figs. 1, 7, 13, and 21 and associated text.<br><br>*See also* claim limitations [1a] through [1f]. |
| [1b] forming at least a page file for the first type network | Nawaz discloses forming at least a page file for the first type network node.  To the extent it is found that Nawaz does not disclose this feature expressly or inherently, it would have been obvious to |

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,959,621 (Nawaz)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,959,621 (Nawaz) |
|---|---|
| node; | combine Nawaz with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* col. 3, lines 40–50.<br>In another aspect of the invention, the data is retrieved from one or more source computers (i.e., multiple providers), which may be located on different computer networks. For example, server computers may be Internet, Intranet or LAN server computers. Additionally, information from multiple topic areas, such as sports, entertainment, stocks, and intercorporate messages can be integrated into the substantially continuous sequence of data items. In this aspect of the invention, the ticker display pane may or may not be part of the desktop (e.g., the ticker may be in a separate window).<br><br>*See also* col. 3, line 64 to col. 4, line 9.<br>The source identifier may include a hyperlink. Upon activating the hyperlink (e.g., clicking on the source identifier), the system retrieves and displays a document on a server computer associated with the hyperlink. The source identifier may further be an HTML page allowing the content provider to place advertisements and other information in a display space for the source identifier. Thus, using the present invention, rich multimedia data is dynamically integrated directly into the desktop on a client computer. The data may be provided from multiple server computers on multiple networks, such as Internet servers, Intranet servers, LAN servers, etc. Further, the data may include hyperlinks allowing the user to browse to related documents on a computer network. Finally, the data displayed is the most up-to-date content, since it is provided directly from the content providers.<br><br>*See also* col. 12, lines 50–65.<br>The ticker HTML document sequentially displays one or more data items and the source identifier from each content provider. For example, assume that a content provider 256 is the first content provider listed in the user-preference storage 254. The ticker HTML uses a URL received from the user-preference storage to connect to the content provider 256 via the Internet. One or more data items from the content provider 256 are then displayed in the ticker display pane. The ticker HTML then retrieves the next URL from the user-preference storage and displays data items from the content |

**Appendix B-18**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,959,621 (Nawaz)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,959,621 (Nawaz) |
|---|---|
| | provider associated with that URL. Each URL may be associated with a different content provider. The URLs can point to Internet content providers, such as content providers 256 and 258, Intranet content providers, such as content providers 260, 262 and LAN content providers, such as content provider 264. This process continues for each URL in the user-preference storage until data items from the last content provider listed in the user-preference storage are displayed. After sequencing through all the content providers, this process repeats, starting again with the first content provider 256. <br><br> *See also* Figs. 1, 7, and 13 and associated text. |
| [1c] forming at least a page file for the second type network node; | Nawaz discloses forming at least a page file for the second type network node.  To the extent it is found that Nawaz does not disclose this feature expressly or inherently, it would have been obvious to combine Nawaz with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter.  *See* Appendix C. <br><br> *See* col. 3, lines 40–50. <br> In another aspect of the invention, the data is retrieved from one or more source computers (i.e., multiple providers), which may be located on different computer networks. For example, server computers may be Internet, Intranet or LAN server computers. Additionally, information from multiple topic areas, such as sports, entertainment, stocks, and intercorporate messages can be integrated into the substantially continuous sequence of data items. In this aspect of the invention, the ticker display pane may or may not be part of the desktop (e.g., the ticker may be in a separate window). <br><br> *See also* col. 3, line 64 to col. 4, line 9. <br> The source identifier may include a hyperlink. Upon activating the hyperlink (e.g., clicking on the source identifier), the system retrieves and displays a document on a server computer associated with the hyperlink. The source identifier may further be an HTML page allowing the content provider to place advertisements and other information in a display space for the source identifier. Thus, using the present invention, rich multimedia data is dynamically integrated directly into the desktop on a client computer. The data may be provided from multiple server computers on multiple networks, such as |

**Appendix B-18**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,959,621 (Nawaz)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,959,621 (Nawaz) |
|---|---|
| | Internet servers, Intranet servers, LAN servers, etc. Further, the data may include hyperlinks allowing the user to browse to related documents on a computer network. Finally, the data displayed is the most up-to-date content, since it is provided directly from the content providers.<br><br>*See also* col. 12, lines 50–65.<br>The ticker HTML document sequentially displays one or more data items and the source identifier from each content provider. For example, assume that a content provider 256 is the first content provider listed in the user-preference storage 254. The ticker HTML uses a URL received from the user-preference storage to connect to the content provider 256 via the Internet. One or more data items from the content provider 256 are then displayed in the ticker display pane. The ticker HTML then retrieves the next URL from the user-preference storage and displays data items from the content provider associated with that URL. Each URL may be associated with a different content provider. The URLs can point to Internet content providers, such as content providers 256 and 258, Intranet content providers, such as content providers 260, 262 and LAN content providers, such as content provider 264. This process continues for each URL in the user-preference storage until data items from the last content provider listed in the user-preference storage are displayed. After sequencing through all the content providers, this process repeats, starting again with the first content provider 256.<br><br>*See also* col. 9, lines 4–9.<br>The data may be downloaded from the content providers through regularly scheduled downloads. Alternatively, the user may choose to update information when the user selects a proper keystroke or chooses a menu item. The data may also be downloaded during idle time, such as when a user is reading currently downloaded data.<br><br>*See also* Figs. 1, 7, and 13 and associated text. |
| [1d] receiving a service request from the first type network node; | Nawaz discloses receiving a service request from the first type network node. To the extent it is found that Nawaz does not disclose this feature expressly or inherently, it would have been obvious to combine Nawaz with the knowledge of a person of ordinary skill and/or other prior art references to |

Appendix B-18

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,959,621 (Nawaz)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,959,621 (Nawaz) |
|---|---|
| | obtain the claimed subject matter.  *See* Appendix C. |
| | *See* col. 12, lines 32–40. |
| | The control includes a GetProviderInfo function for reading a user-preference storage 254 on the client computer (the GetProviderInfo function and user-preference storage are further described in co-pending application Ser. No. 08/760,931). The control 252 obtains a sequence of URLs stored in the user-preference storage and uses the URLs to retrieve data items or messages from multiple content providers. The content providers can be from multiple server computers on the same network or on multiple networks. |
| | *See also* col. 11, lines 24–39. |
| | Categories 208 and 210 allow a user to choose whether they want messages displayed in the ticker display pane relating to network outages and product information. Category 212 is a private feed allowing a workgroup within a corporation or business to receive messages for display on the ticker display pane. The options listed under category 212 are customizable so that a workgroup can create new, personal options. For example, a user may desire project status information to be displayed for a particular project they are working on. Or a manager may post a message to his or her team indicating a team meeting is in a conference room in 10 minutes. Other options (not shown) allow a user to receive general corporate or business messages (e.g., "Tan Volkswagen, license plate number CSN 82H left headlights on"). |
| | *See also* col. 11, line 63 to col. 12, line 2. |
| | Fields 226 and 228 further restrict which users are sent data items by specifying a "building" the users work in (for a business with multiple buildings) or a particular manager the users work under. These fields are also logically ANDed with fields 222, 224 to obtain the desired group of users to be sent posted messages. As with the other fields, "all" can be selected if the user wishes no further restrictions to apply. |
| | *See also* col. 14, lines 29–66. |
| | 7. Format for Requesting Data Items from Content Providers - The Ticker HTML document 250 |

- 7 -

**Appendix B-18**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,959,621 (Nawaz)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,959,621 (Nawaz) |
|---|---|
| | retrieves data items from content providers by using a read request. The read request is a standard HTTP POST, with URL encoded parameters. Each requested element is preceded by an R (Request) keyword. A HTTP POST is used to avoid URL length limitations. The format is as follows: Content-Type: application/x-www-form-urlencoded R=<request1>&R=<request2>&R=<request3> An exemplary post in this format is as follows: Content-Type: application/x-www-form-urlencoded R=MSFT&R=NSCP&R=BROD&R=YHOO The response from a server computer is a multi-part MIME (Multipurpose Internet Mail Extensions) encoded message conforming to a standard set forth in RFC 1521 (RFC (Request For Comments) is a document describing a proposed Internet standard). Each MIME element is an HTML fragment that is an individual data item. The response format is as follows: _____ HTTP/1.0 Content-Type:Multipart/Mixed; boundary=<boundary> -<boundary> Content-Type:application/prs.ms-tcti Time-To-Next-Update=<time in minutes> Source-location= <source html file URL> Source-file=<optional file that must be downloaded for source HTML page> -<boundary> Content-Type: Text/prs.ms-thtml;tag=<tag1> <first HTML snippet> -<boundary> Content-Type:Text/prs.ms-thtml;tag=<tag1> <second HTML snippet> -<boundary> |
| [1e] identifying the first type network node based on the service request; and | Nawaz discloses identifying the first type network node based on the service request.  To the extent it is found that Nawaz does not disclose this feature expressly or inherently, it would have been obvious to combine Nawaz with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter.  *See* Appendix C. *See also* col. 12, lines 32–40. The control includes a GetProviderInfo function for reading a user-preference storage 254 on the client computer (the GetProviderInfo function and user-preference storage are further described in co-pending application Ser. No. 08/760,931). The control 252 obtains a sequence of URLs stored in the user-preference storage and uses the URLs to retrieve data items or messages from multiple content providers. The content providers can be from multiple server computers on the same network or on |

- 8 -

**Appendix B-18**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,959,621 (Nawaz)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,959,621 (Nawaz) |
|---|---|
| | multiple networks. |
| | *See also* col. 1, lines 39–54. |
| | One area that may use a graphical user interface is Internet-based applications. The Internet is a worldwide collection of cooperating computer networks. A user typically accesses the Internet through a "client" computer. The client computer communicates with a "server" computer on a remote computer network using telephone, ISDN, or T1 lines or similar physical connections. The server computer may download content (e.g., images, text, application programs, etc.) to the client computer for viewing or execution by the user. The client and server computers communicate through software protocols, such as File Transfer Protocol (FTP), Simple Mail Transfer Protocol (SMTP), Hypertext Transfer Protocol (HTTP), Gopher, etc. Currently HTTP is the most widely used protocol and is used for accessing the World Wide Web. |
| | *See also* col. 14, lines 29–66. |
| | 7. Format for Requesting Data Items from Content Providers - The Ticker HTML document 250 retrieves data items from content providers by using a read request. The read request is a standard HTTP POST, with URL encoded parameters. Each requested element is preceded by an R (Request) keyword. A HTTP POST is used to avoid URL length limitations. The format is as follows: Content-Type: application/x-www-form-urlencoded R=<request1>&R=<request2>&R=<request3> An exemplary post in this format is as follows: Content-Type: application/x-www-form-urlencoded R=MSFT&R=NSCP&R=BROD&R=YHOO The response from a server computer is a multi-part MIME (Multipurpose Internet Mail Extensions) encoded message conforming to a standard set forth in RFC 1521 (RFC (Request For Comments) is a document describing a proposed Internet standard). Each MIME element is an HTML fragment that is an individual data item. The response format is as follows: |
| | _____ |
| | HTTP/1.0 |
| | Content-Type:Multipart/Mixed; boundary=<boundary> -<boundary> Content-Type:application/prs.ms-tcti Time-To-Next-Update=<time in minutes> Source-location= <source html |

**Appendix B-18**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,959,621 (Nawaz)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,959,621 (Nawaz) |
|---|---|
| | file URL> Source-file=<optional file that must be downloaded for source HTML page> -<boundary> Content-Type: Text/prs.ms-thtml;tag=<tag1> <first HTML snippet> -<boundary> Content-Type:Text/prs.ms-thtml;tag=<tag1> <second HTML snippet> -<boundary><br><br>*See also* claim limitation [1d]. |
| [1f] forming a customized page file formed for the first type network node by including the page file formed for the first type network node within the page file for the second type network node. | Nawaz discloses forming a customized page file formed for the first type network node by including the page file formed for the first type network node within the page file for the second type network node.  To the extent it is found that Nawaz does not disclose this feature expressly or inherently, it would have been obvious to combine Nawaz with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter.  *See* Appendix C.<br><br>*See* Abstract.<br>A system and method for dynamically displaying data items on a client computer. In one aspect of the invention, the client computer displays a graphical user interface having a windowing environment and a desktop. The desktop includes a ticker display pane for dynamically displaying the data items. The data items may contain hyperlinks so that a user has access to information on multiple server computers. The data items are displayed in a substantially continuous sequence and may be provided from Internet servers, Intranet servers, LAN servers, and/or the client computer itself.<br><br>*See also* col. 3, lines 40–50.<br>In another aspect of the invention, the data is retrieved from one or more source computers (i.e., multiple providers), which may be located on different computer networks. For example, server computers may be Internet, Intranet or LAN server computers. Additionally, information from multiple topic areas, such as sports, entertainment, stocks, and intercorporate messages can be integrated into the substantially continuous sequence of data items. In this aspect of the invention, the ticker display pane may or may not be part of the desktop (e.g., the ticker may be in a separate window).<br><br>*See also* col. 3, line 64 to col. 4, line 9. |

**Appendix B-18**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,959,621 (Nawaz)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,959,621 (Nawaz) |
|---|---|
| | The source identifier may include a hyperlink. Upon activating the hyperlink (e.g., clicking on the source identifier), the system retrieves and displays a document on a server computer associated with the hyperlink. The source identifier may further be an HTML page allowing the content provider to place advertisements and other information in a display space for the source identifier. Thus, using the present invention, rich multimedia data is dynamically integrated directly into the desktop on a client computer. The data may be provided from multiple server computers on multiple networks, such as Internet servers, Intranet servers, LAN servers, etc. Further, the data may include hyperlinks allowing the user to browse to related documents on a computer network. Finally, the data displayed is the most up-to-date content, since it is provided directly from the content providers. <br><br>*See also* col. 12, lines 50–65. <br>The ticker HTML document sequentially displays one or more data items and the source identifier from each content provider. For example, assume that a content provider 256 is the first content provider listed in the user-preference storage 254. The ticker HTML uses a URL received from the user-preference storage to connect to the content provider 256 via the Internet. One or more data items from the content provider 256 are then displayed in the ticker display pane. The ticker HTML then retrieves the next URL from the user-preference storage and displays data items from the content provider associated with that URL. Each URL may be associated with a different content provider. The URLs can point to Internet content providers, such as content providers 256 and 258, Intranet content providers, such as content providers 260, 262 and LAN content providers, such as content provider 264. This process continues for each URL in the user-preference storage until data items from the last content provider listed in the user-preference storage are displayed. After sequencing through all the content providers, this process repeats, starting again with the first content provider 256. <br><br>*See also* col. 6, lines 43–51. <br>Polymorphism refers to the ability to view (i.e., interact with) two similar objects through a common interface, thereby eliminating the need to differentiate between two objects. Inheritance refers to the derivation of different classes of objects from a base class, where the derived classes inherit the properties and characteristics of the base class (which for purposes of OLE are the interfaces of the |

**Appendix B-18**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,959,621 (Nawaz)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,959,621 (Nawaz) |
|---|---|
| | base class). |
| | |
| | *See also* col. 9, lines 10–20. |
| | The data displayed in the viewer can relate to different topics of information, such as sports, business, weather, stock information, etc. The different topics correspond to user-selected channels chosen from the channel guide (described further below). Messages from other users on a computer network also can be displayed. As will be further described below, the substantially continuous sequence of data items can include data items provided by multiple servers on multiple networks, such as LAN servers, Intranet servers and Internet servers. The client computer also can source data items for display in the ticker display pane. |
| | |
| | *See also* Fig. 1 and associated text. |
| | |
| | *See also* claim limitations [1b] and [1c]. |
| *Claim 2* | |
| [2] The method of claim 1, wherein the first type network node is an ISP node, and the second type network node is an ICP node. | Nawaz discloses that the first type network node is an ISP node, and the second type network node is an ICP node.  To the extent it is found that Nawaz does not disclose this feature expressly or inherently, it would have been obvious to combine Nawaz with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter.  *See* Appendix C. |
| | |
| | *See* col. 3, line 64 to col. 4, line 9. |
| | The source identifier may include a hyperlink. Upon activating the hyperlink (e.g., clicking on the source identifier), the system retrieves and displays a document on a server computer associated with the hyperlink. The source identifier may further be an HTML page allowing the content provider to place advertisements and other information in a display space for the source identifier. |
| | |
| | Thus, using the present invention, rich multimedia data is dynamically integrated directly into the desktop on a client computer. The data may be provided from multiple server computers on multiple networks, such as Internet servers, Intranet servers, LAN servers, etc. Further, the data may include |

**Appendix B-18**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,959,621 (Nawaz)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,959,621 (Nawaz) |
|---|---|
| | hyperlinks allowing the user to browse to related documents on a computer network. Finally, the data displayed is the most up-to-date content, since it is provided directly from the content providers.<br><br>*See also* col. 3, lines 40–50.<br>In another aspect of the invention, the data is retrieved from one or more source computers (i.e., multiple providers), which may be located on different computer networks. For example, server computers may be Internet, Intranet or LAN server computers. Additionally, information from multiple topic areas, such as sports, entertainment, stocks, and intercorporate messages can be integrated into the substantially continuous sequence of data items. In this aspect of the invention, the ticker display pane may or may not be part of the desktop (e.g., the ticker may be in a separate window).<br><br>*See also* col. 12, lines 50–65.<br>The ticker HTML document sequentially displays one or more data items and the source identifier from each content provider. For example, assume that a content provider 256 is the first content provider listed in the user-preference storage 254. The ticker HTML uses a URL received from the user-preference storage to connect to the content provider 256 via the Internet. One or more data items from the content provider 256 are then displayed in the ticker display pane. The ticker HTML then retrieves the next URL from the user-preference storage and displays data items from the content provider associated with that URL. Each URL may be associated with a different content provider. The URLs can point to Internet content providers, such as content providers 256 and 258, Intranet content providers, such as content providers 260, 262 and LAN content providers, such as content provider 264. This process continues for each URL in the user-preference storage until data items from the last content provider listed in the user-preference storage are displayed. After sequencing through all the content providers, this process repeats, starting again with the first content provider 256.<br><br>*See also* Fig. 1 and associated text.<br><br>*See also* claim limitation [1a]. |

**Appendix B-18**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,959,621 (Nawaz)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,959,621 (Nawaz) |
|---|---|
| *Claim 3* | |
| [3] The method of claim 1, wherein the first type network node is an organization node, and the second type network node is an ICP node. | Nawaz discloses that the first type network node is an organization node, and the second type network node is an ICP node. To the extent it is found that Nawaz does not disclose this feature expressly or inherently, it would have been obvious to combine Nawaz with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* col. 3, line 64 to col. 4, line 9.<br>The source identifier may include a hyperlink. Upon activating the hyperlink (e.g., clicking on the source identifier), the system retrieves and displays a document on a server computer associated with the hyperlink. The source identifier may further be an HTML page allowing the content provider to place advertisements and other information in a display space for the source identifier. Thus, using the present invention, rich multimedia data is dynamically integrated directly into the desktop on a client computer. The data may be provided from multiple server computers on multiple networks, such as Internet servers, Intranet servers, LAN servers, etc. Further, the data may include hyperlinks allowing the user to browse to related documents on a computer network. Finally, the data displayed is the most up-to-date content, since it is provided directly from the content providers.<br><br>*See also* col. 3, lines 40–50.<br>In another aspect of the invention, the data is retrieved from one or more source computers (i.e., multiple providers), which may be located on different computer networks. For example, server computers may be Internet, Intranet or LAN server computers. Additionally, information from multiple topic areas, such as sports, entertainment, stocks, and intercorporate messages can be integrated into the substantially continuous sequence of data items. In this aspect of the invention, the ticker display pane may or may not be part of the desktop (e.g., the ticker may be in a separate window).<br><br>*See also* col. 12, lines 50–65.<br>The ticker HTML document sequentially displays one or more data items and the source identifier from each content provider. For example, assume that a content provider 256 is the first content provider listed in the user-preference storage 254. The ticker HTML uses a URL received from the |

**Appendix B-18**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,959,621 (Nawaz)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,959,621 (Nawaz) |
|---|---|
| | user-preference storage to connect to the content provider 256 via the Internet. One or more data items from the content provider 256 are then displayed in the ticker display pane. The ticker HTML then retrieves the next URL from the user-preference storage and displays data items from the content provider associated with that URL. Each URL may be associated with a different content provider. The URLs can point to Internet content providers, such as content providers 256 and 258, Intranet content providers, such as content providers 260, 262 and LAN content providers, such as content provider 264. This process continues for each URL in the user-preference storage until data items from the last content provider listed in the user-preference storage are displayed. After sequencing through all the content providers, this process repeats, starting again with the first content provider 256.<br><br>*See also* col. 11, lines 24–39.<br>Categories 208 and 210 allow a user to choose whether they want messages displayed in the ticker display pane relating to network outages and product information. Category 212 is a private feed allowing a workgroup within a corporation or business to receive messages for display on the ticker display pane. The options listed under category 212 are customizable so that a workgroup can create new, personal options. For example, a user may desire project status information to be displayed for a particular project they are working on. Or a manager may post a message to his or her team indicating a team meeting is in a conference room in 10 minutes. Other options (not shown) allow a user to receive general corporate or business messages (e.g., "Tan Volkswagen, license plate number CSN 82H left headlights on").<br><br>*See also* Fig. 1 and associated text.<br><br>*See also* claim limitation [1a]. |
| *Claim 4* | |
| [4] The method of claim 1, wherein the customized page file includes customized graphics, sounds, applets, | Nawaz discloses that the customized page file includes customized graphics, sounds, applets, links, and text.  To the extent it is found that Nawaz does not disclose this feature expressly or inherently, it would have been obvious to combine Nawaz with the knowledge of a person of ordinary skill and/or |

Appendix B-18

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,959,621 (Nawaz)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,959,621 (Nawaz) |
|---|---|
| links, and text. | other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* col. 2, lines 10–21.<br>HTML also allows graphical images to be embedded in HTML documents. When a graphical image is embedded in an HTML document, the dimensions or size of the embedded graphical image may be defined with HTML statements. For example, the size of an embedded graphical image may be defined in HTML by <IMG SRC="file.gif" WIDTH=X HEIGHT=Y>, where IMG is an HTML tag referencing an embedded image, SRC="file.gif" defines the location and name of the file containing the graphical image embedded in the HTML document, (e.g., a Graphics Information file or *.GIF) and X,Y are the respective width and height of the graphical image measured in pixels.<br><br>*See also* claim limitation [1b]. |
| *Claim 5* | |
| [5] The method of claim 1, wherein the customized page file includes customized advertisements. | Nawaz discloses that the customized page file includes customized advertisements. To the extent it is found that Nawaz does not disclose this feature expressly or inherently, it would have been obvious to combine Nawaz with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See also* col. 3, line 64 to col. 4, line 9.<br>The source identifier may include a hyperlink. Upon activating the hyperlink (e.g., clicking on the source identifier), the system retrieves and displays a document on a server computer associated with the hyperlink. The source identifier may further be an HTML page allowing the content provider to place advertisements and other information in a display space for the source identifier. Thus, using the present invention, rich multimedia data is dynamically integrated directly into the desktop on a client computer. The data may be provided from multiple server computers on multiple networks, such as Internet servers, Intranet servers, LAN servers, etc. Further, the data may include hyperlinks allowing the user to browse to related documents on a computer network. Finally, the data displayed is the most up-to-date content, since it is provided directly from the content providers. |

Appendix B-18

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,959,621 (Nawaz)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,959,621 (Nawaz) |
|---|---|
| | *See also* claim limitation [1b]. |
| *Claim 6* | |
| [6a] The method of claim 1, wherein: the service request includes an IP address for identifying the first type network node, and | Nawaz discloses that the service request includes an IP address for identifying the first type network node. To the extent it is found that Nawaz does not disclose this feature expressly or inherently, it would have been obvious to combine Nawaz with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* col. 1, lines 39–54.<br>One area that may use a graphical user interface is Internet-based applications. The Internet is a worldwide collection of cooperating computer networks. A user typically accesses the Internet through a "client" computer. The client computer communicates with a "server" computer on a remote computer network using telephone, ISDN, or T1 lines or similar physical connections. The server computer may download content (e.g., images, text, application programs, etc.) to the client computer for viewing or execution by the user. The client and server computers communicate through software protocols, such as File Transfer Protocol (FTP), Simple Mail Transfer Protocol (SMTP), Hypertext Transfer Protocol (HTTP), Gopher, etc. Currently HTTP is the most widely used protocol and is used for accessing the World Wide Web.<br><br>*See also* claim limitation [1d]. |
| [6b] identifying the first type network node based on the service request comprises using the IP address included in the service request to identify the first type network node. | Nawaz discloses that identifying the first type network node based on the service request comprises using the IP address included in the service request to identify the first type network node. To the extent it is found that Nawaz does not disclose this feature expressly or inherently, it would have been obvious to combine Nawaz with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* col. 1, lines 39–54.<br>One area that may use a graphical user interface is Internet-based applications. The Internet is a worldwide collection of cooperating computer networks. A user typically accesses the Internet through |

- 17 -

Appendix B-18

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,959,621 (Nawaz)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,959,621 (Nawaz) |
|---|---|
| | a "client" computer. The client computer communicates with a "server" computer on a remote computer network using telephone, ISDN, or T1 lines or similar physical connections. The server computer may download content (e.g., images, text, application programs, etc.) to the client computer for viewing or execution by the user. The client and server computers communicate through software protocols, such as File Transfer Protocol (FTP), Simple Mail Transfer Protocol (SMTP), Hypertext Transfer Protocol (HTTP), Gopher, etc. Currently HTTP is the most widely used protocol and is used for accessing the World Wide Web.<br><br>*See also* claim limitation [1e]. |
| *Claim 7* | |
| [7a] A method for providing web page customization service to a plurality of first type network nodes at a second type network node, comprising the steps of: | Nawaz discloses a method for providing web page customization service to a plurality of first type network nodes at a second type network node. To the extent it is found that Nawaz does not disclose this feature expressly or inherently, it would have been obvious to combine Nawaz with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1a]. |
| [7b] forming at least a page file for each of the first type network nodes; | Nawaz discloses forming at least a page file for each of the first type network nodes. To the extent it is found that Nawaz does not disclose this feature expressly or inherently, it would have been obvious to combine Nawaz with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1b]. |
| [7c] forming at least a page file for the second type network node; | Nawaz discloses forming at least a page file for the second type network node. To the extent it is found that Nawaz does not disclose this feature expressly or inherently, it would have been obvious to combine Nawaz with the knowledge of a person of ordinary skill and/or other prior art references to |

Appendix B-18

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,959,621 (Nawaz)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,959,621 (Nawaz) |
|---|---|
| | obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1c]. |
| [7d] receiving a service request from one of the first type network nodes; | Nawaz discloses receiving a service request from one of the first type network nodes. To the extent it is found that Nawaz does not disclose this feature expressly or inherently, it would have been obvious to combine Nawaz with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1d]. |
| [7e] determining whether the first type network node participates in the web page customization service; | Nawaz discloses determining whether the first type network node participates in the web page customization service. To the extent it is found that Nawaz does not disclose this feature expressly or inherently, it would have been obvious to combine Nawaz with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1e]. |
| [7f] if the first type network node participates in the web page customization service, forming a customized page file for the service request by including the page file formed for the first type network node within the page file formed for the second type network node; and | Nawaz discloses, if the first type network node participates in the web page customization service, forming a customized page file for the service request by including the page file formed for the first type network node within the page file formed for the second type network node. To the extent it is found that Nawaz does not disclose this feature expressly or inherently, it would have been obvious to combine Nawaz with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1f]. |
| [7g] if the first type network | Nawaz discloses, if the first type network node does not participate in the web page customization |

Appendix B-18

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,959,621 (Nawaz)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,959,621 (Nawaz) |
|---|---|
| node does not participate in the web page customization service, forming a page file for the service request by using the page file formed for the second type network node. | service, forming a page file for the service request by using the page file formed for the second type network node. For example, the second type network node identifies the first type network node based on the service request. If the second type network node fails to identify the first type network node, the second type network node will only form a page file for the service request by using the page file formed for the second type network node. To the extent it is found that Nawaz does not disclose this feature expressly or inherently, it would have been obvious to combine Nawaz with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1f]. |
| *Claim 8* | |
| [8] The method of claim 7, wherein the first type network nodes are ISP nodes, and the second type network node is an ICP node. | Nawaz discloses that the first type network nodes are ISP nodes, and the second type network node is an ICP node. To the extent it is found that Nawaz does not disclose this feature expressly or inherently, it would have been obvious to combine Nawaz with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [2]. |
| *Claim 9* | |
| [9] The method of claim 7, wherein the first type network nodes are organization nodes, and the second type network node is an ICP node. | Nawaz discloses that the first type network nodes are organization nodes, and the second type network node is an ICP node. To the extent it is found that Nawaz does not disclose this feature expressly or inherently, it would have been obvious to combine Nawaz with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [3]. |
| *Claim 10* | |
| [10] The method of claim 7, wherein the customized page | Nawaz discloses that the customized page file includes customized graphics, sounds, applets, links, and text. To the extent it is found that Nawaz does not disclose this feature expressly or inherently, it |

**Appendix B-18**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,959,621 (Nawaz)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,959,621 (Nawaz) |
|---|---|
| file includes customized graphics, sounds, applets, links, and text. | would have been obvious to combine Nawaz with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. *See* claim limitation [4]. |
| *Claim 11* | |
| [11] The method of claim 7, wherein the customized page file includes customized advertisements. | Nawaz discloses that the customized page file includes customized advertisements. To the extent it is found that Nawaz does not disclose this feature expressly or inherently, it would have been obvious to combine Nawaz with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. *See* claim limitation [5]. |
| *Claim 12* | |
| [12a] The method of claim 7, wherein: the service request from one of the first type network nodes includes an IP address for identifying the first type network node, and | Nawaz discloses that the service request from one of the first type network nodes includes an IP address for identifying the first type network node. To the extent it is found that Nawaz does not disclose this feature expressly or inherently, it would have been obvious to combine Nawaz with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. *See* claim limitation [6a]. |
| [12b] determining whether the first type network node participates in the web page customization service comprises using the IPI address included in the service request to identify the | Nawaz discloses that determining whether the first type network node participates in the web page customization service comprises using the IPI address included in the service request to identify the first type network node. To the extent it is found that Nawaz does not disclose this feature expressly or inherently, it would have been obvious to combine Nawaz with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. *See* claim limitation [6b]. |

Appendix B-18

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,959,621 (Nawaz)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,959,621 (Nawaz) |
|---|---|
| first type network node. | |
| *Claim 13* | |
| [13a] A method for providing web page customization service to a plurality of first type network nodes at a second type network node, comprising the steps of: | Nawaz discloses a method for providing web page customization service to a plurality of first type network nodes at a second type network node. To the extent it is found that Nawaz does not disclose this feature expressly or inherently, it would have been obvious to combine Nawaz with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1a]. |
| [13b] forming a plurality of advertisements for the first type network nodes; | Nawaz discloses forming a plurality of advertisements for the first type network nodes. To the extent it is found that Nawaz does not disclose this feature expressly or inherently, it would have been obvious to combine Nawaz with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitations [1b] and [5]. |
| [13c] forming at least a page file for the second type network node; | Nawaz discloses forming at least a page file for the second type network node. To the extent it is found that Nawaz does not disclose this feature expressly or inherently, it would have been obvious to combine Nawaz with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1c]. |
| [13d] receiving a service request from one of the first type network nodes; | Nawaz discloses receiving a service request from one of the first type network nodes. To the extent it is found that Nawaz does not disclose this feature expressly or inherently, it would have been obvious to combine Nawaz with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |

Appendix B-18

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,959,621 (Nawaz)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,959,621 (Nawaz) |
|---|---|
| | *See* claim limitation [1d]. |
| [13e] identifying advertisements for the first type network node; and | Nawaz discloses identifying advertisements for the first type network node.  To the extent it is found that Nawaz does not disclose this feature expressly or inherently, it would have been obvious to combine Nawaz with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter.  *See* Appendix C.  <br><br>*See* claim limitations [1e] and [5]. |
| [13f] forming a customized page file for the first type network node by including the identified advertisements within the page file formed for the second type network node. | Nawaz discloses forming a customized page file for the first type network node by including the identified advertisements within the page file formed for the second type network node.  To the extent it is found that Nawaz does not disclose this feature expressly or inherently, it would have been obvious to combine Nawaz with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter.  *See* Appendix C.  <br><br>*See* claim limitation [1f]. |
| *Claim 14* | |
| [14] The method of claim 13, wherein the first type network nodes are ISP nodes, and the second type network node is an ICP node. | Nawaz discloses that the first type network nodes are ISP nodes, and the second type network node is an ICP node.  To the extent it is found that Nawaz does not disclose this feature expressly or inherently, it would have been obvious to combine Nawaz with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter.  *See* Appendix C.  <br><br>*See* claim limitation [2]. |
| *Claim 15* | |
| [15] The method of claim 13, wherein the first type network nodes are organization nodes, and the | Nawaz discloses that the first type network nodes are organization nodes, and the second type network node is an ICP node.  To the extent it is found that Nawaz does not disclose this feature expressly or inherently, it would have been obvious to combine Nawaz with the knowledge of a person of ordinary |

Appendix B-18

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,959,621 (Nawaz)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,959,621 (Nawaz) |
|---|---|
| second type network node is an ICP node. | skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. <br><br>*See* claim limitation [3]. |
| *Claim 16* | |
| [16] The method of claim 13, wherein the identified advertisements do not cause negative impact on the owner of the first type network node. | Nawaz discloses that the identified advertisements do not cause negative impact on the owner of the first type network node. To the extent it is found that Nawaz does not disclose this feature expressly or inherently, it would have been obvious to combine Nawaz with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. <br><br>*See* claim limitation [5]. |
| *Claim 17* | |
| [17a] An apparatus for dynamically forming a customized web page for a first type network node at a second type network node, comprising: | Nawaz discloses an apparatus for dynamically forming a customized web page for a first type network node at a second type network node. To the extent it is found that Nawaz does not disclose this feature expressly or inherently, it would have been obvious to combine Nawaz with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. <br><br>*See* claim limitation [1a]. |
| [17b] means for forming at least a page file for the first type network node; | Nawaz discloses means for forming at least a page file for the first type network node. To the extent it is found that Nawaz does not disclose this feature expressly or inherently, it would have been obvious to combine Nawaz with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. <br><br>*See* claim limitation [1b]. |
| [17c] means for forming at least a page file for the | Nawaz discloses means for forming at least a page file for the second type network node. To the extent it is found that Nawaz does not disclose this feature expressly or inherently, it would have been |

- 24 -

Appendix B-18

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,959,621 (Nawaz)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,959,621 (Nawaz) |
|---|---|
| second type network node; | obvious to combine Nawaz with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1c]. |
| [17d] means for receiving a service request from the first type network node; | Nawaz discloses means for receiving a service request from the first type network node. To the extent it is found that Nawaz does not disclose this feature expressly or inherently, it would have been obvious to combine Nawaz with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1d]. |
| [17e] means for identifying the first type network node based on the service request; and | Nawaz discloses means for identifying the first type network node based on the service request. To the extent it is found that Nawaz does not disclose this feature expressly or inherently, it would have been obvious to combine Nawaz with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1e]. |
| [17f] means for forming a customized page file formed for the first type network node by including the page file formed for the first type network node within the page file for the second type network node. | Nawaz discloses means for forming a customized page file formed for the first type network node by including the page file formed for the first type network node within the page file for the second type network node. To the extent it is found that Nawaz does not disclose this feature expressly or inherently, it would have been obvious to combine Nawaz with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1f]. |
| *Claim 18* | |
| [18] The apparatus of claim | Nawaz discloses that the first type network node is an ISP node, and the second type network node is |

- 25 -

Appendix B-18

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,959,621 (Nawaz)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,959,621 (Nawaz) |
|---|---|
| 17, wherein the first type network node is an ISP node, and the second type network node is an ICP node. | an ICP node. To the extent it is found that Nawaz does not disclose this feature expressly or inherently, it would have been obvious to combine Nawaz with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [2]. |
| *Claim 19* | |
| [19] The apparatus of claim 17, wherein the first type network node is an organization node, and the second type network node is an ICP node. | Nawaz discloses that the first type network node is an organization node, and the second type network node is an ICP node. To the extent it is found that Nawaz does not disclose this feature expressly or inherently, it would have been obvious to combine Nawaz with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [3]. |
| *Claim 20* | |
| [20] The apparatus of claim 17, wherein the customized page file includes customized graphics, sounds, applets, links, and text. | Nawaz discloses that the customized page file includes customized graphics, sounds, applets, links, and text. To the extent it is found that Nawaz does not disclose this feature expressly or inherently, it would have been obvious to combine Nawaz with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [4]. |
| *Claim 21* | |
| [21] The apparatus of claim 17, wherein the customized page file includes customized advertisements. | Nawaz discloses that the customized page file includes customized advertisements. To the extent it is found that Nawaz does not disclose this feature expressly or inherently, it would have been obvious to combine Nawaz with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [5]. |

- 26 -

Appendix B-18

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,959,621 (Nawaz)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,959,621 (Nawaz) |
|---|---|
| *Claim 22* | |
| [22a] An apparatus for providing web page customization service to a plurality of first type network nodes at a second type network node, comprising: | Nawaz discloses an apparatus for providing web page customization service to a plurality of first type network nodes at a second type network node. To the extent it is found that Nawaz does not disclose this feature expressly or inherently, it would have been obvious to combine Nawaz with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.

*See* claim limitation [7a]. |
| [22b] means for forming at least a page file for each of the first type network nodes; | Nawaz discloses means for forming at least a page file for each of the first type network nodes. To the extent it is found that Nawaz does not disclose this feature expressly or inherently, it would have been obvious to combine Nawaz with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.

*See* claim limitation [7b]. |
| [22c] means for forming at least a page file for the second type network node; | Nawaz discloses means for forming at least a page file for the second type network node. To the extent it is found that Nawaz does not disclose this feature expressly or inherently, it would have been obvious to combine Nawaz with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.

*See* claim limitation [7c]. |
| [22d] means for receiving a service request from one of the first type network nodes; | Nawaz discloses means for receiving a service request from one of the first type network nodes. To the extent it is found that Nawaz does not disclose this feature expressly or inherently, it would have been obvious to combine Nawaz with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.

*See* claim limitation [7d]. |

**Appendix B-18**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,959,621 (Nawaz)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,959,621 (Nawaz) |
|---|---|
| [22e] means for determining whether the first type network node participates in the web page customization service; | Nawaz discloses means for determining whether the first type network node participates in the web page customization service. To the extent it is found that Nawaz does not disclose this feature expressly or inherently, it would have been obvious to combine Nawaz with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [7e]. |
| [22f] means for forming a customized page file for the service request by including the page file formed for the first type network node within the page file formed for the second type network node, if the first type network node participates in the web page customization service; and | Nawaz discloses means for forming a customized page file for the service request by including the page file formed for the first type network node within the page file formed for the second type network node, if the first type network node participates in the web page customization service. To the extent it is found that Nawaz does not disclose this feature expressly or inherently, it would have been obvious to combine Nawaz with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [7f]. |
| [22g] means for forming a page file for the service request by using the page file formed for the second type network node, if the first type network node does not participate in the web page customization service. | Nawaz discloses means for forming a page file for the service request by using the page file formed for the second type network node, if the first type network node does not participate in the web page customization service. To the extent it is found that Nawaz does not disclose this feature expressly or inherently, it would have been obvious to combine Nawaz with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [7g]. |
| *Claim 23* | |

Appendix B-18

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,959,621 (Nawaz)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,959,621 (Nawaz) |
|---|---|
| [23] The apparatus of claim 22, wherein the first type network nodes are ISP nodes, and the second type network node is an ICP node. | Nawaz discloses that the first type network nodes are ISP nodes, and the second type network node is an ICP node. To the extent it is found that Nawaz does not disclose this feature expressly or inherently, it would have been obvious to combine Nawaz with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [8]. |
| *Claim 24* | |
| [24] The apparatus of claim 22, wherein the first type network nodes are organization nodes, and the second type network node is an ICP node. | Nawaz discloses that the first type network nodes are organization nodes, and the second type network node is an ICP node. To the extent it is found that Nawaz does not disclose this feature expressly or inherently, it would have been obvious to combine Nawaz with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [9]. |
| *Claim 25* | |
| [25] The apparatus of claim 22, wherein the customized page file includes customized graphics, sounds, applets, links, and text. | Nawaz discloses that the customized page file includes customized graphics, sounds, applets, links, and text. To the extent it is found that Nawaz does not disclose this feature expressly or inherently, it would have been obvious to combine Nawaz with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [10]. |
| *Claim 26* | |
| [26] The apparatus of claim 25, wherein the customized page file includes customized advertisements. | Nawaz discloses that the customized page file includes customized advertisements. To the extent it is found that Nawaz does not disclose this feature expressly or inherently, it would have been obvious to combine Nawaz with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |

Appendix B-18

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,959,621 (Nawaz)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,959,621 (Nawaz) |
|---|---|
| | *See* claim limitation [11]. |
| *Claim 27* | |
| [27a] An apparatus for providing web page customization service to a plurality of first type network nodes at a second type network node, comprising: | Nawaz discloses an apparatus for providing web page customization service to a plurality of first type network nodes at a second type network node. To the extent it is found that Nawaz does not disclose this feature expressly or inherently, it would have been obvious to combine Nawaz with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [13a]. |
| [27b] means for forming a plurality of advertisements for the first type network nodes; | Nawaz discloses means for forming a plurality of advertisements for the first type network nodes. To the extent it is found that Nawaz does not disclose this feature expressly or inherently, it would have been obvious to combine Nawaz with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [13b]. |
| [27c] means for forming at least a page file for the second type network node; | Nawaz discloses means for forming at least a page file for the second type network node. To the extent it is found that Nawaz does not disclose this feature expressly or inherently, it would have been obvious to combine Nawaz with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [13c]. |
| [27d] means for receiving a service request from one of the first type network nodes; | Nawaz discloses means for receiving a service request from one of the first type network nodes. To the extent it is found that Nawaz does not disclose this feature expressly or inherently, it would have been obvious to combine Nawaz with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |

Appendix B-18

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,959,621 (Nawaz)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,959,621 (Nawaz) |
|---|---|
| | *See* claim limitation [13d]. |
| [27e] means for identifying advertisements for the first type network node; and | Nawaz discloses means for identifying advertisements for the first type network node. To the extent it is found that Nawaz does not disclose this feature expressly or inherently, it would have been obvious to combine Nawaz with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [13e]. |
| [27f] means for forming a customized page file for the first type network node by including the identified advertisements within the page file formed for the second type network node. | Nawaz discloses means for forming a customized page file for the first type network node by including the identified advertisements within the page file formed for the second type network node. To the extent it is found that Nawaz does not disclose this feature expressly or inherently, it would have been obvious to combine Nawaz with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [13f]. |
| *Claim 28* | |
| [28] The apparatus of claim 27, wherein the first type network nodes are ISP nodes, and the second type network node is an ICP node. | Nawaz discloses that the first type network nodes are ISP nodes, and the second type network node is an ICP node. To the extent it is found that Nawaz does not disclose this feature expressly or inherently, it would have been obvious to combine Nawaz with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [14]. |
| *Claim 29* | |
| [29] The apparatus of claim 27, wherein the first type network nodes are organization nodes, and the | Nawaz discloses that the first type network nodes are organization nodes, and the second type network node is an ICP node. To the extent it is found that Nawaz does not disclose this feature expressly or inherently, it would have been obvious to combine Nawaz with the knowledge of a person of ordinary |

- 31 -

**Appendix B-18**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,959,621 (Nawaz)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,959,621 (Nawaz) |
|---|---|
| second type network node is an ICP node. | skill and/or other prior art references to obtain the claimed subject matter.  *See* Appendix C.<br><br>*See* claim limitation [15]. |
| *Claim 30* | |
| [30] The apparatus of claim 27, wherein the identified advertisements do not cause negative impact on the owner of the first type network node. | Nawaz discloses that the identified advertisements do not cause negative impact on the owner of the first type network node.  To the extent it is found that Nawaz does not disclose this feature expressly or inherently, it would have been obvious to combine Nawaz with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter.  *See* Appendix C.<br><br>*See* claim limitation [16]. |

**Appendix B-19**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,974,451 (Simmons)**

U.S. Patent No. 5,974,451 to Simmons ("Simmons") is prior art to U.S. Patent No. 6,442,577 ("the '577 patent") under 35 U.S.C. 102(e) because it issued from a U.S. patent application filed on May 30, 1997, which is prior to the Nov. 3, 1998 filing date of the '577 patent. Moreover, Simmons claims priority to a provisional U.S. patent application filed on Oct. 7, 1996, which is prior to the Nov. 3, 1998 filing date of the '577 patent.

As detailed in this chart, Simmons anticipates at least claims 1–30 of the '577 patent. In addition or in the alternative, claims 1–30 of the '577 patent are obvious over Simmons in view of the knowledge of a person of ordinary skill and/or one or more other references, as detailed in Appendix C.

This chart is based in whole or in part on the present understanding of positions taken by PageMelding regarding the coverage, scope and construction of the asserted claims to the extent those positions can be deduced from PageMelding's contentions pursuant to Patent Local Rule 3-1 served on August 3, 2012. Nothing herein is an admission that PageMelding's infringement contentions are correct, an admission that Plaintiff's apparent claim constructions are correct, or an admission that ESPN's technology infringes any asserted claim.

**Appendix B-19**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,974,451 (Simmons)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,974,451 (Simmons) |
|---|---|
| *Claim 1* | |
| [1a] A method for dynamically forming customized web pages for a first type network node at a second type network node, comprising the steps of: | Simmons discloses a method for dynamically forming customized web pages for a first type network node at a second type network node. For example, a network access system (second type network node) dynamically forms customized web pages for an external computer (first type network node). The customized web pages include both information requested by the external computer and bulletins customized for the user of the external computer. |
| | A network access system is provided for distributing bulletins, such as advertisements, to external computers accessing a wide area computer network. The network access system of the present invention connects the external computers to the wide area computer network, and sends bulletins with information being transmitted from remote information servers within the wide area computer network to the external computers. A bulletin server within the network access system stores a plurality of bulletins to be transmitted to the external computers, determines whether to send a bulletin with the information being transmitted, determines what bulletins to transmit to the external computers, and sends the bulletins with the information being transmitted from remote information servers to the external computers. Upon receipt of a bulletin, the external computers may display the bulletins as part of the received information, may display the bulletins before allowing the user to view the received information, or may display the bulletins as part of a separate window. |
| | Abstract. |
| | This invention relates to network access systems. Network access systems are widely used to connect external computers to wide area computer networks, such as the Internet, through dedicated interfaces and dial-up connections. More particularly, this invention relates to network access systems which, in addition to connecting external computers to wide area computer networks, distribute bulletins, such as advertisements, |

**Appendix B-19**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,974,451 (Simmons)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,974,451 (Simmons) |
|---|---|
| | to the external computers.

Col. 1, lines 13–20.

In known systems, these advertisements are broadcast to external computers by individual remote information servers located throughout a wide area computer network. When an external computer connects to a remote information server and accesses a newsgroup or Web page comprising an advertisement, the advertisement is broadcast from the remote information server through the network and the network access system to the external computer. In many instances, these remote information servers will broadcast the same information and advertisements to external computers regardless of the geographic location of the network access systems through which the external computers are gaining access to the network. For example, an external computer accessing a World Wide Web site in New Jersey through a network access system in New York will receive an identical advertisement to that received by an external computer accessing the same site through a network access system in Australia.

In an effort to optimally target the users of external computers with the most suitable bulletins, some remote information servers have been configured to determine the identity of each user accessing the servers, monitor the information retrieved by the users, and develop a profile for those users. In some instances, these remote information servers independently maintain the profiles for each user, and in other instances, the remote information servers jointly maintain the profiles for each user to obtain a higher degree of accuracy in the profiles. In this way, these servers can categorize the interests of the users and, therefore, send the users the most appropriate bulletins. For example, a user who has been identified in the past as repeatedly accessing information on travel-- and, therefore, a user for whom a profile has been developed which indicates that the user likes to travel--would likely be targeted with bulletins relating to vacation |

**Appendix B-19**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,974,451 (Simmons)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,974,451 (Simmons) |
|---|---|
| | destinations or airfare specials. |
| | Col. 1, lines 28–62. |
| | In view of the foregoing, it would be desirable to provide a network access system that can effectively deliver bulletins to users of external computers while connecting them to wide area computer networks. |
| | It would be also desirable to provide a network access system which can deliver bulletins to all users of the network access system regardless of the particular remote information servers which they access. |
| | It would be further desirable to provide a network access system that can accurately identify the user of an external computer and, therefore, optimally match available advertising to the user's likes and dislikes. |
| | It would be even further desirable to provide a network access system that allows advertisers to advertise at a local or regional level within a wide area computer network rather than requiring the advertisers to advertise at the global level of the network. |
| | It would be still further desirable to provide a network access system that allows advertisers to offset the costs associated with accessing wide area computer networks, and thereby increase the number of users viewing their advertisements, as is done in other advertising media such as television, radio, and newspaper. |
| | Col. 2, line 60 to col. 3, line 15. |
| | It is therefore an object of the invention to provide a network access system that can effectively deliver bulletins to users of external computers while connecting them to |

**Appendix B-19**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,974,451 (Simmons)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,974,451 (Simmons) |
|---|---|
| | wide area computer networks. |
| | It is another object of the invention to provide a network access system which can deliver bulletins to all users of the network access system regardless of the particular remote information servers which they access. |
| | It is still another object of the invention to provide a network access system that can accurately identify the user of an external computer and, therefore, optimally match available advertising to the user's likes and dislikes. |
| | It is a further object of the invention to provide a network access system that allows advertisers to advertise at a local or regional level within a wide area computer network rather than requiring the advertisers to advertise at the global level of the network. |
| | It is a still further object of the invention to provide a network access system that allows advertisers to offset the costs associated with accessing wide area computer networks, and thereby increase the number of users viewing their advertisements, as is done in other advertising media such as television, radio, and newspaper. |
| | These and other objects of the invention are accomplished in accordance with the principles of the invention by providing a network access system which distributes bulletins to external computers while connecting the external computers to a wide area computer network. |
| | The bulletin distribution capability of the network access system of the present invention is provided by a bulletin server incorporated into the network access system. The bulletin server distributes bulletins by sending bulletins with information being relayed by the network access system to one or more external computers. More particularly, when information is received at the network access system from a remote |

**Appendix B-19**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,974,451 (Simmons)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,974,451 (Simmons) |
|---|---|
| | information server, the bulletin server first determines whether a bulletin is to be sent with the received information. If so, the bulletin server then selects an appropriate bulletin to send with the received information. Once a bulletin has been selected, the network access system then sends the attached bulletin and information on to the user's external computer. Bulletins may be sent with the received information by attaching the bulletins to the information and sending the bulletins and information together, or by sending the bulletins and information separately, for example. If, however, it is determined that a bulletin is not to be sent with the received information, then the received information is forwarded to the external computer unaccompanied by a bulletin. <br><br> In this way, the network access system of the present invention overcomes the aforementioned, as well as other, problems associated with the known technique of broadcasting bulletins from remote information servers. First, by distributing bulletins from network access systems, advertisers can always distribute bulletins to users regardless of which remote information servers the users choose to connect to. Second, also for the reason that advertising is being distributed from the network access system rather than the remote information servers, advertisers do not have to determine which remote information servers contain the most popular newsgroups or World Wide Web pages to insure exposure to the targeted audience. Third, the network access system can always identify the users of the network access system with absolute certainty since the users are required to provide verifiable log-in information when initially accessing the network access system. Fourth, advertisers can restrict the distribution of bulletins to only those external computers within the geographical region surrounding the network access system. Fifth, advertisers, by paying advertising fees to the network access system provider, enable the users of external computers to receive free or discounted access to wide area computer networks similar to that realized in other advertising |

**Appendix B-19**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,974,451 (Simmons)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,974,451 (Simmons) |
|---|---|
| | media such as television, radio, and newspaper.<br><br>Col. 3, line 18 to col. 4, line 25.<br><br>The present invention provides a method and apparatus for distributing bulletins to external computers from network access systems connected to wide area computer networks. Known network access systems are used to connect external computers to wide area computer networks. These network access systems enable the external computers to communicate with remote information servers connected to the wide area computer networks by relaying messages between the external computers and the remote information servers. The present invention adds a bulletin delivery function to known network access systems. The bulletin delivery function operates by sending bulletins along with information being relayed by the network access systems from the remote information servers to the external computers. In addition to delivering bulletins with information being relayed by the network access systems, in preferred embodiments of the present invention, the network access systems also determine whether bulletins are to be delivered and which bulletins are to be delivered to the external computers.<br><br>In one embodiment of the present invention, the bulletin delivery function is implemented by a bulletin server incorporated into a network access system. The bulletin server operates by monitoring information being relayed to external computers, by determining whether a bulletin is to be sent with each piece of information being relayed, and, when required, by selecting a bulletin to be sent with, and by attaching (if necessary) the selected bulletin to, the piece of information being relayed by the network access system. Once the bulletin server has determined that no bulletin is to be sent with the piece of information being relayed by the network access system, or the bulletin server has selected and attached (if necessary) a bulletin to the piece of information being relayed by the network access system, the network access system |

**Appendix B-19**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,974,451 (Simmons)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,974,451 (Simmons) |
|---|---|
| | then delivers the information and the bulletin (if to be sent) from the remote information server to the external computer.<br><br>The bulletin server monitors information being relayed by the network access system to the external computer to determine the content, format, and destination of each piece of information passing through the network access system. The bulletin server may then use this content, format, and destination data, as well as other data stored in the bulletin server (e.g., user's address, age, gender, occupation, race, income, ethnicity, national origin, religion, education level, personal interests, etc., or users' profile data), to determine whether a bulletin is to be sent with any of the pieces of information. For example, the bulletin server may be configured to send bulletins with pieces of information destined for a first set of users and not send bulletins with pieces of information destined for a second set of users. In such a configuration, only those pieces of information destined for the first set of users would be determined as being accompanied by a bulletin.<br><br>When the bulletin server determines that no bulletin is to be sent with a piece of information passing through the network access system, the information is passed to the external computer without addition. If, however, the bulletin server determines that a bulletin is to be sent with a piece of information passing through the network access system, the bulletin server then selects a bulletin to be sent. Once again, the bulletin server looks at data such as the content, format, and destination of the piece of information and other data stored in the bulletin server (e.g., user's address, age, gender, occupation, race, income, ethnicity, national origin, religion, education level, personal interests, etc., or user's profile data) to determine which bulletin to select. For example, when a piece of information is destined for a particular user whose profile reveals that the user likes sports, sports related bulletins may be selected to be delivered to the user. |

**Appendix B-19**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No.  5,974,451 (Simmons)**

| U.S. Patent No. 6,442,577 | U.S. Patent No.  5,974,451 (Simmons) |
|---|---|
|  | Col. 4, line 62 to col. 5, line 63.<br><br>FIG. 1 illustrates one embodiment of an architecture, of the type in which the present invention can be used, for connecting an external computer 103 to a wide area computer network 100 through a network access system 105. As shown, external computer 103 is connected to network access system 105 through a communication link 104, and network access system 105 is connected to a remote information server 101 through a network link 102. In this arrangement, external computer 103 can communicate with remote information server 101 through communication link 104, network access system 105, and network link 102.<br><br>In this architecture, a number of different types of devices can be used to implement each of external computer 103, communications link 104, network link 102, and remote information server 101. External computer 103 may be implemented by any device capable of communicating with a wide area computer network. For example, external computer 103 may be a desktop computer, a mainframe computer, a Unix workstation, a network router, or a network gateway. Communication link 104 may be implemented by any means of providing an interface between external computer 103 and network access system 105. For example, communication link 104 may be a dial-up connection, a dedicated network connection, a single network, a combination of networks, a cable modem, or a two-way wireless communication link. Similarly, network link 102 may be implemented by any means of providing an interface between network access system 105 and remote information server 101. For example, network link 102 may be a dedicated interface, a single network, a combination of networks, a cable modem, or a two-way wireless communication link. Remote information server 101 may be implemented by any type of storage capable of providing information to external computer 103 upon request. For example, remote information server 101 may be a dedicated network server, a desktop computer, a mainframe computer, or a Unix |

**Appendix B-19**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,974,451 (Simmons)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,974,451 (Simmons) |
|---|---|
|  | workstation. |
|  | Col. 7, lines 6–42. |
|  |  |
|  | Figure 1. |
|  | In the architecture of FIG. 1, network access system 105 is preferably a network access system implemented in accordance with the present invention. One embodiment of such a network access system is shown in FIG. 2. As illustrated, network access system 105 |

**Appendix B-19**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,974,451 (Simmons)**

| U.S. Patent No. 6,442,577 | U.S. Patent No.  5,974,451 (Simmons) |
|---|---|
|  | comprises a dial-up unit 204, an authentication system 205, a bulletin server 201, a proxy cache 206, a firewall 207, and a router 208. Dial-up unit 204 communicates with any portion of communication link 104 that comprises a dial-up connection between network access system 105 and one or more dial-up external computers 203. Dial-up unit 204 may include encryption, decryption, call-back, error checking, and data compression functions. Dial-up external computers 203 comprise external computers 103 (FIG. 1) which access the network access system through a dial-up connection. Additionally or alternatively, external computers 103 may also be connected to network access system 105 in the form of one or more networked external computers 202. Networked external computers 202 differ from dial-up external computers 203 in the regard that the networked computers connect directly to authentication system 205, bulletin server 201, proxy cache 206, and firewall 207 without having to connect through dial-up unit 204. <br><br> Col. 7, lines 43–65. |

**Appendix B-19**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,974,451 (Simmons)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,974,451 (Simmons) |
|---|---|
|  |  Figure 2. Bulletin server 201 of the present invention provides control of the distribution of bulletins such as advertisements to external computers 202 or 203 connected to network access system 105. Bulletin server 201 may provide storage for a plurality of bulletins to be broadcast to the external computers. This storage may be implemented by any number of types of storage devices such as a computer disk drive, a tape drive, memory circuits, etc. Bulletin server 201 may also provide selection logic to determine whether |

**Appendix B-19**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,974,451 (Simmons)**

| U.S. Patent No. 6,442,577 | U.S. Patent No.  5,974,451 (Simmons) |
|---|---|
|  | or not to distribute bulletins and to determine which bulletins to distribute at any given time. This selection logic may be implemented through dedicated hardware or through software executing in general purpose hardware. Bulletin server 201 may further provide a user database from which the selection logic can retrieve information on the users accessing the network access system. This database may be implemented in any manner capable of reliably storing information regarding at least one characteristic of at least one user. Further, the database information may be stored in the same storage device in which the bulletins are stored or may alternatively be stored in a separate storage device. Bulletin server 201 may still further provide attachment logic for attaching bulletins to information being relayed by the network access system. Like the selection logic, the attachment logic may be implemented through dedicated hardware or through software executing in general purpose hardware.<br><br>Col. 8, lines 24–50.<br><br>FIG. 3 illustrates an example of how information is retrieved by an external computer connected to a wide area computer network through known network access systems. As shown in block 301, the retrieval of information begins by the external computer requesting information from a remote information server connected to the wide area computer network. The network access system then determines whether the requested document is stored in the proxy cache, as illustrated at test 302. If at test 302 the requested information is not stored in the proxy cache, the network access system relays the request for information to the remote information server (block 304), and the remote information server responds to this request by replying with the requested information addressed to the external computer (block 305). If at test 302 it is determined that the requested information is stored in the proxy cache, the network access system retrieves the requested information from the proxy cache, as shown at block 303. Once the information is in the network access system, the network access system relays the |

**Appendix B-19**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,974,451 (Simmons)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,974,451 (Simmons) |
|---|---|
| | requested information to the external computer as illustrated in block 306.<br><br>Col. 8, line 66 to col. 9, line 19.<br><br> |

**Appendix B-19**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,974,451 (Simmons)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,974,451 (Simmons) |
|---|---|
| | Figure 3. |
| | As illustrated in one embodiment of the present invention shown in FIG. 4, the present invention adds the distribution of bulletins to this process of retrieving requested information. Similarly to block 301 and test 302 (FIG. 3), block 401 and test 402 show that the process begins by an external computer requesting information from a remote information server and the network access system determining whether the requested information is in its proxy cache. If it is determined at test 402 that the information is in the proxy cache, the network access system retrieves the information from the proxy cache and stores it in the bulletin server's memory (block 403). If, however, it is determined at test 402 that the information is not in the proxy cache, the network access system relays the information request to the remote information server and the server replies with the requested information addressed to the external computer (blocks 404 and 405). Upon receiving the reply from the remote information server, the network access system intercepts and caches the reply in the bulletin server's memory (block 406). |
| | Once the requested information is in the bulletin server's memory, the bulletin server then determines whether it is going to add a bulletin to the information requested at test 407. The determination of whether a bulletin is going to be attached to the requested information at test 407 may be based upon such factors as the content, format, or destination of the requested information, data known about the user receiving the requested information such as the user's address, age, gender, occupation, race, income, ethnicity, national origin, religion, education level, personal interests, etc., or predetermined factors such as the time since the last bulletin was attached or the number of times information has been relayed since the last bulletin was attached. For example, a bulletin could be attached to Web pages being relayed to the user's external computer every five minutes or every tenth page. |

**Appendix B-19**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,974,451 (Simmons)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,974,451 (Simmons) |
|---|---|
| | If at test 407 the bulletin server determines that it is not going to add a bulletin to the requested information, then the information is relayed to the external computer unmodified (block 410). Otherwise, a bulletin to be attached to the requested information is selected, the selected bulletin is attached to the requested information, and the attached bulletin and information are relayed to the external computer (blocks 408, 409, and 410).<br><br>Like determining whether a bulletin is going to be attached to requested information, bulletin selection in block 408 may be based upon such factors as the content, format, or destination of the requested information, data known about the user receiving the requested information such as the user's address, age, gender, occupation, race, income, ethnicity, national origin, religion, education level, personal interests, etc., or may be based upon a sequential selection of bulletins comprising one or more bulletin lists. For example, a bulletin relating to software development tools could be selected based upon the user's occupation as a computer programmer. As another example, bulletins from a list of local bulletins could be sequentially sent to each user living in a particular set of zip codes.<br><br>Col. 9, line 20 to col. 10, line 9. |

**Appendix B-19**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,974,451 (Simmons)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,974,451 (Simmons) |
|---|---|
|  |  |

**Appendix B-19**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,974,451 (Simmons)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,974,451 (Simmons) |
|---|---|
|  | Figure 4. |
|  | *See also* claim limitations [1a] through [1f]. |
|  | To the extent it is found that Simmons does not disclose this feature expressly or inherently, it would have been obvious to combine Simmons with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter.  *See* Appendix C. |
| [1b] forming at least a page file for the first type network node; | Simmons discloses forming at least a page file for the first type network node.  For example, the network access system forms a customized bulletin, such as an advertisement, for the external computer (first type network node).  The customized bulletin is a page file. |
|  | This invention relates to network access systems. Network access systems are widely used to connect external computers to wide area computer networks, such as the Internet, through dedicated interfaces and dial-up connections. More particularly, this invention relates to network access systems which, in addition to connecting external computers to wide area computer networks, distribute bulletins, such as advertisements, to the external computers. |
|  | Col. 1, lines 13–20. |
|  | In an effort to optimally target the users of external computers with the most suitable bulletins, some remote information servers have been configured to determine the identity of each user accessing the servers, monitor the information retrieved by the users, and develop a profile for those users. In some instances, these remote information servers independently maintain the profiles for each user, and in other instances, the remote information servers jointly maintain the profiles for each user to obtain a higher degree of accuracy in the profiles. In this way, these servers can categorize the interests of the users and, therefore, send the users the most appropriate bulletins. For example, a |

- 18 -

**Appendix B-19**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,974,451 (Simmons)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,974,451 (Simmons) |
|---|---|
| | user who has been identified in the past as repeatedly accessing information on travel-- and, therefore, a user for whom a profile has been developed which indicates that the user likes to travel--would likely be targeted with bulletins relating to vacation destinations or airfare specials.<br><br>Col. 1, lines 46–62.<br><br>It would be further desirable to provide a network access system that can accurately identify the user of an external computer and, therefore, optimally match available advertising to the user's likes and dislikes.<br><br>It would be even further desirable to provide a network access system that allows advertisers to advertise at a local or regional level within a wide area computer network rather than requiring the advertisers to advertise at the global level of the network.<br><br>Col. 3, lines 1–9.<br><br>It is still another object of the invention to provide a network access system that can accurately identify the user of an external computer and, therefore, optimally match available advertising to the user's likes and dislikes.<br><br>It is a further object of the invention to provide a network access system that allows advertisers to advertise at a local or regional level within a wide area computer network rather than requiring the advertisers to advertise at the global level of the network.<br><br>Col. 3, lines 26–35.<br><br>The bulletin distribution capability of the network access system of the present invention is provided by a bulletin server incorporated into the network access system. |

- 19 -

**Appendix B-19**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,974,451 (Simmons)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,974,451 (Simmons) |
|---|---|
|  | The bulletin server distributes bulletins by sending bulletins with information being relayed by the network access system to one or more external computers. More particularly, when information is received at the network access system from a remote information server, the bulletin server first determines whether a bulletin is to be sent with the received information. If so, the bulletin server then selects an appropriate bulletin to send with the received information. Once a bulletin has been selected, the network access system then sends the attached bulletin and information on to the user's external computer. Bulletins may be sent with the received information by attaching the bulletins to the information and sending the bulletins and information together, or by sending the bulletins and information separately, for example. If, however, it is determined that a bulletin is not to be sent with the received information, then the received information is forwarded to the external computer unaccompanied by a bulletin.<br><br>Col. 3, lines 47–67.<br><br>The present invention provides a method and apparatus for distributing bulletins to external computers from network access systems connected to wide area computer networks. Known network access systems are used to connect external computers to wide area computer networks. These network access systems enable the external computers to communicate with remote information servers connected to the wide area computer networks by relaying messages between the external computers and the remote information servers. The present invention adds a bulletin delivery function to known network access systems. The bulletin delivery function operates by sending bulletins along with information being relayed by the network access systems from the remote information servers to the external computers. In addition to delivering bulletins with information being relayed by the network access systems, in preferred embodiments of the present invention, the network access systems also determine |

**Appendix B-19**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,974,451 (Simmons)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,974,451 (Simmons) |
|---|---|
| | whether bulletins are to be delivered and which bulletins are to be delivered to the external computers.

In one embodiment of the present invention, the bulletin delivery function is implemented by a bulletin server incorporated into a network access system. The bulletin server operates by monitoring information being relayed to external computers, by determining whether a bulletin is to be sent with each piece of information being relayed, and, when required, by selecting a bulletin to be sent with, and by attaching (if necessary) the selected bulletin to, the piece of information being relayed by the network access system. Once the bulletin server has determined that no bulletin is to be sent with the piece of information being relayed by the network access system, or the bulletin server has selected and attached (if necessary) a bulletin to the piece of information being relayed by the network access system, the network access system then delivers the information and the bulletin (if to be sent) from the remote information server to the external computer.

The bulletin server monitors information being relayed by the network access system to the external computer to determine the content, format, and destination of each piece of information passing through the network access system. The bulletin server may then use this content, format, and destination data, as well as other data stored in the bulletin server (e.g., user's address, age, gender, occupation, race, income, ethnicity, national origin, religion, education level, personal interests, etc., or users' profile data), to determine whether a bulletin is to be sent with any of the pieces of information. For example, the bulletin server may be configured to send bulletins with pieces of information destined for a first set of users and not send bulletins with pieces of information destined for a second set of users. In such a configuration, only those pieces of information destined for the first set of users would be determined as being accompanied by a bulletin. |

**Appendix B-19**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,974,451 (Simmons)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,974,451 (Simmons) |
|---|---|
| | When the bulletin server determines that no bulletin is to be sent with a piece of information passing through the network access system, the information is passed to the external computer without addition. If, however, the bulletin server determines that a bulletin is to be sent with a piece of information passing through the network access system, the bulletin server then selects a bulletin to be sent. Once again, the bulletin server looks at data such as the content, format, and destination of the piece of information and other data stored in the bulletin server (e.g., user's address, age, gender, occupation, race, income, ethnicity, national origin, religion, education level, personal interests, etc., or user's profile data) to determine which bulletin to select. For example, when a piece of information is destined for a particular user whose profile reveals that the user likes sports, sports related bulletins may be selected to be delivered to the user.

Col. 4, line 62 to col. 5, line 63.

Once a bulletin has been selected to be delivered with a piece of information, the bulletin server may then attach the bulletin to the information in some embodiments of the present invention. Any number of approaches can be used to attach the bulletin to the information being delivered to the external computer. For example, bulletin attachment could involve locating a clear region in an original information display and positioning a graphical bulletin in that region. As another example, bulletin attachment could involve appending a text bulletin to the end of an information file, or positioning the text bulletin at the beginning of the information file. Positioning the text bulletin at the beginning of the information file may be preferable because the user is more certain to see the bulletin. On the other hand, users may object to the bulletin, and any advertising it may contain, if they cannot choose whether or not to look at the bulletin, in which case it may be preferable to position the bulletin at the end of the information file.

In other embodiments of the present invention, a bulletin may be sent as separate data |

**Appendix B-19**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,974,451 (Simmons)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,974,451 (Simmons) |
|---|---|
|  | along with a piece of information passing through the network access system rather than attaching the bulletin directly to the information. for example, where information is being sent as a bitmap or text file, a bulletin could be sent as an additional bitmap, text, or other type of file.<br><br>Finally, once the bulletin server has selected and attached (if necessary) a bulletin to the requested information, the bulletin and information are delivered to the external computer. Upon receipt of the bulletin and information by the external computer, the external computer may display each of the bulletin and the information as part of the same image or as separate images. For example, the bulletin and the information could be displayed as part of the same image by displaying the information as a World Wide Web page and displaying the bulletin within a reserved space within that page, assuming that a clear area exists within the image. As another example, the bulletin and the information may be displayed as part of separate images by first displaying the bulletin, and then displaying the requested information after the user has responded to the displayed bulletin or a predetermined time period has passed. Such an approach could be implemented as a set of World Wide Web pages wherein a bulletin page is first displayed which shows the selected bulletin, and then an information page is shown after the user has activated a Hyper-Text link within the bulletin page. As still another example, the bulletin and the information may be displayed as part of separate images by first displaying the requested information, and then displaying the bulletin after the user has responded to the displayed information or a predetermined time period has passed. Such an approach could be implemented as a set of World Wide Web pages wherein an information page is first displayed which shows the requested information, and then a bulletin page is shown after the user has activated a Hyper-Text link within the information page. As yet another example, the bulletin and the information may be displayed as part of separate images by displaying the bulletin and the requested information in separate windows within the same display or in different |

**Appendix B-19**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,974,451 (Simmons)**

| U.S. Patent No. 6,442,577 | U.S. Patent No.  5,974,451 (Simmons) |
|---|---|
| | displays. In such implementations, activating a Hyper-Text link in the bulletin display (where the bulletin supports Hyper-Text link), could cause the information display to display more information about the bulletin.<br><br>These displays of the bulletins and information could be presented through the execution of World Wide Web browsers (such as Netscape Navigator available from Netscape Communications Corporation and Internet Explorer available from Microsoft Corporation), through the execution of other types of communications software, through the execution of other types of non-communications software, or through dedicated hardware in the external computers. For example, a word processor could incorporate a display algorithm which allows it to display bulletins and information received while communicating with a network access system.<br><br>Col. 5, line 64 to col. 7, line 3.<br><br>Bulletin server 201 of the present invention provides control of the distribution of bulletins such as advertisements to external computers 202 or 203 connected to network access system 105. Bulletin server 201 may provide storage for a plurality of bulletins to be broadcast to the external computers. This storage may be implemented by any number of types of storage devices such as a computer disk drive, a tape drive, memory circuits, etc. Bulletin server 201 may also provide selection logic to determine whether or not to distribute bulletins and to determine which bulletins to distribute at any given time. This selection logic may be implemented through dedicated hardware or through software executing in general purpose hardware. Bulletin server 201 may further provide a user database from which the selection logic can retrieve information on the users accessing the network access system. This database may be implemented in any manner capable of reliably storing information regarding at least one characteristic of at least one user. Further, the database information may be stored in the same storage device in which the bulletins are stored or may alternatively be stored in a separate |

- 24 -

**Appendix B-19**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,974,451 (Simmons)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,974,451 (Simmons) |
|---|---|
| | storage device. Bulletin server 201 may still further provide attachment logic for attaching bulletins to information being relayed by the network access system. Like the selection logic, the attachment logic may be implemented through dedicated hardware or through software executing in general purpose hardware.<br><br>Col. 8, lines 24–50.<br><br>As illustrated in one embodiment of the present invention shown in FIG. 4, the present invention adds the distribution of bulletins to this process of retrieving requested information. Similarly to block 301 and test 302 (FIG. 3), block 401 and test 402 show that the process begins by an external computer requesting information from a remote information server and the network access system determining whether the requested information is in its proxy cache. If it is determined at test 402 that the information is in the proxy cache, the network access system retrieves the information from the proxy cache and stores it in the bulletin server's memory (block 403). If, however, it is determined at test 402 that the information is not in the proxy cache, the network access system relays the information request to the remote information server and the server replies with the requested information addressed to the external computer (blocks 404 and 405). Upon receiving the reply from the remote information server, the network access system intercepts and caches the reply in the bulletin server's memory (block 406).<br><br>Once the requested information is in the bulletin server's memory, the bulletin server then determines whether it is going to add a bulletin to the information requested at test 407. The determination of whether a bulletin is going to be attached to the requested information at test 407 may be based upon such factors as the content, format, or destination of the requested information, data known about the user receiving the requested information such as the user's address, age, gender, occupation, race, income, ethnicity, national origin, religion, education level, personal interests, etc., or |

**Appendix B-19**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,974,451 (Simmons)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,974,451 (Simmons) |
|---|---|
| | predetermined factors such as the time since the last bulletin was attached or the number of times information has been relayed since the last bulletin was attached. For example, a bulletin could be attached to Web pages being relayed to the user's external computer every five minutes or every tenth page.<br><br>If at test 407 the bulletin server determines that it is not going to add a bulletin to the requested information, then the information is relayed to the external computer unmodified (block 410). Otherwise, a bulletin to be attached to the requested information is selected, the selected bulletin is attached to the requested information, and the attached bulletin and information are relayed to the external computer (blocks 408, 409, and 410).<br><br>Like determining whether a bulletin is going to be attached to requested information, bulletin selection in block 408 may be based upon such factors as the content, format, or destination of the requested information, data known about the user receiving the requested information such as the user's address, age, gender, occupation, race, income, ethnicity, national origin, religion, education level, personal interests, etc., or may be based upon a sequential selection of bulletins comprising one or more bulletin lists. For example, a bulletin relating to software development tools could be selected based upon the user's occupation as a computer programmer. As another example, bulletins from a list of local bulletins could be sequentially sent to each user living in a particular set of zip codes.<br><br>Col. 9, line 20 to col. 10, line 9. |

Appendix B-19

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,974,451 (Simmons)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,974,451 (Simmons) |
|---|---|
|  |  |

**Appendix B-19**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,974,451 (Simmons)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,974,451 (Simmons) |
|---|---|
| | Figure 4. |
| | Attachment of the bulletins to the requested information may be implemented in any of a number of approaches depending upon the form of the requested information. For example, with requested information being relayed in Hyper-Text Markup Language format, a bulletin could be attached to the requested information by creating a Hyper-Text link from the bulletin to the requested information, and by packaging the bulletin and the requested information so that the bulletin is displayed first and then the requested information is displayed after the user of the external computer activates the Hyper-Text link. Alternatively, the bulletins could be attached to the requested information by combining bitmaps of the bulletin and information, or by placing a text bulletin at the beginning or end of text information, as described above. |
| | Col. 10, lines 10–24. |
| | FIG. 6 illustrates an embodiment of a method of the present invention for receiving, separating, and handling, at an external computer, relayed information and bulletins that were sent by a network access system of the present invention. This method begins with the external computer waiting for information and/or bulletins to be received at the external computer at block 601. The external computer may receive relayed information only, relayed information and attached bulletins, null information and attached bulletins, or bulletins only (in embodiments of the invention where bulletins can be sent without attached information). Once information and/or bulletins are received at the external computer, the external computer determines whether a bulletin was received from the network access system at test 602. If it is determined that a bulletin was received from the network access system, the bulletin and information, if any, are separated at block 603. Once the bulletin has been isolated from any received information, the bulletin is sent to a bulletin display application for display at block 604. After the bulletin has been sent to the bulletin display application at block 604, or |

- 28 -

**Appendix B-19**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,974,451 (Simmons)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,974,451 (Simmons) |
|---|---|
| | it is determined at test 602 that a bulletin was not received from the network access system, the external computer determines at test 605 whether the information received at the external computer is null information. If the information is null information, the external computer loops back to block 601 to wait for more information and/or bulletins to be received from the network access system. Otherwise, if the information is not determined to be null information at test 605, the information is sent at block 606 to the application that requested the information. Once the information has been sent to the requesting application at block 606, the external computer loops back to block 601 to wait form more information and/or bulletins to be received from the network access system. <br><br> Col. 11, lines 5–38. |

**Appendix B-19**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No.  5,974,451 (Simmons)**

| U.S. Patent No. 6,442,577 | U.S. Patent No.  5,974,451 (Simmons) |
|---|---|
| |  |

**Appendix B-19**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,974,451 (Simmons)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,974,451 (Simmons) |
|---|---|
| | Figure 6.<br><br>*See also* Figures 5a, 5b and associated text.<br><br>To the extent it is found that Simmons does not disclose this feature expressly or inherently, it would have been obvious to combine Simmons with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [1c] forming at least a page file for the second type network node; | Simmons discloses forming at least a page file for the second type network node. For example, when a user of the external computer requests information, the network access system determines that information is stored in the proxy cache, and if not it retrieves it from a remote information server. Since the requested information is not customized for the external computer (first type network node), it is formed for the second type network node. The requested information is a page file.<br><br>A network access system is provided for distributing bulletins, such as advertisements, to external computers accessing a wide area computer network. The network access system of the present invention connects the external computers to the wide area computer network, and sends bulletins with information being transmitted from remote information servers within the wide area computer network to the external computers. A bulletin server within the network access system stores a plurality of bulletins to be transmitted to the external computers, determines whether to send a bulletin with the information being transmitted, determines what bulletins to transmit to the external computers, and sends the bulletins with the information being transmitted from the remote information servers to the external computers. Upon receipt of a bulletin, the external computers may display the bulletins as part of the received information, may display the bulletins before allowing the user to view the received information, or may display the bulletins as part of a separate window. |

**Appendix B-19**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,974,451 (Simmons)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,974,451 (Simmons) |
|---|---|
| | Abstract. <br><br> The bulletin distribution capability of the network access system of the present invention is provided by a bulletin server incorporated into the network access system. The bulletin server distributes bulletins by sending bulletins with information being relayed by the network access system to one or more external computers. More particularly, when information is received at the network access system from a remote information server, the bulletin server first determines whether a bulletin is to be sent with the received information. If so, the bulletin server then selects an appropriate bulletin to send with the received information. Once a bulletin has been selected, the network access system then sends the attached bulletin and information on to the user's external computer. Bulletins may be sent with the received information by attaching the bulletins to the information and sending the bulletins and information together, or by sending the bulletins and information separately, for example. If, however, it is determined that a bulletin is not to be sent with the received information, then the received information is forwarded to the external computer unaccompanied by a bulletin. <br><br> Col. 3, lines 47–67. <br><br> The present invention provides a method and apparatus for distributing bulletins to external computers connected to network access systems connected to wide area computer networks. Known network access systems are used to connect external computers to wide area computer networks. These network access systems enable the external computers to communicate with remote information servers connected to the wide area computer networks by relaying messages between the external computers and the remote information servers. The present invention adds a bulletin delivery function to known network access systems. The bulletin delivery function operates by sending bulletins along with information being relayed by the network access systems from the |

**Appendix B-19**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,974,451 (Simmons)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,974,451 (Simmons) |
|---|---|
| | remote information servers to the external computers. In addition to delivering bulletins with information being relayed by the network access systems, in preferred embodiments of the present invention, the network access systems also determine whether bulletins are to be delivered and which bulletins are to be delivered to the external computers.<br><br>In one embodiment of the present invention, the bulletin delivery function is implemented by a bulletin server incorporated into a network access system. The bulletin server operates by monitoring information being relayed to external computers, by determining whether a bulletin is to be sent with each piece of information being relayed, and, when required, by selecting a bulletin to be sent with, and by attaching (if necessary) the selected bulletin to, the piece of information being relayed by the network access system. Once the bulletin server has determined that no bulletin is to be sent with the piece of information being relayed by the network access system, or the bulletin server has selected and attached (if necessary) a bulletin to the piece of information being relayed by the network access system, the network access system then delivers the information and the bulletin (if to be sent) from the remote information server to the external computer.<br><br>The bulletin server monitors information being relayed by the network access system to the external computer to determine the content, format, and destination of each piece of information passing through the network access system. The bulletin server may then use this content, format, and destination data, as well as other data stored in the bulletin server (e.g., user's address, age, gender, occupation, race, income, ethnicity, national origin, religion, education level, personal interests, etc., or users' profile data), to determine whether a bulletin is to be sent with any of the pieces of information. For example, the bulletin server may be configured to send bulletins with pieces of information destined for a first set of users and not send bulletins with pieces of |

**Appendix B-19**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,974,451 (Simmons)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,974,451 (Simmons) |
|---|---|
| | information destined for a second set of users. In such a configuration, only those pieces of information destined for the first set of users would be determined as being accompanied by a bulletin. <br><br> When the bulletin server determines that no bulletin is to be sent with a piece of information passing through the network access system, the information is passed to the external computer without addition. If, however, the bulletin server determines that a bulletin is to be sent with a piece of information passing through the network access system, the bulletin server then selects a bulletin to be sent. Once again, the bulletin server looks at data such as the content, format, and destination of the piece of information and other data stored in the bulletin server (e.g., user's address, age, gender, occupation, race, income, ethnicity, national origin, religion, education level, personal interests, etc., or user's profile data) to determine which bulletin to select. For example, when a piece of information is destined for a particular user whose profile reveals that the user likes sports, sports related bulletins may be selected to be delivered to the user. <br><br> Col. 4, line 62 to col. 5, line 63. <br><br> Once a bulletin has been selected to be delivered with a piece of information, the bulletin server may then attach the bulletin to the information in some embodiments of the present invention. Any number of approaches can be used to attach the bulletin to the information being delivered to the external computer. For example, bulletin attachment could involve locating a clear region in an original information display and positioning a graphical bulletin in that region. As another example, bulletin attachment could involve appending a text bulletin to the end of an information file, or positioning the text bulletin at the beginning of the information file. Positioning the text bulletin at the beginning of the information file may be preferable because the user is more certain to see the bulletin. On the other hand, users may object to the bulletin, and any advertising it may contain, if they cannot choose whether or not to look at the bulletin, |

- 34 -

**Appendix B-19**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,974,451 (Simmons)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,974,451 (Simmons) |
|---|---|
| | in which case it may be preferable to position the bulletin at the end of the information file.<br><br>In other embodiments of the present invention, a bulletin may be sent as separate data along with a piece of information passing through the network access system rather than attaching the bulletin directly to the information. for example, where information is being sent as a bitmap or text file, a bulletin could be sent as an additional bitmap, text, or other type of file.<br><br>Finally, once the bulletin server has selected and attached (if necessary) a bulletin to the requested information, the bulletin and information are delivered to the external computer. Upon receipt of the bulletin and information by the external computer, the external computer may display each of the bulletin and the information as part of the same image or as separate images. For example, the bulletin and the information could be displayed as part of the same image by displaying the information as a World Wide Web page and displaying the bulletin within a reserved space within that page, assuming that a clear area exists within the image. As another example, the bulletin and the information may be displayed as part of separate images by first displaying the bulletin, and then displaying the requested information after the user has responded to the displayed bulletin or a predetermined time period has passed. Such an approach could be implemented as a set of World Wide Web pages wherein a bulletin page is first displayed which shows the selected bulletin, and then an information page is shown after the user has activated a Hyper-Text link within the bulletin page. As still another example, the bulletin and the information may be displayed as part of separate images by first displaying the requested information, and then displaying the bulletin after the user has responded to the displayed information or a predetermined time period has passed. Such an approach could be implemented as a set of World Wide Web pages wherein an information page is first displayed which shows the requested |

**Appendix B-19**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,974,451 (Simmons)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,974,451 (Simmons) |
|---|---|
| | information, and then a bulletin page is shown after the user has activated a Hyper-Text link within the information page. As yet another example, the bulletin and the information may be displayed as part of separate images by displaying the bulletin and the requested information in separate windows within the same display or in different displays. In such implementations, activating a Hyper-Text link in the bulletin display (where the bulletin supports Hyper-Text link), could cause the information display to display more information about the bulletin. |
| | These displays of the bulletins and information could be presented through the execution of World Wide Web browsers (such as Netscape Navigator available from Netscape Communications Corporation and Internet Explorer available from Microsoft Corporation), through the execution of other types of communications software, through the execution of other types of non-communications software, or through dedicated hardware in the external computers. For example, a word processor could incorporate a display algorithm which allows it to display bulletins and information received while communicating with a network access system. |
| | Col. 5, line 64 to col. 7, line 3. |
| | FIG. 1 illustrates one embodiment of an architecture, of the type in which the present invention can be used, for connecting an external computer 103 to a wide area computer network 100 through a network access system 100. As shown, external computer 103 is connected to network access system 105 through a communication link 104, and network access system 105 is connected to a remote information server 101 through a network link 102. In this arrangement, external computer 103 can communicate with remote information server 101 through communication link 104, network access system 105, and network link 102. |
| | In this architecture, a number of different types of devices can be used to implement |

**Appendix B-19**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,974,451 (Simmons)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,974,451 (Simmons) |
|---|---|
| | each of external computer 103, communications link 104, network link 102, and remote information server 101. External computer 103 may be implemented by any device capable of communicating with a wide area computer network. For example, external computer 103 may be a desktop computer, a mainframe computer, a Unix workstation, a network router, or a network gateway. Communication link 104 may be implemented by any means of providing an interface between external computer 103 and network access system 105. For example, communication link 104 may be a dial-up connection, a dedicated network connection, a single network, a combination of networks, a cable modem, or a two-way wireless communication link. Similarly, network link 102 may be implemented by any means of providing an interface between network access system 105 and remote information server 101. For example, network link 102 may be a dedicated interface, a single network, a combination of networks, a cable modem, or a two-way wireless communication link. Remote information server 101 may be implemented by any type of storage capable of providing information to external computer 103 upon request. For example, remote information server 101 may be a dedicated network server, a desktop computer, a mainframe computer, or a Unix workstation.<br><br>Col. 7, lines 6–42. |

**Appendix B-19**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,974,451 (Simmons)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,974,451 (Simmons) |
|---|---|
| | <br>Figure 1.<br><br>Information distribution is controlled by the proxy cache in the preferred embodiments of the present invention. Proxy cache 206 provides local storage for frequently used information that would otherwise be retrieved by requesting the information from a remote information server. By providing local storage for frequently used information, proxy cache 206 avoids the need for redundant retrieval of the information from the wide area computer network and, thereby, quickens the apparent response time of the |

**Appendix B-19**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,974,451 (Simmons)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,974,451 (Simmons) |
|---|---|
| | wide area computer network to the user. When information is requested by the user via an external computer 202 or 203, the network access system first determines whether a copy of the information is stored in proxy cache 206. If the information is present, the network access system relays the stored information to the user from the proxy cache. Otherwise, a request is sent to a remote information server on the wide area computer network, and the information is retrieved. A copy of the retrieved information is then stored in proxy cache 206 for future use.<br><br>Col. 8, lines 6–23.<br><br>FIG. 3 illustrates an example of how information is retrieved by an external computer connected to a wide area computer network through known network access systems. As shown in block 301, the retrieval of information begins by the external computer requesting information from a remote information server connected to the wide area computer network. The network access system then determines whether the requested document is stored in the proxy cache, as illustrated at test 302. If at test 302 the requested information is not stored in the proxy cache, the network access system relays the request for information to the remote information server (block 304), and the remote information server responds to this request by replying with the requested information addressed to the external computer (block 305). If at test 302 it is determined that the requested information is stored in the proxy cache, the network access system retrieves the requested information from the proxy cache, as shown at block 303. Once the information is in the network access system, the network access system relays the requested information to the external computer as illustrated in block 306.<br><br>Col. 8, line 66 to col. 9, line 19. |

**Appendix B-19**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,974,451 (Simmons)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,974,451 (Simmons) |
|---|---|
|  |  Figure 3. As illustrated in one embodiment of the present invention shown in FIG. 4, the present invention adds the distribution of bulletins to this process of retrieving requested |

**Appendix B-19**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,974,451 (Simmons)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,974,451 (Simmons) |
|---|---|
| | information. Similarly to block 301 and test 302 (FIG. 3), block 401 and test 402 show that the process begins by an external computer requesting information from a remote information server and the network access system determining whether the requested information is in its proxy cache. If it is determined at test 402 that the information is in the proxy cache, the network access system retrieves the information from the proxy cache and stores it in the bulletin server's memory (block 403). If, however, it is determined at test 402 that the information is not in the proxy cache, the network access system relays the information request to the remote information server and the server replies with the requested information addressed to the external computer (blocks 404 and 405). Upon receiving the reply from the remote information server, the network access system intercepts and caches the reply in the bulletin server's memory (block 406). |
| | Once the requested information is in the bulletin server's memory, the bulletin server then determines whether it is going to add a bulletin to the information requested at test 407. The determination of whether a bulletin is going to be attached to the requested information at test 407 may be based upon such factors as the content, format, or destination of the requested information, data known about the user receiving the requested information such as the user's address, age, gender, occupation, race, income, ethnicity, national origin, religion, education level, personal interests, etc., or predetermined factors such as the time since the last bulletin was attached or the number of times information has been relayed since the last bulletin was attached. For example, a bulletin could be attached to Web pages being relayed to the user's external computer every five minutes or every tenth page. |
| | If at test 407 the bulletin server determines that it is not going to add a bulletin to the requested information, then the information is relayed to the external computer unmodified (block 410). Otherwise, a bulletin to be attached to the requested |

**Appendix B-19**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,974,451 (Simmons)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,974,451 (Simmons) |
|---|---|
| | information is selected, the selected bulletin is attached to the requested information, and the attached bulletin and information are relayed to the external computer (blocks 408, 409, and 410).<br><br>Like determining whether a bulletin is going to be attached to requested information, bulletin selection in block 408 may be based upon such factors as the content, format, or destination of the requested information, data known about the user receiving the requested information such as the user's address, age, gender, occupation, race, income, ethnicity, national origin, religion, education level, personal interests, etc., or may be based upon a sequential selection of bulletins comprising one or more bulletin lists. For example, a bulletin relating to software development tools could be selected based upon the user's occupation as a computer programmer. As another example, bulletins from a list of local bulletins could be sequentially sent to each user living in a particular set of zip codes.<br><br>Col. 9, line 20 to col. 10, line 9. |

**Appendix B-19**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,974,451 (Simmons)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,974,451 (Simmons) |
|---|---|
| |  |

**Appendix B-19**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,974,451 (Simmons)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,974,451 (Simmons) |
|---|---|
| | Figure 4.

FIG. 6 illustrates an embodiment of a method of the present invention for receiving, separating, and handling, at an external computer, relayed information and bulletins that were sent by a network access system of the present invention. This method begins with the external computer waiting for information and/or bulletins to be received at the external computer at block 601. The external computer may receive relayed information only, relayed information and attached bulletins, null information and attached bulletins, or bulletins only (in embodiments of the invention where bulletins can be sent without attached information). Once information and/or bulletins are received at the external computer, the external computer determines whether a bulletin was received from the network access system at test 602. If it is determined that a bulletin was received from the network access system, the bulletin and information, if any, are separated at block 603. Once the bulletin has been isolated from any received information, the bulletin is sent to a bulletin display application for display at block 604. After the bulletin has been sent to the bulletin display application at block 604, or it is determined at test 602 that a bulletin was not received from the network access system, the external computer determines at test 605 whether the information received at the external computer is null information. If the information is null information, the external computer loops back to block 601 to wait for more information and/or bulletins to be received from the network access system. Otherwise, if the information is not determined to be null information at test 605, the information is sent at block 606 to the application that requested the information. Once the information has been sent to the requesting application at block 606, the external computer loops back to block 601 to wait form more information and/or bulletins to be received from the network access system.

Col. 11, lines 5–38. |

**Appendix B-19**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,974,451 (Simmons)**

| U.S. Patent No. 6,442,577 | U.S. Patent No.  5,974,451 (Simmons) |
|---|---|
| |  |

**Appendix B-19**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,974,451 (Simmons)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,974,451 (Simmons) |
|---|---|
| | Figure 6.<br><br>*See also* Figures 5a, 5b and associated text.<br><br>To the extent it is found that Simmons does not disclose this feature expressly or inherently, it would have been obvious to combine Simmons with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [1d] receiving a service request from the first type network node; | Simmons discloses receiving a service request from the first type network node. For example, the user of the external computer (first type network node) sends a service request to request information from the network access system. The network access system receives the service request from the first type network node.<br><br>    Access control in the network access system of the present invention is provided by authentication system 205. Authentication system 205 verifies that all users accessing the network access system 105 are authorized to do so. Authentication system 205 may include log-in prompting, encryption, decryption, and digital signature authentication functions.<br><br>Col. 7, line 66 to col. 8, line 5.<br><br>    Information distribution is controlled by the proxy cache in the preferred embodiments of the present invention. Proxy cache 206 provides local storage for frequently used information that would otherwise be retrieved by requesting the information from a remote information server. By providing local storage for frequently used information, proxy cache 206 avoids the need for redundant retrieval of the information from the wide area computer network and, thereby, quickens the apparent response time of the wide area computer network to the user. When information is requested by the user via an external computer 202 or 203, the network access system first determines whether a |

**Appendix B-19**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,974,451 (Simmons)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,974,451 (Simmons) |
|---|---|
| | copy of the information is stored in proxy cache 206. If the information is present, the network access system relays the stored information to the user from the proxy cache. Otherwise, a request is sent to a remote information server on the wide area computer network, and the information is retrieved. A copy of the retrieved information is then stored in proxy cache 206 for future use.<br><br>Col. 8, lines 6–23.<br><br>Bulletin server 201 of the present invention provides control of the distribution of bulletins such as advertisements to external computers 202 or 203 connected to network access system 105. Bulletin server 201 may provide storage for a plurality of bulletins to be broadcast to the external computers. This storage may be implemented by any number of types of storage devices such as a computer disk drive, a tape drive, memory circuits, etc. Bulletin server 201 may also provide selection logic to determine whether or not to distribute bulletins and to determine which bulletins to distribute at any given time. This selection logic may be implemented through dedicated hardware or through software executing in general purpose hardware. Bulletin server 201 may further provide a user database from which the selection logic can retrieve information on the users accessing the network access system. This database may be implemented in any manner capable of reliably storing information regarding at least one characteristic of at least one user. Further, the database information may be stored in the same storage device in which the bulletins are stored or may alternatively be stored in a separate storage device. Bulletin server 201 may still further provide attachment logic for attaching bulletins to information being relayed by the network access system. Like the selection logic, the attachment logic may be implemented through dedicated hardware or through software executing in general purpose hardware.<br><br>Col. 8, lines 24–50. |

**Appendix B-19**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,974,451 (Simmons)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,974,451 (Simmons) |
|---|---|
|  | FIG. 3 illustrates an example of how information is retrieved by an external computer connected to a wide area computer network through known network access systems. As shown in block 301, the retrieval of information begins by the external computer requesting information from a remote information server connected to the wide area computer network. The network access system then determines whether the requested document is stored in the proxy cache, as illustrated at test 302. If at test 302 the requested information is not stored in the proxy cache, the network access system relays the request for information to the remote information server (block 304), and the remote information server responds to this request by replying with the requested information addressed to the external computer (block 305). If at test 302 it is determined that the requested information is stored in the proxy cache, the network access system retrieves the requested information from the proxy cache, as shown at block 303. Once the information is in the network access system, the network access system relays the requested information to the external computer as illustrated in block 306.<br><br>Col. 8, line 66 to col. 9, line 19. |

**Appendix B-19**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,974,451 (Simmons)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,974,451 (Simmons) |
|---|---|
| |  Figure 3.<br><br>As illustrated in one embodiment of the present invention shown in FIG. 4, the present invention adds the distribution of bulletins to this process of retrieving requested |

**Appendix B-19**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,974,451 (Simmons)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,974,451 (Simmons) |
|---|---|
|  | information. Similarly to block 301 and test 302 (FIG. 3), block 401 and test 402 show that the process begins by an external computer requesting information from a remote information server and the network access system determining whether the requested information is in its proxy cache. If it is determined at test 402 that the information is in the proxy cache, the network access system retrieves the information from the proxy cache and stores it in the bulletin server's memory (block 403). If, however, it is determined at test 402 that the information is not in the proxy cache, the network access system relays the information request to the remote information server and the server replies with the requested information addressed to the external computer (blocks 404 and 405). Upon receiving the reply from the remote information server, the network access system intercepts and caches the reply in the bulletin server's memory (block 406).<br><br>Once the requested information is in the bulletin server's memory, the bulletin server then determines whether it is going to add a bulletin to the information requested at test 407. The determination of whether a bulletin is going to be attached to the requested information at test 407 may be based upon such factors as the content, format, or destination of the requested information, data known about the user receiving the requested information such as the user's address, age, gender, occupation, race, income, ethnicity, national origin, religion, education level, personal interests, etc., or predetermined factors such as the time since the last bulletin was attached or the number of times information has been relayed since the last bulletin was attached. For example, a bulletin could be attached to Web pages being relayed to the user's external computer every five minutes or every tenth page.<br><br>If at test 407 the bulletin server determines that it is not going to add a bulletin to the requested information, then the information is relayed to the external computer unmodified (block 410). Otherwise, a bulletin to be attached to the requested |

**Appendix B-19**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,974,451 (Simmons)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,974,451 (Simmons) |
|---|---|
| | information is selected, the selected bulletin is attached to the requested information, and the attached bulletin and information are relayed to the external computer (blocks 408, 409, and 410).<br><br>Like determining whether a bulletin is going to be attached to requested information, bulletin selection in block 408 may be based upon such factors as the content, format, or destination of the requested information, data known about the user receiving the requested information such as the user's address, age, gender, occupation, race, income, ethnicity, national origin, religion, education level, personal interests, etc., or may be based upon a sequential selection of bulletins comprising one or more bulletin lists. For example, a bulletin relating to software development tools could be selected based upon the user's occupation as a computer programmer. As another example, bulletins from a list of local bulletins could be sequentially sent to each user living in a particular set of zip codes.<br><br>Col. 9, line 20 to col. 10, line 9. |

Appendix B-19

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,974,451 (Simmons)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,974,451 (Simmons) |
|---|---|
|  |  |

**Appendix B-19**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,974,451 (Simmons)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,974,451 (Simmons) |
|---|---|
| | Figure 4.<br><br>FIG. 6 illustrates an embodiment of a method of the present invention for receiving, separating, and handling, at an external computer, relayed information and bulletins that were sent by a network access system of the present invention. This method begins with the external computer waiting for information and/or bulletins to be received at the external computer at block 601. The external computer may receive relayed information only, relayed information and attached bulletins, null information and attached bulletins, or bulletins only (in embodiments of the invention where bulletins can be sent without attached information). Once information and/or bulletins are received at the external computer, the external computer determines whether a bulletin was received from the network access system at test 602. If it is determined that a bulletin was received from the network access system, the bulletin and information, if any, are separated at block 603. Once the bulletin has been isolated from any received information, the bulletin is sent to a bulletin display application for display at block 604. After the bulletin has been sent to the bulletin display application at block 604, or it is determined at test 602 that a bulletin was not received from the network access system, the external computer determines at test 605 whether the information received at the external computer is null information. If the information is null information, the external computer loops back to block 601 to wait for more information and/or bulletins to be received from the network access system. Otherwise, if the information is not determined to be null information at test 605, the information is sent at block 606 to the application that requested the information. Once the information has been sent to the requesting application at block 606, the external computer loops back to block 601 to wait form more information and/or bulletins to be received from the network access system.<br><br>Col. 11, lines 5–38. |

**Appendix B-19**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,974,451 (Simmons)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,974,451 (Simmons) |
|---|---|
|  |  |

**Appendix B-19**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,974,451 (Simmons)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,974,451 (Simmons) |
|---|---|
| | Figure 6.<br><br>*See also* Figures 5a, 5b and associated text.<br><br>To the extent it is found that Simmons does not disclose this feature expressly or inherently, it would have been obvious to combine Simmons with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter.  *See* Appendix C. |
| [1e] identifying the first type network node based on the service request; and | Simmons discloses identifying the first type network node based on the service request.  For example, the network access system receives the service request from the first type network node and uses the service request to identify the first type network node.  Specifically, bulletin server within the network access system retrieves information from a user database, and uses that information to identify the user and select bulletins to be provided to the external computer (first type network node).<br><br>     In an effort to optimally target the users of external computers with the most suitable bulletins, some remote information servers have been configured to determine the identity of each user accessing the servers, monitor the information retrieved by the users, and develop a profile for those users. In some instances, these remote information servers independently maintain the profiles for each user, and in other instances, the remote information servers jointly maintain the profiles for each user to obtain a higher degree of accuracy in the profiles. In this way, these servers can categorize the interests of the users and, therefore, send the users the most appropriate bulletins. For example, a user who has been identified in the past as repeatedly accessing information on travel--and, therefore, a user for whom a profile has been developed which indicates that the user likes to travel--would likely be targeted with bulletins relating to vacation destinations or airfare specials.<br><br>     One way these servers identify users is through the Internet Protocol (IP) addresses of the users' computers. Primarily, IP addresses are used in wide area computer networks |

**Appendix B-19**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,974,451 (Simmons)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,974,451 (Simmons) |
|---|---|
| | to direct messages between different devices attached to the network. For example, when a remote information server sends information to a user's computer, the remote information server attaches the IP address of the user's computer to the information in order to direct the information through the network from the remote information server to the user's computer--much like placing a label on an envelope and mailing it from the remote information server to the user's computer. In cases where a computer's IP address is always the same and only one person uses the computer, an IP address can be an effective way to identify a user accessing a remote information server. |
| | Col. 1, line 46 to col. 2, line 10. |
| | It would be further desirable to provide a network access system that can accurately identify the user of an external computer and, therefore, optimally match available advertising to the user's likes and dislikes. |
| | Col. 3, lines 1–4. |
| | It is still another object of the invention to provide a network access system that can accurately identify the user of an external computer and, therefore, optimally match available advertising to the user's likes and dislikes. |
| | Col. 3, lines 26–30. |
| | The bulletin server monitors information being relayed by the network access system to the external computer to determine the content, format, and destination of each piece of information passing through the network access system. The bulletin server may then use this content, format, and destination data, as well as other data stored in the bulletin server (e.g., user's address, age, gender, occupation, race, income, ethnicity, national origin, religion, education level, personal interests, etc., or users' profile data), to |

**Appendix B-19**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,974,451 (Simmons)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,974,451 (Simmons) |
|---|---|
|  | determine whether a bulletin is to be sent with any of the pieces of information. For example, the bulletin server may be configured to send bulletins with pieces of information destined for a first set of users and not send bulletins with pieces of information destined for a second set of users. In such a configuration, only those pieces of information destined for the first set of users would be determined as being accompanied by a bulletin.

When the bulletin server determines that no bulletin is to be sent with a piece of information passing through the network access system, the information is passed to the external computer without addition. If, however, the bulletin server determines that a bulletin is to be sent with a piece of information passing through the network access system, the bulletin server then selects a bulletin to be sent. Once again, the bulletin server looks at data such as the content, format, and destination of the piece of information and other data stored in the bulletin server (e.g., user's address, age, gender, occupation, race, income, ethnicity, national origin, religion, education level, personal interests, etc., or user's profile data) to determine which bulletin to select. For example, when a piece of information is destined for a particular user whose profile reveals that the user likes sports, sports related bulletins may be selected to be delivered to the user.

Col. 5, lines 31–63.

Bulletin server 201 of the present invention provides control of the distribution of bulletins such as advertisements to external computers 202 or 203 connected to network access system 105. Bulletin server 201 may provide storage for a plurality of bulletins to be broadcast to the external computers. This storage may be implemented by any number of types of storage devices such as a computer disk drive, a tape drive, memory circuits, etc. Bulletin server 201 may also provide selection logic to determine whether or not to distribute bulletins and to determine which bulletins to distribute at any given time. This selection logic may be implemented through dedicated hardware or through |

**Appendix B-19**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,974,451 (Simmons)**

| U.S. Patent No. 6,442,577 | U.S. Patent No.  5,974,451 (Simmons) |
|---|---|
| | software executing in general purpose hardware. Bulletin server 201 may further provide a user database from which the selection logic can retrieve information on the users accessing the network access system. This database may be implemented in any manner capable of reliably storing information regarding at least one characteristic of at least one user. Further, the database information may be stored in the same storage device in which the bulletins are stored or may alternatively be stored in a separate storage device. Bulletin server 201 may still further provide attachment logic for attaching bulletins to information being relayed by the network access system. Like the selection logic, the attachment logic may be implemented through dedicated hardware or through software executing in general purpose hardware.<br><br>Col. 8, lines 24–50.<br><br>As illustrated in one embodiment of the present invention shown in FIG. 4, the present invention adds the distribution of bulletins to this process of retrieving requested information. Similarly to block 301 and test 302 (FIG. 3), block 401 and test 402 show that the process begins by an external computer requesting information from a remote information server and the network access system determining whether the requested information is in its proxy cache. If it is determined at test 402 that the information is in the proxy cache, the network access system retrieves the information from the proxy cache and stores it in the bulletin server's memory (block 403). If, however, it is determined at test 402 that the information is not in the proxy cache, the network access system relays the information request to the remote information server and the server replies with the requested information addressed to the external computer (blocks 404 and 405). Upon receiving the reply from the remote information server, the network access system intercepts and caches the reply in the bulletin server's memory (block 406).<br><br>Once the requested information is in the bulletin server's memory, the bulletin server |

**Appendix B-19**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,974,451 (Simmons)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,974,451 (Simmons) |
|---|---|
| | then determines whether it is going to add a bulletin to the information requested at test 407. The determination of whether a bulletin is going to be attached to the requested information at test 407 may be based upon such factors as the content, format, or destination of the requested information, data known about the user receiving the requested information such as the user's address, age, gender, occupation, race, income, ethnicity, national origin, religion, education level, personal interests, etc., or predetermined factors such as the time since the last bulletin was attached or the number of times information has been relayed since the last bulletin was attached. For example, a bulletin could be attached to Web pages being relayed to the user's external computer every five minutes or every tenth page.<br><br>If at test 407 the bulletin server determines that it is not going to add a bulletin to the requested information, then the information is relayed to the external computer unmodified (block 410). Otherwise, a bulletin to be attached to the requested information is selected, the selected bulletin is attached to the requested information, and the attached bulletin and information are relayed to the external computer (blocks 408, 409, and 410).<br><br>Like determining whether a bulletin is going to be attached to requested information, bulletin selection in block 408 may be based upon such factors as the content, format, or destination of the requested information, data known about the user receiving the requested information such as the user's address, age, gender, occupation, race, income, ethnicity, national origin, religion, education level, personal interests, etc., or may be based upon a sequential selection of bulletins comprising one or more bulletin lists. For example, a bulletin relating to software development tools could be selected based upon the user's occupation as a computer programmer. As another example, bulletins from a list of local bulletins could be sequentially sent to each user living in a particular set of zip codes. |

**Appendix B-19**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,974,451 (Simmons)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,974,451 (Simmons) |
|---|---|
| | Col. 9, line 20 to col. 10, line 9. |

**Appendix B-19**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,974,451 (Simmons)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,974,451 (Simmons) |
|---|---|
| |  |

**Appendix B-19**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,974,451 (Simmons)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,974,451 (Simmons) |
|---|---|
| | Figure 4.<br><br>*See also* claim limitation [1d].<br><br>To the extent it is found that Simmons does not disclose this feature expressly or inherently, it would have been obvious to combine Simmons with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [1f] forming a customized page file formed for the first type network node by including the page file formed for the first type network node within the page file for the second type network node. | Simmons discloses forming a customized page file formed for the first type network node by including the page file formed for the first type network node within the page file for the second type network node. For example, the network access system forms a customized page file by attaching bulletins (page file formed for the first type network node) to information requested by the user of the external computer (page file for the second type network node). The bulletins are included within the requested information.<br><br>The bulletin distribution capability of the network access system of the present invention is provided by a bulletin server incorporated into the network access system. The bulletin server distributes bulletins by sending bulletins with information being relayed by the network access system to one or more external computers. More particularly, when information is received at the network access system from a remote information server, the bulletin server first determines whether a bulletin is to be sent with the received information. If so, the bulletin server then selects an appropriate bulletin to send with the received information. Once a bulletin has been selected, the network access system then sends the attached bulletin and information on to the user's external computer. Bulletins may be sent with the received information by attaching the bulletins to the information and sending the bulletins and information together, or by sending the bulletins and information separately, for example. If, however, it is determined that a bulletin is not to be sent with the received information, then the received information is forwarded to the external computer unaccompanied by a |

**Appendix B-19**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,974,451 (Simmons)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,974,451 (Simmons) |
|---|---|
| | bulletin.<br><br>Col. 3, lines 47–67.<br><br>The present invention provides a method and apparatus for distributing bulletins to external computers from network access systems connected to wide area computer networks. Known network access systems are used to connect external computers to wide area computer networks. These network access systems enable the external computers to communicate with remote information servers connected to the wide area computer networks by relaying messages between the external computers and the remote information servers. The present invention adds a bulletin delivery function to known network access systems. The bulletin delivery function operates by sending bulletins along with information being relayed by the network access systems from the remote information servers to the external computers. In addition to delivering bulletins with information being relayed by the network access systems, in preferred embodiments of the present invention, the network access systems also determine whether bulletins are to be delivered and which bulletins are to be delivered to the external computers.<br><br>In one embodiment of the present invention, the bulletin delivery function is implemented by a bulletin server incorporated into a network access system. The bulletin server operates by monitoring information being relayed to external computers, by determining whether a bulletin is to be sent with each piece of information being relayed, and, when required, by selecting a bulletin to be sent with, and by attaching (if necessary) the selected bulletin to, the piece of information being relayed by the network access system. Once the bulletin server has determined that no bulletin is to be sent with the piece of information being relayed by the network access system, or the bulletin server has selected and attached (if necessary) a bulletin to the piece of information being relayed by the network access system, the network access system |

**Appendix B-19**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,974,451 (Simmons)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,974,451 (Simmons) |
|---|---|
| | then delivers the information and the bulletin (if to be sent) from the remote information server to the external computer.<br><br>Col. 4, line 62 to col. 5, line 30.<br><br>Once a bulletin has been selected to be delivered with a piece of information, the bulletin server may then attach the bulletin to the information in some embodiments of the present invention. Any number of approaches can be used to attach the bulletin to the information being delivered to the external computer. For example, bulletin attachment could involve locating a clear region in an original information display and positioning a graphical bulletin in that region. As another example, bulletin attachment could involve appending a text bulletin to the end of an information file, or positioning the text bulletin at the beginning of the information file. Positioning the text bulletin at the beginning of the information file may be preferable because the user is more certain to see the bulletin. On the other hand, users may object to the bulletin, and any advertising it may contain, if they cannot choose whether or not to look at the bulletin, in which case it may be preferable to position the bulletin at the end of the information file.<br><br>In other embodiments of the present invention, a bulletin may be sent as separate data along with a piece of information passing through the network access system rather than attaching the bulletin directly to the information. for example, where information is being sent as a bitmap or text file, a bulletin could be sent as an additional bitmap, text, or other type of file.<br><br>Finally, once the bulletin server has selected and attached (if necessary) a bulletin to the requested information, the bulletin and information are delivered to the external computer. Upon receipt of the bulletin and information by the external computer, the external computer may display each of the bulletin and the information as part of the |

**Appendix B-19**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,974,451 (Simmons)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,974,451 (Simmons) |
|---|---|
|  | same image or as separate images. For example, the bulletin and the information could be displayed as part of the same image by displaying the information as a World Wide Web page and displaying the bulletin within a reserved space within that page, assuming that a clear area exists within the image. As another example, the bulletin and the information may be displayed as part of separate images by first displaying the bulletin, and then displaying the requested information after the user has responded to the displayed bulletin or a predetermined time period has passed. Such an approach could be implemented as a set of World Wide Web pages wherein a bulletin page is first displayed which shows the selected bulletin, and then an information page is shown after the user has activated a Hyper-Text link within the bulletin page. As still another example, the bulletin and the information may be displayed as part of separate images by first displaying the requested information, and then displaying the bulletin after the user has responded to the displayed information or a predetermined time period has passed. Such an approach could be implemented as a set of World Wide Web pages wherein an information page is first displayed which shows the requested information, and then a bulletin page is shown after the user has activated a Hyper-Text link within the information page. As yet another example, the bulletin and the information may be displayed as part of separate images by displaying the bulletin and the requested information in separate windows within the same display or in different displays. In such implementations, activating a Hyper-Text link in the bulletin display (where the bulletin supports Hyper-Text link), could cause the information display to display more information about the bulletin.<br><br>These displays of the bulletins and information could be presented through the execution of World Wide Web browsers (such as Netscape Navigator available from Netscape Communications Corporation and Internet Explorer available from Microsoft Corporation), through the execution of other types of communications software, through the execution of other types of non-communications software, or through |

**Appendix B-19**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,974,451 (Simmons)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,974,451 (Simmons) |
|---|---|
| | dedicated hardware in the external computers. For example, a word processor could incorporate a display algorithm which allows it to display bulletins and information received while communicating with a network access system.<br><br>Col. 5, line 64 to col. 7, line 3.<br><br>Bulletin server 201 of the present invention provides control of the distribution of bulletins such as advertisements to external computers 202 or 203 connected to network access system 105. Bulletin server 201 may provide storage for a plurality of bulletins to be broadcast to the external computers. This storage may be implemented by any number of types of storage devices such as a computer disk drive, a tape drive, memory circuits, etc. Bulletin server 201 may also provide selection logic to determine whether or not to distribute bulletins and to determine which bulletins to distribute at any given time. This selection logic may be implemented through dedicated hardware or through software executing in general purpose hardware. Bulletin server 201 may further provide a user database from which the selection logic can retrieve information on the users accessing the network access system. This database may be implemented in any manner capable of reliably storing information regarding at least one characteristic of at least one user. Further, the database information may be stored in the same storage device in which the bulletins are stored or may alternatively be stored in a separate storage device. Bulletin server 201 may still further provide attachment logic for attaching bulletins to information being relayed by the network access system. Like the selection logic, the attachment logic may be implemented through dedicated hardware or through software executing in general purpose hardware.<br><br>Col. 8, lines 24–50.<br><br>As illustrated in one embodiment of the present invention shown in FIG. 4, the present invention adds the distribution of bulletins to this process of retrieving requested |

**Appendix B-19**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,974,451 (Simmons)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,974,451 (Simmons) |
|---|---|
| | information. Similarly to block 301 and test 302 (FIG. 3), block 401 and test 402 show that the process begins by an external computer requesting information from a remote information server and the network access system determining whether the requested information is in its proxy cache. If it is determined at test 402 that the information is in the proxy cache, the network access system retrieves the information from the proxy cache and stores it in the bulletin server's memory (block 403). If, however, it is determined at test 402 that the information is not in the proxy cache, the network access system relays the information request to the remote information server and the server replies with the requested information addressed to the external computer (blocks 404 and 405). Upon receiving the reply from the remote information server, the network access system intercepts and caches the reply in the bulletin server's memory (block 406).<br><br>Once the requested information is in the bulletin server's memory, the bulletin server then determines whether it is going to add a bulletin to the information requested at test 407. The determination of whether a bulletin is going to be attached to the requested information at test 407 may be based upon such factors as the content, format, or destination of the requested information, data known about the user receiving the requested information such as the user's address, age, gender, occupation, race, income, ethnicity, national origin, religion, education level, personal interests, etc., or predetermined factors such as the time since the last bulletin was attached or the number of times information has been relayed since the last bulletin was attached. For example, a bulletin could be attached to Web pages being relayed to the user's external computer every five minutes or every tenth page.<br><br>If at test 407 the bulletin server determines that it is not going to add a bulletin to the requested information, then the information is relayed to the external computer unmodified (block 410). Otherwise, a bulletin to be attached to the requested |

**Appendix B-19**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No.  5,974,451 (Simmons)**

| U.S. Patent No. 6,442,577 | U.S. Patent No.  5,974,451 (Simmons) |
|---|---|
|  | information is selected, the selected bulletin is attached to the requested information, and the attached bulletin and information are relayed to the external computer (blocks 408, 409, and 410).<br><br>Like determining whether a bulletin is going to be attached to requested information, bulletin selection in block 408 may be based upon such factors as the content, format, or destination of the requested information, data known about the user receiving the requested information such as the user's address, age, gender, occupation, race, income, ethnicity, national origin, religion, education level, personal interests, etc., or may be based upon a sequential selection of bulletins comprising one or more bulletin lists. For example, a bulletin relating to software development tools could be selected based upon the user's occupation as a computer programmer. As another example, bulletins from a list of local bulletins could be sequentially sent to each user living in a particular set of zip codes.<br><br>Col. 9, line 20 to col. 10, line 9. |

**Appendix B-19**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,974,451 (Simmons)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,974,451 (Simmons) |
|---|---|
|  |  |

**Appendix B-19**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,974,451 (Simmons)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,974,451 (Simmons) |
|---|---|
| | Figure 4.<br><br>Attachment of the bulletins to the requested information may be implemented in any of a number of approaches depending upon the form of the requested information. For example, with requested information being relayed in Hyper-Text Markup Language format, a bulletin could be attached to the requested information by creating a Hyper-Text link from the bulletin to the requested information, and by packaging the bulletin and the requested information so that the bulletin is displayed first and then the requested information is displayed after the user of the external computer activates the Hyper-Text link. Alternatively, the bulletins could be attached to the requested information by combining bitmaps of the bulletin and information, or by placing a text bulletin at the beginning or end of text information, as described above.<br><br>Col. 10, lines 10–24.<br><br>FIG. 6 illustrates an embodiment of a method of the present invention for receiving, separating, and handling, at an external computer, relayed information and bulletins that were sent by a network access system of the present invention. This method begins with the external computer waiting for information and/or bulletins to be received at the external computer at block 601. The external computer may receive relayed information only, relayed information and attached bulletins, null information and attached bulletins, or bulletins only (in embodiments of the invention where bulletins can be sent without attached information). Once information and/or bulletins are received at the external computer, the external computer determines whether a bulletin was received from the network access system at test 602. If it is determined that a bulletin was received from the network access system, the bulletin and information, if any, are separated at block 603. Once the bulletin has been isolated from any received information, the bulletin is sent to a bulletin display application for display at block 604. After the bulletin has been sent to the bulletin display application at block 604, or |

**Appendix B-19**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,974,451 (Simmons)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,974,451 (Simmons) |
|---|---|
| | it is determined at test 602 that a bulletin was not received from the network access system, the external computer determines at test 605 whether the information received at the external computer is null information. If the information is null information, the external computer loops back to block 601 to wait for more information and/or bulletins to be received from the network access system. Otherwise, if the information is not determined to be null information at test 605, the information is sent at block 606 to the application that requested the information. Once the information has been sent to the requesting application at block 606, the external computer loops back to block 601 to wait form more information and/or bulletins to be received from the network access system.<br><br>Col. 11, lines 5–38. |

**Appendix B-19**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,974,451 (Simmons)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,974,451 (Simmons) |
|---|---|
|  |  |

**Appendix B-19**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,974,451 (Simmons)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,974,451 (Simmons) |
|---|---|
| | Figure 6.<br><br>*See also* Figures 5a, 5b and associated text.<br><br>*See also* claim limitations [1b] and [1c].<br><br>To the extent it is found that Simmons does not disclose this feature expressly or inherently, it would have been obvious to combine Simmons with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 2* | |
| [2] The method of claim 1, wherein the first type network node is an ISP node, and the second type network node is an ICP node. | Simmons discloses that the first type network node is an ISP node, and the second type network node is an ICP node. For example, the external computer (first type network node) is connected to the Internet through the network access system, therefore it is an ISP node. The network access system (second type network node) provides customized web pages for an external computer, therefore it is an ICP node.<br><br>     This invention relates to network access systems. Network access systems are widely used to connect external computers to wide area computer networks, such as the Internet, through dedicated interfaces and dial-up connections. More particularly, this invention relates to network access systems which, in addition to connecting external computers to wide area computer networks, distribute bulletins, such as advertisements, to the external computers.<br><br>Col. 1, lines 13–20.<br><br>     In this way, the network access system of the present invention overcomes the aforementioned, as well as other, problems associated with the known technique of broadcasting bulletins from remote information servers. First, by distributing bulletins |

Appendix B-19

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No.  5,974,451 (Simmons)**

| U.S. Patent No. 6,442,577 | U.S. Patent No.  5,974,451 (Simmons) |
|---|---|
|  | from network access systems, advertisers can always distribute bulletins to users regardless of which remote information servers the users choose to connect to. Second, also for the reason that advertising is being distributed from the network access system rather than the remote information servers, advertisers do not have to determine which remote information servers contain the most popular newsgroups or World Wide Web pages to insure exposure to the targeted audience. Third, the network access system can always identify the users of the network access system with absolute certainty since the users are required to provide verifiable log-in information when initially accessing the network access system. Fourth, advertisers can restrict the distribution of bulletins to only those external computers within the geographical region surrounding the network access system. Fifth, advertisers, by paying advertising fees to the network access system provider, enable the users of external computers to receive free or discounted access to wide area computer networks similar to that realized in other advertising media such as television, radio, and newspaper.<br><br>Col. 4, lines 1–25.<br><br>The present invention provides a method and apparatus for distributing bulletins to external computers from network access systems connected to wide area computer networks. Known network access systems are used to connect external computers to wide area computer networks. These network access systems enable the external computers to communicate with remote information servers connected to the wide area computer networks by relaying messages between the external computers and the remote information servers. The present invention adds a bulletin delivery function to known network access systems. The bulletin delivery function operates by sending bulletins along with information being relayed by the network access systems from the remote information servers to the external computers. In addition to delivering bulletins with information being relayed by the network access systems, in preferred |

**Appendix B-19**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,974,451 (Simmons)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,974,451 (Simmons) |
|---|---|
| | embodiments of the present invention, the network access systems also determine whether bulletins are to be delivered and which bulletins are to be delivered to the external computers. <br><br> Col. 4, line 62 to col. 5, line 12. <br><br> FIG. 1 illustrates one embodiment of an architecture, of the type in which the present invention can be used, for connecting an external computer 103 to a wide area computer network 100 through a network access system 105. As shown, external computer 103 is connected to network access system 105 through a communication link 104, and network access system 105 is connected to a remote information server 101 through a network link 102. In this arrangement, external computer 103 can communicate with remote information server 101 through communication link 104, network access system 105, and network link 102. <br><br> In this architecture, a number of different types of devices can be used to implement each of external computer 103, communications link 104, network link 102, and remote information server 101. External computer 103 may be implemented by any device capable of communicating with a wide area computer network. For example, external computer 103 may be a desktop computer, a mainframe computer, a Unix workstation, a network router, or a network gateway. Communication link 104 may be implemented by any means of providing an interface between external computer 103 and network access system 105. For example, communication link 104 may be a dial-up connection, a dedicated network connection, a single network, a combination of networks, a cable modem, or a two-way wireless communication link. Similarly, network link 102 may be implemented by any means of providing an interface between network access system 105 and remote information server 101. For example, network link 102 may be a dedicated interface, a single network, a combination of networks, a cable modem, or a two-way wireless communication link. Remote information server 101 may be |

**Appendix B-19**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,974,451 (Simmons)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,974,451 (Simmons) |
|---|---|
| | implemented by any type of storage capable of providing information to external computer 103 upon request. For example, remote information server 101 may be a dedicated network server, a desktop computer, a mainframe computer, or a Unix workstation.<br><br>Col. 7, lines 6–42.<br><br><br><br>Figure 1. |

**Appendix B-19**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,974,451 (Simmons)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,974,451 (Simmons) |
|---|---|
| | In the architecture of FIG. 1, network access system 105 is preferably a network access system implemented in accordance with the present invention. One embodiment of such a network access system is shown in FIG. 2. As illustrated, network access system 105 comprises a dial-up unit 204, an authentication system 205, a bulletin server 201, a proxy cache 206, a firewall 207, and a router 208. Dial-up unit 204 communicates with any portion of communication link 104 that comprises a dial-up connection between network access system 105 and one or more dial-up external computers 203. Dial-up unit 204 may include encryption, decryption, call-back, error checking, and data compression functions. Dial-up external computers 203 comprise external computers 103 (FIG. 1) which access the network access system through a dial-up connection. Additionally or alternatively, external computers 103 may also be connected to network access system 105 in the form of one or more networked external computers 202. Networked external computers 202 differ from dial-up external computers 203 in the regard that the networked computers connect directly to authentication system 205, bulletin server 201, proxy cache 206, and firewall 207 without having to connect through dial-up unit 204.<br><br>Col. 7, lines 43–65. |

**Appendix B-19**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,974,451 (Simmons)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,974,451 (Simmons) |
|---|---|
|  | <br><br>Figure 2.<br><br>*See also* claim limitation [1a].<br><br>To the extent it is found that Simmons does not disclose this feature expressly or inherently, it would have been obvious to combine Simmons with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |

- 78 -

Appendix B-19

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,974,451 (Simmons)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,974,451 (Simmons) |
|---|---|
| *Claim 3* | |
| [3] The method of claim 1, wherein the first type network node is an organization node, and the second type network node is an ICP node. | Simmons discloses that the first type network node is an organization node, and the second type network node is an ICP node. For example, the external computer (first type network node) is connected to the Internet through the network access system, which is an organization, therefore it is an organization node. The network access system (second type network node) provides customized web pages for an external computer, therefore it is an ICP node.

*See* claim limitation [2].

To the extent it is found that Simmons does not disclose this feature expressly or inherently, it would have been obvious to combine Simmons with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 4* | |
| [4] The method of claim 1, wherein the customized page file includes customized graphics, sounds, applets, links, and text. | Simmons discloses that the customized page file includes cust customized graphics, sounds, applets, links, and text. For example, a bulletin can be a bitmap and/or text file, and include a hypertext link.

In other embodiments of the present invention, a bulletin may be sent as separate data along with a piece of information passing through the network access system rather than attaching the bulletin directly to the information. for example, where information is being sent as a bitmap or text file, a bulletin could be sent as an additional bitmap, text, or other type of file.

Finally, once the bulletin server has selected and attached (if necessary) a bulletin to the requested information, the bulletin and information are delivered to the external computer. Upon receipt of the bulletin and information by the external computer, the external computer may display each of the bulletin and the information as part of the same image or as separate images. For example, the bulletin and the information could be displayed as part of the same image by displaying the information as a World Wide |

**Appendix B-19**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,974,451 (Simmons)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,974,451 (Simmons) |
|---|---|
| | Web page and displaying the bulletin within a reserved space within that page, assuming that a clear area exists within the image. As another example, the bulletin and the information may be displayed as part of separate images by first displaying the bulletin, and then displaying the requested information after the user has responded to the displayed bulletin or a predetermined time period has passed. Such an approach could be implemented as a set of World Wide Web pages wherein a bulletin page is first displayed which shows the selected bulletin, and then an information page is shown after the user has activated a Hyper-Text link within the bulletin page. As still another example, the bulletin and the information may be displayed as part of separate images by first displaying the requested information, and then displaying the bulletin after the user has responded to the displayed information or a predetermined time period has passed. Such an approach could be implemented as a set of World Wide Web pages wherein an information page is first displayed which shows the requested information, and then a bulletin page is shown after the user has activated a Hyper-Text link within the information page. As yet another example, the bulletin and the information may be displayed as part of separate images by displaying the bulletin and the requested information in separate windows within the same display or in different displays. In such implementations, activating a Hyper-Text link in the bulletin display (where the bulletin supports Hyper-Text link), could cause the information display to display more information about the bulletin.<br><br>Col. 6, lines 15–58.<br><br>Attachment of the bulletins to the requested information may be implemented in any of a number of approaches depending upon the form of the requested information. For example, with requested information being relayed in Hyper-Text Markup Language format, a bulletin could be attached to the requested information by creating a Hyper-Text link from the bulletin to the requested information, and by packaging the bulletin |

Appendix B-19

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,974,451 (Simmons)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,974,451 (Simmons) |
|---|---|
| | and the requested information so that the bulletin is displayed first and then the requested information is displayed after the user of the external computer activates the Hyper-Text link. Alternatively, the bulletins could be attached to the requested information by combining bitmaps of the bulletin and information, or by placing a text bulletin at the beginning or end of text information, as described above.<br><br>Col. 10, lines 10–24.<br><br>*See also* claim limitation [1b].<br><br>To the extent it is found that Simmons does not disclose this feature expressly or inherently, it would have been obvious to combine Simmons with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 5* | |
| [5] The method of claim 1, wherein the customized page file includes customized advertisements. | Simmons discloses that the customized page file includes customized advertisements.<br><br>A network access system is provided for distributing bulletins, such as advertisements, to external computers accessing a wide area computer network. The network access system of the present invention connects the external computers to the wide area computer network, and sends bulletins with information being transmitted from remote information servers within the wide area computer network to the external computers. A bulletin server within the network access system stores a plurality of bulletins to be transmitted to the external computers, determines whether to send a bulletin with the information being transmitted, determines what bulletins to transmit to the external computers, and sends the bulletins with the information being transmitted from the remote information servers to the external computers. Upon receipt of a bulletin, the external computers may display the bulletins as part of the received information, may display the bulletins before allowing the user to view the received information, or may |

**Appendix B-19**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,974,451 (Simmons)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,974,451 (Simmons) |
|---|---|
| | display the bulletins as part of a separate window.<br><br>Abstract.<br><br>This invention relates to network access systems. Network access systems are widely used to connect external computers to wide area computer networks, such as the Internet, through dedicated interfaces and dial-up connections. More particularly, this invention relates to network access systems which, in addition to connecting external computers to wide area computer networks, distribute bulletins, such as advertisements, to the external computers.<br><br>In recent years, wide area computer networks such as the Internet have experienced an explosion in popularity. Not surprisingly, with this popularity, there has been a concentrated effort by businesses to use these networks to promote business and improve revenues. One example of where this effort can be clearly seen is the posting of advertisements by businesses in newsgroups and in World Wide Web pages.<br><br>In known systems, these advertisements are broadcast to external computers by individual remote information servers located throughout a wide area computer network. When an external computer connects to a remote information server and accesses a newsgroup or Web page comprising an advertisement, the advertisement is broadcast from the remote information server through the network and the network access system to the external computer. In many instances, these remote information servers will broadcast the same information and advertisements to external computers regardless of the geographic location of the network access systems through which the external computers are gaining access to the network. For example, an external computer accessing a World Wide Web site in New Jersey through a network access system in New York will receive an identical advertisement to that received by an external computer accessing the same site through a network access system in |

**Appendix B-19**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,974,451 (Simmons)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,974,451 (Simmons) |
|---|---|
| | Australia. |
| | Col. 1, lines 12–45. |
| | Sending an advertisement from a remote information server in a wide area computer network, however, may be inefficient or ineffective in at least five respects. First, the advertisement only reaches its intended audience if members of that audience access the remote information server on which the advertisement is stored. |
| | Second, the advertiser must continually identify and advertise on the servers containing the most popular newsgroups and Web pages of the targeted audience to keep up with their interests. |
| | Third, remote information servers have a limited ability to accurately identify the users accessing the remote information servers because many known network access systems dynamically allocate different IP addresses to the same external computers and because many users give inconsistent, or even false, responses to log-in information requests. |
| | Fourth, advertising on remote information servers that serve all of the users of a wide area computer network forces advertisers to advertise at the global level of the wide area computer network rather than at a local or regional level within that network. |
| | Fifth, because advertising revenues are not being received by the providers of access to the network, advertisers are unable to offset the costs to the users associated with accessing the wide area computer network and thereby increase the number of users viewing their advertisements as is done in other advertising media such as television, radio, and newspaper. |
| | In view of the foregoing, it would be desirable to provide a network access system that |

**Appendix B-19**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,974,451 (Simmons)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,974,451 (Simmons) |
|---|---|
| | can effectively deliver bulletins to users of external computers while connecting them to wide area computer networks.<br><br>Col. 2, lines 30–63.<br><br>It would be even further desirable to provide a network access system that allows advertisers to advertise at a local or regional level within a wide area computer network rather than requiring the advertisers to advertise at the global level of the network.<br><br>It would be still further desirable to provide a network access system that allows advertisers to offset the costs associated with accessing wide area computer networks, and thereby increase the number of users viewing their advertisements, as is done in other advertising media such as television, radio, and newspaper.<br><br>Col. 3, lines 5–15.<br><br>It is a further object of the invention to provide a network access system that allows advertisers to advertise at a local or regional level within a wide area computer network rather than requiring the advertisers to advertise at the global level of the network.<br><br>It is a still further object of the invention to provide a network access system that allows advertisers to offset the costs associated with accessing wide area computer networks, and thereby increase the number of users viewing their advertisements, as is done in other advertising media such as television, radio, and newspaper.<br><br>Col. 3, lines 31–46.<br><br>In this way, the network access system of the present invention overcomes the aforementioned, as well as other, problems associated with the known technique of |

**Appendix B-19**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,974,451 (Simmons)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,974,451 (Simmons) |
|---|---|
| | broadcasting bulletins from remote information servers. First, by distributing bulletins from network access systems, advertisers can always distribute bulletins to users regardless of which remote information servers the users choose to connect to. Second, also for the reason that advertising is being distributed from the network access system rather than the remote information servers, advertisers do not have to determine which remote information servers contain the most popular newsgroups or World Wide Web pages to insure exposure to the targeted audience. Third, the network access system can always identify the users of the network access system with absolute certainty since the users are required to provide verifiable log-in information when initially accessing the network access system. Fourth, advertisers can restrict the distribution of bulletins to only those external computers within the geographical region surrounding the network access system. Fifth, advertisers, by paying advertising fees to the network access system provider, enable the users of external computers to receive free or discounted access to wide area computer networks similar to that realized in other advertising media such as television, radio, and newspaper.<br><br>Col. 4, lines 1–25.<br><br>Bulletin server 201 of the present invention provides control of the distribution of bulletins such as advertisements to external computers 202 or 203 connected to network access system 105. Bulletin server 201 may provide storage for a plurality of bulletins to be broadcast to the external computers. This storage may be implemented by any number of types of storage devices such as a computer disk drive, a tape drive, memory circuits, etc. Bulletin server 201 may also provide selection logic to determine whether or not to distribute bulletins and to determine which bulletins to distribute at any given time. This selection logic may be implemented through dedicated hardware or through software executing in general purpose hardware. Bulletin server 201 may further provide a user database from which the selection logic can retrieve information on the |

**Appendix B-19**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,974,451 (Simmons)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,974,451 (Simmons) |
|---|---|
| | users accessing the network access system. This database may be implemented in any manner capable of reliably storing information regarding at least one characteristic of at least one user. Further, the database information may be stored in the same storage device in which the bulletins are stored or may alternatively be stored in a separate storage device. Bulletin server 201 may still further provide attachment logic for attaching bulletins to information being relayed by the network access system. Like the selection logic, the attachment logic may be implemented through dedicated hardware or through software executing in general purpose hardware.

Col. 8, lines 24–50.

*See also* claim limitation [1b].

To the extent it is found that Simmons does not disclose this feature expressly or inherently, it would have been obvious to combine Simmons with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 6* | |
| [6a] The method of claim 1, wherein: the service request includes an IP address for identifying the first type network node, and | Simmons discloses that the service request includes an IP address for identifying the first type network node. For example, the user of the external computer (first type network node) sends a service request to request information from the network access system. The service request is an HTTP request, which includes an IP address that identifies the external computer (first type network node).

*See* claim limitation [1d].

To the extent it is found that Simmons does not disclose this feature expressly or inherently, it would have been obvious to combine Simmons with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |

Appendix B-19

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,974,451 (Simmons)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,974,451 (Simmons) |
|---|---|
| [6b] identifying the first type network node based on the service request comprises using the IP address included in the service request to identify the first type network node. | Simmons discloses that identifying the first type network node based on the service request comprises using the IP address included in the service request to identify the first type network node. For example, the network access system receives the HTTP service request from the external computer (first type network node) and uses the service request to identify the first type network node. Since the IP address uniquely identifies the external computer (first type network node), the network access system uses the IP address within the HTTP request to identify the first type network node.<br><br>*See* claim limitation [1e].<br><br>To the extent it is found that Simmons does not disclose this feature expressly or inherently, it would have been obvious to combine Simmons with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 7* | |
| [7a] A method for providing web page customization service to a plurality of first type network nodes at a second type network node, comprising the steps of: | Simmons discloses a method for providing web page customization service to a plurality of first type network nodes at a second type network node.<br><br>To the extent it is found that Simmons does not disclose this feature expressly or inherently, it would have been obvious to combine Simmons with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1a]. |
| [7b] forming at least a page file for each of the first type network nodes; | Simmons discloses forming at least a page file for each of the first type network nodes.<br><br>To the extent it is found that Simmons does not disclose this feature expressly or inherently, it would have been obvious to combine Simmons with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |

- 87 -

**Appendix B-19**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,974,451 (Simmons)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,974,451 (Simmons) |
|---|---|
| | *See* claim limitation [1b]. |
| [7c] forming at least a page file for the second type network node; | Simmons discloses forming at least a page file for the second type network node.<br><br>To the extent it is found that Simmons does not disclose this feature expressly or inherently, it would have been obvious to combine Simmons with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1c]. |
| [7d] receiving a service request from one of the first type network nodes; | Simmons discloses receiving a service request from one of the first type network nodes.<br><br>To the extent it is found that Simmons does not disclose this feature expressly or inherently, it would have been obvious to combine Simmons with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1d]. |
| [7e] determining whether the first type network node participates in the web page customization service; | Simmons discloses determining whether the first type network node participates in the web page customization service.<br><br>To the extent it is found that Simmons does not disclose this feature expressly or inherently, it would have been obvious to combine Simmons with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1e]. |
| [7f] if the first type network node participates in the web | Simmons discloses, if the first type network node participates in the web page customization service, forming a customized page file for the service request by including the page file formed for the first |

Appendix B-19

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,974,451 (Simmons)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,974,451 (Simmons) |
|---|---|
| page customization service, forming a customized page file for the service request by including the page file formed for the first type network node within the page file formed for the second type network node; and | type network node within the page file formed for the second type network node.<br><br>To the extent it is found that Simmons does not disclose this feature expressly or inherently, it would have been obvious to combine Simmons with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1f]. |
| [7g] if the first type network node does not participate in the web page customization service, forming a page file for the service request by using the page file formed for the second type network node. | Simmons discloses, if the first type network node does not participate in the web page customization service, forming a page file for the service request by using the page file formed for the second type network node.  For example, the network access system can determine that no bulletin is to be attached to the information requested by the external computer.  Moreover, if the second type network node fails to identify the first type network node, the second type network node will only form a page file for the service request by using the page file formed for the second type network node.<br><br>The bulletin distribution capability of the network access system of the present invention is provided by a bulletin server incorporated into the network access system. The bulletin server distributes bulletins by sending bulletins with information being relayed by the network access system to one or more external computers. More particularly, when information is received at the network access system from a remote information server, the bulletin server first determines whether a bulletin is to be sent with the received information. If so, the bulletin server then selects an appropriate bulletin to send with the received information. Once a bulletin has been selected, the network access system then sends the attached bulletin and information on to the user's external computer. Bulletins may be sent with the received information by attaching the bulletins to the information and sending the bulletins and information together, or by sending the bulletins and information separately, for example. If, however, it is |

**Appendix B-19**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No.  5,974,451 (Simmons)**

| U.S. Patent No. 6,442,577 | U.S. Patent No.  5,974,451 (Simmons) |
|---|---|
| | determined that a bulletin is not to be sent with the received information, then the received information is forwarded to the external computer unaccompanied by a bulletin.<br><br>Col. 3, lines 47–67.<br><br>The present invention provides a method and apparatus for distributing bulletins to external computers from network access systems connected to wide area computer networks. Known network access systems are used to connect external computers to wide area computer networks. These network access systems enable the external computers to communicate with remote information servers connected to the wide area computer networks by relaying messages between the external computers and the remote information servers. The present invention adds a bulletin delivery function to known network access systems. The bulletin delivery function operates by sending bulletins along with information being relayed by the network access systems from the remote information servers to the external computers. In addition to delivering bulletins with information being relayed by the network access systems, in preferred embodiments of the present invention, the network access systems also determine whether bulletins are to be delivered and which bulletins are to be delivered to the external computers.<br><br>In one embodiment of the present invention, the bulletin delivery function is implemented by a bulletin server incorporated into a network access system. The bulletin server operates by monitoring information being relayed to external computers, by determining whether a bulletin is to be sent with each piece of information being relayed, and, when required, by selecting a bulletin to be sent with, and by attaching (if necessary) the selected bulletin to, the piece of information being relayed by the network access system. Once the bulletin server has determined that no bulletin is to be sent with the piece of information being relayed by the network access system, or the |

**Appendix B-19**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,974,451 (Simmons)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,974,451 (Simmons) |
|---|---|
| | bulletin server has selected and attached (if necessary) a bulletin to the piece of information being relayed by the network access system, the network access system then delivers the information and the bulletin (if to be sent) from the remote information server to the external computer.<br><br>The bulletin server monitors information being relayed by the network access system to the external computer to determine the content, format, and destination of each piece of information passing through the network access system. The bulletin server may then use this content, format, and destination data, as well as other data stored in the bulletin server (e.g., user's address, age, gender, occupation, race, income, ethnicity, national origin, religion, education level, personal interests, etc., or users' profile data), to determine whether a bulletin is to be sent with any of the pieces of information. For example, the bulletin server may be configured to send bulletins with pieces of information destined for a first set of users and not send bulletins with pieces of information destined for a second set of users. In such a configuration, only those pieces of information destined for the first set of users would be determined as being accompanied by a bulletin.<br><br>When the bulletin server determines that no bulletin is to be sent with a piece of information passing through the network access system, the information is passed to the external computer without addition. If, however, the bulletin server determines that a bulletin is to be sent with a piece of information passing through the network access system, the bulletin server then selects a bulletin to be sent. Once again, the bulletin server looks at data such as the content, format, and destination of the piece of information and other data stored in the bulletin server (e.g., user's address, age, gender, occupation, race, income, ethnicity, national origin, religion, education level, personal interests, etc., or user's profile data) to determine which bulletin to select. For example, when a piece of information is destined for a particular user whose profile reveals that |

**Appendix B-19**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,974,451 (Simmons)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,974,451 (Simmons) |
|---|---|
| | the user likes sports, sports related bulletins may be selected to be delivered to the user.<br><br>Col. 4, line 62 to col. 5, line 63.<br><br>Bulletin server 201 of the present invention provides control of the distribution of bulletins such as advertisements to external computers 202 or 203 connected to network access system 105. Bulletin server 201 may provide storage for a plurality of bulletins to be broadcast to the external computers. This storage may be implemented by any number of types of storage devices such as a computer disk drive, a tape drive, memory circuits, etc. Bulletin server 201 may also provide selection logic to determine whether or not to distribute bulletins and to determine which bulletins to distribute at any given time. This selection logic may be implemented through dedicated hardware or through software executing in general purpose hardware. Bulletin server 201 may further provide a user database from which the selection logic can retrieve information on the users accessing the network access system. This database may be implemented in any manner capable of reliably storing information regarding at least one characteristic of at least one user. Further, the database information may be stored in the same storage device in which the bulletins are stored or may alternatively be stored in a separate storage device. Bulletin server 201 may still further provide attachment logic for attaching bulletins to information being relayed by the network access system. Like the selection logic, the attachment logic may be implemented through dedicated hardware or through software executing in general purpose hardware.<br><br>Col. 8, lines 24–50.<br><br>If at test 407 the bulletin server determines that it is not going to add a bulletin to the requested information, then the information is relayed to the external computer unmodified (block 410). Otherwise, a bulletin to be attached to the requested information is selected, the selected bulletin is attached to the requested information, |

**Appendix B-19**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,974,451 (Simmons)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,974,451 (Simmons) |
|---|---|
|  | and the attached bulletin and information are relayed to the external computer (blocks 408, 409, and 410).<br><br>Col. 9, lines 55–62.<br><br>*See also* claim limitation [1f].<br><br>To the extent it is found that Simmons does not disclose this feature expressly or inherently, it would have been obvious to combine Simmons with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 8* |  |
| [8] The method of claim 7, wherein the first type network nodes are ISP nodes, and the second type network node is an ICP node. | Simmons discloses that the first type network nodes are ISP nodes, and the second type network node is an ICP node.<br><br>To the extent it is found that Simmons does not disclose this feature expressly or inherently, it would have been obvious to combine Simmons with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [2]. |
| *Claim 9* |  |
| [9] The method of claim 7, wherein the first type network nodes are organization nodes, and the second type network node is an ICP node. | Simmons discloses that the first type network nodes are organization nodes, and the second type network node is an ICP node.<br><br>To the extent it is found that Simmons does not disclose this feature expressly or inherently, it would have been obvious to combine Simmons with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |

**Appendix B-19**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,974,451 (Simmons)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,974,451 (Simmons) |
|---|---|
| | *See* claim limitation [3]. |
| *Claim 10* | |
| [10] The method of claim 7, wherein the customized page file includes customized graphics, sounds, applets, links, and text. | Simmons discloses that the customized page file includes cust customized graphics, sounds, applets, links, and text.<br><br>To the extent it is found that Simmons does not disclose this feature expressly or inherently, it would have been obvious to combine Simmons with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [4]. |
| *Claim 11* | |
| [11] The method of claim 7, wherein the customized page file includes customized advertisements. | Simmons discloses that the customized page file includes customized advertisements.<br><br>To the extent it is found that Simmons does not disclose this feature expressly or inherently, it would have been obvious to combine Simmons with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [5]. |
| *Claim 12* | |
| [12a] The method of claim 7, wherein: the service request from one of the first type network nodes includes an IP address for identifying the first type network node, and | Simmons discloses that the service request from one of the first type network nodes includes an IP address for identifying the first type network node.<br><br>To the extent it is found that Simmons does not disclose this feature expressly or inherently, it would have been obvious to combine Simmons with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |

**Appendix B-19**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,974,451 (Simmons)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,974,451 (Simmons) |
|---|---|
| | *See* claim limitation [6a]. |
| [12b] determining whether the first type network node participates in the web page customization service comprises using the IPI address included in the service request to identify the first type network node. | Simmons discloses that determining whether the first type network node participates in the web page customization service comprises using the IPI address included in the service request to identify the first type network node.<br><br>To the extent it is found that Simmons does not disclose this feature expressly or inherently, it would have been obvious to combine Simmons with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [6b]. |
| *Claim 13* | |
| [13a] A method for providing web page customization service to a plurality of first type network nodes at a second type network node, comprising the steps of: | Simmons discloses a method for providing web page customization service to a plurality of first type network nodes at a second type network node.<br><br>To the extent it is found that Simmons does not disclose this feature expressly or inherently, it would have been obvious to combine Simmons with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1a]. |
| [13b] forming a plurality of advertisements for the first type network nodes; | Simmons discloses forming a plurality of advertisements for the first type network nodes.<br><br>To the extent it is found that Simmons does not disclose this feature expressly or inherently, it would have been obvious to combine Simmons with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |

**Appendix B-19**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,974,451 (Simmons)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,974,451 (Simmons) |
|---|---|
| | *See* claim limitations [1b] and [5]. |
| [13c] forming at least a page file for the second type network node; | Simmons discloses forming at least a page file for the second type network node.<br><br>To the extent it is found that Simmons does not disclose this feature expressly or inherently, it would have been obvious to combine Simmons with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1c]. |
| [13d] receiving a service request from one of the first type network nodes; | Simmons discloses receiving a service request from one of the first type network nodes.<br><br>To the extent it is found that Simmons does not disclose this feature expressly or inherently, it would have been obvious to combine Simmons with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1d]. |
| [13e] identifying advertisements for the first type network node; and | Simmons discloses identifying advertisements for the first type network node.<br><br>To the extent it is found that Simmons does not disclose this feature expressly or inherently, it would have been obvious to combine Simmons with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitations [1e] and [5]. |
| [13f] forming a customized page file for the first type network node by including | Simmons discloses forming a customized page file for the first type network node by including the identified advertisements within the page file formed for the second type network node. |

Appendix B-19

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,974,451 (Simmons)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,974,451 (Simmons) |
|---|---|
| the identified advertisements within the page file formed for the second type network node. | To the extent it is found that Simmons does not disclose this feature expressly or inherently, it would have been obvious to combine Simmons with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1f]. |
| *Claim 14* | |
| [14] The method of claim 13, wherein the first type network nodes are ISP nodes, and the second type network node is an ICP node. | Simmons discloses that the first type network nodes are ISP nodes, and the second type network node is an ICP node.<br><br>To the extent it is found that Simmons does not disclose this feature expressly or inherently, it would have been obvious to combine Simmons with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [2]. |
| *Claim 15* | |
| [15] The method of claim 13, wherein the first type network nodes are organization nodes, and the second type network node is an ICP node. | Simmons discloses that the first type network nodes are organization nodes, and the second type network node is an ICP node.<br><br>To the extent it is found that Simmons does not disclose this feature expressly or inherently, it would have been obvious to combine Simmons with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [3]. |
| *Claim 16* | |
| [16] The method of claim 13, wherein the identified | Simmons discloses that the identified advertisements do not cause negative impact on the owner of the |

**Appendix B-19**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,974,451 (Simmons)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,974,451 (Simmons) |
|---|---|
| advertisements do not cause negative impact on the owner of the first type network node. | first type network node.<br><br>In this way, the network access system of the present invention overcomes the aforementioned, as well as other, problems associated with the known technique of broadcasting bulletins from remote information servers. First, by distributing bulletins from network access systems, advertisers can always distribute bulletins to users regardless of which remote information servers the users choose to connect to. Second, also for the reason that advertising is being distributed from the network access system rather than the remote information servers, advertisers do not have to determine which remote information servers contain the most popular newsgroups or World Wide Web pages to insure exposure to the targeted audience. Third, the network access system can always identify the users of the network access system with absolute certainty since the users are required to provide verifiable log-in information when initially accessing the network access system. Fourth, advertisers can restrict the distribution of bulletins to only those external computers within the geographical region surrounding the network access system. Fifth, advertisers, by paying advertising fees to the network access system provider, enable the users of external computers to receive free or discounted access to wide area computer networks similar to that realized in other advertising media such as television, radio, and newspaper.<br><br>Col. 4, lines 1–25.<br><br>*See also* claim limitation [5].<br><br>To the extent it is found that Simmons does not disclose this feature expressly or inherently, it would have been obvious to combine Simmons with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 17* | |

Appendix B-19

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,974,451 (Simmons)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,974,451 (Simmons) |
|---|---|
| [17a] An apparatus for dynamically forming a customized web page for a first type network node at a second type network node, comprising: | Simmons discloses an apparatus for dynamically forming a customized web page for a first type network node at a second type network node.<br><br>To the extent it is found that Simmons does not disclose this feature expressly or inherently, it would have been obvious to combine Simmons with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1a]. |
| [17b] means for forming at least a page file for the first type network node; | Simmons discloses means for forming at least a page file for the first type network node.<br><br>To the extent it is found that Simmons does not disclose this feature expressly or inherently, it would have been obvious to combine Simmons with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1b]. |
| [17c] means for forming at least a page file for the second type network node; | Simmons discloses means for forming at least a page file for the second type network node.<br><br>To the extent it is found that Simmons does not disclose this feature expressly or inherently, it would have been obvious to combine Simmons with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1c]. |
| [17d] means for receiving a service request from the first type network node; | Simmons discloses means for receiving a service request from the first type network node.<br><br>To the extent it is found that Simmons does not disclose this feature expressly or inherently, it would have been obvious to combine Simmons with the knowledge of a person of ordinary skill and/or other |

**Appendix B-19**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,974,451 (Simmons)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,974,451 (Simmons) |
|---|---|
| | prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1d]. |
| [17e] means for identifying the first type network node based on the service request; and | Simmons discloses means for identifying the first type network node based on the service request.<br><br>To the extent it is found that Simmons does not disclose this feature expressly or inherently, it would have been obvious to combine Simmons with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1e]. |
| [17f] means for forming a customized page file formed for the first type network node by including the page file formed for the first type network node within the page file for the second type network node. | Simmons discloses means for forming a customized page file formed for the first type network node by including the page file formed for the first type network node within the page file for the second type network node.<br><br>To the extent it is found that Simmons does not disclose this feature expressly or inherently, it would have been obvious to combine Simmons with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1f]. |
| *Claim 18* | |
| [18] The apparatus of claim 17, wherein the first type network node is an ISP node, and the second type network node is an ICP node. | Simmons discloses that the first type network node is an ISP node, and the second type network node is an ICP node.<br><br>To the extent it is found that Simmons does not disclose this feature expressly or inherently, it would have been obvious to combine Simmons with the knowledge of a person of ordinary skill and/or other |

Appendix B-19

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,974,451 (Simmons)**

| U.S. Patent No. 6,442,577 | U.S. Patent No.  5,974,451 (Simmons) |
|---|---|
| | prior art references to obtain the claimed subject matter.  *See* Appendix C.<br><br>*See* claim limitation [2]. |
| *Claim 19* | |
| [19] The apparatus of claim 17, wherein the first type network node is an organization node, and the second type network node is an ICP node. | Simmons discloses that the first type network node is an organization node, and the second type network node is an ICP node.<br><br>To the extent it is found that Simmons does not disclose this feature expressly or inherently, it would have been obvious to combine Simmons with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter.  *See* Appendix C.<br><br>*See* claim limitation [3]. |
| *Claim 20* | |
| [20] The apparatus of claim 17, wherein the customized page file includes customized graphics, sounds, applets, links, and text. | Simmons discloses that the customized page file includes cust customized graphics, sounds, applets, links, and text.<br><br>To the extent it is found that Simmons does not disclose this feature expressly or inherently, it would have been obvious to combine Simmons with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter.  *See* Appendix C.<br><br>*See* claim limitation [4]. |
| *Claim 21* | |
| [21] The apparatus of claim 17, wherein the customized page file includes customized | Simmons discloses that the customized page file includes customized advertisements.<br><br>To the extent it is found that Simmons does not disclose this feature expressly or inherently, it would have been obvious to combine Simmons with the knowledge of a person of ordinary skill and/or other |

**Appendix B-19**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,974,451 (Simmons)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,974,451 (Simmons) |
|---|---|
| advertisements. | prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [5]. |
| *Claim 22* | |
| [22a] An apparatus for providing web page customization service to a plurality of first type network nodes at a second type network node, comprising: | Simmons discloses an apparatus for providing web page customization service to a plurality of first type network nodes at a second type network node.<br><br>To the extent it is found that Simmons does not disclose this feature expressly or inherently, it would have been obvious to combine Simmons with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [7a]. |
| [22b] means for forming at least a page file for each of the first type network nodes; | Simmons discloses means for forming at least a page file for each of the first type network nodes.<br><br>To the extent it is found that Simmons does not disclose this feature expressly or inherently, it would have been obvious to combine Simmons with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [7b]. |
| [22c] means for forming at least a page file for the second type network node; | Simmons discloses means for forming at least a page file for the second type network node.<br><br>To the extent it is found that Simmons does not disclose this feature expressly or inherently, it would have been obvious to combine Simmons with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |

**Appendix B-19**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,974,451 (Simmons)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,974,451 (Simmons) |
|---|---|
| | *See* claim limitation [7c]. |
| [22d] means for receiving a service request from one of the first type network nodes; | Simmons discloses means for receiving a service request from one of the first type network nodes.<br><br>To the extent it is found that Simmons does not disclose this feature expressly or inherently, it would have been obvious to combine Simmons with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [7d]. |
| [22e] means for determining whether the first type network node participates in the web page customization service; | Simmons discloses means for determining whether the first type network node participates in the web page customization service.<br><br>To the extent it is found that Simmons does not disclose this feature expressly or inherently, it would have been obvious to combine Simmons with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [7e]. |
| [22f] means for forming a customized page file for the service request by including the page file formed for the first type network node within the page file formed for the second type network node, if the first type network node participates in the web page customization service; | Simmons discloses means for forming a customized page file for the service request by including the page file formed for the first type network node within the page file formed for the second type network node, if the first type network node participates in the web page customization service.<br><br>To the extent it is found that Simmons does not disclose this feature expressly or inherently, it would have been obvious to combine Simmons with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [7f]. |

- 103 -

Appendix B-19

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,974,451 (Simmons)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,974,451 (Simmons) |
|---|---|
| and | |
| [22g] means for forming a page file for the service request by using the page file formed for the second type network node, if the first type network node does not participate in the web page customization service. | Simmons discloses means for forming a page file for the service request by using the page file formed for the second type network node, if the first type network node does not participate in the web page customization service.<br><br>To the extent it is found that Simmons does not disclose this feature expressly or inherently, it would have been obvious to combine Simmons with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [7g]. |
| *Claim 23* | |
| [23] The apparatus of claim 22, wherein the first type network nodes are ISP nodes, and the second type network node is an ICP node. | Simmons discloses that the first type network nodes are ISP nodes, and the second type network node is an ICP node.<br><br>To the extent it is found that Simmons does not disclose this feature expressly or inherently, it would have been obvious to combine Simmons with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [8]. |
| *Claim 24* | |
| [24] The apparatus of claim 22, wherein the first type network nodes are organization nodes, and the second type network node is | Simmons discloses that the first type network nodes are organization nodes, and the second type network node is an ICP node.<br><br>To the extent it is found that Simmons does not disclose this feature expressly or inherently, it would have been obvious to combine Simmons with the knowledge of a person of ordinary skill and/or other |

Appendix B-19

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,974,451 (Simmons)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,974,451 (Simmons) |
|---|---|
| an ICP node. | prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [9]. |
| *Claim 25* | |
| [25] The apparatus of claim 22, wherein the customized page file includes customized graphics, sounds, applets, links, and text. | Simmons discloses that the customized page file includes cust customized graphics, sounds, applets, links, and text.<br><br>To the extent it is found that Simmons does not disclose this feature expressly or inherently, it would have been obvious to combine Simmons with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [10]. |
| *Claim 26* | |
| [26] The apparatus of claim 25, wherein the customized page file includes customized advertisements. | Simmons discloses that the customized page file includes customized advertisements.<br><br>To the extent it is found that Simmons does not disclose this feature expressly or inherently, it would have been obvious to combine Simmons with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [11]. |
| *Claim 27* | |
| [27a] An apparatus for providing web page customization service to a plurality of first type network nodes at a second type | Simmons discloses an apparatus for providing web page customization service to a plurality of first type network nodes at a second type network node.<br><br>To the extent it is found that Simmons does not disclose this feature expressly or inherently, it would have been obvious to combine Simmons with the knowledge of a person of ordinary skill and/or other |

**Appendix B-19**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,974,451 (Simmons)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,974,451 (Simmons) |
|---|---|
| network node, comprising: | prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [13a]. |
| [27b] means for forming a plurality of advertisements for the first type network nodes; | Simmons discloses means for forming a plurality of advertisements for the first type network nodes.<br><br>To the extent it is found that Simmons does not disclose this feature expressly or inherently, it would have been obvious to combine Simmons with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [13b]. |
| [27c] means for forming at least a page file for the second type network node; | Simmons discloses means for forming at least a page file for the second type network node.<br><br>To the extent it is found that Simmons does not disclose this feature expressly or inherently, it would have been obvious to combine Simmons with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [13c]. |
| [27d] means for receiving a service request from one of the first type network nodes; | Simmons discloses means for receiving a service request from one of the first type network nodes.<br><br>To the extent it is found that Simmons does not disclose this feature expressly or inherently, it would have been obvious to combine Simmons with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [13d]. |

Appendix B-19

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,974,451 (Simmons)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,974,451 (Simmons) |
|---|---|
| [27e] means for identifying advertisements for the first type network node; and | Simmons discloses means for identifying advertisements for the first type network node.<br><br>To the extent it is found that Simmons does not disclose this feature expressly or inherently, it would have been obvious to combine Simmons with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [13e]. |
| [27f] means for forming a customized page file for the first type network node by including the identified advertisements within the page file formed for the second type network node. | Simmons discloses means for forming a customized page file for the first type network node by including the identified advertisements within the page file formed for the second type network node.<br><br>To the extent it is found that Simmons does not disclose this feature expressly or inherently, it would have been obvious to combine Simmons with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [13f]. |
| *Claim 28* | |
| [28] The apparatus of claim 27, wherein the first type network nodes are ISP nodes, and the second type network node is an ICP node. | Simmons discloses that the first type network nodes are ISP nodes, and the second type network node is an ICP node.<br><br>To the extent it is found that Simmons does not disclose this feature expressly or inherently, it would have been obvious to combine Simmons with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [14]. |
| *Claim 29* | |
| [29] The apparatus of claim | Simmons discloses that the first type network nodes are organization nodes, and the second type |

Appendix B-19

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,974,451 (Simmons)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,974,451 (Simmons) |
|---|---|
| 27, wherein the first type network nodes are organization nodes, and the second type network node is an ICP node. | network node is an ICP node.<br><br>To the extent it is found that Simmons does not disclose this feature expressly or inherently, it would have been obvious to combine Simmons with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [15]. |
| *Claim 30* | |
| [30] The apparatus of claim 27, wherein the identified advertisements do not cause negative impact on the owner of the first type network node. | Simmons discloses that the identified advertisements do not cause negative impact on the owner of the first type network node.<br><br>To the extent it is found that Simmons does not disclose this feature expressly or inherently, it would have been obvious to combine Simmons with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [16]. |

**Appendix B-20**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,983,227 (Nazem)**

U.S. Patent No. 6,442,577 to Nazem et al. ("Nazem") is prior art to U.S. Patent No. 6,442,577 ("the '577 patent") under 35 U.S.C. 102(e) because it issued from a U.S. patent application filed on June 12, 1997, which is prior to the Nov. 3, 1998 filing date of the '577 patent.

As detailed in this chart, Nazem anticipates at least claims 1, 4–7, 10–13, 16, 17, 20–22, 25–27 and 30 of the '577 patent. In addition or in the alternative, claims 1–30 of the '577 patent are obvious over Nazem in view of the knowledge of a person of ordinary skill and/or one or more other references, as detailed in Appendix C.

This chart is based in whole or in part on the present understanding of positions taken by PageMelding regarding the coverage, scope and construction of the asserted claims to the extent those positions can be deduced from PageMelding's contentions pursuant to Patent Local Rule 3-1 served on August 3, 2012. Nothing herein is an admission that PageMelding's infringement contentions are correct, an admission that Plaintiff's apparent claim constructions are correct, or an admission that ESPN's technology infringes any asserted claim.

**Appendix B-20**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,983,227 (Nazem)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,983,227 (Nazem et al.) |
|---|---|
| *Claim 1* | |
| [1a] A method for dynamically forming customized web pages for a first type network node at a second type network node, comprising the steps of: | Nazem discloses a method for dynamically forming customized web pages for a first type network node at a second type network node. For example, a page server (second type network node) dynamically forms custom news pages (customized web pages) for a browser (first type network node).<br><br>*See* Abstract.<br>An custom page server is provided with user preferences organized into templates stored in compact data structures and the live data used to fill the templates stored local to the page server which is handing user requests for custom pages. One process is executed on the page server for every request. The process is provided a user template for the user making the request, where the user template is either generated from user preferences or retrieved from a cache of recently used user templates. Each user process is provided access to a large region of shared memory which contains all of the live data needed to fill any user template. Typically, the pages served are news pages, giving the user a custom selection of stock quotes, news headlines, sports scores, weather, and the like. With the live data stored in a local, shared memory, any custom page can be built within the page server, eliminating the need to make requests from other servers for portions of the live data. While the shared memory might include RAM (random access memory) and disk storage, in many computer systems, it is faster to store all the live data in RAM.<br><br>*See also* col. 1, lines 19-29.<br>Web servers for serving static documents ("Web pages") over the global Internet are known. While static documents are useful in many applications where the information to be presented to each requesting user is the same, some applications require customization to appeal to users. For example, in presenting news to users, custom pages present news which is more relevant to the requesting users than static pages. With static pages, a user will often have to scroll through many topics not of interest to that user to get to the information of interest. With custom pages, the information is filtered according to each user's interest.<br><br>*See also* col. 2, line 52 to col. 3, line 35. |

**Appendix B-20**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,983,227 (Nazem)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,983,227 (Nazem et al.) |
|---|---|
| | FIG. 1 shows a client-server system 100 which is used to display custom news pages. A custom news page is displayed on a browser 102 which obtains the page from a page server 104 via Internet 106. While only one browser 102 is shown, a typical system will have many browsers connecting and disconnecting to the system. The art of client-server systems using HTTP (HyperText Transport Protocol) messaging or other protocols is well known and will not be addressed in detail here. Essentially, browser 102 makes a request for a particular page by specifying a Uniform Resource Locator ("URL") for the page. In the example shown in FIG. 1, the request is directed to the URL "http:/my.yahoo.com/". Normally, this URL is directed to the root directory of a machine named my.yahoo.com. As is the convention in Internet communications, browser 102 submits the domain portion ("my.yahoo.com") of the URL to a name server, such as name server 108, to determine an actual address for the page server 104. Name server 108 returns an IP (Internet Protocol) address to browser 102 directing it to a page server 104. Where multiple page servers 104 are used, name server 108 returns IP addresses in a round-robin fashion to distribute the load over multiple page servers. Alternatively, name server 108 might distribute the load more deterministic by tracking browser addresses and hashing the browser address to select a page server 104. It is deterministic in that any given browser always accesses the same page server 104. This allows for more efficient caching of user templates, since more cache hits are likely where a given browser always returns to one page server. When a page server receives the URL for its root directory, it interprets that as a request for the user's custom summary page. The user is determined not from the URL, but from a "cookie" provided by browser 102 with the URL. Cookies are strings of data stored by browsers and sent along with any request to a URL having a domain associated with the cookie. Page servers 104 obtain the live data from many disparate sources and reformat the data into a form suitable for use by the page server. Page servers 104 are coupled, via a network, to edit servers 112, which are used when a user changes his or her user template. The user templates are stored in a user configuration database 116 and are stored and provided to edit servers by a network appliance 114 written for this purpose. Network appliance 114 is a process tuned to quickly locate files in large directories (N400 files/directory) and return them to the edit servers or page servers. One embodiment of network appliance 114 is the F330 fault-tolerant scalable server supplied by Network Appliance, of Mountain View, Calif. |

**Appendix B-20**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,983,227 (Nazem)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,983,227 (Nazem et al.) |
|---|---|
| | *See also* FIG. 1.<br><br><br><br>*See also* col. 5, lines 25-41.<br>Essentially, user template 202 contains the information about the user which does not change until the user changes his or her preferences. Of course, the system operator could choose to make changes to how the system operates, thus requiring changes to the user preferences and user templates. User template 202 is shown comprising internal variables such as a time zone and demographic information. The demographic information, on the second line in FIG. 4 is used for selection of an advertisement |

**Appendix B-20**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,983,227 (Nazem)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,983,227 (Nazem et al.) |
|---|---|
| | which will be part of the custom page. In this example, the advertisement is targeted by the demographic information in the user template ":M,85,95035,T,*" indicating that a suitable ad should be targeted to a male user, age 85, located in zip code 95035, etc. As shown, the portfolio section contains selected stock symbols, the scoreboard section contains selected team symbols, and the weather section contains selected weather cities/zip codes.<br><br>*See also* col. 5, lines 50-65.<br>FIG. 5 is an illustration of a user front page 218 returned by page server 104. User front page 218 as shown in FIG. 5 includes many elements, some of which are described here in further detail. User front page 218 is built according to a user template and live data. The user template specifies, for example which quotes are shown in the portfolio module, which cities are displayed in the weather module, etc. Each of the modules 504 can be customized by a user and moved about front page 218. The modules 504 are also reusable, in that any customized module which appears on multiple pages can be edited from any one of those pages and the edits will be reflected on each of the pages. Other custom pages for the user can be viewed by selecting one of the page buttons 502 appearing below the header. Other pages and utilities can be selected using the buttons 508 which are part of the header.<br><br>*See also* Figs. 1, 2, 5-6 and associated text.<br><br>*See also* claim limitations [1a] through [1f].<br><br>To the extent it is found that Nazem does not disclose this feature expressly or inherently, it would have been obvious to combine Nazem with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [1b] forming at least a page file for the first type network node; | Nazem discloses forming at least a page file for the first type network node. For example, the page server forms a custom news page that includes a selection of stock quotes, news headlines, sports scores, weather, etc., customized according to the preferences of the user using the browser (first type network node). The custom news page is formed from a user template, which in turn is formed from a global template with the addition of user information. Both the user template and the custom news |

**Appendix B-20**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,983,227 (Nazem)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,983,227 (Nazem et al.) |
|---|---|
|  | page include page files formed for the first type network node because they are customized for a specific user browser (at the first type network node).  For example, live data (stock quotes, sports scores, etc) are presented in page files for the first type network node.  Entries in the user template that are customized for a specific user are also page files for the first type network node.

*See* col. 1, lines 30–46.
Customizing a server response based on the requester is known, however known systems do not scale well. One method of serving custom pages is to execute a script, such as a CGI (Common Gateway Interface) script, or other program to collect the information necessary to generate the custom page. For example, if the custom page is a news page containing stock quotes, sports scores and weather, the script might poll a quote server to obtain the quotes of interest, poll a score server to obtain the scores of interest and poll a weather server to obtain the weather. With this information, the server generates the custom page and returns it to the user. This approach is useful where there are not many requesters and where the attendant delay is acceptable to users. While it may be the case that current users are willing to wait while pages load in their browsers, growing impatience with waiting will turn users away from such servers, especially as use increases.

*See* col. 1, line 60 to col. 2, line 14.
An improved custom page server is provided by virtue of the present invention.  In one embodiment, user preferences are organized into templates stored in compact data structures and the live data used to fill the templates is stored local to the page server which is handing user requests for custom pages. One process is executed on the page server for every request.  The process is provided a user template for the user making the request, where the user template is either generated from user preferences or retrieved from a cache of recently used user templates.  Each user process is provided access to a large region of shared memory which contains all of the live data needed to fill any user template. Typically, the pages served are news pages, giving the user a custom selection of stock quotes, news headlines, sports scores, weather, and the like.  With the live data stored in a local, shared memory, any custom page can be built within the page server, eliminating the need to make requests from other servers for portions of the live data.  While the shared memory might include RAM (random access |

Appendix B-20

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,983,227 (Nazem)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,983,227 (Nazem et al.) |
|---|---|
| | memory) and disk storage, in many computer systems, it is faster to store all the live data in RAM.<br><br>*See also* col. 3, lines 22–35.<br>Page servers 104 obtain the live data from many disparate sources and reformat the data into a form suitable for use by the page server.  Page servers 104 are coupled, via a network, to edit servers 112, which are used when a user changes his or her user template.  The user templates are stored in a user configuration database 116 and are stored and provided to edit servers by a network appliance 114 written for this purpose.  Network appliance 114 is a process tuned to quickly locate files in large directories (N400 files/directory) and return them to the edit servers or page servers.  One embodiment of network appliance 114 is the F330 fault-tolerant scalable server supplied by Network Appliance, of Mountain View, Calif.<br><br>*See also* col. 3, lines 49 to col. 4, line 2.<br>FIG. 2 shows in more detail the generation of a custom page for a user, using a front page generator 200 and page server 104.  Front page generator 200 generates a user template 202 from a global front page template 204 and a user configuration record 206.  FIG. 3 shows an example of a global front page template.  User configuration record 206 is a record selected from user configuration database 116.  The record might have been obtained from a cache, but in the preferred embodiment, the records are not cached, the user templates are.  Page server 104 is shown comprising a page generator 210, a shared memory 212 for storing live data and a cache 214 for caching user templates such as user template 202. Page generator 210 generates a custom front page 218 from a user template and the live data stored in shared memory 212. Although not shown, custom pages other than the front page can be generated in a similar fashion. Using user templates and a shared memory for the live data, page server 104 can quickly build custom pages in response to a user request. Where the user template is cached, the page can be generated entirely within page server 104.<br><br>*See also* FIG. 2. |

**Appendix B-20**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,983,227 (Nazem)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,983,227 (Nazem et al.) |
|---|---|
| | <br><br>*See also* col. 4, lines 24–39.<br>One aspect of the present invention is the realization that every piece of information a person can request on a page is storable in a shared memory closely coupled to a page generator. For example, page server 104 shown in FIG. 2 can accommodate 65,000 different symbols for which quotes are provided. In one embodiment, all of the stock information for all 65,000 symbols is stored in a 13 to 14 megabytes section of the shared memory. Where shared memory 212 is a 64 MB or 128 MB memory, this leaves sufficient room for other data, such as news headlines, sport scores, and memory used by |

Appendix B-20

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,983,227 (Nazem)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,983,227 (Nazem et al.) |
|---|---|
| | the operating system for each process running on page server 104. In some embodiments, shared memory 212 is large enough to also accommodate more than just news headlines. For example, news summaries (as described further in connection with FIG. 5) can be stored in shared memory 212 for quick access.

*See also* col. 5, lines 8–25.
FIG. 3 is an illustration of global user template 204. Global user template 204 is an HTML (HyperText Markup Language) document with additional tags as placeholders for live data. Several placeholders 302 are shown in FIG. 3.  FIG. 4 is an illustration of user template 202 as might be generated from global user template 204 (see FIG. 3) and a user configuration record 206. A full listing of user template 202 is included herewith in Appendix A. User template 202 is determined by the user configuration and is independent of the live data, therefore it can be cached without needing to be updated, unless the user chooses to edit the configuration information. Preferably, the user templates are cached rather than the user configuration, to save a step and reduce the time to respond to a request for the page. Caching is more effective where the typical user makes several requests in a short time span and then doesn't make any requests for a long period of time.

*See also* FIGS. 3 and 4. |

**Appendix B-20**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,983,227 (Nazem)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,983,227 (Nazem et al.) |
|---|---|
| | 

FIG. 3. |

**Appendix B-20**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,983,227 (Nazem)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,983,227 (Nazem et al.) |
|---|---|
| | <pre>                                                                    ╭ 202
                                   <!-- timezone:-8,PT 0 -->
                                   <!-- ad:M,85,95035,T,* 792 -->
                                 ⎡ <!-- portfolio:Quotes,pf_1,1,^DJI,^NYA,^IXIC,^SPX,^XAX,YHOO,NSCP,IOM,NSCP,YHOO
                                 ⎢ 2836 -->
                                 ⎢ <!--
                            404 ⎨ scoreboard:NCAAFSSC,NHLSAN,MLSSAN,NCAAFSSS,ALOAK,NBAGSW,NFLOAK,NCAAFCCD,NFLSFO
                                 ⎢ ,NLSFO 3803 -->
                                 ⎣ <!-- weather:f,30901,uk_londo,94601,95101 4368 -->
                                   <!--
                                   mode_bar:"FRONT_PAGE",.hier=News+Summary%3aEdit&.done=http://my.yahoo.com/news
                                   /summary2:3,rt,rw,z0000,mlb,re,vf 4597 -->
                                   <!-- motd:us_motn.html 4696 -->
                                   <html>
                                   <head>
                                   <title>My Yahoo! news summary for ash802</title>
                                   </head>
                                   <body>

                                   ...

                                   </body>
                                   </html></pre>

*FIG. 4.*

*See also* col. 5, lines 26-41.
Essentially, user template 202 contains the information about the user which does not change until the user changes his or her preferences. Of course, the system operator could choose to make changes to how the system operates, thus requiring changes to the user preferences and user templates. User template 202 is shown comprising internal variables such as a time zone and demographic information. The demographic information, on the second line in FIG. 4 is used for selection of an advertisement which will be part of the custom page. In this example, the advertisement is targeted by the demographic information in the user template ":M,85,95035,T,*" indicating that a suitable ad should be targeted to a male user, age 85, located in zip code 95035, etc. As shown, the portfolio section |

Appendix B-20

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,983,227 (Nazem)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,983,227 (Nazem et al.) |
|---|---|
| | contains selected stock symbols, the scoreboard section contains selected team symbols, and the weather section contains selected weather cities/zip codes.<br><br>*See also* col. 5, line 50 to col. 6, line 20.<br>FIG. 5 is an illustration of a user front page 218 returned by page server 104. User front page 218 as shown in FIG. 5 includes many elements, some of which are described here in further detail. User front page 218 is built according to a user template and live data. The user template specifies, for example which quotes are shown in the portfolio module, which cities are displayed in the weather module, etc. Each of the modules 504 can be customized by a user and moved about front page 218. The modules 504 are also reusable, in that any customized module which appears on multiple pages can be edited from any one of those pages and the edits will be reflected on each of the pages. Other custom pages for the user can be viewed by selecting one of the page buttons 502 appearing below the header. Other pages and utilities can be selected using the buttons 508 which are part of the header.<br>In addition to all of the live date shown in FIG. 5 being stored in the shared memory, summaries from each of the major news topics can also be stored in the shared memory and viewed by pressing on the news topic header, such as news topic header 506. As should be noted, the page generator can also intelligently display dates 510 customized for a particular user, using a time zone variable in the user template. This time zone variable is shown as the first line in user template 202 in FIG. 4. In addition to being able to modify each of the modules, in many cases the order of appearance of the modules is customizable. For example, the order of the various sections of user template 202 shown in FIG. 4 is not fixed.  The preference editing process can be initiated by the user pressing the appropriate edit button 512. As explained above, once the editing process is complete, the user template is flushed from the cache and regenerated. Since each of the news stories is essentially a static page linked to a headline shown in the news section, these can simply be linked to static pages on a news server.<br><br>*See also* FIG. 5. |

**Appendix B-20**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,983,227 (Nazem)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,983,227 (Nazem et al.) |
|---|---|
| |  FIG. 5A. |

**Appendix B-20**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,983,227 (Nazem)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,983,227 (Nazem et al.) |
|---|---|
| | <br><br>*FIG. 5B.*<br><br>*FIG. 5.*<br><br>*See also* Figs. 1-6 and associated text.<br><br>To the extent it is found that Nazem does not disclose this feature expressly or inherently, it would have been obvious to combine Nazem with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [1c] forming at least a page file for the second type network node; | Nazem discloses forming at least a page file for the second type network node. For example, the page server forms a global template as an HTML document with additional tags as placeholders for live data. Since the global template is not customized for any particular browser, it only includes page files |

**Appendix B-20**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,983,227 (Nazem)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,983,227 (Nazem et al.) |
|---|---|
|  | formed for the second type network node.<br><br>*See* Abstract.<br>An custom page server is provided with user preferences organized into templates stored in compact data structures and the live data used to fill the templates stored local to the page server which is handing user requests for custom pages. One process is executed on the page server for every request. The process is provided a user template for the user making the request, where the user template is either generated from user preferences or retrieved from a cache of recently used user templates. Each user process is provided access to a large region of shared memory which contains all of the live data needed to fill any user template. Typically, the pages served are news pages, giving the user a custom selection of stock quotes, news headlines, sports scores, weather, and the like. With the live data stored in a local, shared memory, any custom page can be built within the page server, eliminating the need to make requests from other servers for portions of the live data. While the shared memory might include RAM (random access memory) and disk storage, in many computer systems, it is faster to store all the live data in RAM.<br><br>*See also* col. 1, lines 19-29.<br>Web servers for serving static documents ("Web pages") over the global Internet are known. While static documents are useful in many applications where the information to be presented to each requesting user is the same, some applications require customization to appeal to users. For example, in presenting news to users, custom pages present news which is more relevant to the requesting users than static pages. With static pages, a user will often have to scroll through many topics not of interest to that user to get to the information of interest. With custom pages, the information is filtered according to each user's interest.<br><br>*See also* col. 1, line 60 to col. 2, line 14.<br>An improved custom page server is provided by virtue of the present invention. In one embodiment, user preferences are organized into templates stored in compact data structures and the live data used to fill the templates is stored local to the page server which is handing user requests for custom pages. One process is executed on the page server for every request. The process is provided a user template |

Appendix B-20

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,983,227 (Nazem)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,983,227 (Nazem et al.) |
|---|---|
| | for the user making the request, where the user template is either generated from user preferences or retrieved from a cache of recently used user templates. Each user process is provided access to a large region of shared memory which contains all of the live data needed to fill any user template. Typically, the pages served are news pages, giving the user a custom selection of stock quotes, news headlines, sports scores, weather, and the like.  With the live data stored in a local, shared memory, any custom page can be built within the page server, eliminating the need to make requests from other servers for portions of the live data.  While the shared memory might include RAM (random access memory) and disk storage, in many computer systems, it is faster to store all the live data in RAM. <br><br> *See also* col. 2, line 52 to col. 3, line 35. <br> FIG. 1 shows a client-server system 100 which is used to display custom news pages.  A custom news page is displayed on a browser 102 which obtains the page from a page server 104 via Internet 106. While only one browser 102 is shown, a typical system will have many browsers connecting and disconnecting to the system.  The art of client-server systems using HTTP (HyperText Transport Protocol) messaging or other protocols is well known and will not be addressed in detail here. Essentially, browser 102 makes a request for a particular page by specifying a Uniform Resource Locator ("URL") for the page.  In the example shown in FIG. 1, the request is directed to the URL "http:/my.yahoo.com/".  Normally, this URL is directed to the root directory of a machine named my.yahoo.com. As is the convention in Internet communications, browser 102 submits the domain portion ("my.yahoo.com") of the URL to a name server, such as name server 108, to determine an actual address for the page server 104.  Name server 108 returns an IP (Internet Protocol) address to browser 102 directing it to a page server 104.  Where multiple page servers 104 are used, name server 108 returns IP addresses in a round-robin fashion to distribute the load over multiple page servers. Alternatively, name server 108 might distribute the load more deterministic by tracking browser addresses and hashing the browser address to select a page server 104.  It is deterministic in that any given browser always accesses the same page server 104.  This allows for more efficient caching of user templates, since more cache hits are likely where a given browser always returns to one page server.  When a page server receives the URL for its root directory, it interprets that as a request for the user's custom summary page.  The user is determined not from the URL, but from a "cookie" provided |

Appendix B-20

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,983,227 (Nazem)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,983,227 (Nazem et al.) |
|---|---|
| | by browser 102 with the URL. Cookies are strings of data stored by browsers and sent along with any request to a URL having a domain associated with the cookie. Page servers 104 obtain the live data from many disparate sources and reformat the data into a form suitable for use by the page server. Page servers 104 are coupled, via a network, to edit servers 112, which are used when a user changes his or her user template. The user templates are stored in a user configuration database 116 and are stored and provided to edit servers by a network appliance 114 written for this purpose. Network appliance 114 is a process tuned to quickly locate files in large directories (N400 files/directory) and return them to the edit servers or page servers. One embodiment of network appliance 114 is the F330 fault-tolerant scalable server supplied by Network Appliance, of Mountain View, Calif. <br><br> *See also* col. 3, lines 49 to col. 4, line 2. <br> FIG. 2 shows in more detail the generation of a custom page for a user, using a front page generator 200 and page server 104. Front page generator 200 generates a user template 202 from a global front page template 204 and a user configuration record 206. FIG. 3 shows an example of a global front page template. User configuration record 206 is a record selected from user configuration database 116. The record might have been obtained from a cache, but in the preferred embodiment, the records are not cached, the user templates are. <br> Page server 104 is shown comprising a page generator 210, a shared memory 212 for storing live data and a cache 214 for caching user templates such as user template 202. Page generator 210 generates a custom front page 218 from a user template and the live data stored in shared memory 212. Although not shown, custom pages other than the front page can be generated in a similar fashion. Using user templates and a shared memory for the live data, page server 104 can quickly build custom pages in response to a user request. Where the user template is cached, the page can be generated entirely within page server 104. <br><br> *See also* col. 5, lines 8–11. <br> FIG. 3 is an illustration of global user template 204. Global user template 204 is an HTML (HyperText Markup Language) document with additional tags as placeholders for live data. Several placeholders 302 are shown in FIG. 3. |

**Appendix B-20**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,983,227 (Nazem)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,983,227 (Nazem et al.) |
|---|---|
| | *See also* FIG. 3. |



```
<html>
<head>
<title>My Yahoo! news summary for <!-- login --></title>
</head>
<body>

<center>
<!--banner:sum -->

<!-- ad -->
<!-- nav bar -->  ~ 302
</center>

<table border=1 cellpadding=4 cellspacing=0 width=100%>
<tr><td align=center valign=top width="1%">
<!-- leftside:nsum -->  ~ 302

<p></td>
<td align=center valign=top width="100%">
<!-- mode bar:"FRONT PAGE" -->
<!-- channel:nsum -->  ~ 302

</td></tr>
</table>

<center>
<table border=1 cellpadding=2 cellspacing=0 width=100%>
<!-- motd:motn.html -->
</table>
</center>
<!-- search -->

<!-- copyright:sum -->

</body>
</html>
```

*FIG. 3.*

204

*See also* col. 5, line 50 to col. 6, line 12.
FIG. 5 is an illustration of a user front page 218 returned by page server 104. User front page 218 as shown in FIG. 5 includes many elements, some of which are described here in further detail. User front

- 18 -

**Appendix B-20**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,983,227 (Nazem)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,983,227 (Nazem et al.) |
|---|---|
| | page 218 is built according to a user template and live data. The user template specifies, for example which quotes are shown in the portfolio module, which cities are displayed in the weather module, etc. Each of the modules 504 can be customized by a user and moved about front page 218. The modules 504 are also reusable, in that any customized module which appears on multiple pages can be edited from any one of those pages and the edits will be reflected on each of the pages. Other custom pages for the user can be viewed by selecting one of the page buttons 502 appearing below the header. Other pages and utilities can be selected using the buttons 508 which are part of the header. <br><br> In addition to all of the live date shown in FIG. 5 being stored in the shared memory, summaries from each of the major news topics can also be stored in the shared memory and viewed by pressing on the news topic header, such as news topic header 506. As should be noted, the page generator can also intelligently display dates 510 customized for a particular user, using a time zone variable in the user template. This time zone variable is shown as the first line in user template 202 in FIG. 4. In addition to being able to modify each of the modules, in many cases the order of appearance of the modules is customizable. For example, the order of the various sections of user template 202 shown in FIG. 4 is not fixed. <br><br> *See also* col. 6, lines 14-21. <br> The preference editing process can be initiated by the user pressing the appropriate edit button 512.  As explained above, once the editing process is complete, the user template is flushed from the cache and regenerated.  Since each of the news stories is essentially a static page linked to a headline shown in the news section, these can simply be linked to static pages on a news server. <br><br> *See also* Figs. 1-6 and associated text. <br><br> To the extent it is found that Nazem does not disclose this feature expressly or inherently, it would have been obvious to combine Nazem with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter.  *See* Appendix C. |
| [1d] receiving a service request from the first type | Nazem discloses receiving a service request from the first type network node.  For example, the page |

**Appendix B-20**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,983,227 (Nazem)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,983,227 (Nazem et al.) |
|---|---|
| network node; | server receives an HTTP service request from the user browser (first type network node).<br><br>*See* Abstract.<br>An custom page server is provided with user preferences organized into templates stored in compact data structures and the live data used to fill the templates stored local to the page server which is handing user requests for custom pages. One process is executed on the page server for every request. The process is provided a user template for the user making the request, where the user template is either generated from user preferences or retrieved from a cache of recently used user templates. Each user process is provided access to a large region of shared memory which contains all of the live data needed to fill any user template. Typically, the pages served are news pages, giving the user a custom selection of stock quotes, news headlines, sports scores, weather, and the like. With the live data stored in a local, shared memory, any custom page can be built within the page server, eliminating the need to make requests from other servers for portions of the live data. While the shared memory might include RAM (random access memory) and disk storage, in many computer systems, it is faster to store all the live data in RAM.<br><br>*See also* col. 1, line 60 to col. 2, line 14.<br>An improved custom page server is provided by virtue of the present invention. In one embodiment, user preferences are organized into templates stored in compact data structures and the live data used to fill the templates is stored local to the page server which is handing user requests for custom pages. One process is executed on the page server for every request. The process is provided a user template for the user making the request, where the user template is either generated from user preferences or retrieved from a cache of recently used user templates. Each user process is provided access to a large region of shared memory which contains all of the live data needed to fill any user template. Typically, the pages served are news pages, giving the user a custom selection of stock quotes, news headlines, sports scores, weather, and the like. With the live data stored in a local, shared memory, any custom page can be built within the page server, eliminating the need to make requests from other servers for portions of the live data. While the shared memory might include RAM (random access memory) and disk storage, in many computer systems, it is faster to store all the live data in RAM. |

**Appendix B-20**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,983,227 (Nazem)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,983,227 (Nazem et al.) |
|---|---|
| | *See also* col. 2, line 52 to col. 3, line 35. FIG. 1 shows a client-server system 100 which is used to display custom news pages. A custom news page is displayed on a browser 102 which obtains the page from a page server 104 via Internet 106. While only one browser 102 is shown, a typical system will have many browsers connecting and disconnecting to the system. The art of client-server systems using HTTP (HyperText Transport Protocol) messaging or other protocols is well known and will not be addressed in detail here. Essentially, browser 102 makes a request for a particular page by specifying a Uniform Resource Locator ("URL") for the page. In the example shown in FIG. 1, the request is directed to the URL "http:/my.yahoo.com/". Normally, this URL is directed to the root directory of a machine named my.yahoo.com. As is the convention in Internet communications, browser 102 submits the domain portion ("my.yahoo.com") of the URL to a name server, such as name server 108, to determine an actual address for the page server 104. Name server 108 returns an IP (Internet Protocol) address to browser 102 directing it to a page server 104. Where multiple page servers 104 are used, name server 108 returns IP addresses in a round-robin fashion to distribute the load over multiple page servers. Alternatively, name server 108 might distribute the load more deterministic by tracking browser addresses and hashing the browser address to select a page server 104. It is deterministic in that any given browser always accesses the same page server 104. This allows for more efficient caching of user templates, since more cache hits are likely where a given browser always returns to one page server. When a page server receives the URL for its root directory, it interprets that as a request for the user's custom summary page. The user is determined not from the URL, but from a "cookie" provided by browser 102 with the URL. Cookies are strings of data stored by browsers and sent along with any request to a URL having a domain associated with the cookie. Page servers 104 obtain the live data from many disparate sources and reformat the data into a form suitable for use by the page server. Page servers 104 are coupled, via a network, to edit servers 112, which are used when a user changes his or her user template. The user templates are stored in a user configuration database 116 and stored and provided to edit servers by a network appliance 114 written for this purpose. Network appliance 114 is a process tuned to quickly locate files in large directories (N400 files/directory) and return them to the edit servers or page servers. One embodiment of network appliance 114 is the F330 |

Appendix B-20

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,983,227 (Nazem)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,983,227 (Nazem et al.) |
|---|---|
| | fault-tolerant scalable server supplied by Network Appliance, of Mountain View, Calif.<br><br>*See also* col. 4, line 40 to col. 5, line 7.<br>As shown in FIG. 2, the user's front page template 202 does not need to be generated each time, but rather is stored in cache 214. In a preferred embodiment, user templates are stored in cache 214 for long enough to be reused. Some users might choose to access their front page only infrequently, while others might choose to access their front page hourly. Since the pages are customized and dynamic, the user would see different information each time, but the same user template would be used each time. Of course, when the user edits his or her template, any cached copy of a user template is flushed. A garbage-collection process may also flush the cache of user pages which have been inactive for several days. In one implementation, cache 214 would accommodate 60,000 to 70,000 user templates. Where a particular page server is assigned on a random round robin basis, multiple page servers may cache their own copy of a given user template, but where a user is directed always to a particular server (except in the case where the particular server fails and a secondary server is used), that page server will be the only one which needs to cache that users user template. Even where the round robin name server scheme is used, some browsers may cache IP addresses, even longer than the specified "time to live" variable associated with the IP address, in order to save the time required to obtain an IP address each time. With such a browser, the user is effectively directed to the same page server each time and the server side of the page serving system does not need to direct users to particular page servers. With newer browsers, however, the "time to live" variable is honored and new requests are made for IP addresses after the "time to live" has expired. In these cases, if the assignment of a user to a single page server is desired, name server 108 (see FIG. 1) will use the user name from the provided cookie or the user's IP address to assign a page server based on a hash of the user name or IP address.<br><br>*See also* Figs. 1, 2, 5-6 and associated text.<br><br>To the extent it is found that Nazem does not disclose this feature expressly or inherently, it would have been obvious to combine Nazem with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |

**Appendix B-20**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,983,227 (Nazem)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,983,227 (Nazem et al.) |
|---|---|
| [1e] identifying the first type network node based on the service request; and | Nazem discloses identifying the first type network node based on the service request.  For example, the page server identifies the user of the browser (first type network node) based on a cookie and/or IP address contained in the HTTP service request.<br><br>*See* col. 2, line 52 to col. 3, line 35.<br>FIG. 1 shows a client-server system 100 which is used to display custom news pages.  A custom news page is displayed on a browser 102 which obtains the page from a page server 104 via Internet 106.  While only one browser 102 is shown, a typical system will have many browsers connecting and disconnecting to the system.  The art of client-server systems using HTTP (HyperText Transport Protocol) messaging or other protocols is well known and will not be addressed in detail here.  Essentially, browser 102 makes a request for a particular page by specifying a Uniform Resource Locator ("URL") for the page.  In the example shown in FIG. 1, the request is directed to the URL "http:/my.yahoo.com/".  Normally, this URL is directed to the root directory of a machine named my.yahoo.com.  As is the convention in Internet communications, browser 102 submits the domain portion ("my.yahoo.com") of the URL to a name server, such as name server 108, to determine an actual address for the page server 104.  Name server 108 returns an IP (Internet Protocol) address to browser 102 directing it to a page server 104.  Where multiple page servers 104 are used, name server 108 returns IP addresses in a round-robin fashion to distribute the load over multiple page servers.  Alternatively, name server 108 might distribute the load more deterministic by tracking browser addresses and hashing the browser address to select a page server 104.  It is deterministic in that any given browser always accesses the same page server 104.  This allows for more efficient caching of user templates, since more cache hits are likely where a given browser always returns to one page server.  When a page server receives the URL for its root directory, it interprets that as a request for the user's custom summary page.  The user is determined not from the URL, but from a "cookie" provided by browser 102 with the URL.  Cookies are strings of data stored by browsers and sent along with any request to a URL having a domain associated with the cookie.  Page servers 104 obtain the live data from many disparate sources and reformat the data into a form suitable for use by the page server.  Page servers 104 are coupled, via a network, to edit servers 112, which are used when a user changes his or her user template.  The user templates are stored in a user configuration database 116 and are |

**Appendix B-20**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,983,227 (Nazem)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,983,227 (Nazem et al.) |
|---|---|
| | stored and provided to edit servers by a network appliance 114 written for this purpose. Network appliance 114 is a process tuned to quickly locate files in large directories (N400 files/directory) and return them to the edit servers or page servers. One embodiment of network appliance 114 is the F330 fault-tolerant scalable server supplied by Network Appliance, of Mountain View, Calif.<br><br>*See also* col. 4, line 40 to col. 5, line 7.<br>As shown in FIG. 2, the user's front page template 202 does not need to be generated each time, but rather is stored in cache 214. In a preferred embodiment, user templates are stored in cache 214 for long enough to be reused. Some users might choose to access their front page only infrequently, while others might choose to access their front page hourly. Since the pages are customized and dynamic, the user would see different information each time, but the same user template would be used each time. Of course, when the user edits his or her template, any cached copy of a user template is flushed. A garbage-collection process may also flush the cache of user pages which have been inactive for several days. In one implementation, cache 214 would accommodate 60,000 to 70,000 user templates. Where a particular page server is assigned on a random round robin basis, multiple page servers may cache their own copy of a given user template, but where a user is directed always to a particular server (except in the case where the particular server fails and a secondary server is used), that page server will be the only one which needs to cache that users user template. Even where the round robin name server scheme is used, some browsers may cache IP addresses, even longer than the specified "time to live" variable associated with the IP address, in order to save the time required to obtain an IP address each time. With such a browser, the user is effectively directed to the same page server each time and the server side of the page serving system does not need to direct users to particular page servers. With newer browsers, however, the "time to live" variable is honored and new requests are made for IP addresses after the "time to live" has expired. In these cases, if the assignment of a user to a single page server is desired, name server 108 (see FIG. 1) will use the user name from the provided cookie or the user's IP address to assign a page server based on a hash of the user name or IP address.<br><br>*See also* Figs. 1, 2, 5-6 and associated text. |

**Appendix B-20**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,983,227 (Nazem)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,983,227 (Nazem et al.) |
|---|---|
| | *See also* claim limitation [1d].<br><br>To the extent it is found that Nazem does not disclose this feature expressly or inherently, it would have been obvious to combine Nazem with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [1f] forming a customized page file formed for the first type network node by including the page file formed for the first type network node within the page file for the second type network node. | Nazem discloses forming a customized page file formed for the first type network node by including the page file formed for the first type network node within the page file for the second type network node. For example, the page server forms a custom news page (customized page file) for the browser (first type network node) that includes content customized for the user, such as user-specific content as well as user-specific live data (page file formed for the first type network node) within general, non-customized content in the global template (page file for the second type network node).<br><br>*See* col. 1, line 60 to col. 2, line 14.<br>An improved custom page server is provided by virtue of the present invention. In one embodiment, user preferences are organized into templates stored in compact data structures and the live data used to fill the templates is stored local to the page server which is handing user requests for custom pages. One process is executed on the page server for every request. The process is provided a user template for the user making the request, where the user template is either generated from user preferences or retrieved from a cache of recently used user templates. Each user process is provided access to a large region of shared memory which contains all of the live data needed to fill any user template. Typically, the pages served are news pages, giving the user a custom selection of stock quotes, news headlines, sports scores, weather, and the like. With the live data stored in a local, shared memory, any custom page can be built within the page server, eliminating the need to make requests from other servers for portions of the live data. While the shared memory might include RAM (random access memory) and disk storage, in many computer systems, it is faster to store all the live data in RAM.<br><br>*See also* col. 3, line 49 to col. 4, line 2.<br>FIG. 2 shows in more detail the generation of a custom page for a user, using a front page generator 200 and page server 104. Front page generator 200 generates a user template 202 from a global front |

**Appendix B-20**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,983,227 (Nazem)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,983,227 (Nazem et al.) |
|---|---|
| | page template 204 and a user configuration record 206. FIG. 3 shows an example of a global front page template. User configuration record 206 is a record selected from user configuration database 116. The record might have been obtained from a cache, but in the preferred embodiment, the records are not cached, the user templates are. Page server 104 is shown comprising a page generator 210, a shared memory 212 for storing live data and a cache 214 for caching user templates such as user template 202. Page generator 210 generates a custom front page 218 from a user template and the live data stored in shared memory 212. Although not shown, custom pages other than the front page can be generated in a similar fashion. Using user templates and a shared memory for the live data, page server 104 can quickly build custom pages in response to a user request. Where the user template is cached, the page can be generated entirely within page server 104.<br><br>*See also* col. 4, line 40 to col. 5, line 7.<br>As shown in FIG. 2, the user's front page template 202 does not need to be generated each time, but rather is stored in cache 214. In a preferred embodiment, user templates are stored in cache 214 for long enough to be reused. Some users might choose to access their front page only infrequently, while others might choose to access their front page hourly. Since the pages are customized and dynamic, the user would see different information each time, but the same user template would be used each time. Of course, when the user edits his or her template, any cached copy of a user template is flushed. A garbage-collection process may also flush the cache of user pages which have been inactive for several days. In one implementation, cache 214 would accommodate 60,000 to 70,000 user templates. Where a particular page server is assigned on a random round robin basis, multiple page servers may cache their own copy of a given user template, but where a user is directed always to a particular server (except in the case where the particular server fails and a secondary server is used), that page server will be the only one which needs to cache that users user template. Even where the round robin name server scheme is used, some browsers may cache IP addresses, even longer than the specified "time to live" variable associated with the IP address, in order to save the time required to obtain an IP address each time. With such a browser, the user is effectively directed to the same page server each time and the server side of the page serving system does not need to direct users to particular page servers. With newer browsers, however, the "time to live" variable is honored and new requests are made for IP |

**Appendix B-20**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,983,227 (Nazem)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,983,227 (Nazem et al.) |
|---|---|
|  | addresses after the "time to live" has expired. In these cases, if the assignment of a user to a single page server is desired, name server 108 (see FIG. 1) will use the user name from the provided cookie or the user's IP address to assign a page server based on a hash of the user name or IP address. |
|  | *See also* col. 5, lines 8–25. |
|  | FIG. 3 is an illustration of global user template 204. Global user template 204 is an HTML (HyperText Markup Language) document with additional tags as placeholders for live data. Several placeholders 302 are shown in FIG. 3. |
|  | FIG. 4 is an illustration of user template 202 as might be generated from global user template 204 (see FIG. 3) and a user configuration record 206. A full listing of user template 202 is included herewith in Appendix A. User template 202 is determined by the user configuration and is independent of the live data, therefore it can be cached without needing to be updated, unless the user chooses to edit the configuration information. Preferably, the user templates are cached rather than the user configuration, to save a step and reduce the time to respond to a request for the page. Caching is more effective where the typical user makes several requests in a short time span and then doesn't make any requests for a long period of time. |
|  | *See also* col. 5, lines 26-41. |
|  | Essentially, user template 202 contains the information about the user which does not change until the user changes his or her preferences. Of course, the system operator could choose to make changes to how the system operates, thus requiring changes to the user preferences and user templates. User template 202 is shown comprising internal variables such as a time zone and demographic information. The demographic information, on the second line in FIG. 4 is used for selection of an advertisement which will be part of the custom page. In this example, the advertisement is targeted by the demographic information in the user template ":M,85,95035,T,*" indicating that a suitable ad should be targeted to a male user, age 85, located in zip code 95035, etc. As shown, the portfolio section contains selected stock symbols, the scoreboard section contains selected team symbols, and the weather section contains selected weather cities/zip codes. |
|  | *See also* col. 5, lines 43-49. |

**Appendix B-20**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,983,227 (Nazem)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,983,227 (Nazem et al.) |
|---|---|
| | The selections of stock quote symbols, team scores, and weather cities are set by the user.  In a preferred embodiment, intelligent defaults are selected by the system prior to user selection, so that users unfamiliar with the customization process will nonetheless be able to view non empty custom pages.  This is described in further detail below in connection with FIG. 6.<br><br>*See also* col. 5, line 50 to col. 6, line 12.<br>FIG. 5 is an illustration of a user front page 218 returned by page server 104. User front page 218 as shown in FIG. 5 includes many elements, some of which are described here in further detail. User front page 218 is built according to a user template and live data. The user template specifies, for example which quotes are shown in the portfolio module, which cities are displayed in the weather module, etc. Each of the modules 504 can be customized by a user and moved about front page 218. The modules 504 are also reusable, in that any customized module which appears on multiple pages can be edited from any one of those pages and the edits will be reflected on each of the pages. Other custom pages for the user can be viewed by selecting one of the page buttons 502 appearing below the header. Other pages and utilities can be selected using the buttons 508 which are part of the header.<br>In addition to all of the live date shown in FIG. 5 being stored in the shared memory, summaries from each of the major news topics can also be stored in the shared memory and viewed by pressing on the news topic header, such as news topic header 506. As should be noted, the page generator can also intelligently display dates 510 customized for a particular user, using a time zone variable in the user template. This time zone variable is shown as the first line in user template 202 in FIG. 4. In addition to being able to modify each of the modules, in many cases the order of appearance of the modules is customizable. For example, the order of the various sections of user template 202 shown in FIG. 4 is not fixed.<br><br>*See also* FIG. 5. |

**Appendix B-20**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,983,227 (Nazem)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,983,227 (Nazem et al.) |
|---|---|
|  | <br>*FIG. 5A.* |

**Appendix B-20**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,983,227 (Nazem)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,983,227 (Nazem et al.) |
|---|---|
| | <br><br>*See also* Figs. 1, 2, 5-6 and associated text.<br><br>*See also* claim limitations [1b] and [1c].<br><br>To the extent it is found that Nazem does not disclose this feature expressly or inherently, it would have been obvious to combine Nazem with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 2* | |
| [2] The method of claim 1, | To the extent it is found that Nazem does not disclose this feature expressly or inherently, it would |

**Appendix B-20**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,983,227 (Nazem)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,983,227 (Nazem et al.) |
|---|---|
| wherein the first type network node is an ISP node, and the second type network node is an ICP node. | have been obvious to combine Nazem with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* col. 1, lines 19-29.<br>Web servers for serving static documents ("Web pages") over the global Internet are known. While static documents are useful in many applications where the information to be presented to each requesting user is the same, some applications require customization to appeal to users. For example, in presenting news to users, custom pages present news which is more relevant to the requesting users than static pages. With static pages, a user will often have to scroll through many topics not of interest to that user to get to the information of interest. With custom pages, the information is filtered according to each user's interest.<br><br>*See also* col. 1, line 60 to col. 2, line 14.<br>An improved custom page server is provided by virtue of the present invention. In one embodiment, user preferences are organized into templates stored in compact data structures and the live data used to fill the templates is stored local to the page server which is handing user requests for custom pages. One process is executed on the page server for every request. The process is provided a user template for the user making the request, where the user template is either generated from user preferences or retrieved from a cache of recently used user templates. Each user process is provided access to a large region of shared memory which contains all of the live data needed to fill any user template. Typically, the pages served are news pages, giving the user a custom selection of stock quotes, news headlines, sports scores, weather, and the like. With the live data stored in a local, shared memory, any custom page can be built within the page server, eliminating the need to make requests from other servers for portions of the live data. While the shared memory might include RAM (random access memory) and disk storage, in many computer systems, it is faster to store all the live data in RAM.<br><br>*See also* col. 2, line 52 to col. 3, line 35.<br>FIG. 1 shows a client-server system 100 which is used to display custom news pages. A custom news page is displayed on a browser 102 which obtains the page from a page server 104 via Internet 106. While only one browser 102 is shown, a typical system will have many browsers connecting and |

**Appendix B-20**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,983,227 (Nazem)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,983,227 (Nazem et al.) |
|---|---|
| | disconnecting to the system.  The art of client-server systems using HTTP (HyperText Transport Protocol) messaging or other protocols is well known and will not be addressed in detail here. Essentially, browser 102 makes a request for a particular page by specifying a Uniform Resource Locator ("URL") for the page.  In the example shown in FIG. 1, the request is directed to the URL "http:/my.yahoo.com/".  Normally, this URL is directed to the root directory of a machine named my.yahoo.com.  As is the convention in Internet communications, browser 102 submits the domain portion ("my.yahoo.com") of the URL to a name server, such as name server 108, to determine an actual address for the page server 104.  Name server 108 returns an IP (Internet Protocol) address to browser 102 directing it to a page server 104.  Where multiple page servers 104 are used, name server 108 returns IP addresses in a round-robin fashion to distribute the load over multiple page servers. Alternatively, name server 108 might distribute the load more deterministic by tracking browser addresses and hashing the browser address to select a page server 104.  It is deterministic in that any given browser always accesses the same page server 104.  This allows for more efficient caching of user templates, since more cache hits are likely where a given browser always returns to one page server.  When a page server receives the URL for its root directory, it interprets that as a request for the user's custom summary page.  The user is determined not from the URL, but from a "cookie" provided by browser 102 with the URL.  Cookies are strings of data stored by browsers and sent along with any request to a URL having a domain associated with the cookie.  Page servers 104 obtain the live data from many disparate sources and reformat the data into a form suitable for use by the page server. Page servers 104 are coupled, via a network, to edit servers 112, which are used when a user changes his or her user template.  The user templates are stored in a user configuration database 116 and stored and provided to edit servers by a network appliance 114 written for this purpose.  Network appliance 114 is a process tuned to quickly locate files in large directories (N400 files/directory) and return them to the edit servers or page servers.  One embodiment of network appliance 114 is the F330 fault-tolerant scalable server supplied by Network Appliance, of Mountain View, Calif.  <br><br>*See also* col. 3, line 49 to col. 4, line 2. <br> FIG. 2 shows in more detail the generation of a custom page for a user, using a front page generator 200 and page server 104.  Front page generator 200 generates a user template 202 from a global front |

**Appendix B-20**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,983,227 (Nazem)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,983,227 (Nazem et al.) |
|---|---|
|  | page template 204 and a user configuration record 206. FIG. 3 shows an example of a global front page template. User configuration record 206 is a record selected from user configuration database 116. The record might have been obtained from a cache, but in the preferred embodiment, the records are not cached, the user templates are. Page server 104 is shown comprising a page generator 210, a shared memory 212 for storing live data and a cache 214 for caching user templates such as user template 202. Page generator 210 generates a custom front page 218 from a user template and the live data stored in shared memory 212. Although not shown, custom pages other than the front page can be generated in a similar fashion. Using user templates and a shared memory for the live data, page server 104 can quickly build custom pages in response to a user request. Where the user template is cached, the page can be generated entirely within page server 104.<br><br>*See also* Figs. 1-2 and associated text. |
| *Claim 3* |  |
| [3] The method of claim 1, wherein the first type network node is an organization node, and the second type network node is an ICP node. | To the extent it is found that Nazem does not disclose this feature expressly or inherently, it would have been obvious to combine Nazem with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* col. 1, lines 19-29.<br>Web servers for serving static documents ("Web pages") over the global Internet are known. While static documents are useful in many applications where the information to be presented to each requesting user is the same, some applications require customization to appeal to users. For example, in presenting news to users, custom pages present news which is more relevant to the requesting users than static pages. With static pages, a user will often have to scroll through many topics not of interest to that user to get to the information of interest. With custom pages, the information is filtered according to each user's interest.<br><br>*See also* col. 1, line 60 to col. 2, line 14.<br>An improved custom page server is provided by virtue of the present invention. In one embodiment, user preferences are organized into templates stored in compact data structures and the live data used |

Appendix B-20

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,983,227 (Nazem)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,983,227 (Nazem et al.) |
|---|---|
| | to fill the templates is stored local to the page server which is handing user requests for custom pages. One process is executed on the page server for every request. The process is provided a user template for the user making the request, where the user template is either generated from user preferences or retrieved from a cache of recently used user templates. Each user process is provided access to a large region of shared memory which contains all of the live data needed to fill any user template. Typically, the pages served are news pages, giving the user a custom selection of stock quotes, news headlines, sports scores, weather, and the like. With the live data stored in a local, shared memory, any custom page can be built within the page server, eliminating the need to make requests from other servers for portions of the live data. While the shared memory might include RAM (random access memory) and disk storage, in many computer systems, it is faster to store all the live data in RAM. <br><br> *See also* col. 2, line 52 to col. 3, line 35. <br> FIG. 1 shows a client-server system 100 which is used to display custom news pages. A custom news page is displayed on a browser 102 which obtains the page from a page server 104 via Internet 106. While only one browser 102 is shown, a typical system will have many browsers connecting and disconnecting to the system. The art of client-server systems using HTTP (HyperText Transport Protocol) messaging or other protocols is well known and will not be addressed in detail here. Essentially, browser 102 makes a request for a particular page by specifying a Uniform Resource Locator ("URL") for the page. In the example shown in FIG. 1, the request is directed to the URL "http:/my.yahoo.com/". Normally, this URL is directed to the root directory of a machine named my.yahoo.com. As is the convention in Internet communications, browser 102 submits the domain portion ("my.yahoo.com") of the URL to a name server, such as name server 108, to determine an actual address for the page server 104. Name server 108 returns an IP (Internet Protocol) address to browser 102 directing it to a page server 104. Where multiple page servers 104 are used, name server 108 returns IP addresses in a round-robin fashion to distribute the load over multiple page servers. Alternatively, name server 108 might distribute the load more deterministic by tracking browser addresses and hashing the browser address to select a page server 104. It is deterministic in that any given browser always accesses the same page server 104. This allows for more efficient caching of user templates, since more cache hits are likely where a given browser always returns to one page |

Appendix B-20

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,983,227 (Nazem)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,983,227 (Nazem et al.) |
|---|---|
| | server. When a page server receives the URL for its root directory, it interprets that as a request for the user's custom summary page. The user is determined not from the URL, but from a "cookie" provided by browser 102 with the URL. Cookies are strings of data stored by browsers and sent along with any request to a URL having a domain associated with the cookie. Page servers 104 obtain the live data from many disparate sources and reformat the data into a form suitable for use by the page server. Page servers 104 are coupled, via a network, to edit servers 112, which are used when a user changes his or her user template. The user templates are stored in a user configuration database 116 and are stored and provided to edit servers by a network appliance 114 written for this purpose. Network appliance 114 is a process tuned to quickly locate files in large directories (N400 files/directory) and return them to the edit servers or page servers. One embodiment of network appliance 114 is the F330 fault-tolerant scalable server supplied by Network Appliance, of Mountain View, Calif.

*See also* col. 3, line 49 to col. 4, line 2.
FIG. 2 shows in more detail the generation of a custom page for a user, using a front page generator 200 and page server 104. Front page generator 200 generates a user template 202 from a global front page template 204 and a user configuration record 206. FIG. 3 shows an example of a global front page template. User configuration record 206 is a record selected from user configuration database 116. The record might have been obtained from a cache, but in the preferred embodiment, the records are not cached, the user templates are. Page server 104 is shown comprising a page generator 210, a shared memory 212 for storing live data and a cache 214 for caching user templates such as user template 202. Page generator 210 generates a custom front page 218 from a user template and the live data stored in shared memory 212. Although not shown, custom pages other than the front page can be generated in a similar fashion. Using user templates and a shared memory for the live data, page server 104 can quickly build custom pages in response to a user request. Where the user template is cached, the page can be generated entirely within page server 104.

*See also* Figs. 1-2 and associated text. |
| *Claim 4* | |
| [4] The method of claim 1, | Nazem discloses that the customized page file includes customized graphics, sounds, applets, links, |

**Appendix B-20**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,983,227 (Nazem)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,983,227 (Nazem et al.) |
|---|---|
| wherein the customized page file includes customized graphics, sounds, applets, links, and text. | and text. For example, custom content includes HTML web pages, which include links and text. Nazem also discloses customized graphics as part of the custom news page. To the extent it is found that Nazem does not disclose this feature expressly or inherently, it would have been obvious to combine Nazem with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* col. 5, lines 25–49.<br>Essentially, user template 202 contains the information about the user which does not change until the user changes his or her preferences. Of course, the system operator could choose to make changes to how the system operates, thus requiring changes to the user preferences and user templates. User template 202 is shown comprising internal variables such as a time zone and demographic information. The demographic information, on the second line in FIG. 4 is used for selection of an advertisement which will be part of the custom page. In this example, the advertisement is targeted by the demographic information in the user template ":M,85,95035,T,*" indicating that a suitable ad should be targeted to a male user, age 85, located in zip code 95035, etc. As shown, the portfolio section contains selected stock symbols, the scoreboard section contains selected team symbols, and the weather section contains selected weather cities/zip codes. The selections of stock quote symbols, team scores, and weather cities are set by the user. In a preferred embodiment, intelligent defaults are selected by the system prior to user selection, so that users unfamiliar with the customization process will nonetheless be able to view non empty custom pages. This is described in further detail below in connection with FIG. 6.<br><br>*See also* col. 5, lines 50–55.<br>FIG. 5 is an illustration of a user front page 218 returned by page server 104. User front page 218 as shown in FIG. 5 includes many elements, some of which are described here in further detail. User front page 218 is built according to a user template and live data. The user template specifies, for example which quotes are shown in the portfolio module, which cities are displayed in the weather module, etc. Each of the modules 504 can be customized by a user and moved about front page 218. The modules 504 are also reusable, in that any customized module which appears on multiple pages can be edited from any one of those pages and the edits will be reflected on each of the pages. Other custom pages |

**Appendix B-20**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,983,227 (Nazem)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,983,227 (Nazem et al.) |
|---|---|
| | for the user can be viewed by selecting one of the page buttons 502 appearing below the header. Other pages and utilities can be selected using the buttons 508 which are part of the header.<br><br>*See also* FIG. 5.<br><br><br><br>*FIG. 5A.* |

**Appendix B-20**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,983,227 (Nazem)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,983,227 (Nazem et al.) |
|---|---|
|  |  *FIG. 5B.* *FIG. 5.* *See also* col. 6, lines 52–59. Other intelligent defaults can be provided in other contexts. For example, the header of user front page 218 includes a button 508 labeled "myweb" which, when pressed, would lead the user to a custom listing of web sites. The initial defaults for that custom listing of web sites might be generated based on the keywords of interest to that user or based on the news topics, sports teams or weather cities selected by the user. *See also* Figs. 3–6 and associated text. |

Appendix B-20

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,983,227 (Nazem)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,983,227 (Nazem et al.) |
|---|---|
| | *See also* claim limitation [1b]. |
| *Claim 5* | |
| [5] The method of claim 1, wherein the customized page file includes customized advertisements. | Nazem discloses that the customized page file includes customized advertisements.<br><br>*See* Abstract.<br>An custom page server is provided with user preferences organized into templates stored in compact data structures and the live data used to fill the templates stored local to the page server which is handing user requests for custom pages. One process is executed on the page server for every request. The process is provided a user template for the user making the request, where the user template is either generated from user preferences or retrieved from a cache of recently used user templates. Each user process is provided access to a large region of shared memory which contains all of the live data needed to fill any user template. Typically, the pages served are news pages, giving the user a custom selection of stock quotes, news headlines, sports scores, weather, and the like. With the live data stored in a local, shared memory, any custom page can be built within the page server, eliminating the need to make requests from other servers for portions of the live data. While the shared memory might include RAM (random access memory) and disk storage, in many computer systems, it is faster to store all the live data in RAM.<br><br>*See also* col. 1, lines 19–29.<br>Web servers for serving static documents ("Web pages") over the global Internet are known. While static documents are useful in many applications where the information to be presented to each requesting user is the same, some applications require customization to appeal to users. For example, in presenting news to users, custom pages present news which is more relevant to the requesting users than static pages. With static pages, a user will often have to scroll through many topics not of interest to that user to get to the information of interest. With custom pages, the information is filtered according to each user's interest.<br><br>*See also* col. 1, line 60 to col. 2, line 14.<br>An improved custom page server is provided by virtue of the present invention. In one embodiment, |

Appendix B-20

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,983,227 (Nazem)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,983,227 (Nazem et al.) |
|---|---|
|  | user preferences are organized into templates stored in compact data structures and the live data used to fill the templates which is stored local to the page server which is handing user requests for custom pages. One process is executed on the page server for every request. The process is provided a user template for the user making the request, where the user template is either generated from user preferences or retrieved from a cache of recently used user templates. Each user process is provided access to a large region of shared memory which contains all of the live data needed to fill any user template. Typically, the pages served are news pages, giving the user a custom selection of stock quotes, news headlines, sports scores, weather, and the like. With the live data stored in a local, shared memory, any custom page can be built within the page server, eliminating the need to make requests from other servers for portions of the live data. While the shared memory might include RAM (random access memory) and disk storage, in many computer systems, it is faster to store all the live data in RAM.<br><br>*See also* col. 3, line 49 to col. 4, line 2.<br>FIG. 2 shows in more detail the generation of a custom page for a user, using a front page generator 200 and page server 104. Front page generator 200 generates a user template 202 from a global front page template 204 and a user configuration record 206. FIG. 3 shows an example of a global front page template. User configuration record 206 is a record selected from user configuration database 116. The record might have been obtained from a cache, but in the preferred embodiment, the records are not cached, the user templates are. Page server 104 is shown comprising a page generator 210, a shared memory 212 for storing live data and a cache 214 for caching user templates such as user template 202. Page generator 210 generates a custom front page 218 from a user template and the live data stored in shared memory 212. Although not shown, custom pages other than the front page can be generated in a similar fashion. Using user templates and a shared memory for the live data, page server 104 can quickly build custom pages in response to a user request. Where the user template is cached, the page can be generated entirely within page server 104.<br><br>*See also* col. 5, lines 26–41.<br>Essentially, user template 202 contains the information about the user which does not change until the user changes his or her preferences. Of course, the system operator could choose to make changes to how the system operates, thus requiring changes to the user preferences and user templates. User |

**Appendix B-20**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,983,227 (Nazem)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,983,227 (Nazem et al.) |
|---|---|
| | template 202 is shown comprising internal variables such as a time zone and demographic information. The demographic information, on the second line in FIG. 4 is used for selection of an advertisement which will be part of the custom page. In this example, the advertisement is targeted by the demographic information in the user template ":M,85,95035,T,*" indicating that a suitable ad should be targeted to a male user, age 85, located in zip code 95035, etc. As shown, the portfolio section contains selected stock symbols, the scoreboard section contains selected team symbols, and the weather section contains selected weather cities/zip codes. |
| | *See also* col. 6, lines 23–50. Referring now to FIG. 6, an illustration of intelligent defaulting for populating a user template, and consequently a user summary page. As part of a registration process, a user indicates, among other things, his or her zip code. This zip code is used to locate an approximate longitude and latitude for the user using a zip code lookup table 602. This allows the user's location to be located on a map 604. Map 604 provides city boundaries and, with team location table 606, also provides locations for various sports teams which can be selected in a sports module. In selecting a default predetermined number of cities and sports teams for inclusion as initial selections for a particular user, a circle is drawn around the user and increased in diameter until the circle envelopes a suitable predetermined number of cities and sports teams. In this way, each user is guaranteed a default number of nearby teams and cities for sports and weather, respectively. While this assumes that the user is interested in only the teams nearest the user, the system can be arranged to provide intelligent defaults where geographic anomalies are known to exist. Geographic anomalies occur in communities which have more loyalty to distant teams than nearby teams, such as might occur when the distant team is much better than the nearby team or when the nearby team recently moved to a distant location. In any case, the user is allowed customize his or her pages beginning with the intelligent defaults selected. |
| | *See also* Figs. 1–6 and associated text. |
| | *See also* claim limitation [1b]. |
| | To the extent it is found that Nazem does not disclose this feature expressly or inherently, it would |

Appendix B-20

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,983,227 (Nazem)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,983,227 (Nazem et al.) |
|---|---|
| | have been obvious to combine Nazem with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 6* | |
| [6a] The method of claim 1, wherein: the service request includes an IP address for identifying the first type network node, and | Nazem discloses that the service request includes an IP address for identifying the first type network node. For example, the page server receives an HTTP service request from the browser (first type network node). The HTTP service request include an IP address that identifies the first type network node.<br><br>*See* col. 2, line 52 to col. 3, line 35.<br>FIG. 1 shows a client-server system 100 which is used to display custom news pages. A custom news page is displayed on a browser 102 which obtains the page from a page server 104 via Internet 106. While only one browser 102 is shown, a typical system will have many browsers connecting and disconnecting to the system. The art of client-server systems using HTTP (HyperText Transport Protocol) messaging or other protocols is well known and will not be addressed in detail here. Essentially, browser 102 makes a request for a particular page by specifying a Uniform Resource Locator ("URL") for the page. In the example shown in FIG. 1, the request is directed to the URL "http:/my.yahoo.com/". Normally, this URL is directed to the root directory of a machine named my.yahoo.com. As is the convention in Internet communications, browser 102 submits the domain portion ("my.yahoo.com") of the URL to a name server, such as name server 108, to determine an actual address for the page server 104. Name server 108 returns an IP (Internet Protocol) address to browser 102 directing it to a page server 104. Where multiple page servers 104 are used, name server 108 returns IP addresses in a round-robin fashion to distribute the load over multiple page servers. Alternatively, name server 108 might distribute the load more deterministic by tracking browser addresses and hashing the browser address to select a page server 104. It is deterministic in that any given browser always accesses the same page server 104. This allows for more efficient caching of user templates, since more cache hits are likely where a given browser always returns to one page server. When a page server receives the URL for its root directory, it interprets that as a request for the user's custom summary page. The user is determined not from the URL, but from a "cookie" provided |

Appendix B-20

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,983,227 (Nazem)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,983,227 (Nazem et al.) |
|---|---|
| | by browser 102 with the URL.  Cookies are strings of data stored by browsers and sent along with any request to a URL having a domain associated with the cookie.  Page servers 104 obtain the live data from many disparate sources and reformat the data into a form suitable for use by the page server.  Page servers 104 are coupled, via a network, to edit servers 112, which are used when a user changes his or her user template.  The user templates are stored in a user configuration database 116 and are stored and provided to edit servers by a network appliance 114 written for this purpose.  Network appliance 114 is a process tuned to quickly locate files in large directories (N400 files/directory) and return them to the edit servers or page servers.  One embodiment of network appliance 114 is the F330 fault-tolerant scalable server supplied by Network Appliance, of Mountain View, Calif.<br><br>*See also* col. 3, lines 35-47.<br>In a specific embodiment, page servers 104 are microcomputers running the Unix.RTM. operating system with 64 to 128 megabytes of shared memory, page servers 104 and edit servers 112 are coupled using TCP/IP (Transport Control Protocol/Internet Protocol) and the user configuration database 116 is a Unix file structure which stores each user configuration in a text file.  The particular file used by a user is a combination of the user's user name and a hash result, to allow for quick access when many user configurations are stored.  For example, the user configuration for summary "front" page for a user "ash802" might be stored at /de/13/y.ash802, where "de" and "13" are hash results of a hash of the user name "ash802."<br><br>*See also* col. 4, line 40 to col. 5, line 7.<br>As shown in FIG. 2, the user's front page template 202 does not need to be generated each time, but rather is stored in cache 214. In a preferred embodiment, user templates are stored in cache 214 for long enough to be reused. Some users might choose to access their front page only infrequently, while others might choose to access their front page hourly. Since the pages are customized and dynamic, the user would see different information each time, but the same user template would be used each time. Of course, when the user edits his or her template, any cached copy of a user template is flushed. A garbage-collection process may also flush the cache of user pages which have been inactive for several days. In one implementation, cache 214 would accommodate 60,000 to 70,000 user templates. Where a particular page server is assigned on a random round robin basis, multiple page servers may cache their |

**Appendix B-20**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,983,227 (Nazem)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,983,227 (Nazem et al.) |
|---|---|
| | own copy of a given user template, but where a user is directed always to a particular server (except in the case where the particular server fails and a secondary server is used), that page server will be the only one which needs to cache that users user template. Even where the round robin name server scheme is used, some browsers may cache IP addresses, even longer than the specified "time to live" variable associated with the IP address, in order to save the time required to obtain an IP address each time. With such a browser, the user is effectively directed to the same page server each time and the server side of the page serving system does not need to direct users to particular page servers. With newer browsers, however, the "time to live" variable is honored and new requests are made for IP addresses after the "time to live" has expired. In these cases, if the assignment of a user to a single page server is desired, name server 108 (see FIG. 1) will use the user name from the provided cookie or the user's IP address to assign a page server based on a hash of the user name or IP address. <br><br>*See also* Figs. 1, 2, 6 and associated text. <br><br>*See also* claim limitation [1d]. <br><br>To the extent it is found that Nazem does not disclose this feature expressly or inherently, it would have been obvious to combine Nazem with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| [6b] identifying the first type network node based on the service request comprises using the IP address included in the service request to identify the first type network node. | Nazem discloses identifying the first type network node based on the service request comprises using the IP address included in the service request to identify the first type network node. For example, the page server uses the IP address contained in the HTTP service request to assign a specific user to a particular server. <br><br>*See* col. 2, line 52 to col. 3, line 35. <br>FIG. 1 shows a client-server system 100 which is used to display custom news pages. A custom news page is displayed on a browser 102 which obtains the page from a page server 104 via Internet 106. While only one browser 102 is shown, a typical system will have many browsers connecting and disconnecting to the system. The art of client-server systems using HTTP (HyperText Transport |

**Appendix B-20**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,983,227 (Nazem)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,983,227 (Nazem et al.) |
|---|---|
|  | Protocol) messaging or other protocols is well known and will not be addressed in detail here. Essentially, browser 102 makes a request for a particular page by specifying a Uniform Resource Locator ("URL") for the page. In the example shown in FIG. 1, the request is directed to the URL "http:/my.yahoo.com/". Normally, this URL is directed to the root directory of a machine named my.yahoo.com. As is the convention in Internet communications, browser 102 submits the domain portion ("my.yahoo.com") of the URL to a name server, such as name server 108, to determine an actual address for the page server 104. Name server 108 returns an IP (Internet Protocol) address to browser 102 directing it to a page server 104. Where multiple page servers 104 are used, name server 108 returns IP addresses in a round-robin fashion to distribute the load over multiple page servers. Alternatively, name server 108 might distribute the load more deterministic by tracking browser addresses and hashing the browser address to select a page server 104. It is deterministic in that any given browser always accesses the same page server 104. This allows for more efficient caching of user templates, since more cache hits are likely where a given browser always returns to one page server. When a page server receives the URL for its root directory, it interprets that as a request for the user's custom summary page. The user is determined not from the URL, but from a "cookie" provided by browser 102 with the URL. Cookies are strings of data stored by browsers and sent along with any request to a URL having a domain associated with the cookie. Page servers 104 obtain the live data from many disparate sources and reformat the data into a form suitable for use by the page server. Page servers 104 are coupled, via a network, to edit servers 112, which are used when a user changes his or her user template. The user templates are stored in a user configuration database 116 and are stored and provided to edit servers by a network appliance 114 written for this purpose. Network appliance 114 is a process tuned to quickly locate files in large directories (N400 files/directory) and return them to the edit servers or page servers. One embodiment of network appliance 114 is the F330 fault-tolerant scalable server supplied by Network Appliance, of Mountain View, Calif. <br><br> *See also* col. 4, line 40 to col. 5, line 7. <br> As shown in FIG. 2, the user's front page template 202 does not need to be generated each time, but rather is stored in cache 214. In a preferred embodiment, user templates are stored in cache 214 for long enough to be reused. Some users might choose to access their front page only infrequently, while |

Case 2:11-cv-06263-WHA Document 108-4 Filed 12/28/12 Page 989 of 1004
Case 3:11-cv-06263-WHA Document 79-1 Filed 09/27/12 Page 988 of 1004

Appendix B-20

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,983,227 (Nazem)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,983,227 (Nazem et al.) |
|---|---|
| | others might choose to access their front page hourly. Since the pages are customized and dynamic, the user would see different information each time, but the same user template would be used each time. Of course, when the user edits his or her template, any cached copy of a user template is flushed. A garbage-collection process may also flush the cache of user pages which have been inactive for several days. In one implementation, cache 214 would accommodate 60,000 to 70,000 user templates. Where a particular page server is assigned on a random round robin basis, multiple page servers may cache their own copy of a given user template, but where a user is directed always to a particular server (except in the case where the particular server fails and a secondary server is used), that page server will be the only one which needs to cache that users user template. Even where the round robin name server scheme is used, some browsers may cache IP addresses, even longer than the specified "time to live" variable associated with the IP address, in order to save the time required to obtain an IP address each time.  With such a browser, the user is effectively directed to the same page server each time and the server side of the page serving system does not need to direct users to particular page servers.  With newer browsers, however, the "time to live" variable is honored and new requests are made for IP addresses after the "time to live" has expired.  In these cases, if the assignment of a user to a single page server is desired, name server 108 (see FIG. 1) will use the user name from the provided cookie or the user's IP address to assign a page server based on a hash of the user name or IP address. <br><br> *See also* Figs. 1, 2, 6 and associated text. <br><br> *See also* claim limitation [1e]. <br><br> To the extent it is found that Nazem does not disclose this feature expressly or inherently, it would have been obvious to combine Nazem with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter.  *See* Appendix C. |
| *Claim 7* | |
| [7a] A method for providing web page customization service to a plurality of first | Nazem discloses a method for providing web page customization service to a plurality of first type network nodes at a second type network node. |

**Appendix B-20**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,983,227 (Nazem)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,983,227 (Nazem et al.) |
|---|---|
| type network nodes at a second type network node, comprising the steps of: | To the extent it is found that Nazem does not disclose this feature expressly or inherently, it would have been obvious to combine Nazem with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. <br><br> *See* claim limitation [1a]. |
| [7b] forming at least a page file for each of the first type network nodes; | Nazem discloses forming at least a page file for each of the first type network nodes. <br><br> To the extent it is found that Nazem does not disclose this feature expressly or inherently, it would have been obvious to combine Nazem with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. <br><br> *See* claim limitation [1b]. |
| [7c] forming at least a page file for the second type network node; | Nazem discloses forming at least a page file for the second type network node. <br><br> To the extent it is found that Nazem does not disclose this feature expressly or inherently, it would have been obvious to combine Nazem with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. <br><br> *See* claim limitation [1c]. |
| [7d] receiving a service request from one of the first type network nodes; | Nazem discloses receiving a service request from one of the first type network nodes. <br><br> To the extent it is found that Nazem does not disclose this feature expressly or inherently, it would have been obvious to combine Nazem with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. <br><br> *See* claim limitation [1d]. |

**Appendix B-20**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,983,227 (Nazem)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,983,227 (Nazem et al.) |
|---|---|
| [7e] determining whether the first type network node participates in the web page customization service; | Nazem discloses determining whether the first type network node participates in the web page customization service.<br><br>To the extent it is found that Nazem does not disclose this feature expressly or inherently, it would have been obvious to combine Nazem with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1e]. |
| [7f] if the first type network node participates in the web page customization service, forming a customized page file for the service request by including the page file formed for the first type network node within the page file formed for the second type network node; and | Nazem discloses, if the first type network node participates in the web page customization service, forming a customized page file for the service request by including the page file formed for the first type network node within the page file formed for the second type network node.<br><br>To the extent it is found that Nazem does not disclose this feature expressly or inherently, it would have been obvious to combine Nazem with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1f]. |
| [7g] if the first type network node does not participate in the web page customization service, forming a page file for the service request by using the page file formed for the second type network node. | Nazem discloses, if the first type network node does not participate in the web page customization service, forming a page file for the service request by using the page file formed for the second type network node. For example, the page server identifies the user of the browser (first type network node) based on a cookie and/or IP address contained in the HTTP service request. Specifically, the page server generates a user template from a user configuration record selected from a user configuration database. If a user is not found in the user configuration database, the page server will only form a page file for the service request by using the page file formed for the second type network node.<br><br>*See* claim limitation [1f]. |

Appendix B-20

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,983,227 (Nazem)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,983,227 (Nazem et al.) |
|---|---|
| | To the extent it is found that Nazem does not disclose this feature expressly or inherently, it would have been obvious to combine Nazem with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 8* | |
| [8] The method of claim 7, wherein the first type network nodes are ISP nodes, and the second type network node is an ICP node. | To the extent it is found that Nazem does not disclose this feature expressly or inherently, it would have been obvious to combine Nazem with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [2]. |
| *Claim 9* | |
| [9] The method of claim 7, wherein the first type network nodes are organization nodes, and the second type network node is an ICP node. | To the extent it is found that Nazem does not disclose this feature expressly or inherently, it would have been obvious to combine Nazem with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [3]. |
| *Claim 10* | |
| [10] The method of claim 7, wherein the customized page file includes customized graphics, sounds, applets, links, and text. | Nazem discloses that the customized page file includes customized graphics, sounds, applets, links, and text.<br><br>To the extent it is found that Nazem does not disclose this feature expressly or inherently, it would have been obvious to combine Nazem with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [4]. |
| *Claim 11* | |

**Appendix B-20**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,983,227 (Nazem)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,983,227 (Nazem et al.) |
|---|---|
| [11] The method of claim 7, wherein the customized page file includes customized advertisements. | Nazem discloses that the customized page file includes customized advertisements.<br><br>To the extent it is found that Nazem does not disclose this feature expressly or inherently, it would have been obvious to combine Nazem with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [5]. |
| *Claim 12* | |
| [12a] The method of claim 7, wherein: the service request from one of the first type network nodes includes an IP address for identifying the first type network node, and | Nazem discloses that the service request from one of the first type network nodes includes an IP address for identifying the first type network node.<br><br>To the extent it is found that Nazem does not disclose this feature expressly or inherently, it would have been obvious to combine Nazem with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [6a]. |
| [12b] determining whether the first type network node participates in the web page customization service comprises using the IPI address included in the service request to identify the first type network node. | Nazem discloses that determining whether the first type network node participates in the web page customization service comprises using the IPI address included in the service request to identify the first type network node.<br><br>To the extent it is found that Nazem does not disclose this feature expressly or inherently, it would have been obvious to combine Nazem with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [6b]. |
| *Claim 13* | |
| [13a] A method for providing | Nazem discloses a method for providing web page customization service to a plurality of first type |

**Appendix B-20**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,983,227 (Nazem)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,983,227 (Nazem et al.) |
|---|---|
| web page customization service to a plurality of first type network nodes at a second type network node, comprising the steps of: | network nodes at a second type network node.<br><br>To the extent it is found that Nazem does not disclose this feature expressly or inherently, it would have been obvious to combine Nazem with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1a]. |
| [13b] forming a plurality of advertisements for the first type network nodes; | Nazem discloses forming a plurality of advertisements for the first type network nodes.<br><br>To the extent it is found that Nazem does not disclose this feature expressly or inherently, it would have been obvious to combine Nazem with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitations [1b] and [5]. |
| [13c] forming at least a page file for the second type network node; | Nazem discloses forming at least a page file for the second type network node.<br><br>To the extent it is found that Nazem does not disclose this feature expressly or inherently, it would have been obvious to combine Nazem with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1c]. |
| [13d] receiving a service request from one of the first type network nodes; | Nazem discloses receiving a service request from one of the first type network nodes.<br><br>To the extent it is found that Nazem does not disclose this feature expressly or inherently, it would have been obvious to combine Nazem with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |

Appendix B-20

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,983,227 (Nazem)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,983,227 (Nazem et al.) |
|---|---|
|  | *See* claim limitation [1d]. |
| [13e] identifying advertisements for the first type network node; and | Nazem discloses identifying advertisements for the first type network node.<br><br>To the extent it is found that Nazem does not disclose this feature expressly or inherently, it would have been obvious to combine Nazem with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitations [1e] and [5]. |
| [13f] forming a customized page file for the first type network node by including the identified advertisements within the page file formed for the second type network node. | Nazem discloses forming a customized page file for the first type network node by including the identified advertisements within the page file formed for the second type network node.<br><br>To the extent it is found that Nazem does not disclose this feature expressly or inherently, it would have been obvious to combine Nazem with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1f]. |
| *Claim 14* |  |
| [14] The method of claim 13, wherein the first type network nodes are ISP nodes, and the second type network node is an ICP node. | To the extent it is found that Nazem does not disclose this feature expressly or inherently, it would have been obvious to combine Nazem with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [2]. |
| *Claim 15* |  |
| [15] The method of claim 13, wherein the first type network nodes are organization nodes, | To the extent it is found that Nazem does not disclose this feature expressly or inherently, it would have been obvious to combine Nazem with the knowledge of a person of ordinary skill and/or other prior art |

Appendix B-20

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,983,227 (Nazem)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,983,227 (Nazem et al.) |
|---|---|
| and the second type network node is an ICP node. | references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [3]. |
| *Claim 16* | |
| [16] The method of claim 13, wherein the identified advertisements do not cause negative impact on the owner of the first type network node. | Nazem discloses that the identified advertisements do not cause negative impact on the owner of the first type network node. For example, advertisements are targeted to specific users and therefore do not cause a negative impact on the user (owner of the first type network node).<br><br>*See* col. 5, lines 25–49.<br>Essentially, user template 202 contains the information about the user which does not change until the user changes his or her preferences. Of course, the system operator could choose to make changes to how the system operates, thus requiring changes to the user preferences and user templates. User template 202 is shown comprising internal variables such as a time zone and demographic information. The demographic information, on the second line in FIG. 4 is used for selection of an advertisement which will be part of the custom page. In this example, the advertisement is targeted by the demographic information in the user template ":M,85,95035,T,*" indicating that a suitable ad should be targeted to a male user, age 85, located in zip code 95035, etc. As shown, the portfolio section contains selected stock symbols, the scoreboard section contains selected team symbols, and the weather section contains selected weather cities/zip codes. The selections of stock quote symbols, team scores, and weather cities are set by the user. In a preferred embodiment, intelligent defaults are selected by the system prior to user selection, so that users unfamiliar with the customization process will nonetheless be able to view non empty custom pages. This is described in further detail below in connection with FIG. 6.<br><br>*See also* Figs. 1–6 and associated text.<br><br>*See also* claim limitation [5].<br><br>To the extent it is found that Nazem does not disclose this feature expressly or inherently, it would have |

Appendix B-20

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,983,227 (Nazem)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,983,227 (Nazem et al.) |
|---|---|
| | been obvious to combine Nazem with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |
| *Claim 17* | |
| [17a] An apparatus for dynamically forming a customized web page for a first type network node at a second type network node, comprising: | Nazem discloses an apparatus for dynamically forming a customized web page for a first type network node at a second type network node.<br><br>To the extent it is found that Nazem does not disclose this feature expressly or inherently, it would have been obvious to combine Nazem with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1a]. |
| [17b] means for forming at least a page file for the first type network node; | Nazem discloses means for forming at least a page file for the first type network node.<br><br>To the extent it is found that Nazem does not disclose this feature expressly or inherently, it would have been obvious to combine Nazem with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1b]. |
| [17c] means for forming at least a page file for the second type network node; | Nazem discloses means for forming at least a page file for the second type network node.<br><br>To the extent it is found that Nazem does not disclose this feature expressly or inherently, it would have been obvious to combine Nazem with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1c]. |

**Appendix B-20**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,983,227 (Nazem)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,983,227 (Nazem et al.) |
|---|---|
| [17d] means for receiving a service request from the first type network node; | Nazem discloses means for receiving a service request from the first type network node.<br><br>To the extent it is found that Nazem does not disclose this feature expressly or inherently, it would have been obvious to combine Nazem with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1d]. |
| [17e] means for identifying the first type network node based on the service request; and | Nazem discloses means for identifying the first type network node based on the service request.<br><br>To the extent it is found that Nazem does not disclose this feature expressly or inherently, it would have been obvious to combine Nazem with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1e]. |
| [17f] means for forming a customized page file formed for the first type network node by including the page file formed for the first type network node within the page file for the second type network node. | Nazem discloses means for forming a customized page file formed for the first type network node by including the page file formed for the first type network node within the page file for the second type network node.<br><br>To the extent it is found that Nazem does not disclose this feature expressly or inherently, it would have been obvious to combine Nazem with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [1f]. |
| *Claim 18* | |
| [18] The apparatus of claim 17, wherein the first type network node is an ISP node, | To the extent it is found that Nazem does not disclose this feature expressly or inherently, it would have been obvious to combine Nazem with the knowledge of a person of ordinary skill and/or other |

**Appendix B-20**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,983,227 (Nazem)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,983,227 (Nazem et al.) |
|---|---|
| and the second type network node is an ICP node. | prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [2]. |
| *Claim 19* | |
| [19] The apparatus of claim 17, wherein the first type network node is an organization node, and the second type network node is an ICP node. | To the extent it is found that Nazem does not disclose this feature expressly or inherently, it would have been obvious to combine Nazem with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [3]. |
| *Claim 20* | |
| [20] The apparatus of claim 17, wherein the customized page file includes customized graphics, sounds, applets, links, and text. | Nazem discloses that the customized page file includes customized graphics, sounds, applets, links, and text.<br><br>To the extent it is found that Nazem does not disclose this feature expressly or inherently, it would have been obvious to combine Nazem with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [4]. |
| *Claim 21* | |
| [21] The apparatus of claim 17, wherein the customized page file includes customized advertisements. | Nazem discloses that the customized page file includes customized advertisements.<br><br>To the extent it is found that Nazem does not disclose this feature expressly or inherently, it would have been obvious to combine Nazem with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C. |

**Appendix B-20**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,983,227 (Nazem)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,983,227 (Nazem et al.) |
|---|---|
| | *See* claim limitation [5]. |
| *Claim 22* | |
| [22a] An apparatus for providing web page customization service to a plurality of first type network nodes at a second type network node, comprising: | Nazem discloses an apparatus for providing web page customization service to a plurality of first type network nodes at a second type network node.<br><br>To the extent it is found that Nazem does not disclose this feature expressly or inherently, it would have been obvious to combine Nazem with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [7a]. |
| [22b] means for forming at least a page file for each of the first type network nodes; | Nazem discloses means for forming at least a page file for each of the first type network nodes.<br><br>To the extent it is found that Nazem does not disclose this feature expressly or inherently, it would have been obvious to combine Nazem with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [7b]. |
| [22c] means for forming at least a page file for the second type network node; | Nazem discloses means for forming at least a page file for the second type network node.<br><br>To the extent it is found that Nazem does not disclose this feature expressly or inherently, it would have been obvious to combine Nazem with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [7c]. |
| [22d] means for receiving a service request from one of the | Nazem discloses means for receiving a service request from one of the first type network nodes. |

Appendix B-20

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,983,227 (Nazem)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,983,227 (Nazem et al.) |
|---|---|
| first type network nodes; | To the extent it is found that Nazem does not disclose this feature expressly or inherently, it would have been obvious to combine Nazem with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [7d]. |
| [22e] means for determining whether the first type network node participates in the web page customization service; | Nazem discloses means for determining whether the first type network node participates in the web page customization service.<br><br>To the extent it is found that Nazem does not disclose this feature expressly or inherently, it would have been obvious to combine Nazem with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [7e]. |
| [22f] means for forming a customized page file for the service request by including the page file formed for the first type network node within the page file formed for the second type network node, if the first type network node participates in the web page customization service; and | Nazem discloses means for forming a customized page file for the service request by including the page file formed for the first type network node within the page file formed for the second type network node, if the first type network node participates in the web page customization service.<br><br>To the extent it is found that Nazem does not disclose this feature expressly or inherently, it would have been obvious to combine Nazem with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [7f]. |
| [22g] means for forming a page file for the service request by using the page file formed for the second type network | Nazem discloses means for forming a page file for the service request by using the page file formed for the second type network node, if the first type network node does not participate in the web page customization service. |

Appendix B-20

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,983,227 (Nazem)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,983,227 (Nazem et al.) |
|---|---|
| node, if the first type network node does not participate in the web page customization service. | To the extent it is found that Nazem does not disclose this feature expressly or inherently, it would have been obvious to combine Nazem with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [7g]. |
| *Claim 23* | |
| [23] The apparatus of claim 22, wherein the first type network nodes are ISP nodes, and the second type network node is an ICP node. | To the extent it is found that Nazem does not disclose this feature expressly or inherently, it would have been obvious to combine Nazem with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [8]. |
| *Claim 24* | |
| [24] The apparatus of claim 22, wherein the first type network nodes are organization nodes, and the second type network node is an ICP node. | To the extent it is found that Nazem does not disclose this feature expressly or inherently, it would have been obvious to combine Nazem with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [9]. |
| *Claim 25* | |
| [25] The apparatus of claim 22, wherein the customized page file includes customized graphics, sounds, applets, links, and text. | Nazem discloses that the customized page file includes customized graphics, sounds, applets, links, and text.<br><br>To the extent it is found that Nazem does not disclose this feature expressly or inherently, it would have been obvious to combine Nazem with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [10]. |

Appendix B-20

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,983,227 (Nazem)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,983,227 (Nazem et al.) |
|---|---|
| *Claim 26* | |
| [26] The apparatus of claim 25, wherein the customized page file includes customized advertisements. | Nazem discloses that the customized page file includes customized advertisements.<br><br>To the extent it is found that Nazem does not disclose this feature expressly or inherently, it would have been obvious to combine Nazem with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [11]. |
| *Claim 27* | |
| [27a] An apparatus for providing web page customization service to a plurality of first type network nodes at a second type network node, comprising: | Nazem discloses an apparatus for providing web page customization service to a plurality of first type network nodes at a second type network node.<br><br>To the extent it is found that Nazem does not disclose this feature expressly or inherently, it would have been obvious to combine Nazem with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [13a]. |
| [27b] means for forming a plurality of advertisements for the first type network nodes; | Nazem discloses means for forming a plurality of advertisements for the first type network nodes.<br><br>To the extent it is found that Nazem does not disclose this feature expressly or inherently, it would have been obvious to combine Nazem with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [13b]. |
| [27c] means for forming at least a page file for the second | Nazem discloses means for forming at least a page file for the second type network node.<br><br>To the extent it is found that Nazem does not disclose this feature expressly or inherently, it would have |

Appendix B-20

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,983,227 (Nazem)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,983,227 (Nazem et al.) |
|---|---|
| type network node; | been obvious to combine Nazem with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [13c]. |
| [27d] means for receiving a service request from one of the first type network nodes; | Nazem discloses means for receiving a service request from one of the first type network nodes.<br><br>To the extent it is found that Nazem does not disclose this feature expressly or inherently, it would have been obvious to combine Nazem with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [13d]. |
| [27e] means for identifying advertisements for the first type network node; and | Nazem discloses means for identifying advertisements for the first type network node.<br><br>To the extent it is found that Nazem does not disclose this feature expressly or inherently, it would have been obvious to combine Nazem with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [13e]. |
| [27f] means for forming a customized page file for the first type network node by including the identified advertisements within the page file formed for the second type network node. | Nazem discloses means for forming a customized page file for the first type network node by including the identified advertisements within the page file formed for the second type network node.<br><br>To the extent it is found that Nazem does not disclose this feature expressly or inherently, it would have been obvious to combine Nazem with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [13f]. |

**Appendix B-20**

**Invalidity of the Asserted Claims of U.S. Patent No. 6,442,577 Over U.S. Patent No. 5,983,227 (Nazem)**

| U.S. Patent No. 6,442,577 | U.S. Patent No. 5,983,227 (Nazem et al.) |
|---|---|
| *Claim 28* | |
| [28] The apparatus of claim 27, wherein the first type network nodes are ISP nodes, and the second type network node is an ICP node. | To the extent it is found that Nazem does not disclose this feature expressly or inherently, it would have been obvious to combine Nazem with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [14]. |
| *Claim 29* | |
| [29] The apparatus of claim 27, wherein the first type network nodes are organization nodes, and the second type network node is an ICP node. | To the extent it is found that Nazem does not disclose this feature expressly or inherently, it would have been obvious to combine Nazem with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [15]. |
| *Claim 30* | |
| [30] The apparatus of claim 27, wherein the identified advertisements do not cause negative impact on the owner of the first type network node. | Nazem discloses that the identified advertisements do not cause negative impact on the owner of the first type network node.<br><br>To the extent it is found that Nazem does not disclose this feature expressly or inherently, it would have been obvious to combine Nazem with the knowledge of a person of ordinary skill and/or other prior art references to obtain the claimed subject matter. *See* Appendix C.<br><br>*See* claim limitation [16]. |